UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

LETICIA LUCERO,

           Plaintiff,

vs.

CENLAR FSB and BAYVIEW LOAN
SERVICING, LLC, et al.,

          Defendants.

NO. 2:13-cv-00602

EXHIBITS LIST

Exhibit 1, Notice of Default

Exhibit 2, Letter by Dotty Mitchell dated October 12, 2012

Exhibit 3, Beneficiary Declaration dated October 5, 2012

Exhibit 4, Doc. 9-4, page 2, Beneficiary Declaration

Exhibit 5, Composite of documents signed and notarized by

Dobron and Harris

Exhibit 6, Composite of foreclosure documents signed by Jennifer

Dobron

Exhibit 7,   Appointment of Successor Trustee

Exhibit 8, Assignment of Deed of Trust

EXHIBITS LIST - 1

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

Exhibit 9, Assignment and Appointment in Connie Korth

Exhibit 10, February 7, 2013 letter from Bayview

Exhibit 11, Cease and Desist Letter

Exhibit 12, HAMP modification agreement

Exhibit 13, Letter of Denial of Credit

Exhibit 14, Qualified Written Request

Exhibit 15, Deed of Trust and Note

EXHIBITS LIST - 2

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

# EXHIBIT 1

Lucero v. Cenlar FSB, et al.

2:13-cv-00602-RSL

Notice of Default



## Notice of Default

To:

| | |
|---|---|
| Richard A. Glidden | Richard A. Glidden |
| 1003 159th Place Southeast | 3002 163nd Place Southeast |
| Bellevue, WA  98008 | Bellevue, WA  98008 |
| | |
| Leticia Lucero | Leticia Lucero |
| 1003 159th Place Southeast | 3002 163nd Place Southeast |
| Bellevue, WA  98008 | Bellevue, WA  98008 |

Regarding the real property "Property" located at:

**Property Address:**
1003 159th Place Southeast
Bellevue, WA  98008



### THIS NOTICE IS ONE STEP IN A PROCESS THAT COULD RESULT IN YOUR LOSING YOUR HOME.

You may be eligible for mediation in front of a neutral third party to help save your home.

CONTACT A HOUSING COUNSELOR OR AN ATTORNEY LICENSED IN WASHINGTON NOW to assess your situation and refer you to mediation if you might benefit.  Mediation MUST be requested between the time you receive the Notice of Default and no later than twenty days after the Notice of Trustee Sale is recorded.

DO NOT DELAY.  If you do nothing, a notice of sale may be issued as soon as 30 days from the date of this notice of default.  The notice of sale will provide a minimum of 120 days' notice of the date of the actual foreclosure sale.

BE CAREFUL of people who claim they can help you.  There are many individuals and businesses that prey upon borrowers in distress.

REFER TO THE CONTACTS BELOW for sources of assistance.

### SEEKING ASSISTANCE

Housing counselors and legal assistance may be available at little or no cost to you.  If you would like assistance in determining your rights and opportunities to keep your house, you may contact the following:

The statewide foreclosure hotline for assistance and referral to housing counselors recommended by the Housing Finance Commission Telephone: Toll-free: 1-877-894-HOME (1-877-894-4663).  Web site: http://www.dfi.wa.gov/consumers/homeownership/post_purchase_counselors_foreclosure.htm

The United States Department of Housing and Urban Development Telephone: Toll-free: 1-800-569-4287.  Web site:
http://www.hud.gov/offices/hsg/sfh/hcc/fc/index.cfm?webListAction=search&searchstate=WA&filterSvc=dfc

The statewide civil legal aid hotline for assistance and referrals to other housing counselors and attorneys Telephone: Toll-free: 1-800-606-4819.  Web site: http://nwjustice.org/what-clear.

A) Property description:

Lot(s) 1, Block 4, Lake Hills No. 1, according to the Plat thereof recorded in Volume 56 of Plats, Page(s) 86-88, Records of King County, Washington. Situate in the County of King, State of Washington.

**B) Deed of Trust information:** KING County Auditor's File No.: 20060818001673; Recording Date: 08/18/06

**C) Declaration of payment default:** The beneficiary declares you in default for failing to make payments as required by your note and deed of trust.

**D) Itemized account of the arrears:**

| | |
|---|---|
| Delinquent monthly payments beginning with the 06/01/11 installment. | $41,137.04 |
| Late charges: | $1,805.55 |
| Lender's Fees and Costs | ($1,685.18) |
| Trustee's fees | $542.50 |
| Costs | |
| Title report (estimate) | $890.00 |
| Recording | $0.00 |
| Certified mail | $28.00 |
| Posting | $70.00 |
| Sale Costs | $0.00 |
| Total arrears and costs due today | $42,787.91 |

**E) Itemized account of all other specific charges, costs or fees that grantor or borrower is or may be obliged to pay to reinstate the deed of trust before the recording of the notice of sale.**

| | |
|---|---|
| Additional monthly payment | $2,721.55 |
| Additional late charge | $120.37 |

**F) Amount required to cure payment defaults before notice of sale recorded:**   $45,629.83
In addition, grantor or borrower must timely cure all other defaults before the note and deed of trust are deemed reinstated.

*Payments and late charges continue to accrue and additional advances may be made. The sums stated above are estimates only. Before attempting to reinstate the loan, call us at 425-586-1900 to learn the exact amounts of monetary defaults and actions required to cure possible other defaults.*

**G) Effect of failure to cure:** Failure to cure all alleged defaults within 30 days of mailing/personal service of this notice may lead to recordation, transmittal and publication of a notice of sale and the Property may be sold at public auction no less than 120 days from the date of this notice, or no less than 150 days in the future, if the borrower received a letter under RCW 61.24.031.

**H) Effect of recording, transmitting and publication of the notice of sale:** The effect of the recordation, transmittal and publication of the notice of sale will be to (i) increase the costs and fees and (ii) publicize the default and advertise the Property for sale.

**I) Effect of sale of the Property:** The Trustee's sale of the Property will deprive the borrower, grantor and any successor in interest of all their interest in the Property.

**J) Recourse to courts:** The borrower, grantor, any guarantor or any successor in interest has recourse to the courts pursuant to RCW 61.24.130 to contest the default(s) on any proper ground.

**K) Contact Information for Note Owner and Loan Servicer.**

The owner of the note is Federal Home Loan Mortgage Corporation (Freddie Mac), whose address is:

Freddie Mac
8200 Jones Branch Drive
Mclean, VA 22102-3110

The loan servicer for this loan is Cenlar FSB, whose address and telephone numbers are:

PO Box 77410
425 Phillips Boulevard
Ewing, NJ  08618-1430
800-257-0460

**L)  Notice pursuant to the Federal Fair Debt Collection Practices Act:**  IF YOU HAVE RECEIVED A DISCHARGE OF THE DEBT REFERENCED HEREIN IN A BANKRUPTCY PROCEEDING, THIS LETTER IS NOT AN ATTEMPT TO IMPOSE PERSONAL LIABILITY UPON YOU FOR PAYMENT OF THAT DEBT.  IN THE EVENT YOU HAVE RECEIVED A BANKRUPTCY DISCHARGE, ANY ACTION TO ENFORCE THE DEBT WILL BE TAKEN AGAINST THE PROPERTY ONLY. If you are the consumer who originally contracted the debt or if you assumed the debt, then you are notified that:

1. As of the date of this notice you owe $399,017.39.  Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater.  Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check.  For further information, write to the address provided in Section 6 below or call us at 425-586-1900.
2. The creditor to whom the debt is owed Cenlar FSB.
3. Unless within 30 days after receipt of this notice you dispute the debt or any portion of it, we will assume the debt to be valid. The Fair Debt Collection Practices Act does not require that we wait until 30 days from the date you receive this letter before initiating foreclosure proceedings.
4. If you notify us within 30 days after receipt of this notice that you dispute the debt or any part of it, we will request that the creditor obtain verification of the debt and mail it to you.
5. If you request within 30 days after receipt of this notice, we will request that the creditor provide you with the name and address of the original creditor, if different from the current creditor.
6. Written requests should be addressed to Northwest Trustee Services, Inc., Post Office Box 997, Bellevue, WA 98009-0997.



Dated:  August 27, 2012

Cenlar FSB
By Northwest Trustee Services, Inc., its duly authorized agent

**This is an attempt to collect a debt and any information obtained will be used for that purpose.**

NORTHWEST TRUSTEE SERVICES, INC.
P.O. BOX 997
BELLEVUE, WA 98009-0997

File No: 7367.21314
Borrower: Glidden, Richard and Lucero, Leticia
Client: Cenlar FSB

VONNIE MCELLIGOTT
425-586-1900
FAX 425-586-1997



**CENLAR®**
CENTRAL LOAN ADMINISTRATION & REPORTING

August 14, 2012

Richard A Glidden
Leticia Lucero
1003 159th Pl SE
Bellevue WA 98008 0000

RE: Loan Number: 0029259710
Property Address: 1003 159th Pl Se
Bellevue WA 98008

FORECLOSURE LOSS MITIGATION FORM

Please select applicable option(s) below.

The undersigned beneficiary or authorized agent for the beneficiary hereby represents and declares under the penalty of perjury that (check the applicable box and fill in any blanks so that the trustee can insert, on the beneficiary's behalf, the applicable declaration in the notice of default required under chapter 61.24 RCW):

1. ☒ The beneficiary or beneficiary's authorized agent has contacted the borrower under, and has complied with, RCW 61.24.031 (contact provision to "assess the borrower's financial ability to pay the debt secured by the deed of trust and explore options for the borrower to avoid foreclosure") and the borrower did not request a meeting.

2. ___ The beneficiary or beneficiary's authorized agent has contacted the borrower as required under RCW 61.24.031 and the borrower or the borrower's designated representative requested a meeting. A meeting was held in compliance with RCW 61.24.031.

3. ___ The beneficiary or beneficiary's authorized agent has exercised due diligence to contact the borrower as required in RCW 61.24.031(5).

4. ___ The borrower has surrendered the secured property as evidenced by either a letter confirming the surrender or by delivery of the keys to the secured property to the beneficiary, the beneficiary's authorized agent or to the trustee

Dated: 8-15-12

By: _____

Its: _____
XC178 019 SWW FG

Northwest Trustee Services, Inc.
PO Box 997
Bellevue WA, 98009- 09



7192 3724 0010 0316 1982

**US POSTAGE**
**FIRST-CLASS MAIL**            $4.55⁰
ZIP 98006   8/28/2012   NEOPOST

018H13101224



MPPC ID 8000063765



M2443868
WANOD
7367.21314 VM

LETICIA LUCERO
1003 159TH PLACE SOUTHEAST
BELLEVUE, WA 98008



**EXHIBIT 2**

Lucero v. Cenlar FSB, et al.

2:13-cv-00602-RSL

Letter by Dotty Mitchell dated October 12, 2012



ROUTH CRABTREE OLSEN, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006

phone - 425.458.2121
fax - 425.458.2131
www.rcolegal.com

**Dotty Mitchell**
Mediation Paralegal

phone - 425-427-7284
fax - 425-623-1939
dmitchell@rcolegal.com

RECEIVED
BARRAZA LAW, PLLC

OCT 15 2012

October 12, 2012

<u>VIA OVERNIGHT MAIL AND EMAIL</u>:
akidde@bellevuewa.gov
Andrew Kidde
Bellevue Neighborhood Mediation Program
450 110th Ave. NE
Bellevue, WA 98009

omar@barrazalaw.com
Vincente Barraza
Barraza Law, PLLC
1818 Westlake Ave. NE #308
Seattle, WA 98109

> *Re:* *Property Address: 1003 159th Place Southeast, Bellevue, WA 98008*
> *Borrower(s) Name(s): Lucero, Leticia*
> *Loan No.: 0029259710*
> *RCO File No.: 7367.80030*

Dear Ms. Morse and Mr. Barraza,

This law firm represents Cenlar FSB, the beneficiary or its servicer of the deed of trust secured by the above-described property.

In preparation for the mediation scheduled on November 9, 2012, at 9:00 a.m., I have enclosed the beneficiary disclosures in compliance with RCW §61.24.

If you have any questions or concerns, please do not hesitate to contact me or attorney John McIntosh at 425-247-2092 or jmcintosh@rcolegal.com.

Sincerely,

ROUTH CRABTREE OLSEN, P.S.

*Dotty Mitchell*

Dotty Mitchell, Mediation Paralegal

encl:   Beneficiary Disclosure(s)

# EXHIBIT 3

Lucero v. Cenlar FSB, et al.

2:13-cv-00602-RSL

Beneficiary Declaration dated October 5, 2012

BENEFICIARY DECLARATION
(NOTE HOLDER)
(Executed by Officer of Beneficiary)

Loan No. 0029259710
Property Address: 1003 159th Place Southeast, Bellevue, WA  98008

The undersigned, under penalty of perjury declares as follows:

Cenlar FSB is the holder of the promissory note or other obligation evidencing the above-referenced loan.

The trustee may rely upon the truth and accuracy of the averments made in this declaration.

Dated this _5_ day of _Oct_ , 20_13_ in _Ewing, NJ_ .

Cenlar FSB, beneficiary

By _Jennifer Dobron_
Its _Assistant Secretary_


OR _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _


BENEFICIARY DECLARATION
(NOTE HOLDER)
(Attorney in Fact for Beneficiary)

Loan No. 0029259710

The undersigned, under penalty of perjury declares as follows:

Cenlar FSB is the holder of the promissory note or other obligation evidencing the above-referenced loan.

The trustee may rely upon the truth and accuracy of the averments made in this declaration.

Dated this ____ day of _____ , 20___ in _____ , _____ .

Cenlar FSB, beneficiary
_____ , its Attorney in Fact


By _____
Its _____

NWTS #:7367.21314
Matter name: Glidden, Richard and Lucero, Leticia

# EXHIBIT 4

Lucero v. Cenlar FSB, et al.

2:13-cv-00602-RSL

Doc. 9-4, page 2, Beneficiary Declaration

BENEFICIARY DECLARATION
(NOTE HOLDER)
(Executed by Officer of Beneficiary)

Loan No. ██████9710
Property Address: 1003 159th Place Southeast, Bellevue, WA  98008

The undersigned, under penalty of perjury declares as follows:

Cenlar FSB is the holder of the promissory note or other obligation evidencing the above-referenced loan.

The trustee may rely upon the truth and accuracy of the averments made in this declaration.

Dated this 16 day of Oct, 20 12 in Ewing, NJ

Cenlar FSB, beneficiary

By Jennifer Dobron
Its Assistant Secretary

OR _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

BENEFICIARY DECLARATION
(NOTE HOLDER)
(Attorney in Fact for Beneficiary)

Loan No ██████9710

The undersigned, under penalty of perjury declares as follows:

Cenlar FSB is the holder of the promissory note or other obligation evidencing the above-referenced loan.

The trustee may rely upon the truth and accuracy of the averments made in this declaration.

Dated this ____ day of _____, 20___ in _____, _____.

Cenlar FSB, beneficiary
_____, its Attorney in Fact

By _____
Its _____

NWTS #:7367.21314
Matter name: Glidden, Richard and Lucero, Leticia

46.

# EXHIBIT 5

Lucero v. Cenlar FSB, et al.

2:13-cv-00602-RSL

Composite of documents signed and notarized by Dobron and Harris

ELECTRONICALLY RECORDED
201212050769                        1
12/05/2012 01:09 PM            14.00
SNOHOMISH COUNTY, WASHINGTON

After Recording Return to:
Venlie McElligott
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997

201212050769

---

### Appointment of Successor Trustee

File No. 7367.21390

    Anne Untermeyer is/are the grantor(s), First American Title Ins Co is the trustee and Mortgage Electronic Registration Systems, Inc., solely as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors and assigns is the beneficiary under that certain deed of trust dated 03/06/09 and recorded on 03/27/09 under SNOHOMISH County, Washington Auditor's File No. 200903270455.

    The present beneficiary under said deed of trust appoints Northwest Trustee Services, Inc., a Washington corporation, whose address is P.O. Box 997, Bellevue, WA 98009-0997, as successor trustee under the deed of trust with all powers of the original trustee.

Cenlar FSB

By _____   11/21/12
    Jennifer Dobron
    Assistant Secretary

STATE OF  NJ    )
               )ss
COUNTY OF  Merce    )

Jennifer Dobron

I certify that I know or have satisfactory evidence that _____ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the Assistant Secretary of Cenlar FSB to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: 11/21/12

NANCY K MORRIS
NOTARY
—O—
PUBLIC
NEW JERSEY

Notary Public in and for the State of ____
Residing at  Ewing
My appointment expires  1/22/13

NORTHWEST TRUSTEE SERVICES, INC.
P.O. Box 997
BELLEVUE, WA 98009-0997
425-586-1900   FAX 425-586-1997

Client:  Cenlar FSB
Borrower: Untermeyer, Anne

NANCY K. MORRIS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires January 22, 2013

ELECTRONICALLY RECORDED
201211130377                          1
11/13/2012 10:43 AM               14.00
SNOHOMISH COUNTY, WASHINGTON

After Recording Return to:
Cenlar FSB
425 Phillips Boulevard
Ewing, NJ 08618

7367.21301/Anderson, Alan C.                    MIN# 100029500019680366

## Assignment of Deed of Trust

For Value Received, the undersigned as Beneficiary, hereby grants, conveys, assigns and transfers to Cenlar FSB, whose address is 425 Phillips Boulevard, Ewing, NJ 08618, all beneficial interest under that certain deed of trust, dated 08/13/07, executed by Alan C. Anderson, an unmarried man, Grantors, to Fidelity National Title Company of Washington, Trustee, and recorded on 08/20/07, under Auditor's File No. 200708200704, Records of SNOHOMISH County, Washington.

Dated ___11 / 2_____ 20_12_

Mortgage Electronic Registration Systems, Inc. solely as
nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors
and assigns

By: _____
Title: Jennifer Dobron     Assistant Secretary

STATE OF ___NJ_____ )
                                        ) ss.
COUNTY OF __Mercer____ )

I certify that I know or have satisfactory evidence that ___Jennifer L. Dobron__ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the ___Assistant Secretary___ of __MERS_____ to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: __November 2, 2012__

_____
NOTARY PUBLIC in and for the State of
NJ
Residing at Ewing
My commission expires 1/22/13

NANCY K. MORRIS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires January 22, 2013

[Notary Seal: NANCY K. MORRIS / NOTARY PUBLIC / NEW JERSEY]

[Watermark: Unofficial Document repeated diagonally across page]

ELECTRONICALLY RECORDED
201211130378                        1
11/13/2012 10:43 AM              14.00
SNOHOMISH COUNTY, WASHINGTON

After Recording Return to:
Vonnie McElligott
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997

20121113 0378

## Appointment of Successor Trustee

File No. 7367.21301

Alan C. Anderson, an unmarried man is/are the grantor(s), Fidelity National Title Company of Washington is the trustee and Mortgage Electronic Registration Systems, Inc. solely as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors and assigns is the beneficiary under that certain deed of trust dated 08/13/07 and recorded on 08/20/07 under SNOHOMISH County, Washington Auditor's File No. 200708200704.

The present beneficiary under said deed of trust appoints Northwest Trustee Services, Inc., a Washington corporation, whose address is P.O. Box 997, Bellevue, WA 98009-0997, as successor trustee under the deed of trust with all powers of the original trustee.

Cenlar FSB                                    10/19/12

By _____
Jennifer Dobron
Assistant Secretary

Jennifer Dobron

STATE OF  NJ            )
COUNTY OF  Mercer      )ss

I certify that I know or have satisfactory evidence that _____ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the  Assistant Secretary  of _____  Cenlar FSB  to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated:  10/19/12

[Notary Seal: NANCY K. MORRIS NOTARY PUBLIC NEW JERSEY]

NORTHWEST TRUSTEE SERVICES, INC.
P.O. Box 997
BELLEVUE, WA 98009-0997
425-586-1900       FAX 425-586-1997

_____
Notary Public in and for the State of  NJ
Residing at  Ewing NJ
My appointment expires  1/22/13

Client:  Cenlar FSB
Borrower: Anderson, Alan C.

NANCY K. MORRIS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires January 22, 2013

ELECTRONICALLY RECORDED
201212075002                          1
12/07/2012 01:28 PM              32.00
SNOHOMISH COUNTY, WASHINGTON

After Recording Return to:
Vonnie McElligott
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997

201212075002

### Appointment of Successor Trustee

File No. 7367.21221

Joeseph Soleau, a single man is/are the grantor(s), Transnation is the trustee and Mortgage Electronic Registration Systems, Inc. solely as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors and assigns is the beneficiary under that certain deed of trust dated 08/08/07 and recorded on 08/14/07 under SNOHOMISH County, Washington Auditor's File No. 200708140524 and Recorded as Inst. No. 20070815000594 in King County.

The present beneficiary under said deed of trust appoints Northwest Trustee Services, Inc., a Washington corporation, whose address is P.O. Box 997, Bellevue, WA 98009-0997, as successor trustee under the deed of trust with all powers of the original trustee.

Cenlar FSB                                    11/21/12

By _____
Jennifer Dobron
Assistant Secretary

STATE OF  N J          )
                                )ss
COUNTY OF  Mercer  )

I certify that I know or have satisfactory evidence that Jennifer Dobron is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the Assistant Secretary of Cenlar FSB to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: 11/21/13

_____
Notary Public in and for the State of  NJ
Residing at  Ewins
My appointment expires  1/22/13

NANCY K. MORRIS
NOTARY PUBLIC
NEW JERSEY

NORTHWEST TRUSTEE SERVICES, INC.
P.O. BOX 997
BELLEVUE, WA 98009-0997
425-586-1900     FAX 425-586-1997

Client:    Cenlar FSB
Borrower: Soleau, Joeseph

NANCY K. MORRIS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires January 22, 2013

ELECTRONICALLY RECORDED
201212050768                    1
12/05/2012 01:09 PM          14.00
SNOHOMISH COUNTY, WASHINGTON

After Recording Return to:
Cenlar FSB
425 Phillips Boulevard
Ewing, NJ 08618

20121205076 8

7367.21390/Untermeyer, Anne              MIN# 100029500031858206 .
                                          MERS Phone: 1-888-679-6377

## Assignment of Deed of Trust

For Value Received, the undersigned as Beneficiary, hereby grants, conveys, assigns and transfers to Cenlar FSB,
whose address is 425 Phillips Boulevard, Ewing, NJ 08618 all beneficial interest under that certain deed of trust,
dated 03/06/09, executed by Anne Untermeyer, Grantors, to First American Title Ins Co, Trustee, and recorded on
03/27/09, under Auditor's File No. 200903270455, Records of SNOHOMISH County, Washington.

