UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| LETICIA LUCERO, | NO. 2:13-cv-00602 |
| Plaintiff, | |
| vs. | SECOND AMENDED COMPLAINT |
| CENLAR FSB and BAYVIEW LOAN SERVICING, LLC, et al., | |
| Defendants. | |

COMES NOW, Plaintiff, by and through her undersigned attorneys, and amends her

Complaint ("SAC") to correct one of the defendants' name (Nancy K. Harris to Nancy K.

Morris) and to add causes of action based on new evidence of violations of law and promulgation

of new law.[1]  As grounds for support of her SAC, Plaintiff alleges as follows:

## I.  <u>INTRODUCTION</u>

1.      This SAC is filed and these proceedings are instituted under the Fair Debt

Collection Practices Act, 15 U.S.C. § 1692, *et. seq.*, ("FDCPA"); the Real Estate Settlement

Procedure Act ("RESPA"); the Truth in Lending Act ("TILA"), the Washington Deed of Trust

---

[1] Paragraphs 37-49 contain the factual allegations of new violations.

SECOND AMENDED COMPLAINT - 1

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

Act ("DTA"); and the Washington Consumer Protection Act, Chapter RCW 19.86, *et. seq.*, ("CPA") to recover actual and statutory damages, reasonable attorney's fees and costs of suit due to Defendants' violations, all of which occurred within one year from the filing date of this Complaint.

## II. JURISDICTION

2.        Jurisdiction of this Court arises under 15 U.S.C. § 1692k (d) and 28 U.S.C. § 1337. Supplemental jurisdiction exists for the state law claims, which arise from a common nucleus of operative facts, pursuant to 28 U.S.C. § 1367. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202. Venue is properly in the Western District of Washington because the dispute arises over real property located in this district.

## III. PARTIES, RELATIONSHIPS & LIABILITIES

3.        Plaintiff Leticia Lucero is an unmarried woman and a resident of King County, Washington. She owns the property known as 1003 159th Pl SE, Bellevue, Washington 98008, solely, after her ex-husband quit-claimed his interest pursuant to their divorce decree; this property has been Plaintiff's homestead.

4.        Plaintiff Lucero purchased the property around August 18, 2006 with her ex-husband and borrowed money to do so from Taylor Bean & Whitaker, a company based out of Florida. At its peak, Taylor Bean & Whitaker was one of the nation's top 10 wholesale mortgage lending companies. In 2009, however, law enforcement and banking regulators shut down Taylor Bean & Whitaker; its majority owner was ultimately convicted of bank fraud, securities fraud, wire fraud and conspiracy to commit fraud.

5.        In 2010, Plaintiff lost her job and went through a divorce. Her husband quit-claimed his share of the property to Plaintiff. Hardship set in and Plaintiff fell behind with the

SECOND AMENDED COMPLAINT - 2

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

payments on her home. Plaintiff remained steadfast in her desire to cure the default. She timely and relentlessly sought a loan modification from the defendants, who held themselves out as having the authority to modify or adjust the terms of the loan that Plaintiff obtained from the defunct Taylor Bean & Whittaker.  Through this odyssey, Plaintiff was made aware of the defendants' relationships and conduct which adversely affected the quality of title of her homestead and her financial standing.

6.      Defendant Mortgage Electronic Registration Systems, Inc., or "MERS" is a foreign corporation based out of Reston, Virginia. MERS is not licensed to do business in the State of Washington but has been named as "beneficiary" in a majority of deeds of trust in the State. MERS has been held by Washington courts to be a  "consortium of mortgage investment companies" that "altered this state's traditional three-party structure of a deed of trust." *Bain v. Metropolitan Mortg. Grp., Inc.*, 175 Wn.2d 83, 96, 285 P.3d 34 (2012); *Bavand v. OneWest Bank, FSB*, 2013 Wash.App. LEXIS 2114 (2013), Washington Court of Appeals, 1st Div. 2013, No. 68217-2-I at page 9. MERS identifies itself as "the beneficiary under this Security Instrument" (the Deed of Trust) that Plaintiff signed at closing encumbering her homestead in favor of the original lender, Taylor Bean & Whitaker. (Exhibit 15, Deed of Trust and Note).

7.      Defendant, Bayview Loan Servicing, LLC is a Florida limited liability corporation engaged in the business of collecting debts on behalf of another entity. Bayview's primary business is servicing mortgage loans that are in default status. Bayview therefore meets the definition of a debt collector. Bayview uses the mails, telephone and other means to collect mortgage debts for other financial institutions nationwide; its debt collection activities

SECOND AMENDED COMPLAINT - 3

reach into Washington and directly affect Plaintiff as well as other Washingtonians.

8.      Defendant Cenlar, FSB, is a New Jersey corporation. Cenlar works as a loan servicer for many different entities nationwide. Cenlar provides loan servicing on loans that are current and in default. Upon information, Cenlar has been servicing Plaintiff's mortgage loan on behalf of another entity. Cenlar uses the mails, telephone and other means to collect mortgage debts nationwide; its activities reach into Washington and directly affect Plaintiff as well as other Washingtonians.

9.      Defendants Cenlar and Bayview meet the definition of "creditors," as defined by the FDCPA § 803, codified at 15 U.S.C. § 1692a(4).

10.     Defendant Jennifer Dobron is believed to be a corporate officer or an employee of defendant Cenlar. Within the scope of her employment with Cenlar, Dobron signed, or allowed others to sign her name, on several documents which she knew or should have known, would be used by Cenlar and others to foreclose upon Plaintiff's homestead. Although Dobron might have been acting within the scope of her employment with one of the corporate defendants, Dobron knew or should have known that the documents signed with her name would be recorded in the public records of King County, Washington, and be relied upon by the public in search of chain of title information.  Dobron therefore is liable to the Plaintiff individually and under the doctrine of *respondeat superior*. Dobron's act of signing, or allowing others to sign, her name on foreclosure documents under penalty of perjury, while lacking personal knowledge or possessing actual knowledge that the matters declared therein are untrue, affected the chain of title upon Plaintiff's property as well as the public who relies upon the same information to research title of real property in Washington.

SECOND AMENDED COMPLAINT - 4

11.     Defendant Nancy K. Morris is believed to be an employee of Defendant Cenlar and a notary public of the State of New Jersey. Acting within the scope of her employment with defendant Cenlar, Morris has notarized and affixed her seal or has allowed others to sign, notarize and affix her seal in numerous documents which she knew or should have known would be used by Cenlar and others to foreclose upon Plaintiff's homestead. Morris knew or should have known that the documents with her name and notary seal would be recorded in the public records of Washington, and be relied upon by the public in search of chain of title information. Although defendant Morris might have been acting within the scope of her employment with one of the corporate defendants, Morris knew or should have known that the documents notarized under her seal and bearing her signatures would be recorded in the public records of, Washington, and be relied upon by the public in search of chain of title information.  Morris therefore is liable to the Plaintiff individually and under the doctrine of *respondeat superior*. Morris' act of notarizing documents and attesting to her duties as notary public while lacking personal knowledge or while possessing actual knowledge that the matters declared by her are untrue has affected the chain of title upon Plaintiff's property. Morris' act of notarizing and providing the notarial oath upon documents that are inaccurate or incomplete is injurious to the public who must rely on these documents for chain of title records.

12.     Defendant Northwest Trustee Services Inc., ("NWTS") is a Washington corporation whose chief business is to foreclose upon real properties located in the State of Washington as well as other states. NWTS purported to act as successor trustee and initiated nonjudicial foreclosure upon Plaintiff's homestead. The owner of  NWTS also owns the

SECOND AMENDED COMPLAINT - 5

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

defendant law firm Routh Crabtree Olsen PS, a/k/a RCO Legal ("RCO"), as well as a number of inter-related companies which participate in virtually all other aspects of nonjudicial foreclosure, including legal publication, foreclosure advertising, listing and tracking of foreclosure sales, and escrowing and closing on real estate transactions. NWTS and its law firm, defendant RCO, are housed in the same building located in Bellevue, King County, Washington. The referrals for foreclosure that come from loan servicers are made to the defendant RCO but the foreclosure work is actually being done by the defendant NWTS. In addition to sharing the physical business location, the defendants also comingle their resources. Employees of NWTS and RCO consult and work in conjunction with one another. NWTS employees have testified under oath that they consult with RCO as their counsel in matters involving their conduct of foreclosure. Charles Katz, Esq., who was an attorney employee by RCO and whose name appears as counsel of record for NWTS and loan servicers on numerous foreclosure litigation cases, recently became general counsel for NWTS.

