UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LETICIA LUCERO,<br><br>                Plaintiff,<br><br>      v.<br><br>CENLAR FSB, *et al.*,<br><br>                Defendants. | No. C13-0602RSL<br><br>ORDER |

       This matter comes before the Court on "RCO Legal, P.S.'s Motion for Judgment on the Pleadings." Dkt. # 63. In her First Amended Complaint ("FAC"), plaintiff alleges that defendant RCO Legal, P.S., violated the Fair Debt Collection Practices Act and the Washington Consumer Protection Act. Plaintiff also alleges that RCO's concurrent representation of both the trustee and the lender during the foreclosure process either reflects an identity of interests that violates the Deed of Trust Act ("DTA") or assisted other defendants in violating the act. RCO seeks dismissal of all of plaintiff's claims.

       Where, as here, a motion under Fed. R. Civ. P. 12(c) is used to raise the defense of failure to state a claim, the Court's review is the same as it would have been had the motion been filed under Fed. R. Civ. P. 12(b)(6). McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988). Although the complaint need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the

elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).[1]  The Court will assume the truth of the plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor (Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987)), but the allegations must give rise to something more than mere speculation that plaintiff has a right to relief (Twombly, 550 U.S. at 555).  The question for the Court is whether the facts in the complaint sufficiently state a "plausible" ground for relief. Twombly, 550 U.S. at 570.  Having reviewed the FAC,[2] and the memoranda, declaration, and exhibits submitted by the parties,[3] the Court finds as follows:

## BACKGROUND

In August 2006, plaintiff and her then-husband borrowed $391,000 from Taylor, Bean & Whitaker.  In addition to a promissory note, plaintiff signed a Deed of Trust identifying Taylor, Bean & Whitaker as the lender, Old Republic Title, Ltd., as the trustee, and Mortgage Electronic Registration Systems, Inc., as the lender's nominee to hold beneficiary status.  Dkt. # 34-1 at 123.  Plaintiff fell behind on the payments in 2010, and a Notice of

---

[1] Far from offering a formulaic recitation of the elements of each cause of action asserted, the FAC provides a narrative fact section from which the Court had to piece together the required elements. This is not a defect worthy of dismissal, however.  Rule 8(a)(2) requires parties to provide a short and plain statement of a claim showing a right to relief, not specific legal theories or causes of action.  In keeping with the admonition that "[p]leadings must be construed so as to do justice" (Fed. R. Civ. P. 8(e)), the Court has construed the well-pled factual allegations to determine whether the FAC provides sufficient notice of a claim and allegations in support thereof.  See Alvarez v. Hill, 518 F.3d 1152, 1157-58 (2008).

[2] Plaintiff seeks to further amend her complaint to address defendants' conduct since she filed the FAC. The new allegations are unrelated to RCO and do not impact the resolution of this motion.  It is immaterial whether the motion is considered under Fed. R. Civ. P. 12(b)(6) or 12(c).

[3] The Court has considered the evidence submitted by plaintiff with her response.  Defendant had an opportunity to present countervailing evidence, but chose not to, instead concluding that the materials submitted do not create a genuine issue of material fact. Reply (Dkt. # 76) at 4.  The Court has not considered plaintiff's supplemental submission. Dkt. # 75.  The authority cited therein should have and could have been included in her responsive memorandum.

1  Default was issued by defendant Northwest Trustee Services, Inc. ("NWTS") on behalf of
2  defendant Cenlar FSB on August 27, 2012.  Dkt. # 34-1 at 4.  The notice identified Freddie
3  Mac as the owner of the loan and Cenlar as the servicer.  Plaintiff alleges that, pursuant to
4  Freddie Mac's document retention procedures, a third-party had physical possession of the
5  original signed promissory note at all relevant times, such that neither Cenlar nor NWTS had
6  the power to initiate or pursue a nonjudicial foreclosure under the DTA.
7         Plaintiff requested and participated in mediation with Cenlar under Washington's
8  Foreclosure Mediation Program.  RCW 61.24.163.  RCO represented Cenlar during the
9  mediation and identified its client as "the beneficiary or servicer of the deed of trust secured
10 by" plaintiff's property.  FAC at ¶ 20.  RCO also produced a "Beneficiary Declaration" dated
11 October 5, 2012, as part of the mediation package.  FAC at ¶ 21.  As a result of the mediation,
12 plaintiff was able to negotiate a modification of her loan which brought her current on her
13 mortgage.  FAC at ¶¶ 55 and 57.  There is no indication that Cenlar took any further steps to
14 nonjudicially foreclose on the property.
15        Plaintiff filed this lawsuit on April 3, 2013, against Cenlar and Bayview Loan
16 Services, LLC, a debt collector.  Dkt. # 1.  RCO appeared as counsel for both defendants (Dkt.
17 # 5 and # 7), and filed a second version of the "Beneficiary Declaration," this one dated
18 October 16, 2014, in support of a motion to dismiss (Dkt. # 9-4 at 2).  On October 30, 2013,
19 plaintiff amended the complaint and added Northwest Trustee Services, Inc. ("NWTS") and
20 RCO as defendants.  RCO subsequently withdrew as counsel for Cenlar and Bayview, but is
21 currently representing itself and NWTS.

