UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| LETICIA LUCERO,<br><br>        Plaintiff,<br><br>vs.<br><br>CENLAR FSB and BAYVIEW LOAN SERVICING, LLC, et al.,<br><br>        Defendants. | NO. 2:13-cv-00602<br><br>RESPONSE TO MOTION OF DEFENDANTS CENLAR, FSB, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, JENNIFER DOBRON, AND NANCY K. MORRIS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT |

COMES NOW, Plaintiff, by and through her undersigned attorneys, and files her Response to the Motion of Defendants Cenlar, FSB; Mortgage Electronic Registration Systems; Jennifer Dobron; and Nancy K. Morris to Dismiss Plaintiff's Second Amended Complaint. In support of Plaintiff's Response, she states the following:

## I.    SUMMARY OF FACTS SUPPORTING CAUSES OF ACTION

**Misrepresentation of Cenlar's Status as Note Holder Gives Rise to Liability and Damages**

Despite Plaintiff's extensive and on-going communications with Defendant Bayview toward a loan modification, in August of 2012, NWTS posted on Plaintiff's home the Notice of Default ("NOD") in its capacity as the duly authorized agent of Cenlar. This Notice of Default does not identify the beneficiary by name, but refers to the Deed of Trust by recording number

RESPONSE TO MOTION OF DEFENDANTS
CENLAR, MERS, JENNIFER DOBRON, AND
NANCY K. MORRIS TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

BARRAZA LAW, PLLC
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 1 -

and states that "The beneficiary declares you in default for failing to make payments as required by your note and deed of trust." The NOD identifies Freddie Mac as the owner of Plaintiff's loan. The NOD identifies Cenlar both the loan servicer and as the "creditor to whom the debt is owed." ¶ 14, 15, 16, 17 and 18. Even though the NOD was issued by NWTS as the duly authorized *agent* of Cenlar, NWTS added a trustee's fee of $542.50 to the amount Plaintiff needed to cure, inflating it to $45,339.83 (**Ex. 1**, NOD).1

The NOD violates the FDCPA, *§1692e(2)(A),* which prohibits the false representation of the "character, amount, or legal status of any debt." *Id.*; *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010); *Glen v. Law Office of W.C. French,* No. ELH-11-927, 2012 U.S. Dist. LEXIS 6898, 2012 WL 181496 at *2 (D. MD. Jan. 19, 2012) (citing *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996) ("Collection activities are deemed to "overshadow[] or contradict[] the validation notice 'if [they] would make the least sophisticated consumer uncertain as to her rights.'"); see also *Rhoades v. W.Va. Credit Bureau Reporting Servs., Inc.*, 96 F.Supp.2d 528, 532 (S.D.W.Va. 2000) (explaining that it is a "question as to whether the least sophisticated consumer would find the language contradictory or inconsistent, so to leave him confused about his right to dispute the debt"); *Talbott v. GC Servs. Ltd. P'shp,* 53 F. Supp. 2d 846, 852 (W.D.Va. 1999). The NOD misrepresents the nature of the debt (owned by Freddie Mac but secured in favor of MERS as nominee/beneficiary, and identifying the loan servicer as the "creditor to whom the debt is owed"); and the amount owed, which is inflated by the trustee's fee (paragraph 22 of Plaintiff's Deed of Trust provides specifically that only upon the exercise of the power of sale can the trustee's compensation be paid out of the sale proceeds). Cenlar as debt collection on behalf of Freddie Mac violates *15 U.S.C.S. § 1692e(2)(B)* by making the false representation, through NWTS, of the services rendered, which collection in

---

1 The Exhibits referenced herein were attached to the SAC at docket number 69-1.

RESPONSE TO MOTION OF DEFENDANTS
CENLAR, MERS, JENNIFER DOBRON, AND
NANCY K. MORRIS TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

BARRAZA LAW, PLLC
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 2 -

nature but charged for performance of trustee. Via Cenlar, NWTS received compensation for the actual collection of a debt. *15 U.S.C.S. § 1692e (2)(B)*; *Spencer v. Hendersen-Web, Inc.* 81 F.Supp.2d 582 (1999) (court held that it is a violation of the provision to attempt to collect a 15% attorney fee when no attorney had worked on the case and no attorney's fee had been incurred). Thus, the NOD issued by NWTS on behalf of Cenlar violated federal.

Attached to the NOD posted on Plaintiff's home is a Foreclosure Loss Mitigation Form printed on Cenlar's letterhead which contains the declaration under penalty of perjury that "The beneficiary or beneficiary's authorized agent" has contacted Plaintiff to assess Plaintiff's financial ability to pay the debt in compliance with RCW 61.24.031 … and Plaintiff did not request a meeting." (**Ex. 1**, NOD, Foreclosure Loss Mitigation Form). This declaration is facially untrue because as of the date of this Foreclosure Loss Mitigation Form, Plaintiff had been working with Bayview steadily for many months toward a loan modification and she would have been thrilled to have a meeting with "the beneficiary or its agent." This misrepresentation, declaring compliance with *RCW 61.24.031(5)*, when there was none, is a *per se* violation of the CPA pursuant to *RCW 61.24.135(2).*

Plaintiff does not denounce the validity of the Note and Deed of Trust that she signed in 2006 to obtain the loan; she embraces them as the controlling documents that define the parties' respective responsibilities and set conditions precedent before foreclosure. The Note and Deed of Trust ("DOT"), attached to Plaintiff's Second Amended Complaint as **Exhibit 15**, directly contradict what the NOD represents. Paragraph 1 of the Note, identifying Taylor Bean Whitaker ("TBW") as Lender contains this definition: "I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called 'the Note Holder.'" The Note refers to the Deed of Trust as the security instrument that "protects the Note Holder from possible losses" from

RESPONSE TO MOTION OF DEFENDANTS
CENLAR, MERS, JENNIFER DOBRON, AND
NANCY K. MORRIS TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

BARRAZA LAW, PLLC
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 3 -

Plaintiff's failure to, *inter alia,* pay the loan back. Likewise, the Deed of Trust identified TBW as Lender, and, under paragraph 20, cautioned Plaintiff that her loan may be sold one or more times. The DOT explains that the sale of Plaintiff's loan may result in a change of the loan servicer, who "collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law." The loan servicer is mentioned once in the DOT and has not role in the acceleration of the debt or foreclosure of the property as collateral.

