## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | | |
|---|---|---|
| LETICIA LUCERO, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:13-cv-00602 RSL |
| | ) | |
| v. | ) | |
| | ) | **DEFENDANTS NORTHWEST** |
| CENLAR FSB and BAYVIEW LOAN | ) | **TRUSTEE SERVICES, INC. AND** |
| SERVICING, LLC, MORTGAGE | ) | **RCO LEGAL, P.S.'S MOTION FOR** |
| ELECTRONIC REGISTRATION SYSTEMS, | ) | **SUMMARY JUDGMENT** |
| INC., NORTHWEST TRUSTEE SERVICES, | ) | **PURSUANT TO FED. R. CIV. P. 56** |
| INC., ROUTH CRABTREE OLSEN, P.S., aka | ) | |
| RCO LEGAL, P.S., JENNIFER DOBRON, | ) | **NOTED FOR: October 24, 2014** |
| individually and in her capacity as corporate | ) | |
| officer and/or employee of CENLAR FSB, | ) | |
| NANCY K. MORRIS, individually and her | ) | |
| capacity as notary public and/or employee of | ) | |
| CENLAR, FSB, | ) | |
| | ) | |
| Defendants. | ) | |

## I.     RELIEF REQUESTED

Defendants Northwest Trustee Services, Inc. ("NWTS") and RCO Legal, P.S. ("RCO") respectfully request an order granting summary judgment in favor of NWTS and RCO pursuant to Fed. R. Civ. P. 56 on the grounds that the claims alleged against NWTS and RCO in Plaintiff's Second Amended Complaint ("SAC") fail as a matter of law.

## II.     INTRODUCTION

The SAC alleged three causes of action against NWTS: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"); (2) failure to materially comply with Washington's Deed of Trust Act ("DTA"), RCW 61.24. *et seq.*; and (3) violation of the Consumer Protection Act

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:     425.458.2131

("CPA").[1] As to RCO, the SAC alleges: (1) failure to materially comply with the DTA and (2) violation of the CPA.[2]

## III.     STATEMENT OF FACTS

### FACTS RELATING TO NWTS

**A. Note and Deed of Trust.**

On or about August 16, 2006, Plaintiff Leticia Lucero and co-borrower Richard A. Glidden received a loan in the amount of $391,000.00. *See* ECF No. 78 at ¶¶4 and 6, Ex. 15 (Note and Deed of Trust). The loan was evidenced by a promissory note ("Note") in favor of Taylor, Bean & Whitaker Mortgage Corp. and was signed by Plaintiff. *Id.*

To secure repayment of the Note, Plaintiff Leticia Lucero and co-borrower Richard A. Glidden granted to Mortgage Electronic Registration Systems ("MERS") solely as nominee for the original lender, Taylor, Bean & Whitaker Mortgage Corp., and its successors and assigns, a deed of trust ("Deed of Trust"). The Deed of Trust encumbers the real property commonly known as 1003 159th Place Southeast, Bellevue, Washington 98008 (hereinafter the "Property"). The Deed of Trust was recorded on August 18, 2006, under King County Auditor's File No. 20060818001673. *Id.*

All parties to the Deed of Trust agreed that Taylor, Bean & Whitaker Mortgage Corp. was the lender, and that MERS, as nominee for Taylor, Bean & Whitaker Mortgage Corp., would be the beneficiary as that term is defined in the Deed of Trust. *Id.* The Deed of Trust names Old Republic Title, LTD as the Trustee, and grants the Trustee the power of sale in the event of a default. *Id.*, Ex. 15 (Deed of Trust) at ¶22.

**B. Plaintiff's admitted Default.**

---

[1] Plaintiff's SAC alleges claims under the Real Estate Settlement Procedures Act ("RESPA"), Fraud, TILA Violations, Breach of Good Faith and Fair Dealing Implied in the Loan Modification Agreement, and Outrage. However, these claims are not directed toward NWTS or RCO. *See* ECF No. 78, at 21-24 (RESPA Violations), 31-34 (Fraud), 34 (RESPA Violation), 34-35 (TILA Violation), 35-37 (Breach of Good Faith and Fair Dealing Implied in the Loan Modification Agreement), and 37-39 (Outrage).

[2] Plaintiff's claim under the FDCPA against RCO was previously dismissed. *See* ECF No. 81.

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:     425.458.2131

In 2010, Plaintiff admittedly defaulted when she "fell behind with the payments on her home." ECF No. 78 at ¶ 5; *see also* Deposition of Leticia Lucero ("Lucero Dep."), at 74:22-75:2; 78:6-79:7.

**C. Nonjudicial Foreclosure Referral.**

On August 25, 2012, Cenlar, FSB ("Cenlar"), via a secure electronic communications platform, requested that NWTS initiate an action enforcing the deed of trust. This electronic referral requested that NWTS enforce the deed of trust in the name of Cenlar and included relevant information such as the name of the borrower, the borrower's social security number, the date of first default, the total amount of default and debt (including current interest rate), the property address and the loan number. Declaration of Jeff Stenman ("Stenman Decl."), at ¶ 4.

With the referral information, NWTS also received copies of certain relevant loan documents from Cenlar, including the Note and Deed of Trust bearing the signature of Leticia Lucero as well as a loss mitigation declaration ("Loss Mitigation Declaration") executed by Cenlar pursuant to RCW 61.24.031. Stenman Decl., ¶ 5, Exhibits 1, 2, and 3 (True and correct copies of the Note, Deed of Trust, and Loss Mitigation Declaration, as received by NWTS).

On August 27, 2012, NWTS, as agent for Cenlar and consistent with the specific provisions of RCW 61.24.031(a)(a), caused a notice of default ("Notice of Default") to be mailed to and posted at the Property. Stenman Decl., ¶ 6, Ex. 4.

The Notice of Default included a fee, itemized as "trustee fee" as authorized by statute under RCW 61.24.080, in the amount of $542.50, the amount NWTS charged for its work relating to its issuance of the Notice of Default. Stenman Decl., ¶ 7. The Notice of Default states, "[t]he sums stated above are estimates only. Before attempting to reinstate the loan, call us at 425-586-1900 to learn the exact amounts of monetary defaults and actions required to cure possible other defaults." Stenman Decl., Ex. 4; Stenman Deposition, P. 53: 19-22.

**D. NWTS Receives Notification that Plaintiff Elected Mediation Under the Foreclosure Fairness Act.**

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

On or about September 6, 2012, NWTS received notification from the Washington State Department of Commerce that Plaintiff had elected mediation pursuant to the Foreclosure Fairness Act ("FFA").  Stenman Decl., ¶ 8.

NWTS does not participate in FFA mediations, does not retain counsel for mediation, and in this case did not participate in the FFA mediation or retain counsel for mediation.   Stenman Decl., ¶ 9.

It is NWTS' practice that when NWTS is informed that a borrower has elected mediation under the FFA, NWTS places a "mediation hold" on the foreclosure file. Here, NWTS placed the subject foreclosure file on a "mediation hold" on September 7, 2013. Stenman Decl., ¶ 10.

If a "mediation hold" is placed on a foreclosure file where no notice of sale has been recorded, NWTS will not proceed with recording, mailing, or posting a notice of trustee's sale as prohibited by RCW 61.24.163(16)(a). Stenman Decl., ¶ 11.

During a mediation hold, NWTS will often communicate with the beneficiary or its mediation counsel to assist in insuring that the mediation is completed in a timely fashion and monitor the action for further development or requirements. In this case, NWTS communicated with the Beneficiary's legal counsel, RCO Legal, P.S. ("RCO"), to monitor the status of the mediation action. Stenman Decl., ¶ 12.

**E.  NWTS provides certain template documents to Cenlar for review and execution.**

In NWTS and Cenlar's course of dealing relating to NWTS' work conducting nonjudicial foreclosures in Washington, NWTS provides certain documents in template form to Cenlar for Cenlar's review and execution.  These documents can include form assignments of security agreements, form appointments, or form declarations, the content of which is dictated by statute. Where NWTS provides a template document to Cenlar for review and execution, and Cenlar wishes for changes to be made, Cenlar will return the document to NWTS and request NWTS make requested changes to the form. NWTS understands Cenlar to have document review and execution procedures, but does not participate in Cenlar's review and execution of documents.

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

Nor is NWTS privy to Cenlar's document review and execution procedures. Rather, NWTS provides documents in the statutory form so that Cenlar may review and execute the same in accordance with the laws of the State of Washington. Stenman Decl., ¶ 13.

On September 26, 2012, NWTS provided directly to Cenlar a template beneficiary declaration. The template included the subject loan number, the Property address, and the statutorily provided declaration language as set forth in RCW 61.24.030(7)(a). NWTS did not receive any request from Cenlar to make any changes to the beneficiary declaration template document, and NWTS had no involvement in Cenlar's review or execution of the beneficiary declaration. Stenman Decl., ¶ 14.

On September 26, 2012, NWTS also provided directly to Cenlar a template appointment of successor trustee document. The template included (1) NWTS' address and contact information for return after recording, (2) NWTS' foreclosure file reference number, (3) information regarding the original parties to the Deed of Trust, (4) the recording date and information for the Deed of Trust, (5) verbiage to effectuate the appointment of NWTS as successor trustee, (6) a blank signature block, and (7) a blank notary acknowledgment. NWTS did not receive any request from Cenlar to make any changes to the appointment of successor trustee template document, and NWTS had no involvement in Cenlar's review or execution of the appointment of successor trustee. Stenman Decl., ¶ 15.

On September 26, 2012, NWTS also provided directly to Cenlar a template assignment of deed of trust document. The template included (1) Cenlar's address and contact information for return after recording, (2) NWTS' foreclosure file reference number and the borrowers' names, (3) the MERS MIN number assigned at origination, (4) language to effectuate an assignment of the deed of trust to Cenlar, (5) a blank signature block, and (6) blank notary acknowledgment. NWTS did not receive any request from Cenlar to make any changes to the assignment of deed of trust template document, and NWTS had no involvement in Cenlar's review or execution of the assignment of deed of trust. Stenman Decl., ¶ 16.

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

1

**F. NWTS requests information and prepares a reinstatement and payoff quote.**

2

3      When a loan is referred to mediation under the FFA, the beneficiary or its mediation

4  counsel may request NWTS prepare a reinstatement and/or payoff quote for the beneficiary to

5  submit as part of its required mediation disclosures.  In many cases, the trustee or foreclosing

6  agent of a beneficiary is in the best position to produce these quotes as the trustee or foreclosing

7  agent has the most current information on fees, costs and expenses that may have accrued against

8  the loan. In this case, RCO, on behalf of Cenlar, requested NWTS, as the foreclosing agent,

prepare a reinstatement and payoff quote for mediation purposes. Stenman Decl., ¶ 17.

