UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LETICIA LUCERO,<br><br>                 Plaintiff,<br><br>      v.<br><br>CENLAR, FSB, *et al.*,<br><br>                 Defendants. | No. C13-0602RSL<br><br>AMENDED ORDER GRANTING IN PART CERTAIN DEFENDANTS' MOTION TO DISMISS |

        This matter comes before the Court on the "Motion of Defendants Cenlar, FSB, Mortgage Electronic Registration Systems, Inc., Jennifer Dobron, and Nancy K. Morris to Dismiss Plaintiff's Second Amended Complaint." Dkt. # 82. Plaintiff alleges that the moving defendants violated the Washington Deed of Trust Act ("DTA"), the Real Estate Settlement Procedure Act ("RESPA"), the Fair Debt Collection Practices Act ("FDCPA"), and the Washington Consumer Protection Act ("CPA"). In addition, plaintiff alleges that defendants Dobron and Morris engaged in fraud and that defendant Cenlar violated the Truth in Lending Act ("TILA"), breached its implied duty of good faith and fair dealing, and committed the tort of outrage. The moving defendants seek dismissal of all of plaintiff's claims.

        Where, as here, a motion under Fed. R. Civ. P. 12(c) is used to raise the defense of failure to state a claim, the Court's review is the same as it would have been had the motion been filed under Fed. R. Civ. P. 12(b)(6). McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810

(9th Cir. 1988). Although the complaint need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The Court will assume the truth of the plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor. Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). If the allegations give rise to something more than mere speculation that plaintiff has a right to relief, the claim may proceed. Twombly, 550 U.S. at 555.

Despite the narrow focus of a motion to dismiss, the parties barely mention the allegations contained in the Second Amended Complaint ("SAC"). Defendants apparently prefer to make arguments without reference to the actual allegations, while plaintiff throws up facts that are untethered to any particular legal claim and may or may not be asserted in the SAC. In addition, defendants regularly argue that a claim should be dismissed because plaintiff has failed to "prove" it. The question for the Court is whether the facts alleged in the SAC sufficiently state a "plausible" ground for relief. Twombly, 550 U.S. at 570. It is with that question in mind that the Court has reviewed the SAC and the memoranda, declaration, and exhibits submitted by the parties.

**BACKGROUND**

In August 2006, plaintiff and her then-husband borrowed $391,000 from Taylor, Bean & Whitaker. In addition to a promissory note, plaintiff signed a Deed of Trust identifying Taylor, Bean & Whitaker as the lender, Old Republic Title, Ltd., as the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS"), as the lender's nominee to hold beneficiary status. Dkt. # 34-1 at 123. Plaintiff fell behind on the payments in 2010, and a Notice of Default was issued by defendant Northwest Trustee Services, Inc. ("NWTS") on behalf of defendant Cenlar on August 27, 2012. Dkt. # 34-1 at 4. The notice identified Freddie

Mac as the owner of the loan and Cenlar as the loan servicer.[1] Plaintiff alleges that, pursuant to Freddie Mac's document retention procedures, a third-party had physical possession of the original signed promissory note at all relevant times, such that neither Cenlar nor NWTS had the power to initiate or pursue a nonjudicial foreclosure under the DTA. In addition, plaintiff alleges that NWTS imposed "Trustee's fees" in the Notice of Default, despite the fact that NWTS had not yet been appointed as successor trustee, and that the fees were not authorized, were unfair and deceptive, and were not in good faith.

Plaintiff sent requests for information to both Cenlar and defendant Bayview Loan Servicing, LLC. There was no response from Bayview and plaintiff was unsatisfied with Cenlar's response. Plaintiff hired an attorney to represent her and participated in mediation with Cenlar under Washington's Foreclosure Mediation Program. RCW 61.24.163. On October 3, 2012, Cenlar signed a document by which MERS purported to appoint NWTS as successor trustee. Dkt. # 34-1 at 50. Defendant Morris affixed her notary seal to the appointment without certifying that she was familiar with the person who signed the document or had ascertained his right to make the appointment on MERS' behalf. Two days later, defendant Dobron signed a Beneficiary Declaration in her role as an Assistant Secretary of Cenlar, attesting that Cenlar was in possession of the original promissory note. Dkt. # 34-1 at 12.[2] A similar document was created on October 16, 2012. Dkt. # 34-1 at 14.

