Hon. Robert S. Lasnik

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

LETICIA LUCERO,

          Plaintiff,

vs.

CENLAR FSB and BAYVIEW LOAN
SERVICING, LLC,

Defendants.

NO. 2:13-cv-00602-RSL

RESPONSE TO NWTS MOTION FOR
   SUMMARY JUDGMENT
Noting Date: October 24, 2014

    COMES NOW, Plaintiff, by and through her undersigned attorneys, files her Response to Defendant NWTS' motion for summary judgment. Plaintiff's Response incorporates all attachments hereto for support, and states the following:

## I.      STANDARD OF SUMMARY JUDGMENT

    Summary judgment is appropriate only where the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. The summary judgment inquiry turns on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52, 106 S.Ct.

RESPONSE TO NWTS' MOTION FOR
SUMMARY JUDGMENT

BARRAZA LAW, PLLC
1818 Westlake Avenue North, Suite 308
Seattle, WA 98109
206-933-7861 Fax 206-933-7863

- 1 -

2505, 91 L.Ed.2d 202 (1986). Only in the latter case may the court grant summary judgment, but a jury must resolve the dispute if the evidence permits either of two reasonable conclusions. *Id.* at 250-5. It is not the role of the district court to "weigh the evidence and determine the truth of the matter" but instead to determine whether there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250. More importantly, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." It is true that the issue of material fact required by *Rule 56(c)* to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.*" First National Bank of Arizona v. Cities Service Co*., 391 U.S. 253, 288-289 (1968).

**<u>Featuring Plaintiff's default is a tactic used by NWTS & RCO to distract from their misconduct</u>**

NWTS' feature of "Plaintiff's Admitted Default" is a calculated approach to divert the Court's attention from the real issue of this case, which is their misconduct. While those less sophisticated about the subject matter might be misled into feeling a disdain for people under foreclosure as "deadbeats," NWTS' tactic, given its track record with the tribunal is shameful because this is not a case by the defaulter who cries about "technicalities" but about certain business practices of NWTS, hereinafter referred to as the Standard Business Practices or

RESPONSE TO NWTS' MOTION FOR
SUMMARY JUDGMENT

BARRAZA LAW, PLLC
1818 Westlake Avenue North, Suite 308
Seattle, WA 98109
206-933-7861 Fax 206-933-7863

- 2 -

"SBP" that circumvent the objectives of the Washington Deed of Trust Act, and inflict harm upon Plaintiff, those who are similarly situated and the public at large.

## II.   NWTS' CONDUCT VIOLATED THE FAIR DEBT COLLECTION PRACTICES ACT
### Plaintiff's FDCPA claims regarding the NOD are not time barred

Plaintiff's present FDCPA claim based on the Notice of Default violating *15 U.S.C. §1692e(6)(A)* relates back to transactions, facts or occurrences she set forth in her original pleading which was filed on April 3, 2013 (Dkt. #1). *Fed. R. Civ. P. 15(c)(2); Martin v Sch. Dist. No. 394*,  393 F. Supp. 2d 1028 (D.C. Idaho 2005) (Teacher's amended complaint which alleged claim for violation of federal due process under *42 USCS § 1983*, related back to his original complaint because newly-asserted claim arose out of same operative facts, namely, circumstances leading up to and including termination of his employment).  Moreover, having filed for dismissal twice without asserting statute of limitations as a defense, NWTS has waived it. The failure to raise a specific statute of limitations argument may constitute a waiver even if other statute of limitations arguments are raised. *Dexia Credit Local v. Rogan*, 629 F.3d 612, 626 (7th Cir. 2010); *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 128n S.Ct. 750; 169 L.Ed.2d 591 (2008). Plaintiff's Second Amended Complaint relates back to the original Complaint filed on April 3, 2013, and NWTS has waived statute of limitations defense.

### Plaintiff's FDCPA Claims concerning the NOD are meritorious

This Court has held in *McDonald v. OneWest Bank, FSB*, No. C10-1952, 2012 WL 555147, at *4 n.6, 2012 U.S. Dist. LEXIS 21449, at *14 n.6 (W.D. Wash. Feb. 21, 2012), that NWTS is subject to the FDCPA as a debt collector as defined under *15 U.S.C. §§1692-1692p*.

RESPONSE TO NWTS' MOTION FOR
SUMMARY JUDGMENT

BARRAZA LAW, PLLC
1818 Westlake Avenue North, Suite 308
Seattle, WA 98109
206-933-7861 Fax 206-933-7863

- 3 -

Specifically, this Court held the issuance of the notice of default by NWST falls within the ambit of *15 U.S.C. 1692f(6)(A). McDonald v. OneWest Bank*, 929 F.Supp.2d 1079 (W.D. Wash. 2013). Further, NWTS' foreclosure activities are subject to *§1692f,* which prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." A debt collector violates that section by "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if … there is no present right to possession of the property claimed as collateral through an enforceable security interest." *Walker v. Quality Loan Serv. Corp. of Wash.*, 176 Wn.App. 294, 308 P.3d 716 (2013).

NWTS' act of issuing and transmitting the Notice of Default on August 27, 2012, is an act in furtherance of a foreclosure proceeding and violated *§1692f(6).* Where the NOD informed Plaintiff that unless Plaintiff cures the default and reinstates her loan, her home will be sold in foreclosure, it constitutes an attempt by NWTS to enforce the security interest on behalf of Cenlar via the NOD violated *§1692f (6)(A).* The record is lacking any proof that *on that date*, either MERS or Cenlar was in actual possession of Plaintiff's Note. As such, Cenlar did not have the present right to possession of Plaintiff's home and the threat communicated by NWTS via the NOD was unlawful.

