Hon. Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| LETICIA LUCERO, | NO. 2:13-cv-00602 RSL |
| Plaintiff, | |
| vs. | ~~SECOND~~THIRD                      AMENDED COMPLAINT |
| CENLAR FSB and BAYVIEW LOAN SERVICING, LLC, et al., | |
| Defendants. | |

COMES NOW, Plaintiff, Leticia Lucero, by and through her undersigned attorneys, and amends her Complaint ~~("SAC") to correct one of the defendants' name (Nancy K. Harris to Nancy K. Morris) and to add causes of action based on new evidence of violations of law and promulgation of new law.[1]~~ by this Third Amended Complaint ("TAC").  This TAC is to clarify claims against Defendant NWTS and RCO based on this Court's Orders of June 30, 2014 (Dkt. #81), and October 3, 2014 ( Dkt. #119) and Amended Order of October 3, 2014 (Dkt.  #118). As grounds for support of her ~~SAC~~TAC, Plaintiff alleges as follows:

---

[1] ~~Paragraphs 37-49 contain the factual allegations of new violations.~~

~~SECOND~~THIRD AMENDED COMPLAINT - 1

# I.   PARTIES

1.      Plaintiff Leticia Lucero is an unmarried woman and a resident of King County, Washington. She owns the real property known as 1003 159th Pl SE, Bellevue, Washington 98008, as described further in the attached Deed of Trust. Plaintiff obtained a HAMP loan modification through mediation under Washington Foreclosure Fairness Act. Yet, after Plaintiff completed three trial payments and was on her way to commence payments on the permanent loan modification, the defendants collectively generated, posted, mailed and recorded in the public record various foreclosure documents in an attempt to unnecessarily and unlawfully foreclose on Plaintiff's home.

2.      Plaintiff, and others who are similarly situated, have been adversely affected by the defendants' business practices, collectively referred herein as the "Standard Business Practices" or "SBP". The SBP are designed to spit out as many nonjudicial foreclosures as cheaply and as quickly as possible without regard to the resulting inaccuracies, errors, omissions, or even untruths. The foreclosure documents created by Defendants under the SBP are then recorded upon the State's Land Title Record and obfuscate the real chain of transfer injuring Plaintiff and those having to rely upon the Land Title Record for their business transactions.

3.      Defendant Northwest Trustee Services Inc., ("NWTS") is a Washington corporation located in Bellevue, King County, Washington. NWTS acts as an agent of loan servicers and lenders in effectuating the seizure and disposition of collateralized real property through nonjudicial foreclosure. NWTS meets the definition of a debt collector who uses the mails, telephone, internet and other means to achieve its business objectives interstate.

4.      Defendant RCO Legal, PS., ("RCO"), is a Washington corporation. Defendant RCO is owned and governed by the same people and affiliate companies that own and govern NWTS. RCO acts as the agent of, and the attorney for NWTS as well as NWTS' clients.  RCO meets the definition of a debt collector who uses the mails, telephone, internet and other means

SECONDTHIRD AMENDED COMPLAINT - 2

to assist others in effectuating nonjudicial foreclosure within the State of Washington.

5.       Defendant Mortgage Electronic Registration Systems, Inc., (MERS) is a Delaware corporation which regularly participates in nonjudicial foreclosure in the State of Washington by authorizing and enabling the signing, notarizing and recording of assignments of deed of trust in which it acts as the Assignor of beneficial interests under deeds of trust. These MERS assignments are designed to give the impression of an actual transfer between MERS and the assignee, most often a loan servicer, when in fact no such transfer had ever occurred.

6.       Defendant Cenlar, FSB, is a New Jersey corporation who advertises that its primary business serving as a subservicer, and who, by definition, regularly engages in servicing defaulted loans and collecting periodic payments from said loans on behalf of other entities. Cenlar has treated and continues to treat Plaintiff's loan as being in default by actively attempting to bill and collect fees and costs incurred as a result of its defense of this lawsuit even though Plaintiff has been current on her mortgage payments. Cenlar meets the definition of a debt collector who uses the mails, telephone, internet and other means to carry out its business objectives and operations interstate.

7.       Defendant, Bayview Loan Servicing, LLC is a Florida corporation who regularly engages in servicing defaulted loans and collecting periodic payments from said loans on behalf of another entity. Bayview acted as an agent of defendant Cenlar, by performing the post-default functions of processing, reviewing, and approving Plaintiff's application for HAMP loan modification assistance. Bayview meets the definition of a debt collector who uses the mails, telephone, internet and other means to carry out its business objectives and operations interstate.

8.       Defendant Jennifer Dobron is/was a corporate officer or an employee of defendant Cenlar who has worked in the foreclosure industry for years and has extensive experience with the processing of nonjudicial foreclosures are processed. Defendant Dobron aided all the other named defendants in carrying out the SBP by signing or allowing others to sign her name upon

SECONDTHIRD AMENDED COMPLAINT - 3

BARRAZA LAW, PLLC
1424914245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

foreclosure documents containing sworn factual statements. Defendant Dobron knew or should have known that the representations within these documents might be inaccurate or untruthful. Defendant Dobron further knew or should have known that documents bearing her signatures and sworn statements would be transmitted via the mails and/or the internet for recording in the Land Title Record of Washington for reliance by Plaintiff as well as the public.

9.     Defendant Nancy K. Morris (Morris) is/was an employee of Cenlar and a notary public of the State of New Jersey.  Defendant Morris aided all the other named defendants to carry out the SBP by signing, or allowing others to sign her name, and affixing her notary seal upon foreclosure documents. Defendant Morris knew or should have known that the representations within these documents might be inaccurate or untruthful. Defendant Morris knew or should have known that the documents bearing her signature and notary seal would be transmitted via the mails and/or the internet, for recording in the Land Title Record of Washington for reliance by Plaintiff as well as the public.

## II.     JURISDICTION

### ~~I.     INTRODUCTION~~

~~1.     This SAC is filed and these proceedings are instituted under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et. seq.*, ("FDCPA"); the Real Estate Settlement Procedure Act ("RESPA"); the Truth in Lending Act ("TILA"), the Washington Deed of Trust Act ("DTA"); and the Washington Consumer Protection Act, Chapter RCW 19.86, *et. seq.*, ("CPA") to recover actual and statutory damages, reasonable attorney's fees and costs of suit due to Defendants' violations, all of which occurred within one year from the filing date of this Complaint.~~

### ~~II.     JURISDICTION~~

~~SECOND~~THIRD AMENDED COMPLAINT - 4

BARRAZA LAW, PLLC
~~14249~~14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

1.10.   2.            Jurisdiction of this Court arises under *15 U.S.C. § 1692k (d)* and *28 U.S.C. § 1337*.  Supplemental jurisdiction exists for the state law claims, which arise from a common nucleus of operative facts, pursuant to *28 U.S.C. § 1367*. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and *2202*. Venue is properly in the Western District of Washington because the dispute arises over real property located in this district.

**III.    FACTUAL ALLEGATIONS:~~PARTIES~~, RELATIONSHIPS ~~& LIABILITIES BETWEEN            DEFENDANTS & THE STANDARD BUSINESS PRACTICES~~**

~~3.        Plaintiff Leticia Lucero is an unmarried woman and a resident of King County, Washington. She~~

11.        Nonjudicial foreclosure in Washington, under the Deed of Trust Act ("DTA"), is an administrative process conducted by a private trustee company without any external oversight by the court or administrative agency. Trustees carry out nonjudicial foreclosures by creating, transmitting, and recording certain statutory mandated documents, primarily the Notice of Default, Loss Mitigation Declaration, Assignment of Deed of Trust, Appointment of Successor Trustee, Beneficiary Declaration and Notice of Trustee Sale according to a statutorily prescribed timetable. Typically, the loan servicer, on behalf of the lender or investor that owns the mortgage loan, hires the trustee company and/or a law firm, to initiate and complete a trustee's sale of the property whereupon title is transferred to the successful bidder or back to the owner/investor.

12.        The DTA is not a statute conferring rights or privileges upon borrowers. Rather, it requires the trustee company to act in good faith to both the beneficiary and the borrowers by strictly complying with the statutory prerequisites and procedures including production of certain documentary proof. The documentary proof, made up of sworn statements and recorded documents, ensures that the foreclosing entity has an actual stake in the property being foreclosed, and the borrower has a real opportunity to work with the stakeholder to save her home or to exercise other loss mitigation options. The statutory proof requirement makes the

*production of documents* the cornerstone of the Defendants' business success; if the documentary proof looks legitimate and the timelines are met, the foreclosure process would advance to the trustee's sale without a hitch.

13.     To achieve their objective of fast-and-cheap nonjudicial foreclosures, the Defendants in this case, default loan servicers Cenlar, FSB ("Cenlar") and Bayview Loan Servicing, LLC, ("Bayview"), the trustee company, Northwest Trustee Services Inc., (NWTS), and their lawyer, RCO Legal, P.S. ("RCO"), and the ubiquitous Mortgage Electronic Registration Systems Inc., ("MERS"), engage in a highly automated, assembly-type document production system, hereinafter referred to as the "SBP."

14.     The SBP include: 1)  the use of templates with fill-in-the-blanks or check-the – box feature for the aforementioned foreclosure documents, which are then sent away for completion of the blanks, signatures, and notarization *en masse* without regards to the truth or accuracy of the matters being represented within; 2) the use of robo-signers with important sounding titles like Vice President and Assistant Secretary of entities they don't work for, to sign and notarize these documents *en masse* without substantiating the declared corporate authority or possessing sufficient personal knowledge of the factual matters being sworn to; 3) the recording of foreclosure documents in certain sequence despite their actual dates of execution to create the desired legal effect[2]; and 4) taking needless steps to advance nonjudicial foreclosure for no purpose other than to generate unearned and unwarranted fees. The Defendants' SBP result in the production of documents that seemingly meet the required format, but are deeply flawed as to the substantive representations contained within. Thus, the Defendants' SBP–designed to enhance the profits of those who have no stake in either the mortgage loan or the collateral–render the statutory objectives of the DTA completely illusory.

---

[2] Defendant NWTS has admitted to these practices in its most recent Motion to Dismiss filed with the Court under the above-styled case, **Dkt. #110**.

~~SECOND~~THIRD AMENDED COMPLAINT - 6

BARRAZA LAW, PLLC
~~14249~~14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

**Initiation of Nonjudicial Foreclosure of Plaintiff's Home: Notice of Default and Loss Mitigation Declaration**

15.     In this case, Cenlar first sent a work order or "referral" to NWTS, containing specific information and directives, most importantly, the entity to foreclose "in the name of." Cenlar sent the referral via a fully integrated third-party computer platform, in this case, LPS Desktop ("LPS"), which enables both NWTS and RCO to not only access information but also to communicate with Cenlar via messages posted within the system. LPS allows the Defendants to download and upload digital images of documents via the internet. LPS sets tasks and allows tasks to be marked off as completed. LPS helps to automate the foreclosure process by reducing the need of its users to communicate and exercise independent judgment and discretion. NWTS, in open court, has testified that it does not question the source or the veracity of the information transmitted via LPS. NWTS' policy of "Don't Ask, Don't Tell" is essential to ensure the speed and efficacy of the SBP.

16.     Based on the referral by Cenlar, NWTS sent Plaintiff the initial foreclosure information package dated August 27, 2012 to her via US mail as well as posting it on her door using FEI, an affiliated company of NWTS and RCO. The package Plaintiff received is similar to those sent to other borrowers in that it contained two specific documents manufactured by NTWS: a Notice of Default ("NOD")[3], and a Loss Mitigation Declaration Form[4]. The NOD, signed by NWTS, informs Plaintiff of the identity of the owner of her promissory Note as well as the estimated amount needed to cure the default as required by *RCW 61.24.030.* The Loss Mitigation Form, signed and certified by Cenlar under penalty of perjury, serves as the statutory proof that it has made certain pre-foreclosure contact as required by the Washington Foreclosure Fairness Act ("FFA").

---

[3] **Exhibit A**, NOD
[4] **Exhibit B**, Loss Mitigation Form

SECOND THIRD AMENDED COMPLAINT - 7                BARRAZA LAW, PLLC
                                                  14249 14245-F Ambaum Blvd. SW
                                                  Burien, WA 98166
                                                  206-933-7861 Fax 206-933-7863

17.     The Loss Mitigation Form is a check-the-box template, whereupon the box checked – the certification made by Cenlar that it has complied with the due diligence requirement of *RCW 61.24.030* – is facially false. During the same period of time Cenlar claimed in the Loss Mitigation Form that Plaintiff did not ask for a meeting, she was struggling to obtain a loan modification. Plaintiff could only communicate with Bayview and Cenlar via telephone and the mail and was never able to meet anyone face-to-face. Therefore, Cenlar's certification that Plaintiff did not ask for an in-person meeting is false. There is nothing a borrower like Plaintiff wants more than to be able to communicate face-to-face with the Lender/Stakeholder of her loan. Instead, Plaintiff's application for loan modification was passed around for months and months between Bayview and Cenlar. Each time Plaintiff called about the status of her loan, she had to tell her story all over again to another employee of these loan servicing companies. Again, providing the borrower with a face-to-face meeting is costly for loan servicer, but generating a form that erroneously certified that the borrower declined to ask for an in-person meeting, streamlines the whole process significantly.

18.     When NWTS transmitted the NOD to Plaintiff in August of 2012, it was not yet appointed trustee and it signed the NOD as the "duly authorized agent" of Cenlar.[5] However, in the NOD, NWTS charged Plaintiff with a Trustee Fee in the amount of $542.50 and added the same to the total amount Plaintiff needed to cure her default. The NOD produced by NWTS details other fees charged by NWTS' affiliated companies including posting fees, mailing fees, and recording fees. NWTS earns prorated fees based on reaching certain "milestones" and the full trustee's fee is earned only upon completion of the whole process. In Plaintiff's case, **NWTS actually invoiced Cenlar for only $437.50 as "Trustee Fee" but inflated the same Trustee Fee and charged $542.50 to the amount Plaintiff needed to cure.**[6] NWTS' business

---

[5] NWTS' Motion for SJ**, Dkt. #110**
[6] **Exhibit MM**, NWTS' Invoice to Cenlar which includes Trustee Fee, Trustee Sale Guarantee, Posting Fee and Recording Fee.

~~SECOND~~THIRD AMENDED COMPLAINT - 8

BARRAZA LAW, PLLC
~~14249~~14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

practice of charging a trustee fee before being appointed trustee and performing trustee's work is part of the SBP and is evidenced by notices of default issued in other cases.

19.      The NOD states that the "beneficiary declares" Plaintiff to be in default without identifying the beneficiary by name. NWTS regularly engages in the practice of referring to deeds of trust naming MERS as beneficiary, and stating within notices of default that MERS is "the beneficiary declares you in default," where MERS has never so declared. Similarly, there is not a shred of proof that either the original lender, Taylor, Bean & Whitaker Mortgage Corp. ("TBW"), or the entity taking the Note by transfer or purchase had ever declared Plaintiff to be in default.

20.      The NOD identifies Federal Home Loan Mortgage Corporation ("Freddie Mac"), as the Note Owner, without explanations or any supporting document as to how Plaintiff's loan has transferred from the original Lender. The NOD also declares simultaneously that Cenlar is both the loan servicer and the "creditor to whom the debt is owed." Declaring the Government Sponsored Entity ("GSE") as the owner of the promissory note without any supporting proof is a practice of NWTS. NWTS' practice of declaring that the GSE is the owner of the note while declaring that the loan servicer to be the "creditor to whom the debt is owed," is evident in its notices of default sent to other borrowers. In manufacturing the NOD, NWTS knew or should have known that its representations cannot be reconciled: if Freddie Mac owns the Plaintiff's Note, then legally speaking, Freddie Mac would be the creditor to whom Plaintiff owes the debt and not Cenlar.

21.      NWTS and RCO knew or should have known that the representations within the NOD conflict with the terms of Plaintiff's Note [7], which defines the Note Holder specifically as the person/entity "who takes this Note by transfer and who is entitled to receive payments under

---

[7] **Exhibit C**, Note

SECONDTHIRD AMENDED COMPLAINT - 9

this Note." Plaintiff's Deed of Trust emphasizes that the Deed of Trust "secures to Lender" the repayment of the Loan and no one else [8]. NWTS and RCO knew or should have known that under the terms of the Note and Deed of Trust, Cenlar was not the Lender and the Deed of Trust that Plaintiff signed at closing did not "secure" her property in favor of Cenlar as the loan servicer. It is a fact that Cenlar has never claimed to have taken Plaintiff's Note by transfer and paid value for it. NWTS and RCO's collective disregard of the contractual terms of the loan documents in preparing the foreclosure document templates is a pattern or practice and is part of the SBP.

22.    Plaintiff acknowledges that her FDCPA claims based on the NOD and the recording of MERS Assignment and Appointment are limited to certain subsection of the Fair Debt Collection Practices Act, *15 U.S.C. §1692f(6)(A) and (B)*. However, where within the NOD, NWTS admits that it issued the Notice as the "duly authorized agent" of Cenlar, a debt collector, months before it was formally appointed trustee status, the NOD is arguably not a part of the nonjudicial foreclosure process but only a communication sent by a debt collector about a personal obligation owed by Plaintiff.[9] The NOD is a debt collection communication because some borrowers in fact cure the default amount as stated within, and the matter ends there without a formal foreclosure. In such context, the NOD does in fact reflect or pertain to the character, amount, or legal status of the debt," giving rise to liability under *§1692e*. Treating it as any communication sent by a debt collector in an effort to collect a debt, the NOD violated the law when it *mischaracterized* the debt as being secured in favor of MERS but owed to Cenlar.

23.    The NOD also misrepresented the *amount* of the debt as inclusive of the Trustee Fee when NWST admitted that it transmitted the NOD in its capacity of a debt collector or an

---

8 **Exhibit D**, Deed of Trust

9 "NWTS was not required to be trustee in order to issue the Notice of Default." **Dkt. #110**, p. 14. Lines 1-2.

BARRAZA LAW, PLLC
14249 14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

agent of Cenlar, another debt collector. NWST misrepresented the fee charged as being authorized by the loan documents based on the need for foreclosure when in fact no foreclosure in existence at that time.  And the NOD misstated the *legal status* of the debt by identifying Cenlar to be the "creditor to whom the debt is owed" because Cenlar has never been the creditor to whom Plaintiff owed the debt. Contradictory or confusing language may also give rise to liability under § 1692e, which prohibits debt collectors from committing a "false, deceptive or misleading representation or means in connection with the collection of any debt." *See 15 U.S.C. 1692e*. The content of the NOD thus violates *§1692f(1)* and *§1692e(2)(B)* because it failed to inform Plaintiff of her rights under the objective  "least sophisticated consumer" standard.

**Plaintiff issued Qualified Written Requests to Bayview based upon the Notice of Default Package sent by NWTS**

24.        Upon receiving the NOD package from NWTS, Plaintiff realized that she was given inconsistent information about her loan and set out to research further. Plaintiff spent time and resources to prepare a Qualified Written Request and sent it to Bayview on the same day, August 27, 2012.[10] Although proof of delivery confirmed Bayview received the QWR, Bayview never acknowledged or responded to Plaintiff's QWR.