Dated_____11\21_____20 12

                              Mortgage Electronic Registration Systems, Inc. solely as
                              nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors
                              and assigns

                              By:_____
                              Title:_____
                                    Jennifer Dobron
                                    Assistant Secretary

STATE OF ____NJ_____ )
                              ) ss.
COUNTY OF __Mercer_____ )

I certify that I know or have satisfactory evidence that _____Jennifer Dobron___ is the person who appeared
before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was
authorized to execute the instrument and acknowledged it as the ___Assistant Secretary__ of Mortgage
Electronic Registration Systems, Inc. solely as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors
and assigns to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: __1/21/12_____

                              _____
                              NOTARY PUBLIC in and for the State of
                              __NJ_____
                              Residing at __Ewing_____
                              My commission expires __1/22/13_____

                              NANCY K. MORRIS
                              NOTARY PUBLIC OF NEW JERSEY
                              My Commission Expires January 22, 2013

After Recording Mail to:
Northwest Trustee Services, Inc.
Vonnie McElligott
P.O. Box 997
Bellevue, WA 98009-0997



**20121213001354**

COURTTRAX CORP AST
PAGE-001 OF 003          16.00
12/13/2012 14:03
KING COUNTY, WA

---

**Document Title(s): (or transactions contained therein)**
1. Appointment of Successor Trustee
2.
3.

**Reference Number(s) of Documents assigned or released:**
200708140524 and Recorded as Inst. No. 20070815000594 in King County
_____ Additional numbers on page__ of document

**Grantor(s): (Last name first, then first and initials)**
1. Soleau, Joeseph
2. Cenlar FSB
3.
4.
5. _____ Additional names on page_____ of document

**Grantee(s): (Last name first, then first and initials)**
1. Transnation
2. Northwest Trustee Services, Inc.
3.
4.
5. Additional name on page_____ of document

**Abbreviated Legal Description as follows:** (i.e. lot/block/plat or section/township/range/quarter/quarter)
UNIT A-404 IN BLDG A OF CAMBRIA HILLS CONDO

_____ Complete legal description is on page_____ of document

**Assessor's Property Tax Parcel/Account Number(s):**
01049400140400

After Recording Return to:
Yonnie McElligott
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997

201212075002

### Appointment of Successor Trustee

File No. 7367.21221

Joeseph Soleau, a single man is/are the grantor(s), Transnation is the trustee and Mortgage Electronic Registration Systems, Inc. solely as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors and assigns is the beneficiary under that certain deed of trust dated 08/08/07 and recorded on 08/14/07 under SNOHOMISH County, Washington Auditor's File No. 200708140524 and Recorded as Inst. No. 20070815000594 in King County.

The present beneficiary under said deed of trust appoints Northwest Trustee Services, Inc., a Washington corporation, whose address is P.O. Box 997, Bellevue, WA 98009-0997, as successor trustee under the deed of trust with all powers of the original trustee.

Cenlar FSB                                                11/21/12

By _____
Jennifer Dobron
Assistant Secretary

STATE OF __NJ_____ )
                                                    )ss
COUNTY OF __Mercer_____ )

I certify that I know or have satisfactory evidence that __Jennifer Dobron__ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the __Assistant Secretary__ of Cenlar FSB to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: __11/21/13_____

_____
Notary Public in and for the State of __NJ__
Residing at __Ewins__
My appointment expires __1/22/13___

NANCY K. MORRIS
NOTARY
-O-
PUBLIC
NEW JERSEY

NORTHWEST TRUSTEE SERVICES, INC.                    Client:   Cenlar FSB
P.O. Box 997                                                    Borrower: Soleau, Joeseph
BELLEVUE, WA 98009-0997
425-586-1900      FAX 425-586-

NANCY K. MORRIS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires January 22, 2013

Unofficial Document

STATE OF WASHINGTON } ss
COUNTY OF SNOHOMISH }

I, Carolyn Weikel, Snohomish County Auditor, do hereby certify that the foregoing instrument is a true and correct copy of the document now on file or recorded in my office.

In witness whereof, I hereunto set my hand this _____ day of _____ 20___

CAROLYN WEIKEL, County Auditor

_____ Deputy

AUDITOR SNOHOMISH COUNTY
SEAL
WASHINGTON

ELECTRONICALLY RECORDED
201212070599              1
12/07/2012 01:29 PM      14.00
SNOHOMISH COUNTY, WASHINGTON

After Recording Return to:
Vonnie McElligott
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997

201212070599

### Appointment of Successor Trustee

File No. 7367.21431

Jesus Avilez is/are the grantor(s), Commonwealth Land Title is the trustee and Mortgage Electronic Registration Systems, Inc. solely as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors and assigns is the beneficiary under that certain deed of trust dated 08/07/08 and recorded on 08/12/08 under SNOHOMISH County, Washington Auditor's File No. 200808120358.

The present beneficiary under said deed of trust appoints Northwest Trustee Services, Inc., a Washington corporation, whose address is P.O. Box 997, Bellevue, WA 98009-0997, as successor trustee under the deed of trust with all powers of the original trustee.

Cenlar FSB

11/21/12

By _____
Jennifer Dobron
Assistant Secretary

Jennifer Dobron

STATE OF NJ )
COUNTY OF Mercer )ss

I certify that I know or have satisfactory evidence that _____ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the Assistant Secretary of Cenlar FSB to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: 11/21/13

Notary Public in and for the State of NJ
Residing at Ewing
My appointment expires 1/22/13

NORTHWEST TRUSTEE SERVICES, INC.
P.O. Box 997
BELLEVUE, WA 98009-0997
425-586-1900    FAX 425-586-1997

Client: Cenlar FSB
Borrower: Avilez, Jesus

NANCY K. MORRIS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires January 22, 2013

NANCY K. MORRIS
NOTARY PUBLIC
NEW JERSEY

After Recording Return to:
Northwest Trustee Services, Inc.
Attention: Winston Khan
P.O. Box 997
Bellevue, WA 98009-0997



201212190393     2   PGS
12/19/2012 11:43am $15.00
SNOHOMISH COUNTY, WASHINGTON

---

7367.21457/Cook Jr, Donald F. and Cook, Heather C.          MIN# 100604500340412516

MERS Phone: 1-888-679-6377

Assignment of Deed of Trust          FIRST AM
7401275  2/5

   For Value Received, the undersigned as Beneficiary, hereby grants, conveys, assigns and transfers to
Boeing Employees' Credit Union, whose address is c/o Cenlar FSB 425 Phillips Blvd Ewing, NJ 08168, all
beneficial interest under that certain deed of trust, dated 03/02/11, executed by Donald F. Cook Jr. who acquired
title as Donald F. Cook and Heather C. Cook, husband and wife, Grantors, to Stewart Title- Everett, Trustee, and
recorded on 03/11/11, under Auditor's File No. 201103110140, Records of SNOHOMISH County, Washington.

Dated_____12/10/____, 20_12_

                                        Mortgage Electronic Registration Systems, Inc. solely as
                                        nominee for Boeing Employees' Credit Union

                                        By_____Jennifer L. Dobron_____
                                        Title:_____Jennifer L. Dobron_____
                                                   Assistant Secretary

STATE OF NEW JERSEY                    )
                                       ) ss.
COUNTY OF MERCER                       )

I certify that I know or have satisfactory evidence that __Jennifer L. Dobren__ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the **Assistant Secretary** of Mortgage Electronic Registration Systems, Inc. solely as nominee for Boeing Employees' Credit Union to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: _12/11/12_

NOTARY PUBLIC in and for the State of
__NJ__
Residing at _Ewing_
My commission expires _1/22/18_

NANCY K. MORRIS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires January 22, 2018

NANCY K. MORRIS
NOTARY
PUBLIC
NEW JERSEY

ELECTRONICALLY RECORDED
201212070596                    1
12/07/2012 01:28 PM          14.00
SNOHOMISH COUNTY, WASHINGTON

After Recording Return to:
Cenlar FSB
425 Phillips Boulevard
Ewing, NJ 08618

201212070596

7367.21221/Soleau, Joeseph

MIN# 100029500019325129
MERS Phone: 1-888-679-6377

## Assignment of Deed of Trust

For Value Received, the undersigned as Beneficiary, hereby grants, conveys, assigns and transfers to Cenlar FSB, whose address is 425 Phillips Boulevard, Ewing, NJ 08618 all beneficial interest under that certain deed of trust, dated 08/08/07, executed by Joeseph Soleau, a single man, Grantors, to Transnation, Trustee, and recorded on 08/14/07, under Auditor's File No. 200708140524 and Recorded as Inst. No. 20070815000594 in King County, Records of SNOHOMISH County, Washington.

Dated_____11/21_____, 20__12__

Mortgage Electronic Registration Systems, Inc. solely as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors and assigns

By:_____
Title:_____
       Jennifer Dobron
       Assistant Secretary

STATE OF _____NJ_____ )
                          ) ss.
COUNTY OF ___Mercer___ )

Jennifer Dobron

I certify that I know or have satisfactory evidence that _____ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the Assistant Secretary of Mortgage Electronic Registration Systems, Inc. solely as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors and assigns to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: __11/21/12__

NOTARY PUBLIC in and for the State of
__NJ__
Residing at ___Ewing___
My commission expires __1/22/13__

NANCY K. MORRIS
NOTARY PUBLIC
—O—
NEW JERSEY

NANCY K. MORRIS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires January 22, 2013

After Recording Return to:
Cenlar FSB
425 Phillips Boulevard
Ewing, NJ 08618



**20121205001222**
TITLE COURT SE ADT        14.00
PAGE-001 OF 001
12/05/2012 13:29
KING COUNTY, WA

7367.21372/Tran, Viet

MIN# 100029500018851901
MERS Phone: 1-888-679-6377

# 120 33 030 2

## Assignment of Deed of Trust

For Value Received, the undersigned as Beneficiary, hereby grants, conveys, assigns and transfers to Cenlar FSB, whose address is 425 Phillips Boulevard, Ewing, NJ 08618 all beneficial interest under that certain deed of trust, dated 07/09/07, executed by Viet Tran and Thuy Trang Nguyen, husband and wife, Grantors, to Chicago Title, Trustee, and recorded on 07/16/07, under Auditor's File No. 20070716002017, Records of KING County, Washington.

Dated_____11/21___, 20__12__

Mortgage Electronic Registration Systems, Inc. solely as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors and assigns

By:_____
Title:_____
    Jennifer Dobron
    Assistant Secretary

STATE OF ____NJ____ )
                      ) ss.
COUNTY OF __Mercer__ )

I certify that I know or have satisfactory evidence that ____Jennifer Dobron____ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the ____Assistant Secretary____ of Mortgage Electronic Registration Systems, Inc. solely as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors and assigns to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: __11/21/12__

NOTARY PUBLIC in and for the State of NJ
Residing at Ewing
My commission expires 1/22/13

NANCY K. MORRIS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires January 22, 2013

NANCY K. MORRIS
NOTARY
—o—
PUBLIC
NEW JERSEY

After Recording Return to:
Cenlar FSB
425 Phillips Boulevard
Ewing, NJ 08618

*(log)*

**20121206002349**
TITLE COURT SE ADT        14.00
PAGE-001 OF 001
12/06/2012 14:15
KING COUNTY, WA

7367.21314/Glidden, Richard and Lucero, Leticia           MIN# 100029500013275411

*#120298590*

## Assignment of Deed of Trust

For Value Received, the undersigned as Beneficiary, hereby grants, conveys, assigns and transfers to Cenlar FSB, whose address is 425 Phillips Boulevard, Ewing, NJ 08618, all beneficial interest under that certain deed of trust, dated 08/16/06, executed by Richard A. Glidden and Leticia Lucero, husband and wife, Grantors, to Old Republic Title, LTD, Trustee, and recorded on 08/18/06, under Auditor's File No. 20060818001673, Records of KING County, Washington.

Dated_____11/21_____, 20_12_

                              Mortgage Electronic Registration Systems, Inc. solely as
                              nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors
                              and assigns

                              By:_____
                              Title:___Jennifer Dobron_____
                                      Assistant Secretary

STATE OF ____NJ_____)
                                        )ss.
COUNTY OF ___Mercer_____)

        I certify that I know or have satisfactory evidence that___Jennifer Dobron_____is the person who
appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she)
was authorized to execute the instrument and acknowledged it as the ___Assistant Secretary___ of
___MERS_____ to be the free and voluntary act of such party for the uses and purposes mentioned in
the instrument.

Dated:_____

                              _____
                              NOTARY PUBLIC in and for the State of
                              ___NJ____
                              Residing at __Ewing____
                              My commission expires__1-22-13____

                              NANCY K. MORRIS
                              NOTARY PUBLIC OF NEW JERSEY
                              My Commission Expires January 22, 2013

ELECTRONICALLY RECORDED
201212070598                          1
12/07/2012 01:29 PM                14.00
SNOHOMISH COUNTY, WASHINGTON

After Recording Return to:
Cenlar FSB
425 Phillips Boulevard
Ewing, NJ 08618

7367.21431/Avilez, Jesus             MIN# 100029500027970189
                                     MERS Phone: 1-888-679-6377

## Assignment of Deed of Trust

For Value Received, the undersigned as Beneficiary, hereby grants, conveys, assigns and transfers to Cenlar FSB, whose address is 425 Phillips Boulevard, Ewing, NJ 08618, all beneficial interest under that certain deed of trust, dated 08/07/08, executed by Jesus Avilez, Grantors, to Commonwealth Land Title, Trustee, and recorded on 08/12/08, under Auditor's File No. 200808120358, Records of SNOHOMISH County, Washington.

Dated_____11/21/____, 20__12____

                          Mortgage Electronic Registration Systems, Inc. solely as
                          nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors
                          and assigns

                          By:_____
                          Title:_____
                             Jennifer Dobron
                             Assistant Secretary

STATE OF _____NJ_____ )
                        ) ss.
COUNTY OF ____Mercer____ )

     I certify that I know or have satisfactory evidence that ___Jennifer Dobron___ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the Assistant Secretary of Mortgage Electronic Registration Systems, Inc. solely as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors and assigns to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: __11/21/12_____

                          _____
                          NOTARY PUBLIC in and for the State of
                          NJ
                          Residing at Ewing
                          My commission expires 1/22/13

                             NANCY K. MORRIS
                             NOTARY PUBLIC OF NEW JERSEY
                             My Commission Expires January 22, 2013

NANCY K. MORRIS
NOTARY
PUBLIC
NEW JERSEY

# EXHIBIT 6

Lucero v. Cenlar FSB, et al.

2:13-cv-00602-RSL

Composite of foreclosure documents signed by Jennifer Dobron

After Recording Return to:
Winston Khan
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997


201212190394      2    PGS
12/19/2012 11:43am $15.00
SNOHOMISH COUNTY, WASHINGTON

---

## Appointment of Successor Trustee

File No. 7367.21437

FIRST AM *7401275* 2/15

    Donald F. Cook Jr., who acquired title as Donald F. Cook and Heather C. Cook, husband and wife is/are the grantor(s). Stewart Title - Everett is the trustee and Mortgage Electronic Registration Systems, Inc. solely as nominee for Boeing Employees' Credit Union is the beneficiary under that certain deed of trust dated 03/02/11 and recorded on 03/11/11 under SNOHOMISH County, Washington Auditor's File No. 201103110140.

    The present beneficiary under said deed of trust appoints Northwest Trustee Services, Inc., a Washington corporation, whose address is P.O. Box 997, Bellevue, WA 98009-0997, as successor trustee under the deed of trust with all powers of the original trustee.

Cenlar FSB as Servicing Agent for Boeing Employees' Credit Union

By _____  11/23/12
Jennifer Dobron
Assistant Secretary

NORTHWEST TRUSTEE SERVICES, INC.
P.O. BOX 997
BELLEVUE, WA 98009-0997
425-586-1900      FAX 425-586-1997

Client:  Cenlar FSB
Borrower: Cook Jr, Donald F and Cook, Heather C

STATE OF _NEW JERSEY_,
)ss
COUNTY OF _MERCER_ )

I certify that I know or have satisfactory evidence that _Jennifer Dobron_ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the **Assistant Secretary** of Cenlar FSB as Servicing Agent for Boeing Employees' Credit Union to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: _11/23/12_

Notary Public in and for the State of _New Jersey_
Residing at _Ewing, New Jersey_
My appointment expires

SARA H VIRGIN
ID # 2418616
NOTARY PUBLIC
STATE OF NEW JERSEY
My Commission Expires March 19, 2017

NORTHWEST TRUSTEE SERVICES, INC.
P.O. BOX 997
BELLEVUE, WA 98009-0997
425-586-1900     FAX 425-586-1997

Client:    Cenlar FSB
Borrower: Cook Jr, Donald F. and Cook, Heather C.

ELECTRONICALLY RECORDED
201212050769                                        1
12/05/2012 01:09 PM              14.00
SNOHOMISH COUNTY, WASHINGTON

After Recording Return to:
Vonnie McElligott
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997

## Appointment of Successor Trustee

File No. 7367.21390

Anne Untermeyer is/are the grantor(s), First American Title Ins Co is the trustee and Mortgage Electronic Registration Systems, Inc, solely as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors and assigns is the beneficiary under that certain deed of trust dated 03/06/09 and recorded on 03/27/09 under SNOHOMISH County, Washington Auditor's File No. 200903270455.

The present beneficiary under said deed of trust appoints Northwest Trustee Services, Inc., a Washington corporation, whose address is P.O. Box 997, Bellevue, WA 98009-0997, as successor trustee under the deed of trust with all powers of the original trustee.

Cenlar FSB

By _____  11/21/12
      Jennifer Dobron
      Assistant Secretary

STATE OF _NJ_____ )
                            )ss
COUNTY OF _Mercer_ )

I certify that I know or have satisfactory evidence that _____is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the Assistant Secretary of Cenlar FSB to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: 11/21/12

_____
Notary Public in and for the State of
Residing at Ewing
My appointment expires 1/22/13

NANCY K MORRIS
NOTARY
-o-
PUBLIC
NEW JERSEY

NORTHWEST TRUSTEE SERVICES, INC.          Client:    Cenlar FSB          NANCY K. MORRIS
P.O. Box 997                                                 Borrower: Untermeyer, Anne   NOTARY PUBLIC OF NEW JERSEY
BELLEVUE, WA 98009-0997                                                                My Commission Expires January 22, 2013
425-586-1900     FAX 425-586-1997

ELECTRONICALLY RECORDED
201211130377                    1
11/13/2012 10:43 AM        14.00
SNOHOMISH COUNTY, WASHINGTON

After Recording Return to:
Cenlar FSB
425 Phillips Boulevard
Ewing, NJ 08618

201211130377

7367.21301/Anderson, Alan C.                    MIN# 100029500019680366

## Assignment of Deed of Trust

For Value Received, the undersigned as Beneficiary, hereby grants, conveys, assigns and transfers to Cenlar FSB, whose address is 425 Phillips Boulevard, Ewing, NJ 08618, all beneficial interest under that certain deed of trust, dated 08/13/07, executed by Alan C. Anderson, an unmarried man, Grantors, to Fidelity National Title Company of Washington, Trustee, and recorded on 08/20/07, under Auditor₃ File No. 200708200704, Records of SNOHOMISH County, Washington.

Dated ____11/2____ , 20 12

Mortgage Electronic Registration Systems, Inc. solely as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors and assigns



By: _____
Title: Jennifer Dobron   Assistant Secretary

STATE OF   NJ                    )
                                 ) ss.
COUNTY OF   Mercer               )

I certify that I know or have satisfactory evidence that ____Jennifer L. Dobron____ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the ____Assistant Secretary____ of ____MERS____ to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: November 2 2012

_____
NOTARY PUBLIC in and for the State of ____NJ____
Residing at ____Ewing____
My commission expires 1/22/13

NANCY K. MORRIS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires January 22, 2013

ELECTRONICALLY RECORDED
201211130378                                    1
11/13/2012 10:43 AM              14.00
SNOHOMISH COUNTY, WASHINGTON

After Recording Return to:
Vonnie McElligott
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997

201211130378

## Appointment of Successor Trustee

File No. 7367.21301

Alan C. Anderson, an unmarried man is/are the grantor(s), Fidelity National Title Company of Washington is the trustee and Mortgage Electronic Registration Systems, Inc. solely as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors and assigns is the beneficiary under that certain deed of trust dated 08/13/07 and recorded on 08/20/07 under SNOHOMISH County, Washington Auditor's File No. 200708200704.

The present beneficiary under said deed of trust appoints Northwest Trustee Services, Inc., a Washington corporation, whose address is P.O. Box 997, Bellevue, WA 98009-0997, as successor trustee under the deed of trust with all powers of the original trustee.

Cenlar FSB

10/19/12

By:  _Jennifer L. Dobron_
Jennifer Dobron
Assistant Secretary

STATE OF  NJ            )
                                      )ss
COUNTY OF  Mercer  )

Jennifer Dobron

I certify that I know or have satisfactory evidence that _____ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the Assistant Secretary of
Cenlar FSB  to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated:  10/19/12

_Nancy K. Morris_
Notary Public in and for the State of  NJ
Residing at  EW NS
My appointment expires  1.22.13

NORTHWEST TRUSTEE SERVICES, INC.
P.O. BOX 997
BELLEVUE, WA 98009-0997
425-586-1900    FAX 425-586-1997

Client:    Cenlar FSB
Borrower: Anderson, Alan C.

NANCY K. MORRIS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires January 22, 2013

ELECTRONICALLY RECORDED
201212075002                          1
12/07/2012 01:28 PM          32.00
SNOHOMISH COUNTY, WASHINGTON

After Recording Return to:
Vonnie McElligott
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997

201212075002

## Appointment of Successor Trustee

File No. 7367.21221

Joeseph Soleau, a single man is/are the grantor(s), Transnation is the trustee and Mortgage Electronic Registration Systems, Inc. solely as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors and assigns is the beneficiary under that certain deed of trust dated 08/08/07 and recorded on 08/14/07 under SNOHOMISH County, Washington Auditor's File No. 200708140524 and Recorded as Inst. No. 20070815000594 in King County.

The present beneficiary under said deed of trust appoints Northwest Trustee Services, Inc., a Washington corporation, whose address is P.O. Box 997, Bellevue, WA 98009-0997, as successor trustee under the deed of trust with all powers of the original trustee.

Cenlar FSB                                                            11/21/12

By _____
Jennifer Dobron
Assistant Secretary

STATE OF N J          )
                                )ss
COUNTY OF Mercr    )

I certify that I know or have satisfactory evidence that _Jennifer Dobron_ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the _Assistant Secretary_ of Cenlar FSB to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: 11/21/13

_____
Notary Public in and for the State of _NJ_
Residing at _Ewins_
My appointment expires _1/22/13_

NORTHWEST TRUSTEE SERVICES, INC.          Client:   Cenlar FSB
P.O. BOX 997                                                Borrower: Soleau, Joeseph
BELLEVUE, WA 98009-0997
425-586-1900     FAX 425-586-1997

NANCY K. MORRIS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires January 22, 2013

NANCY K. MORRIS
NOTARY
-o-
PUBLIC
NEW JERSEY

ELECTRONICALLY RECORDED
201212050768                        1
12/05/2012 01:09 PM           14.00
SNOHOMISH COUNTY, WASHINGTON

After Recording Return to:
Cenlar FSB
425 Phillips Boulevard
Ewing, NJ 08618

7367.21390/Untermeyer, Anne

MIN# 100029500031858206
MERS Phone: 1-888-679-6377

## Assignment of Deed of Trust

For Value Received, the undersigned as Beneficiary, hereby grants, conveys, assigns and transfers to Cenlar FSB, whose address is 425 Phillips Boulevard, Ewing, NJ 08618 all beneficial interest under that certain deed of trust, dated 03/06/09, executed by Anne Untermeyer, Grantors, to First American Title Ins Co, Trustee, and recorded on 03/27/09, under Auditor's File No. 200903270455, Records of SNOHOMISH County, Washington.