13.    Defendant Routh Crabtree Olsen PS, a/k/a RCO Legal ("RCO"), is a law firm licensed to do business in Washington; its lawyers are members of the Washington Bar Association.  The defendant law firm owns, operates or has a substantial interest in the operations and workings of NWTS. RCO provides legal services to loan servicer clients of NWTS that under contract or ongoing agreement to conduct nonjudicial foreclosures, while concurrently provides advisory and litigation services for NWTS relating to foreclosures that NWTS conducts as trustee.

## IV.    FACTS CONCERNING NWTS' COMMENCEMENT OF NONJUDICIAL FORECLOSURE OF PLAINTIFF'S HOMESTEAD

SECOND AMENDED COMPLAINT - 6

14.     In August of 2012, defendant NWTS caused the Notice of Default to be posted on Plaintiff's homestead announcing the initiation of nonjudicial foreclosure. It has been a common practice of NWTS to declare, in its notices of default sent to borrowers in the State of Washington, that the owner of the mortgage loan is a different entity than the "creditor to whom the debt is owed," which is not factually or legally true.  Additionally, it has been a common practice of NWTS to declare in its foreclosure notices to borrower in the State of Washington that the loan servicer is the "creditor to whom the debt is owed," which is also not factually or legally true. (Exhibit 1, Notice of Default).

15.     Plaintiff submitted a Qualified Written Request on August 27, 2012 to Cenlar and Bayview. Bayview did not respond at all while Cenlar did not respond in a complete manner as mandated by law.

16.     In this case, the Notice of Default NWTS transmitted to Plaintiff indicates that Federal Home Loan Mortgage Corporation, or Freddie Mac, is the owner of Plaintiff's promissory note, but that Cenlar is the "creditor to whom the debt is owed" (Exhibit 1, Notice of Default). By stating that Freddie Mac is the owner, NWTS is presumed to have actual notice or information supporting this assertion. Yet, if Freddie Mac is the owner of the promissory note, then Freddie Mac must be the creditor to whom Plaintiff owes the debt. By stating that Cenlar is the creditor to whom the debt is owed in the same Notice of Default, NWTS has knowingly misrepresented to the Plaintiff the entity with whom she could communicate with in order to resolve the issues of her mortgage loan.

17.     It has also been a common practice of NWTS to declare itself as the "duly authorized agent" of the loan servicer, and that the loan servicer is the "Client" of NWTS.

SECOND AMENDED COMPLAINT - 7

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

These declarations appear in hundreds, if not thousands, of notices of default being mailed to borrowers around the State of Washington. In this case, NWTS' Notice of Default contains the designation "Cenlar, FSB, By Northwest Trustee Services, Inc., its duly authorized agent," as well as "Client: Cenlar FSB." Yet, after transmitting these notices of default in its capacity as the duly authorized agent of the servicer, NWTS turns around and issues notices of trustee's sale in which it informs the borrowers that NWTS is acting as the "trustee." NWTS' mixing of its role as a duly authorized agent of the servicer, *i.e.,* a debt collector on behalf of the servicer, and its role as the purported trustee upon whom the borrower counts to be impartial and acting in good faith, is unfair and/or deceptive conduct.

18.    The Notice of Default transmitted by NWTS as the duly authorized agent of Cenlar demands Plaintiff to pay the total sum of $42,787.91 to reinstate the deed of trust before the recording of the notice of sale. The total sum required to reinstate included Trustee's fees in the amount of $542.50 and other costs, including title report, recording, certified mail, posting and sale costs. Defendant NWTS' practice of demanding fees and costs for its services as the duly authorized agent of the loan servicer is a practice of a debt collector and not of an impartial trustee; NWTS' practice of preparing the notices of default representing itself as duly authorized agent of the loan servicer and taxing trustee's fees against the amount owed and to be cured by the borrower before being appointed trustee violates the duty of good faith under the DTA; the practice is unfair and/or deceptive.

## V.    FACTS RELATING TO FORECLOSURE FAIRNESS ACT MEDIATION

SECOND AMENDED COMPLAINT - 8

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

19.     As a result of NWTS' initiation of nonjudicial foreclosure, Plaintiff retained the undersigned counsel, Barraza Law, PLLC, to assist her in preparing for and attending mediation under the Washington Foreclosure Fairness Act. In the course of the mediation process, defendant RCO became involved and informed Plaintiff and her counsel that it represented the interest of defendant Cenlar as the "beneficiary" under the DTA.

20.     Pursuant to the FFA, on October 12, 2012, defendant RCO provided the mediator and plaintiff's counsel with documents required under the FFA. The cover letter accompanying this Mediation package was on RCO's letterhead and written by Dotty Mitchell, Mediation Paralegal, who stated, "This law firm represents Cenlar FSB, the beneficiary or its servicer of the deed of trust secured by the above-described property." (Exhibit 2, Letter by Dotty Mitchell dated October 12, 2012).

21.     In the mediation package, Defendant RCO provided a document entitled "Beneficiary Declaration (Note Holder)" (Exhibit 3, Beneficiary Declaration dated October 5, 2012).  **This Beneficiary Declaration is dated October 5, 2012, and signed by Defendant Jennifer Dobron, as Assistant Secretary of defendant Cenla**r, who declared under penalty of perjury that "Cenlar FSB is the holder of the promissory note or other obligations evidencing the above-referenced loan."  Above Jennifer Dobron's signature appears the designation, "Cenlar FSB, beneficiary." (Exhibit 3, Beneficiary Declaration dated October 5, 2012).

22.     Defendant RCO, having appeared as counsel for defendant Cenlar and Bayview, via Charles Katz, Esq., moved for dismissal of Plaintiff's original Complaint. Mr. Katz represented to this Court that "On October 16, 2012, Cenlar FSB, executed a Beneficiary

SECOND AMENDED COMPLAINT - 9

Declaration required under RCW 61.24.030(7)(a)." Mr. Katz attached to his motion as exhibit 4 "a true and correct copy of the Beneficiary Declaration." (Doc. 9, pp. 3-4 of 18). The Beneficiary Declaration that Mr. Katz submitted and represented to the court as a true and correct copy is markedly different from the Beneficiary Declaration that his law firm, RCO, produced earlier as part of mediation under the Foreclosure Fairness Act (Exhibit 4, Doc. 9-4, page 2, Beneficiary Declaration), (Exhibit 3, Beneficiary Declaration dated October 5, 2012).

23.     In addition to the different dates of execution, when placed side by side, the Beneficiary Declarations produced by Defendant RCO at the mediation and by Mr. Katz in defendants' motion to dismiss are two different documents. Although they were both presumably signed by the same Defendant Jennifer Dobron, the signatures vary so drastically as to call into doubt whether they were in fact signed by the same individual identified as Jennifer Dobron (Exhibit 3, Beneficiary Declaration produced pursuant to Dotty Mitchell Letter, Exhibit 4, Doc. 9, True and Correct Copy of Beneficiary Declaration produced by Charles Katz, Esq.).

24.     Upon information and belief, defendant Jennifer Dobron knew and participated actively or acquiesced to the fact that her name and her signature appear on numerous foreclosure documents recorded in the public records throughout the State of Washington (Exhibit 5, Composite of documents signed and notarized by Dobron).  When compared with the signatures purportedly made by Dobron on the Beneficiary Declarations, the signatures on these recorded documents look markedly from one another even though they were supposedly made by the same Jennifer Dobron. The Composite also illustrates how Jennifer

SECOND AMENDED COMPLAINT - 10

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

Dobron signed in different corporate capacities for different corporate entities during the same time frame.