## DISCUSSION

**A. Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.**

Plaintiff alleges that RCO assisted defendants NWTS and Cenlar in back dating and falsifying documents to make it appear that (1) Cenlar was the holder of the debt

instrument and (2) NWTS had been properly appointed successor trustee at the time the Notice of Default was issued.  FAC at ¶ 60.  While such conduct may give rise to other cause of action, plaintiff does not explain how it constitutes a violation of § 1692e(2)(A) of the FDCPA.  That section prohibits the false representation of "the character, amount, or legal status of any debt" in connection with collection activities.  Assuming that RCO, Cenlar, and/or NWTS were "debt collectors" for purposes of the FDCPA, representations regarding the location of the original note, the validity of certain assignments and appointments, or the date on which a Beneficiary Declaration was signed do not reflect on the character, amount, or legal status of the debt.  Plaintiff does not dispute that she borrowed money, defaulted on her payments, owed the specified amount, and was subject to foreclosure efforts.  Plaintiff has not shown that defendants made false representations regarding "the character, amount, or legal status" of the debt.

**B.  Washington Consumer Protection Act ("CPA"), RCW 19.86 *et seq.***

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  RCW 19.86.020.  A private cause of action exists under the CPA if (1) the conduct is unfair or deceptive, (2) occurs in trade or commerce, (3) affects the public interest, and (4) causes injury (5) to plaintiff's business or property.  Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780 (1986).  The CPA does not define "unfair or deceptive" for purposes of the first element.  Whether an act is unfair or deceptive is a question of law.  Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 150 (1997). Washington courts have held that a deceptive act must have the capacity to deceive a substantial portion of the population (Sing v. John L. Scott, Inc., 134 Wn.2d 24, 30 (1997)) and "misleads or misrepresents something of material importance" (Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC, 134 Wn. App. 210, 226 (2006)).

Plaintiff alleges that RCO engaged in "unfair or deceptive" acts under the CPA when it (1) falsely represented that MERS was the beneficiary of the Deed of Trust with the power to transfer a beneficial interest to Cenlar (FAC at ¶ 65), (2) provided two different Beneficiary Declarations, one to the mediator and one to the undersigned (FAC at ¶ 68), and (3) concurrently represented the trustee and the loan servicer during loan modification negotiations and nonjudicial foreclosure proceedings (FAC at ¶ 32).  Each contention is considered below.

**1. Representations Regarding MERS' role**

Other than a vague and conclusory allegation that RCO "participated in" misrepresenting MERS' role in the Deed of Trust (FAC at ¶ 65), plaintiff offers no facts giving rise to an inference that RCO was involved in the creation of the Deed of Trust in 2006.  To the extent plaintiff is arguing that RCO assisted in the creation/recording of the Assignment of Deed of Trust from MERS to Cenlar in 2012 and/or subsequently made reference to Cenlar as the beneficiary, plaintiff has failed to plausibly allege that the representations regarding MERS' role caused her harm.[4]  Under the DTA, a "beneficiary" is defined as "the holder of the instrument or document evidencing the obligations secured by the deed of trust."  RCW 61.24.005(2).  Cenlar's authority to act as the beneficiary thus hinged on its actual physical possession of the original signed promissory note.  Bain v. Metro. Mortg. Group, Inc., 175 Wn.2d 83, 89 (2012) (finding that "only the actual holder of the promissory note or other instrument evidencing the obligation may be a beneficiary with the power to appoint a trustee to proceed with a nonjudicial foreclosure on real property").  Cenlar's status as the beneficiary for purposes of the DTA comes not from MERS' purported assignment – defective or not – but rather from its physical possession of plaintiff's original note.  Whether defendants collectively

---

[4] Plaintiff has not alleged that she relied in any way on the original representations in the Deed of Trust.

violated the DTA and/or engaged in practices that were unfair under Washington law are considered separately below.  For purposes of this claim, there is no evidence that plaintiff relied on representations regarding MERS' role to her detriment, and any injury associated with the claim that Cenlar was not the holder of the note is, under the allegations of the FAC, too remote to be compensable.