Paragraph 22 of the DOT states: "If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold." Paragraph 24 of the Note states that it is the Lender who: "may from time to time appoints a successor trustee" in the event that the original trustee ceases to act. Since the NOD issued by NWTS on Cenlar's behalf identifies Cenlar only as the servicer of Plaintiff's loan, Cenlar cannot meet the definition of Note Holder under the terms of the Note and Deed of Trust. Thus, when Cenlar executed not one, but two Beneficiary Declarations (**Exs 3 & 4 of SAC**), stating under penalty of perjury that it is the "holder of the promissory note" in order to initiate nonjudicial foreclosure upon Plaintiff's property, knowing how the Note and DOT limit its role, Cenlar misrepresented its status in violation of *RCW 61.24.005(2)* and *61.24.010(2).*

Upon receipt of the NOD, and based on the conflicting disclosures contained within, Plaintiff immediately sent out QWRs to both Cenlar and Bayview. Bayview did not respond to Plaintiff's QWR at all and Cenlar failed to respond to her QWR in a complete manner. ¶15.

After many months of frustration, multiple submissions of financial information package, and scheduling a formal FFA mediation, Plaintiff finally received, and accepted the loan modification from Cenlar, via Bayview as its agent. Plaintiff began to make her payments

RESPONSE TO MOTION OF DEFENDANTS
CENLAR, MERS, JENNIFER DOBRON, AND
NANCY K. MORRIS TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

BARRAZA LAW, PLLC
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 4 -

in October of 2012 and by December of 2012, Plaintiff had completed her trial period by December of 2012. In January of 2013, Cenlar sent Plaintiff the Permanent Loan Modification Agreement which Plaintiff signed and returned effectively resetting her loan on new terms and clearing her loan from default/foreclosure status. The Permanent Loan Modification Agreement represents a new principal balance owed, step interest rates, monthly amount; and a new loan term of 40 years instead of 30 years. The new agreement does not take into account any of the payments that Plaintiff made from 2006 until 2011 when she had difficulty keeping up with the payments.[2] Cenlar represents to Plaintiff in this Permanent Loan Modification Agreement that it is the "Lender/Servicer." **¶70, Ex. 24**.

Defendant RCO represented Cenlar in the FFA mediation and should have been made aware by Cenlar of the fact that Plaintiff is represented by counsel and the progress of Plaintiff's loan modification application. NWTS is the agent of Cenlar and should have been similarly made aware of Plaintiff's conclusion of the trial payment period. Defendant RCO and NWTS share physical space, resources, and information about Plaintiff's case. **¶19, 20**. By virtue of having Cenlar as their mutual client, all these named defendants knew or should have known to cease nonjudicial foreclosure activities. Yet, on December 6, 2012, after Plaintiff completed the trial modification payments, Cenlar presumably instructed its agent, NWTS, to record Assignment of Deed of Trust and Appointment of Successor Trustee in preparation for foreclosure. The Assignment and Appointment were signed and notarized by defendants Jennifer Dobron and defendant Nancy K. Morris in October and November of 2012 respectively. Dobron, who signed the Beneficiary Declarations as assistant secretary for Cenlar, also signed the Assignment as assistant secretary for MERS. Dobron's signatures on these documents vary so drastically as to cast doubt on their authenticity. Defendant Morris'

---

2 Plaintiff made at least three payments toward her escrow account prior to the loan modification.

RESPONSE TO MOTION OF DEFENDANTS
CENLAR, MERS, JENNIFER DOBRON, AND
NANCY K. MORRIS TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

BARRAZA LAW, PLLC
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 5 -

signatures from the Assignment of Deed of Trust and Appointment of Successor Trustee also vary drastically so as to cast doubt on their authenticity. On the Appointment of Successor Trustee, Morris did not verify the identity and authority of the signatory, rendering the validity of the document questionable. Additionally, Dobron and Morris' signatures appearing in the Assignment and Appointment in Plaintiff's case vary drastically from their signatures in documents relating to other cases filed in the public records. ¶27, 29, Ex. 6, 7, 8. Plaintiff also pleaded that even though the MERS Assignment was executed after the Appointment, they were recorded on the same day in reverse order to give the legal effect that MERS assigned the Deed of Trust to Cenlar, conferring beneficiary status upon Cenlar, who then appointed NWTS as successor trustee. Plaintiff alleges and attachment document to prove that the recording of MERS assignments before appointments, despite their actual date of execution, is a pattern or practice engaged in regularly by NWTS.¶ 28, Ex. 9.

Independent from whether the Assignment and Appointment effectively and legally achieve their intended objectives, the collective act of Cenlar, Dobron, and Morris of executing, notarizing, and sending to be recorded, documents affecting Plaintiff's title, after she had already accepted a loan modification and performed what was required of her in the loan modification agreement, is deceptive and harmful. Specifically, this practice by lenders and their agents has been well documented as "dual-tracking", and served as the reason for the enactment of Consumer Financial Protection Bureau, Mortgage Servicing Rules under the Real Estate Settlement Procedures Act (Regulation X) and Truth in Lending Act (Regulation Z), 78 Fed. Reg. 39902 (July 2, 2013) (to be codified at 12 C.F.R. pts. 1024, 1026), effective January 10, 2014, and the State of California's Homeowners' Bill of Rights. Plaintiff affirmatively alleges that the recording of the Assignment and Appointment in her case, done by NWTS as

RESPONSE TO MOTION OF DEFENDANTS
CENLAR, MERS, JENNIFER DOBRON, AND
NANCY K. MORRIS TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

BARRAZA LAW, PLLC
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 6 -

agent of Cenlar, was carried out for no reason other than to prepare for nonjudicial foreclosure of Plaintiff's home.