9

10     On October 8, 2012, NWTS requested from Cenlar the financial information regarding

the loan necessary to prepare a reinstatement and payoff quote, to which the current costs and

11  fees associated with the foreclosure would be added. Stenman Decl., ¶ 18.

12

13     On October 11, 2012, NWTS provided to RCO a reinstatement and payoff quote based

on the financial information it received from Cenlar. Stenman Decl., ¶ 19.

14

**G. NWTS receives Beneficiary Declaration from Cenlar.**

15

16     On October 9, 2012, NWTS received from Cenlar the executed beneficiary declaration

("Beneficiary Declaration") dated October 5, 2012, that averred to Cenlar's status as the holder

17  of the subject Note. Stenman, Decl., ¶ 20, Ex. 5 (Beneficiary Declaration stating "Cenlar FSB is

18  the holder of the promissory note or other obligation evidencing the above-referenced loan.").

19  Under RCW 61.24.030(7), the Beneficiary Declaration is to be received by the trustee after the

20  issuance of the Notice of Default but before the recording of the Notice of Trustee's Sale.

21     On October 23, 2012, without request or prompting, NWTS received a second

22  beneficiary declaration from Cenlar. The declaration, dated October 16, 2012 and signed under

23  the penalty of perjury, also attested that "Cenlar FSB is the holder of the promissory note or

24  other obligation evidencing the above-referenced loan."   The Declarations were in all relevant

25  ways consistent with each other in that both asserted that Cenlar, FSB was the holder of the

26  promissory note.  Stenman, Decl., ¶ 21, Ex. 6.

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

**H. NWTS Receives Notification Plaintiff Entered into Trial Loan Modification.**

On October 11, 2012, between the receipt of the first and second Beneficiary Declarations and before NWTS had taken any action beyond the mailing and posting of the Notice of Default, NWTS received communication from Cenlar that the borrower had entered a trial loan modification and the foreclosure should be placed on a loss mitigation hold. Stenman, Decl., ¶ 22.

Where a foreclosure file is placed on a loss mitigation hold, NWTS will not proceed with recording, mailing, or posting a notice of trustee's sale. Stenman, Decl., ¶ 23.

**I. NWTS Receives and sends for recording the Appointment of Successor Trustee and Assignment of Deed of Trust.**

On December 5, 2012, NWTS received the executed appointment of successor trustee and assignment of deed of trust from Cenlar and sent both documents out for recording. Stenman, Decl., ¶ 24.

The Assignment of Deed of Trust, effective upon execution (November 21, 2012), was recorded on December 6, 2012, under King County Auditor's File No. 0121206002349. Stenman, Decl., ¶ 25, Ex. 7.

The Appointment of Successor Trustee became effective upon recording on December 6, 2012, recorded under King County Auditor's File No. 20121206002350. Stenman, Decl., ¶ 26, Ex. 8.

The effect of the recording of the Appointment of Successor Trustee is to substitute in a new trustee who then becomes responsible for reconveyance in the event of satisfaction or enforcement in the event of default. Under RCW 61.24.010, a Beneficiary may appoint a new trustee at any time.

**J. Cenlar instructs NWTS to close and bill its file.**

On or about February 7, 2013, before such time as NWTS had taken any action beyond the private mailing and posting of the Notice of Default, Cenlar advised NWTS the loan had

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

been modified and NWTS should close its foreclosure file. Stenman, Decl., ¶ 27.

On February 12, 2013, NWTS closed and billed its file and took no further action. Stenman, Decl., ¶ 28.

At no time has NWTS ever furnished any information regarding Ms. Lucero to any credit reporting agency.  Stenman, Decl., ¶ 29.

NWTS never prepared, recorded, mailed, or posted a notice of trustee's sale relating to the Property. NWTS never publicized Plaintiff's default, the fact that it had received a referral to initiate a nonjudicial proceeding against the Property, or that a trustee's sale would or may be scheduled on any website or other public forum.  Stenman, Decl., ¶ 30.

**K.  NWTS hires RCO as counsel.**

NWTS never retained RCO as counsel in any capacity or for any purpose relating to the subject loan, foreclosure, or Property at any time while NWTS' foreclosure was open and active. Stenman, Decl., ¶ 31.

NWTS retained RCO as counsel for purposes of representing NWTS in the subject lawsuit only after Plaintiff filed her first Amended Complaint in October 2013. Stenman, Decl., ¶ 32.

**FACTS RELATING TO RCO**

RCO and NWTS are located in the same office building. *See* Declaration of Lance Olsen ("Olsen Decl."), ¶ 4; *see also* Stenman Decl., ¶ 33; *see also* Deposition of Jeff Stenman ("Stenman Deposition"), P. 18:18-25. However, they occupy different floors and office space. *Id.* They operate under separate business licenses.  Olsen Decl., ¶ 4; *see also* Stenman Decl., ¶ 33.

Although among the owners of RCO and NWTS there is  one shareholder in common between the two entities, RCO neither owns nor operates NWTS, nor vice versa.  Olsen Decl., ¶ 5; *see also* Stenman Decl., ¶ 34.

On or about September 10, 2012, Cenlar retained RCO, at a time when it represented no other party in any transaction involving the Plaintiff, to represent its interests in the mediation

MOTION FOR SUMMARY JUDGMENT BY NWTS
AND RCO - PAGE 8 OF 39
CASE NO. 2:13-CV-00602 RSL

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

pursuant to the Foreclosure Fairness Act ("FFA") elected by the now Plaintiff, Leticia Lucero. Olsen Decl., ¶ 6.

As Cenlar's mediation counsel, RCO provided to the mediator and to Plaintiff's counsel, Mr. Barraza, the document disclosures required by a beneficiary under the FFA. Olsen Decl., ¶ 7. These documents included a copy of the beneficiary declaration ("Beneficiary Declaration"), dated October 5, 2012. Olsen Decl., ¶ 8; *see also* Stenman Decl., Ex. 5.

RCO only obtained a copy of the executed Beneficiary Declaration dated October 5, 2012 that was provided to the mediation and Plaintiff's mediation counsel from Cenlar. RCO did not prepare the beneficiary declaration provided to Cenlar and had no involvement in Cenlar's review or execution of the Beneficiary Declaration dated October 5, 2012. Olsen Decl., ¶ 9.

RCO's representation of Cenlar in the FFA mediation ended on February 28, 2013. Olsen Decl., ¶ 11.

Cenlar and Bayview Loan Servicing, LLC ("Bayview") retained RCO as counsel in the underlying lawsuit on or about April 22, 2013. Olsen Decl., ¶ 12.

Through counsel, RCO, Cenlar and Bayview moved for dismissal of Plaintiff's Complaint. *See* ECF No. 9.

Attached to Cenlar and Bayview's motion to dismiss was a copy of the second beneficiary declaration ("Second Beneficiary Declaration") executed October 16, 2012. ECF No. 9-4.

RCO obtained the copy of the executed Beneficiary Declaration dated October 16, 2012 from NWTS. Olsen Decl., ¶ 13.

RCO had no involvement in Cenlar's review or execution of the Beneficiary Declaration dated October 16, 2012. Olsen Decl., ¶ 14.

RCO did not prepare the form template appointment of successor trustee document or form template assignment of deed of trust document provided to Cenlar and had no involvement in Cenlar's review or execution of either document. Olsen Decl., ¶ 15.

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

NWTS retained RCO as counsel in the underlying lawsuit after Plaintiff filed the First Amended Complaint on October 30, 2013. Olsen Decl., ¶ 16.

While RCO represents NWTS and many other clients in other lawsuits and transactions, RCO does not serve as general counsel for NWTS or any other party. Further, at no time prior to Plaintiff filing her First Amended Complaint did RCO have an attorney client relationship with NWTS as it relates to the subject loan and Property. Olsen Decl., ¶ 17.

## IV.    ISSUE STATEMENT

1. Whether NWTS is entitled to summary judgment in its favor on Plaintiff's claims for (1) violation of the FDCPA; (2) failure to materially comply with Washington's DTA, RCW61.24. et seq.; and (3) violation of the CPA as set forth in the SAC.
2. Whether RCO is entitled to summary judgment in its favor on Plaintiff's claims for (1) failure to materially comply with Washington's DTA, RCW 61.24. et seq.; and (2) violation of the CPA as set forth in the SAC.

## V.    EVIDENCE RELIED UPON

This motion is based upon: (1) Pleadings and documents filed with the Court and Exhibits attached thereto; (2) the Declaration of Jeff Stenman and the exhibits attached thereto; (3) the Declaration of Lance Olsen and the exhibits attached thereto; (4) the Declaration of Heidi Buck Morrison; (5) Deposition Testimony of Leticia Lucero and Jeff Stenman; and this motion and memorandum of law in support thereof.

## VI.    AUTHORITY & ARGUMENT

### A.  LEGAL STANDARD UNDER FED.  R. CIV. P. 56.

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265(1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When a properly supported motion for summary judgment has been presented, the adverse party "may not rely merely on allegations or denials in its own

MOTION FOR SUMMARY JUDGMENT BY NWTS
AND RCO - PAGE 10 OF 39
CASE NO. 2:13-CV-00602 RSL

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

pleadings." *Id.* at 248, 106 S.Ct. 2505. Rather, the non-moving party must set forth specific facts demonstrating the existence of a genuine issue for trial. *Id.* at 256, 106 S.Ct. 250

In this case, the evidence does not show a genuine disputed issue of fact that would be sufficient to overcome summary judgment and advance this case to trial. Consequently, NWTS and RCO should receive judgment in their favor on the claims made in Plaintiff's SAC.

**B. PLAINTIFF'S FDCPA CLAIM FAILS AS A MATTER OF LAW AS TO NWTS.[3]**

  1. The FDCPA claim relating to the Notice of Default is time-barred.

"A statute of limitation is defined as the action of the State in determining that, after the lapse of a specified time, a claim shall not be enforceable in a judicial proceeding." *Watters v. Doud*, 92 Wn.2d 317, 321, 596 P.2d 280 (1979). A statute of limitations is designed to give an injured party a reasonable length of time in which to assert a claim, after which the statute seeks to achieve repose for the potential defendant. *See Tyson v. Tyson*, 107 Wn.2d 72, 75-76, 727 P.2d 226 (1986). A cause of action accrues when a party has a right to apply to a court for relief. *Malnar v. Carlson*, 128 Wn.2d 521, 529, 910 P.2d 455 (1996). Here, Plaintiff failed to timely bring her cause of action for FDCPA violation relating to issuance of the Notice of Default.

An action to enforce any liability under the FDCPA may only be brought within one year from the date on which the violation occurs. U.S.C. § 1692 *et seq*. No liability arises under the FDCPA for communications made more than a year before the lawsuit is filed. *Pittman v. JJ Mac Intyre Co.*, 969 F.Supp. 609 (D. Nev. 1007).