On November 21, 2012, defendant Dobron signed an "Assignment of Deed of

---

[1] In a subsequent section of the Notice of Default related to defendants' obligations under the Fair Debt Collection Practices Act, NWTS identifies Cenlar as the "creditor to whom the debt is owed." Dkt. # 34-1 at 6.

[2] Plaintiff alleges that the various documents that were purportedly signed by defendant Dobron, including the Beneficiary Declaration, bear signatures that "vary so drastically as to call into doubt whether they were in fact signed by the same individual identified as Jennifer Dobron" and accuses her of knowingly participating in a fraud related to false filings in the property records of this state. SAC at ¶¶ 23-24.

AMENDED ORDER GRANTING IN PART CERTAIN
DEFENDANTS' MOTION TO DISMISS

Trust," this time as an Assistant Secretary of MERS. The assignment conveys MERS' interest in the deed of trust to Cenlar. Dkt. # 34-1 at 52. Defendant Morris notarized the document.[3] Both the assignment and the appointment of successor trustee were recorded in early December 2012. Plaintiff alleges that NWTS regularly prepares and records documents in MERS' name, improperly using the servicer's employees for such purposes. SAC at ¶ 30.

Plaintiff was able to negotiate a permanent loan modification in January 2013, effectively bringing the loan current and clearing the default. She filed this lawsuit in April of that year, alleging multiple misrepresentations and improprieties in the way defendants initiate and pursue nonjudicial foreclosures in general, and hers in particular. In December 2013, Cenlar levied a charge of $1,261.42 in attorney's fees and costs against plaintiff's mortgage account. SAC at ¶ 37. Plaintiff contested the charge by letter dated December 29, 2013. Dkt. # 60-1 at 32-35. Over the next few months, Cenlar acknowledged receipt of her inquiry and clarified the nature of her request, but failed to provide an explanation or authorization for the disputed fees. Dkt. # 60-1 at 37-43. Between January 16, 2014, and March 6, 2014, plaintiff's monthly mortgage payments varied greatly and included thousands of dollars of attorney's fees. See, e.g., Dkt. # 60-1 at 52. Plaintiff sent another notice of error and request for information. Cenlar did not respond. Based on the statements made in its motion, it appears that Cenlar is charging plaintiff for the attorney's fees and costs it is incurring in this matter.

## DISCUSSION

**A. Deed of Trust Act ("DTA), RCW 61.24** *et seq.*

Plaintiff alleges that Cenlar, with the help of defendants NWTS, MERS, Dobron, and Morris, initiated nonjudicial foreclosure proceedings, including the appointment of NWTS

---

[3] Plaintiff suggests that it would have been physically impossible for defendant Morris, in New Jersey, to notarize all of the documents attributed to her and that her "signatures on both documents do not resemble each other in any way." SAC at ¶ 29.

AMENDED ORDER GRANTING IN PART CERTAIN
DEFENDANTS' MOTION TO DISMISS

-4-

as successor trustee and the issuance of the Beneficiary Declarations, when it did not have actual possession of the note and therefore lacked statutory authority. Defendants argue that, even if true, plaintiff cannot state a claim under the DTA because a foreclosure sale never took place. Dkt. # 82 at 5-6.[4] The Washington Supreme Court recently determined that "the DTA does not create an independent cause of action for monetary damages based on alleged violations of its provisions where no foreclosure sale has been completed." Frias v. Asset Foreclosure Servs., Inc., __ Wn.2d __, 2014 WL 4648173, at * 1 (Sept. 18, 2014). Because a foreclosure sale never occurred in this case, plaintiff has not stated a plausible claim for relief under the DTA.[5]

**B. Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq*.**

Plaintiff alleges that Cenlar violated § 2605(e)(2) of RESPA when it failed to timely and fully respond to a written request for information regarding the identity of both the owner and actual holder of the original promissory note. Dkt. # 60-1 at 76.[6] Plaintiff alleges

---

[4] The Court has not considered arguments made on NWTS' behalf: NWTS is not a moving party and has not authorized attorney Parker to represent it. Nor has the Court considered arguments raised for the first time in reply regarding estoppel, agency, recording, and MERS' authority to act.