After Plaintiff had completed her trial payments and when there was no apparent reasons for the foreclosure process to be commenced or continued in any way, on December 6, 2012, NWTS violated *§1692f (a)(A)* when it recorded the ADOT and ASOT. Stenman testified that the recording of these documents were to prevent any delay in the nonjudicial foreclosure of Plaintiff's property*, in the event* FFA Mediation failed to result in her retaining her home:

> Q      Are there any activities that you would continue to do?

RESPONSE TO NWTS' MOTION FOR
SUMMARY JUDGMENT

BARRAZA LAW, PLLC
1818 Westlake Avenue North, Suite 308
Seattle, WA 98109
206-933-7861 Fax 206-933-7863

- 4 -

A       We might, we might procure the assignment and the appointment.
Q       Why is that?
A       Well, if it comes out of mediation and there is no successful mediation,
        we don't want any delay in getting the process started again.

*Id.,* 114-115. NWTS' admission that it recorded the documents *just in case* is evidence that on December 6, 2012, NWTS was without the present intention to take possession of Plaintiff's home. Thus, the NOD violated *§1692f(6)(B).*

In addition to the foregoing violations, within the NOD, NWTS admits that it issued the Notice as the "duly authorized agent" of Cenlar, a debt collector. NWTS transmitted the NOD months before it was formally appointed trustee (**Exhibit PP**, Stenman Deposition, **pp. 48, 59**). Arguably, the NOD, in addition to being a part of the nonjudicial foreclosure process, is a stand-alone communication sent by a debt collector to enforce the underlying personal obligation owed by Plaintiff.[1]   The NOD is intended to be a debt collection communication because it demands monetary payments and some borrowers in fact cure the default by paying money. Some other borrowers, including Plaintiff, can obtain a loan workout and the foreclosure process would not occur. In that context, the NOD qualifies as a debt collection communication pertaining to the "character, amount, or legal status of the debt," giving rise to liability under *§1692e.*[2]

The NOD that NWTS sent to Plaintiff via the mails and posting demanded the cure amount to be paid, or foreclosure would result. The NOD stated that "the beneficiary declares you to be in default" but does not identify the beneficiary by name. Rather, it refers to the Deed

---

[1] NWTS' Motion asserts that "NWTS was not required to be trustee in order to issue the Notice of Default." (**Dkt. #110**, p. 14. Lines 1-2). NWTS sent Plaintiff the NOD on August 27, 2012, but did not record the Appointment of Successor Trustee until December 6, 2012.

[2] **Exhibit A**, NOD

RESPONSE TO NWTS' MOTION FOR                                        BARRAZA LAW, PLLC
SUMMARY JUDGMENT                                              1818 Westlake Avenue North, Suite 308
                                                                          Seattle, WA 98109
                                                                  206-933-7861 Fax 206-933-7863

- 5 -

of Trust naming MERS as beneficiary. Where MERS had never declared Plaintiff to be in default, and NWTS knew this for a fact, the NOD *mischaracterized* the debt as being secured in favor of MERS as the beneficiary but is owed to Cenlar as the creditor.

The NOD also misrepresented the *amount* of the debt by adding the Trustee Fee to the amount needed to cure. Any work performed by NWTS as an authorized agent of Cenlar during this time cannot be charged to Plaintiff's loan because such charges were not authorized by the loan documents or any other law. By labeling the fee as "Trustee Fee", NWTS misled Plaintiff, and those who are similarly situated into believing that said fee was lawful or authorized. This violates *§1692f(1)* . Finally, the NOD misstated the *legal status* of the debt by identifying Cenlar to be the "creditor to whom the debt is owed" when this is plainly false. The NOD therefore violated *§ 1692e*, which prohibits debt collectors from committing a "false, deceptive or misleading representation or means in connection with the collection of any debt." The NOD's contradictory or confusing language gives rise to liability under *§1692f(1)* and *§1692e(2)(B)*. [3]

In defense of NWTS, Stenman explained that the disclosure within the NOD that Freddie Mac is the owner of Plaintiff's Note is based on information it received from the referral and NWTS does not verify whether it is true. **Id. at 55-56**. Stenman and  NWTS, on the advice of counsel, equate "investor" with "owner."  **Id. at 57-58**. When referred to paragraph L(2) of the NOD where Cenlar is identified as "the creditor to whom the debt is owed," Stenman indicated "Well, it's our form [sic]. That's what I'm told to put in that

---

[3] **Exhibit MM**, while NWTS charged Plaintiff $542.50 in the NOD, it invoiced Cenlar only $437.50.

RESPONSE TO NWTS' MOTION FOR
SUMMARY JUDGMENT

BARRAZA LAW, PLLC
1818 Westlake Avenue North, Suite 308
Seattle, WA 98109
206-933-7861 Fax 206-933-7863

- 6 -

section … I'm doing that on the advice of counsel." **Id. at 59**.  Stenman believes, as the

Director of Operations for NWTS that the form used for notices of default, including Plaintiff's

NOD, is clear, and he would expect the recipients of the NOD to contact his company for

clarification if they are unclear of her rights. **Id. at 51**. However, given Stenman's own

struggle over the definitions contained within the NOD, it became painfully obvious that

Stenman himself could not come up with a coherent message conveyed by the NOD and that

the NOD is self-contradictory and misleading.