**Advancement of nonjudicial foreclosure to generate fees: Assignment of Deed of Trust & Appointment of Successor Trustee**

25.        The nonjudicial foreclosure process can be punctuated by the borrower's 1) informal request for certain loss mitigation processes; or, 2) formal request for mediation under FFA. Additionally, the borrower can file a lawsuit to restrain the sale within which she could also question certain conduct by the loan servicer, trustee, or their lawyer. In this case, Plaintiff

---

10 **Exhibit E**, Qualified Written Request issued to Bayview

SECONDTHIRD AMENDED COMPLAINT - 11

BARRAZA LAW, PLLC
1424914245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

retained counsel and asked to participate in FFA mediation shortly after she received the Notice of Default package from NWTS in August of 2012.  On or about September 1, 2012, plaintiff counsel wrote to Bayview to inform Bayview that he represents Plaintiff. In the months that followed, Plaintiff and her counsel talked to Brian Schwartz of Bayview concerning Bayview's review of Plaintiff's application for modification under HAMP. Through her counsel, Plaintiff accepted Bayview's offer of a HAMP modification.

26.     After Plaintiff had made all three trial payments in October, November and December of 2012, NWTS manufactured a MERS Assignment of Deed of Trust ("ADOT")[11], and sent it to Cenlar for signature and notarization. Upon receiving the signed and notarized ADOT back from Cenlar, on December 6, 2012, NWTS recorded it in the King County public record against Plaintiff's title. Without exception, MERS assignments, including this one in Plaintiff's case, are signed by employees of the servicer and not by someone who is actually employed by or is a corporate officer of MERS. NWTS is well aware of this practice because its employees were themselves signing these MERS assignments; Jeff Stenman, NWTS' Director of Operations testified in deposition that NWTS only stopped this practice *on the advice of counsel*.

27.     Consistent with the Defendants' SBP and NWTS' policy of "Don't Ask, Don't Tell," on November 21, 2012, the Defendant Jennifer Dobron, a known employee of Cenlar, signed the ADOT in her capacity as *the actual* Assistant Secretary of MERS without disclosing that she was an employee of Cenlar who signed on behalf of MERS via a Power of Attorney or Corporate Resolution. During this same period of time, other assignments of deed of trust appear in the public record within the State of Washington bearing Dobron's signature as Assistant Secretary of MERS. Dobron is, by definition, a robo-signer who signs documents as corporate officer of MERS, as corporate officer of Cenlar, as well as corporate officer of other

---

11 **Exhibit F**, MERS Assignment of Deed of Trust

BARRAZA LAW, PLLC
~~14249~~14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

financial entities simultaneously. Dobron's signed foreclosure documents are so numerous in the public record in the State of Washington as well as other states. The large volume of documents signed by Dobron and the appearance of her signatures on these documents suggests that 1) Dobron does not possess the corporate authority or the personal knowledge of matters attested to in these documents at the time she signs them, and 2) someone other than Dobron might have signed these documents.[12]

28.     During the same period of time, NWTS also manufactured an Appointment of Successor Trustee ("AOST")[13], another template with blank spaces filled in by Cenlar, in order to vest itself with the power of sale. The AOST was notarized by defendant Nancy K. Morris on October 3, 2012. Defendant Morris is/was an employee of Cenlar and notary public in the state of New Jersey. Defendant Morris did not verify either the identification of the signer of the AOST or the corporate authority he claimed to possess.[14] Morris' incomplete and sloppy notarization is not unique to the AOST but is evident in other foreclosure documents appearing in the public record. More than once, Morris dated her certification as Notary public a whole year *after* the document was signed. In other documents in which Morris acted as notary public, Morris' signatures vary visibly and drastically giving doubt to whether she in fact signed and notarized all of the documents. Morris was/is, by definition, a robo-signer who signs and places

---

12 **Exhibit G**, Composite of Dobron's documents found in WA public records**, Exhibit H** Composite of Assignments of Mortgage signed/notarized by Jennifer Dobron, Michael Blair and Nancy K. Morris found in public records of various counties in Florida.

13 **Exhibit I,** Lucero Appointment of Successor Trustee

14 It is extremely important for Morris to ascertain the identification of the signatory, Michael Blair, and his corporate authority because Michael Blair has signed as corporate officers of other entities besides Cenlar, **Exhibit H,** Composite of documents involving Dobron, Morris and Blair found in various counties of Florida.

BARRAZA LAW, PLLC
~~14249~~14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

her Notary Seal upon hundreds of foreclosure documents without regard for the required formality of the document or the corporate authority claimed by the signatory.[15]

29.     Despite the plain defects appearing in the AOST in Plaintiff's case and in other foreclosure documents, NWTS failed to notice, let alone remedy them. NWTS' lack of care or concern over the formality or the substance of foreclosure documents is consistent with its "Don't Ask, Don't Tell" policy which is a part of the SBP. [16]

30.     Even though the Assignment (ADOT) was executed on November 21, 2012, after the Appointment (AOST) was executed on October 3, 2012, in December of 2012, NWTS deliberately recorded the Assignment first to give the impression, or the legal effect, that MERS assigned the DOT to Cenlar before Cenlar appointed NWTS to be successor trustee. NWTS engages in this practice of recording in other foreclosures because it is cheaper and faster to do so than to replace these defective documents.[17]

31.     NWTS recorded the ADOT and AOST in December of 2012 when NWTS and Cenlar both knew that Plaintiff had already accepted a loan modification and had already completed the trial payments: NWTS knew by virtue of its receipt of notification from Washington Department of Commerce that Plaintiff was referred to FFA mediation; Cenlar knew of Plaintiff's acceptance of the loan modification because Cenlar participated in the

---

15 **Exhibit OO,** Composite of documents purported signed and notarized by Morris appearing in public record of Washington.

16 The industry's institution of these practices, in particular, preparing, signing, and notarizing documents in such large volumes without due diligence or care for their accuracy and authenticity, is certain to cause mistakes, errors, oversights and other problems. For example, in two other foreclosures in which NWTS acts as trustee company and Cenlar as servicer, where both Appointments signed and dated by defendant Dobron for November 21, 2012, defendant Morris dated her notary oath and verification for *November 21, 2013*, a whole year after the signing date and months after the expiration of her notary seal in January of  2013 (**Exhibit JJ** , Soleau Appointment and Avilez Appointment ).

17 **Exhibit J,** Assignment and Appointment in the matter concerning Donald F. Cook, Jr. and Heather C. Cook recorded in the reverse order of their execution dates.

BARRAZA LAW, PLLC
14249 14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

mediation with RCO as its attorney. [18] NTWS recorded these documents for no reasons other than to advance the trustee's sale in contravention of *RCW 61.24.163(16)(a )*, in order to generate fees; this practice is part of Defendants' profit-first SBP.

**Circumstances surrounding the creation of Beneficiary Declarations**

32.     While Plaintiff was engaging in the FFA mediation process with Cenlar, RCO, acting as Cenlar's lawyer, proffered a Beneficiary Declaration produced by NWTS dated October 5, 2012, as evidence of Cenlar's authority as "Beneficiary" in order to participate in the mediation[19]. The October 5, 2012 Beneficiary Declaration is yet another form manufactured by NWTS and sent to Cenlar to sign.  The October 5, 2012 Beneficiary Declaration was signed by Defendant Jennifer Dobron, this time as Assistant Secretary of Cenlar, and not MERS. Dobron certified under penalty of perjury that Cenlar was the "Note Holder" and thus the "Beneficiary."

33.     NWTS, RCO and Cenlar knew that Cenlar was not and could not be the Note Holder under the terms of the loan documents. The Defendants further knew that Plaintiff's Deed of Trust secures her home in favor of the Note Holder and no other entity. At the time that the Defendants took the actions in furtherance of foreclosure of Plaintiff's property, they had nothing to support their claim that Plaintiff's loan had been transferred from TBW as the original lender, and Freddie Mac as the purported new owner of Plaintiff's original Note. The lack of any document showing the transfer from TBW to Freddie Mac militates against the Defendants' collective claim that Freddie Mac is the owner of the Note, but Cenlar is the holder of the Note.

34.     NWTS and RCO, in informing Plaintiff that Freddie Mac is the owner of Plaintiff's Note, knew that pursuant to Freddie Mac's document retention policy, a third-party custodian would have physical possession of Plaintiff's Note, not Cenlar. Yet, RCO counseled

---

18 NWTS & RCO's Motion for Summary Judgment upon Plaintiff's SAC, **Dkt. # 110**
19 **Exhibit K**, October 5, 2012 Beneficiary Declaration

BARRAZA LAW, PLLC
~~14249~~14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

and assisted NWTS in drafting the subject Beneficiary Declaration Template to falsely state that Cenlar was the "holder" of Plaintiff's Note. This is a part of the Defendants' SBP.

35.    It has been established that as part of the SBP, NWTS was not in possession of anything other than an electronic copy of the Beneficiary Declaration because this document does not need to be recorded. After Plaintiff commenced this lawsuit, RCO appeared as counsel for all three defendants, NWTS, Cenlar, and Bayview, and through Charles Katz, a member of the bar and an employee of RCO, filed with this Court, as support for the defendants' motion to dismiss, what he declared to be "a true and correct copy of the Beneficiary Declaration." (**Dkt. #9** with attachments).  This second Beneficiary Declaration was signed by Defendant Jennifer Dobron on October 16, 2012.[20] Without being in possession of the original Beneficiary Declaration, Mr. Katz could not have determined whether the Beneficiary Declaration he filed with the Court was in fact a true and correct copy of the *original* Beneficiary Declaration. Counsel's willingness to stake his name and reputation on a factual matter for which he has no personal knowledge is consistent with the Defendants' SBP.

36.    While there is no restriction on how many beneficiary declarations can be issued in a particular case, the fact that Mr. Katz and RCO represented to the Court that a certain copy is a "true and correct copy" of the original, when they had no original in their possession, and when they knew or should have known that only electronic images exist, is, again, evidence of a widespread failure to verify factual representations made within the foreclosure process, including those made to the tribunal. When placed side by side, the signature of Defendant Dobron on the October 5 Declaration differs markedly from her signature appearing on the October 16 Declaration. Moreover, the fact that the Defendants can come up with one or more crucial documents that are central to the nonjudicial foreclosure *on demand,* supports Plaintiff's allegation that the Defendants' operations lack integrity and reliability.

---

[20] **Exhibit L,** October 16, 2012 Beneficiary Declaration.

SECONDTHIRD AMENDED COMPLAINT - 16

BARRAZA LAW, PLLC
14249 14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

37.    The beneficiary declaration is generally not made available to borrowers who are under nonjudicial foreclosure. Unless the borrower requests FFA mediation or questions the manner in which her nonjudicial foreclosure is being conducted, she would never know whether the party foreclosing on her home has the legal authority to do so. Since the beneficiary declaration is not made a part of the public record, buyers and seller of real estate, title insurance companies, escrow companies, and the public, who rely on Washington Land Title Record to conduct business, are led to believing that Plaintiff's loan was actually transferred from MERS to Cenlar; the public is deprived of the actual chain of transfer involving Freddie Mac as the real owner completely.

**RCO's concurrent legal representation of all parties on the opposite side of the borrower**

38.    At all times relevant herein, Stephen Routh, Esq., and David Fennell, Esq., who have ownership interest and governing authority in NWTS and RCO, also have ownership interest and governing authority of the affiliated vendors who provide services relating to nonjudicial foreclosure. The Conglomerate includes a company that provides service of process and posting of foreclosure notices and other legal documents (Foreclosure Expeditors and Initiators or FEI); a publication company that owns several newspapers for purpose of legal publication of foreclosure (RIM Publications); a web-based site that lists and tracks foreclosure sales (USA-foreclosure.com); a title company that provides Trustee's Sale Guarantees to NWTS as well as escrow services on properties sold by NWTS (NexTitle).  Each of these companies charges and receives compensation from the same foreclosure referral/lead that NWTS and RCO capture. These charges are included within NWTS' invoice and are paid under the auspice of NWTS as agent and trustee on behalf of the loan servicer.

39.    In addition to shared business leads and revenues, NWTS and RCO's operations and the operations of their affiliates are inextricably intertwined. The Conglomerate includes

SECONDTHIRD AMENDED COMPLAINT - 17

Paccorp, LLC, which owns the building where NWTS and RCO are operated out of in Bellevue, King County, Realty In Motion or RIM, a real estate company that provides management and logistic support to both NWTS and RCO. NWTS' Vice President and Director of Operations, Jeff Stenman, answers to Jeff Aiken, the Chief Financial Officer of Realty in Motion.  This vertically integrated machinery and the tightly woven interests amongst the companies within the Conglomerate enable NWTS, RCO and their affiliates to monopolize and capture a larger share of the foreclosure market. The inevitable conclusion is NWTS is the alter ego of RCO, and vice versa.

40.     At all times relevant, RCO, as NWTS' sister law firm, actively provided counsel to NWTS in its daily operations including the creation of the format and content of template-driven documents. RCO acts as the facilitator on behalf of loan servicers for purpose of the Face-to-Face Meeting requirement of *RCW 61.24.031(5)* in the same foreclosures initiated by NWTS. RCO also represents the loan servicers in mediation pursuant to *RCW 61.24.163*, and performs eviction services post-sale. In this case and many other cases where the borrower files a lawsuit against NWTS and the servicer, RCO would appear as counsel for both NWTS and the servicer. Moreover, when RCO is named as a defendant in the same lawsuit, such as in this case, RCO represents itself. RCO's primary business is anything and everything related to foreclosure.

41.     This Court has held that mortgage foreclosure is debt collection under the FDCPA in *McDonald v. OneWest Bank*, 929 F.Supp.2d 1079 (W.D. Wash. 2013). Lawyers who meet the general definition of a debt collector under the Act are governed by the Act. RCO in fact holds itself out as an extension of debt collectors and performs the services of a debt collector.  By representing Cenlar in mediation, RCO has been in possession of Plaintiff's loan file and all financial information Plaintiff submitted. RCO's representation of Cenlar in the

BARRAZA LAW, PLLC
1424914245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

mediation and the instant lawsuit was concerning Plaintiff's mortgage debt. These facts, taken together, qualify RCO as debt collector under *15 U.S.C. §1692a(6).*

42.     The fact that NWTS and RCO owe a duty of loyalty and fiduciary to loan servicers as their mutual client renders it impossible for NWTS to comply with its duty of good faith as trustee. NWTS' failure to act impartially in its conduct of nonjudicial foreclosures is systemic and not unique to Plaintiff's case. This failure is caused by NWTS and RCO's for-profit business alliance as well as their need to scurry approval from their mutual client, the loan servicers. Essentially, the Defendants' SBP destroys all three objectives of the Deed of Trust Act. A sloppy, quick and cheap nonjudicial process deprives an interested party the opportunity to prevent wrongful foreclosure but a flawed sale risks being set aside after-the-fact. Above all, the existence of a MERS assignment within the Land Title Record induces reliance by the public upon  a chain of transfer that simply did not occur.  Additionally, where the trustee should act as an impartial judicial officer in a transparent process of nonjudicial foreclosure, RCO's Concurrent Representation shrouds NWTS' conduct as well as the servicer's conduct in secrecy and shields them under the attorney-client privilege; an unfair advantage over the borrowers in all disputes relating to nonjudicial foreclosure whether they occur in or outside of the courtroom.

43.     NWTS and RCO systematically and intentionally direct all other foreclosure-related services to their affiliated vendors. Although the loan servicers advance payment of these companies' invoices in the interim, the costs are added to the borrower's mortgage account and ultimately make up the amount needed to reinstate the loan or to determine the minimum bid at the trustee's sale. If the property returns to the lender/investor, the loan servicer assesses these costs to the lender/investor which are often borne by taxpayers.

44.     In this case where Plaintiff was able to obtain a loan modification, she agreed to pay the New Principal Amount which includes, in addition to the trustee fees charged by

BARRAZA LAW, PLLC
14249 14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

NWTS, mailing fees, posting fees and recording fees billed by NWTS' affiliated companies. Plaintiff also pays fees charged by RCO for mediation and litigation.[21] Plaintiff will be paying some or all of these fees charged by NWTS, RCO and their affiliated companies, plus interest over the term of her modified loan which is 40 years, regardless of whether the fees were warranted or not.

**MERS' Involvement in the Foreclosure of Plaintiff's Home**

45.      Plaintiff does not repudiate the validity of the Note and Deed of Trust ("DOT") that she signed at closing. She in fact relies on the express terms of these two documents to define and enforce the rights and interests of the parties to the mortgage loan contract, especially as to the conditions precedent to foreclosure and provisions identifying who can initiate foreclosure. Defendant MERS, as nominee of the Lender, and named Beneficiary, is charged with administering the DOT on the Lender's behalf, and thus, must comply with the provisions of the Deed of Trust.

46.      To begin, the DOT specifies that MERS, if necessary to comply with law or custom, has the right to foreclose and sell Plaintiff's property and to take any action required of Lender. Paragraph 20 of the DOT explains that the Note or a partial interest in the Note, together with the DOT can be sold. The DOT relegates *the loan servicer* to the collection of periodic payments and other servicing tasks, but makes clear that the loan servicer does not have any substantive rights or interest. Paragraph 20 requires MERS as nominee of Lender to give notice of breach or default. Paragraph 22 requires MERS to provide notice of acceleration to Plaintiff and requires MERS to give notice of default to *the trustee* in order to invoke the power of sale. Yet, in this case, MERS did none of those things. As nominee of the original

---

21 **Exhibit NN,** one of RCO's invoices reflect that RCO has billed Cenlar nearly $9,000.00 for its services rendered in Plaintiff's case.

SECONDTHIRD AMENDED COMPLAINT - 20

Lender, MERS breached the terms of the DOT by failing to comply with the conditions precedent to NWTS' initiation of foreclosure on Plaintiff's property.

47.    MERS actively participates in the SBP by authorizing the manufacturing, signing, notarizing and recording of MERS assignments that represent an actual transfer of beneficial interest from MERS to another entity when there is no such transaction. Under current Washington laws, a MERS assignment is not central or even necessary to nonjudicial foreclosure. Therefore, MERS has participated in the scheme of creating and recording MERS assignments for no other reasons to generate fees and costs to be borne by Plaintiff and similarly situated homeowners. MERS' breach of the DOT entitles Plaintiff to recover compensatory damages flowing therefrom.

**Bayview had actual notice that Plaintiff is represented by counsel but contacted her anyway**

48.    In August of 2012, after not being able to obtain a reasonable loan modification within a reasonable time, Plaintiff retained counsel, V. Omar Barraza to enter FFA Mediation. On September 1, 2012, plaintiff counsel notified Bayview in writing that he represents Plaintiff's interest in the loan modification and mediation.[22] Thereafter, Plaintiff and Mr. Barraza also contacted Bayview both via telephone and in writing to inform Bayview that Plaintiff would accept the Loan Modification being offered by Bayview.[23]

49.    owns the property known as 1003 159th Pl SE, Bellevue, Washington 98008, solely, after her ex-husband quit-claimed his interest pursuant to their divorce decree; this property has been Plaintiff's homestead.