Dated _____ 11/21 _____ 20 12

Mortgage Electronic Registration Systems, Inc. solely as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors and assigns

By: _____
Title: _____
Jennifer Dobron
Assistant Secretary

STATE OF ____ NJ ____ )
                                            ) ss.
COUNTY OF __ Mercer __ )

I certify that I know or have satisfactory evidence that _____ Jennifer Dobron _____ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the ___ Assistant Secretary ___ of Mortgage Electronic Registration Systems, Inc. solely as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors and assigns to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: __ 11/21/12 __

_____
NOTARY PUBLIC in and for the State of
__ NJ __
Residing at __ Ewing __
My commission expires __ 1/22/13 __

NANCY K. MORRIS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires January 22, 2013

After Recording Mail to:
Northwest Trustee Services, Inc.
Vonnie McElligott
P.O. Box 997
Bellevue, WA 98009-0997



**20121213001354**
COURTTRAX CORP AST
PAGE-001 OF 003               16.00
12/13/2012 14:03
KING COUNTY, WA

**Document Title(s): (or transactions contained therein)**
1.Appointment of Successor Trustee
2.
3.

**Reference Number(s) of Documents assigned or released:**
200708140524 and Recorded as Inst. No. 20070815000594 in King County
_____Additional numbers on page__ of document

**Grantor(s): (Last name first, then first and initials)**
1. Soleau, Joeseph
2. Cenlar FSB
3.
4.
5._____Additional names on page_____of document

**Grantee(s): (Last name first, then first and initials)**
1. Transnation
2. Northwest Trustee Services, Inc.
3.
4.
5.   Additional name on page_____of document

**Abbreviated Legal Description as follows:** (i.e. lot/block/plat or section/township/range/quarter/quarter)
UNIT A-404 IN BLDG A OF CAMBRIA HILLS CONDO

_____Complete legal description is on page_____of document

**Assessor's Property Tax Parcel/Account Number(s):**
01049400140400

After Recording Return to:
Vonnie McElligott
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997

201212075002

## Appointment of Successor Trustee

File No. 7367.21221

Joeseph Soleau, a single man is/are the grantor(s), Transnation is the trustee and Mortgage Electronic Registration Systems, Inc. solely as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors and assigns is the beneficiary under that certain deed of trust dated 08/08/07 and recorded on 08/14/07 under SNOHOMISH County, Washington Auditor's File No. 200708140524 and Recorded as Inst. No. 20070815000594 in King County.

The present beneficiary under said deed of trust appoints Northwest Trustee Services, Inc., a Washington corporation, whose address is P.O. Box 997, Bellevue, WA 98009-0997, as successor trustee under the deed of trust with all powers of the original trustee.

Cenlar FSB                                    11/2 1/12

By _____
Jennifer Dobron
Assistant Secretary

STATE OF N J )
                          )ss
COUNTY OF Mercer )

I certify that I know or have satisfactory evidence that Jennifer Dobron is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the Assistant Secretary of Cenlar FSB to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: 11/21/13

_____
Notary Public in and for the State of N J
Residing at Ewins
My appointment expires 1/22/13

NORTHWEST TRUSTEE SERVICES, INC.          Client:  Cenlar FSB
P.O. Box 997                                            Borrower: Soleau, Joeseph
BELLEVUE, WA 98009-0997
425-586-1900          FAX 425-586-1997

NANCY K. MORRIS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires January 22, 2013

NANCY K. MORRIS
NOTARY
-0-
PUBLIC
NEW JERSEY

STATE OF WASHINGTON } ss
COUNTY OF SNOHOMISH }

I, Carolyn Weikel, Snohomish County Auditor, do hereby certify that the foregoing instrument is a true and correct copy of the document now on file or recorded in my office.

In witness whereof, I hereunto set my hand this ____ day of _____ 20__

CAROLYN WEIKEL, County Auditor

Deputy

AUDITOR SNOHOMISH COUNTY
SEAL
WASHINGTON

ELECTRONICALLY RECORDED
201212070599                        1
12/07/2012 01:29 PM         14.00
SNOHOMISH COUNTY, WASHINGTON

After Recording Return to:
Vonnie McElligott
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997

201212070599

## Appointment of Successor Trustee

File No. 7367.21431

Jesus Avilez is/are the grantor(s), Commonwealth Land Title is the trustee and Mortgage Electronic Registration Systems, Inc. solely as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors and assigns is the beneficiary under that certain deed of trust dated 08/07/08 and recorded on 08/12/08 under SNOHOMISH County, Washington Auditor's File No. 200808120358.

The present beneficiary under said deed of trust appoints Northwest Trustee Services, Inc., a Washington corporation, whose address is P.O. Box 997, Bellevue, WA 98009-0997, as successor trustee under the deed of trust with all powers of the original trustee.

Cenlar FSB

By   11/21/12
Jennifer Dobron
Assistant Secretary

Jennifer Dobron

STATE OF  NJ          )
                      )ss
COUNTY OF  Mercer     )

I certify that I know or have satisfactory evidence that _____ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the Assistant Secretary of Cenlar FSB to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated:  11/21/13

Notary Public in and for the State of  NJ
Residing at  Ewing
My appointment expires  1/22/13

(Notary Seal: NANCY K. MORRIS / NOTARY PUBLIC / NEW JERSEY)

NORTHWEST TRUSTEE SERVICES, INC.
P.O. Box 997
BELLEVUE, WA 98009-0997
425-586-1900      FAX 425-586-1997

Client:     Cenlar FSB
Borrower: Avilez, Jesus

NANCY K. MORRIS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires January 22, 2015

After Recording Return to:
Northwest Trustee Services, Inc.
Attention: Winston Khan
P.O. Box 997
Bellevue, WA 98009-0997



201212190393        2    PGS
12/19/2012 11:43am $15.00
SNOHOMISH COUNTY, WASHINGTON

---

7367.21457/Cook Jr, Donald F. and Cook, Heather C.        MIN# 100604500340412516

MERS Phone: 1-888-679-6377

**Assignment of Deed of Trust**    FIRST AM
7401275  2/15

For Value Received, the undersigned as Beneficiary, hereby grants, conveys, assigns and transfers to Boeing Employees' Credit Union, whose address is c/o Cenlar FSB 425 Phillips Blvd Ewing, NJ 08168, all beneficial interest under that certain deed of trust, dated 03/02/11, executed by Donald F. Cook Jr. who acquired title as Donald F. Cook and Heather C. Cook, husband and wife, Grantors, to Stewart Title- Everett, Trustee, and recorded on 03/11/11, under Auditor's File No. 201103110140, Records of SNOHOMISH County, Washington.

Dated _12/10/_, 20_12_

Mortgage Electronic Registration Systems, Inc. solely as nominee for Boeing Employees' Credit Union

By _____
Title: Jennifer L. Diobron
Assistant Secretary

STATE OF _NEW JERSEY_____ )
                                   ) ss.
COUNTY OF _MERCER_____ )

I certify that I know or have satisfactory evidence that __Jennifer L. Dobron__ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the **Assistant Secretary**_____ of Mortgage Electronic Registration Systems, Inc. solely as nominee for Boeing Employees' Credit Union to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: _12/11/12_

_____
NOTARY PUBLIC in and for the State of
_NJ_____
Residing at _Ewing_____
My commission expires _1/22/18_

NANCY K. MORRIS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires January 22, 2018

ELECTRONICALLY RECORDED
201212070596                        1
12/07/2012 01:28 PM          14.00
SNOHOMISH COUNTY, WASHINGTON

After Recording  Return to:
Cenlar FSB
425 Phillips Boulevard
Ewing, NJ  08618

201212070596

7367.21221/Soleau, Joeseph

MIN# 100029500019325129
MERS Phone: 1-888-679-6377

## Assignment of Deed of Trust

For Value Received, the undersigned as Beneficiary, hereby grants, conveys, assigns and transfers to Cenlar FSB, whose address is 425 Phillips Boulevard, Ewing, NJ  08618 all beneficial interest under that certain deed of trust, dated 08/08/07, executed by Joeseph Soleau, a single man, Grantors, to Transnation, Trustee, and recorded on 08/14/07, under Auditor's File No. 200708140524 and Recorded as Inst. No. 20070815000594 in King County, Records of SNOHOMISH County, Washington.

Dated ___11|21___, 20__12__

Mortgage Electronic Registration Systems, Inc. solely as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors and assigns

By: _____
Title: _____
Jennifer Dobron
Assistant Secretary

STATE OF ____NJ____ )
                                    ) ss.
COUNTY OF ___Mercer___ )

Jennifer Dobron

I certify that I know or have satisfactory evidence that _____ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the Assistant Secretary of Mortgage Electronic Registration Systems, Inc. solely as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors and assigns to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: __11|21|12__

_____
NOTARY PUBLIC in and for the State of
___NJ___
Residing at ___Ewing___
My commission expires __1/22/13__

NANCY K. MORRIS
NOTARY
PUBLIC
NEW JERSEY

NANCY K. MORRIS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires January 22, 2013

After Recording Return to:
Cenlar FSB
425 Phillips Boulevard
Ewing, NJ 08618



**20121205001222**
TITLE COURT SE ADT          14.00
PAGE-001 OF 001
12/05/2012 13:29
KING COUNTY, WA

7367.21372/Tran, Viet

MIN# 100029500018851901
MERS Phone: 1-888-679-6377

# Assignment of Deed of Trust

For Value Received, the undersigned as Beneficiary, hereby grants, conveys, assigns and transfers to Cenlar FSB, whose address is 425 Phillips Boulevard, Ewing, NJ 08618 all beneficial interest under that certain deed of trust, dated 07/09/07, executed by Viet Tran and Thuy Trang Nguyen, husband and wife, Grantors, to Chicago Title, Trustee, and recorded on 07/16/07, under Auditor's File No. 20070716002017, Records of KING County, Washington.

Dated _____ 11 21 ____, 20 __ 12

Mortgage Electronic Registration Systems, Inc. solely as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors and assigns

By: _____
Title: _____
Jennifer Dobron
Assistant Secretary

STATE OF ___ NJ ___ )
                                      ) ss.
COUNTY OF ___ Mercer ___ )

I certify that I know or have satisfactory evidence that _____ Jennifer Dobron _____ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the ___ Assistant Secretary ___ of Mortgage Electronic Registration Systems, Inc. solely as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors and assigns to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: 11/21/12 _____

_____
NOTARY PUBLIC in and for the State of
NJ _____
Residing at Ewing _____
My commission expires 1/22/13

NANCY K. MORRIS
NOTARY
PUBLIC
NEW JERSEY

NANCY K. MORRIS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires January 22, 2013

After Recording Return to:
Cenlar FSB
425 Phillips Boulevard
Ewing, NJ  08618

*(109)*

**20121206002349**

TITLE COURT SE ADT
PAGE-001 OF 001        14.00
12/06/2012 14:15
KING COUNTY, WA

---

7367.21314/Glidden, Richard and Lucero, Leticia          MIN# 100029500013275411

#120298590

## Assignment of Deed of Trust

For Value Received, the undersigned as Beneficiary, hereby grants, conveys, assigns and transfers to Cenlar FSB, whose address is 425 Phillips Boulevard, Ewing, NJ 08618, all beneficial interest under that certain deed of trust, dated 08/16/06, executed by Richard A. Glidden and Leticia Lucero, husband and wife, Grantors, to Old Republic Title, LTD, Trustee, and recorded on 08/18/06, under Auditor's File No. 20060818001673, Records of KING County, Washington.

Dated _____ 11 2 1 _____, 20 1 2

Mortgage Electronic Registration Systems, Inc. solely as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors and assigns

By: _____
Title: _____
Jennifer Dobron
Assistant Secretary

STATE OF _____ NJ _____ )
                                                    ) ss.
COUNTY OF _____ Mercer _____ )

    I certify that I know or have satisfactory evidence that _____ Jennifer Dobron _____ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the _____ Assistant Secretary _____ of _____ MERS _____ to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: _____

NOTARY PUBLIC in and for the State of
_____ NJ _____
Residing at _____ Ewing _____
My commission expires _____ 1 22 13 _____

NANCY K. MORRIS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires January 22, 2013

*(Notary Seal: NANCY K. MORRIS — NOTARY PUBLIC — NEW JERSEY)*

ELECTRONICALLY RECORDED
201212070598                    1
12/07/2012 01:29 PM         14.00
SNOHOMISH COUNTY, WASHINGTON

After Recording Return to:
Cenlar FSB
425 Phillips Boulevard
Ewing, NJ 08618

7367.21431/Avilez, Jesus      MIN# 100029500027970189
                              MERS Phone: 1-888-679-6377

## Assignment of Deed of Trust

For Value Received, the undersigned as Beneficiary, hereby grants, conveys, assigns and transfers to Cenlar FSB, whose address is 425 Phillips Boulevard, Ewing, NJ 08618, all beneficial interest under that certain deed of trust, dated 08/07/08, executed by Jesus Avilez, Grantors, to Commonwealth Land Title, Trustee, and recorded on 08/12/08, under Auditor's File No. 200808120358, Records of SNOHOMISH County, Washington.

Dated ___11/21___, 20_12_

Mortgage Electronic Registration Systems, Inc. solely as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors and assigns

By: _____
Title: _____Jennifer Doiron_____
           Assistant Secretary

STATE OF ___NJ___ )
                   ) ss.
COUNTY OF ___Mercer___ )

I certify that I know or have satisfactory evidence that ___Jennifer Doiron___ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the ___Assistant Secretary___ of Mortgage Electronic Registration Systems, Inc. solely as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors and assigns to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: ___11/21/12___

_____
NOTARY PUBLIC in and for the State of

Residing at ___Ewing___
My commission expires ___1/22/13___

NANCY K. MORRIS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires January 22, 2013

# EXHIBIT 7

Lucero v. Cenlar FSB, et al.

2:13-cv-00602-RSL

Appointment of Successor Trustee

After Recording Return to:
Vonnie McElligott
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997



**20121206002350**
TITLE COURT SE ADT
PAGE-001 OF 001          14.00
12/06/2012 14:15
KING COUNTY, WA

✱120298590

## Appointment of Successor Trustee

File No. 7367.21314

    Richard A. Glidden and Leticia Lucero, husband and wife is/are the grantor(s), Old Republic Title, LTD is the trustee and Mortgage Electronic Registration Systems, Inc, solely as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors and assigns is the beneficiary under that certain deed of trust dated 08/16/06 and recorded on 08/18/06 under KING County, Washington Auditor s File No. 20060818001673.

    The present beneficiary under said deed of trust appoints Northwest Trustee Services, Inc., a Washington corporation, whose address is P.O. Box 997, Bellevue, WA 98009-0997, as successor trustee under the deed of trust with all powers of the original trustee.

Cenlar FSB

By _____  10/3/12

Michael Blair
Vice President

STATE OF _____  )
                  ) ss
COUNTY OF _____  )

    I certify that I know or have satisfactory evidence that _____ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the _____ of Cenlar FSB to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: 10/3/12

*NANCY K. MORRIS*
*NOTARY*
*—o—*
*PUBLIC*
*JERSEY*

Notary Public in and for the State of _____
Residing at _____
My appointment expires _____

NORTHWEST TRUSTEE SERVICES, INC.
P.O. Box 997
BELLEVUE, WA 98009-0997
425-586-1900      FAX 425-586-1997

Client:    Cenlar FSB
Borrower: Glidden, Richard and Lucero, Leticia

NANCY K. MORRIS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires January 22, 2013

# EXHIBIT 8

Lucero v. Cenlar FSB, et al.

2:13-cv-00602-RSL

Assignment of Deed of Trust

After Recording Return to:
Cenlar FSB
425 Phillips Boulevard
Ewing, NJ  08618

**20121206002349**

TITLE COURT SE ADT         14.00
PAGE-001 OF 001
12/06/2012 14:15
KING COUNTY, WA

---

7367.21314/Glidden, Richard and Lucero, Leticia          MIN# 100029500013275411

#120 298590

## Assignment of Deed of Trust

For Value Received, the undersigned as Beneficiary, hereby grants, conveys, assigns and transfers to Cenlar FSB, whose address is 425 Phillips Boulevard, Ewing, NJ 08618, all beneficial interest under that certain deed of trust, dated 08/16/06, executed by Richard A. Glidden and Leticia Lucero, husband and wife, Grantors, to Old Republic Title, LTD, Trustee, and recorded on 08/18/06, under Auditor's File No. 20060818001673, Records of KING County, Washington.

Dated _____11/21_____, 20 12

Mortgage Electronic Registration Systems, Inc. solely as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors and assigns

By: _____
Title: _____
         Jennifer Dobron
         Assistant Secretary

STATE OF _____NJ_____ )
                                              ) ss.
COUNTY OF _____Mercer_____ )

I certify that I know or have satisfactory evidence that ____Jennifer Dobron____ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the ____Assistant Secretary____ of ____MERS____ to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: _____

NOTARY PUBLIC in and for the State of _____NJ_____
Residing at ____Ewing____
My commission expires ____1/22/13____

NANCY K. MORRIS
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires January 22, 2013

# EXHIBIT 9

Lucero v. Cenlar FSB, et al.

2:13-cv-00602-RSL

Assignment and Appointment in Connie Korth

201209281354 CSHEARE     1 PG
08/28/2012 03:34:46 PM    $14.00
AUDITOR, Pierce County, WASHINGTON

4

After Recording Return to:
Northwest Trustee Services, Inc.
Attention: Nanci Lambert
P.O. Box 997
Bellevue, WA 98009-0997

7303.22227/Korth, Connie and Jonathan          MIN# 100062604719892699
   MERS Phone: 1-888-679-6377

## Assignment of Deed of Trust

   For Value Received, the undersigned as Beneficiary, hereby grants, conveys, assigns and transfers to Nationstar Mortgage LLC, whose address is 350 Highland Drive, Lewisville, TX 75067 all beneficial interest under that certain deed of trust, dated 12/30/06, executed by Connie K Korth, a Married Woman as her separate estate, Grantors, to Fidelity National Title, Trustee, and recorded on 12/27/06, under Auditor's File No. 200612270915, Records of PIERCE County, Washington.

Dated _____August  23_____, 2012

                                        Mortgage electronic Registration Systems, Inc. as nominee for
                                        Homecomings Financial, LLC (F/K/A Homecomings Financial
                                        Network, Inc.), its successors and assigns

                                        By: _____Brady Nichus____ 8/23/12
                                        Title:_____Assistant Secretary_____

STATE OF _Texas_____  )
                              ) ss.
COUNTY OF _Denton_____   )

I certify that I know or have satisfactory evidence that _Brady Nichus____ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the ___Assistant Secretary___ of Mortgage electronic Registration Systems, Inc. as nominee for Homecomings Financial, LLC (F/K/A Homecomings Financial Network, Inc.), its successors and assigns to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: _____8/23/12____
        MS

                                        _____
                                        NOTARY PUBLIC in and for the State of
                                        _Texas_____
                                        Residing at _Denton_____
                                        My commission expires _6/20/16____

MATTHEW J. JOHNSTONE
Notary Public, State of Texas
My Commission Expires
June 20, 2016

For reference only, not for re-sale.

```
|||||||||||||||||||||||||||||||||||||||||||||
201208281385 CSHEARE         1 PG
08/28/2012  03:34:46 PM      $14.00
AUDITOR, Pierce County, WASHINGTON
```

5

After Recording Return to:
Nanci Lambert
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997

## Appointment of Successor Trustee

File No. 7303.22227

Connie K Korth, a Married Woman as her separate estate is/are the grantor(s), Fidelity National Title is the trustee and Mortgage electronic Registration Systems, Inc. solely as nominee for Homecomings Financial, LLC (F/K/A Homecomings Financial Network, Inc.) is the beneficiary under that certain deed of trust dated 12/20/06 and recorded on 12/27/06 under PIERCE County, Washington Auditor's File No. 200612270915.

The present beneficiary under said deed of trust appoints Northwest Trustee Services, Inc., a Washington corporation, whose address is P.O. Box 997, Bellevue, WA 98009-0997, as successor trustee under the deed of trust with all powers of the original trustee.

Nationstar Mortgage LLC

By _____  8-13-2012

Andrew Patrick Kane
Assistant Secretary

Andrew Patrick Kane

STATE OF _Texas_ )
                        )ss
COUNTY OF _Denton_ )

I certify that I know or have satisfactory evidence that _____ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the Assistant Secretary of Nationstar Mortgage LLC to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: _8·13·12_

```
ALLISON J FRIES
Notary Public, State of Texas
My Commission Expires
May 31, 2015
```

Notary Public in and for the State of _Texas_
Residing at _Dallas, Tx_
My appointment expires _5-31-15_

NORTHWEST TRUSTEE SERVICES, INC.
P.O. BOX 997
BELLEVUE, WA 98009-0997
425-586-1900     FAX 425-586-1997

Client:   Nationstar Mortgage, LLC
Borrower: Korth, Connie and Jonathan

For reference only, not for re-sale.

# EXHIBIT 10

Lucero v. Cenlar FSB, et al.

2:13-cv-00602-RSL

February 7, 2013 letter from Bayview

 Bayview Loan Servicing, LLC
4425 Ponce de Leon Blvd. 5th Floor
Coral Gables, FL  33146



February 07, 2013

Borrower:

RICHARD GLIDDEN and LETICIA LUCERO
1003 159TH PL SE
BELLEVUE, WA  98008

Loan Number: 0029259710          Property Address:  1003 159TH PL SE
                                                     BELLEVUE, WA  98008

Dear Customer:

I have been making repeated attempts to contact you by phone, but I haven't been able to reach you through the home and/or business number(s) listed in our files. Your loan is currently delinquent, and I would like to see if there is a way I can help you. If you are not able to pay the amount due at this time, it is important that you contact me immediately at my direct toll free number listed at the bottom of this letter to discuss possible alternatives.

Your property is a valuable investment, and I encourage you to contact me to find out about available programs we have to help you.

Bayview Loan Servicing, LLC is a debt collector. This letter is an attempt to collect a debt and any information obtained will be used for that purpose. To the extent that your obligation has been discharged or is subject to an automatic stay of bankruptcy this notice is for compliance and informational purposes only and does not constitute a demand for payment or any attempt to collect such obligation.

Sincerely,

*John Orsuto*

John Orsuto, Asset Manager
Bayview Loan Servicing, LLC
Phone Number:  (877) 693-3281 Monday - Friday 8:30 a.m. - 8:00 p.m., Eastern
Fax Number:     (305) 260-1423

AM017  V 1.1 Loan No.: 0029259710

# EXHIBIT 11

Lucero v. Cenlar FSB, et al.

2:13-cv-00602-RSL

Cease and Desist Letter



Vicente Omar Barraza, Attorney at Law
John Laris, Attorney at Law, Of Counsel

1818 Westlake Ave. N., Suite 308
Seattle, WA 98109
206.933.7861 Fax 206.933.7863

February 13, 2013

Bayview Loan Servicing, LLC
4425 Ponce de Leon Blvd 5th Floor
Coral Gables, FL 33146

Re:   Leticia Lucero
      Property Address: 1003 159th PL SE, Bellevue, WA 98008
      Loan No. 0029259710

By Fax to 305-260-1423

Attention Bayview:

I represent Leticia Lucero.

## Please cease and desist from contacting my client.

Please direct all written and oral communications to me from the date of this letter
forward.

Thank you in advance for your cooperation and assistance.

Respectfully yours,

Vicente Omar Barraza
Attorney at Law, WSBA # 43589

cc.    Client

# EXHIBIT 12

Lucero v. Cenlar FSB, et al.

2:13-cv-00602-RSL

HAMP modification agreement

0029259710 FG



CENTRAL LOAN ADMINISTRATION & REPORTING

April 24, 2013

Hours of operation:
Customer Service:Monday - Friday, 8:30 AM to 8:00 PM EST
Collections Dept.:Monday - Friday, 8:30 AM to 10:00 PM EST

Richard A Glidden
Leticia Lucero
1003 159th Pl SE
Bellevue WA 98008 0000

RE: Loan Number: 0029259710
    Property Address: 1003 159th Pl Se
                      Bellevue WA 98008

Dear Customer:

Enclosed is a copy of your final executed Modification Agreement.  Please
retain this document for your records.