25.     While Plaintiff was in active mediation with Cenlar and its counsel, RCO, defendant NWTS caused to be recorded an "Appointment of Successor Trustee" in King County public records. The Appointment was recorded on December 6, 2012, during which time Plaintiff was making the HAMP trial payments and awaiting the permanent loan modification. The Appointment refers to Mortgage Electronic Registration Systems or "MERS" as nominee for the original but now-defunct lender Taylor Bean & Whitaker, its successors and assigns. The Appointment refers to MERS as "The present beneficiary under said deed of trust appoints Northwest Trustee Services, Inc., … as successor trustee under the deed of trust with all powers of the original trustee." (Exhibit 7,   Appointment of Successor Trustee).

26.     The signatory of the Appointment of Successor Trustee is Michael Blair, Vice President for defendant Cenlar. The notary public, defendant Nancy K. Morris, in this instance, affixed her seal without identifying who it was that signed the instrument under oath.  Defendant Morris affixed her seal without filling out the blanks to complete her oath of having actual knowledge or satisfactory evidence that the signatory is Michael Blair, or that Michael Blair had acknowledged that he was in fact the vice president of Cenlar and that he was signing the Appointment in such corporate capacity. The Appointment of Successor Trustee was signed and notarized on October 3, 2012 and was recorded in the public record of King County, Washington (Exhibit 7, Appointment of Successor Trustee).

SECOND AMENDED COMPLAINT - 11

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

27.     On the same day that NWTS caused the Appointment of Successor Trustee to be recorded in the public records of King County, Washington, December 6, 2012, it also caused for a document entitled "Assignment of Deed of Trust" to be recorded (Exhibit 8, Assignment of Deed of Trust). **The Assignment was purportedly signed by defendant Jennifer Dobron, who previously signed the Beneficiary Declarations. This time, Jennifer Dobron signed as Assistant Secretary of Mortgage Electronic Registration Systems Inc., or MERS**, on November 21, 2012, transferring "all beneficial interests" from MERS as nominee of the defunct lender, Taylor Bean & Whitaker, to Cenlar (Exhibit 8, Assignment of Deed of Trust). In comparing the Assignment of Deed of Trust to the Beneficiary Declarations also signed by Jennifer Dobron as assistant vice president for Cenlar, it can be inferred that defendant Dobron worked for Cenlar and signed a multitude of foreclosure documents on behalf of Cenlar as well as other corporate entities, including MERS.  Defendant Dobron's acts of signing and attesting to matters being asserted in these numerous foreclosure documents are done in reckless disregard for the truth and the resulting damages to Plaintiff and others who are similarly situated  (Exhibit 5, Composite of foreclosure documents signed by Jennifer Dobron).

28.     It is a fact that the defendants regularly engage in the particular practice of recording the appointments of successor trustee and assignments of deed of trust simultaneously despite their execution dates in order to create the appearance that these events, the assignment and the appointment, occurred in the correct time sequence. In addition to the simultaneous recording of the assignment and appointment in this case, an

SECOND AMENDED COMPLAINT - 12

example of this practice is found in at least one other nonjudicial foreclosure in Washington (Exhibit 9 , Assignment and Appointment in Connie Korth).

29.    A comparison between the Appointment of Successor Trustee and the Assignment of Deed of Trust as recorded by NWTS reveals several relevant facts: 1) even though the documents were executed by different people, in different corporate capacities, for different financial entities, on different days, they were both signed and notarized in Mercer County, New Jersey where Cenlar is headquartered; 2) both documents were notarized by the same notary public, defendant Nancy K. Morris; and 3) when both documents are placed side by side, it does not require a trained eye to see that defendant Morris's signatures on both documents do not resemble each other in any way. (Exhibit 6, Composite of foreclosure documents notarized by Nancy Morris) (Exhibit 7, Appointment of Successor Trustee) (Exhibit 8, Assignment of Deed of Trust).

30.    Upon information and belief, defendant NWTS regularly engages in this particular practice of preparing and causing to be recorded in the public records assignments of deed of trust in MERS' name but signed by employees or representatives of the loan servicers.

31.    The Appointment of Successor Trustee and Assignment of Deed of Trust remain on the public records of King County, Washington and constitute a permanent part of the chain of title of Plaintiff's homestead. The defendant NWTS' act of causing for these documents to be executed and recorded in the above-described manner is an unfair and/or deceptive conduct.

SECOND AMENDED COMPLAINT - 13

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

**VI.    CONCURRENT OR DUAL REPRESENTATION WHERE RCO IS COUNSEL FOR NWTS AND LOAN SERVICERS**

32.    In this case, while NWTS took steps to initiate the nonjudicial foreclosure against Plaintiff's homestead, defendant RCO actively represented Cenlar, NWTS's client and loan servicer, in mediation with Plaintiff under the Foreclosure Fairness Act. After the mediation and the filing of this lawsuit, RCO became counsel of record for defendant Cenlar and defendant Bayview. RCO's concurrent representation of NWTS as the purported trustee and NWTS' clients, the loan servicers on the opposing side of Plaintiff in this case, and borrowers in other foreclosure cases renders it impossible for NWTS to act as an impartial judicial officer in nonjudicial foreclosures conducted by NWTS. RCO's concurrent representation of parties constitutes unfair and/or deceptive conduct under Washington laws.

33.    It has been a common pattern for defendant RCO to concurrently represent the interests of NWTS as trustee and the interests of NWTS' loan servicer clients in nonjudicial foreclosure cases and FFA mediation on the opposite side of the borrowers.  This business arrangement creates an actual or apparent conflict of interest for RCO as a lawyer; it results in injury to the individual borrowers as NWTS becomes an adversary rather than the impartial trustee. This business arrangement negatively impacts the public because it corrodes the public's confidence in the legal system in or outside of the framework of the Deed of Trust Act. *Klem v. Wash. Mut. Bank* 176 Wn.2d 771, 784,  295 P.3d 1179 (2013) ("As we have said, without an independent trustee, the nonjudicial foreclosure process is subject to challenges based upon constitutional and equitable grounds.");  *Schroeder v. Excelsior Management Grp., LLC,*  297 P. 3d 677, 686 (2013) ("We note the act specifically states that the trustee 'shall have no fiduciary duty or fiduciary obligation to the grantor or

SECOND AMENDED COMPLAINT - 14

other persons having an interest in the property subject to the deed of trust.' RCW

61.24.010(3)." ) ; *Barrus v. Recontrust Co., N.A.,* No. C11-618-RSM, No. 11-17075

1053 WL 2360206, *3 (W.D.Wash. June 9, 2011) (Professor David Boener's Opinion: "It is

my professional opinion that no reasonable Washington lawyer could believe that they could

effectively represent both the trustee and the beneficiary.  In my opinion, the representation

of both clients would be adversely affected. Thus, under RPC 1.7(b)(1) the simultaneous

representation of the trustee and the beneficiary is prohibited even if both clients were to

consent to the conflicted representation); John Campbell, *Can We Trust Trustees?Proposal*

*for Reducing Wrongful Foreclosure,* (" In any given transaction, it is not uncommon for the

trustee to serve as a debt collector, the attorney for the bank,  the party with the power to

appoint a successor trustee, the successor trustee, an agent for MERS who assigns mortgage

documents during the foreclosure, the attorney who opposes the homeowner if he or she

seeks to stop the foreclosure, the coordinator and direct or indirect provider of title services,

the attorney who represents the new buyer after foreclosure in the lawsuit to remove the

homeowner, and the coordinator of "default services – the  process of removing the

homeowner from the home, cleaning up the home, and preparing it for sale.  This is a

staggering number of hats to wear, and one can probably already sense that the inherit

conflicts are legion." (http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2191738, visited

October 19, 2013).

    34.      NWTS and RCO meet the definition of "debt collectors," as defined by FDCPA

§ 803, codified at 15 U.S.C. § 1692a(6).

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

35.     Defendant Cenlar and defendant Bayview meet the definition of "debt collectors," as defined by FDCPA § 803, codified at 15 U.S.C. § 1692a(6).

36.     The debt that Defendants claim Plaintiff owes qualifies as a debt, as defined by FDCPA § 803, codified at 15 U.S.C. § 1692a(5).