**2. Multiple Beneficiary Declarations**

Plaintiff alleges that the execution and/or production of multiple Beneficiary Declarations is an "unfair and deceptive" act.  The DTA requires the beneficiary to provide proof of its beneficiary status, which may take the form of a "declaration by the beneficiary made under penalty of perjury stating that the beneficiary is the actual holder of the promissory note or other obligation secured by the deed of trust . . . ."  RCW 61.24.030(7)(a).  The Beneficiary Declaration is simply evidence that the entity claiming beneficiary status is the actual holder of the original promissory note.  There is nothing magical or unique about the declaration:  the beneficiary may declare that it is the beneficiary as many times as it wants, as long as it retains possession of the original note.  The fact that RCO's client repeatedly declared that it is the beneficiary for purposes of the DTA - and RCO's subsequent production of the different declarations - is not a misrepresentation or otherwise unfair.

**3. Concurrent Representation of Trustee and Loan Servicer**

Plaintiff alleges that RCO's concurrent representation of Cenlar and NWTS rendered it "impossible for NWTS to act as an impartial judicial officer in nonjudicial foreclosures conducted by NWTS" and "constitutes unfair and/or deceptive conduct under Washington laws."  FAC at ¶ 32.[5]  Plaintiff does not allege that RCO hid its representation of

---

[5] To the extent plaintiff alleges that the concurrent representation created a conflict of interest for RCO as a lawyer (FAC at ¶ 33), plaintiff does not have standing to vindicate duties owed to others. The Court, however, has an interest in such matters and may sua sponte raise the issue of whether the client's right to chosen counsel is outweighed by the need to preserve public trust in the administration

Cenlar or NWTS or otherwise made a false or misleading representation regarding its or its clients' role in the mediation and foreclosure processes.  The CPA does not proscribe only deceptive conduct, however.  The Washington Supreme Court recently made clear that an act can violate the CPA if it is unfair – it need not be both unfair and deceptive.  <u>Klem v. Wash. Mut. Bank</u>, 176 Wn.2d 771, 787 (2013).  The question, then, is whether the concurrent representation of the servicer and the trustee is "unfair."

Although the supreme court declined to define "unfair" for purposes of the CPA, it noted that an act can be "unfair" even if it is not expressly regulated by statute.  <u>Id.</u> at 785-88.  Washington courts have allowed the definition of "unfair" "to evolve through a gradual process of judicial inclusion and exclusion" (<u>Saunders v. Lloyd's of London</u>, 113 Wn.2d 330, 344 (1989) (internal quotation marks omitted)) because:

> It is impossible to frame definitions which embrace all unfair practices.  There is no limit to human inventiveness in this field.  Even if all known unfair practices were specifically defined and prohibited, it would be at once necessary to begin over again.  If Congress to adopt the method of definition, it would undertake an endless task.  It is also practically impossible to define unfair practices so that the definition will fit businesses of every sort in every part of this country.

<u>Panag v. Farmers Ins. Co. of Wash.</u>, 166 Wn.2d 27, 48 (2009) (quoting H.R. Rep. No. 63-1142, at 19 (1914) (Conf. Rep.)).  Current federal law, which guides but does not govern Washington jurisprudence, states that a "practice is unfair [if it] causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and is not outweighed by countervailing benefits."  <u>Klem</u>, 176 Wn.2d at 787 (quoting 15 U.S.C. § 45(n)).