Plaintiff attached several assignments of deed of trust and appointments of successor trustee to her Complaint/FAC/SAC relating to other nonjudicial foreclosures that NWTS was involved in as successor trustee to illustrate that NWTS acts more like the agent for loan servicers and less as an impartial trustee. In **Ex. 9,** NWTS recorded the assignment and appointment sequentially despite the fact that these documents were executed in the opposite order to give the appearance that the assignee timely secured the statutory authority to appoint NWTS as successor trustee. Plaintiff alleges that RCO's role as counsel for both NWTS and lawyer for Cenlar in the same case, on the opposite side of her as the borrower, aided and abetted in NWTS' violation of the DTA through NWTS' unwillingness or inability to act as an impartial judicial officer. In other words, Plaintiff alleges that NWTS and RCO's fiduciary and loyalty to Cenlar as its paying client, guide their foreclosure practices and not the DTA. These facts constitute violation of the CPA.

As to MERS' involvement in the execution of the foreclosure documents in question, Plaintiff alleges that the execution, notarization and recording of the Assignment of Deed of Trust by MERS contradict the terms of the three-party agreement or Deed of Trust that Plaintiff entered into with TBW because MERS, as a nominee, holds nothing substantive to "assign" to another entity down line. Therefore, the MERS Assignment, which purports to convey more than what MERS actually had, deceives not only the Plaintiff, but also the public who relies on recorded documents within land title records to conduct business. ¶**6, 30, 31, 52 of SAC.** The MERS Assignment misrepresents the nature of the mortgage debt as one secured to MERS when in fact MERS never had any interest, remote or otherwise, in the mortgage loan and thus violates the CPA and FDCPA. *Walker v. Quality Loan Service Corp. of WA,* 176

RESPONSE TO MOTION OF DEFENDANTS
CENLAR, MERS, JENNIFER DOBRON, AND
NANCY K. MORRIS TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

BARRAZA LAW, PLLC
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 7 -

Wn.App. 294, 308 P.3d 716 (2014) (A debt collector violates Section 1692f by "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if … there is no present right to possession of the property claimed as collateral through an enforceable security interest." ); *Knecht v. Fidelity Nat'l Title Ins. Co.*, 2014 U.S. Dist. LEXIS 11331, *7-8 (facts that MERS does not hold the borrower's note and there is no evidence the original lender actually authorized MERS to effect the transfer entitle borrower to go to trial renders MERS assignment a nullity); *Bavand v. OneWest Bank, FSB*, 309 P.3d 636, 649 (Wash. Ct. App. 2013) (noting MERS's failure to establish its agency relationship with a noteholder).

Plaintiff alleges that the execution, notarization and recording of MERS Assignment was deceptive because when this document was recorded, Plaintiff had already completed her trial period and, specifically, on December 6, 2012, when the Assignment was recorded, her loan should not have been marked as either delinquent or under active foreclosure status at all. Plaintiff also alleges that the recording of Appointment of Successor Trustee, which is predicated on the Assignment, in order for NWTS to act as trustee is also deceptive because it gives the public the impression that her property was being prepared for nonjudicial foreclosure when Plaintiff had successfully completed a loan re-set. **¶¶51-52, 78-79**. Once recorded, the Assignment and Appointment become permanent records in the chain of Plaintiff's land title. If anything, the recording of the MERS Assignment and Appointment is arguably done so that the Defendants can inflate the amount due and owed, making it that much more difficult and expensive for Plaintiff to rein in her mortgage loan. Ultimately, when Plaintiff signed off on the Permanent Loan Modification Agreement that represents the new principal balance, she agreed to pay the fees relating to foreclosure, including the $542.50

RESPONSE TO MOTION OF DEFENDANTS
CENLAR, MERS, JENNIFER DOBRON, AND
NANCY K. MORRIS TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

BARRAZA LAW, PLLC
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 8 -

trustee's fee, over the next 40 years, amortized by the relevant interest rates; she has been paying fees related to foreclosure, even though there was never a trustee's sale.

Plaintiff alleges that Cenlar's objective of default and foreclosure continues even after Plaintiff successfully reinstated her loan. Defendant Cenlar, in its capacity as loan servicer, imposes massive amounts of attorney's fees against her mortgage account on a monthly basis. Plaintiff attached correspondence from Cenlar showing, in one single day, attorney's fees have been incurred in the amount of $5,877.00, and added to her loan. **Ex.8.** Plaintiff attached correspondence in which Cenlar stated that the attorney's fees have been imposed in "in keeping with Washington Law." Plaintiff has attached correspondence and statements from Cenlar indicating that her loan is delinquent for no reason other than the unpaid attorney's fees. Plaintiff affirmatively alleges that these communications cause her fear and anguish that foreclosure will be looming, again. **¶¶ 37 through 46.** Plaintiff alleges that she again sent Cenlar a QWR, followed by Notice of Error and Request for Information, in 2014, seeking to verify the basis of the huge amount of attorney's fees being imposed, and in its belated responses, Cenlar *has not once* provided a breakdown of the fees incurred. **¶¶ 37-49, Ex. 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19 and 20**. These facts constitute violations of RESPA, Regulation X, 12 C.F.R. §1024 et seq., and TILA, 12 C.F.R. §1464.

Plaintiff alleges that the conduct of MERS Cenlar, Dobron, Morris, in manufacturing, signing, notarizing and recording the Assignment and Appointment, contributed to the status of her property being "marked" as under foreclosure, which resulted in the diminution of the value of her home, reduced her credit standing, and caused her ongoing emotional distress, anguish and fear of losing her home. **¶ 58-59**.

RESPONSE TO MOTION OF DEFENDANTS
CENLAR, MERS, JENNIFER DOBRON, AND
NANCY K. MORRIS TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

BARRAZA LAW, PLLC
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 9 -

## II.   ARGUMENT

The Ninth Circuit recently clarified in *Eclectic Props. East, LLC v. Marcus & Millichap Co.,* 751 F.3d 990 (9th Cir. 2014), the standard upon motions to dismiss:

> Establishing the plausibility of a complaint's allegations is a two-step process that is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense." First, a court should "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Then, a court should "assume the[] veracity" of "well pleaded factual allegations" and "determine whether they plausibly give rise to an entitlement to relief." "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." When considering plausibility, courts must also consider an "obvious alternative explanation" for defendant's behavior.