Here, Plaintiff alleges "NWTS' act of issuing and transmitting the Notice of Default to Plaintiff when it did not have the proper statutory authority of a successor trustee violates the FDCPA, [15 U.S.C. 1692f]." ECF No. 78 at ¶ 66. Plaintiff also alleges "NWTS violated the FDCPA for disclosing to Plaintiff [in the Notice of Default] that Freddie Mac is the owner of the promissory note while taking steps to initiate foreclosure including drafting and causing to be transmitted and recorded documents representing MERS as beneficiary who had beneficial

---

[3] Plaintiff's FDCPA claim against RCO was previously dismissed. ECF No. 81.

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax: 425.458.2131

interests to assign to Cenlar, whom NWTS has actual knowledge to be a mere loan servicer." ECF No. 78 at ¶ 74.

Plaintiff's FDCPA claims arising from allegations regarding the Notice of Default are time-barred. There is no dispute NWTS issued and transmitted the Notice of Default on August 27, 2012. *See* ECF No. 78, ¶ 14 and Stenman Decl., Ex. 1 (Notice of). Further, there is no dispute Plaintiff filed the FAC wherein she first alleged an FDCPA violation against NWTS on October 30, 2013, more than one year after the issuance of the Notice of Default. *See* ECF No. 34. Accordingly, the claim is time-barred.

      2.  <u>As a matter of law and notwithstanding the statute of limitations, NWTS did not violate 15 U.S.C. § 1692e.</u>

Plaintiff asserts that NWTS violated 15 U.S.C. §1692e(2)(A)[4] of the FDCPA because the defendants "collectively prepared, signed, notarized, and recorded the Notice of Default[5], Assignment of Deed of Trust and Beneficiary Declarations, in order to convince Plaintiff and the public that Cenlar has acquired beneficial interest and/or ownership of her mortgage loan when Cenlar's involvement was limited to that of a default servicer". ECF No. 78, ¶ 73. Plaintiff also alleges "NWTS violated the FDCPA for disclosing to Plaintiff [in the Notice of Default] that Freddie Mac is the owner of the promissory note while taking steps to initiate foreclosure including drafting and causing to be transmitted and recorded documents representing MERS as beneficiary who had beneficial interests to assign to Cenlar, whom NWTS has actual knowledge to be a mere loan servicer." ECF No. 78 at ¶ 74.

---

[4] Section 1692e(2)(A) of the FDCPA prohibits a debt collector from using a "false, deceptive, or misleading representation or means in connection with the collection of any debt" including "[t]he false representation of any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." *See* 15 U.S.C. § 1692e; *see also Walker v. Quality Loan Serv. Corp.*, 176 Wn. App. 294, 315, 308 P.3d 716, 725 (Wash. Ct. App. 2013), as modified (Aug. 26, 2013), overruled on other grounds by *Frias v. Asset Foreclosure Services, Inc. et al.*, Slip Opin. No. 89343-8 (Sept. 18, 2014).
[5] As discussed *supra*, the Notice of Default was prepared and signed more than one year prior to Plaintiff filing the FAC. Accordingly, Plaintiff's FDCPA claim arising from such allegations fails.

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:     425.458.2131

Plaintiff fails to state a claim under § 1692(e) against NWTS. The activities Plaintiff bases this claim upon do not constitute debt collection under 15 U.S.C. § 1692a(6)(F)(iii) because they involve activities "necessary to institute foreclosure proceedings." *See Walker v. Quality Loan Serv. Corp.,* 176 Wn. App. 294, 316-17, 308 P.3d 716, 726 (Wash. Ct. App. 2013). In *Walker*, the Court rejected the borrower's claim under § 1692e noting that "nothing in the record indicates…[the defendants]…engaged in activities beyond those necessary to institute foreclosure proceedings" and that "'[a]cts required to institute foreclosure proceedings, such as the recording of a notice of default, alone, are not debt collection activities for purposes of the FDCPA unless alleged in relation to a claim for violation of 15 U.S.C. § 1692f(6).'"[6]

Here, Plaintiff alleges NWTS (and other Defendants) "prepared, signed, notarized, and recorded" the documents in order to "initiate nonjudicial foreclosure against Plaintiff's homestead." ECF No. 34 at ¶ 39. Under *Walker*, such allegations do not give rise to an FDCPA claim under 15 U.S.C. § 1692e. *Walker,* 176 Wn. App. at 316-17.

Moreover, as this Court has already held, even assuming NWTS is a debt collector, "for purposes of the FDCPA, representations regarding the location of the original note, the validity of certain assignments and appointments, or the date on which a Beneficiary Declaration was signed do not reflect on the character, amount, or legal status of the debt" so as to give rise to a claim under § 1692e. ECF No. 81 at *4.

3. As a matter of law and notwithstanding the statute of limitations, NWTS did not violate 15 U.S.C. § 1692f.

Plaintiff alleges "NWTS' act of issuing and transmitting the Notice of Default to Plaintiff when it did not have the proper statutory authority of a successor trustee violates the FDCPA, [15 U.S.C. 1692f]." ECF No. 78 at ¶ 66.

_____

[6] *See Walker*, at 294, 316, (quoting *McDonald v. OneWest Bank, FSB,* No. C10–1952, 2012 WL 555147, at *4 n. 6 (W.D. Wa. Feb 21 2012) ("[t]he current trend among district courts in the Ninth Circuit is to find that, at least insofar as defendant confines itself to actions necessary to effectuate a nonjudicial foreclosure, only § 1692f(6) of the FDCPA applies.").

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

As discussed infra, NWTS was not required to be trustee in order to issue the Notice of Default. *See* Sec. (IV)(D)(3). Moreover, the FDCPA, a federal statute, does not speak to the specific requirements under Washington's DTA; therefore, to the extent Plaintiff bases an FDCPA claim on the mere fact that NWTS had not been appointed successor trustee at the time it issued the Notice of Default, that claim fails as a matter of law.

To the extent any claim under the 1692f could exist in relation to the Notice of Default, NWTS maintains that as the agent of Cenlar, it would not be liable. The Ninth Circuit has determined that a debt collector is entitled to rely on the principal's (typically the creditor or another debt collector) statements as to the debt. *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1174, 2006 U.S. App. LEXIS 21594 (9th Cir. 2006) (*citing Bleich v. Revenue Maximization Group, Inc.*, 233 F. Supp. 2d 496, 500-01 (E.D.N.Y. 2002) and *Beattie v. D.M. Collections, Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991) ("Generally, a debt collector may reasonably rely upon information provided by a creditor who has provided accurate information in the past."). Moreover, the FDCPA did not impose upon agent debt collector a duty to independently investigate the claims presented by the creditor or principal debt collector. *Clark v. Capital Credit & Collection Servs.*, 460 F.3d at 1174 (*citing Ducrest v. Alco Collections, Inc.,* 931 F. Supp. 459, 462 (M.D. La. 1996). And, as previously acknowledged by this Court, under agency law principles, it would be the principal that is held liable for the acts of the agent taken within the scope of that relationship. *See* ECF No. 81 at 10 (citing *O'Brien v. Hafer*, 122 Wn. App. 279, 283-84 (2004) ("The negligence of the agent is imputed to the principal because he has the right to control the acts of the agent.").

## C. PLAINTIFF'S CLAIMS FOR FAILURE TO MATERIALLY COMPLY WITH THE DTA FAILS AS A MATTER OF LAW AS TO NWTS AND RCO.

In *Frias v. Asset Foreclosure Services, Inc.*, Washington's Supreme Court held "there is no actionable, independent cause of action for monetary damages under the DTA based on DTA violations absent a completed foreclosure sale." *Frias v. Asset Foreclosure Services, Inc. et al.*,

MOTION FOR SUMMARY JUDGMENT BY NWTS
AND RCO - PAGE 14 OF 39
CASE NO. 2:13-CV-00602 RSL

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

Slip Opin. No. 89343-8, 2014 WL 4648173, *8 (Sept. 18, 2014). Here, no foreclosure sale was completed. Plaintiff's claim for failure to materially comply with the DTA fails.[7]

## D. PLAINTIFF'S CLAIMS FOR CPA VIOLATIONS FAILS AS A MATTER OF LAW AS TO NWTS AND RCO.

### 1. Legal Standard for CPA.

A violation of the CPA requires proof of:

(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation.

*Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 37, 204 P.3d 885, 889 (2009), *citing Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 784, 719 P.2d 531 (1986). The failure to meet any one of these elements is fatal and necessitates dismissal. *Sorrel v. Eagle Healthcare*, 110 Wn. App. 290, 298, 38 P.3d 1024 (2002).

Lucero must show that NWTS engaged in an act or practice with either: 1) "a capacity to deceive a substantial portion of the public," or 2) that "the alleged act constitutes a per se unfair trade practice." *See Saunders v. Lloyd's of London*, 113 Wn.2d 330, 779 P.2d 249 (1989), *quoting Hangman Ridge*, *supra*; *see also* RCW 19.86.093.[8] "Implicit in the definition of 'deceptive' under the CPA is the understanding that the practice misleads or misrepresents something of material importance." *Holiday Resort Comm. Ass'n v. Echo Lake Assoc., LLC,* 134 Wn. App. 210, 135 P.3d 499 (2006). An "act performed in good faith under an arguable interpretation of existing law do not constitute unfair conduct violative of the consumer protection law." *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 155, 930 P.2d 288 (1997).

Here, Lucero fails to allege a *per se* CPA violation, so the only method by which she can establish a CPA violation is to show that NWTS engaged in conduct with a capacity to deceive a

---

[7] Plaintiff concedes this claim is no longer viable. ECF No. 108.
[8] An unfair trade practice "requires a showing that a statute has been violated which contains a specific legislative declaration of the public interest impact." *Hangman Ridge*, 105 Wn.2d at 791.

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:     425.458.2131

substantial portion of the public. *See Saunders, supra.* at 344, *quoting Hangman Ridge* at 785. Plaintiff fails to establish this element.

2. <u>The identification of Freddie Mac and Cenlar in the Notice of Default strictly complied with the DTA and was therefore neither unfair nor deceptive.</u>

Plaintiff alleges NWTS caused a Notice of Default to be posted at Plaintiff's property that announced the initiation of a nonjudicial foreclosure by Cenlar. ECF No. 78 at ¶ 14. Plaintiff takes issue with the Notice of Default because it identified Federal Home Loan Mortgage Corporation ("Freddie Mac") as the owner of Plaintiff's Note and Cenlar as the creditor to whom the debt is owed. ECF No. 78 at ¶ 16. Plaintiff concludes that if Freddie Mac owns the Note, it must be the creditor, and therefore NWTS misrepresented to Plaintiff the "entity with whom she could communicate with in order to resolve the issues of her mortgage loan." Plaintiff also concludes this constitutes an unfair and deceptive practice to support her CPA claim. ECF No. 78 at ¶ 82.