[5] Despite the fact that defendants' argument was ultimately accepted by the Supreme Court, the Court finds defendants' presentation of the DTA argument disturbing. At the time this issue was briefed, the state appellate courts had found that the legislature intended to provide a cause of action for damages for DTA violations and that nothing in the statute required that the violation result in the wrongful sale of the property. Walker v. Quality Loan Serv. Corp., 176 Wn. App. 294, 308-12 (2013) (expressly rejecting the analysis and conclusions of Vawter v. Quality Loan Serv. Corp. of Wash., 707 F. Supp.2d 1115, 1123 (W.D. Wash. 2010)). See also Bavand v. Onewest Bank, F.S.B., 176 Wn. App. 475, 496 (2013). In their motion, defendants did not even acknowledge this line of cases. In reply, defendants cite to the undersigned's March 2013 decision in McDonald v. OneWest Bank, FSB, 929 F. Supp.2d 1079 (W.D. Wash. 2013), as support for their argument without mentioning the fact that the Court had agreed to reconsider its analysis in light of Walker. Candor toward the tribunal, including acknowledging and addressing contrary authority on the merits, is required and expected.

[6] Plaintiff does not take issue with Cenlar's failure to provide an explanation for the attorney's fees that were being added to her monthly mortgage statement.

AMENDED ORDER GRANTING IN PART CERTAIN
DEFENDANTS' MOTION TO DISMISS
-5-

that Cenlar's failure to respond, coupled with its continuing efforts to collect a challenged indebtedness, caused her emotional distress and other damages. Plaintiff also alleges that Cenlar engaged in a pattern of failing to respond to qualified written requests for information. The record does not support this claim. Cenlar acknowledged plaintiff's request on January 7, 2014, requested additional time in which to respond on February 10, 2014, and identified Freddie Mac as the owner and Cenlar as the servicing agent and beneficiary on February 24, 2014. Dkt. # 60-1 at 37, 39-40, and 42-43. There is no indication that plaintiff sent more than one request for this information to Cenlar, making her allegations of a pattern wholly conclusory. Plaintiff has not raised a plausible inference that Cenlar could be liable for damages (actual or statutory) under RESPA for the alleged failure to timely and fully provide information regarding the identity of the owner and actual holder of the note.

**C. Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.**

Plaintiff alleges that (1) Cenlar continues to report to the credit reporting agencies that her mortgage is in default and subject to foreclosure despite the fact that she is current on her loan payments, (2) Cenlar repeatedly contacted or attempted to contact plaintiff directly despite knowing that she is represented by counsel, and (3) Cenlar, Dobron, and Morris manufactured and recorded documents misrepresenting Cenlar as the holder of the debt instrument. SAC at ¶¶ 70-73.[7] Defendants address the first two allegations in a footnote. Dkt. # 82 at 7 n.5. Defendants are willing to concede that Cenlar is a debt collector for purposes of the FDCPA,[8] but argue that it must comply only with the requirements of § 1692f(6), not the

---

[7] Plaintiff also alleges that defendant NWTS violated 15 U.S.C. § 1692f(6) by initiating a "nonjudicial action to effect dispossession or disablement of property" because it did not have a "present right to possession" of the property. NWTS is not a moving defendant, and the viability of this claim has not been assessed.

[8] The Court notes that the statute specifically excludes from the definition of debt collector "any person collecting or attempting to collect any debt owned or due or asserted to be owed or due another

rest of the statute. Given the facts alleged in the complaint, this argument fails.

Under the FDCPA, a "debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. §1692a(5). The debt, then, is an obligation "to pay money." A "debt collector" is defined as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . For the purpose of section 808(6) [15 U.S.C. § 1692f(6)], such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6). Plaintiff's first two FDCPA claims against Cenlar apparently arise out of Cenlar's attempts to compel monetary payments following modification of the loan. They therefore fall within the first part of the definition of "debt collector."[9] Having conceded that it

---

to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F). It is not clear when Cenlar took over the servicing rights of plaintiff's loan.