The Ninth Circuit had rejected the debt collector's position that it is incumbent upon the

perplexed consumer seek explanation of confusing or misleading language within debt

collection communications holding that the Act is "aimed squarely at the debt collector's

conduct, rather than its effect on the consumer." *Tourgeman v Collins Fin. Servs.* 755 F.3d

1109, 1117 (9th Cir. 2014).  In fact, in the Ninth Circuit, an FDCPA plaintiff need not even

have actually been misled or deceived by the debt collector's representation. Rather, liability is

determined by the standard of whether the hypothetical "least sophisticated debtor" likely

would be misled. *Id.* at 1118; *e.g., Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 &

n.2 (9th Cir. 2011); *Terran v. Kaplan*, 109 F.3d 1428, 1431 (9th Cir. 1997). This inquiry is

objective and is undertaken as a matter of law. *Gonzales*, 660 F.3d at 1061. Based on

*Tourgerman*, the Court can decide as a matter of law that the NOD, viewed in its totality,

violated the FDCPA. *Tourgeman*, at 1122, n.10 ("Nelson & Kennard may be correct that the

FDCPA does not require that the original creditor be identified in collection letters sent to

consumers — but where a debt collector has chosen to identify the original creditor, and has

done so inaccurately, the false representation would likely thwart a consumer's ability to freely

RESPONSE TO NWTS' MOTION FOR
SUMMARY JUDGMENT

BARRAZA LAW, PLLC
1818 Westlake Avenue North, Suite 308
Seattle, WA 98109
206-933-7861 Fax 206-933-7863

- 7 -

navigate a course of action in response to the collection notice. Congress's recognition in the FDCPA that this information is important — even if not so essential that debt collectors must disclose it without first being asked, *see 15 U.S.C. § 1692g(a)(5)* — supports the conclusion that its false provision could have this type of detrimental impact on the consumer.")

NWTS' justification that it could impose fees and costs on behalf of Cenlar under Section 22 of the Deed of Trust misses the mark completely because only the Lender can invoke Section 22 in the event of an acceleration. Nowhere within the section is the loan servicer mentioned. Finally, as trustee, NWTS can only recover its fees from the sale proceeds, but not before.

As a result of the foregoing violations of the FDCPA, Plaintiff had to research, composed, and issued Qualified Written Requests. Plaintiff's New Principal Balance has been inflated by the unearned or unnecessary fees based on the activities that NWTS generated, specifically, Trustee Fee in the amount of $542.50, and $14.00 each for the recording of the Assignment of Deed of Trust and Appointment of Successor Trustee. These damages are compensable under *§1692k(a)(3)*.

### Plaintiff's claims for damages under the DTA are not viable under Frias but can form the basis for Negligent Misrepresentation

On September 18, 2014, the Washington Supreme Court issued *Frias v. Asset Foreclosure Servs. Inc.*, 2014 Wash. LEXIS 763 (2014), rendering Plaintiff's claims for money damages under the DTA without a foreclosure sale untenable.  However, *Frias* holds that under appropriate factual circumstances, violations of the DTA may be actionable under the Washington Consumer Protection Act and the same principles that govern CPA claims generally apply.  Plaintiff respectfully submits that the DTA violations she has pleaded against

RESPONSE TO NWTS' MOTION FOR
SUMMARY JUDGMENT

BARRAZA LAW, PLLC
1818 Westlake Avenue North, Suite 308
Seattle, WA 98109
206-933-7861 Fax 206-933-7863

- 8 -

NWTS constitute the tort of Negligent Misrepresentation for which damages are recoverable. The tort is committed by one who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. *Esca Corp. v. KPMG Peat Marwick*, 135 Wn.2d 820, 959 P.2d 651 (1998).

There is no denial that NWTS holds itself out as a for-profit trustee company who supplies information about nonjudicial foreclosure to borrowers who are under the threat of losing their homes so that they can choose the appropriate mitigation option. Where the transfer of mortgage notes and the beneficial interests under deeds of trust are not required to be recorded, in order for Plaintiff to learn exactly how her loan had been transferred from the original lender to one or more entities down the line; she must rely on NWTS to inform her as to who the real stakeholder is, how and when he acquired her loan and what she must do to negotiate with this person or entity to prevent the loss of her home. Plaintiff's reliance on NWTS for said information is reasonable. Moreover, NWTS is required, under *RCW 61.24.030(7)(a)*, to have proof of ownership of the subject loan and NWTS can easily access this information via the communication channel established by loan servicers. NWTS knew that the information is necessary to guide Plaintiff and others to make a financial decision about their homes but failed to institute any policy or procedure to ensure that the information it conveys to the Plaintiff is clear and accurate.

NWTS' lack of care is transparent in the NOD where it represented to Plaintiff that the beneficiary has declared her in default but did not identify the beneficiary by name. Where the NOD informed Plaintiff that Freddie Mac owns her Note, Freddie Mac has in fact never

RESPONSE TO NWTS' MOTION FOR
SUMMARY JUDGMENT

BARRAZA LAW, PLLC
1818 Westlake Avenue North, Suite 308
Seattle, WA 98109
206-933-7861 Fax 206-933-7863

- 9 -

declared Plaintiff to be in default. Where the NOD identified Cenlar as the creditor to whom Plaintiff owes the debt, Cenlar is not and has never been the entity with whom Plaintiff contracted or one who took Plaintiff's Note for value. Finally, NWTS' issuance of the NOD charging Plaintiff a Trustee Fee in the amount of $542.50 when a trustee had yet been appointed in Plaintiff's case is unjustified and is negligent.