4.    Plaintiff Lucero purchased the property around August 18, 2006 with her ex-

---

22 **Exhibit M**, Notice of Representation and Authorization to Release Information.
23 **Exhibit N**, Letter written by Plaintiff counsel to Bayview dated September 22, 2012)

BARRAZA LAW, PLLC
1424914245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

~~husband and borrowed money to do so from Taylor Bean & Whitaker, a company based out of Florida. At its peak, Taylor Bean & Whitaker was one of the nation's top 10 wholesale mortgage lending companies. In 2009, however, law enforcement and banking regulators shut down Taylor Bean & Whitaker; its majority owner was ultimately convicted of bank fraud, securities fraud, wire fraud and conspiracy to commit fraud.~~

~~5.      In 2010, Plaintiff lost her job and went through a divorce. Her husband quit-claimed his share of the property to Plaintiff.  Hardship set in and Plaintiff fell behind with the payments on her home. Plaintiff remained steadfast in her desire to cure the default. She timely and relentlessly sought a loan modification from the defendants, who held themselves out as having the authority to modify or adjust the terms of the loan that Plaintiff obtained from the defunct Taylor Bean & Whittaker.  Through this odyssey, Plaintiff was made aware of the defendants' relationships and conduct which adversely affected the quality of title of her homestead and her financial standing.~~

6.      ~~Despite~~ these notices of counsel's representation, Bayview continued to contact Plaintiff directly by mail and telephone well into 2013, for the purpose of collecting upon the mortgage debt.[24]

**Cenlar's Assessment of Attorney Fee to Plaintiff's Loan Account**

50.      When Plaintiff received the HAMP Modification Agreement ~~Defendant Mortgage Electronic Registration Systems, Inc., or "MERS" is a foreign corporation based out of Reston, Virginia. MERS is not licensed to do business in the State of Washington but has been named as "beneficiary" in a majority of deeds of trust in the State. MERS has been~~

---

24 **Exhibit O,** February 7, 2013 letter from Bayview evidencing its attempts to contact Plaintiff directly

~~SECOND~~THIRD AMENDED COMPLAINT - 22

BARRAZA LAW, PLLC
~~14249~~14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

held by Washington courts to be a "consortium of mortgage investment companies" that "altered this state's traditional three-party structure of a deed of trust." *Bain v. Metropolitan Mortg. Grp., Inc.*, 175 Wn.2d 83, 96, 285 P.3d 34 (2012); *Bavand v. OneWest Bank, FSB*, 2013 Wash.App. LEXIS 2114 (2013), Washington Court of Appeals, 1st Div. 2013, No. 68217-2-I at page 9. MERS identifies itself as "the beneficiary under this Security Instrument" (the Deed of Trust) that Plaintiff signed at closing encumbering her homestead in favor of the original lender, Taylor Bean & Whitaker. (Exhibit 15, Deed of Trust and Note).

7.    Defendant, Bayview Loan Servicing, LLC is a Florida limited liability corporation engaged in the business of collecting debts on behalf of another entity. Bayview's primary business is servicing mortgage loans that are in default status. Bayview therefore meets the definition of a debt collector. Bayview uses the mails, telephone and other means to collect mortgage debts for other financial institutions nationwide; its debt collection activities reach into Washington and directly affect Plaintiff as well as other Washingtonians.

8.    Defendant Cenlar, FSB, is a New Jersey corporation. Cenlar works as a loan servicer for many different entities nationwide. Cenlar provides loan servicing on loans that are current and in default. Upon information, Cenlar has been servicing Plaintiff's mortgage loan on behalf of another entity. Cenlar uses the mails, telephone and other means to collect mortgage debts nationwide; its activities reach into Washington and directly affect Plaintiff as well as other Washingtonians.

9.    Defendants Cenlar and Bayview meet the definition of "creditors," as defined by the FDCPA § 803, codified at 15 U.S.C. § 1692a(4).

SECOND THIRD AMENDED COMPLAINT - 23

BARRAZA LAW, PLLC
14249 14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

10.     Defendant Jennifer Dobron is believed to be a corporate officer or an employee of defendant Cenlar. Within the scope of her employment with Cenlar, Dobron signed, or allowed others to sign her name, on several documents which she knew or should have known, would be used by Cenlar and others to foreclose upon Plaintiff's homestead. Although Dobron might have been acting within the scope of her employment with one of the corporate defendants, Dobron knew or should have known that the documents signed with her name would be recorded in the public records of King County, Washington, and be relied upon by the public in search of chain of title information.  Dobron therefore is liable to the Plaintiff individually and under the doctrine of *respondeat superior*. Dobron's act of signing, or allowing others to sign, her name on foreclosure documents under penalty of perjury, while lacking personal knowledge or possessing actual knowledge that the matters declared therein are untrue, affected the chain of title upon Plaintiff's property as well as the public who relies upon the same information to research title of real property in Washington.

11.     Defendant Nancy K. Morris is believed to be an employee of Defendant Cenlar and a notary public of the State of New Jersey. Acting within the scope of her employment with defendant Cenlar, Morris has notarized and affixed her seal or has allowed others to sign, notarize and affix her seal in numerous documents which she knew or should have known would be used by Cenlar and others to foreclose upon Plaintiff's homestead. Morris knew or should have known that the documents with her name and notary seal would be recorded in the public records of Washington, and be relied upon by the public in search of chain of title information. Although defendant Morris might have been acting within the scope of her employment with one of the corporate defendants, Morris knew or should have known that the documents notarized under her seal and bearing her signatures would be recorded in the public records of, Washington, and be relied upon by the public in search of chain of title information. Morris therefore is liable to the Plaintiff individually and under the doctrine of *respondeat superior*. Morris' act of notarizing documents and attesting to her duties as notary public while lacking personal knowledge or while possessing actual knowledge that the matters declared by her are untrue has affected the chain of title upon Plaintiff's property. Morris' act of notarizing and providing the notarial oath upon documents that are inaccurate or incomplete is injurious to the public who must rely on these documents for chain of title records to sign, Plaintiff

SECONDTHIRD AMENDED COMPLAINT - 24

BARRAZA LAW, PLLC
1424914245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

understood from the terms of the Agreement drafted by Cenlar that all amounts due and owing prior to her signing the agreement were reset or otherwise incorporated into the New Principal Amount.[25] Plaintiff understood further that these amounts were being amortized over the life of her loan and she has been making her monthly payments beginning in January of 2013, without fail.

51.     After completing the Trial Payments and resolving the default, to her dismay, Plaintiff discovered that she could not get a car loan because Cenlar did not cease reporting to the credit bureaus that she was under default and foreclosure.[26] Worse, after filing this lawsuit, Cenlar began to impose substantial amounts of attorney fees and costs onto Plaintiff's mortgage account; Cenlar sent Plaintiff a letter dated December 4, 2013, in which it informed Plaintiff that it has charged Attorney Fees and Costs to her mortgage loan account "[I]n keeping with Washington Law." [27]

52.     As a result of.

12.     Defendant Northwest Trustee Services Inc., ("NWTS") is a Washington corporation whose chief business is to foreclose upon real properties located in the State of Washington as well as other states. NWTS purported to act as successor trustee and initiated nonjudicial foreclosure upon Plaintiff's homestead. The owner of NWTS also owns the defendant law firm Routh Crabtree Olsen PS, a/k/a RCO Legal ("RCO"), as well as a number of inter-related companies which participate in virtually all other aspects of nonjudicial foreclosure, including legal publication, foreclosure advertising, listing and tracking of foreclosure sales, and escrowing and closing on real estate transactions. NWTS and its law firm,

---

25 **Exhibit P**, HAMP Loan Modification  Agreement
26 **Exhibit LL**, Denial of Credit Letter dated 1/8/2013
27 **Exhibit Q**. Cenlar Letter of 12/4/2013: "In keeping with Washington Law, please be advised that we have charged your loan account for the fee described, on the date and in the amount indicated on the below list." On this date, Cenlar charged Plaintiff $1251 as "Attorney Fees" and $10.42 as "Attorney Cost."

BARRAZA LAW, PLLC
1424914245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

1  defendant RCO, are housed in the same building located in Bellevue, King County,

2  Washington. The referrals for foreclosure that come from loan servicers are made to the

3  defendant RCO but the foreclosure work is actually being done by the defendant NWTS. In

4  addition to sharing the physical business location, the defendants also comingle their resources.

5  Employees of NWTS and RCO consult and work in conjunction with one another. NWTS

6  employees have testified under oath that they consult with RCO as their counsel in matters

7  involving their conduct of foreclosure. Charles Katz, Esq., who was an attorney employee by

8  RCO and whose name appears as counsel of record for NWTS and loan servicers on numerous

9  foreclosure litigation cases, recently became general counsel for NWTS.

10         13.      Defendant Routh Crabtree Olsen PS, a/k/a RCO Legal ("RCO"), is a law firm
   licensed to do business in Washington; its lawyers are members of the Washington Bar
11  Association.  The defendant law firm owns, operates or has a substantial interest in the
   operations and workings of NWTS. RCO provides legal services to loan servicer clients of
12  NWTS that under contract or ongoing agreement to conduct nonjudicial foreclosures, while
   concurrently provides advisory and litigation services for NWTS relating to foreclosures that
13  NWTS conducts as trustee.

**IV.     FACTS CONCERNING NWTS' COMMENCEMENT OF NONJUDICIAL
              FORECLOSURE OF PLAINTIFF'S HOMESTEAD**

14         In August of 2012, defendant NWTS caused the Notice of Default to be posted

on Plaintiff's homestead announcing the initiation of nonjudicial foreclosure. It has been a

common practice of NWTS to declare, in its notices of default sent to borrowers in the State

of Washington, that the owner of the mortgage loan is a different entity than the "creditor to

whom the debt is owed," which is not factually or legally true.  Additionally, it has been a

common practice of NWTS to declare in its foreclosure notices to borrower in the State of

Washington that the loan servicer is the "creditor to whom the debt is owed," which is also

not factually or legally true. (Exhibit 1, Notice of Default).

SECONDTHIRD AMENDED COMPLAINT - 26                BARRAZA LAW, PLLC
                                                  14249 14245-F Ambaum Blvd. SW
                                                       Burien, WA 98166
                                                  206-933-7861 Fax 206-933-7863

15.     Plaintiff submitted a Qualified Written Request on August 27, 2012 to Cenlar and Bayview. Bayview did not respond at all while Cenlar did not respond in a complete manner as mandated by law.

16.     In this case, the Notice of Default NWTS transmitted to Plaintiff indicates that Federal Home Loan Mortgage Corporation, or Freddie Mac, is the owner of Plaintiff's promissory note, but that Cenlar is the "creditor to whom the debt is owed" (Exhibit 1, Notice of Default). By stating that Freddie Mac is the owner, NWTS is presumed to have actual notice or information supporting this assertion. Yet, if Freddie Mac is the owner of the promissory note, then Freddie Mac must be the creditor to whom Plaintiff owes the debt. By stating that Cenlar is the creditor to whom the debt is owed in the same Notice of Default, NWTS has knowingly misrepresented to the Plaintiff the entity with whom she could communicate with in order to resolve the issues of her mortgage loan.

17.     It has also been a common practice of NWTS to declare itself as the "duly authorized agent" of the loan servicer, and that the loan servicer is the "Client" of NWTS. These declarations appear in hundreds, if not thousands, of notices of default being mailed to borrowers around the State of Washington. In this case, NWTS' Notice of Default contains the designation "Cenlar, FSB, By Northwest Trustee Services, Inc., its duly authorized agent," as well as "Client: Cenlar FSB." Yet, after transmitting these notices of default in its capacity as the duly authorized agent of the servicer, NWTS turns around and issues notices of trustee's sale in which it informs the borrowers that NWTS is acting as the "trustee." NWTS' mixing of its role as a duly authorized agent of the servicer, *i.e.*, a debt collector on behalf of the servicer, and its role as the purported trustee upon whom the borrower counts to be impartial and acting in good faith, is unfair and/or deceptive conduct.

SECONDTHIRD AMENDED COMPLAINT - 27

18.     The Notice of Default transmitted by NWTS as the duly authorized agent of Cenlar demands Plaintiff to pay the total sum of $42,787.91 to reinstate the deed of trust before the recording of the notice of sale. The total sum required to reinstate included Trustee's fees in the amount of $542.50 and other costs, including title report, recording, certified mail, posting and sale costs. Defendant NWTS' practice of demanding fees and costs for its services as the duly authorized agent of the loan servicer is a practice of a debt collector and not of an impartial trustee; NWTS' practice of preparing the notices of default representing itself as duly authorized agent of the loan servicer and taxing trustee's fees against the amount owed and to be cured by the borrower before being appointed trustee violates the duty of good faith under the DTA; the practice is unfair and/or deceptive.

**V.     FACTS RELATING TO FORECLOSURE FAIRNESS ACT MEDIATION**

19.     As a result of NWTS' initiation of nonjudicial foreclosure, Plaintiff retained the undersigned counsel, Barraza Law, PLLC, to assist her in preparing for and attending mediation under the Washington Foreclosure Fairness Act. In the course of the mediation process, defendant RCO became involved and informed Plaintiff and her counsel that it represented the interest of defendant Cenlar as the "beneficiary" under the DTA.

20.     Pursuant to the FFA, on October 12, 2012, defendant RCO provided the mediator and plaintiff's counsel with documents required under the FFA. The cover letter accompanying this Mediation package was on RCO's letterhead and written by Dotty Mitchell, Mediation Paralegal, who stated, "This law firm represents Cenlar FSB, the beneficiary or its servicer of the deed of trust secured by the above-described property." (Exhibit 2, Letter by Dotty Mitchell dated October 12, 2012).

SECONDTHIRD AMENDED COMPLAINT - 28

BARRAZA LAW, PLLC
1424914245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

21.     In the mediation package, Defendant RCO provided a document entitled "Beneficiary Declaration (Note Holder)" (Exhibit 3, Beneficiary Declaration dated October 5, 2012). **This Beneficiary Declaration is dated October 5, 2012, and signed by Defendant Jennifer Dobron, as Assistant Secretary of defendant Cenla**r, who declared under penalty of perjury that "Cenlar FSB is the holder of the promissory note or other obligations evidencing the above-referenced loan." Above Jennifer Dobron's signature appears the designation, "Cenlar FSB, beneficiary." (Exhibit 3, Beneficiary Declaration dated October 5, 2012).

22.     Defendant RCO, having appeared as counsel for defendant Cenlar and Bayview, via Charles Katz, Esq., moved for dismissal of Plaintiff's original Complaint. Mr. Katz represented to this Court that "On October 16, 2012, Cenlar FSB, executed a Beneficiary Declaration required under RCW 61.24.030(7)(a)." Mr. Katz attached to his motion as exhibit 4 "a true and correct copy of the Beneficiary Declaration." (Doc. 9, pp. 3-4 of 18). The Beneficiary Declaration that Mr. Katz submitted and represented to the court as a true and correct copy is markedly different from the Beneficiary Declaration that his law firm, RCO, produced earlier as part of mediation under the Foreclosure Fairness Act (Exhibit 4, Doc. 9-4, page 2, Beneficiary Declaration), (Exhibit 3, Beneficiary Declaration dated October 5, 2012).

23.     In addition to the different dates of execution, when placed side by side, the Beneficiary Declarations produced by Defendant RCO at the mediation and by Mr. Katz in defendants' motion to dismiss are two different documents. Although they were both presumably signed by the same Defendant Jennifer Dobron, the signatures vary so drastically as to call into doubt whether they were in fact signed by the same individual identified as Jennifer Dobron (Exhibit 3, Beneficiary Declaration produced pursuant to Dotty Mitchell Letter, Exhibit 4, Doc. 9, True and Correct Copy of Beneficiary Declaration produced by Charles Katz, Esq.).

SECONDTHIRD AMENDED COMPLAINT - 29

BARRAZA LAW, PLLC
1424914245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

24.      Upon information and belief, defendant Jennifer Dobron knew and participated actively or acquiesced to the fact that her name and her signature appear on numerous foreclosure documents recorded in the public records throughout the State of Washington (Exhibit 5, Composite of documents signed and notarized by Dobron).  When compared with the signatures purportedly made by Dobron on the Beneficiary Declarations, the signatures on these recorded documents look markedly from one another even though they were supposedly made by the same Jennifer Dobron. The Composite also illustrates how Jennifer Dobron signed in different corporate capacities for different corporate entities during the same time frame.

25.      While Plaintiff was in active mediation with Cenlar and its counsel, RCO, defendant NWTS caused to be recorded an "Appointment of Successor Trustee" in King County public records. The Appointment was recorded on December 6, 2012, during which time Plaintiff was making the HAMP trial payments and awaiting the permanent loan modification. The Appointment refers to Mortgage Electronic Registration Systems or "MERS" as nominee for the original but now-defunct lender Taylor Bean & Whitaker, its successors and assigns. The Appointment refers to MERS as "The present beneficiary under said deed of trust appoints Northwest Trustee Services, Inc., … as successor trustee under the deed of trust with all powers of the original trustee." (Exhibit 7,    Appointment of Successor Trustee).

26.      The signatory of the Appointment of Successor Trustee is Michael Blair, Vice President for defendant Cenlar. The notary public, defendant Nancy K. Morris, in this instance, affixed her seal without identifying who it was that signed the instrument under oath.  Defendant Morris affixed her seal without filling out the blanks to complete her oath of having actual knowledge or satisfactory evidence that the signatory is Michael Blair, or that Michael Blair had acknowledged that he was in fact the vice president of Cenlar and that he was signing the Appointment in such corporate capacity. The Appointment of Successor Trustee was signed and notarized on October 3, 2012 and was recorded in the public record of King County, Washington (Exhibit 7, Appointment of Successor Trustee).

SECONDTHIRD AMENDED COMPLAINT - 30

27.     On the same day that NWTS caused the Appointment of Successor Trustee to be recorded in the public records of King County, Washington, December 6, 2012, it also caused for a document entitled "Assignment of Deed of Trust" to be recorded (Exhibit 8, Assignment of Deed of Trust). **The Assignment was purportedly signed by defendant Jennifer Dobron, who previously signed the Beneficiary Declarations. This time, Jennifer Dobron signed as Assistant Secretary of Mortgage Electronic Registration Systems Inc., or MERS**, on November 21, 2012, transferring "all beneficial interests" from MERS as nominee of the defunct lender, Taylor Bean & Whittaker, to Cenlar (Exhibit 8, Assignment of Deed of Trust). In comparing the Assignment of Deed of Trust to the Beneficiary Declarations also signed by Jennifer Dobron as assistant vice president for Cenlar, it can be inferred that defendant Dobron worked for Cenlar and signed a multitude of foreclosure documents on behalf of Cenlar as well as other corporate entities, including MERS.  Defendant Dobron's acts of signing and attesting to matters being asserted in these numerous foreclosure documents are done in reckless disregard for the truth and the resulting damages to Plaintiff and others who are similarly situated  (Exhibit 5, Composite of foreclosure documents signed by Jennifer Dobron).

28.     It is a fact that the defendants regularly engage in the particular practice of recording the appointments of successor trustee and assignments of deed of trust simultaneously despite their execution dates in order to create the appearance that these events, the assignment and the appointment, occurred in the correct time sequence. In addition to the simultaneous recording of the assignment and appointment in this case, an example of this practice is found in at least one other nonjudicial foreclosure in Washington (Exhibit 9 , Assignment and Appointment in Connie Korth).