Sincerely,

Michael Johnson
Fax: 609-718-2655
Address: 425 Phillips Blvd., Ewing, NJ 08618
Hours: 8:30am - 8:00pm EST

Loan Workout Department
LM125 009 JTT FG

After Recording Return to:

CENLAR FSB
425 Phillips Blvd.
Ewing, NJ  08618
Attention:  Loss Mitigation

## HOME AFFORDABLE MODIFICATION AGREEMENT

Trial Period Plan Effective:    10/01/2012

Borrower ("I")[1]:               RICHARD GLIDDEN and LETICIA LUCERO

Lender or Servicer ("Lender"): Cenlar FSB

Date of first lien Security Instrument ("Mortgage") and Note ("Note"):  08/16/2006

Loan Number:              0029259710

Property Address ("Property"):1003 159TH PL SE BELLEVUE, WA  98008

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.   **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B. One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

   C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

   D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as 'I'.  For purposes of this document words signifying the singular (such as 'I') shall include the plural (such as 'we') and vice versa where appropriate.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT  ·  Single Family  ·  Fannie Mae / Freddie Mac  UNIFORM INSTRUMENT Form 3157    3/09 (rev. 10/10)  V 1.2 Loan No.: 0029259710                    (Page 1 of 6 pages)

G. I have made or will make all payments required under a trial period plan.

2. **Acknowledgements and Preconditions to Modification.**  I understand and acknowledge that:

A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.**

If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 03/01/2013 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on 03/01/2013.

A. The new Maturity Date will be: 02/01/2053.

B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $ 406,380.50  (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. $ 24,400.00  of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount.  The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $ 381,980.50 .  Interest at the rate of 2.000% will begin to accrue on the Interest Bearing Principal Balance as of 02/01/2013 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 03/01/2013.  My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------------------|------------------------------------------|-----------------------|-------------------|----------------------------|
| 1-5 | 2.000% | 02/01/2013 | $1,156.73 | $366.95 | $1,523.68 | 03/01/2013 | 60 |
| 6 | 3.000% | 02/01/2018 | $1,343.86 | Adjust Annually | Adjust Annually | 03/01/2018 | 12 |
| 7-40 | 3.375% | 02/01/2019 | $1,416.27 | Adjust Annually | Adjust Annually | 03/01/2019 | 408 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

4.   **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents;   (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items.".   I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time.   Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.

My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents.   If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount.   Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA.   Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA.   If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments.   If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E.  That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me

H.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.  That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L.  Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

IN WITNESS WHEREOF, the Lender and I have executed this Agreement.

Borrower:

By: _____   Date: 1.25.2013
RICHARD A GLIDDEN

By: _____   Date: 1.25.13
LETICIA LUCERO

Lender:

By: _____   Date: 4-2-13
Cenlar FSB          Marianne Doroba
                    Assistant Secretary and Vice President

Licensed Loan Originator: Svetlana Romanova
MLO License Number: 716452
Direct:  877-650-0140 Ext. 7781
Fax:     877-360-9593

FEB 05 2013

# Washington Acknowledgment

Acknowledgment of Individual

STATE OF WASHINGTON

COUNTY OF _King_

On this day personally appeared before me _Richard A. Glidden_ & _Leticia Lucero_, to me known to be the individual(s) described in and who executed the within and foregoing instrument, and acknowledged that he/she/they signed the same as his/her/their free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and seal of office this _25th_ day of _January_, 20 _13_.

_Linda K. Rains_

Notary Public residing at _10219-36th Ave. SW. Seattle, WA 98146_

Printed Name: _Linda K. Rains_

My Commission Expires:

_9/1/2013_

LINDA K. RAINS
COMMISSION EXPIRES
NOTARY
PUBLIC
SEPT. 1, 2013
STATE OF WASHINGTON

# NOTARY'S ACKNOWLEDGEMENT

Loan Modification
RICHARD A GLIDDEN
LETICIA LUCERO
Loan# 0029259710

State Of New Jersey

County of Mercer

On this the _____ day of  April, 2013 before me, <u>Justin Toth</u>, the undersigned officer, personally appeared <u>Marianne Doroba, Vice President</u> known to me (or satisfactorily proven) to be the persons whose names are subscribed to the within instrument and acknowledged that they executed the same for the purposes herein contained.

My Commission Expires

_____
Notary Public for the State of NJ

_____
Justin Toth
Printed Name of Notary Public

JUSTIN TOTH
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires February 17, 2017

JUSTIN TOTH
NOTARY
PUBLIC
NEW JERSEY

# EXHIBIT 13

Lucero v. Cenlar FSB, et al.

2:13-cv-00602-RSL

Letter of Denial of Credit

OpenRoad Lending
6616 Davis Boulevard
North Richland Hills TX 76182

1/8/2013

Leticia Lucero                                                   RE: Application 319111
1003 159th PL Se
Bellevue, WA 98008

Dear Leticia Lucero:

Thank you for your recent loan application, which was submitted to OpenRoad Lending. After careful consideration, we regret to inform you that we were unable to approve your application at this time, for the following reasons:

**Delinquent past and/or present obligations**
**Repossession or foreclosure**

The consumer reporting agency contacted that provided information that influenced our decision in whole or in part was:

**Experian**
**PO Box 2002, Allen, TX 75013**
**(866) 200-6020**

The consumer reporting agency played no part in our decision and is unable to supply you specific reasons why we have denied credit to you.  You have the right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency.  You also have a right to a free copy of your report from the reporting agency, if you request it from the agency no later than sixty (60) days after you receive this notice.  In addition, if you find that any information contained in the report you receive is inaccurate or incomplete, you have the right to dispute the matter with the reporting agency.  Any questions regarding such information should be directed to **Experian.**

If you have questions regarding this letter, you should contact us at OpenRoad Lending, 6616 Davis Blvd, North Richland Hills, Texas 76182.

We also obtained your credit score from this consumer reporting agency and used it in making our decision.  Your credit score is a number that reflects the information in your credit report.  Your credit score can change, depending on how the information in your credit report changes

Your credit score: **699**
Date: **1/8/2013**
Scores range from a low of _____250_____ to a high of _____843_____ .

Key factors that adversely affected your credit score:
        **AMOUNT OWED ON DELINQUENT ACCOUNTS**
        **RATIO OF BALANCE TO LIMIT ON BANK REVOLVING OR OTHER REV ACCTS TOO HIGH**
        **SERIOUS DELINQUENCY**
        **TIME SINCE DELINQUENCY IS TOO RECENT OR UNKNOWN**

Sincerely,

OpenRoad Lending

NOTICE: The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract), because all or part of the applicant's income derives from any public assistance program, or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is the Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580.



(888) 536-3024 phone                    (866) 228-8446 fax                    loanhelp@openroadlending.com
                                                                                    ORL-AAL-v2.2 12052011

Item Detail

HTTP://WWW.EXPERIAN.COM

Address:
425 PHILLIPS BLVD
EWING, NJ 08618
No phone number available

Account Number:
300002025...

Address Identification Number: 0200205296

Mortgage Identification Number: 100026500013275-11
Freddie Mac ID: 378090380

Status:
Foreclosure proceedings started. $52,019 past due as of Jan 2013.

| | |
|---|---|
| Date Opened: | Type: |
| 08/2005 | Mortgage |
| Date of Status: | Terms: |
| 09/2012 | 30 Years |
| Reported Since: | Monthly Payment: |
| 11/2011 | $2,747 |
| Last Reported Date: | Responsibility: |
| 01/2013 | Joint with RICHARD A GLIDDEN/39 |

| | |
|---|---|
| Credit Limit: | $591,000 |
| High Balance: | N/A |
| Recent Balance: | $386,306 |
| Recent Payment: | |

Creditor's Statement:
Foreclosure proceedings started.

# EXHIBIT 14

Lucero v. Cenlar FSB, et al.

2:13-cv-00602-RSL

Qualified Written Request

Certified Mail, Return Receipt Requested

August 27, 2012

CENLAR
425 Phillips Boulvevard
Ewing, NJ. 08618-1430

QUALIFIED WRITTEN REQUEST

Pursuant to the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. § 2605(e))
and Section 6(e) of RESPA and the Truth In Lending Act (TILA) (15 U.S.C. § 1601).

Loan No.:    0029259710
Mortgagor:   Richard Glidden / Leticia Lucero
Property Address: 1003 159th Pl SE
                  Bellevue, WA. 98008

Dear Sir/Madam

This is a Qualified Written Request under Section 6 of the Real Estate Settlement
Procedures Act (RESPA). I dispute the reserve amounts that are owed according to my
Monthly Billing Statement that you sent, the Suspense Account you created, and request
that you send me information about the fees, costs and escrow accounting on the above-
referenced loan. In addition, there are serious concerns regarding the application of
previous scheduled periodic payments made to you. Herein this dispute is made
pertaining to the amounts you claim are due and owing and the balance for which you
are claiming as outstanding on My/Our loan.

Specifically, I/We are requesting an itemization and copies of the following:

1)   A detailed accounting of My/Our account(s) associated with the above referenced
     loan including all funds paid and disbursed from said account(s);
2)   A breakdown of the current escrow charges showing how they are calculated and
     the reasons for any increase/decrease since the inception of the loan and any
     internal code definitions if applicable;
3)   A copy of any annual escrow statements and notices of any shortage, deficiency
     or surplus; sent to Me/Us since the inception of this loan;
4)   An a accounting of any late fees charged, inspection fees, Administrative
     Fees/Costs,
5)   BPO"s and the dates and the reason for each;
6)   Amount necessary to reinstate My/Our loan if delinquent per your records;
7)   The payoff amount plus the per diem interest rate good for 15 days from the date
     of your response;

8)    Please Immediately credit any misapplied schedule periodic payments to My/Our account per 12 U.S.C. § 2605(I)(3) and or other Statutes, Laws, Acts, Regulation.

9)    You have not sent me any servicing transfer notices nor has my previous Lender/Servicer.

Please acknowledge and answer this request as required by the Real Estate Settlement Procedures Act, and in accordance with the required time frames for the same.  Any delay in providing the requested loan servicing analysis herein will result in irreparable harm and shall result in damage claims brought against you.

Sincerely,

_Elito Weal  AUG. 27, 2017_
(Borrower Signature)    Date


_____    _____
(Borrower Signature)    Date

```
2011 08 02 0008 06
LUCERO          QCD
PAGE-001 OF 001        62.00
08/02/2011 12:08
KING COUNTY, WA
```

```
E2503565
08/02/2011 12:08
KING COUNTY, WA
TAX          $10.00
SALE          $0.00       PAGE-001 OF 001
```

WHEN RECORDED RETURN TO:

NAME  *Richard A. Glidden*

ADDRESS  *3002 163rd Pl SE*

CITY, STATE, ZIP  *Bellevue, WA 98008*

## QUITCLAIM DEED

THE GRANTOR(S), *Richard Glidden* for and in consideration of: *One Dollar* conveys and Quitclaims to the GRANTEE(S), *Leticia Lucero* the following described real estate, situated in the County of *King* State of Washington, together with all after acquired title of the Grantor(s) therein (legal description): *Lake Hills #1*

Tax Parcel Number: *# 4036800290*

*LOT(S) 1, BLOCK 4, LAKE HILLS NO. 1, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 56 PLATS, PAGE(S) 86-88, RECORDS OF KING COUNTY, WASHINGTON, SITUATE IN THE COUNTY OF KING, STATE OF WASHINGTON.*

DATED  *8/1/2011*                    DATED: _____ X _____

_____            _____
Grantor                             Grantor

State of Washington        }
                           } ss
County of  *King*          }

On this day personally appeared before me *Richard Glidden* and _____ X _____, Grantor(s), to me known to be the individual(s) described in and who executed the foregoing instrument, and acknowledged that s/he signed the same as his/her free and voluntary act and deed for the uses and purposes therein mentioned.

GIVEN under my hand and official seal this *1* day of *August*, 20 *11*.

*Tomomi Inoguchi*
NOTARY PUBLIC in and for the State of Washington,
Residing at  *King*
My commission expires *August 25, 2014*

```
┌─────────────────────────────────┐
│      TOMOMI INOGUCHI            │
│      Notary Public             │
│      State of Washington       │
│      My Commission Expires     │
│      August 25, 2014           │
└─────────────────────────────────┘
```

Certified Mail, Return Receipt Requested

August 27, 2012.

LOAN SEVRICER NAME : CENLAR.
ADDRESS :                425 PHILLIPS BOULEVARD
CITY                     EWING, N.J. 08618-1430

WRITTEN REQUEST
Pursuant to the State of Washington RCW 31.04.290 request for detailed information.

Loan No.:  0029259710
Mortgagor:  RICHARD GLIDDEN / LETICIA LUCERO
Property Address:  1003  159TH  PL. SE
                   BELLEVUE, WA. 98008
This is a written request under the State of Washington RCW 31.04.290. I dispute the
total amount owed according to my Monthly Billing Statement and request that you send
me information about the fees, costs and escrow accounting on the above-referenced
loan. In addition, there are serious concerns regarding the application of previous
scheduled periodic payments made to you. Herein this dispute is made pertaining to the
amounts you claim are due and owing and the balance for which you are claiming as
outstanding on My/Our loan.

Specifically, I/We are requesting an itemization and copies of the following:

1)    A detailed accounting of My/Our account(s) associated with the above
      referenced loan including all funds paid and disbursed from said account(s);
2)    A breakdown of the current escrow charges showing how they are calculated and
      the reasons for any increase/decrease since the inception of the loan and any
      internal code definitions if applicable;
3)    A copy of any annual escrow statements and notices of any shortage, deficiency
      or surplus; sent to Me/Us since the inception of this loan;
4)    An accounting of any late fees charged, inspection fees, BPOs and the dates and
      the reason for each;
5)    Amount necessary to reinstate My/Our loan if delinquent per your records;
6)    The payoff amount plus the per diem interest rate good for 15 days from the date
      of your response;
7)    The identity, address, and other relevant information about the current holder,
      owner or assignee of this residential mortgage loan.
8)    Please immediately credit any misapplied schedule periodic payments to My/Our
      account.
9)    Please also provide your licensing information pertaining to your ability to service
      loans in the State of Washington.

Please acknowledge and answer this request as required by RCW 31.04.290, and in accordance with the required time frames for the same. Any delay in providing the requested loan servicing analysis herein will result in irreparable harm and shall result in damage claims brought against you.

Sincerely,

(Borrower Signature)      Date

(Borrower Signature)      Date

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee
B. Received by ( Printed Name )   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

1. Article Addressed to:

CENLAR
425 PHILLIPS BLVD.
EWING, NJ 08618

3. Service Type
☐ Certified Mail      ☐ Express Mail
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)        ☐ Yes

2. Article Number
   (Transfer from service label)     7011 2970 0001 5591 1649

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee
B. Received by ( Printed Name )   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

1. Article Addressed to:

CENLAR
425 PHILLIPS BLVD.
EWING, NJ 08618

3. Service Type
☐ Certified Mail      ☐ Express Mail
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)        ☐ Yes

2. Article Number
   (Transfer from service label)     7012 0470 0000 4967 9693

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee
B. Received by ( Printed Name )   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

1. Article Addressed to:

CENLAR
425 PHILLIPS BLVD.
EWING, NJ 08618

3. Service Type
☐ Certified Mail      ☐ Express Mail
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)        ☐ Yes

2. Article Number
   (Transfer from service label)     7011 2970 0001 5591 1656

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

Certified Mail, Return Receipt Requested

August 27, 2012

Bayview Financial Servicing LLC
4425 Ponce de Leon Blvd.
5th Floor
Coral Gables, FL. 33140

QUALIFIED WRITTEN REQUEST

Pursuant to the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. § 2605(e))
and Section 6(e) of RESPA and the Truth In Lending Act (TILA) (15 U.S.C. § 1601).

Loan No.:    0029259710
Mortgagor:   Richard Glidden / Leticia Lucero
Property Address: 1003 159th Pl SE
                  Bellevue, WA. 98008

Dear Sir/Madam

This is a Qualified Written Request under Section 6 of the Real Estate Settlement
Procedures Act (RESPA).  I dispute the reserve amounts that are owed according to my
Monthly Billing Statement that you sent, the Suspense Account you created, and request
that you send me information about the fees, costs and escrow accounting on the above-
referenced loan.  In addition, there are serious concerns regarding the application of
previous scheduled periodic payments made to you.  Herein this dispute is made
pertaining to the amounts you claim are due and owing and the balance for which you
are claiming as outstanding on My/Our loan.

Specifically, I/We are requesting an itemization and copies of the following:

1)    A detailed accounting of My/Our account(s) associated with the above referenced
      loan including all funds paid and disbursed from said account(s);
2)    A breakdown of the current escrow charges showing how they are calculated and
      the reasons for any increase/decrease since the inception of the loan and any
      internal code definitions if applicable;
3)    A copy of any annual escrow statements and notices of any shortage, deficiency
      or surplus; sent to Me/Us since the inception of this loan;
4)    An a accounting of any late fees charged, inspection fees, Administrative
      Fees/Costs,
5)    BPO"s and the dates and the reason for each;
6)    Amount necessary to reinstate My/Our loan if delinquent per your records;
7)    The payoff amount plus the per diem interest rate good for 15 days from the date
      of your response;

8)     Please immediately credit any misapplied schedule periodic payments to My/Our account per 12 U.S.C. § 2605(i)(3) and or other Statutes, Laws, Acts, Regulation.

9)     You have not sent me any servicing transfer notices nor has my previous Lender/Servicer.

Please acknowledge and answer this request as required by the Real Estate Settlement Procedures Act, and in accordance with the required time frames for the same. Any delay in providing the requested loan servicing analysis herein will result in irreparable harm and shall result in damage claims brought against you.

Sincerely,


_____     _____
(Borrower Signature)     Date


_____     _____
(Borrower Signature)     Date

**2011080200086**
LUCERO          QCD          62.00
PAGE-001 OF 001
08/02/2011 12:08
KING COUNTY, WA

**E2503565**
08/02/2011 12:08
KING COUNTY, WA
TAX          $10.00
SALE          $0.00          *PAGE-001 OF 001*

WHEN RECORDED RETURN TO:

NAME _Richard A. Glidden_

ADDRESS _3002  163rd  PL SE_

CITY, STATE, ZIP _Bellevue, WA 98008_

## QUITCLAIM DEED

THE GRANTOR(S), _Richard Glidden_ for and in consideration of: _One Dollar_ conveys and Quitclaims to the GRANTEE(S), _Leticia Lucero_ the following described real estate, situated in the County of _King_ State of Washington, together with all after acquired title of the Grantor(s) therein (legal description): _Lake Hills #1_

Tax Parcel Number: _# 4036800290_

_LOT(S) 1, BLOCK 4, LAKE HILLS NO. 1, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 56 PLATS, PAGE(S) 86-88, RECORDS OF KING COUNTY, WASHINGTON. SITUATE IN THE COUNTY OF KING, STATE OF WASHINGTON._

DATED _8/1/2011_                                DATED: _X_

_____                _____
Grantor                                          Grantor

State of Washington        }
                           } ss
County of _King_           }

On this day personally appeared before me _Richard Glidden_ and ____X____, Grantor(s), to me known to be the individual(s) described in and who executed the foregoing instrument, and acknowledged that s/he signed the same as his/her free and voluntary act and deed for the uses and purposes therein mentioned.

GIVEN under my hand and official seal this ___1___ day of _August_, 20 _11_.

_Tomomi Inoguchi_
NOTARY PUBLIC in and for the State of Washington,
Residing at _King_
My commission expires _August 25, 2014_

```
TOMOMI INOGUCHI
Notary Public
State of Washington
My Commission Expires
August 25, 2014
```

Certified Mail, Return Receipt Requested

August 27, 2012.

LOAN SEVRICER NAME: BAYVIEW FINANCIAL SERVICING L.L.C.
ADDRESS:             4425 PONCE DE LEON BLVD., 5th FLR.
CITY                 CORAL GABLES, FL. 33140

WRITTEN REQUEST
Pursuant to the State of Washington RCW 31.04.290 request for detailed information.

Loan No.: 0029259710
Mortgagor: RICHARD GLIDDEN/LETICIA LUCERO
Property Address: 1003  159th PL SE
                  BELLEVUE, WA. 98008
This is a written request under the State of Washington RCW 31.04.290. I dispute the total amount owed according to my Monthly Billing Statement and request that you send me information about the fees, costs and escrow accounting on the above-referenced loan. In addition, there are serious concerns regarding the application of previous scheduled periodic payments made to you. Herein this dispute is made pertaining to the amounts you claim are due and owing and the balance for which you are claiming as outstanding on My/Our loan.

Specifically, I/We are requesting an itemization and copies of the following:

1)   A detailed accounting of My/Our account(s) associated with the above referenced loan including all funds paid and disbursed from said account(s);

2)   A breakdown of the current escrow charges showing how they are calculated and the reasons for any increase/decrease since the inception of the loan and any internal code definitions if applicable;

3)   A copy of any annual escrow statements and notices of any shortage, deficiency or surplus; sent to Me/Us since the inception of this loan;

4)   An accounting of any late fees charged, inspection fees, BPOs and the dates and the reason for each;

5)   Amount necessary to reinstate My/Our loan if delinquent per your records;

6)   The payoff amount plus the per diem interest rate good for 15 days from the date of your response;

7)   The identity, address, and other relevant information about the current holder, owner or assignee of this residential mortgage loan.

8)   Please immediately credit any misapplied schedule periodic payments to My/Our account.

9)   Please also provide your licensing information pertaining to your ability to service loans in the State of Washington.

Please acknowledge and answer this request as required by RCW 31.04.290, and in accordance with the required time frames for the same.  Any delay in providing the requested loan servicing analysis herein will result in irreparable harm and shall result in damage claims brought against you.


Sincerely,


_____ AUG. 27, 2011 _____
(Borrower Signature)          Date



_____          _____
(Borrower Signature)          Date

**2011080200080 6**

LUCERO                      QCD
PAGE-001 OF 001            62.00
08/02/2011 12:08
KING COUNTY, WA

WHEN RECORDED RETURN TO:

NAME _Richard A. Glidden_

ADDRESS _3002 163rd PL SE_

CITY, STATE, ZIP _Bellevue, WA 98008_

**E2503565**

08/02/2011 12:08
KING COUNTY, WA
TAX                        $10.00
SALE                        $0.00          PAGE-001 OF 001

## QUITCLAIM DEED

THE GRANTOR(S) _Richard Glidden_ for and in consideration of: _One Dollar_ conveys and Quitclaims to the GRANTEE(S), _Leticia Lucero_ the following described real estate, situated in the County of _King_ State of Washington, together with all after acquired title of the Grantor(s) therein (legal description): _Lake Hills #1_

Tax Parcel Number: _# 4036800290_

_LOT(S) 1, BLOCK 4, LAKE HILLS NO. 1, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 56 PLATS, PAGE(S) 86-88, RECORDS OF KING COUNTY, WASHINGTON. SITUATE IN THE COUNTY OF KING, STATE OF WASHINGTON._

DATED _8/1/2011_                          DATED: _____ X _____

_____               _____
Grantor                                   Grantor

State of Washington        }
                           } ss
County of _King_           }

    On this day personally appeared before me _Richard Glidden_ and _____ X _____, Grantor(s), to me known to be the individual(s) described in and who executed the foregoing instrument, and acknowledged that s/he signed the same as his/her free and voluntary act and deed for the uses and purposes therein mentioned.

    GIVEN under my hand and official seal this _1_ day of _August_, 20 _11_.