37.     As soon as Plaintiff filed her lawsuit in the District Court in late 2013, defendant Cenlar began to impose attorney's fees and costs on Plaintiff's mortgage account without any contractual or legal authority. Cenlar sent Plaintiff a letter dated December 4, 2013, stating: "**In keeping with Washington Law**, please be advised that we have charged your loan account for the fee described, on the date and in the amount indicated on the below list." On this date, Cenlar charged $1251 as "Attorney Fees" and $10.42 as "Attorney Cost." (Exhibit 9, Cenlar 12/4/2013 Letter), emphasis added.

38.     Being alarmed by Cenlar's imposition of Attorney's Fees. Plaintiff sent Cenlar a Qualified Written Request dated December 29, 2013, in which she disputed that she owes any attorney's fees to Cenlar: **"I am in receipt of your correspondence dated December 4, 2013 wherein you bill me for attorney fees paid November 25, 2013. I do not owe you attorney fees.**" (Exhibit 10, Plaintiff's QWR to Cenlar 12/29/2013, emphasis added).

39.     Thereafter, Plaintiff received a letter from Cenlar dated January 7, 2014, promising that Cenlar "will review your inquiry and respond when our research has been completed." (Exhibit 11, Acknowledgement of QWR 01/07/2014).

40.     Cenlar's attorney, who has appeared on behalf of CenlarRS, Jennifer Dobron and Nancy K. Harris, the law firm of Wright Finlay & Zak, issued a letter dated February 10, 2014, to Plaintiff's counsel, acknowledging receipt of Plaintiff's QWR concerning, *inter alia,*

SECOND AMENDED COMPLAINT - 16

the attorney's fees charged, and declaring: "We are working on obtaining this information from our client, Cenlar FSB and will forward all responses timely." (Exhibit 12, Acknowledgement by Rene M. Parker of Wright, Finlay & Zak).

41.     Subsequently, Rene M. Parker, as counsel for Cenlar, sent another letter to Plaintiff's counsel. This letter, dated February 24, 2014, also failed to address Plaintiff's concern regarding the Attorney's Fees imposed by Cenlar on Plaintiff's loan account. In the February 24, 2014 letter, Ms. Parker asked for 15-day extension to "fully research this request [Attorney's fees and costs dated November 25, 2013]". However, as of today, no explanations have been provided by Cenlar, or its lawyer (Exhibit 13, Letter by Wright Finlay & Zak dated 2/24/2014).

42.     Despite Plaintiff's timely payments, Cenlar sent Plaintiff a Loan Statement dated January 16, 2014, showing a "Total Amount Due" of $4,312.16 (Exhibit 14, Cenlar Loan Statement 1/16/2014).

43.     Cenlar sent another Loan Statement dated January 21, 2014 to Plaintiff. This Loan Statement declared that the "Total Amount Due" is $2,786.79. There is no explanation as to why the total amount due was reduced from $4,312.16 to $2,786.79 (Exhibit 15, Cenlar Loan Statement 1/21/2014).

44.     In February of 2014, Cenlar sent a Delinquent Notice to Plaintiff as "an attempt to collect a debt" and threatened "If your payment is not received by the end of the current month, we are notifying you that we may report information about your account to credit bureaus." (Exhibit 16, Delinquent Notice).

SECOND AMENDED COMPLAINT - 17

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

45.     Cenlar sent another Loan Statement dated February 18, 2014, declaring the "Total Amount Due" as of February 1, 2014, to be $10,255.21. Again, there is no explanation as to why the total amount due has grown from $2,786.79 in January to $10,255.21 in February (Exhibit 17, Loan Statement 2/18/2014).

46.     In March of 2014, Cenlar sent Plaintiff a letter dated March 6, 2014, in which the following was found:

```
Dear Mortgagor(s):

In keeping with Washington Law, please be advised that we have charged your loan
account for the fee described, on the date and in the amount indicated on the below
list.

Please do not hesitate to contact us if you need additional information or clarification.

Sincerely,

Central Loan Administration & Reporting

LOAN NUMBER   FEE CD  FEE TYPE                          FEE AMOUNT   FEE DATE
==========================================================================
        9710  ATTC    Attorney Cost                           8.21   02/10/2014
        9710  ATTO    Attorney Fees                         400.50   02/10/2014
        9710  ATTO    Attorney Fees                         630.00   02/10/2014
        9710  ATTO    Attorney Fees                         180.00   02/10/2014
        9710  ATTO    Attorney Fees                         315.00   02/10/2014
        9710  ATTO    Attorney Fees                        1327.50   02/10/2014
        9710  ATTO    Attorney Fees                         756.00   02/10/2014
        9710  ATTO    Attorney Fees                        1732.50   02/10/2014
        9710  ATTO    Attorney Fees                         535.50   02/10/2014
```

(Exhibit 18, Cenlar Letter 03/06/2014). There are no explanations as to how Plaintiff could have incurred all these "Attorney Fees" in one day, February 10, 2014.

47.     On March 25, 2014, pursuant to Regulation X of the Mortgage Servicing Act under RESPA, which went into effect January 14, 2014, Plaintiff's counsel sent Cenlar a Notice of Error in which he alleges, on behalf of the Plaintiff, that "the full principal and interest payments that you received in February and March, 2014, were not applied as indicated but placed in the suspense account and subsequently applied to attorney's fees." The Notice of Error also cautioned Cenlar not to report any adverse information to any

SECOND AMENDED COMPLAINT - 18

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

consumer reporting agency during the 60 days that followed receipt of said Notice (<u>Exhibit 19, Notice of Error dated 03/25/2014</u>).

48.     Accompanied the Notice of Error was a Request for Information pursuant to Section 1024.36 of Regulation X. The Request asks Cenlar to provide a detailed explanation of all attorney fees charged to Plaintiff's account "including the purpose of the attorney fees and the parties who received such fees" as well as "a detailed explanation of Cenlar's authority to impose such fees." (<u>Exhibit 20, Request for Information dated 03/25/2014</u>).

49.     To date, Cenlar has not responded to either the Notice of Error or the Request for Information.

## VII.    CAUSES OF ACTION

### COUNT ONE: FAILURE TO MATERIALLY COMPLY WITH THE PROVISIONS OF THE DEEDS OF TRUST ACT RCW 61.24. ET. SEQ.

50.     Plaintiff incorporates herein by reference as though fully set forth at length each and every preceding allegation and statement contained herein, inclusive, of the Factual Allegations.

51.     Plaintiff alleges that it was improper for defendant NWTS to record the Appointment of Successor Trustee and Assignment of Deed of Trust against the Plaintiff's chain of title while Plaintiff was in active mediation with defendant Cenlar. Furthermore, in so recording the documents, NWTS initiated the nonjudicial foreclosure against Plaintiff's homestead without materially complying with the provisions of the Deeds of Trust Act, *RCW 61.24. et.seq.*

52.     Upon information and belief, all of the defendants knew or should have known that MERS had no real interest in the Plaintiff's loan and MERS never held the promissory

SECOND AMENDED COMPLAINT - 19

note signed by Plaintiff at closing. Therefore, the defendants' act of preparing, causing to be recorded, and using the Assignment of Deed of Trust, naming MERS as the beneficiary and assigning interests purportedly held by MERS, to initiate nonjudicial foreclosure against Plaintiff's homestead constituted a failure to materially comply with the provisions of the Deed of Trust Act, *to wit: RCW 61.24.030(7)(a)*.

53.    The defendants knew or should have known that NWTS was not properly appointed as successor trustee because MERS was never a valid beneficiary. *Bavand v. OneWest Bank*, *FSB*, 2013 Wash.App. LEXIS 2114 (2013).

54.    Plaintiff alleges that Cenlar was not the holder of the original promissory note signed by Plaintiff at the time Cenlar signed the Beneficiary Declaration via Jennifer Dobron on October 5, 2012, as that term is defined by the Uniform Commercial Code, *Title 62A RCW*. Proof supporting Plaintiff's allegation is found in Freddie Mac's Document Custody Procedures Handbook, which explains that a third party Document Custodian physically possesses original promissory notes on Freddie Mac's loans and not the loan servicers themselves. http://www.freddiemac.com/cim/pdf/chapter_1.pdf, visited October 19, 2013.