Plaintiff alleges that RCO's concurrent representation of and advice to both Cenlar, the lender's agent, and the trustee during mediation and the initiation of the nonjudicial

---

of justice and the integrity of the bar.

foreclosure process made it "impossible for NWTS to act as an impartial judicial officer." FAC at ¶ 32. The DTA is premised on the participation of three separate parties, the debtor, the lender, and a trustee that holds the power of sale. The trustee's independence is critical to the nonjudicial foreclosure process: its participation is a substitute for the protections previously afforded by judicial oversight and ensures that the borrower's interests will be subject to forfeiture only when the statutory requirements are met. Klem, 176 Wn.2d at 789-90; Bain, 175 Wn.2d at 93. As the state supreme court found in Klem, an arrangement between the lender and the trustee that deprives the trustee of its independence and results in the abdication of its duty to act with good faith and impartially toward both sides may violate the DTA, the borrower's constitutional property rights, and equity. 176 Wn.2d at 790-92. In short, such an arrangement would be unfair to the borrower for purposes of a CPA claim.

As discussed more fully below in the context of plaintiff's DTA claim, plaintiff has adequately alleged violations of NWTS' duty of good faith and identified a viable legal theory under which RCO could be held liable for those violations.[6]

**C. Washington Deed of Trust Act ("DTA"), RCW 61.24.005 *et seq*.**

Although plaintiff's complaint is not a model of clarity, her DTA claim against RCO is based on RCO's alleged participation in and furtherance of an inter-related corporate web that necessarily resulted in NWTS' breach of its duties as trustee under the DTA. The

---

[6] Plaintiff's presumption that RCO's concurrent representation of Cenlar and NWTS made it "impossible" for NWTS to act impartially would not be enough to support a CPA claim. There are elements of the deed of trust arrangement that inherently suggest a lack of impartiality, but the state supreme court has not been willing to presume that the system is unfair for purposes of the CPA without actual evidence that the systemic factors resulted in an abdication of the trustee's duties. Klem, 176 Wn.2d at 789 (noting that trustees "have considerable financial incentive to keep those appointing them happy and very little financial incentive to show the homeowners the same solicitude"). If the lender's power to appoint is not sufficient to create a presumption of unfairness, the fact that the two entities are advised by the same law firm is similarly insufficient. Plaintiff, however, has alleged other facts giving rise to a plausible inference that NWTS did, in fact, breach its duty of good faith and that RCO aided and assisted its violative conduct.

Court will first consider whether plaintiff has adequately alleged a breach of duty on NWTS' part and then consider whether RCO could be held liable for that breach.

As trustee, NWTS had few obligations under the statute: it owed a duty of good faith to the participants (RCW 61.24.010(4)), it had an affirmative obligation to confirm that the purported beneficiary was the holder of the note before issuing the notice of trustee's sale (RCW 61.24.030(7)), and it was required to provide the homeowner with certain information, including the name and address of the owner of the promissory note (RCW 61.24.030(8)). Plaintiff's allegations regarding NWTS' breach of the first two duties are enough to survive a motion to dismiss. A deed of trust is "a three-party transaction in which land is conveyed by a borrower, the 'grantor,' to a 'trustee,' who holds title in trust for a lender, the 'beneficiary,' as security for credit or a loan the lender has given the borrower." 18 William B. Stoebuck & John W. Weaver, Wash. Practice: Real Estate: Transactions § 17.3, at 260 (2d ed. 2004). The deed of trust grants the trustee the power of sale without judicial oversight upon default of the borrower. In light of this "significant power," the trustee has an obligation to all parties to the deed, including the homeowner: it cannot act merely as an agent for the lender or the lender's agent (*i.e.*, the servicer) lest the three-party nature of the transaction, which the Supreme Court has deemed critical, be compromised. Bain, 175 Wn.2d at 93. Plaintiff alleges that NWTS acted as Cenlar's agent in various respects, from issuing the Notice of Default to generating critical documents, and that NWTS charged the homeowner for fees and costs incurred in its role as Cenlar's agent. FAC at ¶¶ 17-18. In addition, plaintiff alleges that NWTS generated – and Cenlar signed – Beneficiary Declarations that were not based on personal knowledge and were untrue.[7] In short, plaintiff alleges that Cenlar and NWTS generated, notarized, and/or recorded documents that were either untimely or lacked the proper authorization in order to

---

[7] Plaintiff affirmatively alleges that a third-party document custodian, not Cenlar, was in possession of the original promissory note at the time NWTS prepared the Beneficiary Declarations for Cenlar's signature. FAC at ¶¶ 41 and 42.