*Id.* at 995-96 (citing to *Twombly* and *Iqbal*'s plausibility standard) internal citations omitted.  The court held: "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* Nothing in this Plausibility Test requires Plaintiff to prove the nature or extent of her damages at the pleading stage.  The *Eclectic* court held, "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible." *Id.* In this case, to counter Plaintiff's specific facts, Defendants offered neither denial nor explanations for their behavior. They simply rely on the fact that a trustee's sale has

RESPONSE TO MOTION OF DEFENDANTS
CENLAR, MERS, JENNIFER DOBRON, AND
NANCY K. MORRIS TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

BARRAZA LAW, PLLC
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 10 -

yet to occur and the fact that Plaintiff had entered into a loan modification in support of its contention that Plaintiff has suffered no damages and therefore her lawsuit should be dismissed. In considering Motion to Dismiss, this Court also considers documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes its authenticity; and "'matters of which a court may take judicial notice.'" *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010), quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007).

First and foremost, defense counsel has omitted *all* recent Washington cases where the state courts and the federal court have held that a cause of action exists pre-sale. Defense counsel violated the duty of candor to the tribunal in their citation of *Frias v. Asset Foreclosure Servs. Inv.*, 957 F.Supp.2d 1264, 1271 (W.D. Wash, 2013) and their incomplete quotation of Judge Pechman, as settled law and controlling authority. Defense counsel deliberately left out pertinent facts including: 1) In issuing *Frias,* Judge Pechman has certified the pertinent question to the Washington Supreme Court; and 2) despite the pendency of *Frias,* both the state appellate courts and the district courts have held there is a cause of action pre-sale for which the Plaintiff can recover damages. *Walker v. Quality Loan Service Corp. of WA,* 176 Wn.App. 294, 308 P.3d 716 (2014) (construing RCW 61.24.127(1)(c) to provide for a cause of action even if no foreclosure sale occurred); *Bavand v. OneWest Bank, FSB*, 176 Wn.App. 475, 496, 309 P.3d 636 (2014) (By amending RCW 61.24.127 in 2009, the legislature explicitly recognized a cause of action for damages for failure to comply with the Act); *Meyer v. U.S. Bank*, 506 B.R. 533 (W.D. Wa. 2014) ("As far as this Court is concerned, the Washington courts have spoken: *Walker* and *Bavand* reject the holding in *Vawter* that there is no cause of action for violation of the DOTA.").

RESPONSE TO MOTION OF DEFENDANTS
CENLAR, MERS, JENNIFER DOBRON, AND
NANCY K. MORRIS TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

BARRAZA LAW, PLLC
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 11 -

On August 14, 2014, Judge Richard Jones of the District Court issued an Order upon motions for summary judgment in the case of *Knecht v. Fidelity National Title Ins. Co.,* 2014 U.S. Dist. LEXIS 11331. In footnote 5, Judge Jones discussed Frias and answered the question in the affirmative: "Another judge in this District has certified to the Washington Supreme Court some of the same questions that *Walker* answered. See *Frias v. Asset Foreclosure Servs., Inc.,* No. C13-760MJP, 2013 U.S. Dist. LEXIS 147444 (W.D. Wash. Sept. 25, 2013). The court takes judicial notice of the Washington Supreme Court docket, which reveals that the court heard oral argument in *Frias* in February of this year, but has yet to issue a decision. Pending that court's decision, the court will follow *Walker. The court observes that Defendants' failure to cite Walker or address its reasoning did not serve them well in the motions before the court.*" *Id., emphasis added.* As in *Knecht,* defense counsel in this case completely ignored *Walker, Bavand,* and *Meyer.*

Lawyers, as officers of the court, owe a duty of candor towards the tribunal. RPC 3.3. A lawyer's duty of candor to a court requires citation of controlling authority directly adverse to counsel's position. Omission of a citation of controlling authority would make an argument frivolous and therefore sanctionable. In *U. S. v. Stringfellow*, 911 F.2d 225 (9th Cir. 1990), the Ninth Circuit expressed:

> … if the omitted case law and statutory provisions would render the attorney's argument frivolous, he or she "should not be able to proceed with impunity in real or feigned ignorance of [them]," *id*., and sanctions should be upheld. An argument contained in a motion is frivolous under Rule 11 if it is unreasonable when viewed from the perspective of "a competent attorney admitted to practice before the district court." *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 830 (9th Cir. 1986); see also *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir. 1985) ("Where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands, Rule 11 has been violated.").

RESPONSE TO MOTION OF DEFENDANTS
CENLAR, MERS, JENNIFER DOBRON, AND
NANCY K. MORRIS TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

BARRAZA LAW, PLLC
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 12 -

*Id.*

The lack of candor by defense counsel is further highlighted by her argument that Plaintiff's CPA's claims are barred by the statute of limitations because they "accrued on or before August 16, 2006, when the loan transaction closed." (**Motion, p. 8, para. 4**). Defendants' devotion of the ensuing paragraphs and citations in support of this contention is entirely frivolous because it is clear from Plaintiff's SAC that her claims for CPA are not grounded on the loan documents, but are based on defendants' manufacturing, signing, notarizing and recording of foreclosure documents and conduct relating to Plaintiff's efforts to obtain a loan modification. (**Ex. 1**, NOD, including the Foreclosure Loss Mitigation Form both dated August, 2012); **Ex. 2**, Letter by Dotty Mitchell dated October 2012, **Ex. 3 and 4**, Beneficiary Declarations dated October 2012; **Ex. 7**, Appointment of Successor Trustee, **Ex. 8** MERS Assignment; **Ex. 9** Assignment & Appointment in Korth matter, and **Ex. 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20** are 2012, 2013 and 2014 documents. It appears that Cenlar's statute of limitations defense is a cookie-cutter defense raised without any regards for the facts of the individual case. *Nieuwejaar v. Bank of America, N.A.*, 2014 U.S. Dist. LEXIS 94573. * 20-21 (W. Dist. Wash. 2014) ("Here, Defendant makes a number of arguments related to Plaintiff's CPA claim: first, that to the extent the claim relies on the origination of the loan, the statute of limitations has expired; second, that the claim is moot because no sale took place, and there is no sale pending; third, "there is nothing improper about loan securitization"; fourth, "the evidence shows that Defendants were authorized to foreclose and properly recorded [sic] documents"; fifth, that Plaintiffs have not presented any evidence of improper fees and charges, and so Plaintiffs cannot prove damages; and sixth, there is no evidence that Defendants recorded any "false" or "deceptive" documents."). In light of Plaintiff's plain allegations and the exhibits attached to her SAC, the statutory of limitations argument/defense contained