RCW 61.24.030 sets forth the requirements for a Notice of Default under the DTA. One of those requirements, under RCW 61.24.030(l) is that for residential property secured by a deed of trust, "*the name and address of the **owner*** of any promissory notes or other obligations secured by the deed of trust and *the name, address, and telephone number of a party acting as a **servicer*** of the obligations secured by the deed of trust" be disclosed in the Notice of Default.

Here, in strict compliance with RCW 61.24.030(l), the Notice of Default identified Freddie Mac as the Note owner and listed Freddie Mac's address. It also identified Cenlar as the servicer and provided Cenlar's address and phone number. Stenman Decl., Ex. 4.

NWTS' identification of the creditor as Cenlar does not support a claim under the CPA. The DTA does not define the term "creditor." However, Washington state and federal courts have historically equated the term "creditor" with the "trust deed beneficiary." *See Gardner v. First Heritage Bank,* 175 Wn. App. 650, 661, 303 P.3d 1065, 1071 (Wash. Ct. App. 2013) ("As in the mortgage foreclosure context, "deficiency judgment" under RCW 61.24.100 means a

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

money judgment sought by a trust deed beneficiary (or other creditor) following a trustee's sale that fails to satisfy the obligation secured by the deed of trust."); *see also Gossen v. JPMorgan Chase Bank*, 819 F.Supp.2d 1162, 1170 (W.D.Wa. 2011). Here, the Notice of Default listed the creditor as Cenlar, the trust deed beneficiary.[9]

During her deposition, Plaintiff testified the Notice of Default "reiterate[ed] the players and the individuals and the companies associated" with her loan. Lucero Dep. at 312:1-6; 317 11-13 ("it clarifies some information about who the noteholder, who owns the note, which was -- and, again as I stated, this is the first time I saw Freddie Mac."). Plaintiff testified that when she received the Notice of Default she believed her loan servicer was Cenlar and believed her creditor was Cenlar. *Id.* at 317:24-318:2; 319:15-320:1. Plaintiff also testified she believes her creditor currently is Cenlar. *Id.* at 320:4-13.[10] Plaintiff did note that the Notice of Default was the first time she had seen "Freddie Mac named as the owner of the Note", but was unable to articulate anything problematic about that fact.[11] *Id.* at 71:13-17.[12]

Ultimately, Plaintiff testified she believed the notice of default misrepresented the situation, not because she **was not actually in default** but because she **did not want to be in default.** *Id.* at 78:6-79:7.[13] Yet, she admitted she was, in fact, in default and not making payments when she received the notice. *Id.* at 74:22-75:2. There was no misrepresentation.

---

[9] To the extent Plaintiff also intends to advance the theory that the beneficiary must also be the owner, it fails. *See Trujillo v. Northwest Trustee Services, Inc.,* —— Wn. App. ——, 326 P.3d 768, 776 (Wash. Ct. App. June 2, 2014); *see also Massey v. BAC Home Loans Servicing LP,* 2013 WL 6825309, *5 (W.D.Wa.Dec. 23 2013).

[10] Plaintiff testified that she believed the statements identifying Cenlar as the loan servicer and creditor in the notice of default were true. Lucero Dep. at 100:13-102:2.

[11] Plaintiff does not dispute that Freddie Mac is the owner. Lucero Dep. at 94:2-95:5.

[12] Plaintiff testified that the certification in the loss mitigation declaration relating to compliance with RCW 61.24.130 was incorrect. Lucero Dep. at 72:18-73:4. However, the statements in the loss mitigation declaration were not made by NWTS, NWTS did not prepare the loss mitigation declaration, and, as a matter of law, is entitled to rely on the declaration and *is not liable for the beneficiary's or its authorized agent's failure to comply with the requirements of this section* under RCW 61.24.031(2). She also testified she was unsure what the term "deprive" meant in the notice of default. *Id.* at 74:10-16. There is nothing deceptive, however, about the use of the word "deprive" and NWTS cannot be responsible for Plaintiff's lack of understanding of that term.

[13] Plaintiff also testified she was frustrated to receive the notice of default, because she thought was working on a modification with Bayview, but she admitted she was in default. Lucero Dep. at 74:22-75:2. She also testified she never contacted NWTS, never received any communication other than the notice of default from NWTS, and NWTS was not involved in loan modification process. Lucero Dep. at 314:16-21; 314:24-315:21; 322:19-25.

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

NWTS' accurate identification of the owner and loan servicer as required under the DTA and the creditor as that term is used under Washington common law was neither unfair nor deceptive.

Furthermore, Plaintiff's allegation that NWTS' identification of Cenlar as creditor somehow misrepresented to her the party with whom she could resolve issues relating to her mortgage is seriously undercut by the fact that she eventually entered into an agreement to permanently modify her loan with Cenlar, at no time dealing directly with Freddie Mac or any other alleged "owner" of the obligation.

3. NWTS was authorized to issue the Notice of Default as the agent of the beneficiary, Cenlar.

Plaintiff alleges that it has been "common practice of NWTS to declare itself as the duly authorized agent of the loan servicer, and that the loan servicer is the client of NWTS in notice of default." ECF No. 78 at ¶¶ 17 and 83. Plaintiff concludes that "mixing its role as a duly authorized agent of the servicer *ie.* debt collector on behalf of the servicer and its role as purported trustee…is unfair and deceptive." ECF No. 78 at ¶ 83.

The DTA expressly contemplates that the Notice of Default can be issued through the beneficiary's agent. *See* RCW 61.24.031; *see also* RCW 61.24.040(4); *Bain v. Metro. Mortg. Group, Inc.*, 2010 WL 891585 (W.D. Wa. Mar. 11 2010) ("[t]here is simply nothing deceptive about using an agent to execute a document, and this practice is commonplace in deed of trust actions."), *Buse v. First American Title Insurance Company*, 2009 WL 4053509 (W.D. Wa. Apr. 24 2009).

Here, NWTS issued the Notice of Default on behalf of Cenlar; this capacity is clearly shown on the face of the document. Plaintiff points to no authority (and none exists) that

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:     425.458.2131

prohibits or limits an entity from acting as the duly authorized agent of the loan servicer and later being appointed as successor trustee.[14]

NWTS was also entitled to rely on the information provided by Cenlar that it was the beneficiary in issuing the Notice of Default. Unlike in relation to a trustee's obligation to obtain proof of the beneficiary's holder status prior to issuing the notice of trustee's sale, the DTA imposes no proof requirement on an agent of the beneficiary who issues a notice of default. Moreover, under agency law principles, the agent is entitled to rely on the representations of its principle. Finally, it is worth noting that at no time has Cenlar disputed NWTS was authorized to act as its agent for purposes of issuing the Notice of Default for Cenlar. And, even if could be shown that Cenlar was not the beneficiary entitled to declare a default, as the agent, NWTS, as Cenlar's agent, would not be liable. *See O'Brien v. Hafer*, 122 Wn. App. 279, 283-84 (2004).

Yet, even if Plaintiff could set forth some authority that would require NWTS to "prove up" Cenlar's holder status in relation to its issuance of the Notice of Default as Cenlar's agent, Plaintiff's bare legal conclusion relating to the Freddie Mac Document Custody Procedures Handbook is not sufficient to defeat summary judgment. Plaintiff contends Cenlar was not the note holder as defined by Uniform Commercial Code, RCW 62A, and that Freddie Mac's Document Custody Procedures Handbook "proves" this because a document custodian "physically possesses original promissory notes on Freddie Mac loans and not the loan servicers themselves." ECF No. 78, ¶ 54. Neither of these conclusions is supported by any evidence and in no way can Plaintiff argue that even if Cenlar were not a holder, NWTS could be held liable as the agent of Cenlar in issuing the Notice of Default. The DTA is clear, direct and absolute in the timing of when a trustee must obtain proof of the status of the asserted Beneficiary and it is specifically not at the issuance of the Notice of Default.

---

[14] Considering the trustee could be the attorney of the beneficiary, there should be no limitation on the entity who is later appointed trustee from acting as an agent in a limited capacity. *Meyers Way Development LP v. University Savings Bank*, 80 Wn. App. 655, 910 P.2d 1308, 1315-16 (1996).

MOTION FOR SUMMARY JUDGMENT BY NWTS
AND RCO - PAGE 19 OF 39
CASE NO. 2:13-CV-00602 RSL

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

In *In re Butler*, the Hon. Judge Marc Barreca for the United States Bankruptcy Court for the Western District of Washington, in analyzing the question of whether OneWest, as servicer for Freddie Mac, was the note holder and beneficiary for purposes of the DTA, rejected Plaintiff's position. *In re Butler*, 512 B.R. 643 (Bkrtcy.W.D.Wa.,July 9 2014). There, the Court held, "in Washington one may be a 'person in possession' of a note either physically, or through an agent." *In re Butler*, 512 B.R. 643, 653 (citing *Ortega v. Northwest Trustee Servs. Inc.,* 2014 WL 646347, 2014 Wn. App. LEXIS 382 (Wash. Ct. App. , Feb. 18 2014) (unpublished) (Division I of the Washington Court of Appeals recognized a holder can possess a note directly or through an agent)).

The *Butler* Court, noting that the UCC definition of holder requires only "possession" and that the UCC allows possession "directly or through an agent[15]," concluded the Washington Supreme Court's use of the term "actual" to modify "possession" in *Bain*[16] was merely "superfluous dicta." *Id.* (citing *Bain v. Metropolitan Mortg. Group, Inc.*, 175 Wn.2d 83, 106, 285 P.3d 34 (2012):

> "[N]othing in *Bain* suggested that the insertion of the word "actual" was intended to create a departure from the UCC's definition of "holder." And nowhere in *Bain* did the Washington Supreme Court require 'physical' possession. In fact, the Washington Supreme Court was careful to provide that 'nothing in this opinion should be construed to suggest an agent cannot represent the holder of a note ... Washington law, and the deed of trust act itself, approves of the use of agents.'"

The *Butler* Court also concluded that the Freddie Mac Document Custody Procedures Handbook, Seller/Servicer Guide, and Custodial Agreement demonstrated a principal agent relationship between OneWest, the servicer, and Deutsche Bank, the document custodian, such that Deutsche Bank was an agent of OneWest for purposes of physically possessing the note

---

[15] *See* RCW 62A.3-201, cmt 1 ("Negotiation always requires a change in possession of the instrument because nobody can be a holder without possessing the instrument, **either directly or through an agent**.") (Emphasis added).

[16] The *Bain* court adopted the UCC's definition of "holder." *In re Butler*, 512 B.R. 643, 652.The UCC provides that "holder" means "the *person in possession* of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." *See* U.C.C. § 1–201(b)(21). Washington's Commercial Code has adopted the same definition. *See* RCW 62A.1–201(a)(21).

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

such that OneWest was a "holder" and "beneficiary." *In re Butler*, 512 B.R. 643 (Bkrtcy.W.D.Wa.,2014) ("One West's monitoring and management responsibilities over Deutsche Bank, its comprehensive control over Deutsche Bank's ability to remain in its role as Document Custodian, and its ability to demand the Note from Deutsche Bank" illustrates Deutsche Bank was an agent of OneWest.).