[9] To the extent plaintiff's FDCPA claim arises out of actions defendants took to effectuate the nonjudicial foreclosure, it is likely that only § 1692f(6) applies. See, e.g., Doughty v. Holder, 2014 WL 220832, at * 3 (E.D. Wash. Jan. 21, 2014); Thepvongsa v. Regional Trustee Servs. Corp., 972 F. Supp.2d 1221, 1229-30 (W.D. Wash. 2013); Jara v. Aurora Loan Servs., LLC, 2011 WL 6217308, at * 5 (N.D. Cal. Dec. 14, 2011); Lettenmaier v. Fed. Home Loan Mortg. Corp., 2011 WL 1938166, at *11-12 (D. Or. May 20, 2011); Armacost v. HSBC Bank USA, 2011 WL 825151, at * 5-6 (D. Idaho Feb. 9, 2011); Long v. Nat'l Default Servicing Corp., 2010 WL 3199933 at *4 (D. Nev. Aug. 11, 2010). See also Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50108 (Dec. 13, 1988) (relying on the two-part definition of "debt collector" to find that, if a party falls only within the security interest provisions of the definition, then they "are subject only to this provision [§ 1692f(6)] and not the rest of the FDCPA.'"). Under plaintiff's theory of the case, NWTS had no present right to possession of the property through non-judicial foreclosure because neither it nor Cenlar was the holder of the underlying debt instrument. Whether the acts of which Cenlar, Dobron, and Morris are accused constitute nonjudicial actions designed to

AMENDED ORDER GRANTING IN PART CERTAIN
DEFENDANTS' MOTION TO DISMISS

-7-

is a debt collector, Cenlar offers no reason to conclude that the credit reporting and communication provisions of the FDCPA are inapplicable.

As for plaintiff's third allegation against Cenlar, Dobron, and Morris, the Court has already determined that the falsification of documents to make it appear that Cenlar was the holder of the promissory note is not a violation of § 1692e(2)(A) of the FDCPA. Dkt. # 81 at 4. That section prohibits the false representation of "the character, amount, or legal status of any debt" in connection with collection activities. Assuming that the moving defendants were "debt collectors" for purposes of the FDCPA, representations regarding MERS' role, the location of the original note, the validity of certain assignments and appointments, or the veracity of the Beneficiary Declarations do not reflect on the character, amount, or legal status of the debt. This portion of plaintiff's FDCPA claim fails as a matter of law.

**D. Washington Consumer Protection Act ("CPA"), RCW 19.86** *et seq.*

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. A private cause of action exists under the CPA if (1) the conduct is unfair or deceptive, (2) occurs in trade or commerce, (3) affects the public interest, and (4) causes injury (5) to plaintiff's business or property. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780 (1986). Plaintiff alleges that the moving defendants violated the CPA when they (1) falsely represented that MERS was the beneficiary of the Deed of Trust with the power to transfer a beneficial interest to Cenlar and (2) falsely represented that Cenlar had actual possession of the note and/or was the beneficiary of the Deed of Trust. The first claim fails as a matter of law because plaintiff has failed to plausibly allege that the representations regarding MERS' role caused her harm. She has not alleged that she relied in any way on the original representations

---

dispossess plaintiff of her property in violation of § 1692f(6)(A) is doubtful, but the issue is not properly before the Court.

AMENDED ORDER GRANTING IN PART CERTAIN
DEFENDANTS' MOTION TO DISMISS

-8-

in the Deed of Trust, either at the time they were made or during the nonjudicial foreclosure process. In addition, MERS' actions are essentially irrelevant to the DTA analysis or the propriety of the attempted foreclosure. Under the DTA, a "beneficiary" is defined as "the holder of the instrument or document evidencing the obligations secured by the deed of trust." RCW 61.24.005(2). Cenlar's authority to act as the beneficiary thus hinged on its actual physical possession of the original signed promissory note. Bain v. Metro. Mortg. Group, Inc., 175 Wn.2d 83, 89 (2012) (finding that "only the actual holder of the promissory note or other instrument evidencing the obligation may be a beneficiary with the power to appoint a trustee to proceed with a nonjudicial foreclosure on real property"). Cenlar's status as the beneficiary for purposes of the DTA comes not from MERS' purported assignment – defective or not – but rather from its physical possession of plaintiff's original note. Any injuries caused by Cenlar's claim to be the beneficiary and holder of the promissory note did not arise from MERS' identification as the beneficiary.