NWTS negligently misrepresented to Plaintiff and the public via its manufacturing and recording of the MERS Assignment of Deed of Trust within which MERS is referred to as the "present beneficiary" when MERS in fact never owned Plaintiff's loan, never held Plaintiff's Note and thus could never be the Beneficiary under Plaintiff's Deed of Trust. The misrepresentation violated *RCW 61.24.005.*  In recording the Assignment, NWTS negligently misrepresented to Plaintiff and the public that MERS held certain beneficial interest in Plaintiff's loan and effectuated a substantive transfer of beneficial interest, when no such transfer occurred. NWTS negligently misrepresented to Plaintiff and the public via the manufacturing and recording of the Appointment of Successor Trustee that Cenlar, the appointer, had the requisite statutory authority to appoint NWTS when, on the date of the recording of the Appointment, Cenlar was neither the owner nor the actual holder of Plaintiff's Note. NWTS' misrepresentation also violated *RCW 61.24.010(2).*

NWTS negligently misrepresented to Plaintiff and the public by recording of the MERS Assignment of Deed of Trust and the Appointment of Trustee in certain sequence to give the impression that the Assignment occurred before the Appointment when these events did not so occur. This violates *RCW 61.24.010(4).* Also, NWTS was negligent in recording the MERS Assignment and Appointment representing its authority as trustee when there was no immediate

RESPONSE TO NWTS' MOTION FOR
SUMMARY JUDGMENT

BARRAZA LAW, PLLC
1818 Westlake Avenue North, Suite 308
Seattle, WA 98109
206-933-7861 Fax 206-933-7863

- 10 -

need for a nonjudicial foreclosure. Strangely enough, NWTS admits that it "never purported to act as trustee pursuant to the Appointment."[4] If NWTS never needed to act as trustee, what was the reason for NWTS to record the Appointment other than to infect Plaintiff's chain of title unnecessary and to mislead the public as to who has the power of sale under her Deed of Trust.

NWTS negligently misrepresented to Plaintiff, Washington State Department of Commerce, the mediator and the United States District Court, by manufacturing beneficiary declarations representing that Cenlar was the holder of Plaintiff's Note when NWTS knew this to be untrue. NWTS, via its attorney, RCO, negligently misrepresented that the Beneficiary Declaration filed with the Court was a true and correct copy of the original when they had no original in their possession.  NWTS' negligence is evidenced by its policy of "Don't Ask, Don't Tell."

Jeff Stenman was shown a number of notices of default which he acknowledged came from NWTS and which all have a trustee fee included in the cure amount. When asked why Plaintiff was charged a Trustee Fee while NWTS was acting as an agent of Cenlar, Stenman explained, "It's a label in the form. We don't differentiate between some third –party contractor fee and a trustee's fee. So I guess I would say that's a form, a form label." **Ex. PP at 43-49** When asked whether Plaintiff, as the recipient of the NOD, could reconcile how the Trustee Fee was added to the total amount she needed to cure with the fact that NWTS was only acting as agent for Cenlar, Stenman respond, "I don't know what your client would assume."  **Id. at 50-51**. Stenman confirmed that in the event that the borrower makes payment to cure and prevent

---

4 Dkt. #110, p. 26: 13-15.

RESPONSE TO NWTS' MOTION FOR
SUMMARY JUDGMENT

the sale, the Trustee Fee would be included in the cure amount. **Id. at 54.**

In discussing paragraph K of the NOD, where Freddie Mac is identified as the owner of Plaintiff's Note, Stenman testified he believes the owner is one who receives principal and interest payments. However Stenman doesn't know who made the determination that Freddie Mac is the owner of Plaintiff's Note because NWTS simply copied the information off the referral sent by Cenlar. Stenman testified the practice by which where Freddie Mac is referred to as the investor in the foreclosure referral, NWTS would list Freddie Mac as the owner, on the advice of counsel. Id., at 54-58.

In discussing paragraph L of the NOD, where NWTS identified Cenlar as "the creditor to whom the debt is owed," Stenman testified that NOD is a form and that under the advice of counsel, Cenlar is identified in such manner. Stenman understands that a creditor is "the party to who [sic] the money is owed." **Id. at 58-60**. According to Stenman, NWTS simply accept all representations made by its loan-servicer-principal via the referral without questions, and the burden rests upon the borrower to question the information contained within the NOD. **Id. at 50-51; 77**. When ask whether it is important for a borrower to reconcile the preamble of the NOD Template which reads the "Beneficiary declares you to be in default," with the disclosures in paragraph K identifying Note Owner and Loan Servicer, Stenman replied "I don't know." When asked: "Would it have been important for the borrower to know who declares him to be in default," Stenman replied "I don't know." **Id. at 94-95**.

Another corporate officer of NWTS, Vonnie McElligott, Assistant Vice President, McElligott testified that while there may be a distinction between the terms "lender" and "servicer," herself and her team at NWTS "… use it unfortunately simultaneously." **Exhibit**

RESPONSE TO NWTS' MOTION FOR
SUMMARY JUDGMENT

BARRAZA LAW, PLLC
1818 Westlake Avenue North, Suite 308
Seattle, WA 98109
206-933-7861 Fax 206-933-7863

- 12 -

**QQ,** McElligott's Deposition Transcript, **p. 20**. McElligott does not know whether the "owner" is the same as the "lender." **Id. at 27-28**. She believes that the "holder" of the note holds it in a physical sense but she also understands the "actual holder" of the note to mean "The one who actually holds the note was the beneficiary declaration at one time.**" Id. at 28-29**. When asked to define "beneficiary" McElligott answered, "the holder of the note." When asked whether that means the "actual holder of the note," McElligott didn't know. When pressed further, McElligott admitted: "Well, then, I don't know that they are the actual holder, except for the fact that they sign a beneficiary declaration saying that they are." **Id. at 30-31**.