29.     A comparison between the Appointment of Successor Trustee and the Assignment of Deed of Trust as recorded by NWTS reveals several relevant facts: 1) even though the documents were executed by different people, in different corporate capacities,

SECONDTHIRD AMENDED COMPLAINT - 31

BARRAZA LAW, PLLC
1424914245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

for different financial entities, on different days, they were both signed and notarized in

Mercer County, New Jersey where Cenlar is headquartered; 2) both documents were

notarized by the same notary public, defendant Nancy K. Morris; and 3) when both

documents are placed side by side, it does not require a trained eye to see that defendant

Morris's signatures on both documents do not resemble each other in any way. (Exhibit 6,

Composite of foreclosure documents notarized by Nancy Morris) (Exhibit 7, Appointment of

Successor Trustee) (Exhibit 8, Assignment of Deed of Trust).

30.     Upon information and belief, defendant NWTS regularly engages in this

particular practice of preparing and causing to be recorded in the public records assignments of

deed of trust in MERS' name but signed by employees or representatives of the loan servicers.

31.     The Appointment of Successor Trustee and Assignment of Deed of Trust

remain on the public records of King County, Washington and constitute a permanent part of

the chain of title of Plaintiff's homestead. The defendant NWTS' act of causing for these

documents to be executed and recorded in the above-described manner is an unfair and/or

deceptive conduct.

## VI.     CONCURRENT OR DUAL REPRESENTATION WHERE RCO IS COUNSEL FOR NWTS AND LOAN SERVICERS

32.     In this case, while NWTS took steps to initiate the nonjudicial foreclosure

against Plaintiff's homestead, defendant RCO actively represented Cenlar, NWTS's client

and loan servicer, in mediation with Plaintiff under the Foreclosure Fairness Act. After the

mediation and the filing of this lawsuit, RCO became counsel of record for defendant Cenlar

and defendant Bayview. RCO's concurrent representation of NWTS as the purported trustee

BARRAZA LAW, PLLC
1424914245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

and NWTS' clients, the loan servicers on the opposing side of Plaintiff in this case, and borrowers in other foreclosure cases renders it impossible for NWTS to act as an impartial judicial officer in nonjudicial foreclosures conducted by NWTS. RCO's concurrent representation of parties constitutes unfair and/or deceptive conduct under Washington laws.

33.    It has been a common pattern for defendant RCO to concurrently represent the interests of NWTS as trustee and the interests of NWTS' loan servicer clients in nonjudicial foreclosure cases and FFA mediation on the opposite side of the borrowers.  This business arrangement creates an actual or apparent conflict of interest for RCO as a lawyer; it results in injury to the individual borrowers as NWTS becomes an adversary rather than the impartial trustee. This business arrangement negatively impacts the public because it corrodes the public's confidence in the legal system in or outside of the framework of the Deed of Trust Act. *Klem v. Wash. Mut. Bank* 176 Wn.2d 771, 784,  295 P.3d 1179 (2013) ("As we have said, without an independent trustee, the nonjudicial foreclosure process is subject to challenges based upon constitutional and equitable grounds.");  *Schroeder v. Excelsior Management Grp., LLC*,  297 P. 3d 677, 686 (2013) ("We note the act specifically states that the trustee 'shall have no fiduciary duty or fiduciary obligation to the grantor or other persons having an interest in the property subject to the deed of trust.' RCW 61.24.010(3).") ; *Barrus v. Recontrust Co., N.A.,* No. C11-618-RSM, No. 11-17075 1053 WL 2360206, *3 (W.D.Wash. June 9, 2011) (Professor David Boener's Opinion: "It is my professional opinion that no reasonable Washington lawyer could believe that they could effectively represent both the trustee and the beneficiary.  In my opinion, the representation of both clients would be adversely affected. Thus, under RPC 1.7(b)(1) the simultaneous

representation of the trustee and the beneficiary is prohibited even if both clients were to consent to the conflicted representation); John Campbell, *Can We Trust Trustees?Proposal for Reducing Wrongful Foreclosure,* (" In any given transaction, it is not uncommon for the trustee to serve as a debt collector, the attorney for the bank,  the party with the power to appoint a successor trustee, the successor trustee, an agent for MERS who assigns mortgage documents during the foreclosure, the attorney who opposes the homeowner if he or she seeks to stop the foreclosure, the coordinator and direct or indirect provider of title services, the attorney who represents the new buyer after foreclosure in the lawsuit to remove the homeowner, and the coordinator of "default services – the  process of removing the homeowner from the home, cleaning up the home, and preparing it for sale.  This is a staggering number of hats to wear, and one can probably already sense that the inherit conflicts are legion." (http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2191738, visited October 19, 2013).

34.    NWTS and RCO meet the definition of "debt collectors," as defined by FDCPA § 803, codified at 15 U.S.C. § 1692a(6).

35.    Defendant Cenlar and defendant Bayview meet the definition of "debt collectors," as defined by FDCPA § 803, codified at 15 U.S.C. § 1692a(6).

36.    The debt that Defendants claim Plaintiff owes qualifies as a debt, as defined by FDCPA § 803, codified at 15 U.S.C. § 1692a(5).

37.    As soon as Plaintiff filed her lawsuit in the District Court in late 2013, defendant Cenlar began to impose attorney's fees and costs on Plaintiff's mortgage account without any contractual or legal authority. Cenlar sent Plaintiff a letter dated December 4,

SECONDTHIRD AMENDED COMPLAINT - 34

2013, stating: "**In keeping with Washington Law**, please be advised that we have charged your loan account for the fee described, on the date and in the amount indicated on the below list." On this date, Cenlar charged $1251 as "Attorney Fees" and $10.42 as "Attorney Cost." (Exhibit 9, Cenlar 12/4/2013 Letter), emphasis added.

38.     Being alarmed by Cenlar's imposition of Attorney's Fees.Attorney Fees and its reference to Washington Law authorizing for Attorney Fees to be imposed, Plaintiff sent Cenlar a Qualified Written Request dated December 29, 2013, in which she disputed that she owes any attorney's fees to Cenlar: **"I am in receipt of your correspondence dated December 4, 2013 wherein you bill me for attorney fees paid November 25, 2013. I do not owe you attorney fees." (Exhibit 10, Plaintiff's QWR to Cenlar 12/29/2013, emphasis added).**owed any attorney fees to Cenlar and requested explanations.[28]

39.     Thereafter, Plaintiff received a letter from Cenlar dated January 7, 2014, promising that Cenlar "will review your inquiry and respond when our research has been completed." (Exhibit 11, Acknowledgement of QWR 01/07/2014).[29] Despite Plaintiff's timely mortgage payments, Cenlar continues to send Plaintiff Periodic Statements containing huge amounts of unexplained Attorney Fees which make up the "Overdue Payment."[30] In addition to these Periodic Payments, Cenlar has also been sending Delinquent Notices to Plaintiff threatening to report her account information to credit bureaus.[31]  In particular, Cenlar sent Plaintiff a letter dated March 6, 2014, containing the following[32]:

---

[28] **Exhibit R**, Plaintiff's QWR to Cenlar 12/29/2013.
[29] **Exhibit S,** Acknowledgement of QWR 01/07/2014.
[30] **Exhibit T**, Cenlar Periodic Statement dated 1/16/2014,  Exhibit U, Cenlar Periodic Statement dated 1/21/2014
[31] **Exhibit V**, Delinquent Notice
[32] **Exhibit W,** Cenlar Letter 03/06/2014

SECONDTHIRD AMENDED COMPLAINT - 35

BARRAZA LAW, PLLC
1424914245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

Dear Mortgagor(s):

In keeping with Washington Law, please be advised that we have charged your loan
account for the fee described, on the date and in the amount indicated on the below
list.

Please do not hesitate to contact us if you need additional information or clarification.

Sincerely,

Central Loan Administration & Reporting

| LOAN NUMBER | FEE CD | FEE TYPE | FEE AMOUNT | FEE DATE |
|---|---|---|---|---|
| 0029259710 | ATTC | Attorney Cost | 8.21 | 02/10/2014 |
| 0029259710 | ATTO | Attorney Fees | 400.50 | 02/10/2014 |
| 0029259710 | ATTO | Attorney Fees | 630.00 | 02/10/2014 |
| 0029259710 | ATTO | Attorney Fees | 180.00 | 02/10/2014 |
| 0029259710 | ATTO | Attorney Fees | 315.00 | 02/10/2014 |
| 0029259710 | ATTO | Attorney Fees | 1327.50 | 02/10/2014 |
| 0029259710 | ATTO | Attorney Fees | 756.00 | 02/10/2014 |
| 0029259710 | ATTO | Attorney Fees | 1732.50 | 02/10/2014 |
| 0029259710 | ATTO | Attorney Fees | 535.50 | 02/10/2014 |

53.     Unable to compel Cenlar to respond to her December 29, 2013 QWR, and being extremely concerned over the ever-increasing past due and amounts due, on40.     Cenlar's attorney, who has appeared on behalf of CenlarRS, Jennifer Dobron and Nancy K. Harris, the law firm of Wright Finlay & Zak, issued a letter dated February 10, 2014, to Plaintiff's counsel, acknowledging receipt of Plaintiff's QWR concerning, *inter alia,* the attorney's fees charged, and declaring: "We are working on obtaining this information from our client, Cenlar FSB and will forward all responses timely." (Exhibit 12, Acknowledgement by Rene M. Parker of Wright, Finlay & Zak).

41.     Subsequently, Rene M. Parker, as counsel for Cenlar, sent another letter to Plaintiff's counsel. This letter, dated February 24, 2014, also failed to address Plaintiff's concern regarding the Attorney's Fees imposed by Cenlar on Plaintiff's loan account. In the February 24, 2014 letter, Ms. Parker asked for 15-day extension to "fully research this request [Attorney's fees and costs dated November 25, 2013]". However, as of today, no explanations have been provided by Cenlar, or its lawyer (Exhibit 13, Letter by Wright Finlay & Zak dated 2/24/2014).

SECONDTHIRD AMENDED COMPLAINT - 36

BARRAZA LAW, PLLC
14249 14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

42.     Despite Plaintiff's timely payments, Cenlar sent Plaintiff a Loan Statement dated January 16, 2014, showing a "Total Amount Due" of $4,312.16 (Exhibit 14, Cenlar Loan Statement 1/16/2014).

43.     Cenlar sent another Loan Statement dated January 21, 2014 to Plaintiff. This Loan Statement declared that the "Total Amount Due" is $2,786.79. There is no explanation as to why the total amount due was reduced from $4,312.16 to $2,786.79 (Exhibit 15, Cenlar Loan Statement 1/21/2014).

44.     In February of 2014, Cenlar sent a Delinquent Notice to Plaintiff as "an attempt to collect a debt" and threatened "If your payment is not received by the end of the current month, we are notifying you that we may report information about your account to credit bureaus." (Exhibit 16, Delinquent Notice).

45.     Cenlar sent another Loan Statement dated February 18, 2014, declaring the "Total Amount Due" as of February 1, 2014, to be $10,255.21. Again, there is no explanation as to why the total amount due has grown from $2,786.79 in January to $10,255.21 in February (Exhibit 17, Loan Statement 2/18/2014).

46.     In March of 2014, Cenlar sent Plaintiff a letter dated March 6, 2014, in which the following was found:

SECOND THIRD AMENDED COMPLAINT - 37

BARRAZA LAW, PLLC
14249 14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

Dear Mortgagor(s):

In keeping with Washington Law, please be advised that we have charged your loan account for the fee described, on the date and in the amount indicated on the below list.

Please do not hesitate to contact us if you need additional information or clarification.

Sincerely,

Central Loan Administration & Reporting

| LOAN NUMBER | FEE CD | FEE TYPE | FEE AMOUNT | FEE DATE |
|---|---|---|---|---|
| 9710 | ATTC | Attorney Cost | 8.21 | 02/10/2014 |
| 9710 | ATTO | Attorney Fees | 400.50 | 02/10/2014 |
| 9710 | ATTO | Attorney Fees | 630.00 | 02/10/2014 |
| 9710 | ATTO | Attorney Fees | 180.00 | 02/10/2014 |
| 9710 | ATTO | Attorney Fees | 315.00 | 02/10/2014 |
| 9710 | ATTO | Attorney Fees | 1327.50 | 02/10/2014 |
| 9710 | ATTO | Attorney Fees | 756.00 | 02/10/2014 |
| 9710 | ATTO | Attorney Fees | 1732.50 | 02/10/2014 |
| 9710 | ATTO | Attorney Fees | 535.50 | 02/10/2014 |

(Exhibit 18, Cenlar Letter 03/06/2014). There are no explanations as to how Plaintiff could have incurred all these "Attorney Fees" in one day, February 10, 2014.

47.     On March 25, 2014, pursuant to Regulation X of the Mortgage Servicing Act under RESPA, which went into effect January 1410, 2014, Plaintiff'sPlaintiff requested for her counsel sent to prepare and send Cenlar a Notice of Error, asserting errors in which he alleges, on behalfthe imposition of the Plaintiff, that "Attorney Fees.[33] On the full principal and interest payments that you received in February and March, 2014, were not applied as indicated but placed in the suspense account and subsequently applied to attorney's fees." The Notice of Errorsame day, Plaintiff counsel also cautionedsent a Request for Information, asking Cenlar not to report any adverse information provide an explanation as to any consumer reporting agency during "the purpose of the 60 days that followed receiptattorney fees and the parties who received such fees" as well as an explanation of said Notice (Exhibit 19, Notice of Error dated 03/25/2014)."Cenlar's authority to impose such fees."[34]

---

[33] **Exhibit Y,** Notice of Error dated 03/25/2014

[34] **Exhibit X,** Request for Information dated 03/25/2014

SECONDTHIRD AMENDED COMPLAINT - 38

BARRAZA LAW, PLLC
1424914245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

48.    Accompanied54.    Despite Cenlar's actual knowledge that Plaintiff is, at all times, represented by counsel, Cenlar communicated directly with Plaintiff by sending numerous letters to Plaintiff including a letter dated April 1, 2014, where it imposed $360.00 in Attorney Fees, and stated the "Fee Date" as March 25, 2014. In another letter dated May 1, 2014, Cenlar charged Plaintiff's account the total of $8958.50 in Attorney Fees "in keeping with Washington Law."[35] Cenlar sent Plaintiff another Delinquent Notice dated May 16, 2014, cautioning that the payment demanded "does not include other fees and costs that might be due" and threatening that if payment is not received by the end of the current month, Cenlar "may report" the account information to the credit bureaus.[36]

55.    Present counsel for Cenlar, Renee M. Parker, issued a series of letters to plaintiff counsel in which she declared that she needed additional time to investigate the Attorney Fees issue. In her letter dated June 18, 2014, which Ms. Parker referred to as the "final correspondence" to Plaintiff's "recent QWR," Ms. Parker expressed that the Attorney Fees charged against Plaintiff's account on or about November 25, 2013 "have been incurred in litigation and are authorized by the Deed of Trust" and paragraph 6(e) of the Note.[37] However, Ms. Parker's production accompanying her "final correspondence" of June 18, 2014, continued to fail to include the itemization requested by Plaintiff's QWR, Notice of Error and Request for Information.

56.    Since January of 2014, Cenlar has mailed Periodic Statements to Plaintiff, as frequently as twice a month. The most recent Periodic Statement, dated September 16, 2014,[38] shows an *Overdue* amount of $18,196.22, and a *Total Amount Due* of $19,809.03, even though Plaintiff has been making her mortgage payment every month without fail. Until this day,

---

[35] **Exhibit KK**, Cenlar Delinquent Letters dated 4/1/2014 and 5/1/2014
[36] **Exhibit Z**, Cenlar Delinquent Letter dated 5/16/2014
[37] **Exhibit AA**, Parker Letters including Letter dated 6/18/ 2014
[38] **Exhibit BB**, Periodic Statement dated 9/16/2014

BARRAZA LAW, PLLC
~~14249~~14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

Cenlar has yet to provide Plaintiff with the specific itemization of Attorney Fees requested by Plaintiff in her QWR, Notice of Error and Request for Information.  Overall, Cenlar has never explained to Plaintiff the source of authority allowing Cenlar *as the loan servicer* to impose Attorney Fees based on litigation commenced by the borrower. Where neither the original Lender nor Freddie Mac has been named in the lawsuit, and where there is no default, Cenlar has no standing to rely upon the provisions of the Note and Deed of Trust to charge Plaintiff Attorney Fees. [39]

**IV,**  the Notice of Error was a Request for Information pursuant to Section 1024.36 of Regulation X. The Request asks Cenlar to provide a detailed explanation of all attorney fees charged to Plaintiff's account "including the purpose of the attorney fees and the parties who received such fees" as well as "a detailed explanation of Cenlar's authority to impose such fees." (Exhibit 20, Request for Information dated 03/25/2014).

49.   To date, Cenlar has not responded to either the Notice of Error or the Request for Information.

**VII.   CAUSES OF ACTION**
**COUNT ONE: FAILURE TO MATERIALLY COMPLY WITH THE PROVISIONS OF THE DEEDS OF TRUST ACT RCW 61.24. ET. SEQ.**

50.   Plaintiff incorporates herein by reference as though fully set forth at length each and every preceding allegation and statement contained herein, inclusive, of the Factual Allegations.

51.   Plaintiff alleges that it was improper for defendant NWTS to record the Appointment of Successor Trustee and Assignment of Deed of Trust against the Plaintiff's chain of title while Plaintiff was in active mediation with defendant Cenlar. Furthermore, in

---

[39] http://www.freddiemac.com/learn/pdfs/service/104sf_desk_reference.pdf

SECONDTHIRD AMENDED COMPLAINT - 40

BARRAZA LAW, PLLC
14249 14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

so recording the documents, NWTS initiated the nonjudicial foreclosure against Plaintiff's homestead without materially complying with the provisions of the Deeds of Trust Act, *RCW 61.24. et.seq.*

52.   Upon information and belief, all of the defendants knew or should have known that MERS had no real interest in the Plaintiff's loan and MERS never held the promissory note signed by Plaintiff at closing. Therefore, the defendants' act of preparing, causing to be recorded, and using the Assignment of Deed of Trust, naming MERS as the beneficiary and assigning interests purportedly held by MERS, to initiate nonjudicial foreclosure against Plaintiff's homestead constituted a failure to materially comply with the provisions of the Deed of Trust Act, *to wit: RCW 61.24.030(7)(a).*

53.   The defendants knew or should have known that NWTS was not properly appointed as successor trustee because MERS was never a valid beneficiary. *Bavand v. OneWest Bank, FSB*, 2013 Wash.App. LEXIS 2114 (2013).

## COUNT ONE, NEGLIGENT MISREPRESENTATION BY NWTS

54.   Plaintiff alleges that Cenlar was not the holder of the original promissory note signed by Plaintiff at the time Cenlar signed the Beneficiary Declaration via Jennifer Dobron on October 5, 2012, as that term is defined by the 57 Uniform Commercial Code, *Title 62A RCW.* Proof supporting Plaintiff's allegation is found in Freddie Mac's Document Custody Procedures Handbook, which explains that a third party Document Custodian physically possesses original promissory notes on Freddie Mac's loans and not the loan servicers themselves. http://www.freddiemac.com/cim/pdf/chapter_1.pdf, visited October 19, 2013.