_Tomomi Inoguchi_
NOTARY PUBLIC in and for the State of Washington,
Residing at _King_
My commission expires _August 25, 2014_

TOMOMI INOGUCHI
Notary Public
State of Washington
My Commission Expires
August 25, 2014

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

BAYVIEW
FINANCIAL SERV.
4425 PONCE DE LEON BLVD
5TH FLOOR
CORAL GABLES, FL. 33140

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number
(Transfer from service label)   7011 2970 0001 5591 1663

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

BAYVIEW FINANCIAL
SERVICING LLC
4425 PONCE DE LEON BLVD
CORAL GABLES, FL.
33140

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number
(Transfer from service label)   7011 2970 0001 5591 1632

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540



CENTRAL LOAN ADMINISTRATION & REPORTING

October 16, 2012

Richard Glidden
Leticia Lucero
1003 159th Pl SE
Bellevue, WA 98008

RE:   *Loan No.: 0029259710*

Dear Borrowers:

This is in response to your letter dated August 27, 2012, received in our offices on September 20, 2012, related to the above loan.

Following is the information you requested; the numbers below refer to your numbered questions:

1. & 2.  Enclosed is a loan history showing the activity of your account. Also included is a listing of transaction codes.

3. Enclosed are copies of escrow analyses performed on your account.

4.  The following fees have been charged to your account:

Late charges totaling $240.74, of which $120.37 were paid by you, leaving an unpaid balance of $120.37 (please refer to the enclosed fee activity ledger labeled Exhibit A for an itemization).

A total of $39 for property inspections performed on the mortgaged property, of which $26 was paid by you, leaving an unpaid balance of $13 (please refer to the enclosed fee activity ledger labeled Exhibit B for an itemization).

In addition, legal fees of $2,024.25 have been incurred, but not yet billed or paid for and will be charged to your account.

5.  No broker price opinions (BPOs) have been ordered and charged to your account to date.

6.  Enclosed is a reinstatement quote good through November 15, 2012, which sets forth the amount needed to reinstate the loan.

Richard Glidden
Leticia Lucero
October 16, 2012
Page 2

7.  Enclosed is a payoff statement, which sets forth the amount needed to pay off the loan in full as of October 16, 2012.

8.  We believe all payments have been properly applied to your account.

9.  Enclosed is a copy of the notice of transfer of servicing that was provided to you.

If you have any questions, I can be reached at 866-677-8807.

Very truly yours,

Michelle Cumberbatch
Service Excellence Manager

Enclosures

## P309 Transaction Codes

| Code | Description |
|------|-------------|
| 063 | Hazard Premium Refund |
| 064 | Tax Refund (311, 312, and 313) |
| 065 | Lien Refund (All Others) |
| 066 | Special Escrow Deposits |
| 132 | Late Charge Adjustment |
| 142 | New Loan Set-Up |
| 143 | Non-Cash Balance Adjustment |
| 144 | Redistribution of P & I (Non-Cash Balance Adjustment) |
| 145 | Restricted Monetary Adjustment (Non-Cash Balance Adj) |
| 146 | Bad Check Reversal -Short Form (Returned Check) |
| 147 | Misapplication Reversal - Long Form |
| 148 | Bad Check Reversal -Long Form (Returned Check) |
| 149 | Advance from line of credit (HELOC) |
| 152 | Late Charge Assessment |
| 156 | Sold-Servicing Released (Tran 058 on Edits) |
| 160 | Interest on Escrow |
| 161 | Escrow Advance |
| 162 | MIP / PMI Refund Deposit |
| 163 | Hazard Insurance Refund Deposit (Also 063) |
| 164 | Tax Refund Deposit (Also 064) |
| 165 | Lien Refund Deposit (Also 065) |
| 166 | Special Deposit to Escrow |
| 167 | Deposit of HUD-Assistance/Subsidy |
| 168 | Reimbursement of Escrow Advance |
| 169 | Restricted Escrow Deposit |
| 170 | Initial Escrow Deposit, Closing Interest, Buydown |
| 171 | Coupon Payment |
| 172 | Modified Payment |
| 173 | Irregular/Non-Coupon Payment |
| 174 | Payment from Esc-Irregular Pmt generated from tran 073 |
| 175 | Principal Curtailment - Interest generated from tran 073 |
| 179 | Special Optional Insurance Payment or Reversal |
| 181 | Loan Paid In Full (cash) |
| 182 | Loan Removed through Foreclosures (non-cash) |
| 183 | MBS Pool Settlement (Foreclosure) Internal Audit |

{82\00009496.DOCX. 1/12/2011}1 -- P309 Transaction Codes_3400
12/28/10

| Code | Description |
|------|-------------|
| 301 | Miscellaneous Escrow Disbursement |
| 302 | Refund Subsidy/ Assistance to HUD |
| 303 | Replacement Reserve Disbursement |
| 304 | Restricted Escrow Disbursement |
| 305 | Escrow Disbursed To Mortgagee (Bank) |
| 306 | Surplus Escrow Refund To Mortgagor (Customer) |
| 307 | Escrow Disbursed To Mortgagor (Customer) |
| 310 | Mortgage Insurance Disbursement (MIP / PMI) |
| 311 | Consolidated Tax Disbursed (School) |
| 312 | County Tax Disbursed |
| 313 | City/Town Tax Disbursed |
| 314 | Combined City/County Tax Disbursed |
| 315 | Water/Sewer (Washington), Sewer (Hamilton Twp)/Condo |
| 316 | Village Tax Disbursement |
| 317 | Front Foot Tax Disbursement |
| 318 | County/City/School - Combine Tax Disbursement |
| 319 | Utility Tax/Mud Tax Disbursement |
| 320, 01 | Added Assessment NJ Disbursement |
| 320, 02 | Interim County Tax (All Other States) |
| 320, 03 | Interim City Tax (All Other States) |
| 320, 04 | Interim School Tax (All Other States) |
| 320, 05 | Interim Land Bill (All Other States) |
| 321 | County, City, School, Utility (Combined) |
| 322 | County, Utility (Combined) |
| 323 | County, School (Combined) |
| 324 | City, Utility (Combined) |
| 325 | City, School, Utility (Combined) |
| 326 | School, Utility (Combined) |
| 327 | County, School, Utility (Combined) |
| 328 | City, School (Combined) |
| 329 | Logic Line for computer to computer tax |
| 351 | Hazard Premium Disbursement (Primary Policy) |
| 352 | Flood Insurance Disbursement |
| 353 | Insurance Disbursements (other policy) defined by Client |
| 354 | Earthquake or Other Insurance Disbursement |
| 355 | Other Insurance Disbursement (defined by Client) |
| 493 | Interest Rate Change on ARM Loan |

| Code | Description |
|------|-------------|
| 601 | Miscellaneous Corporate Advance Disbursement |
| 630 | Attorney Fees |
| 631 | Property Inspection/ Preservation |
| 632 | Attorney Costs |
| 633 | Miscellaneous |
| 730 | Deposit for Attorney Fees |
| 731 | Deposit for Property Inspection/ Preservation |
| 732 | Deposit for Attorney Costs |
| 733 | Deposit for Miscellaneous |
| 999 | The total unpaid balance at the beginning of the last bill cycle (HELOC) |

FSС1 0029259710                 FEE ACTIVITY LEDGER              10/11/12  09:25:38          Exhibit A
SELECTED CODES __1____  FROM 110DYY                              PAGE   1  OF   1
RICHARD A GLIDDEN                          1003 159TH PL SE
LETICIA LUCERO                             BELLEVUE
                                                                WA 98008-0000

FEE                         DATE                    DATE                      DATE
CODE   DESCRIPTION      ASSESSED      AMOUNT         PAID        AMOUNT        WAIVED        AMOUNT
  1 LATE CHARGE         11-16-11      120,37
  1 LATE CHARGE                                    03-27-12      120,37
  1 LATE CHARGE         08-16-12      120,37


         NET      120,37     TOTALS      240,74           120,37              0,00

```
FEE1 0029259710            FEE ACTIVITY LEDGER        10/11/12  09:26:47        Exhibit B
SELECTED CODES    6   FROM RHODYY                     PAGE   1  OF  1
RICHARD A GLIXDEN                      1003 159TH PL SE
LETICIA LUCERO                        BELLEVUE
                                           WA 98008-0000
```

| FEE CODE | DESCRIPTION | DATE ASSESSED | AMOUNT | DATE PAID | AMOUNT | DATE WAIVED | AMOUNT |
|---|---|---|---|---|---|---|---|
| 6 | PROPERTY INSPECT | 07-27-11 | 13.00 | | | | |
| 6 | PROPERTY INSPECT | 09-23-11 | 13.00 | | | | |
| 6 | PROPERTY INSPECT | | | 03-27-12 | 26.00 | | |
| 6 | PROPERTY INSPECT | 09-04-12 | 13.00 | | | | |

| NET | 13.00 | TOTALS | 39.00 | | 26.00 | | 0.00 |

OCT-16-2012  11:20                                                    P.001



Attn: Payoff Department
425 Phillips Blvd.
Ewing, New Jersey 08618
PAYOFF STATEMENT AS OF October 16, 2012 ("Effective Date")


Richard A Glidden
Leticia Lucero
1003 159th Pl SE
Bellevue WA 98008

Property Address: 1003 159th Pl Se
Bellevue WA 98008

Loan No.: 0029259710                    Original Loan Date: 08-16-06
Original Loan Amount: $    391,000      Loan Type: Conventional
FHA/VA/MI No.:                          Investor No. P2d 002 378090380

Statement forwarded to:
609-718-4718


IMPORTANT:  Your payoff statement contains as many as three sections; each
section may be multiple pages in length.  If you are receiving this payoff
statement via fax, please note that each section may be faxed separately.
The quote to pay off your loan is contained in this first section (up to
three pages in length); payoff instructions and important information are
contained in section two (two pages).  Section three contains all other
information relating to your payoff transaction that is not contained in
the first two sections.  To ensure that your payoff transaction is processed
efficiently, please read the entire payoff statement and follow all
instructions.

ATTENTION BORROWERS USING AUTOMATIC DRAFTING:  Borrowers whose monthly
payments are automatically withdrawn from checking/savings accounts using
our Payment Drafting Program (automatic drafting) must instruct this office
to discontinue automatic drafting at least fifteen (15) business days before
the next scheduled withdrawal by sending a written notice to: Drafting
Department, PO Box 77417, Ewing, NJ 08628.  Failure to comply may result
in continued withdrawals.  Please call 877-680-5583 should you have any
questions.


XP161-FG 048 AXG

Richard A Glidden
Leticia Lucero
0029259710

Statement of amount necessary to pay loan in full on or before 11-16-12.

Interest Rate:  6.25000%                   Interest Paid to: 05-01-11

Present Principal Balance: $        366,802.76
Interest to 11-16-12:               35,342.95
Escrow Overdraft:                    2,620.14

Subtotal of Amount Secured
by Security Instrument:      $      404,765.85

OTHER CHARGES
Accrued Late Charge:                   120.37
Recording Fee         :                 72.00
Fees And Costs        :               2,024.25
Miscellaneous Fees Due: *               13.00

Other Charges Sub Total:             2,229.62

Total Due:                  $       406,995.47

* Itemization of these amounts is available upon request.  Please call
  1-877-680-5583 to request an itemization.

11-16-12 has been provided as the proposed closing date.  If funds are
received after 11-16-12 include an additional amount of $ 63.68
per Day.

If the current month's payment or payoff is not received within 15
days of the due date of the next payment, a late charge in the amount
of $ 120.37, in addition to the amount shown above, must be remitted.

XP161-FG 048 AXG

OCT-16-2012  11:20                                                    P.003

Richard A Glidden
Leticia Lucero
0029259710

LOAN PAYOFF INFORMATION

GENERAL INSTRUCTIONS AND CONDITIONS:

* ALL PAYOFF FIGURES PROVIDED ARE SUBJECT TO CLERICAL ERROR CORRECTION
  AND FINAL AUDIT.
* The borrower must pay all interest that accrues and/or fees that are
  assessed after the Effective Date.
* In the event a payment reflected in this payoff statement is reversed
  due to a dishonored or returned check, there will be a charge not to
  exceed the amount permitted by law.
* Please note that the required payoff amount may change if a payment is
  returned, or if late charges or escrow advances occur on or after the
  Effective Date of this statement.

Since amounts may change, we recommend that you contact our office to
verify payoff figures prior to remitting funds.

IF THE LOAN IS DELINQUENT, IN FORECLOSURE OR BANKRUPTCY, this office must
be contacted at least 48 hours prior to payoff in order to allow us
sufficient time to verify the correct amount necessary to satisfy the loan.

REMITTANCE OF FUNDS:

* Payoffs are not posted on weekends and Holidays.  Interest will be
  added to the account for those days.
* Payoff funds in excess of $5,000 must be in the form of a wire,
  certified funds, cashier's check, money order or an attorney's trust
  check.
* Funds in the amount of $5,000 or less may be paid by personal check.
* Payoff remittances (wires or checks) received in our office after
  2:00 p.m. ET will be processed the following business day.
* Payoff remittances of less than the full payoff amount due will not
  be applied and interest will continue to accrue until the full amount
  is received.  We will attempt to notify the sender of the amount of
  the shortage.  If the shortage amount is not received within 48 hours
  of our initial receipt of the funds, the entire remittance may be
  returned.
* If we must reverse the receipt and application of funds due to an
  error in the payoff request, a $200.00 handling fee will be assessed.

PAYMENT BY WIRE:

* Our preferred method of payoff remittance is by wire transfer.
* Funds should be wired to CENLAR FS PRINCETN, TRENTON, NJ.  ABA Nbr.
  231271365/Payoff Bank Acct. Nbr. 3000001027.
* The wire must include the borrower's name, loan number, and the
  notation ATTENTION:  PAYOFF DEPARTMENT.  A contact name and
  phone number of the originator of the wire should also be included.

OCT-16-2012  11:20                                                                   P.004

Richard A Glidden
Leticia Lucero
0029259710

PAYMENT BY CHECK:

* Include the borrower's name and loan number on the check.  Also,
  include a contact name and telephone number.  All checks should be
  made payable to the name appearing on the first page of this
  statement and sent to the following address: Payoff Department, 425
  Phillips Boulevard, Ewing, NJ 08618.

ESCROW ACCOUNTS:

* If we escrow funds for payment of charges such as real estate taxes
  and hazard or flood insurance, we will continue to make required
  disbursements from the escrow account for escrowed items until our
  application of the payoff remittance to the borrower's account.
* If an escrow disbursement creates a shortage in the escrow account
  and causes us to advance our funds, the amount of the advance will be
  added to the amount due and must be paid at time of payoff.
* We will attempt to notify the sender of any payoff shortage created by
  escrow disbursements.
* Once a loan is paid in full, no further disbursements will be made for
  escrowed items.  Following payoff, we will conduct a final review of
  the escrow account.  You will be notified if additional funds are due;
  otherwise any excess funds will be returned.

LATE CHARGES:

* Until a loan is paid in full, late charges will continue to accrue as
  permitted by law for any monthly payment that is due but not
  received by the late charge assessment date.

ADDITIONAL PAYOFF STATEMENTS:

* We will charge a fee, as permitted by law, for each additional payoff
  statement generated or for priority delivery of each statement.  The
  amount of the fee varies by state and by loan type.  Please contact us
  for the amount of the fee.

MAILING ADDRESS CHANGE:  Please provide the mailing address to which
original loan documents and any escrow refund should be returned.

DOCUMENT CANCELLATION:

* Satisfaction documents will be sent directly to the recording office
  for cancellation or reconveyance.

XP162-FG 028 AXG

TOTAL P.004



## NORTHWEST
### Trustee Services Inc.

13555 SE 36th St., Suite 100, Bellevue, WA 98006

November 14, 2012

Richard A. Glidden
1003 159th Place Southeast
Bellevue, WA 98008

Re:     Borrower:        Glidden, Richard and Lucero, Letisia
        Loan No.:        0029259710
        Our File No.:    7367.21314

Dear Borrower(s):

    This letter responds to your request for reinstatement figures good through November 15, 2012. The process of foreclosure requires the trustee to complete certain tasks according to a schedule set by state law. The trustee may be required to complete some of these tasks between the date of this letter and the date through which you have asked this quote be effective.

    To insure that the figure that we provide will still be valid on the last date this quote is effective, we must include some fees and costs that we anticipate will be incurred shortly, but have not actually been incurred as of the date of this letter. Also, the trustee uses third party vendors to complete some of the required tasks. To the extent we have not yet received invoices from those vendors for services provided, some of the amounts described below could be estimates of the actual fees or costs incurred.

    If you pay the amount listed below on or before the date provided, your account will be reconciled to insure that only the exact amounts due are collected. To the extent any amount made payable to the trustee exceeds the actual amount due to the trustee, a refund of that overage will follow. To the extent any refund due should be delivered to any address other than the property address, please be sure to include that information with your payment.

Instructions for reinstatement are as follows:

1. Funds must be received in our office no later than 12:00 noon on November 15, 2012.
2. Funds must be in the form of a cashier's check or money orders (certified funds only).
3. The check(s) MUST BE MADE PAYABLE to Cenlar FSB for $47,979.82. Be sure to include borrowers name and loan number.
4. The check(s) MUST BE SENT to Northwest Trustee Services, Inc. 13555 SE 36th St., Suite 100, Bellevue, WA 98006.
5. No partial payments will be accepted.
6. Only cashier's checks or money orders will be accepted. No trust account, escrow and personal checks will be accepted.
7. To help facilitate a prompt refund, should one be due, please be sure to advise the trustee of any alternate address to which you would prefer monies be delivered.

The amount required to reinstate the above-referenced loan is as follows:

|  | | |
|---|---|---|
|  | Payments | $49,301.69 |
|  | Late Charges | $120.37 |
|  | Property Inspection | $13.00 |
|  | Suspense | ($3,047.74) |
|  | Trustee Fees | $612.50 |
| 08/27/2012 | Notice of Default Posted | $70.00 |
| 08/27/2012 | Notice of Default Mailed -Required by Statute - 30 Day Notice | $20.00 |
| 09/10/2012 | Trustee Sale Guarantee Received | $890.00 |
|  | Total amount required to reinstate as of November 15, 2012 | $47,979.82 |

For reinstatement tendered to the trustee, lenders typically require the trustee to remit all monies tendered, including the trustee's fees and costs, to the lender. Less typically, lenders allow the trustee to withhold its fees and costs and remit to the lender only the amounts due the lender. If the trustee is required to remit all monies to the lender, the trustee will reconcile the payment with the actual trustee fees and costs then due, inform the lender of any overpayment of fees or costs, and ask the lender to refund any amounts overpaid directly to the person submitting payment to reinstate the loan. If the trustee is allowed to withhold its fees and costs from remittances to the lender, the trustee will reconcile the payment with the actual trustee fees and costs then due, and promptly deliver a refund of any amounts received over and above that necessary to pay its fees and costs.

If you will be unable to submit funds on or before the above date and time, you must contact our office for updated figures.

By delivering this quote, the lender does not waive its right to enforce any and all remedies afforded by law or the loan documents including, without limitation, its right to enforce due on sale provisions. Absent the written agreement of the lender or trustee, the foreclosure will not be put on hold. Foreclosure activities will proceed until all defaults are cured.

Thank you and feel free to call the trustee with any remaining questions or concerns.

Very truly yours,
NORTHWEST TRUSTEE SERVICES, INC.
Heidemarie Danseglio
425-213-5539
Foreclosure Department

Pursuant to the Fair Debt Collection Practices Act (15 U.S.C. Section 1692), this is an attempt to collect a debt and any information obtained will be used for that purpose.

Central Loan Admin & Reporting
PO Box 211091
Eagan, MN 05121


CENLAR

10/22/09

#DWNDXOT
#3000002026971010AN

RICHARD A OLIOOEH
LETICIA LUCERO
1003 (69TH) PL SE
BELLEVUE WA 98008

LOAN No: 0029269710
www.loansadministration.com
TOLL FREE 1-877-680-6883

## ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT

As you know, we are required to maintain an escrow account which is used to pay your real estate taxes and/or insurance premiums. This account must be analyzed annually to determine whether enough funds are being collected monthly, and whether the account has a shortage or surplus based on the anticipated activity.

### PRESENT LOAN PAYMENT

| Your present payment consists of: | | |
|---|---|---|
| Principal & Interest (P&I) | $2,407.46 | |
| Escrow Deposit | $303.09 | |
| Optional Insurance | $0.00 | |
| Other | $0.00 | |
| Less: Buydown/Assistance Payment | $0.00 | |
| **Total Loan Payment** | **$2,710.54** | |

### ANTICIPATED ANNUAL DISBURSEMENTS

These are the escrow items we anticipate we will collect for or pay on your behalf in the upcoming 12 month period. The dollar amount shown may be the last account activity paid for that item, or may project the next amount due as defined by Federal law. Based on these anticipated disbursements, the amount of your escrow deposit is calculated and displayed here.

| Bills due in the Upcoming year: | | |
|---|---|---|
| COUNTY TAX | $2,663.68 | |
| HAZARD INS | $1,359.00 | |

Total Anticipated Annual Disbursements      $4,022.68   One-Twelfth/Monthly Amount:      $020.89

### ACCOUNT HISTORY

The following statement of activity in your escrow account from 09/09 through 11/09 displays what activity as it occurred in your escrow account during that period. If you received Account Projections with a prior analysis, they are included again here for comparison.

| Month | Payments Projected | Payments Actual | Disbursements Projected | Disbursements Actual | Description | Projected Escrow Account Balance | Actual Escrow Account Balance |
|---|---|---|---|---|---|---|---|
| | | | | | Beginning Balance | 1.00 | $1,803.05 |
| September | 035.06 * | | | | | .00 | 2,226.11 |
| October | 306.09 E | | 1,030.77 + R/E TAX | | | .00 | 1,203.43 |
| November | 306.09 E | | 1,359.00 E HAZARD INS | | | .00 | 390.62 |

An asterisk (*) beside an account indicates a difference from projected activity either in the amount or the date. The letter E beside an amount indicates that the payment or disbursement has not yet occurred, but is estimated to occur as shown.

### ACCOUNT PROJECTIONS

The following estimate of activity in your escrow account from 12/09 through 11/10 is provided for your information. All payments we anticipate receiving as well as disbursements we anticipate making on your behalf are included, along with the Projected Escrow Account Balance, derived by carrying forward your current actual escrow balance. The Required Escrow Account Balance displays the amount actually required to be on hand as specified by Federal law, State law and your loan documents, and may include a cushion of up to 1/6th of your Annual Disbursements. Please retain this statement for comparison with the actual activity in your account at the end of the next escrow account computation year.

*** CONTINUED ON REVERSE SIDE ***

### SHORTAGE

Name: RICHARD A OLIOOEH          Loan Number: 0029269710          Shortage Amount: $603.23
LETICIA LUCERO

If you choose to pay your escrow shortage of $603.23 in full, your new loan payment amount will be $2,734.34.  Please include your loan number on your check and make it payable to Central Loan Admin & Reporting and send to:

Central Loan Admin & Reporting
P.O. Box 11733
Newark  NJ  07101-4733

30000292597100 00050323

** CONTINUATION **

| Month | Anticipated Amount To Escrow | From Escrow | Description | Projected Escrow Account Balance | Required Escrow Account Balance |
|-------|------|------|------|------|------|
| | | | Beginning Balance | $150.52 | $863.78 |
| December | 326.89 | | | 477.41 | 930.64 |
| January | 326.89 | | | 804.30 | 1,307.53 |
| February | 326.89 | | | 1,131.19 | 1,634.42 |
| March | 326.89 | | | 1,458.08 | 1,961.31 |
| April | 326.89 | 1,222.38 | R.E. TAX | 562.09 | 1,098.33 |
| May | 326.89 | | | 878.98 | 1,382.21 |
| June | 326.89 | | | 1,205.87 | 1,709.10 |
| July | 326.89 | | | 1,532.76 | 2,035.99 |
| August | 326.89 | | | 1,859.65 | 2,362.88 |
| September | 326.89 | | | 2,186.54 | 2,689.77 |
| October | 326.89 | 1,230.77 | R.E. TAX | 1,182.66 | 1,685.89 |
| November | 326.80 | 1,369.00 | HAZARD INS | 150.55 | 863.78 |

Your Projected Escrow Account Balance as of 11/30/09 is      $160.82.  Your Required Beginning Escrow
Balance according to this analysis should be      $1059.75.
this means you have a shortage of      $503.93.  Per Federal law, the shortage may be collected from you over
12 months or more unless it is less than 1 month's deposit.  If so, we may require payment within 30 days.
We will collect the shortage over 12 months.
Once during this period, your Required Escrow Account Balance should be reduced to      $863.78, as
shown in November.  This amount represents the cushion selected by us as allowed by your loan
contract, Federal and State law.