55.    Plaintiff further alleges that Cenlar was not the holder of the original promissory note on October 16, 2012, as that term is defined by the Uniform Commercial Code, *Title 62A RCW,* when Cenlar again signed another Beneficiary Declaration, via Jennifer Dobron.

56.    Plaintiff alleges that Cenlar was not the holder of the original promissory note on October 3, 2012, as that term is defined by the Uniform Commercial Code, *Title 62A RCW*, when Cenlar appointed NWTS to be successor trustee for purpose of foreclosing on Plaintiff's homestead nonjudicially.

SECOND AMENDED COMPLAINT - 20

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

57.     Plaintiff alleges that Cenlar was not the holder of the original promissory note on November 21, 2012, as that term is defined by the Uniform Commercial Code, *Title 62A RCW*, when MERS assigned the Deed of Trust via Jennifer Dobron to Cenlar. Therefore, Plaintiff alleges that all of the documents utilized in the nonjudicial foreclosure are "made up," and "robo-signed" to enable defendants to adversely affect the quality of Plaintiff's title in violation of the Deeds of Trust Act.

58.     The defendants' collective failure to materially comply with the DTA caused Plaintiff injuries and damages. Once the defendants marked Plaintiff's homestead as subject to foreclosure, they triggered certain related events causing the instant diminution of the property's value and the diminution of Plaintiff's credit rating. By placing Plaintiff's homestead into their computerized system as subject to foreclosure, the defendants announced to the world of investors, speculators and others whose businesses relate to buying and selling distressed properties that Plaintiff's homestead was up for grabs. The defendants' action caused these investors, speculators and others to monitor, drive by, and take other actions that disturbed Plaintiff's privacy and interfered with Plaintiff's quiet enjoyment of her home.

59.     Plaintiff alleges that even though her homestead was not sold by NWTS as the purported trustee, the actions taken by NWTS caused her injuries and damages that are compensable under the DTA. *Walker v. Quality Loan Serv. Corp.*, 308 P.3d 716 (Wn.App. 2013).

### COUNT TWO: DEFENDANTS' CONDUCT VIOLATED RESPA

60.     Plaintiff incorporates herein by reference as though fully set forth at length each

SECOND AMENDED COMPLAINT - 21

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

and every preceding allegation and statement contained herein, inclusive, of the Factual Allegations.

61.     RESPA, 12 U.S.C. §2605 requires lenders and loan servicers to timely respond to Qualified Written Requests from borrowers. The Dodd Frank Act, Pub. L. 111-203, Title XIV, §1400(c) and §1463(b) (July 2010) shortened the time periods in which the lender/servicer must respond from 60 days to 30 days after receiving a QWR. The servicer must provider the borrower with a written response that includes the information requested by the borrower or an explanation of why the information is unavailable or cannot be obtained by the servicer. 12 U.S.C. §2605(d)(2)(C). Defendant Bayview violated RESPA for failure to provide a written response to Plaintiff's QWR dated August 27, 2012. Defendant Cenlar violated RESPA by failing to timely and fully address Plaintiff's request for the identification of the entity that owns Plaintiff's loan or the promissory note signed by her at closing in its response to QWR. (Exhibit 21, Qualified Written Request).

62.     Where the Plaintiff provided sufficient detail to Bayview and Cenlar regarding the information she was seeking, their refusal to respond at all, or their failure to timely and fully provide answers to Plaintiff's specific questions violated 12 U.S.C. §2605(e)(2). *McDonald v. OneWest*, 2013 U.S. Dist. LEXIS 31730 (W.D. Wash., March 7, 2013) ("While servicer may have been justified in ignoring requests for information that were unrelated to the servicing of borrower's loan, its refusal to respond to the vast majority of borrower's inquiries violated 12 U.S.C. §2605(e)(2) and its refusal to refrain from reporting overdue payments to the credit reporting agencies upon receipt of the QWR violated 12 U.S.C. §2605(e)(3)").

SECOND AMENDED COMPLAINT - 22

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

63.     Plaintiff alleges that Bayview and Cenlar's failure to respond, or failure to respond in a complete manner, to her QWRs, while simultaneously trying to collect the indebtedness caused her much confusion, anxiety and stress, and fear of losing her home. Plaintiff alleges that the defendants' complete failure to respond to the QWR or failure to respond to the question of note owner/holder identity fully has in fact damaged her by prolonging the period of time that she was in default and thus was unable to discuss her situation with the actual stakeholders of her mortgage loan.

64.     Plaintiff alleges that the defendants engage in a pattern of either failing to timely respond to borrowers' qualified written requests or failing to respond to borrowers' inquiry on the identity of the note owner/holder which will be verified by discovery. Within this case, Cenlar and Bayview repeatedly either failed to respond to Plaintiff's inquiries or failed to respond fully to Plaintiff's inquiries as required by law. This constitutes a pattern or practice entitling Plaintiff to recover statutory damages, attorney's fees and costs, as well as the emotional anguish resulting from fear of losing her home. Plaintiff alleges that the full nature of her damages will be determined at trial:  "Whoever fails to comply with any provision of this section shall be liable  to the borrower for each such failure in the following amounts: . . . In the case of any action by an individual, an amount equal to the sum of—(A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000." 12 U.S.C. § 2605(e); *Houston v. US Bank*, 2012 U.S. App. LEXIS 24196 (6th Cir. 2012) (Court finds nothing in the text of §2605(f), or in RESPA broadly that precludes actual damages including emotional

SECOND AMENDED COMPLAINT - 23

damages provided that they are adequately proven); *Catalan v. GMAC*, 629 F.3d 676 (7th Cir. 2011) (Pursuant to §2605(e)(3), during the 60-day period after a servicer receives a qualified written request relating to a dispute regarding borrower's payments, it may not provide information regarding any overdue payment owed by such borrower and relating to such period or qualified written request, to any reporting agency).

### COUNT THREE: DEFENDANTS VIOLATED FEDERAL DEBT COLLECTION PRACTICES ACT ("FDCPA")

65.     Plaintiff incorporates herein by reference as though fully set forth at length each and every preceding allegation and statement contained herein, inclusive, of the Factual Allegations.

66.     The FDCPA, §1692f, prohibits a debt collector from "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if – (A) there is no present right to possession of property claimed as collateral through an enforceable security interest . . . ." §1692f. Defendant NWTS' act of issuing and transmitting the Notice of Default to Plaintiff when it did not have the proper statutory authority of a successor trustee violates FDCPA. *McDonald v. OneWest, supra* (Where NWTS had not been appointed successor trustee and was not acting on behalf of the entity that had actual physical possession of the note, it lacked the right to issue a notice of default and violated §1692f(a)(A)).

67.     While Plaintiff was in mediation with Cenlar, defendant RCO received actual notice that the undersigned counsel represents Plaintiff as well as notice that Plaintiff would be willing to accept the offered trial modification on September 22, 2012.  Despite Plaintiff's acceptance of the offered loan modification, during the months of September, October,

SECOND AMENDED COMPLAINT - 24

December of 2012, Bayview continued to contact Plaintiff directly. The collection contacts did not cease during the remainder of 2012.

68.     Plaintiff successfully completed the trial payment plan and entered into the HAMP permanent loan modification effective January 2013. Proof that Bayview continued to contact Plaintiff directly while she was represented by counsel and in mediation lies in its letter dated February 7, 2013 to Plaintiff. In this letter, Bayview's  employee or representative expressed: **"I have been making repeated attempts to contact you by phone, but I haven't been able to reach you at home and/or business numbers listed in our files."** (<u>Exhibit 22, February 7, 2013 letter from Bayview</u>).

69.     Plaintiff's counsel sent a Cease and Desist letter to Bayview on February 13, 2013, asking for all communications, written and oral, be directed to him as the debt collection attempts had caused Plaintiff great anxiety and stress (<u>Exhibit 23, Cease and Desist Letter</u>).