-9-

present the false appearance that they possessed the statutory authority to foreclose on plaintiff's property.  These allegations give rise to a plausible inference of a breach of the duty of good faith.  In addition, given the manner in which the Beneficiary Declarations were generated, plaintiff may also be able to show that NWTS was not entitled to rely on the declarations for purposes of RCW 61.24.030(7).

The question then becomes whether RCO is potentially liable for injuries caused by NWTS' actions.  Plaintiff alternatively alleges that RCO is the same entity as NWTS, that RCO is liable under agency principles, or that RCO "assisted" NWTS in violating the DTA.

**1. Identity of Parties**

Although there is clearly a relationship between NWTS and RCO, they are two separate legal entities, each of which can be held responsible for its own wrongdoing.  Plaintiff has not addressed the standard for piercing the corporate veil, has not alleged or provided evidence of inadequate capitalization or a failure to observe the legal requirements for corporations, and has not explained how further dissection of the Stenman deposition transcript will help her show that the separateness of the entities should be disregarded.  Neither the FAC nor the evidence submitted with plaintiff's response raise a plausible inference that RCO and NWTS are the same legal entity.

**2. Agency**

Although an attorney is often described as an agent of the client, plaintiff's agency theory is unavailing.  The principal – in this case NWTS – may be held liable for the acts of the agent taken within the scope of the relationship.  O'Brien v. Hafer, 122 Wn. App. 279, 283-84 (2004) ("The negligence of the agent is imputed to the principal because he has the right to control the acts of the agent.").  That does not, however, mean that the agent is responsible for the acts of the principal, over whom he does not have the requisite control.  The agent will be held responsible only when his own acts generate liability, not when his employer, trustor, or

1 client transgresses the law.  Plaintiff makes no attempt to show that RCO has individually
2 violated the DTA.

### 3. Aiding and Abetting

Civil liability may, in certain circumstances, extend to persons who are not the primary tortfeasor but who act in concert with the tortfeasor resulting in harm to plaintiff. Although an intent to harm plaintiff is not necessary, the mere fact of harm is not sufficient: plaintiff must show an express or tacit agreement to act together in an unlawful manner.  Yong Tao v. Heng Bin Li, 140 Wn. App. 825, 832 (2007).  Under Washington law, RCO would be liable for harm caused by NWTS' violations of the DTA only if it:

(a) does a tortious act in concert with [NWTS] or pursuant to a common design with [it], or

(b) knows that [NWTS'] conduct constitutes a breach of duty and gives substantial assistance or encouragement to [NWTS] so to conduct [itself], or

(c) gives substantial assistance to [NWTS] in accomplishing a tortious result and [its] own conduct, separately considered, constitutes a breach of duty to the third person.

Restatement (Second) of Torts § 876 (1979).  See Martin v. Abbot Labs., 102 Wn.2d 581, 596-99 (1984) (finding that concerted action theory of liability required showing that each defendant knew the other's conduct was tortious and provided encouragement of or assistance in the tortious conduct).

Subsections (a) and (c) of the Restatement are inapplicable:  plaintiff has not alleged that RCO violated the DTA or breached a duty it owed to plaintiff.  Plaintiff's theory of the case is that RCO, knowing that Cenlar did not have possession of the original promissory note, that the trustee was acting as the agent of the servicer, and that the trustee was purporting to rely on a declaration it had created and that was not based on personal knowledge, either advised the conduct or otherwise assisted NWTS (and its other client, Cenlar) in initiating and pursuing a nonjudicial foreclosure that violated the DTA.  These concerted acts are alleged to

-11-

have diminished plaintiff's property value and credit rating and to have subjected her (and her property) to monitoring and other actions that disturbed her privacy and interfered with her quiet enjoyment of her home.

Plaintiff has asserted facts which raise a plausible inference that RCO acted in concert with NWTS and/or Cenlar to accomplish a particular unlawful result, namely the initiation and pursuit of a nonjudicial foreclosure without complying with the DTA.

For all of the foregoing reasons, RCO's motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's FDCPA claim against RCO is hereby DISMISSED. Plaintiff may proceed with discovery regarding her CPA and DTA claims. Given the seemingly unavoidable conflict of interests that will arise (if it has not already arisen) between RCO's interests and those of NWTS, RCO shall, within fourteen days of the date of this Order, show cause why it should not be disqualified from representing NWTS in this matter.

Dated this 30th day of June, 2014.

*[signature]*
Robert S. Lasnik
United States District Judge