RESPONSE TO MOTION OF DEFENDANTS
CENLAR, MERS, JENNIFER DOBRON, AND
NANCY K. MORRIS TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

BARRAZA LAW, PLLC
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863
- 13 -

within Defendants' Motion to Dismiss is undeniably frivolous under FRCP 11. *Stringfellow*, 911 F.2d at 227; *Villamar v. Hersh*, 37 Fed. Appx. 919 (9th Cir. 2002); *Moser v. Bret Harte Union High Sch. Dist.,* 366 F.Supp. 944 (D. Cal. 2005) ("A district court confronted with solid evidence of a pleading's frivolousness may in circumstances that warrant it infer that it was filed for an improper purpose. Sanctions under Rule 11 are not limited to instances in which a pleading as a whole is frivolous, or of a harassing nature. Rather, sanctions may be imposed for improper or unwarranted allegations *even though at least one non-frivolous claim has been pled if an attorney has not conducted a reasonable inquiry under the circumstances of a case*. Monetary sanctions may not be awarded against a represented party for a violation of Rule 11(b)(2)."). The statute of limitations defense reflects counsel's failure to conduct even a cursory read, let alone a reasonable inquiry of Plaintiff's allegations. The instant Motion to Dismiss, considered as a whole, represents frivolity, compelling Plaintiff, as well as the Court, time and resources to address the issues within them.

Next, Defendants argue that Plaintiff's SAC should be dismissed because she has no standing to challenge the "robo-signing" practice (**Motion, pp. 9-10**). This claim misstates Plaintiff's plain allegation that, regardless of whether the deficiencies contained within render these documents invalid [3], the Defendants' act of deliberately placing these documents into the public records to effectuate dual-tracking and to induce default *after* Plaintiff's loan had been

---

3 In *Klem v. Wash. Mut. Bank,* 176 Wn.2d 771, the Supreme Court rejected a similar argument that a particular practice by the trustee company, albeit improper, does not harm the borrower: "Quality suggests these falsely notarized documents are immaterial because the owner received the minimum notice required by law. This no-harm, no-foul argument again reveals a misunderstanding of Washington law and the purpose and importance of the notary's acknowledgment under the law. A signed notarization is the ultimate assurance upon which the whole world is entitled to rely that the proper person signed a document on the stated day and place. Local, interstate, and international transactions involving individuals, banks, and corporations proceed smoothly because all may rely upon the sanctity of the notary's seal. This court does not take lightly the importance of a notary's obligation to verify the signor's identity and the date of signing by having the signature performed in the notary's presence."

RESPONSE TO MOTION OF DEFENDANTS
CENLAR, MERS, JENNIFER DOBRON, AND
NANCY K. MORRIS TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

BARRAZA LAW, PLLC
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 14 -

reset, and in spite of the fact that Plaintiff has been paying every month, is unlawful. More importantly, in addition to her individualized damages, Plaintiff alleges that the public, who must rely on these documents to conduct their business, would be duped by the legal effect feigned by the Defendants. **¶79, 80**. Plaintiff has attached composites of foreclosure documents signed and notarized by Defendants Dobron and Morris to SAC to illustrate that the robotic processing of foreclosure documents by the Defendants result in incompleteness, inaccuracies, and a complete void of accountability.[4] The robotic nature of the Defendants' processing of these documents, coupled with their timing, support Plaintiff's allegation of a "systemic abdication" by defendant NWTS of the duty of good faith in its conduct of nonjudicial foreclosures in the State of Washington. If NWTS had yet to be appointed at the time it transmitted the Notice of Default to Plaintiff, then it cannot add a "trustee's fee" onto the amount needed to cure. If the loan was re-set and Plaintiff is paying under the new terms, then there was no reason for the Appointment of Successor Trustee to be recorded in the public records.

Next, Defendants contend that Plaintiff "cannot allege that Cenlar failed to respond to Plaintiff's Requests for Information" because Cenlar did respond. Defense counsel once again attempted to mislead the Court because, as of the filing of Plaintiff's SAC, none of the Exhibits she pointed to, **Ex. 11, 12, and 13,** addressed Plaintiff's specific inquiry—the nature and extent of attorneys' fees being added to her loan every month— at all. By their contents, **Ex. 11, 12, and 13,** did nothing more than stalling Plaintiff and her counsel. Furthermore, in **Ex. 11, 12 and 13,** Cenlar did not convey to Plaintiff it claim that her requests were duplicative and not

---

4 Defendants' claim that expert testimony is necessary to prove whether signatures made by Dobron and Morris on various documents are made by same Dobron and Morris illustrates that the authenticity of their signatures is an issue of material fact unsuitable to be disposed upon a motion to dismiss or motion for summary judgment.

RESPONSE TO MOTION OF DEFENDANTS
CENLAR, MERS, JENNIFER DOBRON, AND
NANCY K. MORRIS TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

BARRAZA LAW, PLLC
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 15 -

worthy of answers. [5] Finally, defense counsel never even acknowledged Plaintiff's specific allegation that Cenlar did not fully respond to her August 27, 2012 QWR requesting the identity of the current holder, owner, or assignee of her loan.