4. <u>Fees and costs listed in the Notice of Default do not support a CPA claim.</u>

Plaintiff concludes that NWTS' "practice of demanding fees and costs for its services as the duly authorized agent of the loan servicer is a practice of a debt collector and not an impartial trustee" ECF No. 78 at ¶¶ 18 & 84. Plaintiff also concludes that NWTS "practice of preparing notices of default representing itself as duly authorized agent of the loan servicer and taxing trustee's fees against the amount owed and to be cured by the borrower before being appointed trustee violates the duty of good faith under the DTA" and is "unfair and/or deceptive." ECF No 78 at ¶84.

Under Paragraph 22 of the Deed of Trust, the Lender is entitled to "collect all expenses incurred in pursuing the remedies provided in this Section 22." ECF No. 78, Ex. 2. Paragraph 22 also contemplates collection and payment of a "Trustee's fee." *Id.* Accordingly, Cenlar is entitled to charge the borrower for the fees associated with the Notice of Default, which it did in this case.

Moreover, the DTA contemplates that the Notice of Default should include "[a]n itemized account of all other specific charges, costs, or fees that the borrower, grantor, or any guarantor is ***or may*** be obliged to pay to reinstate the deed of trust before the recording of the notice of sale; (Emphasis added). RCW 61.24.030(8)(e).

During her deposition, Plaintiff testified she believed the number representing delinquent payments was incorrect because it was calculated using the loan's interest rate of 6.25% and Plaintiff believed the rate she may or may not be able to negotiate in a loan modification should apply. Lucero Dep. at 75:24-76:9. Yet, there is no basis in fact or law for such a belief. The loan

MOTION FOR SUMMARY JUDGMENT BY NWTS
AND RCO - PAGE 21 OF 39
CASE NO. 2:13-CV-00602 RSL

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:     425.458.2131

had not been modified at the time of the Notice of Default, and thus the original terms of her loan, including the 6.25% interest rate, were in effect. Plaintiff was unable to articulate anything else that she believed was wrong, inaccurate, or confusing about the breakdown of fees. *Id.* at 71:19-72:8.

During the deposition of Jeff Stenman, Stenman testified that the amount listed on the Notice of Default under "Trustee's Fee" represented the work NWTS had done up to and including issuance of the Notice of Default. Stenman Dep. at 46:18-47:1. Plaintiff does not dispute that NWTS actually did the work representing the fee in the amount of $542.50. Rather, Plaintiff challenges it on the basis that it was identified as a trustee fee when NWTS was acting in the capacity as Cenlar's agent. However, this is immaterial[17] and Plaintiff cannot demonstrate any prejudice she suffered as a result. Plaintiff has not alleged that she attempted to reinstate based on the figures stated in the Notice of Default or that she suffered any confusion relating to how the arrears and fees were itemized.[18]

She admits she was in default at the time of the Notice of Default, which gave rise to Cenlar's ability to "collect all expenses incurred in pursuing the remedies" as contemplated under the Deed of Trust, which included exercising the power of sale. The fact remains the work representing the fee was done and earned, and Plaintiff was obligated for that fee pursuant to contract. The characterization of the fee in the notice had no effect on Plaintiff and should not give rise to any claim. The Plaintiff's suggestion that services required as a result of a borrower's default must go uncompensated or unrecoverable is absurd and in no way supported by any statute, case law, or reasonable argument for an extension of case law or statute.

5. Plaintiff lacks standing to challenge documents to which she is not a party.

---

[17] Plaintiff could not articulate any action or investigation she undertook took in response to the fee breakdown, and had already hired her attorney when she received the notice. Lucero Dep. at 74:17-19.

[18] If Plaintiff had attempted reinstatement, the characterization of the fee as a trustee's fee (as opposed to beneficiary's agent's fee) would not affect the amount, the manner, or the timeframe in which Plaintiff could reinstate.

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

Plaintiff alleges NWTS recorded the Appointment of Successor Trustee and Assignment of Deed of Trust while Plaintiff was in active mediation with Cenlar and while the Plaintiff was making payments under a HAMP trial plan in violation of the DTA. ECF No. 78 at ¶ 25. Plaintiff also alleges that the act of recording the Appointment and Assignment was unfair and deceptive. ECF No. 78 at ¶ 80.

Because Plaintiff is neither a party to, nor third party beneficiaries of the Appointment or Assignment, she lacks standing to challenge either document. *Brodie v. Nw. Tr. Servs., Inc.*, 2012 WL 6192723, \*2-\*3 (E.D. Wa. Dec. 12 2012), *aff'd Brodie v. Northwest Trustee Services, Inc.*, -- Fed. Appx. --, 2014 WL 2750123, \*1 (9th Cir. 2014). The Court in *Brodie* explained why the appointment and assignment do not (and cannot) injure a borrower under Washington law:

> Because Plaintiff is neither a party to nor a third-party beneficiary of the Assignment of Deed of Trust or the Appointment of Successor Trustee, she could not have been injured by the alleged robo-signing of these documents. ... Contrary to Plaintiff's assertions, robo-signing of the Assignment of Deed of Trust and/or the Appointment of Successor Trustee would not render these agreements--let alone the underlying debt obligation--void *ab initio*. At bottom, ***the alleged misconduct had no bearing whatsoever upon Plaintiff's obligation to make her mortgage payments. Thus, even assuming arguendo that Plaintiff's allegations of robo-signing are now pled with sufficient particularity, these allegations fail to state a claim as a matter of law***.

*Id.* at \*3 (emphasis added).

6. <u>Recordation of the Appointment and Assignment were proper.</u>

In any event, and contrary to Plaintiff's legal conclusion, nothing under the FFA or common law prevents recordation of an appointment of successor trustee or assignment of deed of trust after the borrower is referred to FFA mediation or while a borrower is making payments on a trial modification plan, or even while the borrower is current on an obligation.

RCW 61.24.163(16)(a) provides, in relevant part, that:

> If a borrower has been referred to mediation before a notice of trustee sale has been recorded, a **trustee may not record the notice of sale** until the trustee receives the mediator's certification stating that the mediation has been completed. (Emphasis added).

MOTION FOR SUMMARY JUDGMENT BY NWTS
AND RCO - PAGE 23 OF 39
CASE NO. 2:13-CV-00602 RSL

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

And, RCW 61.24.163(16)(b) provides that:

> If a borrower has been referred to mediation after the notice of sale was recorded, **the sale may not occur** until the trustee receives the mediator's certification stating that the mediation has been completed.

Thus, the FFA specifically restricts the trustee from recording a notice of sale once mediation is elected, nothing else. Here, because no notice of trustee's sale was recorded prior to Plaintiff's mediation election, NWTS was prohibited from recording a notice of trustee's sale until it received the mediator's certificate. Not only did NWTS not record a notice of trustee's sale while the mediation was ongoing, NWTS <u>never</u> recorded a notice of trustee's sale.

### 7. The timing of the Appointment and Assignment were of no consequence and were neither unfair nor deceptive.

Plaintiff concludes that "NWTS' practice of simultaneously recording appointments of successor trustee and assignments of deed of trust, notwithstanding their actual execution dates, to create the misimpression that the documents confer the statutory authority for it to conduct nonjudicial foreclosures, meets the definition of unfair or deceptive conduct.[19] ECF No. 78 at ¶80.

It is of no consequence that the Appointment was executed prior to the Assignment[20] or that they were later recorded on the same date. An assignment of deed of trust is not what confers beneficiary status. Indeed, execution of an assignment of deed of trust is not a requisite to a nonjudicial foreclosure, and *the word "assignment" does not appear in the DTA requirements at all. See* RCW 61.24 *et seq.* The purpose of an assignment "is to put parties who subsequently purchase an interest in the property on notice of which entity owns a debt secured by the property." *Corales v. Flagstar Bank*, 822 F.Supp.2d 1102 (W.D. Wa. 2011), *citing* RCW

---

[19] Plaintiff testified she never relied on the Appointment because she never saw them until after her alleged injury had already occurred. Lucero Dep. 170:22-24.

[20] The fact that the Assignment was signed by a Cenlar employee who also possesses signing authority on behalf of MERS is also of no consequence. *See* ECF No. 78, ¶ 30. Courts have held there is nothing deceptive about using an agent to execute a document. *See Bain v. Metro. Mortg. Group, Inc.,* 2010 WL 891585, at *6 (W.D.Wa.2010); *see also Massey v. BAC Home Loans Servicing LP,* 2013 WL 6825309 , *7 (W.D.Wa.,2013); *and see Zhong v. Quality Loan Service Corp. of Washington*, 2013 WL 5530583, *3 (W.D.Wash.,2013).

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

65.08.070.   However, even if the Assignment were somehow relevant[21], it was executed November 21, 2012, and therefore effective upon that date. *In re United Home Loans*, 71 B.R. 885 (Bankr. W.D. Wa. 1987) (An Assignment "is valid between the parties whether or not… ever recorded…. Recording… is for the benefit of the parties.").

Cenlar had attested under the penalty of perjury that it was the note holder long before that date. *See* Stenman Decl., Exs. 5 and 6. And under *Trujillo*, NWTS was entitled to rely on the beneficiary declaration. *Trujillo v. Northwest Trustee Services, Inc.*, -- Wn. App. --, 326 P.3d 768, 781 (Wash.App. Div. 1,2014).[22]

On the other hand, an appointment of successor trustee is only effective upon recordation. *See* RCW 61.24.010(2). The Appointment was recorded on December 6, 2012, <u>after</u> the Assignment's effective date.

In any event, Lucero – who never received either the Assignment or Appointment, and who is not a beneficiary to either document – should be precluded from undermining the validity of either document.  *See*, *e.g.*, *McGill v. Baker*, 147 Wash. 394, 266 P. 138 (1928) (only party to an assignment can challenge validity); *Ukpoma v. U.S. Bank*, 2013 WL 1934172 (E.D. Wa. May 9 2013); *Brodie*, 2012 WL 6192723, *2-3 (borrower lacks standing to attack a MERS assignment), *aff'd Brodie v. Nw. Tr. Servs., Inc.*, 2014 WL 2750123, *1 (9th Cir. 2014).

Moreover, neither the execution nor recordation of an appointment or assignment is a required statutory step necessary to effectuate a nonjudicial foreclosure pursuant to the DTA. Nor is recordation of either document what "initiates" a nonjudicial foreclosure.  *See* RCW 61.24.030 (requisites to a trustee's sale); *see also* ECF No. 78 at ¶ 51. Thus, the mere fact that an

---

[21] *See also Williams v. Wells Fargo Bank, N.A.*, 2012 WL 72727 (W.D. Wa. Jan 10, 2012); *Fed. Nat. Mortg. Ass'n v. Wages*, 2011 WL 5138724 (W.D. Wa. Oct. 28 2011); *St. John v. NWTS*, 2011 WL 4543658 (W.D. Wa. Sept. 29 2011) ("Washington State does not require recording of such transfers and assignments.").