Plaintiff has, however, alleged facts from which one could plausibly infer that the moving defendants engaged in unfair and deceptive practices to the extent they created documents and made representations that gave the false impression that Cenlar had actual possession of the promissory note and was therefore authorized to initiate a nonjudicial foreclosure. Plaintiff alleges that defendants have engaged in similar conduct in other foreclosures under the DTA and that the wrongful initiation of foreclosure proceedings resulted in actual damages, including injury to her credit, loss of opportunities, emotional upheaval, and prolonged stress related to the potential loss of her home. While not all of these damages are compensable under the CPA, it is also likely that plaintiff expended time and resources attempting to unwind the misrepresentations and that such costs recoverable. The four-year statute of limitations poses no obstacle to claims arising from the flurry of paperwork and representations made to give Cenlar apparent authority to foreclose: those acts occurred

less than one year before this action was filed.

**E. Fraud**

Plaintiff alleges that defendants Dobron and Morris engaged in fraud as part of the larger scheme to initiate a nonjudicial foreclosure even though Cenlar did not have actual possession of the promissory note. In particular, plaintiff alleges that Dobron falsely represented that she was an Assistant Secretary of MERS when she purportedly assigned the deed of trust from MERS to Cenlar (Dkt. # 60-1 at 27), that she knew the assignment would be recorded and used to convince others that Cenlar had the authority to initiate a nonjudicial foreclosure, and that it was so used, causing plaintiff injury. Defendant Morris is accused of placing her notary seal on the Appointment of Successor Trustee and the Assignment of Deed of Trust without certifying the identity and/or authorization of the signers, thereby making it possible for Cenlar to assume the mantle of beneficiary and initiate the nonjudicial foreclosure, causing plaintiff injury. Defendants seek dismissal of the fraud claims because plaintiff has failed to state the "who, what, when, where, and how" of the alleged fraud. Dkt. # 82 at 9. Defendants do not discuss plaintiff's allegations or identify any particular deficiency. The Court declines to do it for them.

**F. Real Estate Settlement Procedures Act ("RESPA"), Regulation X**

On March 25, 2014, plaintiff, through counsel, sent Cenlar a Notice of Error under 12 C.F.R. § 1024.35 and a Request for Information under 12 C.F.R. § 1024.36 of Regulation X of RESPA. In particular, plaintiff notified Cenlar that it had misapplied payments made, resulting in the imposition of additional charges (Dkt. # 60-1 at 59), and requesting a detailed explanation of the attorney's fees assessed, including the person or entity to whom they were paid and the authorization for such charges (Dkt. # 60-1 at 68). Plaintiff alleges that Cenlar failed to respond to the notice or the request, evidencing a pattern of noncompliance with Regulation X and causing her damage. Cenlar argues that no response was necessary because

the requested information was duplicative of information plaintiff requested in December 2013.

Cenlar's obligations under Regulation X cannot be so lightly cast aside. A notice of error or request for information would be considered duplicative only if Cenlar had previously complied with the disclosure and response requirements of 12 C.F.R. § 1024.35(d) and (e) and 12 C.F.R. § 1024.36(c) and (d). The Court assumes, for purposes of this motion, that responding to an earlier qualified written request could satisfy the "previously complied" requirements. Nevertheless, the requests were not duplicative and there was no previous compliance. The time periods involved in the two inquiries were distinct, and Cenlar did not substantively respond to the attorney fee issue when it was raised in December 29, 2013. The last communication from Cenlar simply requested another extension of time in which to investigate the attorney's fees and costs levied in November 2013. No further response is in evidence. The March 2014 inquiries involved subsequent charges levied and payments made. Even if there had been a temporal overlap, Cenlar's failure to respond to the first request for information cannot justify a refusal to respond to the second request on the grounds that it was "duplicative."