When asked to define "the creditor to whom the debt is owed," McElligott did not have a definition. She cannot identify anywhere in NWTS policies or procedures where that this entity is actually defined in writing. In answering the hypothetical question of "if an employee comes to you and ask you who the beneficiary in this loan is, what would you tell that person?' McElligott responded: "Who signed the beneficiary declaration." McElligott believes that the referring entity and the beneficiary should be the same entity. When asked where else besides the referral and the beneficiary declaration she could go to ascertain the beneficiary, McElligott responded that NWTS could "look for assignments, but it's not required." Above all, McElligott simply did not see the need for her and her employees to consult with NWTS' attorneys about whether the information given to NWTS by the servicers are accurate as relating to the identity of the beneficiary. **Id. at 31-33**. McElligott testified that she had never received a direct referral from MERS to foreclose. **Id. at 21**. Likewise, she had, within her scope of employment at NWTS, never reached out to MERS to find answers relating to her work functions. There was no direct referral to foreclose from Freddie Mac and no provisions within NWTS to

RESPONSE TO NWTS' MOTION FOR
SUMMARY JUDGMENT

BARRAZA LAW, PLLC
1818 Westlake Avenue North, Suite 308
Seattle, WA 98109
206-933-7861 Fax 206-933-7863

- 13 -

communicate with Freddie Mac. **Id. at 24**.  It is unreasonable for NWTS then to create MERS

Assignment and Appointment under these facts. If there is any question of whether Plaintiff

justifiably relied on these documents, the question is one of fact and the Court should not

dispose of it on summary judgment. *See Thompson v. St. Regis Paper Co.,* 102 Wn.2d 219, 233,

685 P.2d 1081 (1984).

NWTS' negligent misrepresentation has caused Plaintiff to expend time and resources to

inquire further via Qualified Written Requests. It has enabled Cenlar, Dobron, and Morris to

execute unnecessary foreclosure documents and generate additional fees and costs which

ultimately affected the modified amount or New Principal Balance. Plaintiff has suffered and

continues to suffer the financial hardship resulting from having to pay these fees and cost, as

well as interests, over the life of her new loan. The inflation of fees and costs generated by the

Defendants will also make it difficult for Plaintiff to sell the property to pay off the new

mortgage debt in the future.

### NWTS' conduct violated Washington Consumer Protection Act

To recover from a violation under the CPA, Plaintiff must prove (1) an unfair or

deceptive act or practice; (2) the act or practice occurred in trade or commerce; (3) the act or

practice impacts the public interest; (4) the act or practice caused injury to the plaintiff in his

business or property; and (5) the injury is causally linked to the unfair or deceptive act.

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wash.2d 778, 780, 719

P.2d 531 (1986). In *Klem v. Wash. Mut. Bank,* 176 Wn.2d 771, 295 P.3d 1179 (2013), the

Supreme Court clarified that "that a claim under the Washington CPA may be predicated upon

a *per se* violation of statute, an act or practice that has the capacity to deceive substantial

RESPONSE TO NWTS' MOTION FOR
SUMMARY JUDGMENT

portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *Id.* at 787.

### Unfair/Deceptive Notices of Default

First, NWTS' practice of sending Plaintiff a Notice of Default representing itself as duly authorized agent of the loan servicer, and while actually acting as an agent of Cenlar, adding a Trustee Fee to the total amount needed to cure by Plaintiff, are both unfair and deceptive. Jeff Stenman, in his deposition taken in this case, confirmed that when NWTS issued the NOD to Plaintiff on August 27, 2012, it was acting in the capacity of an agent for Cenlar and it had not been appointed trustee. (**Exhibit PP**, Stenman Deposition, **p. 48**). Stenman also confirmed that if the borrower is able to cure the default and reinstate her loan prior to sale, she would have to pay that Trustee Fee, which is what has happened in Plaintiff's case**. Id. p. 54.**

Based on NWTS' admission, the question of what impact the NOD should have on Plaintiff as the recipient is one only Plaintiff can testify to. This question therefore is one of material fact. Moreover, where the jury could agree with Plaintiff that adding a trustee's fee onto the amount she needed to cure when no trustee's work had been done is both unfair and deceptive, the outcome of the case would change rendering summary judgment improper.

Stenman explained that the disclosure within the NOD that Freddie Mac is the owner of Plaintiff's Note is based on information it received from the referral and NWTS does not verify whether it is true. **Id. at 55-56.** NWTS, on the advice of counsel, equates "investor" with "owner." **Id. at 57-58**. When referred to paragraph L(2) of the NOD where Cenlar is identified as "the creditor to whom the debt is owed," Stenman indicated "Well, it's is our form [sic]. That's what I'm told to put in that section … I'm doing that on the advice of counsel." **Id. p. 59.**

RESPONSE TO NWTS' MOTION FOR
SUMMARY JUDGMENT

BARRAZA LAW, PLLC
1818 Westlake Avenue North, Suite 308
Seattle, WA 98109
206-933-7861 Fax 206-933-7863

- 15 -

Because the jury may accept Plaintiff's contention that it is deceptive for NWTS to identify Freddie Mac as the owner of her Note without verifying the accuracy of such information, the case should not be disposed on summary judgment. Moreover, if the jury finds that it was deceptive for NWTS to identify Cenlar as the "creditor to whom the debt is owed" because NWTS  knew for a fact that Cenlar is only the servicer, then NWTS' position that the NOD gives rise to no liability, is untenable.

Stenman estimated in 2012 when Plaintiff received her NOD, NWTS sent out between 8,000 to 10,000 notices of default, maybe more. **Id. at 63-64**. There is no denial that NWTS issued these to other Washingtonians via the mails or other means. This volume of transmission occurring in trade or commerce, even limited to 2012, is sufficiently substantial to affect a public interest.