SECOND THIRD AMENDED COMPLAINT - 41

BARRAZA LAW, PLLC
14249 14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

55.     Plaintiff further alleges that Cenlar was not the holder of the original promissory note on October 16, 2012, as that term is defined by the Uniform Commercial Code, *Title 62A RCW,* when Cenlar again signed another Beneficiary Declaration, via Jennifer Dobron.

56.     Plaintiff alleges that Cenlar was not the holder of the original promissory note on October 3, 2012, as that term is defined by the Uniform Commercial Code, *Title 62A RCW,* when Cenlar appointed NWTS to be successor trustee for purpose of foreclosing on Plaintiff's homestead nonjudicially.

57.     Plaintiff alleges that Cenlar was not the holder of the original promissory note on November 21, 2012, as that term is defined by the Uniform Commercial Code, *Title 62A RCW,* when MERS assigned the Deed of Trust via Jennifer Dobron to Cenlar. Therefore, Plaintiff alleges that all of the documents utilized in the nonjudicial foreclosure are "made up," and "robo-signed" to enable defendants to adversely affect the quality of Plaintiff's title in violation of the Deeds of Trust Act.

58.     The defendants' collective failure to materially comply with the DTA caused Plaintiff injuries and damages. Once the defendants marked Plaintiff's homestead as subject to foreclosure, they triggered certain related events causing the instant diminution of the property's value and the diminution of Plaintiff's credit rating. By placing Plaintiff's homestead into their computerized system as subject to foreclosure, the defendants announced to the world of investors, speculators and others whose businesses relate to buying and selling distressed properties that Plaintiff's homestead was up for grabs. The defendants' action caused these investors, speculators and others to monitor, drive by, and take other actions that disturbed Plaintiff's privacy and interfered with Plaintiff's quiet enjoyment of her home.

59.     Plaintiff alleges that even though her homestead was not sold by NWTS as the purported trustee, the actions taken by NWTS caused her injuries and damages that are

SECOND THIRD AMENDED COMPLAINT - 42

BARRAZA LAW, PLLC
14249 14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

compensable under the DTA. *Walker v. Quality Loan Serv. Corp.*, 308 P.3d 716 (Wn.App. 2013).

## COUNT TWO: DEFENDANTS' CONDUCT VIOLATED RESPA

60.    Plaintiff incorporates herein by reference as though fully set forth at length each and every preceding allegation and statement contained herein, inclusive, of the Factual Allegations.

61.    RESPA, 12 U.S.C. §2605 requires lenders and loan servicers to timely respond to Qualified Written Requests from borrowers. The Dodd Frank Act, Pub. L. 111-203, Title XIV, §1400(c) and §1463(b) (July 2010) shortened the time periods in which the lender/servicer must respond from 60 days to 30 days after receiving a QWR. The servicer must provider the borrower with a written response that includes the information requested by the borrower or an explanation of why the information is unavailable or cannot be obtained by the servicer. 12 U.S.C. §2605(d)(2)(C). Defendant Bayview violated RESPA for failure to provide a written response to Plaintiff's QWR dated August 27, 2012. Defendant Cenlar violated RESPA by failing to timely and fully address Plaintiff's request for the identification of the entity that owns Plaintiff's loan or the promissory note signed by her at closing in its response to QWR. (Exhibit 21, Qualified Written Request).

62.    Where the Plaintiff provided sufficient detail to Bayview and Cenlar regarding the information she was seeking, their refusal to respond at all, or their failure to  timely and fully provide answers to Plaintiff's specific questions violated 12 U.S.C. §2605(e)(2). *McDonald v. OneWest*, 2013 U.S. Dist. LEXIS 31730 (W.D. Wash., March 7, 2013) ("While servicer may have been justified in ignoring requests for information that were unrelated to the servicing of borrower's loan, its refusal to respond to the vast majority of borrower's inquiries violated 12 U.S.C. §2605(e)(2) and its refusal to refrain from reporting overdue payments to the credit reporting agencies upon receipt of the QWR violated 12 U.S.C. §2605(e)(3)").

SECOND THIRD AMENDED COMPLAINT - 43

BARRAZA LAW, PLLC
14249 14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

63.     Plaintiff alleges that Bayview and Cenlar's failure to respond, or failure to respond in a complete manner, to her QWRs, while simultaneously trying to collect the indebtedness caused her much confusion, anxiety and stress, and fear of losing her home. Plaintiff alleges that the defendants' complete failure to respond to the QWR or failure to respond to the question of note owner/holder identity fully has in fact damaged her by prolonging the period of time that she was in default and thus was unable to discuss her situation with the actual stakeholders of her mortgage loan.

64.     Plaintiff alleges that the defendants engage in a pattern of either failing to timely respond to borrowers' qualified written requests or failing to respond to borrowers' inquiry on the identity of the note owner/holder which will be verified by discovery. Within this case, Cenlar and Bayview repeatedly either failed to respond to Plaintiff's inquiries or failed to respond fully to Plaintiff's inquiries as required by law. This constitutes a pattern or practice entitling Plaintiff to recover statutory damages, attorney's fees and costs, as well as the emotional anguish resulting from fear of losing her home. Plaintiff alleges that the full nature of her damages will be determined at trial: "Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts: . . . In the case of any action by an individual, an amount equal to the sum of—(A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000." 12 U.S.C. § 2605(e); *Houston v. US Bank*, 2012 U.S. App. LEXIS 24196 (6th Cir. 2012) (Court finds nothing in the text of §2605(f), or in RESPA broadly that precludes actual damages including emotional damages provided that they are adequately proven); *Catalan v. GMAC*, 629 F.3d 676 (7th Cir. 2011) (Pursuant to §2605(e)(3), during the 60-day period after a servicer receives a qualified written request relating to a dispute regarding borrower's payments, it may not provide information regarding any overdue payment owed by such borrower and relating to such period or qualified written request, to any reporting agency).

**COUNT THREE: DEFENDANTS VIOLATED FEDERAL DEBT COLLECTION PRACTICES ACT ("FDCPA")**

65.     Plaintiff incorporates herein by reference as though fully set forth at length each and every preceding allegation and statement contained herein, inclusive, of the Factual Allegations as applicable to each of the enumerated Causes of Action.

**Negligent Misrepresentation regarding Contents of Notices of Default and Loss Mitigation Form**

SECONDTHIRD AMENDED COMPLAINT - 44

58.     NWTS, being in the business of conducting nonjudicial foreclosure, supplied false and/or conflicting information to the 66.    The FDCPA, §1692f, prohibits a debt collector from "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if – (A) there is no present right to possession of property claimed as collateral through an enforceable security interest . . . ." §1692f. Defendant NWTS' act of issuing and transmitting the Notice of Default to Plaintiff when it did not have the proper statutory authority of a successor trustee violates FDCPA. *McDonald v. OneWest, supra* (Where NWTS had not been appointed successor trustee and was not acting on behalf of the entity that had actual physical possession of the note, it lacked the right to issue a notice of default and violated §1692f(a)(A)).

67.    While Plaintiff was in mediation with Cenlar, defendant RCO received actual notice that the undersigned counsel represents Plaintiff as well as notice that Plaintiff would be willing to accept the offered trial modification on September 22, 2012.  Despite Plaintiff's acceptance of the offered loan modification, during the months of September, October, December of 2012, Bayview continued to contact Plaintiff directly. The collection contacts did not cease during the remainder of 2012.

68.    Plaintiff successfully completed the trial payment plan and entered into the HAMP permanent loan modification effective January 2013. Proof that Bayview continued to contact Plaintiff directly while she was represented by counsel and in mediation lies in its letter dated February 7, 2013 to Plaintiff. In this letter, Bayview's employee or representative expressed: **"I have been making repeated attempts to contact you by phone, but I haven't**

SECONDTHIRD AMENDED COMPLAINT - 45

been able to reach you at home and/or business numbers listed in our files." (Exhibit 22, February 7, 2013 letter from Bayview).

69.      Plaintiff's counsel sent a Cease and Desist letter to Bayview on February 13, 2013, asking for all communications, written and oral, be directed to him as the debt collection attempts had caused Plaintiff great anxiety and stress (Exhibit 23, Cease and Desist Letter).

70.      Following three successful trial payments, Plaintiff executed the final HAMP Agreement on January 25, 2013, and the agreement was counter-signed by Marianne Doroba, Assistant Secretary and Vice President for Cenlar on April 2, 2013 (Exhibit 24, HAMP modification agreement).  Plaintiff has kept current all mortgage payments pursuant to her loan modification agreement and her loan status should have been reported as current. However, defendants Cenlar and Bayview have not ceased reporting Plaintiff as being in default, repossession and/or foreclosure to the credit bureau. As a result, Plaintiff's credit worthiness has been drastically diminished.

71.      When Plaintiff attempted to refinance her high cost car loan in January of 2013, she learned that the defendants' inaccurate reporting of default and foreclosure continued unabated. Plaintiff was told by the auto financing company that it denied to extend credit because she has been under active foreclosure status (Exhibit 25, Letter of Denial of Credit). In relation to the denial of credit, Plaintiff ordered her credit report and confirmed that the Defendants have not relented in reporting her as under foreclosure.

72.      Defendants Cenlar and Bayview violated 15 U.S.C. § 1692c (a) by attempting and continuing to attempt contact with Plaintiff with full knowledge that Plaintiff was represented by the undersigned counsel in the process of mediation. Cenlar's February 7, 2013 Letter clearly admits that collection contacts were made to Plaintiff at home and place of employment in the prior weeks or months without success. There cannot be any excuse on

SECOND THIRD AMENDED COMPLAINT - 46

BARRAZA LAW, PLLC
14249 14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

the part of Cenlar and Bayview that they were not aware of legal representation because their lawyer, defendant RCO, was actively involved in the statutory mediation process with plaintiff's counsel.

73.     Defendant NWTS, Defendant RCO and its employees, Defendant Cenlar and its employees, defendant Jennifer Dobron and defendant Nancy K. Morris, violated § 1692e(2)(A) of the FDCPA prohibiting a debt collector from falsely representing the character, amount or legal status of any debt. The defendants collectively prepared, signed, notarized, and recorded the Notice of Default, Assignment of Deed of Trust and Beneficiary Declarations, in order to convince Plaintiff and the public that Cenlar has acquired beneficial interest and/or ownership of her mortgage loan when Cenlar's involvement was limited to that of a default servicer.

via notices of default, 74.     Defendant NWTS violated the FDCPA for disclosing to Plaintiff that Freddie Mac is the owner of the promissory note while taking steps to initiate foreclosure including drafting and causing to be transmitted and recorded documents representing MERS as the Notice of Default in this case where NWTS informed Plaintiff that the "beneficiary who had beneficial interests to assign to Cenlar, whom NWTS had actual knowledge to be a mere loan servicer.

declares you in default" without identifying 75.     As a result of the foregoing violations of the FDCPA, defendants are liable to Plaintiff  for resulting statutory damages, actual damages, and costs and attorney fees as provided for by 15 U.S.C. §1692k(a)(3), where the amount of said damages will be proven at trial.

**COUNT FOUR: DEFENDANTS VIOLATED WASHINGTON CONSUMER PROTECTION ACT, RCW 19.86 ET. SEQ.**

SECONDTHIRD AMENDED COMPLAINT - 47

76.   Plaintiff incorporates herein by reference as though fully set forth at length each and every preceding allegation and statement contained herein, inclusive, of the Factual Allegations.

77.   Defendants individually and collectively violated the Washington Consumer Protection Act ("CPA"). The Act prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *RCW 19.86.020.* A private cause of action exists under the CPA if (1) the conduct is unfair or deceptive, (2) occurs in trade or commerce, (3) affects the public interest, and (4) causes injury (5) to plaintiff's business or property. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 780, 719 P.2d 531 (1986). Plaintiff alleges that the defendants' conduct actually or potentially impacts the general public and not just a private wrong. *Lightfoot v. Macdonald,* 86 Wn.2d 331, 333, 544 P.2d 88 (1976).

78.   Recently, in *Bain v. Metropolitan Mortg. Group, Inc.,* 175 Wn.2d 83, 117, 285 P.3d 34 (2012), the Washington State Supreme Court declared that characterizing a non-holder (in that case, MERS) as the beneficiary in the deed of trust, when it knew or should have known that it must have actual possession of the note to be the beneficiary under Washington law, has the capacity to deceive for purposes of establishing a CPA claim. The defendants NWTS, RCO, Bayview, MERS, Cenlar, Jennifer Dobron and Nancy K. Morris, all participated in making the same misrepresentation that MERS, a non-holder, constituted the beneficiary of the deed of trust capable of transferring all beneficial interests under the deed of trust to Cenlar. Additionally, defendant NWTS made a number of parallel misrepresentations in the Notice of Default.

BARRAZA LAW, PLLC
14249 14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

79.   The *Bain* court also found that the third element, public interest, was presumptively met because of the volume of mortgages in the country and in Washington State in which MERS is involved. *Bain*, 175 Wn.2d at 118. Here, defendants NWTS, RCO, and Cenlar are huge companies whose businesses involve servicing or foreclosing mortgages in this state. The business practices that give rise to this litigation - particularly the misleading designation of first MERS and then Cenlar as beneficiaries and the issuance of notices of default without proper assignments and/or possession of the original note – are common in many residential foreclosures affecting not only those who are trying to negotiate with the lenders to save their homes, but also those who rely upon official public recordings to make decisions about purchasing and selling real estate in Washington. The defendants' commercial practice of voluminously producing and recording defective title documents compromises the integrity of the real property recording system, undermines public confidence, and satisfies the third element of the *Hangman* public interest test. *McDonald v. OneWest, supra.; Bavand v. OneWest, supra.*

by name. NWTS negligently misrepresented to Plaintiff that Freddie Mac is the owner of her Note while it simultaneously declared that 80.   Defendant NWTS' practice of simultaneously recording appointments of successor trustee and assignments of deed of trust, notwithstanding their actual execution dates, to create the misimpression that the documents confer the statutory authority for it to conduct non-judicial foreclosures, meets the definition of unfair or deceptive conduct. *Klem v. Washington Mutual Bank*, 2013 Wash. LEXIS 151 (Feb. 2013) (Trustee's practice of having its notary employees predate notarizations was an unfair or deceptive act under the CPA).

BARRAZA LAW, PLLC
1424914245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

81. ~~In this case, defendant RCO, through its employee, Dotty Mitchell, and Charles Katz, Esq., produced two different Beneficiary Declarations; one to the Plaintiff and her counsel and one submitted to the Court in the motion to dismiss Plaintiff's Complaint. It is a statutory prerequisite that "the trustee shall have proof that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust." *RCW 61.24.030(7)(a)*. Defendant RCO's practice of producing more than one version of an original document purporting to satisfy a statutory prerequisite can no longer be deemed inadvertent or incidental but an intentional practice designed to confuse the borrower and obscure the real identity of the party who has a direct stake in the mortgage loan as well as to gain an unfair advantage in litigation. *McDonald v. OneWest, supra.* (RCO produced one version of the "true and correct copy" of the original note in a motion for relief from stay in the bankruptcy court, and another copy in the district court case); *Bavand v. OneWest Bank FSB*, case C12-0254JLR, United States District Court, Western District of Washington (RCO represents NWTS with two varying promissory notes both represented to be true and correct copies of the original). RCO's practice of producing different versions of the beneficiary declarations at different times for different purposes is deceptive. *Klem v. Wamu., supra.*~~

82. ~~In this case, the Notice of Default NWTS transmitted to Plaintiff indicates that Federal Home Loan Mortgage Corporation, or Freddie Mac, is the owner of Plaintiff's promissory note, while stating that~~ Cenlar is the "creditor to whom the debt is owed~~." (Exhibit 1, Notice of Default).  NWTS knowingly misrepresented to the Plaintiff the entity with whom she should communicate with in order to resolve the issues of her mortgage loan because it represented that Cenlar was the creditor to whom the debt was owed but actually knew that Freddie Mac owned the note she signed at closing.~~" because these representations cannot both be true.

59. NWTS negligently misrepresented to Plaintiff that she owed Trustee's Fees in

~~SECOND~~THIRD AMENDED COMPLAINT - 50

the amount of $542.50 when a trustee had yet been appointed in Plaintiff's case. NWTS

negligently misrepresented to Plaintiff that she has incurred trustee's fees when the work

performed by NWTS was being performed under its capacity as the "duly authorized agent" of

Cenlar.

60.     NWTS negligently misrepresented to Plaintiff, via the Loss Mitigation Form,

that Cenlar had fulfilled its statutory duty of due diligence by making contact with Plaintiff and

ascertained that Plaintiff did not ask for a meeting because Plaintiff wanted nothing more than a

face-to-face with Cenlar, or anyone with the authority to modify her loan.

**Negligent Misrepresentation regarding the contents and recording of Assignment of Deed of Trust and Appointment of Successor Trustee**

61.     NWTS negligently misrepresented to Plaintiff and the public via its

manufacturing and recording of the MERS Assignment of Deed of Trust within which MERS is

referred to as the "present beneficiary" when MERS in fact never owned Plaintiff's loan, never

held Plaintiff's Note and thus could never be the Beneficiary under Plaintiff's Deed of Trust.

The misrepresentation violated *RCW 61.24.005.*  In recording the Assignment, NWTS

negligently misrepresented to Plaintiff and the public that MERS held certain beneficial interest

in Plaintiff's loan and effectuated a substantive transfer of beneficial interest, when no such

transfer occurred.

62.     83.     It has also been a common practice of NWTS to declare itself as the

"duly authorized agent" of the loan servicer, and that the loan servicer is the "Client" of NWTS

in notices of default including the Notice of Default used in this case where NWTS declared

that "Cenlar, FSB, By Northwest Trustee Services, Inc., its duly authorized agent" as well as

"Client: Cenlar FSB." NWTS' mixing of its role as a duly authorized agent of the servicer, *i.e.,*

a debt collector on behalf of the servicer, and its role as the purported  trustee who the borrower

SECONDTHIRD AMENDED COMPLAINT - 51

~~counts upon to be impartial and acting in good faith, is unfair and/or deceptive conduct.~~ NWTS negligently misrepresented to Plaintiff and the public via the manufacturing and

~~84.      It is a common practice for NWTS to include trustee's fees in notices of defaults which were sent out before NWTS was properly appointed trustee, including the Notice of Default transmitted by NWTS in this case where NWTS demanded Plaintiff to pay the total sum of $42,787.91 to reinstate the deed of trust before the~~ recording of the ~~notice~~Appointment of ~~sale. Defendant~~Successor Trustee that Cenlar, the appointer, had the requisite statutory authority to appoint NWTS when, on the date of the recording of the Appointment, Cenlar was neither the owner nor the actual holder of Plaintiff's Note. NWTS' misrepresentation also violated *RCW 61.24.010(2).*

63.      NWTS negligently misrepresented to Plaintiff and the public by recording of the MERS Assignment of Deed of Trust and the Appointment of Trustee in certain sequence to give the impression that the Assignment occurred before the Appointment when these events did not so occur. This violates *RCW 61.24.010(4).*

64.      NWTS negligently misrepresented to Plaintiff and the public by recording the MERS Assignment and Appointment which serve as a public announcement that it has authority to act as trustee signaling that a nonjudicial foreclosure sale was forth coming when neither of these facts was true.