              N E W   L O A N   P A Y M E N T
Your new payment consists of:

| | Principal & Interest (P&I) | $2,407.46 |
|---|---|---|
| | Escrow Deposit | $326.89 |
| | Deficiency/Shortage/Surplus | $41.94 |
| | Optional Insurance | $0.00 |
| | Other | $0.00 |
| Less: | Buydown/Assistance Payment | $0.00 |
| New Loan Payment | Beginning      12/01/09 | $2,776.28 |

Important note to our Automatic Draft Customers:  Any additional principal deductions you have
previously authorized are not included in the above listed new payment amount.  However, until we
are otherwise advised, the authorized additional principal amount will continue to be withdrawn
from your account.

Should you have any questions about this Escrow Analysis, please call our Customer Service Department
toll-free at 1-877-690-6589.

Central Loan Admin & Reporting
PO Box 211091
Eagan, MN 55121



**CENLAR**

05/28/10

HBVNDXOT
HS000020269710005JH

RICHARD A OLIODEN
LETICIA LUCERO
1003 160TH PL SE
BELLEVUE WA 98008

LOAN NO: 0029269710
www.loanadministration.com
TOLL FREE 1-877-080-8583



## ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT

As you know, we are required to maintain an escrow account which is used to pay your real estate taxes and/or insurance premiums. This account must be analyzed annually to determine whether enough funds are being collected monthly, and whether the account has a shortage or surplus based on the anticipated activity.

### PRESENT LOAN PAYMENT

| Your present payment consists of: | | |
|---|---|---|
| Principal & Interest (P&I) | $2,402.45 |
| Escrow Deposit | $368.83 |
| Optional Insurance | $0.00 |
| Other | $0.00 |
| Less: Buydown/Assistance Payment | $0.00 |

Total Loan Payment                                $2,770.28

### ANTICIPATED ANNUAL DISBURSEMENTS

These are the escrow items we anticipate we will collect for or pay on your behalf in the upcoming 12 month period. The dollar amount shown may be the last amount actually paid for that item, or may project the next amount due as defined by federal law. Based on these anticipated disbursements, the amount of your escrow deposit is calculated and displayed here.

| Bills due in the upcoming year: | COUNTY TAX | $2,678.89 |
|---|---|---|
| | HAZARD INS | $839.00 |

Total Anticipated Annual Disbursements:   $3,517.89   One-Twelfth/Monthly Amount:   $293.16

### ACCOUNT HISTORY

The following statement of activity in your escrow account from 12/09 through 11/10 displays actual activity as it occurred in your escrow account during that period. If you received Account Projections with a prior analysis, they are included again here for comparison.

| Month | Payments Projected | Payments Actual | Disbursements Projected | Disbursements Actual | Description | Projected Escrow Account Balance | Actual Escrow Account Balance |
|---|---|---|---|---|---|---|---|
| | | | | | Beginning Balance | $959.76 | $1207.41 |
| December | 326.89 | 326.89 | | | | 930.64 | 934.30 |
| January | 326.89 | 326.89 | | | | 1,307.53 | 661.19 |
| February | 326.89 | 368.83 | * | | | 1,634.42 | 1,030.02 |
| March | 326.89 | 368.83 | * | | | 1,961.31 | 250.92 |
| April | 326.89 | 368.83 | * | 1,347.92 | * R.E. TAX | 1,056.22 | 619.76 |
| May | 326.89 | 368.83 | * | 1,232.68 | * R.E. TAX | 1,083.21 | 988.59 |
| June | 326.89 | | | | | 1,709.10 | 988.59 |
| July | 326.89 | | | | | 2,035.99 | .00 |
| August | 326.89 | | | | | 2,362.88 | .00 |
| September | 326.89 | | | | | 2,689.77 | .00 |
| October | 326.89 | | 1,230.77 | * | * R.E. TAX | 1,665.89 | .00 |
| November | 326.89 | | 1,539.00 | * | * HAZARD INS | 673.78 | .00 |

An asterisk (*) beside an amount indicates a difference from projected activity either in the amount or the date.
Last year we anticipated that Disbursements would be made from your Escrow Account during the period equaling $3,937.69. Under Federal Law, your lowest monthly balance should not have exceeded $953.78, or 1/6th of total Anticipated payments from the account, unless your loan contract or State Law

**'** CONTINUED ON REVERSE SIDE **'**

### SHORTAGE

Name: RICHARD A OLIODEN          Loan Number: 0029269710          Shortage Amount: $301.76
      LETICIA LUCERO

If you choose to pay your escrow shortage of $301.76 in full, your new loan payment amount will be $2,700.59. Please include your loan number on your check and make it payable to Central Loan Admin & Reporting and send to:

Central Loan Admin & Reporting
P.O. Box 11733
Newark NJ 07101-4733

** CONTINUATION **

specifies a lower amount.

## A C C O U N T   P R O J E C T I O N S

The following estimate of activity in your escrow account from 07/10 through 06/11 is provided for your information. All payments we anticipate receiving as well as disbursements we anticipate making on your behalf are included, along with the Projected Escrow Account Balance, derived by carrying forward your current actual escrow balance. The Required Escrow Account Balance displays the amount actually required to be on hand as specified by Federal law, State law and your loan documents, and may include a cushion of up to 1/6th of your Annual Disbursements. Please retain this statement for comparison with the actual activity in your account at the end of the next escrow account computation year.

| Month | Anticipated Amount To Escrow | From Escrow | Description | Projected Escrow Account Balance | Required Escrow Account Balance |
|---|---|---|---|---|---|
| | | | Beginning Balance | $988.59 | $1,290.35 |
| July | 293.14 | | | 1,281.73 | 1,683.49 |
| August | 293.14 | | | 1,574.87 | 1,876.63 |
| September | 293.14 | | | 1,868.01 | 2,169.77 |
| October | 293.14 | 1,330.77 | R.E. TAX | 830.38 | 1,132.14 |
| November | 293.14 | 839.00 | HAZARD INS | 384.62 | 686.28 |
| December | 293.14 | | | 577.66 | 879.42 |
| January | 293.14 | | | 870.80 | 1,172.56 |
| February | 293.14 | | | 1,163.94 | 1,465.70 |
| March | 293.14 | | | 1,457.08 | 1,758.84 |
| April | 293.14 | 1,347.02 | R.E. TAX | 403.20 | 704.96 |
| May | 293.14 | | | 695.44 | 997.20 |
| June | 293.14 | | | 988.58 | 1,290.34 |

Your Projected Escrow Account Balance as of 06/00/10 is    $988.59.  Your Required Escrow Balance according to this analysis should be    $1,290.35. This means you have a Shortage of    $301.76.  Per Federal law, the shortage may be collected from you over 12 months or more unless it is less than 1 month's deposit.  If so, we may require payment within 30 days. We will collect the shortage over 12 months.

## N E W   L O A N   P A Y M E N T

Your new payment consists of: Principal & Interest (P&I)     $2,407.48
Escrow Deposit     $293.14
Deficiency/Shortage/Surplus     $25.16
Optional Insurance     $0.00
Other     $0.00
Less:  Buydown/Assistance Payment     $0.00

New Loan Payment      Beginning     07/01/10     $2,225.74

Important note to our Automatic Draft Customers:  Any additional principal deductions you have previously authorized, are not included in the above listed new payment amount.  However, until we are otherwise advised, the authorized additional principal amount will continue to be withdrawn from your account.

Should you have any questions about this Escrow Analysis, please call our Customer Service Department toll-free at 1-877-480-5983.

Central Loan Administration & Reporting
PO Box 211091
Eagan, MN 55121



05/20/11

#BWNDXCT
#30000292597/100549

RICHARD A GLIODEN
LETICIA LUCERO
1003 169TH PL SE
BELLEVUE WA 98008

(13)57(0/0/0)

LOAN NO: 0029259710
www.loanadministration.com
TOLL FREE 1-877-060-5580

## ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT

As you know, we are required to maintain an escrow account which is used to pay your real estate taxes
and/or insurance premiums. This account must be analyzed annually to determine whether enough funds
are being collected monthly, and whether the account has a shortage or surplus based on the anticipated
activity.

### PRESENT LOAN PAYMENT

| Your present payment consists of: | Principal & Interest (P&I) | $2,402.45 |
| | Escrow Deposit | $318.29 |
| | Optional Insurance | $0.00 |
| | Other | $0.00 |
| Less: | Buydown/Assistance Payment | $0.00 |

Total Loan Payment                                                    $2,720.74

### ANTICIPATED ANNUAL DISBURSEMENTS

These are the escrow items we anticipate we will collect for or pay on your behalf in the upcoming 12
month period. The dollar amount shown may be the last amount actually paid for that item, or any project
the next amount due as defined by Federal Law. Based on these anticipated disbursements, the amount of
your escrow deposit is calculated and displayed here.

Bills due in the upcoming year:  COUNTY TAX    $2,832.19
                                 HAZARD INS     $937.00

Total Anticipated Annual Disbursements:   $3,769.19   One-Twelfth/Monthly Amount:   $314.10

### ACCOUNT HISTORY

The following statement of activity in your escrow account from 07/10 through 06/11 displays actual
activity as it occurred in your escrow account during that period. If you received Account Projections
with a prior analysis, they are included here for comparison.

| Month | Payments Projected | Payments Actual | Disbursements Projected | Disbursements Actual | Description | Projected Escrow Account Balance | Actual Escrow Account Balance |
|---|---|---|---|---|---|---|---|
| | | | | | Beginning Balance | $1,280.99 | $1,508.14 |
| July | 293.14 | 318.29 * | | | | 1,882.49 | 1,826.43 |
| August | 293.14 | 317.85 * | | | | 1,876.63 | 1,941.98 |
| September | 293.14 | 317.86 * | | 1,047.91 * | R.E. TAX | 2,169.77 | 911.62 |
| October | 293.14 | 317.86 * | 1,330.77 | | R.E. TAX | 1,132.14 | 1,229.17 |
| November | 293.14 | 317.66 * | 899.00 | 937.00 * | HAZARD INS | 886.28 | 603.72 |
| December | 293.14 | 317.63 * | | | | 879.42 | 927.27 |
| January | 293.14 | 317.85 * | | | | 1,172.56 | 1,244.82 |
| February | 293.14 | 317.65 * | | | | 1,465.70 | 1,562.37 |
| March | 293.14 | * | | 1,484.29 * | R.E. TAX | 1,758.84 | 78.09 |
| April | 293.14 | * | 1,347.92 | | R.E. TAX | 704.00 | 78.09 |
| May | 293.14 | 936.60 E | | | | 697.20 | 714.67 |
| June | 293.14 | 317.85 E | | | | 1,290.34 | 1,032.96 |

An asterisk (*) beside an amount indicates a difference from projected activity either in the amount or
the date. The letter E beside an amount indicates that the payment or disbursement has not yet occurred,
but is estimated to occur as shown.
Last year we anticipated that disbursements would be made from your Escrow Account during the period
equaling  $3,847.69. Under Federal Law, your lowest monthly balance should not have exceeded    $504.38.

*** CONTINUED ON REVERSE SIDE ***

### SHORTAGE

Name: RICHARD A GLIODEN          Loan Number: 0029259710        Shortage Amount: $309.66
      LETICIA LUCERO

If you choose to pay your escrow shortage of $309.66 in full, your new loan payment amount
will be $2,721.58. Please include your loan number on your check and make it payable to
Central Loan Administration & Reporting  and send to:

Central Loan Administration & Reporting
P.O. Box 11723
Newark NJ 07101-4733

30000292597100 00030965

'' CONTINUATION ''

or 1/6th of total anticipated payments from the account, unless your loan contract or State law specifies a lower amount.

A C C O U N T   P R O J E C T I O N S

The following estimate of activity in your escrow account from 07/11 through 06/12 is provided for your information. All payments we anticipate receiving as well as disbursements we anticipate making on your behalf are included, along with the Projected Escrow Account Balance, derived by carrying forward your current actual escrow balance. The Required Escrow Account Balance displays the amount actually required to be on hand as specified by Federal law, State law and your loan documents, and may include a cushion of up to 1/6th of your Annual Disbursements. Please retain this statement for comparison with the actual activity in your account at the end of the next escrow account computation year.

| Month | Anticipated Amount To Escrow | From Escrow | Description | Projected Escrow Account Balance | Required Escrow Account Balance |
|---|---|---|---|---|---|
| | | | Beginning Balance | $1,032.90 | $1,342.01 |
| July | 314.10 | | | 1,347.06 | 1,656.71 |
| August | 314.10 | | | 1,661.16 | 1,970.81 |
| September | 314.10 | | | 1,975.29 | 2,284.91 |
| October | 314.10 | 1,347.91 | R.E. TAX | 941.48 | 1,251.10 |
| November | 314.10 | 937.00 | HAZARD INS | 318.05 | 628.20 |
| December | 314.10 | | | 632.66 | 942.30 |
| January | 314.10 | | | 946.76 | 1,256.40 |
| February | 314.10 | | | 1,260.86 | 1,570.50 |
| March | 314.10 | | | 1,574.96 | 1,884.60 |
| April | 314.10 | 1,494.98 | R.E. TAX | 404.77 | 714.42 |
| May | 314.10 | | | 718.87 | 1,029.02 |
| June | 314.10 | | | 1,032.97 | 1,343.02 |

Your Projected Escrow Account Balance as of 06/30/11 is  $1,032.90.  Your Required Beginning Escrow Balance according to this analysis should be  $1,342.01.

This means you have a Shortage of  $309.08.  Per Federal law, the shortage may be collected from you over 12 months or more unless it is less than 1 month's deposit.  If so, we may require payment within 30 days. We will collect the shortage over 12 months.

N E W   L O A N   P A Y M E N T

| | | | |
|---|---|---|---|
| Your new payment consists of: | Principal & Interest (P&I) | $2,407.45 | |
| | Escrow Deposit | $314.10 | |
| | Deficiency/Shortage/Surplus | $25.80 | |
| | Optional Insurance | $0.00 | |
| | Other | $0.00 | |
| Less: | Buydown/Assistance Payment | $0.00 | |
| New Loan Payment | Beginning | 07/01/11 | $2,747.35 |

Important note to our Automatic Draft Customers:  Any additional principal deductions you have previously authorized are not included in the above listed new payment amount.  However, until we are otherwise advised, the authorized additional principal amount will continue to be withdrawn from your account.

Should you have any questions about this Escrow Analysis, please call our Customer Service Department toll-free at 1-877-690-6603.



0029259710 FG

RICHARD A GLIDDEN                                                     October 12, 2012
LETICIA LUCERO
1003 159TH PL SE
BELLEVUE, WA 980080000


Dear Customer,

As requested, enclosed is a copy of your loan history.  Listed below are

definitions for the column headings you may wish to review.

1.      DUE DATE,...............MONTH-YEAR OF PAYMENT DUE.
2.      PROC DATE,..............MONTH-DAY THE TRANSACTION/PAYMENT WAS RECEIVED.
3.      TP/TR,..................TYPE OF TRANSACTION CODE.  FOR THE PURPOSE OF
                               THIS AUDIT, YOU NEED TO KNOW THAT A "152" IN
                               THIS COLUMN MEANS THAT A LATE CHARGE WAS
                               ASSESSED; "132" IN THIS COLUMN MEANS THAT A
                               LATE CHARGE WAS WAIVED "171-174" DESIGNATES
                               A PAYMENT BEING MADE.
4.      AMOUNT RECEIVED,........DOLLAR AMOUNT OF THE FUNDS RECEIVED.
5.      OTHER ITEMS,............THE AMOUNT OF THE LATE CHARGE BEING
                               ASSESSED (IN CONJUNCTION WITH A
                               TRANSACTION CODE "152").  THE ASSESSED AMOUNT
                               WILL HAVE A MINUS (-) SIGN AFTER IT.
                               A PAYMENT OF LATE CHARGES WILL APPEAR
                               ALSO IN THIS COLUMN, WITHOUT A MINUS (-) SIGN.

If you have any questions, please feel free to contact us.

Sincerely,

Customer Service Department

```
                   CUSTOMER ACCOUNT ACTIVITY STATEMENT           DATE 10/12/12
REQ BY GZD                                                            PAGE   1

RICHARD A GLIDDEN               ,,,,,,LISTED BELOW IS THE ACCOUNT ACTIVITY
LETICIA LUCERO                  ,,,,,,FOR YOUR LOAN.  IF YOU HAVE ANY QUESTIONS
1003 169TH PL SE                ,,,,,,ABOUT THIS INFORMATION PLEASE CONTACT:
BELLEVUE           WA 90008      ,,,,,,CENTRAL LOAN ADMINISTRATION & REPORTING
                                ,,,,,,P.O. BOX 77404, EWING, NJ 08628
LOAN NUMBER: 0029259710          ,,,,,,,,,CUSTOMER ACTIVITY STATEMENT ,,,,,,,,
****************************************************************************
------------------------- CURRENT ACCOUNT INFORMATION ---------------------
 DATE        TOTAL       PRINCIPAL       LOAN         CURRENT
 PAYMENT    PAYMENT     & INTEREST     INTEREST      PRINCIPAL         ESCROW
  DUE        AMOUNT      PAYMENT         RATE         BALANCE         BALANCE
06-01-11    2,728.74     2,407.45      6.25000      366,002.76      2,620.14-
****************************************************************************
                  ACTIVITY FOR PERIOD 01/01/10 - 10/11/12
PROCESS     DUE      TRANSACTION          TRANSACTION            EFFECTIVE DATE
 DATE      DATE        CODE               DESCRIPTION            OF TRANSACTION
------------------------------------------------------------------------------
TRANSACTION   PRIN. PAID/         ESCROW PAID/              OTHER
  AMOUNT       BALANCE    INTEREST    BALANCE     AMOUNT CODE/DESCRIPTION
------------------------------------------------------------------------------
10-02-12  06-11  161  ESCROW ADVANCE
  1,495.79        0.00        0.00    1496.79
10-02-12  10-12  312  COUNTY TAX
  1,495.79-       0.00        0.00    1495.79-
                                               2620.14-  NEW PRINCIPAL/ESCROW BALANCES
09-28-12  06-11  173  PAYMENT
  1,523.87        0.00        0.00        0.00   1,523.87
09-28-12  00-00  601  MISC. CORPORATE DISBURSEMENT
    9.90          0.00        0.00        0.00
09-10-12  00-00  601  MISC. CORPORATE DISBURSEMENT
   25.00          0.00        0.00        0.00
08-16-12  06-11  152  LATE CHARGE ASSESSMENT
    0.00          0.00        0.00        0.00   120.37-1 LATE CHARGE
07-18-12  06-11  168  REPAY OF ESCROW ADVANCE
    0.00          0.00        0.00    1591.06-  1,591.06
07-18-12  06-11  173  PAYMENT
    0.00          0.00        0.00    1591.06   1,591.06-
                                               1124.35-  NEW PRINCIPAL/ESCROW BALANCES
06-08-12  00-00  601  MISC. CORPORATE DISBURSEMENT
    0.83          0.00        0.00        0.00
04-04-12  06-11  161  ESCROW ADVANCE
  1,495.00        0.00        0.00    1495.00
```

```
                    CUSTOMER ACCOUNT ACTIVITY STATEMENT           DATE 10/12/12
REQ BY GZB                                                        PAGE    2

RICHARD A GLIDDEN
LOAN NUMBER: 0029259710

                    ACTIVITY FOR PERIOD 01/01/10 - 10/11/12
PROCESS    DUE      TRANSACTION          TRANSACTION              EFFECTIVE DATE
DATE       DATE     CODE                 DESCRIPTION              OF TRANSACTION
```

| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | OTHER AMOUNT | CODE/DESCRIPTION |
|---|---|---|---|---|---|
| 04-04-12  04-12  312  COUNTY TAX | | | | | |
| 1,495.80- | 0.00 | 0.00 | 1495.00- | | |
| | | | 2715.41- | | NEW PRINCIPAL/ESCROW BALANCES |
| 03-27-12  06-11  173  PAYMENT | | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 17.66 * | |
| | | | | 17.66- | |
| 03-27-12  00-00  745  CORP. ADVANCE ADJUSTMENT | | | | | |
| 17.66- | 0.00 | 0.00 | 0.00 | | |
| 03-27-12  06-11  173  PAYMENT | | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 26.00 G | PROPERTY INSPECTION |
| | | | | 26.00- | |
| 03-27-12  06-11  160  REPAY OF ESCROW ADVANCE | | | | | |
| 0.00 | 0.00 | 0.00 | 507.47- | 507.47 | |
| 03-27-12  06-11  173  PAYMENT | | | | | |
| 0.00 | 0.00 | 0.00 | 507.47 | 120.37 1 | LATE CHARGE |
| | | | | 627.84- | |
| | | | 1219.61- | | NEW PRINCIPAL/ESCROW BALANCES |
| 03-06-12  06-11  173  PAYMENT | | | | | 03-06-12 |
| 318.29 | 0.00 | 0.00 | 0.00 | 318.29 | |
| 01-31-12  06-11  173  PAYMENT | | | | | 01-30-12 |
| 310.29 | 0.00 | 0.00 | 0.00 | 310.29 | |
| 12-30-11  06-11  173  PAYMENT | | | | | 12-29-11 |
| 310.29 | 0.00 | 0.00 | 0.00 | 318.29 | |
| 11-29-11  06-11  173  PAYMENT | | | | | |
| 310.29 | 0.00 | 0.00 | 0.00 | 318.29 | |
| 11-16-11  06-11  152  LATE CHARGE ASSESSMENT | | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 120.37-1 | LATE CHARGE |
| 11-03-11  06-11  161  ESCROW ADVANCE | | | | | |
| 950.00 | 0.00 | 0.00 | 950.00 | | |
| 11-03-11  11-11  351  HAZARD INS (PRIMARY POLICY) | | | | | |
| 950.00- | 0.00 | 0.00 | 950.00- | | |
| | | | 1727.08- | | NEW PRINCIPAL/ESCROW BALANCES |
| 10-27-11  06-11  173  PAYMENT | | | | | 10-26-11 |
| 329.80 | 0.00 | 0.00 | 0.00 | 329.80 | |