70.     Following three successful trial payments, Plaintiff executed the final HAMP Agreement on January 25, 2013, and the agreement was counter-signed by Marianne Doroba, Assistant Secretary and Vice President for Cenlar on April 2, 2013 (<u>Exhibit 24, HAMP modification agreement</u>).  Plaintiff has kept current all mortgage payments pursuant to her loan modification agreement and her loan status should have been reported as current. However, defendants Cenlar and Bayview have not ceased reporting Plaintiff as being in default, repossession and/or foreclosure to the credit bureau. As a result, Plaintiff's credit worthiness has been drastically diminished.

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

71.     When Plaintiff attempted to refinance her high cost car loan in January of 2013, she learned that the defendants' inaccurate reporting of default and foreclosure continued unabated. Plaintiff was told by the auto financing company that it denied to extend credit because she has been under active foreclosure status (Exhibit 25, Letter of Denial of Credit). In relation to the denial of credit, Plaintiff ordered her credit report and confirmed that the Defendants have not relented in reporting her as under foreclosure.

72.     Defendants Cenlar and Bayview violated 15 U.S.C. § 1692c (a) by attempting and continuing to attempt contact with Plaintiff with full knowledge that Plaintiff was represented by the undersigned counsel in the process of mediation. Cenlar's February 7, 2013 Letter clearly admits that collection contacts were made to Plaintiff at home and place of employment in the prior weeks or months without success. There cannot be any excuse on the part of Cenlar and Bayview that they were not aware of legal representation because their lawyer, defendant RCO, was actively involved in the statutory mediation process with plaintiff's counsel.

73.     Defendant NWTS, Defendant RCO and its employees, Defendant Cenlar and its employees, defendant Jennifer Dobron and defendant Nancy K. Morris, violated § 1692e(2)(A) of the FDCPA prohibiting a debt collector from falsely representing the character, amount or legal status of any debt. The defendants collectively prepared, signed, notarized, and recorded the Notice of Default, Assignment of Deed of Trust and Beneficiary Declarations, in order to convince Plaintiff and the public that Cenlar has acquired beneficial interest and/or ownership of her mortgage loan when Cenlar's involvement was limited to that of a default servicer.

SECOND AMENDED COMPLAINT - 26

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

74. Defendant NWTS violated the FDCPA for disclosing to Plaintiff that Freddie Mac is the owner of the promissory note while taking steps to initiate foreclosure including drafting and causing to be transmitted and recorded documents representing MERS as beneficiary who had beneficial interests to assign to Cenlar, whom NWTS had actual knowledge to be a mere loan servicer.

75. As a result of the foregoing violations of the FDCPA, defendants are liable to Plaintiff for resulting statutory damages, actual damages, and costs and attorney fees as provided for by 15 U.S.C. §1692k(a)(3), where the amount of said damages will be proven at trial.

## COUNT FOUR: DEFENDANTS VIOLATED WASHINGTON CONSUMER PROTECTION ACT, RCW 19.86 ET. SEQ.

76. Plaintiff incorporates herein by reference as though fully set forth at length each and every preceding allegation and statement contained herein, inclusive, of the Factual Allegations.

77. Defendants individually and collectively violated the Washington Consumer Protection Act ("CPA"). The Act prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *RCW 19.86.020.* A private cause of action exists under the CPA if (1) the conduct is unfair or deceptive, (2) occurs in trade or commerce, (3) affects the public interest, and (4) causes injury (5) to plaintiff's business or property. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). Plaintiff alleges that the defendants' conduct actually or potentially impacts the general public and not just a private wrong. *Lightfoot v. Macdonald,* 86 Wn.2d 331, 333, 544 P.2d 88 (1976).

SECOND AMENDED COMPLAINT - 27

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

78.    Recently, in *Bain v. Metropolitan Mortg. Group, Inc.,* 175 Wn.2d 83, 117, 285 P.3d 34 (2012), the Washington State Supreme Court declared that characterizing a non-holder (in that case, MERS) as the beneficiary in the deed of trust, when it knew or should have known that it must have actual possession of the note to be the beneficiary under Washington law, has the capacity to deceive for purposes of establishing a CPA claim. The defendants NWTS, RCO, Bayview, MERS, Cenlar, Jennifer Dobron and Nancy K. Morris, all participated in making the same misrepresentation that MERS, a non-holder, constituted the beneficiary of the deed of trust capable of transferring all beneficial interests under the deed of trust to Cenlar. Additionally, defendant NWTS made a number of parallel misrepresentations in the Notice of Default.

79.    The *Bain* court also found that the third element, public interest, was presumptively met because of the volume of mortgages in the country and in Washington State in which MERS is involved. *Bain*, 175 Wn.2d at 118. Here, defendants NWTS, RCO, and Cenlar are huge companies whose businesses involve servicing or foreclosing mortgages in this state. The business practices that give rise to this litigation - particularly the misleading designation of first MERS and then Cenlar as beneficiaries and the issuance of notices of default without proper assignments and/or possession of the original note – are common in many residential foreclosures affecting not only those who are trying to negotiate with the lenders to save their homes, but also those who rely upon official public recordings to make decisions about purchasing and selling real estate in Washington. The defendants' commercial practice of voluminously producing and recording defective title documents compromises the integrity of the real property recording system, undermines public

SECOND AMENDED COMPLAINT - 28

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

confidence, and satisfies the third element of the *Hangman* public interest test. *McDonald v. OneWest*, *supra*.; *Bavand v. OneWest, supra.*

80.    Defendant NWTS' practice of simultaneously recording appointments of successor trustee and assignments of deed of trust, notwithstanding their actual execution dates, to create the misimpression that the documents confer the statutory authority for it to conduct non-judicial foreclosures, meets the definition of unfair or deceptive conduct. *Klem v. Washington Mutual Bank*, 2013 Wash. LEXIS 151 (Feb. 2013) (Trustee's practice of having its notary employees predate notarizations was an unfair or deceptive act under the CPA).

81.    In this case, defendant RCO, through its employee, Dotty Mitchell, and Charles Katz, Esq., produced two different Beneficiary Declarations; one to the Plaintiff and her counsel and one submitted to the Court in the motion to dismiss Plaintiff's Complaint. It is a statutory prerequisite that "the trustee shall have proof that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust." *RCW 61.24.030(7)(a)*. Defendant RCO's practice of producing more than one version of an original document purporting to satisfy a statutory prerequisite can no longer be deemed inadvertent or incidental but an intentional practice designed to confuse the borrower and obscure the real identity of the party who has a direct stake in the mortgage loan as well as to gain an unfair advantage in litigation. *McDonald v. OneWest*, *supra.* (RCO produced one version of the "true and correct copy" of the original note in a motion for relief from stay in the bankruptcy court, and another copy in the district court case); *Bavand v. OneWest Bank FSB*, case C12-0254JLR, United States District Court, Western District of Washington (RCO represents

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

NWTS with two varying promissory notes both represented to be true and correct copies of the original). RCO's practice of producing different versions of the beneficiary declarations at different times for different purposes is deceptive. *Klem v. Wamu., supra*.

82. In this case, the Notice of Default NWTS transmitted to Plaintiff indicates that Federal Home Loan Mortgage Corporation, or Freddie Mac, is the owner of Plaintiff's promissory note, while stating that Cenlar is the "creditor to whom the debt is owed." (Exhibit 1, Notice of Default). NWTS knowingly misrepresented to the Plaintiff the entity with whom she should communicate with in order to resolve the issues of her mortgage loan because it represented that Cenlar was the creditor to whom the debt was owed but actually knew that Freddie Mac owned the note she signed at closing.

83. It has also been a common practice of NWTS to declare itself as the "duly authorized agent" of the loan servicer, and that the loan servicer is the "Client" of NWTS in notices of default including the Notice of Default used in this case where NWTS declared that "Cenlar, FSB, By Northwest Trustee Services, Inc., its duly authorized agent" as well as "Client: Cenlar FSB." NWTS' mixing of its role as a duly authorized agent of the servicer, *i.e.,* a debt collector on behalf of the servicer, and its role as the purported trustee who the borrower counts upon to be impartial and acting in good faith, is unfair and/or deceptive conduct.