Plaintiff's claim of damages arising from Cenlar's imposition of ongoing attorneys' fees is painfully obvious. Currently, the amount stands in excess of $17,000.00, excluding interests and penalties. This amount is growing every month and has resulted in Plaintiff's receipt of notices from Cenlar that she is delinquent in her loan and said delinquency will be reported to the credit bureau. **Ex. 16**. Plaintiff cannot effectively dispute the fees if she does not have the explanations and itemization she asks for. The resulting damages are ongoing because by counsel's statement in the Motion to Dismiss, the charged attorneys' fees relate to *this* litigation.  Therefore, defense counsel's assertion that "Plaintiff cannot allege that she suffered actual damages as a result of Cenlar's purported violations" is not only disingenuous but also blatantly frivolous by her own representations to the Court within this Motion.  The RESPA statute specifically outlines the damages available to remedy any violation. The statute provides for actual damages resulting from the violation and any additional damages not to exceed $ 1000.00 in the case of a pattern or practice of noncompliance. See *12 U.S.C. § 2605*. Plaintiff has suffered actual damages and has also made a claim for statutory damages based on Cenlar's pattern and practice of RESPA violations*, i.e.,* failure to respond timely and completely to QWRs, within her own case. Cenlar's claim that it has responded, or is under no obligation to respond to Plaintiff's RESPA claims, simply reinforces the sufficiency of her

---

5 Defense counsel stated: "With respect to the seventh claim, a review of Plaintiff's Notice of Error and Request for Information (Exs. 19 and 20 to Motion for Leave) demonstrate that these communications were substantially similar to her QWR. Accordingly, as explained above, no response was necessary." Motion, p. 11.

RESPONSE TO MOTION OF DEFENDANTS
CENLAR, MERS, JENNIFER DOBRON, AND
NANCY K. MORRIS TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

BARRAZA LAW, PLLC
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 16 -

SAC and dismissal must be denied. *Eclectic Props. East, LLC v. Marcus& Millichap Co.,* 751 F.3d at 995-96.

Defendant Cenlar has chosen not to respond to Plaintiff's NOE and RFI but to assert within this Motion that it is entitled to charge Plaintiff fees being incurred in defense of her lawsuit (**Motion, pp. 12-13).** Where Cenlar simply offers a plausible defense that attorneys' fees are permitted by the loan documents, Cenlar reinforces that Plaintiff's SAC contains allegations of Defendants' wrongdoings is plausible and sufficiently advises Defendants of the nature of the violations; this Motion to Dismiss must be denied. Whether the Deed of Trust allows Cenlar as the loan servicer – a stranger to the loan transaction and agreement – and a non-initiator of the lawsuit, to "recover" attorneys' fees incurred in the defense against Plaintiff's lawsuit, not for breach of contract against Cenlar, a non-party to Plaintiff's loan documents, but for statutory violations and other tort laws, is a matter of law –contractual interpretation– and a matter of fact–the intent of the parties to allow a loan servicer to assess and recover attorney's fees in pending litigation– and not a factor upon which the Court can decide summarily upon a motion to dismiss. *Olympus Ins. Co. v. AON Benfield*, *Inc.,* 711 F.3d 894, 898 (8th Cir. 2013); *Jones v. ALCOA, Inc*., 339 F.3d 359 (5th Cir. 2003) (Even for purposes of a motion to dismiss, a court need not accept conclusory statements, particularly where they concern the legal effect of an allegation or involve a question of law normally reserved for the court, such as the interpretation of an implied term in an employment contract); *Dawson v. General Motors Corp*., 977 F.2d 369 (7th Cir. 1992) ("If the language of an alleged contract is ambiguous regarding the parties' intent, the interpretation of the language is a question of fact which a [court] cannot properly determine on a motion to dismiss.")

While it can be said that Cenlar's decision not to respond directly to Plaintiff's QWR, NOE and RFI but to do so by way of a motion to dismiss is arguably carried out in an effort to

RESPONSE TO MOTION OF DEFENDANTS
CENLAR, MERS, JENNIFER DOBRON, AND
NANCY K. MORRIS TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

BARRAZA LAW, PLLC
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 17 -

"churn" out more attorneys' fees, which Plaintiff contends Cenlar has no legal right to recover, constitutes a violation of the good faith and fair dealing covenant implied in every contract, in particular, the Permanent Loan Modification Agreement in which the terms of the original loan were re-established as conclusive of Plaintiff's obligations going forward. Under Washington law, there is implied in every contract an duty of good faith and fair dealing that –"obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Rekhter v. Dep't of Soc. & Health Servs.,* 180 Wn.2d 102, 323 P.3d 1036, 1041 (Wash. 2014) (*en banc*) (*quoting Badgett v. Sec. State Bank*, 116 Wn.2d 563, 807 P.2d 356, 360 (Wash. 1991)). Plaintiff has the rightful expectation that the terms of the Permanent Loan Modification Agreement, which she has gone through incredible difficulty to obtain, would be honored, meaning, no surprises, like the ongoing attorneys' fees that Cenlar insists she owes.

Cenlar cites to paragraph 26 of the DOT for its authority to impose attorneys' fees upon Plaintiff. The provision states verbatim: "Lender shall be entitled to *recover* its reasonable attorneys' fees and costs *in any action or proceeding to construe or enforce any term of this Security Instrument*" (emphasis added) **Ex. 15** of SAC. This language requires actual "recovery" on the part of the Lender and not to add and collect attorneys' fee before recovery is had. Further, Defendants' action of initiating nonjudicial foreclosure under *RCW 61.24* instead of *RCW 61.12*, indicates a waiver of the right to recover on the Mortgage Note for which attorneys' fees are recoverable. Plaintiff has no contractual relation with Cenlar, Dobron, or Morris, that gives rise to their entitlement to recover attorneys' fees from her based on the lawsuit she has brought. Most importantly, dense counsel left out the fact that Cenlar misrepresented to Plaintiff that the fees were authorized or mandated by "Washington Law." Thus, defense counsel's contorted argument that Cenlar is entitled to impose attorneys' fees

RESPONSE TO MOTION OF DEFENDANTS
CENLAR, MERS, JENNIFER DOBRON, AND
NANCY K. MORRIS TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

BARRAZA LAW, PLLC
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 18 -

based on paragraph 26 of the Deed of Trust is nothing more than another dishonest attempt to divert the Court's attention.