[22] Plaintiff also testified she did not believe the statements in either beneficiary declaration were untrue. Lucero Dep. at 138:5-16. Rather, the declaration cleared up what she already knew "That I was working with Cenlar; it was cleared up; the beneficiary was Cenlar; and that they had my mortgage note, and that -- that's -- that was good.  That was good." *Id.* at 134:9-16; 159:12-17.

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:     425.458.2131

appointment or assignment was executed or recorded is not an unfair or deceptive act or practice to support a CPA claim.

Ultimately, a party may be the beneficiary, with the power to foreclose, without ever obtaining a formally recorded assignment of the Deed of Trust. This is because the security follows the debt even without an actual assignment of the Deed of Trust. *See Leisure Time Sport v. Wolfe*, 194 B.R. 859, 861 (B.A.P. 9th Cir. 1996) ("It follows from the principle that the lien is an incident of the debt and passes with it by operation of law, that an express assignment of the security interest is not required. It passes with the debt which it secures, and an assignment which is sufficient to transfer the debt must carry with it the mortgage or other lien.") (quoting *Union Supply Co. v. Morris*, 220 Cal. 331, 339, 30 P.2d 394 (1934)). The DTA does not require that assignments of the Deed of Trust be recorded at all, much less that they be recorded before a beneficiary, such as Cenlar, is permitted to act.

Furthermore, NWTS never purported to act as trustee pursuant to the Appointment.[23] As discussed herein, NWTS issued the Notice of Default as the agent of Cenlar but never recorded a notice of trustee's sale.

8. <u>NWTS acted in good faith.</u>

Plaintiff alleges the trustee is an entity the "borrower counts on to be impartial and acting in good faith." ECF No. 78 at ¶ 17. Plaintiff also alleges that RCO's concurrent representation of NWTS as the purported trustee and NWTS' clients, the loan servicers, renders it impossible for NWTS to act as an impartial judicial officer in nonjudicial foreclosures. ECF No. 78, ¶ 32.

Under the DTA, the duty imparted on the trustee is not one of impartiality. Rather, the trustee owes to both the borrower and beneficiary a duty of good faith. RCW 61.24.010(4). Acting in good faith includes taking "reasonable and appropriate steps to avoid sacrificing the debtor's interest in the property." *Albice v. Premier Mortgage Servs. of Wash., Inc.*, 157 Wn.

---

[23] The Appointment was recorded December 6, 2012. Following the recordation of the Appointment, the next affirmative act NWTS took was to close and bill its file. *See* Stenman Decl.

MOTION FOR SUMMARY JUDGMENT BY NWTS
AND RCO - PAGE 26 OF 39
CASE NO. 2:13-CV-00602 RSL

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

App. 912, 934, 239 P.3d 1148 (2010) *aff'd*, 174 Wn.2d 560, 276 P.3d 1277 (2012).[24] "Good faith" is also the "absence of intent to defraud or to seek unconscionable advantage." *See* Black's Law Dictionary, 701 (7th ed. 1999); *see also Indus. Indem. Co. of the Northwest, Inc. v. Kallevig,* 114 Wn.2d 907, 792 P.2d 520 (1990).[25] In considering the trustee's duty of good faith, the Hon. Chief Judge Pechman of the United States District Court for the Western District of Washington held it would be "too great a demand" for a trustee to "conduct a secondary investigation into the papers filed by the beneficiary." *Mickelson v. Chase Home Fin. LLC*, 2011 WL 5553821 (W.D. Wa. 2011), *aff'd Mickelson v. Chase Home Fin. LLC*, 2014 WL 2750133 (9th Cir. 2014); *accord Badgett v. Security State Bank*, 116 Wn.2d 563, 807 P.2d 356, 360 (1991) (a duty of good faith "requires only that the parties perform in good faith the obligations imposed by their agreement.").

In order to have a statutory good faith duty, however, one must become a trustee. *See* RCW 61.24.010(4). Moreover, only a beneficiary can appoint a trustee under the DTA. *See* RCW 61.24.010(2).

Notably, at the time NWTS transmitted the Notice of Default, because NWTS had not been appointed trustee, it owed no duty of good faith to Plaintiff. Moreover, here, while NWTS was appointed successor trustee on December 6, 2012, it never took any action as successor trustee because Plaintiff was granted a permanent loan modification from Cenlar. No notice of trustee's sale was ever mailed, posted, or recorded, and Plaintiff makes no allegation of action taken by NWTS as successor trustee in this case. Plaintiff fails to allege or articulate any conduct by NWTS that could give rise to a CPA violation based on a breach of duty of good faith owed

---

[24] In exercising its functions, a "trustee must exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property and, in meeting this standard, the circumstances as they reasonably appear to him at the time of doing an act, *and not at some subsequent time when his conduct is called in question.*" *Monroe v. Winn*, 16 Wn.2d 497, 133 P.2d 952 (1943) (emphasis added); *see also* Restatement 2d. Trusts § 174 (1959).
[25] *Accord Collins v. Power Default Services, Inc.*, 2010 WL 234902 (N.D. Cal. 2010), *citing Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.,* 2 Cal.4th 342, 374, 6 Cal.Rptr.2d 467, 826 P.2d 710 (1992) (A "covenant of good faith and fair dealing cannot 'be read to prohibit a party from doing that which is expressly permitted by an agreement.'").

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

by the trustee because alleged actions by NWTS prior to when it was appointed successor trustee cannot constitute a violation of the trustee's duty of good faith.

Furthermore, allegations supporting a CPA claim against NWTS relating to RCO's alleged concurrent representation of NWTS and Cenlar fail. *See* ECF No. 78, ¶¶ 32-33. At no time while NWTS had an open and active nonjudicial foreclosure file relating to the Property did RCO represent NWTS. RCO only undertook representation of NWTS after Plaintiff amended her Complaint to name NWTS a defendant in the subject lawsuit, eight months after NWTS had closed its file and taken no further action.

The U.S. District Court for the Western District of Washington recently addressed the question of a trustee's relationship to another entity in the context of good faith. *See Singh v. Fed. Nat. Mtg. Ass'n*, 2014 WL 504820 (W.D. Wa. Feb. 7 2014). *Singh* recognized that:

> [e]ven before the Washington Legislature amended the deed of trust act to abolish a trustee's fiduciary duty to a borrower, its courts recognized that 'an employee, agent, or subsidiary of a beneficiary' could serve as a trustee…. [N]o authority of which the court is aware, prohibits a subsidiary of the beneficiary from serving as a trustee.

*Singh* cites with approval to *Cox v. Helenius,* 103 Wn.2d 383, 693 P.2d 683 (1985) and *Meyers Way Development LP,* 80 Wn. App. at 910.

In *Meyers Way*, the Washington State Court of Appeals found that a trustee could even serve "*simultaneously as the creditor's attorney*, agent, employee or subsidiary." *Id.* at 1315-16, n. 8 (emphasis added). Thus, even if RCO and NWTS were the same entity, which they are not, RCO's representation of Cenlar in conjunction with the FFA mediation would not operate to limit NWTS' ability to serve as trustee nor would it create a *per se* violation of the CPA *See* RCW 61.24.010(1)(c)-(d) (attorney or company of attorneys can be trustee); *see also Columbia State Bank v. Canzoni,* 2014 WL 3012892, *8 (Wash. Ct. App. 2014).[26]

---

[26] Plaintiff appears to argue that because serving simultaneously as a trustee and counsel for a beneficiary *could* result is a breach of a duty of good faith, a trustee who is also counsel for the beneficiary *always* breaches the duty of good faith. This argument is not only false and inapplicable to the case at bar, but has specifically been rejected

MOTION FOR SUMMARY JUDGMENT BY NWTS
AND RCO - PAGE 28 OF 39
CASE NO. 2:13-CV-00602 RSL

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

1.  <u>Even if Plaintiff could show some technical violation of the DTA, she cannot</u>
    <u>show she was prejudiced, injured, or damaged as required to support a CPA</u>
    <u>claim.</u>

A non-judicial foreclosure of owner-occupied residential real property in Washington includes: 1) issuing a Notice of Default (RCW 61.24.030), 2) recording a Notice of Trustee's Sale (RCW 61.24.040), and 3) delivery and recordation of a Trustee's Deed to the purchaser at sale (RCW 61.24.050). Noticeably absent is any requirement to "prove" one's authority as a beneficiary or to execute or record an appointment of successor trustee or assignment of the deed of trust.[27]

### a. A DTA Violation Requires Prejudice to the Borrower.

It is well-settled that a borrower *must show prejudice* from material defects in foreclosure notices. *See Amresco Independence Funding, Inc. v. SPS Props., LLC*, 129 Wn. App. 532, 119 P.3d 884 (2005); *Steward v. Good,* 51 Wn. App. 509, 754, P.2d 150 (1988) (noting a "requirement that prejudice be established" where a "'technical violation' of the DTA occurs and finding that there [was] no showing of harm to the debtor"); *see also Albice v. Premier Mortg. Servs. of Wash., Inc.*, 174 Wn.2d 560, 276 P.3d 1277 (2012) (Stephens, J., concurring).

Even where technical errors exist, and a borrower is in default, foreclosure may nonetheless proceed in the absence of prejudice.[28] Plaintiff's claim fails because there were no

---

by Washington's Supreme Court of Washington. *Schroeder v. Excelsior Management Group, LLC*, 177 Wn.2d 94, 101, 297 P.3d 677, 680 n.3 (2013).

[27] Washington defines beneficiary strictly in the context of *holding* a note, not just receiving the beneficial interest in a deed of trust, such as the Oregon or Idaho Trust Deed Acts require. *Compare* RCW 61.24.005(2), ORS 86.705(2) ("Beneficiary means a person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or the persons successor in interest…."), I.C. § 45-1502(1) (same definition). The Assignment is not only irrelevant to a foreclosure in Washington, and does not confer Beneficiary status, but it does not involve NWTS. *See Florez v. OneWest Bank, F.S.B.*, 2012 WL 1118179 (W.D. Wash. Apr. 3, 2012); *Corales v. Flagstar Bank, FSB*, 822 F. Supp. 2d 1102 (W.D. Wa. 2011), *citing* RCW 65.08.070; *St. John v. NWTS*, 2011 WL 4543658 (W.D. Wa. Sept. 28 2011) ("Washington State does not require recording of such transfers and assignments.").

[28] In *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034 (9th Cir. 2011), the Ninth Circuit Court of Appeals lists several examples of actionable prejudice. Other examples might include: if a sale notice alleged that the sale would take place on a Friday, but instead it took place the day before, such information would materially violate the DTA and prejudice the borrower. *See* RCW 61.24.040(5). Or, if a notice informed the borrower that he or she

---

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

errors in the Notice of Default, and, even if there were an error, it was not material and did not prejudice Plaintiff.