**G. Truth in Lending Act ("TILA), Regulation Z**

In her eighth claim, plaintiff alleges that Cenlar misapplied her mortgage payments by using them to pay down unexplained charges for attorney's fees and costs before applying them to the interest and principal on the debt, in violation of "12 C.F.R. § 1464 (Crediting of Payments/Payoff Statements) of Regulation Z." SAC at ¶ 96. Cenlar correctly points out that there is no 12 C.F.R. § 1464, and the Court has been unable to locate a regulation with the designated title or that fits plaintiff's general description. In her opposition, plaintiff simply reiterates that her TILA claim arises under 12 C.F.R. § 1464. Dkt. # 96 at 9. This non-existent claim will be dismissed with leave to amend.

**H. Breach of Contract and Breach of Implied Duty of Good Faith and Fair Dealing**

Plaintiff alleges that the loan modification agreement she entered into with Cenlar does not authorize Cenlar to add monthly charges for attorney's fees and costs to her mortgage payment amount and that the imposition of such fees, even if not expressly prohibited by the contract, is a breach of the implied duty of good faith and fair dealing. Plaintiff's regular monthly payment is $1,525.37, and yet she has been billed thousands more than that for charges described only as "FEE - ATTORNEY FEES." By February 2014, plaintiff found herself over $10,000 in arrears and yet was unable to get Cenlar to explain how these fees were incurred, why they were her responsibility, or under what authority her mortgage payments could vary so wildly. Plaintiff argues that these fees are unauthorized and that they frustrate the purpose of the modification agreement.

Plaintiff has alleged facts giving rise to a plausible claim for relief on her contract claims. Cenlar is apparently billing plaintiff for the attorney's fees it is incurring while litigating this case. Cenlar argues that the original Deed of Trust authorizes the charges: paragraph 26 of the document allows the Lender to recover reasonable attorney's fees in any action in which the deed is construed or enforced. Dkt. # 32-1 at 136. The charges and the justification therefore are dubious. Even if the Court were to assume that Cenlar is the "Lender" for purposes of fee provision, fee recovery is authorized only "in" an action or proceeding, not at the unrestrained whim of the servicer and without any check on the reasonableness of the fees charged. Given that the loan modification agreement was intended to restructure the debt so that plaintiff could continue to make the payments and retain her home, the unpredictable and significant levies Cenlar has unilaterally imposed on her account clearly thwart the benefits plaintiff hoped to receive from the agreement.

## I. Outrage

The elements of the tort of outrage are ("1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional distress on the part of plaintiff." Rice v. Janovich, 109 Wn.2d 48, 61 (1987). If plaintiff's allegations are true, she has stated a viable claim of outrage. Plaintiff's allegations plausibly establish that what started out as a fairly standard mortgage case has morphed into a vendetta in which the mortgage servicing company, piqued that the borrower had the temerity to sue defendants and challenge the way they do business, has latched onto a strained and dubious interpretation of the deed of trust in order to punish her. Plaintiff, having just gone through the mortgage modification process, is in no position to deal with monthly payments that bounce all over the place, sometimes tripling her regular mortgage payment. Cenlar is intimately familiar with plaintiff's finances and is undoubtedly aware that such charges are beyond her ability to pay. With no ability to control the charges and, until now, no explanation for why it was happening, plaintiff fell delinquent within a matter of months, raising the specter of another foreclosure and, not surprisingly, causing severe emotional distress. Cenlar's message is crystal clear: continue with this litigation and risk losing your home. A jury would be entirely justified in believing that such conduct, if proven, is beyond all bounds of decency and utterly intolerable in our community.

## J. Rule 11 Sanctions

Plaintiff has not satisfied the safe harbor provisions of Rule 11 or otherwise complied with the Rule's procedural requirements.

## CONCLUSION

For all of the foregoing reasons, the motion to dismiss filed by Cenlar, MERS, Dobron, and Morris is GRANTED in part and DENIED in part. Plaintiff's DTA claim against the moving defendants, RESPA § 2605(e)(2) claim against Cenlar, part of her FDCPA claim,

part of the CPA claim, and the TILA claim are hereby DISMISSED.  Plaintiff is granted leave to amend the RESPA and TILA claims.  Plaintiff may proceed with discovery regarding all of her other claims against the moving defendants.  Plaintiff's request for Rule 11 sanctions is DENIED.

Dated this 3rd day of October, 2014.

_____
Robert S. Lasnik
United States District Judge