## The circumstances surrounding NWTS' creation of the Beneficiary Declarations rendered them deceptive.

In Plaintiff's case, NWTS secured two separate Beneficiary Declarations; the one dated October 5, 2012 was produced in the FFA mediation and the other, dated October 16, 2012, was filed with this Court by Charles Katz, Esq., formerly with RCO and currently serving as in-house counsel for NWTS, who represented that the copy he filed is a "true and correct copy of the original." [5] The contents of the Declarations are the same whereupon NWTS prepared the verbiage declaring Cenlar, the signatory, to be the Note Holder; the beneficiary declaration is yet another template originated by NWTS.

---

5 **Dkt. #9,** with October 16, 2012 Beneficiary Declaration as attachment.

RESPONSE TO NWTS' MOTION FOR
SUMMARY JUDGMENT

BARRAZA LAW, PLLC
1818 Westlake Avenue North, Suite 308
Seattle, WA 98109
206-933-7861 Fax 206-933-7863
- 16 -

NWTS knew or should have known, by virtue of its reliance on the Deed of Trust, and the Note for its business as trustee, that Cenlar cannot be the Note Holder as that term is defined in the loan documents. In signing the Note, Plaintiff acknowledged: "I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" [6] Paragraph 20 of the Deed of Trust [7] similarly defines the loan servicer as the entity that "collects periodic payments" and performs other loan servicing functions. Nothing in the Deed of Trust or the Note, however, permits the Cenlar as loan servicer to declare a default or to foreclose upon the security.

It is logical to conclude that because NWTS had no dealings with either the original lender or Freddie Mac, NWTS had no proof of an actual transfer from the lender to Freddie Mac. NWTS, who continues to be confused about whether Freddie Mac is the investor or the owner, or whether these two things mean the same, is incapable of proving ownership by Freddie Mac, let alone an agency relationship between Freddie Mac and Cenlar concerning the specifics of Plaintiff's loan. Assuming **arguendo** that an agency relationship between Freddie Mac and Cenlar existed, there is no proof within the record that NWTS can, by virtue of this relationship, be the agent of Freddie Mac. Therefore, NWTS engaged in an unfair and deceptive practice by creating and transmitting the Beneficiary Declarations asserting as fact when NWTS had no information at all that Cenlar was in actual possession of the Note under some kind of authority conferred by Freddie Mac.

---

6 **Exhibit C**, Note.
7 **Exhibit D**, Deed of Trust

RESPONSE TO NWTS' MOTION FOR
SUMMARY JUDGMENT

BARRAZA LAW, PLLC
1818 Westlake Avenue North, Suite 308
Seattle, WA 98109
206-933-7861 Fax 206-933-7863

The circumstances surrounding the making of the Beneficiary Declarations in this case truly highlight NWTS' operations as a paper mill. Jeff Stenman testified that NWTS does not request the original beneficiary declaration and but receives only an electronic copy via LPS platform. Stenman believes he had never seen an original of the October 5, 2012, Beneficiary Declaration. **Ex. PP, p. 31**. When shown a copy of the second Beneficiary Declaration, dated October 16, 2012, Stenman could not explain why there were two Beneficiary Declarations in Plaintiff's case.  When asked whether it would be significant for NWTS to confirm that the digital copy it receives via LPS is a true and correct copy of the original, Stenman reply, "I don't know why I would doubt that it wasn't." Relating to documents sent to NWTS by the referring source being accurate and truthful, Stenman expressed: "I would say I wouldn't – I have – I would not have any questions on relying on them. I would rely on them." **Id. at 31-36**. When shown another pair of beneficiary declarations that NWTS had generated in another case; Stenman similarly could not account for why there two beneficiary declarations bearing different dates and different signatories. **Id. at 34-42**.

Because the Beneficiary Declarations were created by NWTS and given to Cenlar to sign, NWTS did more than simply deferred to Cenlar as the signatory; NWTS is directly liable for the falsities represented within the Beneficiary Declarations.  While there is no prohibition for NWTS to produce more than one declaration, the existence of multiple documents being generated for the same purpose suggests that NWTS is very good at producing documents on command and very bad at ensuring the accuracy or truthfulness of the documents manufactured or produced.

RESPONSE TO NWTS' MOTION FOR
SUMMARY JUDGMENT

BARRAZA LAW, PLLC
1818 Westlake Avenue North, Suite 308
Seattle, WA 98109
206-933-7861 Fax 206-933-7863

- 18 -

Presently, NWTS denied that it ever relied upon the Beneficiary Declarations .[8] Stenman testified that because there was no need to issue a notice of trustee sale, NWTS never relied upon the Beneficiary Declarations. Id. at 33-34. This reinforces Plaintiff's claim that NWTS' practice of taking unnecessary actions to generate fees for itself and its affiliated companies is both unfair and deceptive. *Holiday Resort Comm. Ass'n v. Echo Lake Assoc., LLC*, 1347 Wn.App. 210, 135 P.3d 499 (2006)("Implicit in the definition of 'deceptive' under the CPA is the understanding that the practice misleads or misrepresents something of material importance."

**NWTS' act of manufacturing and recording the MERS Assignment and Appointment of Successor Trustee is unfair and deceptive**

Jeff Stenman acknowledged that NWTS' act of procuring and recording the Assignment of Deed of Trust and the Appointment of Successor Trustee was not related to an imminent foreclosure, but as a provisional measure, in case FFA mediation fails. Stenman testified that this is a directive that comes from the servicers. Typically, whether mediation fails or succeeds, NWTS would record the documents once returned from the servicer. **Id. at 114-116**.  In this case, the Appointment[9,] is a template used by NWTS. Cenlar is filled in or "merged fields" as the "present beneficiary" because that is what the referral told NWTS to "foreclose in the name of."  The Appointment appeared to have been signed and notarized on October 3, 2012. **Id. at 118-120.**

---

8 Dkt. #110,

9 **Exhibit I,** Appointment of Successor Trustee.