**Negligent Misrepresentation regarding the contents of Beneficiary Declarations**

65.      NWTS negligently misrepresented to Plaintiff, Washington State Department of Commerce, the mediator and the United States District Court, by manufacturing beneficiary declarations representing that Cenlar was the holder of Plaintiff's Note when NWTS knew this to be untrue. NWTS, via its attorney, RCO, negligently misrepresented that the Beneficiary Declaration filed with the Court was a true and correct copy of the original when they had no

BARRAZA LAW, PLLC
~~14249~~14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

original in their possession.

**Plaintiff and others justifiably relied upon NWTS' foreclosure documents**

66.     In the context of nonjudicial foreclosure, Plaintiff has no one but NWTS to look to for information about the stakeholder of her mortgage. Plaintiff, as well as the public, has nowhere to go but the Land Title Record to verify the chain of transfer of real property. In its role as trustee, NWTS supplies information specifically to guide distressed borrowers concerning loss mitigation options knowing that borrowers will so be guided by the information supplied. Plaintiff has justifiably relied on NWTS' representations to her detriment. In Plaintiff's case, upon receiving the NOD package, Plaintiff was compelled to spend substantial time and resources to contact Bayview, and Cenlar concerning the identity of the stakeholder for purpose of resolving the default and countering the threatened foreclosure. Where the Assignment and Appointment recorded by NWTS remain in the public record of King County to be relied upon by the public as indication that Plaintiff may still be in default and a foreclosure may still be looming, the valuation of Plaintiff's property is diminished.

67.     ~~practice of demanding~~NWTS' negligent misrepresentation or obfuscation regarding who has the authority to foreclose on Plaintiff's property has allowed NWTS, RCO, Bayview, Cenlar, Dobron and Morris to generate additional fees and costs relating to the modification of her mortgage loan. Plaintiff has suffered and continues to suffer the financial hardship resulting from her having to pay these fees and cost, as well as interests, over the life of her new loan. Because of the inflation of fees and costs generated by the Defendants, it would be difficult for Plaintiff to sell the property to pay off the new mortgage debt in the future.

### COUNT TWO.  NWTS' VIOLATED THE CPA

68.     NWTS' business practice of manufacturing notices of default and other crucial foreclosure documents using templates and leaving only names, titles, and dates, and notary

~~SECOND~~THIRD AMENDED COMPLAINT - 53

BARRAZA LAW, PLLC
~~14249~~14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

oath blank for loan servicers to fill in without any verification is widespread. Jeff Stenman, NWTS' Vice President and Director of Operations, estimated that in the same year NWTS transmitted the Notice of Default, NWTS also sent out 8,000 to 10,000 notices of default to other borrowers. Thus, NWTS' processing and recording of foreclosure documents which are defective either in form or in substance in the public record of Washington in high volumes are unfair and deceptive. NWTS' processing and recording of these doubtful foreclosure documents are done in trade or commerce and affect a substantial portion of the public. *RCW 19.86.020, RCW 19.86.010(2).*

69.     for services rendered by NWTS and related companies while acting as the duly authorized agent of the loan servicer is a NWTS' practice of a debt collector and not of an impartial trustee; recording of MERS assignments of deed of trust and appointments of successor trustee in certain sequence contrary to their execution dates to give the impression that 1) MERS has effectuated an actual transfer of substantive interests under the loan to the servicer and 2) the servicer has the statutory authority of the beneficiary to appoint a successor trustee, and that these events have occurred in the right order, is both unfair and deceptive. NWTS' practice is to give legitimacy to its purported authority as trustee when there was none. NWTS' recording practice has affected Plaintiff's chain of title and the same practice has recurred numerous times in other nonjudicial foreclosures conducted by NWTS.

70.     NWTS' practices of preparing the notices of default representing itself as duly authorized agent of the loan servicer andbut taxing trustee fees against the total amount owed and to be cured by the borrower before being appointed trustee, and recording a self-serving, made-up appointment of successor trustee to legitimize its actions are both unfair and deceptive under the Washington Consumer Protection Act. The same acts violated *RCW 61.24.010(4)* requiring the trustee to act in good faith toward the borrower.

BARRAZA LAW, PLLC
14249 14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

71.     ~~trustee's fees before being appointed violates the duty of~~ NWTS' practice of preparing and transmitting notice of default package containing the Loss Mitigation Declaration Form as proof of compliance with *RCW 61.24.031(5),* without any verification that the due diligence requirement has been in fact met by loan servicers, is widespread, is also contrary to the good faith duty of the trustee as mandated by the Deed of Trust Act, and constitutes an unfair and deceptive act under the CPA.

72.   In the case of *Meyer v. U.S. Bank (In re Meyer),* 506 B.R. 533, 549 (W.D. Wash. 2014), Judge Overstreet presided over a trial involving allegations that NWTS violated the CPA based on the same practices being alleged in this case, including 1) confusing the role of trustee with that of an "authorized agent" of the entity being foreclosed in the name of; 2) stating in the notice of default that the beneficiary has declared plaintiff to be in default when in fact there was no declaration of default issued by the lender; 3) having a corporate policy of not verifying or asking about the information being provided by the loan servicer.  The *Meyer* court expressed "the standard practices of NWTS ignore the importance of a foreclosure trustee's duties to the consumer borrower" and "its standard policy of accepting whatever is contained in a Loss Mitigation Form and Beneficiary Declaration without question," and moving forward with foreclosure against the borrower without exercising any independent due diligence to confirm the authority to foreclose violated the CPA. The *Meyer* court expressed "There can be no serious question that the actions of NWTS relative to Meyers' foreclosure action and other foreclosures handled by NWTS in the State of Washington occurred in trade and commerce." The *Meyer* court also held that NWTS' systemic failure to comply with its duties under the DTA.

BARRAZA LAW, PLLC
~~14249~~14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

85.    Due to "has a significant impact on the public interest."  The *Meyer* court found that the plaintiff had proven all five elements of the test *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co*., 105 Wash.2d 778, 780, 719 P.2d 531 (1986) including causation and damages and awarded the Meyers damages as well as attorney fees and costs.  *Id*. (Under Washington law, a plaintiff must prove the following elements to recover under the CPA: (1) an unfair or deceptive act or practice; (2) the act or practice occurred in trade or commerce; (3) the act or practice impacts the public interest; (4) the act or practice caused injury to the plaintiff in his business or property; and (5) the injury is causally linked to the unfair or deceptive act).

73.    defendants' collective acts,NWTS' practices have caused Plaintiff has suffered actual damages including damages to to incur fees and costs relating to the manufacturing, signing, notarizing, recording and transmission of the Notice of Default, Loss Mitigation Declaration Form, Beneficiary Declarations, Assignment of Deed of Trust and Appointment of Successor Trustee unnecessary; these fees and costs are being paid by Plaintiff over the life of her credit, loss of opportunities, emotional upheavals and prolongedmodified loan. Additionally, NWTS' enumerated unfair and deceptive business practices have placed real fear of in Plaintiff's heart about losing her home to foreclosure; they have caused Plaintiff to suffer emotional distress as well as physical manifestation of the distress.

**COUNT THREE. VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT BY NWTS**

74.    NWTS prepared and transmitted to Plaintiff the NOD in August of 2012 while acting as a debt collector or agent of Cenlar, for purpose of debt collection and not to foreclose, as admitted by NWTS. The NOD reflects or pertains to the character, amount, or legal status of the debt," giving rise to liability under *§1692e*. The NOD *mischaracterized* the debt as being owed to Cenlar but secured in favor of MERS. The NOD also misrepresents the *amount* of the

BARRAZA LAW, PLLC
1424914245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

debt as inclusive of charges of Trustee Fee when there was no trustee in place and no foreclosure. Any work performed by NWTS as an authorized agent of Cenlar, for purpose of debt collection, cannot be charged to Plaintiff's loan because such charges were not authorized by the loan documents or any other law.  The NOD misstated the legal status of the debt by identifying Cenlar to be the "creditor to whom the debt is owed." The content of the NOD, in its totality, violates *§1692f(1)* and  *§1692e(2)(B)*

75.      Under *McDonald v. OneWest Bank, FSB*, No. C10-1952, 2012 WL 555147, at *4 n.6, 2012 U.S. Dist. LEXIS 21449, at *14 n.6 (W.D. Wash. Feb. 21, 2012), that NWTS is subject to the FDCPA as a debt collector as defined under *15 U.S.C. §§1692-1692p*, Moreover, NWTS' collection of the Trustee Fee violated *§1692f(1)*  because NWTS acted as an agent of Cenlar, who is not a party to the Note or Deed of Trust, and there was no other Washington law allowing NWTS to collect a Trustee Feewhen NWTS transmitted the NOD to Plaintiff on August 27, 2012, and charged Plaintiff with a Trustee Fee, NWTS had yet to be appointed trustee and therefore is liable to Plaintiff under *§1692f(6)(A)*.  Additionally, as of that date, neither MERS nor Cenlar, had the present right to possession of Plaintiff's property through nonjudicial foreclosure because they were not the holders of the underlying debt instrument. NWTS' transmission of the NOD therefore violated *§1692f(6)(A)*.

76.      In December of 2012, when NWTS recorded the MERS Assignment of Deed of Trust and Appointment of Successor Trustee vesting itself with the power of sale, the recording of these documents is associated with or in the furtherance of nonjudicial foreclosure. On the date of the recording, December 6, 2012, Plaintiff was not in default and NWTS acknowledged that because it had already been notified by Cenlar two months prior, to place a hold on the foreclosure due to trial loan modification period. Therefore, NWTS' recording of the documents was in furtherance of nonjudicial foreclosure where NWTS admitted that it did not have the

BARRAZA LAW, PLLC
1424914245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

present intention to take possession of the property. Thus, NWTS' action in recording the documents on December 6, 2012, violated *§1692e(6)(B).*

77.      . As a result of the enumerated violations of the FDCPA, NWTS had caused Plaintiff's new and modified loan to be inflated or increased by the unearned or unnecessary. NWTS had invoiced Cenlar miscellaneous fees, including $14.00 to record each of the Assignment and Appointment, and these fees have been passed on to Plaintiff and have been made a part of Plaintiff's New Principal Balance. Plaintiff has obligated herself to pay these fees, with interests, amortized over forty years. In addition to recovering from NWTS for the actual fees and costs incurred within the New Principal Balance, Plaintiff is entitled to recover for these from NWTS  statutory damages under the Washington Consumer Protection Act, including punitive damages. *RCW 19.86.090.* The ., emotional distress, and attorney fees and costs pursuant to *15 U.S.C. §1692k(a)( 3),* where the full amountsextent of Plaintiff'ssaid damages will be proven at trial.

## COUNT FOUR. RCO VIOLATED CPA

78.      RCO is liable to Plaintiff for the acts taken by NWTS because despite their separate corporate identities, these two companies are one and the same. Both have a direct financial stake in how many and how quickly foreclosures can get to sale. Both serve the same master and owe a duty of loyalty to that master as well as to each other.  By sharing ownership, governance, space, management and functions, their separate corporate entities should be disregarded.

79.      RCO aids and abets in NWTS' operations especially in the composition of templates being used for foreclosure documents, and in the advice, or lack thereof, concerning the inaccuracies and defects of the same documents, where both defendants knew that these documents were to be recorded and become part of the Land Title Record. As such, RCO and

BARRAZA LAW, PLLC
14249 14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

NWTS are jointly responsible for each other's conduct. RCO and NWTS have labored under a tacit agreement to act in concert to carry out the SBP, and even if they did not intend to harm Plaintiff, they are liable for the resulting harm.

80.     RCO knew that MERS had no interest under Plaintiff's Note and no beneficial interest under Plaintiff's Deed of Trust but advised, counseled, and assisted NWTS to compose the contents of MERS assignments representing the contrary, causing Plaintiff and the public to believe that MERS actually transferred a beneficial interest for value, including the power of sale to Cenlar, when no such transfer had occurred.

81.     By having access to the same information provided by its client, Cenlar, RCO knew or should have known that a third-party custodian of record was/is the actual holder of Plaintiff's Note and not Cenlar at the time the nonjudicial foreclosure was initiated. RCO is charged with knowing how the Note Holder, Beneficiary and Loan Servicer are defined within the Note and Deed of Trust, rendering Cenlar ineligible to be the Note Holder. By representing to the U. S. District Court, the Washington Department of Commerce, the mediator and the Plaintiff that Cenlar was the holder of Plaintiff's Note and the secured creditor to whom Plaintiff owes the debt, RCO committed the tort of negligent misrepresentation just like NWTS.

82.     RCO is liable for NWTS' acts because its separate corporate entity should be disregarded; the doctrine is especially applicable in cases involving a parent or principal corporation and subsidiary corporations which merely acquiesce in and register the decrees of their principal. Plaintiff alleges that the legal fiction of distinct corporate existence of RCO and NWTS should be disregarded because the business arrangements amongst all of the companies within the Conglomerate, as owned and governed specifically by two lawyers, Messrs. Routh and Fennell, are so organized and controlled, and its affairs are so conducted by the same individuals or entities, as to make RCO merely an instrumentality or adjunct of NWTS.

83.     RCO obtains revenues from services rendered to loan servicers in connection

BARRAZA LAW, PLLC
14249 14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

with nonjudicial foreclosures originated by NWTS. Once a borrower, such as Plaintiff, requests mediation, RCO becomes the representative of the servicer in mediation. RCO will retain the loan servicer as client for as long as the mediation process takes. If the borrower, like Plaintiff, sues NWTS and the loan servicer-client to enjoin or challenge the sale, RCO undertakes legal representation of both in litigation. In the event that RCO is named as a defendant within the same lawsuit, RCO also represents itself.  Within this arrangement, RCO is able to price, charge, bill and collect fees which ultimately will be paid by borrowers including the Plaintiff. RCO is able to gain a larger share of the market and be more profitable than its competitors, making the Defendants' SBP a monopoly and is *per se* unfair.

84.      The relationship between RCO and NWTS is not typical of attorney-client but one of principal-agent. In addition to RCO's assistance to NWTS' creation of faulty foreclosure documents, RCO also actively engages in a pattern where its lawyers place the same documents into mediation and court cases and represent them as true in order to gain an advantage on behalf of NWTS and their mutual client, the loan servicer. Because of the automation of foreclosure, NWTS and RCO have few, if any, originals in their possession. Yet, once the lawyer makes the assertion that he has produced a true and correct copy of the "original," he effectively stakes his law license on the document and discourages others, including the Court, from forming any suspicion or asking any questions about its authenticity or veracity. Above all, because the defendants can hide behind the cloak of trusteeship, and the attorney-client privilege, the falsity of these documents may never be fully exposed even with the borrower's spending considerable resources to inquire through litigation.

85.      Washington legislature did not intend for trustee companies or their lawyers to be exempted from the scope of the CPA. Proof of this intent is found in *RCW 61.24.135(2),* which states: "(2) It is an unfair or deceptive act in trade or commerce and an unfair method of competition in violation of the consumer protection act, chapter *19.86 RCW,* for any person or

entity to: (a) Violate the duty of good faith under *RCW 61.24.163*; (b) fail to comply with the requirements of *RCW 61.24.174*; or (c) fail to initiate contact with a borrower and exercise due diligence as required under *RCW 61.24.031*."

86.     The duty of RCO as a representative of Cenlar and a participant in Plaintiff's FFA Mediation is to "address the issues of foreclosure that may enable the borrower and the beneficiary to reach a solution, including but not limited to reinstatement, modification of the loan, restructuring of the debt, or some other workout plan." *RCW 61.24.163(9)*. Yet, as a participant, RCO knew that mediation was concluding and Plaintiff had accepted the loan modification agreement but did nothing to prevent NWTS, Cenlar, MERS, Dobron and Morris from executing and recording documents affecting Plaintiff's title unnecessarily and charging additional fees and expenses to Plaintiff.

87.     RCO's liability is based on the business arrangements it has with NWTS, the Affiliated companies, and Cenlar from whom RCO obtains business, determines its pricing, generates, bills and collects fees for services. Together with NWTS and the Affiliated Companies, RCO can charge more fees and costs which are then passed on to consumers, including Plaintiff. In this monopolistic arrangement, RCO has been laboring under an actual conflict of interest to the extent that it exposed its clients, NWTS and Cenlar, to the liability alleged herein.[40] As such, RCO is liable to Plaintiff for actual and statutory damages, treble damages, and reasonable attorney fees and costs under the CPA.

### **COUNT FIVE. CENLAR, DOBRON & MORRIS COMMITED NEGLIGENT MISREPRESENTATION**

**Cenlar, Dobron and Morris are liable to Plaintiff for the signing and notarization of MERS Assignment under Negligent Misrepresentation**

---

[40] Where NWTS contends that Cenlar as principal should be held liable for NWTS' acts as agent of Cenlar, actual conflict had arisen from RCO concurrent representation of the parties in the early stage of this case. **Dkt. 110, p. 14, lines 6-22.**

BARRAZA LAW, PLLC
14249 14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

89.     Cenlar, Dobron and Morris, signed and notarized the MERS Assignment knowing that MERS had never held Plaintiff's Note and thus could not be beneficiary. They did so with full knowledge that the document would be recorded in the public records and be relied upon by Plaintiff as well as other people to determine chain of title. Cenlar, Dobron and Morris are liable to Plaintiff for negligent misrepresentation.

90.     Cenlar, through defendant Morris, signed and notarized the Appointment of Successor Trustee, or AOST, in order to confer upon NWTS the power of sale, with full knowledge that neither MERS nor Cenlar was the actual holder of Plaintiff's Note at the time foreclosure was initiated. Cenlar and Morris' action started the chain of events that has placed Plaintiff in her present predicament–paying on a Modified Loan that has been highly inflated with fees and costs, including an ever-increasing attorney fee–where, default and foreclosure are once again looming and becoming certain.

91.     Cenlar and Dobron are liable to Plaintiff for their execution of the two Beneficiary Declarations because on October 5, 2012, and October 16, 2012, Cenlar was not the Note Holder as that term is defined by the Note signed by Plaintiff at closing. In the unlikely event that the contractual definition of Note Holder contained with the Note does not control, Cenlar, as the Loan Servicer, was not the actual holder of Plaintiff's note as that term is defined by Washington law. Uniform Commercial Code, *Title 62A RCW*. Further, if Plaintiff's Note is in fact owned by Freddie Mac, Freddie Mac's Document Custody Procedures Handbook available to the Defendants makes clear that a third party Document Custodian physically possesses original promissory notes on Freddie Mac's loans and not the loan servicers themselves.

**COUNT SIX:. NOTARY PUBLIC NANCY K. MORRIS COMMITTED FRAUD**

86.   Plaintiff incorporates herein by reference as though fully set forth at length each and every preceding allegation and statement contained herein, inclusive, of the Factual

SECONDTHIRD AMENDED COMPLAINT - 62

Allegations.