REQ BY G2B

CUSTOMER ACCOUNT ACTIVITY STATEMENT

DATE 10/12/12
PAGE   3

RICHARD A GLIDDEN
LOAN NUMBER: 0029259710

ACTIVITY FOR PERIOD 01/01/10 - 10/11/12

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|---|
| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | AMOUNT | OTHER CODE/DESCRIPTION |
| 10-05-11 00-00 601 MISC. CORPORATE DISBURSEMENT | | | | | |
| 17.66 | 0.00 | 0.00 | 0.00 | | |
| 09-29-11 06-11 173 PAYMENT | | | | | 09-28-11 |
| 329.80 | 0.00 | 0.00 | 0.00 | 329.80 | |
| 09-26-11 06-11 161 ESCROW ADVANCE | | | | | |
| 769.00 | 0.00 | 0.00 | 769.08 | | |
| 09-26-11 10-11 312 COUNTY TAX | | | | | |
| 1,484.27- | 0.00 | 0.00 | 1484.27- 769.00- | NEW PRINCIPAL/ESCROW BALANCES | |
| 06-31-11 06-11 173 PAYMENT | | | | | |
| 329.80 | 0.00 | 0.00 | 0.00 | 329.80 | |
| 06-21-11 05-11 173 PAYMENT | | | | | 06-20-11 |
| 0.00 | 494.44 | 1,913.01 | 318.81 715.19 | 2,726.26- NEW PRINCIPAL/ESCROW BALANCES | |
| | 366,002.76 | | | | |
| 06-20-11 08-11 172 PAYMENT | | | | | |
| 1,002.00 | 0.00 | 0.00 | 0.00 | 1,002.00 | |
| 05-25-11 05-11 172 PAYMENT | | | | | |
| 1,200.00 | 0.00 | 0.00 | 0.00 | 1,200.00 | |
| 05-05-11 04-11 173 PAYMENT | | | | | 05-04-11 |
| 0.00 | 491.80 | 1,915.57 | 318.29 396.38 | 2,726.74- NEW PRINCIPAL/ESCROW BALANCES | |
| | 367,297.20 | | | | |
| 05-05-11 04-11 147 | | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 1,500.00 | |
| 05-05-11 04-11 147 | | | | | |
| 0.00 | 1,500.00- | 0.00 | 0.00 | NEW PRINCIPAL/ESCROW BALANCES | |
| | 367,789.08 | | | | |
| 05-06-11 04-11 147 | | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | | |
| 05-04-11 04-11 172 PAYMENT | | | | | |
| 1,750.00 | 0.00 | 0.00 | 0.00 | 1,750.00 | |
| 03-29-11 04-11 312 COUNTY TAX | | | | | |
| 1,484.20- | 0.00 | 0.00 | 1484.28- 78.09 | NEW PRINCIPAL/ESCROW BALANCES | |
| 03-29-11 04-11 175 PRINCIPAL PAYMENT | | | | | |
| 0.00 | 1,500.00 | 0.00 | 0.00 | 1,500.00- NEW PRINCIPAL/ESCROW BALANCES | |
| | 366,289.00 | | | | |

```
                    CUSTOMER ACCOUNT ACTIVITY STATEMENT              DATE 10/12/12
REQ BY GZB                                                          PAGE    9

RICHARD A GLADDEN
LOAN NUMBER: 0029259710

                    ACTIVITY FOR PERIOD 01/01/10 - 10/11/12
PROCESS    DUE      TRANSACTION                                     EFFECTIVE DATE
DATE       DATE     CODE                DESCRIPTION                 OF TRANSACTION
-------------------------------------------------------------------------------
  TRANSACTION   PRIN. PAID/              ESCROW PAID/   ---------OTHER-----------
    AMOUNT        BALANCE    INTEREST     BALANCE     AMOUNT CODE/DESCRIPTION
-------------------------------------------------------------------------------
03-20-11  04-11  172  PAYMENT
    1,500.00         0.00        0.00        0.00    1,500.00
02-16-11  03-11  172  PAYMENT
    2,725.00       489.33    1,918.12      317.55
               367,709.00              1562.37    NEW PRINCIPAL/ESCROW BALANCES
01-18-11  02-11  172  PAYMENT
    2,725.00       486.00    1,920.65      317.55
               368,270.41              1244.83    NEW PRINCIPAL/ESCROW BALANCES
12-16-10  01-11  172  PAYMENT
    2,725.00       484.20    1,923.17      317.55
               368,768.21               927.27    NEW PRINCIPAL/ESCROW BALANCES
11-08-10  12-10  172  PAYMENT
    2,725.00       481.77    1,925.68      317.55
               369,249.49               609.72    NEW PRINCIPAL/ESCROW BALANCES
11-03-10  11-10  351  HAZARD INS (PRIMARY POLICY)
      937.00-        0.00        0.00      937.00-
                                          292.17    NEW PRINCIPAL/ESCROW BALANCES
10-04-10  11-10  172  PAYMENT
    2,725.00       479.27    1,920.18      317.55
               369,731.26              1229.17    NEW PRINCIPAL/ESCROW BALANCES
09-27-10  10-10  312  COUNTY TAX
    1,347.91-        0.00        0.00    1,347.91-
                                          911.62    NEW PRINCIPAL/ESCROW BALANCES
09-08-10  10-10  172  PAYMENT
    2,725.00       476.79    1,930.66      317.55
               370,210.53              2259.53    NEW PRINCIPAL/ESCROW BALANCES
08-09-10  09-10  172  PAYMENT
    2,725.00       474.32    1,933.13      317.55
               370,687.32              1941.98    NEW PRINCIPAL/ESCROW BALANCES
07-19-10  09-10  175  PRINCIPAL PAYMENT
        0.26         0.26        0.00        0.00
               371,161.64               NEW PRINCIPAL/ESCROW BALANCES
07-19-10  08-10  172  PAYMENT
    2,725.74       471.86    1,936.89      318.29
               371,161.90              1624.43    NEW PRINCIPAL/ESCROW BALANCES
```

CUSTOMER ACCOUNT ACTIVITY STATEMENT

DATE 10/12/12
PAGE   5

RBQ BY GZB

RICHARD A GLIDDEN
LOAN NUMBER: 0029259710

ACTIVITY FOR PERIOD 01/01/10 - 10/11/12

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|
| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | OTHER AMOUNT CODE/DESCRIPTION |

| PROCESS DATE | DUE DATE | CODE | DESC | TRANSACTION AMOUNT | PRIN. PAID/BALANCE | INTEREST | ESCROW PAID/BALANCE | OTHER |
|---|---|---|---|---|---|---|---|---|
| 06-10-10 | 07-10 | 172 | PAYMENT | 2,725.00 | 469.41 371,633.76 | 1,938.04 | 317.55 1306.14 | NEW PRINCIPAL/ESCROW BALANCES |
| 05-05-10 | 06-10 | 172 | PAYMENT | 2,776.28 | 466.98 372,103.17 | 1,940.47 | 360.03 988.69 | NEW PRINCIPAL/ESCROW BALANCES |
| 04-08-10 | 05-10 | 172 | PAYMENT | 2,776.28 | 464.56 372,570.15 | 1,942.89 | 360.03 619.76 | NEW PRINCIPAL/ESCROW BALANCES |
| 03-31-10 | 04-10 | 312 | COUNTY TAX | 1,347.92- | 0.00 | 0.00 | 1347.92- 250.93 | NEW PRINCIPAL/ESCROW BALANCES |
| 03-10-10 | 04-10 | 172 | PAYMENT | 2,776.28 | 462.16 373,034.71 | 1,945.30 | 360.03 1598.85 | NEW PRINCIPAL/ESCROW BALANCES |
| 02-10-10 | 03-10 | 172 | PAYMENT | 2,776.28 | 459.76 373,496.86 | 1,947.69 | 360.03 1230.02 | NEW PRINCIPAL/ESCROW BALANCES |
| 01-06-10 | 02-10 | 172 | PAYMENT | 2,734.34 | 457.38 373,956.62 | 1,950.07 | 326.89 861.19 | NEW PRINCIPAL/ESCROW BALANCES |

0029259710 P0

# CENLAR®
## CENTRAL LOAN ADMINISTRATION & REPORTING

RICHARD A GLIDDEN
LETICIA LUCERO
1003 159TH PL SE
BELLEVUE, WA 900080000

October 12, 2012

PAGE 1 REPORT CREATED: 10/13/2009 at 10:35:22
LOAN HISTORY

Below are the Transactions on File for the Loan

| REF TR NO | OLD LOAN NO | HIST ID | USER ID | SYSTEM ID | PAYEE NAME | SHORT NAME | EXP | TYP | TRN | DESC | INT | CD | INV | EXP | CD | DUE DATE | PAID TO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0029259710 1327561 | | 64 jkroot NULL | 376722.77 | | NULL | | EXP SERV | TRF | | 803 | 002 | 03/01/2005 08/01/2005 | | | | |
| 374629.72 0.00 NULL | | 0.00 | | 0.00 -2590.05 NULL | 0.0 | | 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 | | | | |
| 0029259710 1327561 | | 63 aecoaba NULL | 463.04 | | NULL | Richard A Gilda | RES | 3rd Party CFees | 803 | 002 | 03/01/2009 06/05/2009 | | | | |
| 2742.52 0.00 NULL | | 0.00 | | 0.00 335.06 NULL | 0.00 | | 0.00 | 0.00 | | 0.00 | 0.00 | 376722.77 1593.05 | | | | |
| 0029259710 1327561 | | 62 aecoaba NULL | 440.75 | | NULL | Richard A Gilda | RES | 3rd Party CFees | 803 | 002 | 07/01/2009 07/06/2009 | | | | |
| 2742.52 0.00 NULL | | 0.00 | | 0.00 335.06 NULL | 0.00 | | 0.00 | 0.00 | | 0.00 | 0.00 | 277465.81 1587.99 | | | | |
| 0029259710 1327561 | | 61 aecoaba NULL | 438.47 | | NULL | Richard A Gilda | RES | 3rd Party CFees | 803 | 002 | 06/01/2009 06/03/2009 | | | | |
| 2742.52 0.00 NULL | 1968.58 | 0.00 | | 0.00 335.06 NULL | 0.00 | | 0.00 | 0.00 | | 0.00 | 0.00 | 277266.56 1222.93 | | | | |
| 0029259710 1327561 | | 60 aecoaba NULL | 436.19 | | NULL | Richard A Gilda | RES | 3rd Party CFees | 803 | 002 | 05/01/2009 05/04/2009 | | | | |
| 2742.52 0.00 NULL | 1971.26 | 0.00 | | 0.00 335.06 NULL | 0.00 | | 0.00 | 0.00 | | 0.00 | 0.00 | 378045.03 287.57 | | | | |
| 0029259710 1327561 | 6.00 | 59 aecoaba NULL | 0.00 | | NULL | Richard A Gilda | INT | 3rd Party CFees | 803 | 002 | 05/01/2009 04/28/2009 | | | | |
| 0.00 0.00 NULL | | 0.00 | | 120.37 0.00 NULL | 0.00 | | 0.00 | -120.37 | | 0.00 | 0.00 | 378481.22 585.81 | | | | |
| 0029259710 1327561 | 1973.52 | 58 aecoaba NULL | -433.52 | | NULL | Richard A Gilda | RES | 3rd Party CFees | 803 | 002 | 04/01/2009 04/25/2009 | | | | |
| 2562.89 NULL | | 120.37 | | 0.00 335.06 NULL | 0.00 | | 0.00 | 120.37 | | 0.00 | 0.00 | 376481.22 585.81 | | | | |
| 120.37 NULL | | | | | | | | | | | | | | | | |
| 0029259710 1327561 | 0.00 | 57 lmnuma NULL | 0.00 | | KING COUNTY TR | Richard A Gilda | DIS | Tax Dis | 803 | 002 | 04/01/2009 04/25/2009 | | | | |
| 0.00 NULL | | 0.00 | | 0.00 -2330.77 | 21433.00 ( | | 0.00 | 0.00 | | 0.00 | 0.00 | 378555.15 397.75 | | | | |
| 0029259710 1327561 | 0.00 | 56 aecoaba NULL | 0.00 | | NULL | Richard A Gilda | ADJ | 3rd Party CFees | 803 | 002 | 04/01/2009 03/06/2009 | | | | |
| 0.00 0.00 NULL | | 0.00 | | 0.00 7.49 NULL | 0.00 | | 0.00 | -7.49 | | 0.00 | 0.00 | 378915.15 2548.52 | | | | |
| 0029259710 1327561 | 1975.76 | 55 aecoaba NULL | 431.69 | | NULL | Richard A Gilda | RES | 3rd Party CFees | 803 | 002 | 03/01/2009 03/06/2009 | | | | |
| 2730.02 7.49 NULL | | 0.00 | | 0.00 335.06 NULL | 0.00 | | 0.00 | 7.49 | | 0.00 | 0.00 | 378555.15 561.04 | | | | |

PAGE 3

| KEY IN NO OLD LOAN NO UNAPPLIED BAL TAX ID | HIST ID USER ID SYSTEM ID INT PD TD TD LC UNPAID BAL SA ID | PAYEE NAME | SHORT NAME | INV CD TRAN DESC TXI DSC | INV CD INV TRF CD USE DATE PAID IN |
|---|---|---|---|---|---|
| 0029259710 1327541 -1232.58 0.00 NULL | 42 Iasunca NULL 0.00 0.00 | KING COUNTY 0.00 -1232.58 23412.00 4 | Richard A Gilden ESS 0.00 | 0.00 0.00 | 10/01/2008 10/01/2008 181528.84 895.72 0.00 0.00 |
| 0029259710 1327541 2702.69 0.00 NULL | 41 Iasunca NULL 413.24 0.00 | NULL 0.00 0.00 NULL | Richard A Gilden ESS 0.00 | 803 0.00 | 09/01/2008 09/04/2008 181528.84 2092.60 0.00 0.00 |
| 0029259710 1327541 0.00 0.00 NULL | 40 Iasunca NULL 415.98 0.00 | NULL 0.00 0.00 NULL | Richard A Gilden ESS 0.00 | 803 0.00 | 08/01/2008 08/05/2008 181566.98 1757.36 0.00 0.00 |
| 0029259710 1327541 0.00 0.00 NULL | 39 Iasunca NULL 0.00 0.00 | NULL 120.37 0.00 NULL | Richard A Gilden ESS 0.00 | 803 0.00 | 08/01/2008 07/23/2008 182362.56 1502.12 0.00 0.00 |
| 0029259710 1327541 120.37 0.00 NULL | 38 Iasunca NULL 0.00 120.37 | NULL 0.00 0.00 NULL | Richard A Gilden ESS 0.00 | 803 -19.00 | 08/01/2008 07/23/2008 182362.56 1502.12 0.00 0.00 |
| 0029259710 1327541 132.37 0.00 NULL | 37 Iasunca NULL 411.83 120.37 | NULL 0.00 0.00 NULL | Richard A Gilden ESS 0.00 | 803 133.37 | 07/01/2008 07/23/2008 182362.56 1502.12 0.00 0.00 |
| 0029259710 1327541 -19.00 0.00 NULL | 36 freefie NULL 0.00 120.37 | NULL 0.00 0.00 NULL | Richard A Gilden ESS 0.00 | 803 0.00 | 07/01/2008 07/23/2008 182776.78 1205.36 0.00 0.00 |
| 0029259710 1327541 2702.69 0.00 NULL | 35 freefie NULL 411.68 0.00 | NULL 0.00 0.00 NULL | Richard A Gilden SES 0.00 | 803 0.00 | 06/01/2008 06/03/2008 182776.78 1205.36 0.00 0.00 |
| 0029259710 1327541 2702.69 0.00 NULL | 34 Iasunca NULL 409.54 0.00 | NULL 0.00 0.00 NULL | Richard A Gilden ESS 0.00 | 803 0.00 | 05/01/2008 05/07/2008 183188.46 911.64 0.05 0.00 |
| 0029259710 1327541 2702.69 0.00 NULL | 33 Iasunca NULL 407.42 0.00 | NULL 0.00 0.00 NULL | Richard A Gilden ESS 0.00 | 803 0.00 | 04/01/2008 04/06/2008 183595.00 656.40 0.00 0.00 |
| 0029259710 1327541 -1232.58 0.00 NULL | 32 Iasunca NULL 0.00 0.00 | KING COUNTY 0.00 -1232.58 23412.00 4 | Richard A Gilden DIS 0.00 | 803 0.00 | 04/01/2008 03/21/2008 186005.42 521.16 0.00 0.00 |
| 0029259710 1327541 -0.01 0.00 NULL | 31 break NULL 0.00 0.00 | NULL 0.00 0.00 NULL -0.01 | NULL | ORE inv sale adj 0.00 0.00 | 803 0.00 | 03/13/2008 0.00 0.00 |

```
PAGE 4
KEY IN NO  OLD LOAN NO  HIST ID USER ID SYSTEM ID PAYEE NAME   SHORT NAME   INV CD TRN DISC  INV CD  INV GRP CD DUE DATE  PAID DT
           UNPAID BAL PRI PD  PER ID PD DT IC UNPAID BAL BA ID  CST AND MISC FEE AMT  RET CK AMT  PRIN BL AMT  PI DU AMT
                                                                EA TYPE ID  PRIN YTD   INT YTD    IC YTD    GRSS YTD  UNAPPLD YTD

0022259710 1327541           30 seccobs  NULL         Richard A Gilde  RES   3rd Party Cfree SC3    02  05/01/2008 03/01/2008
2702.69    0.00 NULL          435.31      0.00   295.24      0.00    0.00        0.00   0.00   354005.42  1551.04
                                          0.00 NULL  0.00                               0.00              0.00

0023259710 1327541           29 secobbs NULL          Richard A Gilde RES    3rd Party Cfree 303    02  02/01/2008 02/01/2008
2702.69    0.00 NULL          402.21      0.00   295.24      0.00    0.00        0.00   0.00   364510.73  1258.80
2006.24                                   0.00 NULL  0.00                               0.00              0.00

0024259710 1327541           28 secobbs NULL          Richard A Gilde RES    3rd Party Cfree 303    02  01/01/2008 01/01/2008
2702.69    0.00 NULL          401.21      0.00   295.24      0.00    0.00        0.00   0.00   366013.94  562.56
2006.33                                   0.00 NULL  0.00                               0.00              0.00

0025259710 1327541           27 Stoomds  NULL         Richard A Gilde RES    Zone End              02  01/01/2008 01/01/2008
0.00       0.00 NULL          0.00        0.00   295.25      0.00    0.00        0.00   0.00   366013.94  666.22
0.00                                      0.00 NULL  0.00   465663900  2422S.51                   0.00    0.00

0026259710 1327541           26 secobbs NULL          Richard A Gilde RES    3rd Party Cfree SC5    03  12/01/2007 12/05/2007
2702.69    0.00 NULL          395.04      0.00   295.25      0.00    0.00        0.00   0.00   385215.06  666.22
2008.42                                   0.00 NULL  0.00                               2286.47          1596.00

0027259710 1327541           25 secobbs NULL          Richard A Gilde RES    3rd Party Cfree SC5    03  11/01/2007 11/02/2007
2702.69    0.00 NULL          396.98      0.00   295.24      0.00    0.00        0.00   0.00   385215.06  666.22
2010.47                                   0.00 NULL  0.00                               0.00             0.00

0028259710 1327541           24 Stoomds NULL          Richard A Gilde DES    3rd Dis              03   11/01/2007 10/10/2007
-1297.00   0.00 NULL          0.00        0.00  -1297.00 1  0.00     0.00        0.00   0.00   385311.10  172.08
                                   465990.00 1              0.00                        0.00             0.00

0029259710 1327541           24 Ebewlas NULL          Encompass Insu  INV    3rd Dis              03   11/01/2007 10/10/2007
-1297.00   0.00 NULL          0.00        0.00  465990.00 1  0.00    0.00        0.00   0.00   386011.05  77.34
                                          0.00 NULL  0.00                               0.00             0.00

0030259710 1327541           23 secobbs NULL          Richard A Gilde ADV    3rd Party Cfree 303    03  10/01/2007 10/05/2007
0.00       0.00 NULL          0.00        0.00   7.51       0.00     0.00        0.00   0.00   386011.05  1574.84
                                          0.00 NULL  0.00                               -7.51            0.00

0031259710 1327541           22 secobbs NULL          Richard A Gilde RES    3rd Party Cfree 303    03  10/01/2007 10/05/2007
2702.00    0.00 NULL          396.92      0.00   295.24      0.00    0.00        0.00   0.00   386011.08  1367.53
2032.53                                   0.00 NULL  0.00                               -7.31            0.00

0032259710 1327541           21 Isnxtam NULL          KING COUNTY TR RES     3rd Dis              03   10/01/2007 09/28/2007
-1143.00   0.00 NULL          0.00        -1143.00 4  21412.04 4  0.00  0.00     0.00   0.00   386065.00  1072.29
                                          0.00 NULL  0.00                               0.00             0.00

0033259710 1327541           20 secobbs NULL          Richard A Gilde RES    3rd Party Cfree 303    03  05/01/2007 09/06/2007
2682.25    0.00 NULL          392.97      0.00   280.84      0.00    0.00        0.00   0.00   386400.00  2255.52
2056.58                                   0.00 NULL  0.00                               0.00             0.00

0034259710 1327541           19 secobbs NULL          Richard A Gilde RES    3rd Party Cfree 302    03  08/01/2007 08/07/2007
2609.29    0.00 NULL          390.84      0.00   280.64      0.00    0.00        0.00   0.00   367796.87  1051.59
2016.62                                   0.00 NULL  0.00                               0.00             0.00
```

PAGE 5

| UNBILLED BAL TAX ID | HIST TSK ID SYSTEM ID PAYER NAME | SHORT NAME | TRN OR TRAN DESC | INV ON INV GRP OR DUE DATE PAID OR | |
|---|---|---|---|---|---|
| 0029255710 1227541 | 13 aecobba NULL | NULL | Richard A Glick RSS | Lockbox | 802 .015 08/01/2007 07/05/2007 |
| 0.00 NULL | 0.00 | 0.00 | 0.00 | 0.00 | 387789.71 1651.84 |
| 2656.29 | | 1.71 | | -1.71 | 0.00 |
| 0029255710 1227541 | 17 aecobba NULL | NULL | Richard A Glick RSS | Lockbox | 802 .015 07/01/2007 07/05/2007 |
| 2692.00 2218.66 | 382.81 | 0.00 | 0.00 | 1.71 | 387189.71 1652.13 |
| 1.71 NULL | 0.00 | 0.00 NULL | 0.00 | 0.00 | 0.00 |
| 0029255710 1227541 | 16 aecobba NULL | NULL | Richard A Glick RSS | Lockbox | 803 .02 07/01/2007 06/07/2007 |
| 0.00 | 0.00 | 0.00 | 0.00 | -1.71 | 387578.52 1271.29 |
| 0.00 NULL | 0.00 | 0.00 NULL | 0.00 | 0.00 | 0.00 |
| 0029255710 1227541 | 15 aecobba NULL | NULL | Richard A Glick RSS | Lockbox | 803 .02 06/07/2007 |
| 2690.10 2223.65 | 386.50 | 0.00 280.84 | 0.00 | 1.71 | 387578.52 1365.56 |
| 1.71 NULL | 0.00 | 0.00 NULL | 0.00 | 0.00 | 0.00 |
| 0029255710 1227541 | 14 16xx NULL | NULL | Richard A Glick RSS | Lockbox—RRA | 803 .02 05/04/2007 |
| 2686.00 2022.66 | 384.79 | 0.00 260.55 | 0.00 | 0.00 | 387585.23 1061.74 |
| 0.00 NULL | 0.00 | 0.00 NULL | 0.00 | 0.00 | 0.00 |
| 0029255710 1227541 | 13 aecobba NULL | NULL | Richard A Glick RSS | Lockbox | 803 .02 04/09/2007 |
| 2685.29 2021.65 | 383.49 | 0.00 280.84 | 0.00 | 0.00 | 388350.11 308.19 |
| 0.00 NULL | 0.00 | 0.00 NULL | 0.00 | 0.00 | 0.00 |
| 0029255710 1227592 | 12 lacuana NULL | KING COUNTY TA | Richard A Glick RIS | TAX Dis | 803 .02 04/03/2007 |
| -1143.04 0.00 NULL | 0.00 | 21433.00 < | 0.00 | 0.00 | 388732.91 527.35 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0029255710 1227541 | 11 jemulee NULL | Suumpea Inamr | Richard A Glick RIS | TXT Dis | 803 .02 03/22/2007 |
| -257.00 0.00 NULL | 0.00 | 0.00 -297.00 | 0.00 | 0.00 | 388732.91 1570.59 |
| 0.00 | 0.00 | -14590.00 I | 0.00 | 0.00 | 0.00 |
| 0029255710 1227541 | 10 aecobba NULL | NULL | Richard A Glick RSS | Lockbox | 803 .02 03/05/2007 |
| 2655.29 2056.65 | 380.82 | 0.00 280.84 | 0.00 | 0.00 | 388732.91 2967.59 |
| 0.00 NULL | 0.00 | 0.00 NULL | 0.00 | 0.00 | 0.00 |
| 0029255710 1227541 | 9 aecobba NULL | NULL | Richard A Glick RSS | Lockbox | 803 .02 02/22/2007 |
| 2655.29 2023.62 | 376.86 | 0.00 280.84 | 0.00 | 0.00 | 388213.73 1566.75 |
| 0.00 NULL | 0.00 | 0.00 NULL | 0.00 | 0.00 | 0.00 |
| 0029255710 1227541 | 8 aecobba NULL | NULL | Richard A Glick RSS | Lockbox | 803 .02 01/26/2007 |
| 2658.29 2030.57 | 376.82 | 0.00 280.84 | 0.00 | 0.00 | 384592.57 1405.91 |
| 0.00 NULL | 0.00 | 0.00 NULL | 0.00 | 0.00 | 0.00 |
| 0029255710 1227541 | 7 Namrk NULL | NULL | Richard A Glick RSS | Year End | 803 .02 01/01/2007 |
| 0.00 | 0.00 | 0.00 NULL | 0.00 | 0.00 | 389869.45 1125.07 |
| 0.00 NULL | 0.00 | 1125.55 | 1125.55 | 7040.81 | 0.00 0.00 |