84. It is a common practice for NWTS to include trustee's fees in notices of defaults which were sent out before NWTS was properly appointed trustee, including the Notice of Default transmitted by NWTS in this case where NWTS demanded Plaintiff to pay the total sum of $42,787.91 to reinstate the deed of trust before the recording of the notice of sale.

SECOND AMENDED COMPLAINT - 30

Defendant NWTS' practice of demanding fees and costs for services rendered by NWTS and related companies while acting as the duly authorized agent of the loan servicer is a practice of a debt collector and not of an impartial trustee; NWTS' practice of preparing the notices of default representing itself as duly authorized agent of the loan servicer and taxing trustee's fees before being appointed violates the duty of good faith under the DTA.

85.    Due to the defendants' collective acts, Plaintiff has suffered actual damages including damages to her credit, loss of opportunities, emotional upheavals and prolonged fear of losing her home. Plaintiff is entitled to recover for these damages under the Washington Consumer Protection Act, including punitive damages. *RCW 19.86.090*. The full amounts of Plaintiff's damages will be proven at trial.

## COUNT FIVE: NOTARY PUBLIC NANCY K. MORRIS COMMITTED FRAUD

86.    Plaintiff incorporates herein by reference as though fully set forth at length each and every preceding allegation and statement contained herein, inclusive, of the Factual Allegations.

87.    The nine elements necessary to establish fraud -- all of which must be shown by clear, cogent, and convincing evidence -- are a representation  of an existing fact; its materiality; its falsity; the speaker's knowledge of its falsity; her intent that it shall be acted upon by the person to whom it is made; ignorance of its falsity on the part of the person to whom it is addressed; the latter's reliance on the truth of the representation; her right to rely upon it; and her consequent damage. *Williams v. Joslin,* 65 Wn.2d 696, 399 P.2d 308 (1965); *Michielli v. United States Mortgage Co.,* 58 Wn.2d 221, 361 P.2d 758 (1961); *Chiles v. Kail,*

SECOND AMENDED COMPLAINT - 31

34 Wn.2d 600, 208 P.2d 1198 (1949).

88.    Defendant Nancy K. Morris committed fraud in her act of placing her notary seal upon the Appointment of Successor Trustee without confirming the identity of the signer and his capacity to sign as declared. Morris' knew that by signing and placing her notary seal upon the Appointment, she would cause others to rely on the representations contained therein as true and reliable as recorded in the public records.

89.    Defendant Nancy K. Morris committed fraud in her act of notarizing the Assignment of Deed of Trust and attesting that defendant Jennifer Dobron executed the document in her capacity as assistant vice president of MERS on the stated date, time and place because Morris knew or should have known that defendant Dobron was not a corporate officer of MERS but an employee of Cenlar whose job involves executing a high volume of documents to satisfy statutory prerequisites to conduct non-judicial residential foreclosures.

89.    Defendant Morris committed fraud in allowing for her signatures and notary seal to be affixed on recorded documents to be utilized in the nonjudicial foreclosure of Plaintiff's homestead because she knew or should have known that the use of her notary seal legitimized these documents by giving them the appearance of reliability and trustworthiness. *Klem v. Wamu, supra.* ("A signed notary's acknowledgement is the ultimate assurance upon which the whole world is entitled to rely that the proper person signed a document on the stated day and place. Local, interstate and international transactions involving individuals, banks, and corporations proceed smoothly because all may rely upon the sanctity of the notary's seal.")

90.    Defendant Morris' acts made it possible for inaccurate or fraudulent documents

SECOND AMENDED COMPLAINT - 32

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

to be recorded in the chain of title of Plaintiff's property. Defendant Morris' acts started the chain of events that led to the initiation of foreclosure against Plaintiff's homestead by an entity other than the owner of her mortgage loan and the promissory note she signed at closing. Plaintiff is entitled to consequential damages as a result of defendant Morris' intentional tort including anguish, emotional distress, and humiliation relating to her fear of losing her house and the risk of losing it to nonjudicial foreclosure.

### COUNT SIX: FRAUD BY DEFENDANT JENNIFER DOBRON

91.    Plaintiff incorporates herein by reference as though fully set forth at length each and every preceding allegation and statement contained herein, inclusive, of the Factual Allegations.

92.    Defendant Jennifer Dobron committed common law fraud by signing the Assignment of Deed of Trust as assistant secretary of MERS. Dobron knew that even though she did not work for MERS, is not a real corporate officer of MERS, and did not have any personal knowledge of the matters she swore to in the Assignment, her signing of the document would enable defendant NWTS to conduct a nonjudicial foreclosure of Plaintiff's homestead. It was Dobron's intent, in signing the Assignment, that others would rely on her representations as truth and the intended effect would be reached.

93.    Defendant Dobron's acts made it possible for inaccurate or fraudulent documents to be recorded in the chain of title of Plaintiff's property. Defendant Dobron's acts started the chain of events that led to the initiation of foreclosure against Plaintiff's homestead by an entity other than the owner and holder of her mortgage loan and the promissory note she signed at closing. Plaintiff is entitled to consequential damages as a

SECOND AMENDED COMPLAINT - 33

result of defendant Dobron's intentional tort including anguish, emotional distress, and humiliation relating to her fear of losing her house and the risk of losing it to nonjudicial foreclosure.

## COUNT SEVEN: VIOLATION OF RESPA, REGULATION X

94. Plaintiff alleges, based on the foregoing factual account whereupon Plaintiff and Plaintiff's counsel have properly inquired regarding Cenlar's imposition of attorney's fees and costs but Cenlar violated 12 C.F.R. §1024.35 and §1024.36 by failure to respond to Plaintiff's inquiry concerning its imposition of attorney's fees and costs on her mortgage loan account. Under the new procedures, upon receiving a Notice of Error or Request for Information, a servicer must provide written notice to a borrower within five days acknowledging receipt. Thereafter, the servicer has thirty days to investigate, correct, or respond to the borrower.[2]

95. Under RESPA, Plaintiff has a private right of action entitling her to actual damages and attorney's fees, and in the case of a pattern or practice of noncompliance, statutory damages not to exceed $2000.00. In this case, Cenlar never responded to Plaintiff's Inquiry concerning the imposition of attorney's fees and costs and Cenlar never responded to Plaintiff's counsel's Notice of Error and Request for Information concerning the imposition of attorney's fees and costs. These failures constitute a pattern or practice of Cenlar.

## COUNT EIGHT, VIOLATION OF TILA

---

[2] 12 C.F.R. §§1024.35(e), 1026.36(d). "For asserted errors governed by the time limit . . . of this section, a servicer may extend the time period for responding by an additional [fifteen] days . . . if, before the end of the [30] day period, the servicer notifies the borrower of the extension and the reasons for the extension in writing." 12 C.F.R. §1024.35(e)(3)(i)(C)(ii); *see also* 12 C.F.R. §1024.36(d)(2)(i)(B)(ii). Defendant Cenlar has taken no action even after the expiration of the 15-day extension it requested from Plaintiff.

SECOND AMENDED COMPLAINT - 34

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

96.    Plaintiff alleges, based on the foregoing factual account, that Cenlar violated 12 C.F.R. §1464 (Crediting of Payments/Payoff Statements) of Regulation Z. The new rule was promulgated pursuant to §105(a) of TILA, which subjects it to private enforcement against creditors and assignees.   The applicable provisions of TILA allow Plaintiff to recover actual damages, attorney's fees, and statutory damages between $400 and $4000.

97.    In this case, Plaintiff specifically questions whether Cenlar, the assignee, properly applied her mortgage payments in the manner provided for in the Deed of Trust and her question remains unanswered.  It appears that Cenlar has not applied Plaintiff's payments in the manner provided for in the Deed of Trust but applied them to various fees and costs including attorney's fees and costs for which Cenlar cannot or will not explain. The misapplication of mortgage payments has or will result in Plaintiff's loan account being in default status.