Defendants' attack on Plaintiff's cause of action for the tort of Outrage turns on mere conjecture about how Plaintiff should be affected by their conduct. Law makers and regulators have deemed the Defendants' practice of dual-tracking sufficiently outrageous and damaging to the public to warrant the enactment of new laws. Whether Defendants' conduct of stringing a borrower along through the physically arduous and emotionally draining process of loan modification, while taking steps to put her right back on the default and foreclosure track is extreme and outrageous conduct is a question of fact for the jury. Likewise, whether Plaintiff 's anguish resulting from charges of attorneys' fees shown in her monthly mortgage statement and fear of losing her home based on Cenlar's declaration of the amount owed and delinquent status  are more than mere insults, indignities or annoyance, is a question of fact for the jury. Therefore, Defendants' self-serving position that their conduct constitutes no more than an accidental hit and run without any damage is the surest sign that Plaintiff's SAC has merit and must be tested out in open court, before a jury.  *Robel v. Roundup Corp*., 148 Wn.2d 35, 59 P.3d 611 (2002) (The three elements of the tort of outrage are fact questions for the jury and the trial court was wrong to determine all three elements as a matter of law. Reversal was warranted because "reasonable minds could not differ on whether the conduct was so extreme as to result in liability"); *Jane Doe v. The Corp. of the President of the Church of Jesus Christ of Latter-Day Saints,* 141 Wn.App. 407, 167 P.3d 1193 (2007) ("Specially, in deciding whether the question of outrage should go to the jury, the trial court's role is to make an initial determination as to whether the conduct may reasonably be regarded as so 'extreme and outrageous' as to warrant a factual determination by the jury. 'It is only where the evidence is

RESPONSE TO MOTION OF DEFENDANTS
CENLAR, MERS, JENNIFER DOBRON, AND
NANCY K. MORRIS TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

BARRAZA LAW, PLLC
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 19 -

such that reasonable minds cannot differ that the trial court is justified in granting defendant's motion to dismiss.'").

### Merits of Plaintiff's Claims for Violations of the DTA

Judge Jones' Order in *Knecht v. Fidelity, supra*, provides the analysis for claims that are extremely similar, if not identical to Plaintiff's claims, because of the pattern and practice engaged in by loan servicers and their agents foreclosing trustees. Like Plaintiff's case, the original lender in *Knecht* is no longer in business. The defendants recorded a MERS assignment as a predicate upon which the appointment of successor trustee rested. On the issue of MERS assignments being recorded in the public records, the *Knecht* court held that such an assignment is invalid to effectuate the intended transfer from MERS to Deutsche Bank. *Id.*, at *6-8. Like *Knecht,* the original Lender in Plaintiff case, TBW, is no longer around. Thus, it would be physically and legally impossible for TBW to authorize MERS to act in 2012 as its nominee, for the purpose of executing the Assignment of Deed of Trust at issue here. Like *Knecht,* MERS has no interest in Plaintiff's loan, and did not even execute the MERS Assignment; defendant Dobron, employed by Cenlar, did that.

The *Knecht* court reminds that under *Bain v. Metro. Mortg. Grp., Inc.,* 175 Wn.2d 83, 285 P.3d 34 (2012), where the original lender has sold the loan, the purchaser would need to establish ownership of that loan, either by demonstrating that it actually held the promissory note or by documenting the chain of transactions. Citing to *Bain*, 285 P.3d at 47-48. The *Knecht* court held that the MERS assignment failed as a matter of law because it purported to convey something that MERS never possessed. Like *Knecht,* Plaintiff has been told that Freddie Mac is now the owner of the loan, but neither proof of that transfer, or proof of the chain of transactions, has been offered by the purchaser, or the Defendants, even after this litigation was filed. Like *Knecht*, where the question of why Deutsche Bank, despite its claim

RESPONSE TO MOTION OF DEFENDANTS
CENLAR, MERS, JENNIFER DOBRON, AND
NANCY K. MORRIS TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

BARRAZA LAW, PLLC
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 20 -

of ownership, would need to record an assignment of deed of trust arises, in this case, where Freddie Mac purported to acquire Plaintiff's loan before 2012, the question of why Cenlar would need to record the MERS Assignment in 2012 arises. Upon positive proof that Freddie Mac acquired or purchased the Plaintiff's loan shortly after closing and before TBW was shut down, Freddie Mac would be standing in the shoes of TBW and thus constitute the Lender, Creditor, and Note Holder.

Concerning the defendants' contention that the beneficiary declaration is proof sufficient under *RCW 61.24030(7)(a)*, to exercise of the power of sale and enable the appointment of successor trustee, the *Knecht* court held that where the beneficiary declaration fails to establish that the declaration was executed by the "beneficiary" as the statute requires, beneficiary status and authority becomes an issue for the trier of fact to decide. In this case, both of Cenlar's Beneficiary Declarations declare that Cenlar is the Note Holder and Beneficiary. However, Plaintiff has asserted that based on the loan documents and Freddie Mac's Guidelines, some other entity holds her Note, and not Cenlar as the loan servicer. Therefore, Cenlar's Beneficiary status, rested on either Note Holder status, or the MERS Assignment, fails under the *Knecht*'s analysis. "A Deed of Trust claim arises 'when an unlawful beneficiary appoints a successor trustee." *Knecht, supra.*, citing to *Walker*, 309 P.3d at 721. Like *Knecht*, Plaintiff has sufficiently pleaded a claim under the DTA because the MERS Assignment failed to vest any authority in Cenlar, and Cenlar, an unlawful beneficiary, failed in its quest to appoint NWTS as successor trustee.

### Merits of Plaintiff's Claims under the CPA.

The *Knecht* court held that the borrower has triable CPA claims based on the fact that MERS purported to transfer interests it didn't have, and that Deutsche Bank's appointment of Fidelity as trustee is unfair or deceptive "if the trier of fact concludes that DB had no authority

RESPONSE TO MOTION OF DEFENDANTS
CENLAR, MERS, JENNIFER DOBRON, AND
NANCY K. MORRIS TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

BARRAZA LAW, PLLC
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 21 -

to make the appointment." *Knecht, supra*, citing to *Bain,* for the holding that MERS's

deceptive conduct "presumptively" meets the public interest requirement of a CPA claim); and

*Bavand,* for the holding that action based on unlawful beneficiary's unlawful appointment of

successor trustee was sufficient to withstand summary judgment. Like *Knecht,* Plaintiff has

alleged the same violations discussed in *Bain*, as well as other violations under the CPA.