### b. *Plaintiff must prove injury proximately caused by NWTS to support her CPA claim.*

A CPA claim must plead and prove that there is a causal link between the alleged misrepresentation or deceptive practice *and* the purported injury. *Hangman Ridge, supra.* at 793; *see also Cooper's Mobile Homes, Inc. v. Simmons,* 94 Wn.2d 321, 617 P.2d 415 (1980) (alleged deceptive acts must result in injury). A plaintiff must demonstrate that the "injury complained of... would not have happened" if not for defendant's acts. *Indoor Billboard/Washington, Inc. v. Integra Telecom of Wash., Inc.,* 162 Wn.2d 59, 82, 170 P.3d 10 (2007).[29]

An award under the CPA is strictly limited to damage "in… [a plaintiff's] business or property…." RCW 19.86.090, *see also Ambach v. French*, 167 Wn.2d 167, 216 P.3d 405 (2009). Lost wages or personal injuries, including pain and suffering, are not compensable under the CPA. See *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.,* 122 Wn.2d 299, 858 P.2d 1054 (1993), *Hiner v. Bridgestone/Firestone, Inc.,* 91 Wn. App. 722, 959 P.2d 1158 (1998).

Even where damages may exist, "the doctrine of mitigation of damages, or avoidable consequences, prevents an injured party from recovering damages that the injured party could have avoided if it had taken reasonable efforts after the wrong was committed. *TransAlta Centralia Generation LLC v. Sicklesteel Cranes, Inc.*, 134 Wn. App. 819, 142 P.3d 209 (2006), *citing Bernsen v. Big Bend Elec. Coop.,* 68 Wn. App. 427, 842 P.2d 1047 (1993).

### c. *Plaintiff cannot prove prejudice, injury, or damage caused by NWTS.*

---

could reinstate the loan up to five days prior to the sale, when the DTA instead requires reinstatement eleven days prior to sale; that would also materially violate the DTA and prejudice the borrower. *See* RCW 61.24.090.

[29] "[T]he term 'proximate cause' means a cause which in direct sequence unbroken by any superseding cause, produces the injury [or] even complained of and without which such injury [or] event would not have happened." *Schnall v. AT&T Wireless Servs., Inc.,* 171 Wn.2d 260, 278, 259 P.3d 129, 137 (2011), *quoting* 6 Washington Practice: Washington Pattern Jury Instructions; Civil 15.01 at 181 (5th ed. 2005). *See also Carlile v. Harbour Homes, Inc.,* 147 Wn. App. 193, 194 P.2d 280 (2008) ("The injury must be expressly "*by*" a violation of RCW 19.86.020, meaning that "but for" a defendant's conduct, the alleged injury would not have occurred.").

MOTION FOR SUMMARY JUDGMENT BY NWTS
AND RCO - PAGE 30 OF 39
CASE NO. 2:13-CV-00602 RSL

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:     425.458.2131

Plaintiff cannot prove any injury suffered as a result of NWTS' conduct to support a CPA claim.

Plaintiff alleges that once "defendants marked Plaintiff's homestead as subject to foreclosure, they triggered certain related events causing the instant diminution of the property's value and the diminution of Plaintiff's credit rating." ECF No. 78, ¶ 58. Here, a notice of default was mailed to Plaintiff and was posted at the Property. Plaintiff fails to allege how the mailing and posting of a notice that is never recorded or made public in any manner caused the Property's value to diminish or for her credit rating to suffer. In fact, Plaintiff testified she did not know if her property value had diminished because she never intended to sell the property, never obtained an appraisal, never tried to refinance the loan, knew she had no equity, and believed all property values were diminishing in the 2011-2012 timeframe. Lucero Dep. at 337:18-339:14; 174:4-9; 175:14-17.

Moreover, Plaintiff has not (and cannot) allege that NWTS furnished any information to any credit rating agency that negatively affected her credit report. NWTS does not furnish any information to credit reporting agencies, and did not furnish any information regarding Plaintiff's default. Furthermore, NWTS' receipt of and reliance upon other non-public documents from the beneficiary cannot be attributed to any diminished value of the Property or her credit rating.[30]

Plaintiff further alleges that "[b]y placing Plaintiff's homestead into their computerized system as subject to foreclosure, the defendants announced to the world of investor's speculators and others whose business relate to buying and selling distressed properties that Plaintiff's homestead was up for grabs" and that "[t]he defendants' action caused these investors, speculators and others to monitor, drive by, and take other actions that disturbed Plaintiff's privacy and interfered with Plaintiff's quiet enjoyment of her home." *See* ECF no 78, ¶ 58.

---

[30] Plaintiff repeatedly testified she objected to being reported as "in foreclosure and repossession," was unable to get a low interest car loan, could not refinance her high interest car loan, and that her credit was ruined. Lucero Dep.164. Yet, Plaintiff did not deny she was in default and testified she did not know what her credit rating was in 2009 or 2010 and never checked it until she was denied her auto refinance in 2013. Lucero Dep. at 175:18-176:3.

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:     425.458.2131

However, Plaintiff testified she did not know if anyone actually came to her property, and the only person she knew had come was the person who posted the notice of default. Lucero Dep. at 185:17-186:24. Moreover, Plaintiff testified she did not keep track of whether there was more auto or foot traffic around her house during this time, and testified possession of her home has not been interrupted. *Id. at* 186:25-187:21.

Again, Plaintiff's bare allegations contradicted by her testimony are not sufficient to defeat summary judgment. The fact that NWTS received a referral for nonjudicial foreclosure and created an electronic file within its filing system was in no way an announcement to the world. Plaintiff has not alleged NWTS publicized the fact that it received a nonjudicial foreclosure referral for Plaintiff's Property. And, because no trustee's sale was ever scheduled, NWTS never made any announcement, public or otherwise, to anyone that Plaintiff's Property was "up for grabs."

To the extent Plaintiff interprets the recordation of an appointment of successor trustee or assignment of deed of trust as an announcement to the "world of investor's speculators and others whose business relate to buying and selling distressed properties that Plaintiff's homestead was up for grabs," such an interpretation is erroneous. Neither activity is a requisite to a trustee's sale. *See* RCW 61.24.030. Under the Deed of Trust, the trustee may be substituted at any time, and the recordation of an appointment is not directly tied to or contingent upon a borrower's default or the imminence of a foreclosure. Similarly, an assignment of deed of trust can be executed and recorded at any time regardless of whether a default has occurred or foreclosure is imminent. Finally, neither of those documents, even if done in the face of a default, indicate that a default has occurred or that foreclosure is imminent. Thus, it is simply not plausible that the execution and recordation of these documents caused Plaintiff the injury she claims.

In relation to her CPA claim, Plaintiff concludes she "has suffered actual damages including damages to her credit, loss of opportunities, emotional upheavals and prolonged fear of losing her home." ECF No. 78 at ¶ 85. She requests punitive damages. *Id.*

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

As discussed *supra*, NWTS did not report to any credit rating agency.

As a matter of law, emotional distress damages for Plaintiff's "emotional upheavals and prolonger fear of losing her home" are not recoverable under the CPA because the injury must be to a plaintiff's "business or property." *See* RCW 19.86.090 ("Any person who is injured in his or her **business or property** by a violation of…RCW 19.86.020…may bring a civil action in superior court…to recover the actual damages sustained by him or her, or both, together with the costs of the suit, including a reasonable attorney's fee."); *see also Moritz v. Daniel N. Gordon, P.C.,* 895 F. Supp. 2d 1097, 1114, 2012 WL 3985823 (W.D. Wa. 2012) ("Because the injury must be to the plaintiff's "business or property," "[p]ersonal injuries are not compensable damages under the CPA."); *and see Ambach v. French*, 167 Wn.2d 167, 173, 216 P.3d 405, (2009); *Washington State Physicians Ins. Exchange & Ass'n v. Fisons Corp*., 122 Wn.2d 299, 317-318, 858 P.2d 1054 (1993).

As the Ninth Circuit Court of Appeals recently held concerning a CPA claim in the foreclosure context:

> Plaintiffs' foreclosure was not caused by a violation of the DTA because Guild [the foreclosing entity] was both the note holder and the beneficiary when it initiated foreclosure proceedings, and therefore the 'cause' prong of the CPA is not satisfied.

*Bhatti v. Guild Mortg. Co.*, 2013 WL 6773673, *3 (9th Cir. 2013).[31]  Likewise in this case, Plaintiff does not identify an injury that was proximately caused by NWTS' conduct, *i.e.*, related to NWTS' role in the non-judicial foreclosure. *Cf. Demopolis v. Galvin,* 57 Wn. App. 47, 786 P.2d 804 (1990) (litigation expenses are *not* an "injury" under the CPA); *Massey v. BAC Home Loans Servicing LP*, *supra.* at *15 (a "laundry list… including attorney fees, 'wear and tear' on [a] vehicle, and buying postage stamps, is inapposite.").[32]

---

[31] Consistent with RCW 61.24.005(2), *Bhatti* notes that "only beneficiaries who *hold* the note may appoint successor trustees." *Id.* (emphasis added).

[32] Plaintiff testified she had already retained counsel when she received the notice of default. Lucero Dep. 74:17-19 ("it's telling me that I should seek counsel, which I had already done.").

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

Finally, the only lost opportunity plaintiff could articulate was that she was unable to refinance her auto loan. Lucero Dep. at 337:10-17. Yet, Plaintiff admitted this was not the fault of the defendants. *Id.* at 107:24-108:3.

Ultimately, even if the Court were to accept Plaintiff's injury claim for loss opportunities as factually accurate, no facts demonstrate how her asserted injuries flowed from the initiation of the non-judicial foreclosure process – an occurrence caused by *her own default* and never made public. *See Massey*, *supra.* at *16, *citing Babrauskas v. Paramount Equity Mortgage*, 2013 WL 5743903 (W.D. Wa., Oct. 23 2013) (plaintiff's failure to meet obligation "is the 'but for' cause of the default" and foreclosure), *McCrorey v. Fed. Nat. Mortg. Ass'n*, 2013 WL 681208 (W.D. Wa., Feb. 25, 2013) (plaintiffs' failure to pay led to default and foreclosure); *see also Reid v. Countrywide Bank, N.A.*, 2013 WL 7801758, *5 (W.D. Wa., Apr. 3, 2013) (alleged deception in making payments to "parties who are not the true holders and owners of the Note" suggested no factual basis for injury). Lucero offers no evidence demonstrating that, but for NWTS' conduct, she would not have suffered her purported injuries as a result of receiving the notice of default due to her failure to pay the secured loan. Plaintiff's inability to satisfy the necessary elements of injury and causation are fatal to her CPA claim.