RESPONSE TO NWTS' MOTION FOR
SUMMARY JUDGMENT

BARRAZA LAW, PLLC
1818 Westlake Avenue North, Suite 308
Seattle, WA 98109
206-933-7861 Fax 206-933-7863

- 19 -

In reviewing the Appointment signed by Michael Blair in his capacity as vice president of Cenlar, Stenman has no knowledge whether Mr. Blair in fact possessed such corporate authority. Similarly, he does not know anything about the notary public, defendant Nancy K. Morris who notarized Mr. Blair's signature. When confronted with the fact that Morris did not fill in the blanks to verify either Mr. Blair's identity or his corporate capacity, Stenman testified that NWTS did not have any concerns as reflected within its system notes. **Id. at 133-135**. Yet, looking at the Appointment on the date of his deposition, Stenman appeared to have second thoughts, "I might ask our in-house counsel if they think it's an effective notary." **Id. at 135.**

Together with the Appointment, NWTS also manufactured an Assignment of Deed of Trust ("ADOT")[10], naming MERS as the assignor but sending it to Cenlar for signature and notarization as if the Assignment was actually executed by MERS. Upon receiving the signed and notarized ADOT back from Cenlar, which is dated for November 21, 2012, on December 6, 2012, NWTS recorded it right in front of the Appointment despite the fact that the Assignment was executed more than a month after the Appointment. According to Stenman, even though NWTS might be in receipt of the appointment first, it would record the assignment before the appointment; this is the order that Stenman had been instructed to record. Stenman acknowledged that NWTS cannot record the documents in the order of their actual execution dates because " … in the [public] record it would look like the person that was appointing me wasn't of record yet." This practice is part of NWTS' operations; it is

---

10 **Exhibit F**, MERS Assignment of Deed of Trust.

RESPONSE TO NWTS' MOTION FOR
SUMMARY JUDGMENT

BARRAZA LAW, PLLC
1818 Westlake Avenue North, Suite 308
Seattle, WA 98109
206-933-7861 Fax 206-933-7863

- 20 -

intentional and it has occurred in other cases.[11] **Id. at 123-127.** At the same time that NWTS

acknowledged that the order of recording is necessary to under *RCW 61.24.010(2),* Stenman

has admitted that NWTS' practice of recording is designed specifically to give the appearance

of and not actual compliance with the law. As such, NWTS' practice of recording is deceptive.

Where NWTS recorded the ADOT and AOST in December of 2012 when NWTS and

Cenlar both knew that Plaintiff had already accepted a loan modification and had already

completed the trial payments, it had no reasons to do so other than to generate fees; its conduct

is unfair to Plaintiff. NWTS' has mistaken Plaintiff's claims under the CPA as a challenge to

the validity of the MERS Assignment and Appointment while they are in fact claims based on

the effects of these recordings upon Plaintiff and the public. The recordings caused Plaintiff's

additional fees and costs, and it caused the public to be misled as to the true chain of transfer.

Contrary to NWTS' present effort to disavow the effect of the MERS assignments it generated

and recorded, NWTS has contended that MERS Assignments are necessary to stabilize the

Land Title Record. [12]

In the case of *Meyer v. U.S. Bank (In re Meyer),* 506 B.R. 533, 549 (W.D. Wash. 2014),

the court heard testimony at trial about the same practices by NWTS, including 1) confusing the

role of trustee with that of an "authorized agent" of the entity being foreclosed in the name of;

2) stating in the notice of default that the beneficiary has declared plaintiff to be in default when

in fact there was no declaration of default issued by the lender; 3) having a policy of not

---

11 **Exhibit J,** Assignment and Appointment in the matter concerning Donald F. Cook, Jr. and
Heather C. Cook, recorded in the reverse order of their execution dates.
12 **Exhibit RR,** Jeff Stenman's testimony in the case of *Lemelson v. NWTS and RCO*, King County Superior
Court case number 13-2-27480-9 , pp. 34-35.

RESPONSE TO NWTS' MOTION FOR
SUMMARY JUDGMENT

BARRAZA LAW, PLLC
1818 Westlake Avenue North, Suite 308
Seattle, WA 98109
206-933-7861 Fax 206-933-7863

verifying or asking about the information being provided by the loan servicer. In concluding

that NWTS was liable, Judge Overstreet expressed: "There can be no serious question that the

actions of NWTS relative to Meyers' foreclosure action and other foreclosures handled by

NWTS in the State of Washington occurred in trade and commerce." Additionally, Judge

Overstreet found that "Whether NWTS complies with its duties under the DOTA has a

significant impact on the public interest." *Id.*

NWTS' standard practices in this case are identical to those in *Meyer* where the court

held that 1) the standard practices of NWTS ignore the importance of a foreclosure trustee's

duties to the consumer borrower; 2) NWTS' policy of accepting whatever is contained in a Loss

Mitigation Form and Beneficiary Declaration without question, and 3) moving forward with

foreclosure against the borrower without exercising any independent due diligence to confirm

the authority to foreclose, all violated the CPA.[13]

### <u>Causation and Damages</u>

NWTS' lengthy analysis on damages resulting from violations of the DTA misses the

point that under either the FDCPA or the CPA, or in the alternative, the theory of Negligent

Misrepresentation, the record fully supports Plaintiff's claim that she has suffered and

continues to suffer an economic hardship caused by NWTS' charging her the Trustee Fee,

recording fees and other fees which were unauthorized under the loan documents or any other

Washington law where such fees were added on to the New Principal Balance that Plaintiff

must pay over the course of forty years—the inflation of Plaintiff's mortgage loan is the

---

13 The facts of this case are not governed by *Trujillo v. NWTS*, 181 Wn.App. 884, 326 P.3d 768 (2014) because 1) the defendant NWTS cannot come up with any proof that Cenlar was the Note Holder, and 2) Jeff Stenman testified that NWTS did not rely on the Beneficiary Declarations.