92~~87~~.        ~~The nine elements necessary to establish fraud -- all of which must be shown by clear, cogent, and convincing evidence -- are a representation  of an existing fact; its materiality; its falsity; the speaker's knowledge of its falsity; her intent that it shall be acted upon by the person to whom it is made; ignorance of its falsity on the part of the person to whom it is addressed; the latter's reliance on the truth of the representation; her right to rely upon it; and her consequent damage. *Williams v. Joslin,* 65 Wn.2d 696, 399 P.2d 308 (1965); *Michielli v. United States Mortgage Co.,* 58 Wn.2d 221, 361 P.2d 758 (1961); *Chiles v. Kail,* 34 Wn.2d 600, 208 P.2d 1198 (1949).~~

~~88~~.        Defendant Nancy K. Morris committed fraud in her act of placing her notary seal upon the Appointment of Successor Trustee <u>on October 3, 2012,</u> without confirming the identity of the signer and his capacity to sign as declared. Morris' knew that by signing and placing her notary seal upon the Appointment, she would cause others<u>, including Plaintiff,</u> to rely on the representations contained therein as true and reliable ~~as recorded in the public records.~~<u>.</u>

~~89~~<u>93</u>.   Defendant Nancy K. Morris committed fraud ~~in her act of~~<u>by</u> notarizing the Assignment of Deed of Trust and attesting that defendant Jennifer Dobron executed the document in her capacity as ~~assistant vice president~~<u>actual Assistant Secretary</u> of MERS on the stated date, time and place because Morris knew ~~or should have known~~ that defendant Dobron was not a corporate officer of MERS but an employee of Cenlar whose job involves executing a high volume of documents to satisfy statutory prerequisites ~~to conduct non-judicial residential~~<u>of nonjudicial</u> foreclosures.

~~89~~<u>94</u>.   Defendant Morris<u>, by certifying and affixing her notary seal on MERS assignments and appointments of successor trustee, confirmed, certified, or otherwise</u>

BARRAZA LAW, PLLC
~~14249~~<u>14245</u>-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

sanctified the representations within as existing facts when they were not. Defendant Morris committed fraud in allowing for her signatures and notary seal to be affixed on ~~recorded~~ documents to be utilized in the nonjudicial foreclosure of Plaintiff's homestead because she ~~knew or should have known that the use of~~intended for her certification and notary seal ~~legitimized~~to legitimize these documents by giving them the appearance of reliability and trustworthiness. *~~Klem v. Wamu, supra.~~* ~~("A signed notary's acknowledgement is the ultimate assurance upon which the whole world is entitled to rely that the proper person signed a document on the stated day and place. Local, interstate and international transactions involving individuals, banks, and corporations proceed smoothly because all may rely upon the sanctity~~ in violation of ~~the notary's seal.")~~her oath as Notary Public.

95.    In addition to the fraud perpetrated within Plaintiff's foreclosure, Morris knew that the MERS assignments and appointments she had participated in creating, signing, and notarizing would be recorded in the public record, that they were material to nonjudicial foreclosures in Washington, and that they would constitute part of the Washington Land Title Record.  Morris knew her role and act as Notary Public would cause those who rely upon the documents to remain ignorant to the true manner in which the documents are created or the documents' lack of truthfulness. Morris knew that the reliance is detrimental to those who make business or financial decisions based on the documents because of the misinformation the documents represent.

96.    Morris' robo-signed Assignment of Deed of Trust and Appointment of Successor Trustee generated fees and costs, including the recording fee of $28.00, which caused the amount in default to be unnecessarily inflated. Such fees and costs have been added to the New Principal Balance owed by Plaintiff. Thus, Morris' fraud caused actual harm and damages to Plaintiff.

**COUNT SEVEN.**~~90.   Defendant Morris' acts made it possible for inaccurate or fraudulent documents to be recorded in the chain of title of Plaintiff's property. Defendant~~

~~SECOND~~THIRD AMENDED COMPLAINT - 64

~~Morris' acts started the chain of events that led to the initiation of foreclosure against Plaintiff's homestead by an entity other than the owner of her mortgage loan and the promissory note she signed at closing. Plaintiff is entitled to consequential damages as a result of defendant Morris' intentional tort including anguish, emotional distress, and humiliation relating to her fear of losing her house and the risk of losing it to nonjudicial foreclosure.~~

### ~~COUNT SIX:~~ **FRAUD BY DEFENDANT JENNIFER DOBRON**

~~91.   Plaintiff incorporates herein by reference as though fully set forth at length each and every preceding allegation and statement contained herein, inclusive, of the Factual Allegations.~~

~~92~~97.   Defendant Jennifer Dobron committed common law fraud by signing the Assignment of Deed of Trust as assistant secretary of ~~MERS. Dobron knew that even though~~MER when she did not actually work for MERS, ~~is~~was not a real corporate officer of MERS, and did not have any personal knowledge of the matters she swore to in the Assignment~~, her signing of~~. Dobron intended for the ~~document would enable defendant NWTS~~ADOT to ~~conduct a~~facilitate the nonjudicial foreclosure of Plaintiff's ~~homestead. It was Dobron's intent, in signing the Assignment,~~property and intended further that others would rely on her representations as truth ~~and the intended effect would be reached~~.

98.   ~~93.   Defendant Dobron's acts made it possible for inaccurate or fraudulent documents to be recorded in the chain of title of Plaintiff's property. Defendant Dobron's acts started the chain of events that led to the initiation of foreclosure against Plaintiff's homestead by an entity other than the owner and holder of her mortgage loan and the promissory note she signed at closing. Plaintiff is entitled to consequential damages as a result of defendant Dobron's intentional tort including anguish, emotional distress, and humiliation relating to her fear of losing her house and the risk of losing it to nonjudicial foreclosure.~~

~~———~~Defendant Dobron, by signing or allowing others to sign assignments and other

~~SECOND~~THIRD AMENDED COMPLAINT - 65

foreclosure documents, including those used to foreclose in Plaintiff's case, represented as existing facts that: 1) Cenlar obtains beneficiary status via the MERS Assignment, 2) Cenlar then is able, as beneficiary, to appoint NWTS to be successor trustee.  However, at the same time, Dobron signed or caused for others to sign beneficiary declarations representing that Cenlar obtains beneficiary status based on its holding the note. Where the MERS Assignments appear on the public record but the Beneficiary Declarations are hidden from the public view, Dobron's intent to defraud is apparent.

99.     Dobron's robo-signed ADOT and Beneficiary Declarations caused additional fees and costs to be added to Plaintiff's loan and thus the amount in default was unnecessarily and unreasonably inflated; Dobron's fraud caused actual harm and damages to Plaintiff.

**COUNT ~~SEVEN: VIOLATION OF~~EIGHT: BAYVIEW VIOLATED RESPA**

100.     *12 U.S.C. § 2605(e)* requires, upon receiving a qualified written request (QWR), that a loan servicer shall provide a written response acknowledging receipt of the correspondence within 20 days. *§ 2605(e)(1)(A).* Further, a loan servicer shall, within sixty days of receiving a QWR, make appropriate corrections in the account of the borrower, transmit to the borrower a written notification of such correction, and provide the borrower with a written explanation or clarification that includes details regarding its investigation and contact information for one of its employees or representatives. *§ 2605(e)(2).* Defendant Bayview sent Plaintiff a letter dated May 18, 2012, offering Plaintiff an initial loan modification.[41] Bayview again sent Plaintiff another letter dated September 17, 2012, offering Plaintiff yet another loan modification.[42] Yet, Bayview did not acknowledge or response to Plaintiff's QWR dated August 27, 2012. Bayview violated RESPA for failure to provide a written response to Plaintiff's QWR *12 U.S.C. §2605(d)(2)(C).*

---

41 **Exhibit CC**, Bayview Letter of 5/18/2012
42 **Exhibit DD**, Bayview Letter of 9/17/2012).

BARRAZA LAW, PLLC
~~14249~~14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

## COUNT NINE~~.~~. BAYVIEW VIOLATED THE FAIR DEBT COLLECTION PRACTICES ACT

101.    Bayview fits the definition of a debt collector because Bayview became involved in Plaintiff's loan after it had gone into default. Bayview's involvement in Plaintiff's loan was specifically to review Plaintiff for a loan modification. In September of 2012, plaintiff counsel, V. Omar Barraza, notified Bayview in writing that he represents her interest in relation to the loan modification.[43] Thereafter, Plaintiff and Mr. Barraza again contacted Bayview via telephone and in writing to inform Bayview that Plaintiff would accept the Loan Modification Offer.[44]

102.    Despite the notices and actual knowledge that Plaintiff is represented by counsel, well after Plaintiff had successfully completed the trial period and entered into the Permanent HAMP Loan Modification in January of 2013, Bayview continued to contact Plaintiff directly by mail and telephone.[45]

103.    Proof that Bayview continued to contact Plaintiff directly while she was represented by counsel and in mediation lies in its letter dated February 7, 2013 to Plaintiff. In this letter, Bayview's employee or representative expressed: "I have been making repeated attempts to contact you by phone, but I haven't been able to reach you at home and/or business numbers listed in our files." By contacting Plaintiff in full knowledge of counsel's representation, Bayview violated *15 U.S.C.§1692c(a)(2).*

## COUNT TEN. CENLAR VIOLATED REGULATION X

94.   ~~Plaintiff alleges, based on the foregoing factual account whereupon Plaintiff and Plaintiff's counsel have properly inquired regarding Cenlar's imposition of attorney's fees and costs but Cenlar violated 12 C.F.R. §1024.35 and §1024.36 by failure to respond to~~

---

43 **Exhibit EE**, Notice of Representation and Authorization to Release Information.
44 **Exhibit FF**, Letter written by Plaintiff counsel to Bayview dated 9/22/ 2012
45 **Exhibit GG**, Bayview Letter to Plaintiff dated 2/7/2013

~~SECOND~~THIRD AMENDED COMPLAINT - 67

BARRAZA LAW, PLLC
~~14249~~14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

~~Plaintiff's inquiry concerning its imposition of attorney's fees and costs on her mortgage loan account. Under the new procedures, upon receiving a Notice of Error or Request for Information, a servicer must provide written notice to a borrower within five days acknowledging receipt. Thereafter, the servicer has thirty days to investigate, correct, or respond to the borrower.[46]~~

104.    Plaintiff's Request for Information and Notice of Error sent to Cenlar in March of 2014 *triggered 12 C.F.R. §1024.35(d)*, requiring Cenlar to acknowledge receipt in writing within five days. Thereafter, the regulations require Cenlar to investigate, if necessary, and respond within thirty days. [47]

105.    Cenlar has provided no acknowledgement and no substantive response to Plaintiff's NOE sent in March of 2014 within the time set forth in the Regulation. Counsel for Cenlar, Renee M. Parker, Esq., sent her letter dated June 18, 2014, calling it the "final response" to Plaintiff's QWR, in which she only addressed the issue of Attorney Fees being assessed on one particular date, November 25, 2013: "These are fees and costs that have been incurred in litigation are authorized by the Deed of Trust, more specifically Paragraphs 9, 14 and 22, and Paragraph 6(e) of the Note." Ms. Parker added that "*This authorization was not changed by your recent loan modification.*" According to this June 18, 2014 Letter, Ms. Parker's conclusions were based upon her own investigation of the inquiry.

106.    In this case, Cenlar did not respond fully to Plaintiff's QWR of December 29,

---

[46] ~~12 C.F.R. §§1024.35(e), 1026.36(d). "For asserted errors governed by the time limit . . . of this section, a servicer may extend the time period for responding by an additional [fifteen] days . . . if, before the end of the [30] day period, the servicer notifies the borrower of the extension and the reasons for the extension in writing." 12 C.F.R. §1024.35(e)(3)(i)(C)(ii); *see also* 12 C.F.R. §1024.36(d)(2)(i)(B)(ii).  Defendant Cenlar has taken no action even after the expiration of the 15-day extension it requested from Plaintiff.~~

[47] 12 C.F.R. §§1024.35(e), 1026.36(d). "For asserted errors governed by the time limit . . . of this section, a servicer may extend the time period for responding by an additional [fifteen] days . . . if, before the end of the [30] day period, the servicer notifies the borrower of the extension and the reasons for the extension in writing." 12 C.F.R. §1024.35(e)(3)(i)(C)(ii); *see also* 12 C.F.R. §1024.36(d)(2)(i)(B)(ii).  Defendant Cenlar has taken no action even after the expiration of the 15-day extension it requested from Plaintiff.

BARRAZA LAW, PLLC
~~14249~~14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

2013, concerning the imposition of attorney's fees and costs. Further, Cenlar never responded to Plaintiff's counsel's Notice of Error and Request for Information regarding the specific questions and requests made; Cenlar violated *12 C.F.R. §1024.35* and *§1024.36*.  Cenlar's failure to comply with the Regulation gives rise to a private cause of action under *12 U.S.C. §2605(f)* upon which Plaintiff can recover actual damages, statutory damages, and attorney fees and costs.

**COUNT ELEVEN.**95.   Under RESPA, Plaintiff has a private right of action entitling her to actual damages and attorney's fees, and in the case of a pattern or practice of noncompliance, statutory damages not to exceed $2000.00. In this case, Cenlar never responded to Plaintiff's Inquiry concerning the imposition of attorney's fees and costs and Cenlar never responded to Plaintiff's counsel's Notice of Error and Request for Information concerning the imposition of attorney's fees and costs. These failures constitute a pattern or practice of Cenlar.

**COUNT EIGHT, VIOLATION OF TILA**

96.   Plaintiff alleges, based on the foregoing factual account, that Cenlar violated 12 C.F.R. §1464 (Crediting of Payments/Payoff Statements) of Regulation Z. The new rule was promulgated pursuant to §105(a) of TILA, which subjects it to private enforcement against creditors and assignees.   The applicable provisions of TILA allow Plaintiff to recover actual damages, attorney's fees, and statutory damages between $400 and $4000.

97.   In this case, Plaintiff specifically questions whether Cenlar, the assignee, properly applied her mortgage payments in the manner provided for in the Deed of Trust and her question remains unanswered.  It appears that Cenlar has not applied Plaintiff's payments in the manner provided for in the Deed of Trust but applied them to various fees and costs including attorney's fees and costs for which Cenlar cannot or will not explain. The misapplication of mortgage payments has or will result in Plaintiff's loan account being in default status.

BARRAZA LAW, PLLC
1424914245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

**~~COUNT NINE.~~ BREACH OF HAMP MODIFICATION AGREEMENT & GOOD FAITH AND FAIR DEALING IMPLIED IN THE ~~LOAN~~HAMP MODIFICATION AGREEMENT**

~~98.~~ 107.    Cenlar entered into the HAMP Agreement with Plaintiff ~~alleges~~in its declared capacity as "Lender" or "Loan Servicer" as of March 1, 2013, the effective date. The parties agreed to the following provision:

> **B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts")** less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $406,380.50 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

108.    As loan servicer, Cenlar lacks the authority to impose fees and costs upon Plaintiff's loan.  Paragraphs 14 and 22 of Plaintiff's Deed of Trust only empowers the actual Note Holder to "charge" and "collect" attorney fees and costs related to default, acceleration, and foreclosure. Paragraph 6E of Plaintiff's Note echoes the Deed of Trust and provides that the "Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law" *in the event of default*." Thus, Cenlar breached the HAMP Agreement because it deceptively and unfairly unilaterally imposed post-modification litigation related attorneys' fees and costs on Plaintiff without contractual authority. The violation is made more serious by Cenlar's ~~reference of "In keeping with~~ announcement that it was authorized to do so under "Washington Law~~," as authority for~~

~~SECOND~~THIRD AMENDED COMPLAINT - 70

BARRAZA LAW, PLLC
~~14249~~14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

the fees and costs charged to."[48] By unilaterally adding Attorney Fees onto Plaintiff's mortgage loan account is after the New Principal Balance had been established, Cenlar breaches the HAMP Agreement.

109.    Cenlar has also violated the implied duty of good faith and fair dealing inherent in the HAMP Agreement by breaching its terms and evading the spirit of the bargain. By adding enormous amounts of Attorney Fees knowing that it would be impossible for Plaintiff to pay, Cenlar intentionally induces default and foreclosure. This conduct interferes with Plaintiff's ability to perform her end of the bargain of the HAMP Agreement.

### COUNT TWELVE. CENLAR VIOLATED FDCPA

---

48 From Deed of Trust:

¶14. Loan Charges. Lender *may charge Borrower fees* for services performed in connection with *Borrower's default*, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

¶22. Lender shall be entitled *to collect all expenses* incurred in pursuing the remedies provided in this Section 22 (acceleration and foreclosure), including, but not limited to, reasonable attorneys' fees and costs of title evidence.

¶26. Attorneys' Fees. Lender shall be entitled *to recover* its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

From Note:
¶(6)(E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in *enforcing this Note* to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

SECONDTHIRD AMENDED COMPLAINT - 71

BARRAZA LAW, PLLC
1424914245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

110.     Plaintiff filed this lawsuit on April 3, 2013 (**Dkt. #1**) and on April 23, 2013, RCO appeared as counsel for Cenlar (**Dkt. #5**). Despite actual knowledge of Plaintiff's complaint and representation by counsel, excluding the Periodic Statements, Cenlar sent correspondence directly to Plaintiff dated May 31, 2013, October 18, 2013 and December 4, 2013. In 2014, Cenlar sent Plaintiff more correspondence to Plaintiff dated February 18, 2014, February 24, 2014, March 6, 2014, March 17, 2014 and April 1, 2014. [49] These direct communication made by Cenlar to Plaintiff violated *§1692c(a)(2).*

111.     Cenlar's failure to inform Plaintiff either before, or within the terms of the HAMP Agreement that she would be charged fees and costs incurred *before* entering into said Agreement afterward, including the amount of Attorney Fees incurred, how Plaintiff's payment for such fees will be calculated, or an amortization schedule, are omissions which could "deceive or mislead the least sophisticated debtor" who then signed Agreement without fully understanding their implications. Additionally, Cenlar has failed to disclose to Plaintiff definitively whether it was the Lender, or, if it was not, under whose authority Cenlar was acting in signing the HAMP Agreement. Cenlar's failure therefore is "false, deceptive, or misleading ~~and deceptive because Cenlar does not cite to one or more~~ representation" of Plaintiffs' debt under *15 U.S.C. § 1692e.*

112.     Cenlar's various letters to Plaintiff informing her that its imposition of Attorney Fees was in "keeping with Washington Law" violated *§1692e (2) (B)* because: 1) Cenlar, as a loan servicer, cannot charge or recover Attorney Fees incurred in defense of itself where a court has yet to enter a lawful judgment in its favor, and 2) there are no provisions of the Revised

---

49 **Exhibit HH**, Composite of Cenlar's direct communication to Plaintiff in 2013 and 2014.

BARRAZA LAW, PLLC
~~14249~~14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

Code of Washington ~~in the letters it sent to Plaintiff. Furthermore, nothing in the loan documents or the Loan Modification Agreement provide for~~ or any other legal authority authorizing Cenlar to charge Attorney Fees.  When Cenlar's counsel wrote on June 18, 2014, informing Plaintiff that Cenlar's right to impose attorney's ~~fees "in~~ fee is grounded on the Note and Deed of Trust, she confirmed that Cenlar has unjustifiably inflicted mental distress upon Plaintiff by representing that its collection effort was lawful and that serious consequences would follow.