PAGE 9

| | | | SENT NAME | TRN CD TRAN DESC | INV CD INV CRD CD DUE DATE PAID DT | |
|---|---|---|---|---|---|---|

| 0029259710 1327561 | 6 Kiambū NULL | NULL | Richard A Gliński REG | lockbox | 12/05/2006 12/05/2006 | |
| 2688.29  2032.52 | 374.93 | 0.00  280.84 | 0.00 | 0.00  303  .002 | 389369.15  1135.07 | |
| 0.00  0.00 NULL | 0.00 | 0.00 NULL | 0.00 | 0.00  0.00 | 0.00  0.00 | |

| 0029259710 1327561 | 5 Kiambū NULL | NULL | Richard A Gliński CTR | lockbox | 12/01/2006 11/03/2006 | |
| 0.00  0.00 | 0.00 | 0.00 | 11.71 | 303  .006 | 390264.35  261.23 | |
| 0.00  0.00 NULL | 0.00 | 0.00 NULL | 0.00 | -11.71  0.00 | 0.00  0.00 | |

| 0029259710 1327561 | 4 Kiambū NULL | NULL | Richard A Gliński REG | lockbox | 11/01/2006 11/03/2006 | |
| 2700.00  2034.55 | 372.52 | 0.00  280.84 | 0.00 | 0.00  803  .006 | 390256.09  261.23 | |
| 11.71 NULL | 0.00 | 0.00 NULL | 0.00 | 11.71  0.00 | 0.00  0.00 | |

| 0029259710 1327561 | 3 Kiambū NULL | NULL | Richard A Gliński ADJ | lockbox | 11/01/2006 10/31/2006 | |
| 0.00  0.00 | 0.00 | 0.00  1.71 | 0.00 | 0.00  002  .001 | 390629.01  561.39 | |
| 0.00  0.00 NULL | 0.00 | 0.00 NULL | 0.00 | -1.71  0.00 | 0.00  0.00 | |

| 0029259710 1327561 | 2 Kiambū NULL | NULL | Richard A Gliński REG | lockbox | 10/01/2006 10/31/2006 | |
| 2690.00  2036.46 | 370.59 | 0.00  280.84 | 0.00 | 0.00  002  .001 | 390629.01  561.62 | |
| 1.71 NULL | 0.00 | 0.00 NULL | 0.00 | 1.71  0.00 | 0.00  0.00 | |

| 5029259710 1327561 | 1 Settler NULL | NULL | Richard A Gliński REG  Set Up | 10/01/2006 08/18/2006 | |
| 0.00  0.00 | 0.00 | 0.00 | 0.0 | 237.30  0.00  002  .001 | 392000.00  230.24 | |
| 0.00  0.00 TRAN | 0.00 | 0.00  0.00 | | 0.00  0.00 | 0.00  0.00 | |

Pg 1 of 2

 **CENLAR**

P O Box 211091
Eagan, MN 55121



Richard A Glidden
Leticia Lazaro
1003 150th Pl SE
Bellevue WA 98008-5028

August 18, 2009

## NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING

RE:  Taylor, Bean & Whitaker Mortgage Corp. Loan Number: 0001327541
     Central Loan Administration & Reporting Loan Number: 0029250710

Dear Mortgagor(s):

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, has been assigned, sold, or transferred from Taylor, Bean & Whitaker Mortgage Corp. to Cenlar FSB d/b/a Central Loan Administration & Reporting effective August 12, 2009. The transfer of the servicing of your mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan.

Your present servicer is Taylor, Bean & Whitaker Mortgage Corp. If you have any questions regarding the transfer of servicing from your present servicer, call Taylor, Bean & Whitaker Mortgage Corp.'s Customer Service Department at (888) 225-2164, between 9:00 A.M. and 6:00 P.M. (ET), Monday through Friday.

Central Loan Administration & Reporting will be your new servicer. The business addresses for your new servicer are as follows:

New Servicer – Central Loan Administration & Reporting

| Correspondence Address: | Payment Address: | Qualified Written Request: |
|---|---|---|
| P.O. Box 211091 | P.O. Box 11733 | P.O. Box 77423 |
| Eagan, MN 55121 | Newark, NJ 07101-4733 | Ewing, NJ 08628 |

The toll free number for your new servicer is (877) 680-5583. If you have any questions related to the transfer of servicing to Central Loan Administration & Reporting, call our Customer Service Department at (877) 680-5583 between 9:00 A.M. and 6:00 P.M., (ET) Monday through Friday. Please have your loan number available when calling. You can also access your loan information or make a payment 24 hours a day, 7 days a week by logging onto www.loanadministration.com.

The date that Taylor, Bean & Whitaker Mortgage Corp. stopped accepting payments from you was August 11, 2009. The date that Central Loan Administration & Reporting started accepting payments from you was August 12, 2009. Send all payments due on or after that date to Central Loan Administration & Reporting. Attached is a temporary coupon to be used until you receive your new coupon book.

If your mortgage payment is currently being drafted by Taylor, Bean & Whitaker Mortgage Corp. this service will be continued with Central Loan Administration & Reporting. If your payment did not draft in the month of August it will be drafted by Central Loan Administration & Reporting by the end of the month. If you would like to stop your automatic draft, please contact Central Loan Administration & Reporting at least 3 Business Days prior to your next scheduled draft. Please be assured that there will be no adverse reporting or action taken as a result of any delays.

If you would like to begin using our automatic drafting service, please complete the enclosed authorization form and return it with a voided check or encoded deposit slip to the address indicated on the form. When you select this option you have the added convenience of picking your payment date (any day between the 1st and the 10th of each month). Because of the required lead time to set up automatic deduction, it will be necessary for you to continue mailing your payments until you are notified when your drafting will begin.

If you are currently making your mortgage payment through a third-party entity (e.g. government allotment, biweekly, or bill-pay service) please take the necessary steps to advise them of your new loan number and change the payee to Central Loan Administration & Reporting, P.O. Box 11733, Newark, NJ 07101-7733. In the event of a payment change, it is your responsibility to notify the third party of the new payment amount.

Central Loan Administration & Reporting also offers an alternative way to make your monthly payment called Mortgage Pay by phone. Please contact our Customer Service Department for more details.

Please contact your homeowners' insurance company and ask that your 'mortgagee' clause be updated to read: Central Loan Administration & Reporting, ISAOA, ATIMA, P.O. Box 202028, Florence, SC 29502-2028 and have them reference the new loan number.

Future real estate tax bills should be mailed to: Central Loan Administration & Reporting, 6053 S. Fashion Square Drive, Suite 200, Murray, UT 84107. Property insurance bills should be mailed to: Central Loan Administration & Reporting, P.O. Box 202028, Florence SC 29502-2028. Please remember to include your new mortgage loan account number on all correspondence.

You will receive one (1) Year-End Statement from Central Loan Administration & Reporting that will reflect activity for the entire year of 2009.

If you currently have optional insurance, (accident and health, disability, mortgage, or life) this insurance will be continued with Central Loan Administration & Reporting.

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights. If you send a 'qualified written request' to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A 'qualified written request' is written correspondence other than notice on a coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reason for the request.

Not later than 60 Business Days after receiving your request, your loan servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During the 60 Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A Business Day is any day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions. Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

Central Loan Administration & Reporting looks forward to servicing your loan.

Sincerely,                                              Sincerely,

Central Loan Administration & Reporting                 Taylor, Bean & Whitaker Mortgage Corp.

# EXHIBIT 15

Lucero v. Cenlar FSB, et al.

2:13-cv-00602-RSL

Deed of Trust and Note

20060818001673.001

When Recorded Return To:

Taylor, Bean & Whitaker Mortgage Corp.
1417 North Magnolia Ave.
Ocala, FL 34475



**20060818001673**
OLD REPUBLIC T DT          49.00
PAGE001 OF 017
08/18/2006 14:04
KING COUNTY, WA

——————————— [Space Above This Line For Recording Data] ———————————

# DEED OF TRUST

MIN: 100029500013275411

Grantor(s):
    (1) Richard A Glidden
    (2) Leticia Lucero
    (3)
    (4)
    (5)
    (6)

OLD REPUBLIC TITLE LTD. 30-1598-1

Grantee(s):
    (1) Taylor, Bean & Whitaker Mortgage Corp.

    (2) OLD REPUBLIC TITLE, LTD

Legal Description (abbreviated): See Attached Exhibit A.

Lot 1, Blk 4, Lake Hills No. 1.

additional legal(s) on page

Assessor's Tax Parcel ID #: 403680-0290-02

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated August 16, 2006 together with all Riders to this document.

(B) "Borrower" is Richard A Glidden and Leticia Lucero, husband and wife

Borrower is the trustor under this Security Instrument.

WASHINGTON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3048 1/01
ITEM 1272L1 (0011)—MERS                                      GREATLAND ■
                      (Page 1 of 16 pages)          To Order Call: 1-800-530-9393 □ Fax: 616-791-1131



*0241071327541*

"THIS PLAT IS FOR YOUR AID IN LOCATING YOUR LAND WITH REFERENCE TO SHEETS AND OTHER PARCELS, WHILE THIS PLAT IS BELIEVED TO BE CORRECT, THE COMPANY ASSUMES NO LIABILITY FOR ANY LOSS OCCURRING BY REASON OF RELIANCE THEREON."

20060818001673.002

(C) "Lender" is Taylor, Bean & Whitaker Mortgage Corp.
Lender is a Florida Corporation                                                    organized
and existing under the laws of FL                                          , Lender's address is
1417 North Magnolia Ave, Ocala, FL 34475

(D) "Trustee" is OLD REPUBLIC TITLE, LTD

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under
this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address
and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated August 16, 2006
The Note states that Borrower owes Lender Three Hundred Ninety One Thousand and no/100
                                        Dollars (U.S. $391,000.00         ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
September 01, 2036

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider       ☐ Condominium Rider          ☐ Second Home Rider

☐ Balloon Rider               ☐ Planned Unit Development Rider   ☐ Other(s) [specify]

☐ 1-4 Family Rider            ☐ Biweekly Payment Rider

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or
credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

WASHINGTON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3048 1/01
ITEM T2704L2 (0011)—MERS                    (Page 2 of 16 pages)         To Order Call: 1-800-530-9393□Fax: 616-791-1131    GREATLAND ■

"THIS PLAT IS FOR YOUR AID IN LOCATING YOUR LAND WITH REFERENCE TO SHEETS AND OTHER PARCELS. WHILE THIS PLAT IS BELIEVED TO BE
CORRECT, THE COMPANY ASSUMES NO LIABILITY FOR ANY LOSS OCCURRING BY REASON OF RELIANCE THEREON."

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the        County        of        King        :
[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]

See Attached Exhibit A.

which currently has the address of        1003 159th Place SE
[Street]

Bellevue        , Washington        98008        ("Property Address");
[City]        [Zip Code]

WASHINGTON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3048 1/01
ITEM 727SL9 (0011)—MERS        (Page 3 of 16 pages)        GREATLAND ■

"THIS PLAT IS FOR YOUR AID IN LOCATING YOUR LAND WITH REFERENCE TO STREETS AND OTHER PARCELS. WHILE THIS PLAT IS BELIEVED TO BE CORRECT, THE COMPANY ASSUMES NO LIABILITY FOR ANY LOSS OCCURRING BY REASON OF RELIANCE THEREON."

20080818001673.004

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.    Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.    Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

WASHINGTON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3048 1/01
ITEM T270SL4 (0011)—MERS                                  *(Page 4 of 16 pages)*          GREATLAND ■
                                                                          To Order Call: 1-800-530-9393 □ Fax: 616-791-1131*

"THIS PLAT IS FOR YOUR AID IN LOCATING YOUR LAND IN REFERENCE TO SHEETS AND OTHER PARCELS. WHILE THIS PLAT IS BELIEVED TO BE CORRECT, THE COMPANY ASSUMES NO LIABILITY FOR ANY LOSS OCCURRING BY REASON OF RELIANCE THEREON."

20060818001673.005

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as

WASHINGTON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3048 1/01
                                                                                              GREATLAND ■
ITEM 1989L5 (0011)—MERS                    (Page 5 of 16 pages)              To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

"THIS PLAT IS FOR YOUR AID IN LOCATING YOUR LAND WITH REFERENCE TO STREETS AND OTHER PARCELS. WHILE THIS PLAT IS BELIEVED TO BE CORRECT, THE COMPANY ASSUMES NO LIABILITY FOR ANY LOSS OCCURRING BY REASON OF RELIANCE THEREON."

20060818001673.006

defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as

WASHINGTON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3048 1/01
ITEM 7151L6 (0011)--MERS                        (Page 6 of 16 pages)          GREATLAND ■
                                                                To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

"THIS PLAT IS FOR YOUR AID IN LOCATING YOUR LAND WITH REFERENCE TO STREETS AND OTHER PARCELS. WHILE THIS PLAT IS BELIEVED TO BE CORRECT, THE COMPANY ASSUMES NO LIABILITY FOR ANY LOSS OCCURRING BY REASON OF RELIANCE THEREON."

20060818001673.007

mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

WASHINGTON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3048 1/01
                                                                                   GREATLAND ■
ITEM 1270L7 (0011)—MERS                      (Page 7 of 16 pages)        To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

"THIS PLAT IS FOR YOUR AID IN LOCATING YOUR LAND WITH REFERENCE TO STREETS AND OTHER PARCELS. WHILE THIS PLAT IS BELIEVED TO BE CORRECT, THE COMPANY ASSUMES NO LIABILITY FOR ANY LOSS OCCURRING BY REASON OF RELIANCE THEREON."

20060818001673.008

8.   Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.   Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the Insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect,

WASHINGTON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3048 1/01
ITEM T2709L6 (0011)—MERS                           (Page 8 of 16 pages)          GREATLAND ■
                                                                    To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

"THIS PLAT IS FOR YOUR AID IN LOCATING YOUR LAND WITH REFERENCE TO SHEETS AND OTHER PARCELS. WHILE THIS PLAT IS BELIEVED TO BE CORRECT, THE COMPANY ASSUMES NO LIABILITY FOR ANY LOSS OCCURRING BY REASON OF RELIANCE THEREON."

20060818001673.009

or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)   Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)   Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.   Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking,

WASHINGTON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3048 1/01
                                                                                GREATLAND ■
ITEM 1970L9 (0011)—MERS                      (Page 9 of 16 pages)          To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

"THIS PLAT IS FOR YOUR AID IN LOCATING YOUR LAND WITH REFERENCE TO STREETS AND OTHER PARCELS. WHILE THIS PLAT IS BELIEVED TO BE CORRECT, THE COMPANY ASSUMES NO LIABILITY FOR ANY LOSS OCCURRING BY REASON OF RELIANCE THEREON."

20060818001673.010

destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12.  Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13.  Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

WASHINGTON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3048 1/01

ITEM 1989L10 (0011)—VERS                        (Page 10 of 16 pages)                  GREATLAND ■
                                                                   To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

"THIS PLAT IS FOR YOUR AID IN LOCATING YOUR LAND WITH REFERENCE TO STREETS AND OTHER PARCELS. WHILE THIS PLAT IS BELIEVED TO BE CORRECT, THE COMPANY ASSUMES NO LIABILITY FOR ANY LOSS OCCURRING BY REASON OF RELIANCE THEREON."

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior

WASHINGTON—Single Family—Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**                Form 3048 1/01

ITEM T2704L11 (0011)—PERS                            *(Page 11 of 16 pages)*              To Order Call 1-800-968-9791 FAX 616-791-1131

"THIS PLAT IS FOR YOUR AID IN LOCATING YOUR LAND WITH REFERENCE TO STREETS AND OTHER PARCELS. WHILE THIS PLAT IS BELIEVED TO BE CORRECT, THE COMPANY ASSUMES NO LIABILITY FOR ANY LOSS OCCURRING BY REASON OF RELIANCE THEREON."

20060818001673.012

written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19.  Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20.  Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

WASHINGTON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT             Form 3048 1/01
ITEM T2709L12 (0011)—MERS                          (Page 12 of 16 pages)              To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

"THIS PLAT IS FOR YOUR AID IN LOCATING YOUR LAND WITH REFERENCE TO SHEETS AND OTHER PARCELS, WHILE THIS PLAT IS BELIEVED TO BE CORRECT, THE COMPANY ASSUMES NO LIABILITY FOR ANY LOSS OCCURRING BY REASON OF RELIANCE THEREON."

20060818001673.013

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice

WASHINGTON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3048 1/01
GREATLAND ■
ITEM 72NWL13 (0011)—MERS                    (Page 13 of 16 pages)          To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

"THIS PLAT IS FOR YOUR AID IN LOCATING YOUR LAND WITH REFERENCE TO SHEETS AND OTHER PARCELS. WHILE THIS PLAT IS BELIEVED TO BE CORRECT, THE COMPANY ASSUMES NO LIABILITY FOR ANY LOSS OCCURRING BY REASON OF RELIANCE THEREON."

20060818001673.014

of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

23.   Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

24.   Substitute Trustee. In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25.   Use of Property. The property is not used principally for agricultural purposes.

26.   Attorneys' Fees. Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

WASHINGTON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                          Form 3048 1/01

ITEM 1919L14 (0011)—MERS                              (Page 14 of 16 pages)            To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

"THIS PLAT IS FOR YOUR AID IN LOCATING YOUR LAND WITH REFERENCE TO SHEETS AND OTHER PARCELS. WHILE THIS PLAT IS BELIEVED TO BE CORRECT, THE COMPANY ASSUMES NO LIABILITY FOR ANY LOSS OCCURRING BY REASON OF RELIANCE THEREON."

20060818001673.016

ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 16 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
Richard A Glidden        -Borrower

_____ (Seal)
Leticia Lucero           -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

Witness:                              Witness:

_____             _____

WASHINGTON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3048 1/01
ITEM T2703L15 (0011)—MERS              (Page 15 of 16 pages)        GREATLAND ■
                                                          To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

"THIS PLAT IS FOR YOUR AID IN LOCATING YOUR LAND WITH REFERENCE TO SHEETS AND OTHER PARCELS, WHILE THIS PLAT IS BELIEVED TO BE CORRECT, THE COMPANY ASSUMES NO LIABILITY FOR ANY LOSS OCCURRING BY REASON OF RELIANCE THEREON."

20060818001673.016

State of _Washington_ )
) SS.
County of _King_ )

On this day personally appeared before me

_Richard A. Gliddin and Leticia Cicero_

, to me known to be the individual(s)
described in and who executed the within and foregoing Instrument, and acknowledged that he (she or they)
signed the same as his (her or their) free and voluntary act and deed, for the uses and purposes therein
mentioned.

   Given under my hand and official seal this _16th_ day of _August, 2006_

_[signature]_

Notary Public in and for the State of Washington residing at
_Redmond_

My commission expires: _01.20.09_

WASHINGTON—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT            Form 3048 1/01
ITEM 1269L16 (0011)—MERS                  (Page 16 of 16 pages)        GREATLAND ■
                                                          To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

"THIS PLAT IS FOR YOUR AID IN LOCATING YOUR LAND WITH REFERENCE TO SHEETS AND OTHER PARCELS. WHILE THIS PLAT IS BELIEVED TO BE
CORRECT, THE COMPANY ASSUMES NO LIABILITY FOR ANY LOSS OCCURRING BY REASON OF RELIANCE THEREON."

20060818001673.017

ORDER NO. : 5230001598

# EXHIBIT A

The land referred to is situated in the County of King, City of Bellevue, State of Washington, and is described as follows:

Lot(s) 1, Block 4, LAKE HILLS NO. 1, according to the plat thereof recorded in Volume 56 of Plats, page(s) 86-88, records of King County, Washington.

SITUATE in the County of King, State of Washington

## ABBREVIATED LEGAL

Lot(s) 1, Block 4, LAKE HILLS NO. 1

Tax Account No. 403680-0290-02

Page 1 of 1

"THIS PLAT IS FOR YOUR AID IN LOCATING YOUR LAND WITH REFERENCE TO SHEETS AND OTHER PARCELS. WHILE THIS PLAT IS BELIEVED TO BE CORRECT, THE COMPANY ASSUMES NO LIABILITY FOR ANY LOSS OCCURRING BY REASON OF RELIANCE THEREON."

# EXHIBIT 1
## Lucero v. Cenlar FSB, et al.
## 2:13-cv-00602-RSL

# NOTE

August 16, 2006                          Bellevue                          Washington
[Date]                                    [City]                            [State]

1003 159th Place SE
Bellevue, WA 98008
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 391,000.00              (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Taylor, Bean & Whitaker Mortgage Corp.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of        6.2500%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the    1st    day of each month beginning on        October 01, 2006             . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on September 01, 2036             , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at Taylor, Bean & Whitaker Mortgage Corp., 1417 North Magnolia Ave, Ocala, FL  34475

or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $2,407.45

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE---Single Family---Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3200 1/01

ITEM T1644L1 (0011)                           (Page 1 of 3 pages)        GREATLAND ■
                                                                To Order Call: 1-800-530-9393 □ Fax: 616-791-1131



'230301327541'

20

5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6.  BORROWER'S FAILURE TO PAY AS REQUIRED

(A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of     **Fifteen**     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be          **5.0000%** of my overdue payment of principal and interest, I will pay this late charge promptly but only once on each late payment.

(B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                  Form 3200 1/01
ITEM T164(L2 (0011)                                      *(Page 2 of 3 pages)*                           GREATLAND ■
                                                                                           To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

21

this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 3 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)  
Richard A Glidden          -Borrower

_____ (Seal)  
Leticia Lucero             -Borrower

_____ (Seal)  
                           -Borrower

_____ (Seal)  
                           -Borrower

_____ (Seal)  
                           -Borrower

_____ (Seal)  
                           -Borrower

Without recourse, pay to the order of

[Sign Original Only]

By: Taylor, Bean & Whitaker
Mortgage Corp.

Erla Carter-Shaw, E.V.P.

MULTISTATE FIXED RATE NOTE— Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3100 1/01
ITEM T1643L3 (0011)                          (Page 3 of 3 pages)                        GREATLAND ■
                                                                To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

22