## COUNT NINE, BREACH OF GOOD FAITH AND FAIR DEALING IMPLIED IN THE LOAN MODIFICATION AGREEMENT

98.    Plaintiff alleges that Cenlar's reference of "In keeping with Washington Law," as authority for the fees and costs charged to Plaintiff's mortgage loan account is misleading and deceptive because Cenlar does not cite to one or more provisions of the Revised Code of Washington in the letters it sent to Plaintiff. Furthermore, nothing in the loan documents or the Loan Modification Agreement provide for attorney's fees "in keeping with Washington Law" as claimed by Cenlar. Thus, there is no contractual or authority for Cenlar to impose attorney's fees and costs on a monthly basis thereby causing Plaintiff to be of delinquent status.

SECOND AMENDED COMPLAINT - 35

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

99.     Plaintiff alleges that Cenlar has violated the implied duty of good faith and fair dealing. The breach of the implied duty of good faith and fair dealing can occur even if all of the terms of the written contract have been fulfilled. *Metavante Corp. v. Emigrant Sav. Bank,* 619 F.3d 748, 766 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 1784 (2011). Similarly, the California Supreme Court observed that the "breach of a specific provision of the contract is not a necessary prerequisite [to a breach of good faith and fair dealing claim]. Were it otherwise, the covenant would have no practical meaning, for any breach thereof would necessarily involve breach of some other term of the contract." *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373, 826 P.2d 710, 6 Cal.Rptr.2d 467 (1992) (citation omitted).  Under Washington law, "[t]here is in every contract an implied duty of good faith and fair dealing" that "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Badgett v. Sec. State Bank,* 116 Wn.2d 563, 569, 807 P.2d 356 (1991). In particular, the duty of good faith and fair dealing arises "when the contract gives one party discretionary authority to determine a contract term." *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.,* 86 Wn. App. 732, 738, 935 P.2d 628 (1997); *see Amoco Oil Co. v. Ervin,* 908 P.2d 493, 498 (Colo. 1995) ("The duty of good faith and fair dealing applies when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time."). When asked to apply Washington law in this area, the Ninth Circuit concluded that " [g]ood faith limits the authority of a party retaining discretion to interpret contract terms; it does not provide a blank check for that party to define terms however it chooses." *Scribner v. Worldcom, Inc.*, 249 F.3d 902, 910 (9th Cir. 2001). Accordingly, Cenlar breached the implied duty of good faith and fair dealing by

SECOND AMENDED COMPLAINT - 36

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

unilaterally imposing attorney's fees and costs without any basis thereby causing the risk of breach/default by the Plaintiff.

## COUNT TEN, TORT OF OUTRAGE

100. Plaintiff alleges that Cenlar's conduct in imposing attorney's fees and costs while this litigation is pending thereby causing her mortgage loan to be in delinquent or default status is deliberate and retaliatory, hence, it also constitutes the tort of outrage. The claim has three elements: (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) the plaintiff's severe emotional distress. *Robel v. Roundup Corp.,* 148 Wash.2nd 35, 51, 59 P.3d 611 (2002); *see also Dicomes v. State*, 113 Wash. 2d 612, 630, 782 P.2d 1002 (1989). This first element goes to the jury only if the court determines that reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability. Id.; *Kloepfel v. Bokor*, 149 Wn.2d 192, 66 P.3d 630, 632 (2003). For behavior to meet the first prong it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and [] be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* Behavior consisting of "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" does not rise to the requisite level of offending behavior. *Id*.

101. Here, Cenlar knew or should have known, through the history of this case that Plaintiff had expended tremendous time and money to obtain the loan modification. Additionally, Cenlar knew or should have known that Plaintiff was riding an emotional roller coaster as she did not know whether she could obtain said loan modification. Once Cenlar signed off on the loan modification, Plaintiff reasonably expected a financial fresh start.

SECOND AMENDED COMPLAINT - 37

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

Cenlar's act of taking away the security recently gained by Plaintiff has affected her life in a real way substantially and not a trivial act. For a borrower who has suffered hardship and who had undergone the difficult process to cure her default and get a loan modification, the new agreement is her lifeline; Plaintiff is doing everything she can in her power to keep her mortgage payments current. Therefore, Cenlar's acts; imposing excessive "attorney fees and costs," sending monthly statements with large amounts being "due," and sending letters of delinquency, which are clearly designed to cause Plaintiff to be in default, to breach the loan modification, and to potentially loose her home again, are beyond all possible bounds of decency. *Restatement (Second) of Torts* § 46, cmt. d, at 73; *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753 (1970) (conduct was outrageous when a creditor engaged in a continuous campaign of harassment by calling its debtor several times, sending her numerous letters demanding payment of her debt, and informing her employer of the debt by asking how many garnishments the employer would allow from the debtor's salary); *Enriquez v. Countrywide Home Loans, FSB*, 814 F. Supp. 2d 1042, 1070 (D. Haw. 2011) (dismissing emotional distress claim arising from denied request to modify an allegedly predatory original loan, but dismissing with leave to amend, because it "would arguably be possible" to add facts to state such a claim); *Becker v. Wells Fargo Bank, NA, Inc.*, 2012 U.S. Dist. LEXIS 170729 (E.D. Cal. 2012) (even when court has doubt about the viability of plaintiff's intentional infliction of emotional distress claim, dismissal was inappropriate)

102. Unlike the situation that Plaintiff was in before the loan modification was approved, Plaintiff's loan was restored to current status and she has been making her payments regularly. There is no delinquency other than the delinquency created or induced

SECOND AMENDED COMPLAINT - 38

by Cenlar. Cenlar's relentless communications to Plaintiff about the rising attorney's fees and costs and the resulting delinquency status of her loan has caused Plaintiff anxiety, fear and distress over being in default of her loan; anger over her inquiries to Cenlar concerning the nature of the attorney's fees and costs have fallen on deaf ears, and helplessness as she feels that nothing, including the present lawsuit, would impress upon Cenlar's to do the "right thing."

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff prays for relief against Defendants as follows:

- Jury trial;

- Declaratory judgment that Defendants' conduct violated FDCPA, RESPA, TILA, Washington Deeds of Trust Act, DTA, and the Washington Consumer Protection Act, CPA;

- Actual damages;

- Statutory damages pursuant to 15 U.S.C. § 1692k and § 1681n-o;

- Costs and reasonable attorney fees pursuant to 15 U.S.C. §§ 1692k, § 1681n-o, and the Washington Consumer Protection Act (RCW 19.86);

- Treble damages, plus attorney fees and costs, awardable under Washington Consumer Protection Act, RCW 19.86.090;

- Compensatory damages, including emotional distress, by the conduct of the Defendants in an amount to be fully proved at the time of trial;

- Punitive damages under the Washington Consumer Protection Act;

- For such other and further relief as the Court may deem just and proper.

SECOND AMENDED COMPLAINT - 39

Dated this 12th day of May, 2014.

_____/s/ Vicente Omar Barraza_____
Vicente Omar Barraza, WSBA # 43589
Attorney for Plaintiff Leticia Lucero
BARRAZA LAW, PLLC
_____/s/ John R. Laris_____
John R. Laris, WSBA # 44406
Attorney for Plaintiff Leticia Lucero
BARRAZA LAW, PLLC
_____/s/ Ha Thu Dao_____
Ha Thu Dao, WSBA # 21793
Attorney for Plaintiff Leticia Lucero
GRAND CENTRAL LAW, PLLC
787 Maynard Ave S, Seattle WA 98104
727-269-9334/Fax 727-264-2447
youremylawyer@gmail.com

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff Leticia Lucero demands trial by jury in this action.

Dated this 12th day of May, 2014

_____/s/ Vicente Omar Barraza_____
Vicente Omar Barraza, WSBA # 43589
Attorney for Plaintiff Leticia Lucero
BARRAZA LAW, PLLC

_____/s/ John R. Laris_____
John R. Laris, WSBA # 44406
Attorney for Plaintiff Leticia Lucero
BARRAZA LAW, PLLC

_____/s/ Ha Thu Dao_____
Ha Thu Dao, WSBA # 21793
Attorney for Plaintiff Leticia Lucero
GRAND CENTRAL LAW, PLLC
787 Maynard Ave S, Seattle WA 98104
727-269-9334/Fax 727-264-2447
youremylawyer@gmail.com

SECOND AMENDED COMPLAINT - 40

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863