Plaintiff attacks the validity of MERS Assignment to vest Cenlar with the statutory authority to

appoint NWTS as successor trustee. Plaintiff questions the validity of Cenlar's Note Holder

status, and she questions why these documents were recorded at a time where there were no

reasons for any foreclosure activity. Plaintiff cited *Bain v. Metro. Mortg. Grp., Inc.,* 175

Wn.2d 83, 285 P.3d 34 (2012), for the holding that MERS' involvement as a

nominee/beneficiary in an enormous number of transaction has the capacity to deceive and thus

meets the first two elements– capacity to deceive and public impact–of the *Hangman t*est. [6]

    As to the Defendants' contention that Plaintiff "cannot" plead damages and therefore

her SAC must be dismissed under Rule 12(b), said contention is without merit. A cursory

review of Plaintiff's SAC reveals numerous paragraphs where Plaintiff affirmatively alleges

that the misrepresentation of Cenlar's status as beneficiary of her Deed of Trust is part and

parcel of the chain of events that contributed to her delinquency status and jeopardize her home

once again where her damages range from wrongful inflation of the amounts she is legally

asked to pay within the loan, to time loss, resources spent, mental anguish and fear, **¶58, 63,

64, 70, 75, 77-82, 102**. [7]. In relation to the CPA, Washington courts have held that monetary

6 Defense counsel has misrepresented the ruling of *Bain* as being limited to "situations where MERS
represents to a borrower that it is the beneficiary of the Deed of Trust in its own rights, i.e., that it is the note
holder, rather than a mere nominee for the note holder, and takes actions as note holder without authority"
when there are no such no limitations or discussions within the decision.175 Wn.2d at 995 P.3d at 100-101.
7  Rule 11(b) of the Federal Rules of Civil Procedure provides that "[b]y presenting to the court a pleading,
written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or
unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after

RESPONSE TO MOTION OF DEFENDANTS
CENLAR, MERS, JENNIFER DOBRON, AND
NANCY K. MORRIS TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

BARRAZA LAW, PLLC
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 22 -

damages need not be proved, and mere injury, including injury to credit, suffices. *Nieuwejaar* at \*23-26. In *Knecht*, the Court is clear what damages a borrower likely to suffer even without a trustee's sale:

> Mr. Knecht has evidence of damages caused by MERS's and DB's conduct. Mr. Knecht did what many homeowners faced with the prospect of foreclosure would do: he investigated. His evidence establishes that he spent substantial time on that investigation, and that suffices to establish a CPA injury. *Walker*, 308 P.3d at 727 ("Investigative expenses, taking time off from work, travel expenses, and attorney fees are sufficient to establish injury under the CPA."). *DB and MERS insist that the cause of Mr. Knecht's injury was his default, not their wrongdoing, but they are mistaken.* If a jury concludes that DB had no authority to foreclose, then a trier of fact could infer that the cause of his need to investigate was DB's wrongfully-initiated foreclosure proceedings. Mr. Knecht already knew he was in default on his loan; he appears to have never disputed that. *As to MERS, a trier of fact could conclude that Mr. Knecht needed to investigate, at least in part, because of MERS's attempt to assign rights in the deed of trust and note to DB.* Defendants assert that the purpose of the MERS assignment is to "provide notice to third parties of the security interest, not to provide notice to the borrower." Whatever the purpose of the assignment, it is a recorded document visible to the borrower. It has the capacity to deceive the borrower into believing that a valid transfer of rights has occurred. It also has the capacity to deceive the borrower into believing that the assignee rests its claim to lawful beneficiary status on the assignment. And even if it lacks the capacity to deceive, it may nonetheless be an "unfair" act within the scope of the CPA.

*Id., internal citations omitted, emphasis supplied.* Like *Knecht,* Plaintiff's claim that because neither MERS nor Cenlar was eligible to act as Beneficiary, she has have to expend considerable efforts to investigate, is one to be determined by a fact-finder and her claims arising under both the DTA and the CPA are triable issues. *Id.* at 25.

---

an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;. . . [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. . . ." *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc*., 892 F.2d 802, 811 (9th Cir. 1989).

RESPONSE TO MOTION OF DEFENDANTS
CENLAR, MERS, JENNIFER DOBRON, AND
NANCY K. MORRIS TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

BARRAZA LAW, PLLC
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 23 -

As contained within Plaintiff's SAC, Plaintiff has suffered more than injury, or emotional distress a result of the Defendants' conduct, her damages are real and measurable; all fees and costs based on the foreclosure that Defendants initiated are included within the amount of Plaintiff's loan upon which she has been making payments. These, as well as statutory damages, treble damages, attorneys' fees and costs, are all recoverable by Plaintiff.

### III.  CONCLUSION

Based on the foregoing citations of facts, legal authorities and well-grounded arguments, Plaintiff respectfully requests the Court to deny the Motion to Dismiss, assess defense counsel conduct pursuant to FRCP 11 and impose appropriate sanctions.

Respectfully submitted this 17th day of August, 2014

BARRAZA LAW, PLLC

_/s/ Vicente Omar Barraza_
Vicente Omar Barraza, WSBA # 43589
John R. Laris, WSBA # 44406
GRAND CENTRAL LAW, PLLC

_/s/ Ha Thu Dao_
Ha Thu Dao, WSBA # 21793
Attorney for Plaintiff Leticia Lucero
787 Maynard Ave S, Seattle WA 98104
727-269-9334/Fax 727-264-2447
youremylawyer@gmail.com

RESPONSE TO MOTION OF DEFENDANTS
CENLAR, MERS, JENNIFER DOBRON, AND
NANCY K. MORRIS TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

BARRAZA LAW, PLLC
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 24 -