2. Plaintiff Cannot Show an Impact on the Public Interest.

If the Court were to reach the public interest prong under *Hangman Ridge*, Plaintiff must show that the acts in question *impact* the public interest. The factors to be considered when evaluating this element depend upon the context in which the alleged acts were committed. *See Hangman Ridge*, 105 Wn.2d at 780. Because Plaintiff complains of a consumer transaction, the following factors are relevant:

(1) [w]ere the alleged acts committed in the course of defendant's business? (2) Are the acts part of a pattern or generalized course of conduct? (3) Were repeated acts committed prior to the act involving plaintiff? (4) Is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff? (5) If the act complained of involved a single transaction, were many consumers affected or likely to be affected by it?

MOTION FOR SUMMARY JUDGMENT BY NWTS
AND RCO - PAGE 34 OF 39
CASE NO. 2:13-CV-00602 RSL

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

*Id.* at 790. Moreover, "[t]he public interest in a private dispute is not inherent." *Tran v. Bank of America,* 2013 WL 64770 (W.D. Wa., 2013), *citing Hangman Ridge, supra.* at 790.

Here, Plaintiff sets forth no evidence to show that the public interest has been impacted. *See e.g., Segal Co. (Eastern States), Inc. v. Amazon.com*, 280 F.Supp.2d 1229, 1234 (W.D. Wa. 2003) (granting motion to dismiss CPA claim as allegation "on information and belief that defendant engages in a 'pattern and practice' of deceptive behavior" is insufficient to satisfy public interest requirement).

Each of the alleged acts on which Plaintiff relies exclusively relates to conduct directed at her personally – i.e., whether the foreclosing entity was the beneficiary and had authority to execute documents during the foreclosure process. These acts do not, and cannot, have the capacity to deceive any other individual, let alone a substantial portion of the general public. Plaintiff's allegations are insufficient to satisfy the CPA's public impact requirement as to NWTS.

### 3. The Role of MERS Should Not Impute Liability to NWTS.

Plaintiff contends that by virtue of MERS' involvement in the underlying loan, the elements of (1) unfair or deceptive act or practice and (2) public interest impact to support a CPA claim are presumptively met. *See* SAC, ¶¶ 78 and 79. *Bain* does not stand for such a proposition.

In *Bain v. Metro. Mortg. Group, Inc.*, 175 Wn.2d 83, 285 P.3d 34 (2012), the Washington Supreme Court found that MERS' representation that it was the beneficiary of the Deed of Trust in its own right – rather than as an agent for a disclosed principal – had the capacity to deceive within the meaning of the CPA, because MERS was not the Note holder.[33]

The relevant question certified to the Washington Supreme Court was: "[d]oes a homeowner possess a cause of action *against Mortgage Electronic Registration Systems, Inc.*, if MERS acts as an unlawful beneficiary under the terms of the Washington Deed of Trust Act?" *Bain*, 285 P.3d at 38. Nothing in the *Bain* decision, or any case in Washington, holds that the

---

[33] On remand, the trial court granted MERS' Motion for Summary Judgment on Plaintiff's CPA claim due to a lack of injury and causation. *See* Order Granting Motion for Summary Judgment, King County Superior Court Case No. 08-2-43438-9 SEA (Aug. 30, 2013).

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:     425.458.2131

first element of a CPA claim is satisfied against a non-judicial foreclosure trustee. *Accord Lynott v. Mortgage Elec. Registration Sys.,* 2012 U.S. Dist. LEXIS 170607 at *6 (W. D. Wash. Nov. 30, 2012) ("*Bain* did not… create a per se cause-of-action based solely on MERS's involvement."), *Zalac v. CTX Mortg. Corp.*, *supra.*, *citing Bain* at 120 ("the mere fact that MERS is listed on the deed of trust as beneficiary is not itself an actionable injury."), *Florez v. OneWest Bank, F.S.B.*, 2012 WL 1118179 (W. D. Wa. Apr. 3, 2012) (authority to foreclose based on holding note was independent of MERS.), *Bhatti v. Guild Mortg. Co.*, 2011 WL 6300229 (W. D. Wa., Dec. 16, 2011) (no declaratory relief based on MERS's capacity as nominee in deed of trust).

Because NWTS was not a party to the loan's origination, it did not participate in executing the Deed of Trust, and thus made no representation that MERS was a Note holder in its own right. And, Plaintiff can point to no document by NWTS that even identifies MERS in its role under the original Deed of Trust.[34]

According to *Bain*, any public interest impact would relate to MERS's actions – whatever they may be – and not those of NWTS. Accordingly, *Bain* should not be stretched to infer presumptions against NWTS to support a CPA claim, or to suggest it is somehow liable for DTA violations.

## E. PLAINTIFF'S CLAIM FOR CPA VIOLATION FAIL AS A MATTER OF LAW AS TO RCO.

### 1. RCO is not liable under an aiding and abetting theory.

In previously considering RCO's Motion for Judgment on the Pleadings, the Court determined that RCO could be liable for harm caused by NWTS' alleged violations of the DTA only if it: "knows that [NWTS'] conduct constitutes a breach of duty and gives substantial assistance or encouragement to [NWTS] so to conduct [itself]."ECF No. 81 at *11. The Court went on to further summarize Plaintiff's theory against RCO as: "RCO, knowing that Cenlar did

---

[34] Plaintiff alleges NWTS made "parallel misrepresentations [relating to MERS] in the Notice of Default. The Notice of Default, however, makes no mention of MERS.

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

not have possession of the original promissory note, that the trustee was acting as the agent of the servicer, and that the trustee was purporting to rely on a declaration it had created and that was not based on personal knowledge, either advised the conduct or otherwise assisted NWTS (and its other client, Cenlar) in initiating and pursuing a nonjudicial foreclosure that violated the DTA." *Id.* at *11.

RCO is not liable under an aiding and abetting theory because, as discussed *supra*, NWTS did not violate the DTA or engage in an unfair or deceptive act or practice. Without an underlying violation, there is no liability. *In re Consolidated Meridian Funds*, 485 B.R. 604, 618 (Bkrtcy.W.D.Wa.,2013), *rev'd on other grounds*, 511 B.R. 140 (W.D. Wa. May 28, 2014).

However, even if there was an underlying violation by NWTS, to succeed on claim for aiding and abetting, plaintiff would have to show that RCO "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other." *In re Consolidated Meridian Funds*, 485 B.R. 604, 615 (*citing Brashkis v. Hyperion Capital Group, LLC*, No. 3:11–CV–05635 RBL, 2011 WL 6130787, at *3 (W.D.Wa. Dec. 8 2011); *Wash. Constr., Inc. v. Sterling Sav. Bank*, 163 Wn. App. 1027, 2011 WL 4043579, at *10 n. 8 (Wash.Ct.App. 2011); and Restatement (Second) of Torts § 876(1977)). Washington cases have adopted the formulation of aiding and abetting set forth in the Restatement (Second) of Torts § 876(b), which provides that:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

*See Wash. Constr., Inc.,* 2011 WL 4043579, at *10; *Martin v. Abbott Labs.,* 102 Wash.2d 581, 596, 689 P.2d 368 (1984). Thus, under Washington law, to plead a claim for aiding and abetting

MOTION FOR SUMMARY JUDGMENT BY NWTS
AND RCO - PAGE 37 OF 39
CASE NO. 2:13-CV-00602 RSL

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

under Subsection (b)[35] a plaintiff must allege (i) the existence of a violation by the primary wrongdoer; (ii) knowledge of this violation by the aider and abettor; and (iii) that the aider and abettor substantially assisted in the primary wrong.

### a. Plaintiff cannot demonstrate knowledge of a violation by RCO.

Plaintiff's allegation that the note was in the possession of a third-party document custodian (or RCO's specific knowledge of this, which is not alleged) is insufficient to show that RCO somehow knew Cenlar did not have possession of the Note. Because neither the UCC nor Washington law requires physical possession of the promissory note in order to be a beneficiary, the mere fact (or allegation) that a note is physically possessed by a document custodian does not demonstrate that any party who knew this would have knowledge that Cenlar was not the holder. *See In re Butler,* 512 B.R. 643, 653.

### b. Plaintiff has not pled with particularity and cannot demonstrate substantial assistance by RCO.

In analyzing an aiding and abetting claim under (b), Courts have determined substantial assistance must be pleaded with particularity. *In re Consolidated Meridian Funds,* 485 B.R. at 617. Furthermore, the test for substantial assistance is: (1) a defendant affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed'; and (2) 'the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated.' *Id.* (omitting citations).

Plaintiff alleges (1) that in the course of representing Cenlar in the FFA mediation, RCO provided the mediator and Plaintiff's mediation counsel documents on behalf as Cenlar as required under the FFA (ECF No. 78, ¶¶ 19- 20); (2) RCO provided, as part of the aforementioned documents, a copy of the Beneficiary Declaration executed by Cenlar October 5, 2012 (ECF No. 78, ¶ 21); (3) RCO provided, as an attachment to Cenlar and Bayview's motion

---

[35] The Court previously determined that Subsection (b) is the only provision that would apply in this case. ECF No. 81 at *11-12.

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:     425.458.2131

to dismiss, a copy of the Beneficiary Declaration executed by Cenlar on October 16, 2012 (ECF No. 78, ¶ 22); (4) RCO caused the Appointment and Assignment to be recorded (ECF No. 78, ¶ 25 and 27).

Even if this Court were to find NWTS had violated the DTA or engaged in an unfair or deceptive act or practice, Plaintiff does not plead the required element of "substantial assistance" with particularity. Plaintiff does not allege any fact to suggest RCO participated in the creation or execution of the Beneficiary Declarations or the Appointment.[36] RCO has set forth declaration testimony testifying that it did not participate in the creation or execution of the documents. Rather, in the course of its representation of Cenlar in mediation, it obtained from NWTS the fully executed Beneficiary Declaration dated October 5, 2012 and provided it as part of Cenlar's required disclosures, it obtained from NWTS the fully executed Beneficiary Declaration dated October 16, 2012 and provided it as an exhibit to Cenlar and Bayview's motion to dismiss this action. Moreover, RCO has testified it had no involvement in the creation, execution, or recordation of the Appointment or Assignment.[37]

## VII.   CONCLUSION

Based on the foregoing, Defendants NWTS and RCO respectfully request an Order granting summary judgment in their favor.

DATED this 2nd day of October, 2014.

**RCO LEGAL, P.S.**

By /s/ Heidi Buck Morrison
    Heidi Buck Morrison, WSBA No. 41769
    Of Attorneys for Defendants Northwest
    Trustee Services, Inc. and RCO Legal, P.S.

---

[36] RCO respectfully disagrees with Court's conclusion that Plaintiff has adequately pled an aiding and abetting theory against RCO. See ECF No. 81 at *11.
[37] Plaintiff was unable to articulate any conduct by RCO that caused her injury. Lucero Dep. At 351:21-352:19.

**RCO**
**LEGAL, P.S.**

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:   425.458.2131