RESPONSE TO NWTS' MOTION FOR
SUMMARY JUDGMENT

BARRAZA LAW, PLLC
1818 Westlake Avenue North, Suite 308
Seattle, WA 98109
206-933-7861 Fax 206-933-7863

- 22 -

damage to her property. Because the CPA addresses "injuries" rather than "damages," Plaintiff need not prove quantifiable monetary loss. *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 57, 58, 204 P.3d 885 (2009). Under the CPA, Plaintiff can establish injury based on unlawful debt collection practices even where there is no dispute as to the validity of the underlying debt. *Id.* at 55-56 & n.13. Plaintiff testified that she was confused by the NOD and set out to "connect the dots" about her loan by issuing the QWRs to Bayview and Cenlar, incurring loss of time and resources (**Exhibit SS**, Transcript of Plaintiff's Deposition, **pp. 324-326**). Additionally, under the FDCPA, Plaintiff can recover damages for emotional distress. *Healey v. Trans Union LLC,* 2011 U.S. Dist. LEXIS 53522 (W.D. Wash. 2011) (Judge Robart of this District denied summary judgment holding that although the plaintiff admits that she did not seek psychological or medical treatment for her emotional distress, this testimony is not dispositive on whether she can recover emotional distress), *citing to Riley v. Giguiere*, 631 F. Supp. 2d 1295, 1315 (E.D. Cal. 2009).

But for NWTS' wrongful actions, Plaintiff would not have suffered the cited injuries and damages. NWTS contends however that Plaintiff could have and should have mitigated her damages. It is unclear how Plaintiff could have mitigated her damages under the facts of this case. Regardless, establishing cause in fact involves a determination of what actually occurred and is generally left to the jury. *Ayers v. Johnson & Johnson Baby Products. Co*., 117 Wn.2d 747, 753-56, 818 P.2d 1337 (1991); *Baughn v. Honda Motor Co.,* 107 Wn. 2d 127, 142, 727 P.2d 655 (1986).  On the other hand, the focus upon the analysis of "Legal Cause," is whether, as a matter of policy, the connection between the ultimate result and the act of the defendant is too remote or insubstantial to impose liability, which is to be made by the Court. A

RESPONSE TO NWTS' MOTION FOR
SUMMARY JUDGMENT

BARRAZA LAW, PLLC
1818 Westlake Avenue North, Suite 308
Seattle, WA 98109
206-933-7861 Fax 206-933-7863

- 23 -

determination of legal liability will depend upon "'mixed considerations of logic, common sense, justice, policy, and precedent.'" *Schooley v. Pinch's Deli Market,* 134 Wn.2d 468, 478-79, 951 P.2d 749 (1998). There should not be an impediment to this Court's finding that NWTS' acts, as an entity charged with providing information to distress borrowers in order to exercise certain loss mitigation options timely and reasonably, are sufficiently relevant, egregious, and foreseeable to give rise to liability.

Plaintiff suffered from confusion and bewilderment as a result of the NOD transmitted to her by NWTS. **Id. at 324-326; 403-404**.  She began her quest to "connect the dots" by writing to Bayview and Cenlar more about her loan. Plaintiff was led to believe that Cenlar was her lender and had the authority to foreclose on her home as a result of the NOD. Plaintiff discovered a year after she had been making payments on the modified loan that the defendants still report her as being in default and in foreclosure causing her to not being to obtain a car loan. Plaintiff does belief that NWTS' recording of the MERS Assignment and Appointment of Successor Trustee alerts others to the possibility of a foreclosure which in turn, diminishes the value of her property. **Id. at 329-333; 366-397.**  Plaintiff believes that she has been set back financially because the HAMP Modified Loan carries a larger New Principal Balance and a 40-year term. **Id. 393-397**. Plaintiff's damages are real, they are ongoing and will be proven fully at trial.

RESPONSE TO NWTS' MOTION FOR
SUMMARY JUDGMENT

BARRAZA LAW, PLLC
1818 Westlake Avenue North, Suite 308
Seattle, WA 98109
206-933-7861 Fax 206-933-7863

- 24 -

### III. CONCLUSION

Based on the foregoing citations of facts, legal authorities and well-grounded arguments, Plaintiff respectfully requests the Court to deny NWTS' Motion for Summary Judgment and allow her to file her proposed Third Amended Complaint.

BARRAZA LAW, PLLC

_/s/ Vicente Omar Barraza_
Vicente Omar Barraza, WSBA # 43589
Attorney for Plaintiff Leticia Lucero
1818 Westlake Avenue North, Suite 308
Seattle, WA 98109
206-933-7861 Fax 206-933-7863

BARRAZA LAW, PLLC

Dated: 10/20/23014          _/s/ John R. Laris_
John R. Laris, WSBA # 44406
Attorney for Plaintiff Leticia Lucero
1818 Westlake Avenue North, Suite 308
Seattle, WA 98109
206-933-7861 Fax 206-933-7863

GRAND CENTRAL LAW, PLLC

Dated: 10/20/2014          _/s/ Ha Thu Dao_
Ha Thu Dao, WSBA # 21793
Attorney for Plaintiff Leticia Lucero
787 Maynard Ave S, Seattle WA 98104
727-269-9334/Fax 727-264-2447
youremylawyer@gmail.com

RESPONSE TO NWTS' MOTION FOR
SUMMARY JUDGMENT

BARRAZA LAW, PLLC
1818 Westlake Avenue North, Suite 308
Seattle, WA 98109
206-933-7861 Fax 206-933-7863

- 25 -