113.    Cenlar's ongoing attempt, as evidenced by the letters citing to Washington Law, to extract payments from Plaintiff for Attorney Fees for its defense against Plaintiff's lawsuit violates *15 U.S.C. §1692f (1)* because Cenlar has been servicing the Plaintiff's loan on behalf of Freddie Mac and has agreed to accept a flat fee specifically to assist Plaintiff in obtaining the HAMP Agreement. This flat fee agreement, even though not disclosed to Plaintiff, would limit Cenlar to what fees can be "passed on" to Plaintiff, including fees incurred of having to defend against a lawsuit when Freddie Mac is not a named party.

**COUNT THIRTEEN. CENLAR VIOLATED CPA BY STATING THAT ITS IMPOSITION OF ATTORNEY'S FEES UPON PLAINTIFF'S LOAN IS AUTHORIZED BY WASHINGTON LAWS**

114.    Cenlar's act of sending various letters to Plaintiff via the mail in which Cenlar informs her that its imposition of Attorney Fees was "keeping with Washington Law" ~~as claimed by Cenlar. Thus, there is no contractual or authority for Cenlar to impose~~ without citing to any provision of the Revised Code of Washington or any other legal authority in support of such assertion is deceptive and violates Washington Consumer Protection Act.

115.    Cenlar's act of sending letters to Plaintiff citing to "Washington Law" as a

BARRAZA LAW, PLLC
~~14249~~14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

source of authority for its imposition of attorney's fees ~~and costs on a monthly basis thereby~~in order to induce default and to cause Plaintiff's property to be at risk of foreclosure once again, is unfair. The communications were sent via the United States Postal Service and were done within the course of Cenlar's business as a default loan servicer nationwide. The communications were sent in trade or commerce and implicated a public interest, to wit; the need for borrowers to have accurate information about their mortgage loans. Cenlar's actual imposition of Attorney Fees causing Plaintiff to be ~~of delinquent status.~~delinquent and in default of the loan constitutes actual damages. Cenlar's threats of or actual negative reporting to credit bureaus causes diminution in Plaintiff's credit standing and her ability to obtain credit.

~~99.   Plaintiff alleges that Cenlar has violated the implied duty of good faith and fair dealing. The breach of the implied duty of good faith and fair dealing can occur even if all of the terms of the written contract have been fulfilled. *Metavante Corp. v. Emigrant Sav. Bank,* 619 F.3d 748, 766 (7th Cir. 2010), *cert. denied,* 131 S. Ct. 1784 (2011). Similarly, the California Supreme Court observed that the "breach of a specific provision of the contract is not a necessary prerequisite [to a breach of good faith and fair dealing claim]. Were it otherwise, the covenant would have no practical meaning, for any breach thereof would necessarily involve breach of some other term of the contract." *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.,* 2 Cal. 4th 342, 373, 826 P.2d 710, 6 Cal.Rptr.2d 467 (1992) (citation omitted).  Under Washington law, "[t]here is in every contract an implied duty of good faith and fair dealing" that "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Badgett v. Sec. State Bank,* 116 Wn.2d 563, 569, 807 P.2d 356 (1991). In particular, the duty of good faith and fair dealing arises "when~~

BARRAZA LAW, PLLC
~~14249~~14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

the contract gives one party discretionary authority to determine a contract term." *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.,* 86 Wn. App. 732, 738, 935 P.2d 628 (1997); *see Amoco Oil Co. v. Ervin,* 908 P.2d 493, 498 (Colo. 1995) ("The duty of good faith and fair dealing applies when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time."). When asked to apply Washington law in this area, the Ninth Circuit concluded that "[g]ood faith limits the authority of a party retaining discretion to interpret contract terms; it does not provide a blank check for that party to define terms however it chooses." *Scribner v. Worldcom, Inc.,* 249 F.3d 902, 910 (9th Cir. 2001). Accordingly, Cenlar breached the implied duty of good faith and fair dealing by unilaterally imposing attorney's fees and costs without any basis thereby causing the risk of breach/default by the Plaintiff.

## ~~COUNT TEN,~~ COUNT FOURTEEN. CENLAR VIOLATED TILA, REGULATION Z

116.     The Plaintiff's loan is a "federally related mortgage loan" as said term is defined by *12 C.F.R. § 1024.2(b).* Cenlar does not qualify for the exception for "small servicers" as defined in *12 C.F.R. § 1026.41(e)(4)* or the exemption for a "qualified lender" as defined in *12 C.F.R. § 617.700.* Cenlar is subject to Truth in Lending, Regulation Z, as amended by the Consumer Financial Protection Bureau in 2013 with effective date of January 10, 2014.

117.     Cenlar sends out Periodic Statements for residential mortgages, which are governed by *12 C.F.R. §1026.41.* Under the Regulation, the Periodic Statement must include, *inter alia,* amount due; explanation of amount due, and transaction activity. *§1026.41(a)(1)* and (2). In particular, subsection (d)(4) of the Regulation requires "A list of all the transaction

BARRAZA LAW, PLLC
~~14249~~14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

activity that occurred since the last statement" and defines further "transaction activity means any activity that causes a credit or debit to the amount currently due. This list must include the date of the transaction, a brief description of the transaction, and the amount of the transaction for each activity on the list." Cenlar has mailed Plaintiff Period Statements dated January 16, 2014, January 21, 2014, February 24, 2014, March 17, 2014, March 24, 2014, April 21, 2014, May 21, 2014, June 16, 2014, June 23, 2014, July 23, 2014, August 18, 2014, August 20, 2014, and September 16, 2014, where the Overdue Amount has risen to $18,198.22[50], without complying with the enumerated sections of the Regulation.

118.    The Regulation further requires Cenlar to provide Plaintiff with a Delinquency Notice, once her loan is 45 days past due, that warns her of the date of delinquency, the risks associated with delinquency including foreclosure-the loss of her home and the total amount she needs to bring current her loan; the subject Periodic Statements sent by Cenlar do not provide Plaintiff with these specific warnings. Although Cenlar has sent Plaintiff separate Delinquency Notices, these Notices do not state, explain, or otherwise inform Plaintiff with how to resolve the rising Overdue Amount as required by the Regulation.

119.    Cenlar's failure to comply with the enumerated sections of Regulation Z give rises to liability for which Plaintiff can recover, in addition to actual damages, under 15 U.S.C. §1640 (a)(1), (2)(iv) statutory damages in an amount no less than $400.00 and no more than $4,000.00, as well as attorney's fees and costs.

### COUNT FIFTEEN. TORT OF OUTRAGE

120.    ~~100.    Plaintiff alleges that~~ Cenlar's conduct in imposing ~~attorney's fees~~

---

[50] **Exhibit II**, Composite of Periodic Statements Cenlar sent to Plaintiff

BARRAZA LAW, PLLC
~~14249~~14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

Attorney Fees and costs on an ongoing basis where there is no judgment or award for fees by the Court while this litigation is pending thereby causing her mortgage loan to be in delinquent or default status is deliberate and retaliatory, hence, it also. Cenlar's conduct constitutes the tort of outrage. The claim has three elements: (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) the plaintiff's severe emotional distress. *Robel v. Roundup Corp.,* 148 Wash.2nd 35, 51, 59 P.3d 611 (2002); *see also Dicomes v. State*, 113 Wash. 2d 612, 630, 782 P.2d 1002 (1989). This first element goes to the jury only if the court determines that reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability. Id.; *Kloepfel v. Bokor*, 149 Wn.2d 192, 66 P.3d 630, 632 (2003). For behavior to meet the first prong it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and [] be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* Behavior consisting of "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" does not rise to the requisite level of offending behavior. *Id.*).

101121. Here, Cenlar knew or should have known, through the history of this case that Plaintiff had expended tremendous time and money to obtain the loan modification. Additionally, Cenlar knew or should have known that Plaintiff was riding an emotional roller coaster as she did not know whether she could obtain said loan modification. Once Cenlar signed off on the loan modification, Plaintiff reasonably expected a financial fresh start. Cenlar's act of taking away the security recently gained by Plaintiff has affected her life in a real way substantially and is not a trivial actharm. For a borrower who has suffered hardship and who had undergone the difficult process to cure her default and get a loan modification, the

SECONDTHIRD AMENDED COMPLAINT - 77

new agreement is her lifeline; Plaintiff is doing everything she can in her power to keep her

mortgage payments current. Therefore, Cenlar's ~~acts;~~act of imposing excessive "attorney fees

and costs," sending monthly statements with large amounts being "due," and sending ~~letters of~~

~~delinquency, which are clearly designed to cause Plaintiff to be in default, to breach the loan~~

~~modification, and to potentially loose her home again, are beyond all possible bounds of~~

~~decency. *Restatement (Second) of Torts* § 46, cmt. d, at 73;  *Rugg v. McCarty*, 173 Colo. 170,~~

~~476 P.2d 753 (1970) (conduct was outrageous when a creditor engaged in a continuous~~

~~campaign of harassment by calling its debtor several times, sending her numerous letters~~

~~demanding payment of her debt, and informing her employer of the debt by asking how many~~

~~garnishments the employer would allow from the debtor's salary); *Enriquez v. Countrywide*~~

~~*Home Loans, FSB*, 814 F. Supp. 2d 1042, 1070 (D. Haw. 2011) (dismissing emotional distress~~

~~claim arising from denied request to modify an allegedly predatory original loan, but dismissing~~

~~with leave to amend, because it "would arguably be possible" to add facts to state such a claim);~~

~~*Becker v. Wells Fargo Bank, NA, Inc.*, 2012 U.S. Dist. LEXIS 170729 (E.D. Cal. 2012) (even~~

~~when court has doubt about the viability of plaintiff's intentional infliction of emotional distress~~

~~claim, dismissal was inappropriate)~~notices of delinquency, which are clearly designed to cause

Plaintiff to be in breach of the HAMP Agreement, to be in default, and to potentially loose her

home again, are beyond all possible bounds of decency.

~~102~~122.      Unlike the situation that Plaintiff was in before the loan modification was

approved, Plaintiff's loan was restored to current status and she has been making her payments

regularly. There is no delinquency other than the delinquency ~~created~~inflicted or induced by

Cenlar. Cenlar's relentless communications to Plaintiff about the rising attorney's fees and costs

BARRAZA LAW, PLLC
                                                                ~~14249~~14245-F Ambaum Blvd. SW
                                                                      Burien, WA 98166
                                                              206-933-7861 Fax 206-933-7863

and the resulting delinquency status of her loan has caused Plaintiff anxiety, fear and distress over being in default of her loan; anger over her inquiries to Cenlar concerning the nature of the attorney's fees and costs have fallen on deaf ears, and helplessness as she feels that nothing, including the present lawsuit, would impress upon ~~Cenlar's~~Cenlar to do the "right thing."

### COUNT SIXTEEN. BREACH OF CONTRACT BY MERS

123.    Defendant MERS is liable to Plaintiff for all consequential damages of its failure to comply with the conditions precedent set forth in the Deed of Trust. As nominee for the original lender who is no longer in business, MERS was responsible for providing timely notice of default and acceleration to Plaintiff but failed to do so. MERS' failure to declare the loan in default and explain to her how her loan had transferred to Freddie Mac in a timely manner pursuant to the terms of the DOT caused additional fees and costs to be added to Plaintiff's New Principal Balance that she will have to pay over the term of the Modified Loan.

### RECOVERABLE DAMAGES

124.    Under RESPA, Plaintiff is entitled to recover from Defendants Bayview and Cenlar who have caused Plaintiff to spend time to research, compose, and transmit her Qualified Written Requests to Cenlar and Bayview on August 27, 2012. These activities took away from time Plaintiff could have been working and earning money or time spent with her family and enjoying life. The damages are measured by the actual number of hours Plaintiff spent multiplied by Plaintiff's rate of pay as a worker/professional as well as out-of-pocket costs in typing, printing, copying, and mailing the QWRs. Plaintiff can also recover from the defendants, under RESPA, statutory damages and attorney's fees.

125.    Under the RESPA, Regulation X, Plaintiff is entitled to recover from Defendant

SECONDTHIRD AMENDED COMPLAINT - 79

BARRAZA LAW, PLLC
~~14249~~14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

Cenlar for attorney fees and costs she has incurred to issue Notice of Error and Request for Information in order to determine the nature and extent of Attorney Fees being imposed by Cenlar. Plaintiff is also entitled to recover damages to her credit caused by Cenlar's report or reports of her loan as being default and/or under foreclosure to the credit bureaus. Due to Cenlar's action, Plaintiff was unable to obtain a car loan in 2013. Plaintiff has suffered and continues to suffer from being unable to obtain fair credit or from having to obtain credit at much higher interest rate as a result.

126.    Under TILA, *15 U.S.C. §1640 (a)(1), (2)(iv),* Plaintiff can recover statutory damages in an amount no less than $400.00 and no more than $4,000.00, as well as attorneys' fees and costs incurred in addressing and countering Cenlar's issuance of Periodic Statements that failed to meet *12 C.F.R. §1026.41(a)(1), (2), and (4).*

127.    Plaintiff is entitled to recover from MERS, Cenlar, Dobron, Morris, NWTS and RCO for their contribution or participation in the manufacturing, signing, notarizing, recording and/or allowing to be recorded the MERS Assignment of Deed of Trust and Appointment of Successor Trustee when they knew or should have known that Plaintiff had accepted the HAMP Agreement and has been making payments, rendering a nonjudicial foreclosure unnecessary. Plaintiff's actual damages are measured by the fees and costs generated by the described activities under the theories of Negligent Misrepresentation, Fraud and violations of the CPA.

128.    Under the FDCPA, *15 U.S.C. § 1692k(a)(1), (a)(3),* Plaintiff is entitled to recover from Cenlar actual damages, statutory damages up to $1000.00 for each of the communication that Cenlar had sent to Plaintiff in May, October and December of 2013, and in February, March  and April of 2014, as well as attorney fees and costs.  Additionally, Plaintiff is

SECONDTHIRD AMENDED COMPLAINT - 80

BARRAZA LAW, PLLC
14249 14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

entitled to recover from Cenlar for the emotional distress, credit damages, and economic hardship she has been suffering as a result of Cenlar's unilateral charges of Attorneys Fees, Cenlar's continuing demand of monetary payments from Plaintiff where Cenlar knew or should have known that its action will induce or guarantee default of Plaintiff's mortgage loan and trigger foreclosure activities once again.

129.    Under the CPA, Plaintiff is entitled to recover from NWTS and RCO for actual damages caused by their creation of templates for foreclosure documents, the transmission of the same where their contents misinformed and misled Plaintiff, and the resulting costs which were added to the New Principal Balance that Plaintiff must pay, with interest, over 40 years. Plaintiff is entitled to recover treble damages of these damages under the Washington CPA as well as attorney fees and costs.

130.    Cenlar, Dobron, Morris, NWTS and RCO's collective conduct has placed real fear in Plaintiff's heart about losing her home to foreclosure; they caused Plaintiff to suffer ongoing emotional distress as well as physical manifestation of the emotional distress. Defendants caused Plaintiff to be distracted from her efforts to timely obtain a loan modification. The foreclosure activities caused additional but unwarranted fees and costs to Plaintiff's mortgage loan and delay of the consummation and performance of her HAMP Agreement. As a result, the arrearages grew much larger and Plaintiff is now paying both the amounts of the additional fees and costs as well as interests upon them over the term of her modified loan. Plaintiff is entitled to recover from the named defendants under the tort of Negligent Misrepresentation, Outrage, and statutory violations of the CPA.

131.    Cenlar and MERS are liable to Plaintiff under breach of contract for which

SECONDTHIRD AMENDED COMPLAINT - 81

BARRAZA LAW, PLLC
1424914245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

Plaintiff is entitled to recover compensatory damages, and attorney fees and costs.

### **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff prays for relief against Defendants as follows:

- Jury trial;

- Declaratory judgment that Defendants' conduct violated FDCPA, RESPA, TILA, ~~Washington Deeds of Trust Act, DTA,~~ and the Washington Consumer Protection Act, CPA;

- Actual damages;

- Statutory damages pursuant to *15 U.S.C. § 1692k* and *§ 1681n-o*;

- Costs and reasonable attorney fees pursuant to *15 U.S.C. §§ 1692k, § 1681n-o*, and the Washington Consumer Protection Act (*RCW 19.86*);

- Treble damages, plus attorney fees and costs, awardable under Washington Consumer Protection Act, *RCW 19.86.090*;

- Compensatory damages, including emotional distress, by the conduct of the Defendants in an amount to be fully proved at the time of trial;

- ~~Punitive damages under the Washington Consumer Protection Act;~~

- Prejudgment interests;

- For such other and further relief as the Court may deem just and proper.

Dated this ~~12th~~22nd day of ~~May~~October, 2014.

_____/s/ *Vicente Omar Barraza*_____
Vicente Omar Barraza, WSBA # 43589
~~Attorney for Plaintiff Leticia Lucero~~
~~BARRAZA LAW, PLLC~~
_____/s/ *John R. Laris*_____
John R. Laris, WSBA # 44406
~~Attorney~~Attorneys for Plaintiff Leticia Lucero
BARRAZA LAW, PLLC

_____/s/ *Ha Thu Dao*_____

~~SECOND~~THIRD AMENDED COMPLAINT - 82

BARRAZA LAW, PLLC
~~14249~~14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

Ha Thu Dao, WSBA # 21793
Attorney for Plaintiff Leticia Lucero
GRAND CENTRAL LAW, PLLC
787 Maynard Ave S, Seattle WA 98104
727-269-9334/Fax 727-264-2447
youremylawyer@gmail.com

SECONDTHIRD AMENDED COMPLAINT - 83

BARRAZA LAW, PLLC
1424914245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff Leticia Lucero demands trial by jury in this action.

Dated this 12th20th day of MayOctober, 2014.

_____ /s/ *Vicente Omar Barraza* _____
Vicente Omar Barraza, WSBA # 43589
Attorney for Plaintiff Leticia Lucero
BARRAZA LAW, PLLC

_____ /s/ *John R. Laris* _____
John R. Laris, WSBA # 44406
AttorneyAttorneys for Plaintiff Leticia Lucero
BARRAZA LAW, PLLC

_____ /s/ *Ha Thu Dao* _____
Ha Thu Dao, WSBA # 21793
Attorney for Plaintiff Leticia Lucero
GRAND CENTRAL LAW, PLLC
787 Maynard Ave S, Seattle WA 98104
727-269-9334/Fax 727-264-2447
youremylawyer@gmail.com

## DECLARATION

Leticia Lucero declares as follows:

I am the plaintiff in this matter. I have reviewed this Second Amended Complaint and believe it true and accurate to the best of my knowledge.

**I declare under penalty of perjury of the laws of the State of Washington the foregoing is true and correct.**

DATED this 12th day of May, 2014, at Seattle, Washington.

_____
Leticia Lucero

SECONDTHIRD AMENDED COMPLAINT - 84

BARRAZA LAW, PLLC
1424914245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863