```
 1  A.  Okay.  Thank you for that clarification.
 2  Q.  So your answer to my previous question is that it was
 3      always your intention to obtain a loan modification and
 4      retain your home.
 5  A.  That is correct.
 6  Q.  Did you ever consider options such as refinancing or
 7      sale of the property?
 8  A.  No.
 9  Q.  And to whom did you first communicate that it was your
10      intention to retain the property?
11  A.  To Cenlar, the mortgage lender that we were writing
12      checks to every month.
13  Q.  And, at some point, it's your testimony that Cenlar
14      referred you to Bayview to process the loan
15      modification?
16  A.  That is correct.  They told me not to communicate with
17      them, but to communicate with Bayview.
18  Q.  Do you recall whether you first contacted Bayview or
19      they contacted you?
20  A.  I contacted Bayview.  They gave me their phone number.
21  Q.  And do you recall when that was, roughly?
22  A.  In November.  Around the time I knew I was going to
23      start -- going to be unable to pay the full mortgage on
24      my own.
25  Q.  This would have been November of 2011?
```

247

```
 1  A. That is correct.
 2  Q. And after you first made contact with Bayview through,
 3     and correct me if I'm wrong, early 2013, you testified
 4     that you had regular communications with Bayview?
 5  A. What was your question?
 6  Q. I'll restate it.
 7  A. Yes.
 8  Q. From your first contact with Bayview till 2013, early
 9     2013, did you have regular contact with them?  And when
10     I say regular, let's just say monthly.
11  A. Oh, yeah.  Oh, yes.  Absolutely.
12  Q. How many times a month?
13  A. Oh, my gosh.  I was trying to push the paper along, so
14     it depends.  I mean, sometimes it would be every week
15     or twice a week or I let it lapse a week because the
16     underwriters were doing their thing.
17  Q. And was it your testimony that you contacted Bayview
18     and they also would contact you?
19  A. That is correct.  I had direct communication with them
20     and they knew how to contact me.
21  Q. And your prior testimony was that communication was
22     phone and mail; is that correct?
23  A. Phone, mail, or fax.
24  Q. Okay.  Did you ever use email?
25  A. No.  I don't have an email.  I even asked if I could
```

248

```
 1      get their email address and they said no.
 2   Q. Okay.  And when you would call them or they would call
 3      you, was it always one person?
 4   A. I was giving -- I was given a couple of agents to work
 5      with, but the person, the two people that I worked with
 6      the longest before they traded cases, or agent -- case
 7      agents, was Mr. Rayos -- Rojas, I think it is, Rejas?
 8      And then Mr. Schwartz.  Brian Schwartz.
 9   Q. And did Mr. Rejas and Mr. Schwartz also communicate
10      with you by mail?
11   A. Yes.
12   Q. You testified that you communicated with Bayview via
13      fax; is that correct?
14   A. Sometimes I would, when they were asking for paperwork
15      to be submitted, I could either send it through -- the
16      paperwork itself says you could send it via priority
17      mail or fax.  And, sometimes, just to make sure that
18      they got the information, I'd send it fax, and I would
19      also send the paperwork hard copy.
20   Q. Did they ever communicate with you by fax?  In other
21      words, did they send you faxes or did you only send
22      them?
23   A. No.  I would send them faxes.
24   Q. Okay.  You testified that you were offered two loan
25      modifications through your work with Bayview; is that
```

249

```
 1      correct?
 2   A. That is correct.
 3   Q. And you don't know of any obligation of Bayview to do
 4      this; is that correct?
 5   A. I don't know any obligation to Bayview?
 6   Q. I'll rephrase.  Actually, just strike that.  I'll move
 7      on.
 8          Do you recall your last communication with Bayview?
 9   A. I do.
10   Q. And when was that?
11   A. That was with John when the letter came out telling me
12      I was in delinquent, and they've been trying to get
13      ahold of me, and that was the last time I communicated
14      with Bayview.
15   Q. Are we talking about --
16   A. The letter that says I'm in delinquency, that John --
17          MR. BARRAZA:  The February 7, 2013, letter?
18   A. Yes.  I called him immediately.
19   Q. (MR. MCINTOSH continuing)  Exhibit 23.  Can I direct
20      your attention to that?
21   A. Is that it right there?
22          MS. DAO:  Hold on.  23?  I'll get it to you.
23   A. That is correct.  That is the last time I spoke with
24      him, Bayview.
25   Q. (MR. MCINTOSH continuing)  Okay.  This is a letter, but
```

263

```
 1        you said you spoke with them.
 2   A.  Yes.  I got a call and I got a letter and I spoke with
 3        them.
 4   Q.  What came first?
 5   A.  I got the call; I got the letter.  The call to my home
 6        number, by the way.  My home.
 7   Q.  Okay.
 8   A.  Yeah.
 9   Q.  So the call came first, and then you received Exhibit
10        23?
11   A.  That is correct.
12   Q.  So Exhibit 23 is the last communication you had with
13        Bayview?
14   A.  Where I had called them, correct.
15   Q.  I'm confused.
16   A.  That was the last time I called them, because I wanted
17        to find out -- I wanted them to understand that this
18        was incorrect -- that there was -- there had to be a
19        problem, that there's no way they could have been
20        trying to attempt to contact me because I had been in
21        contact with them.  I was working with Brian Schwartz,
22        and that I wasn't sure who this John guy was, but he
23        needed to understand that he needed to contact his guy,
24        Brian, to explain to him that I did have a mortgage
25        modification and that this was wrong.  That I was not
```

264

```
 1      delinquent; I had been making my payments.  So
 2      something was wrong with Bayview, that they needed to
 3      talk to each other.  And I wanted him to know that
 4      Brian could answer those questions and clear the
 5      letter.  And he said there was nothing he can do, that
 6      this letter came out, and he was following up on a
 7      delinquent account.
 8  Q.  Okay.  So after you received Exhibit 23, you called
 9      John, and that's when this telephone conversation took
10      place.
11  A.  Correct.  That's his number right there.
12  Q.  Was it on the same day you received Exhibit 23?
13  A.  Yeah, I called.  I called.  I would say I probably
14      called the next day, because I got home from work; I
15      got my mail; and I was pretty upset about this letter.
16      I remember calling Omar, my attorney, in my car, crying
17      hysterically, trying to figure out why this letter had
18      appeared in my mailbox and what happened.  What
19      happened?  Why am I getting this letter?  And why am I
20      delinquent?  I had been making payments.  So I must
21      have called them the next day to try to clarify what
22      was going on.
23  Q.  And that was the last communication you had with
24      Bayview.
25  A.  That is last time I called, correct.
```

265

```
 1  Q.  They never called you again?
 2  A.  No.  They did not contact me again.
 3  Q.  Did they send you any written correspondences after
 4      this phone call?
 5  A.  No.  In fact, I asked them to send me a correspondence
 6      to correct this letter so that we would be in an
 7      understanding that it was a mistake; that this letter
 8      shouldn't have been issued; that I had been working
 9      with you guys and Cenlar; and I had been making my
10      payments.  And he couldn't do that.  And so that's when
11      we issued a stop and decease.
12          MS. DAO:  Cease and desist letter.
13  A.  My attorney issued a letter that all correspondence
14      from that point on should be directed to him and
15      counsel.
16  Q.  (MR. MCINTOSH continuing)  Do you think Exhibit 23 was
17      a mistake?
18  A.  I think there was a problem that -- that caused me to
19      think that I was going to be set up for foreclosure.
20  Q.  But you testified that Bayview has not sent you
21      anything since that time or called you; is that
22      correct?
23  A.  That is correct.
24  Q.  So is it your testimony that you think Exhibit 23 is a
25      mistake or is it your testimony that this meant
```

266

```
 1   Q. Did you or your counsel, at any other time, tell
 2      Bayview not to contact you?
 3   A. I -- I was certain that that letter would make it clear
 4      that they needed to talk to my attorney.
 5   Q. My question is:  Other than Exhibit 23, did you or your
 6      attorney ever tell Bayview not to contact you or your
 7      attorney?
 8   A. No.  That contact -- no.  I don't think that is
 9      correct.  I don't think that's clear.
10   Q. Okay.
11   A. They were supposed to funnel information through my
12      attorney.
13   Q. Did you personally ever tell Bayview not to contact
14      you?
15   A. No.  I never told them not to contact me.  I did not
16      tell them.  I had my attorney do a letter saying that
17      they needed to talk to them directly.
18   Q. Okay.  Other than Exhibit 23, are you aware of your
19      attorneys ever telling Bayview not to contact them or
20      you?  I'm sorry.  Strike that.  Let me rephrase.
21           MS. DAO:  Because you're referring to Exhibit 23,
22        which is a letter from Bayview.
23           THE WITNESS:  Right.
24           MS. DAO:  That could be the confusion.
25   Q. (MR. MCINTOSH continuing)  Okay.  Is Exhibit 23 the
```

HAHN & BOWERSOCK 800-660-3187 FAX 714-662-1398
151 KALMUS DRIVE, SUITE L1 COSTA MESA, CA 92626

```
 1      only communication from your attorneys to Bayview
 2      asking them not to contact you?
 3   A. Is Exhibit 23 the only exhibit --
 4   Q. No.  Only communication.
 5   A. That my attorneys -- what was the question?
 6   Q. I'll rephrase it.
 7         MS. DAO:  John, if I could just let you know.  23
 8      is a letter from Bayview.  So she's confused by your
 9      question of what communication the lawyers sent.
10      Does that make sense?  Because you're referring to --
11      I think you're mixing up the cease and desist and
12      this 23.
13         MR. WOZNIAK:  You're right.  So we never marked
14      it.  It's in the packet; we never marked it.  And can
15      we mark it?  Actually, we can just use this.
16         MR. MCINTOSH:  Do you have a copy, Ms. Lucero,
17      that you can look at?  Okay.
18         THE COURT REPORTER:  Can't she just use this and
19      give it back to me?
20         MR. MCINTOSH:  Sure.  Let's mark this as --
21         MS. MORRISON:  24.
22         MR. MCINTOSH:  Exhibit twenty --
23         THE COURT REPORTER:  Well, it would actually be --
24      yes, 24.
25         MR. MCINTOSH:  Okay.
```

271

```
 1         MS. MORRISON:  And what's the date of that?
 2         MS. DAO:  The 21st?
 3         MR. MCINTOSH:  No, it's February 13th.
 4         (Exhibit No. 24 marked for identification.)
 5  Q. (MR. MCINTOSH continuing)  And, Ms. Lucero, go ahead
 6     and take your time, and I'm going to ask you a question
 7     about that when you're ready.
 8  A. Okay.  Thank you.  Okay.  I'm ready.
 9  Q. Other than Exhibit 24, are you aware of your attorneys
10     ever contacting Bayview to tell them not to make
11     contact with you?
12  A. This letter tells me that they have taken the direction
13     to let Bayview know that all communication needs to be
14     funneled through my attorney.
15  Q. The question is:  Are you aware, other than Exhibit 24,
16     of any communications from your attorneys to Bayview
17     telling Bayview not to contact you?
18  A. This is the only communication I know that my attorneys
19     had with Bayview directly telling them not to
20     communicate with me, but to communicate with them.
21  Q. Okay.  Thank you.  You testified that Bayview offered
22     you a loan modification in mid 2012; is that correct?
23  A. Yes.  Yes.  At 5.25 percent.
24  Q. And you declined it?
25  A. That is correct.
```

272


**BAYVIEW**
LOAN SERVICING

Bayview Loan Servicing, LLC
4425 Ponce de Leon Blvd, 5th Floor
Coral Gables, FL 33146

February 07, 2013

Borrower:

RICHARD GLIDDEN and LETICIA LUCERO
1003 159TH PL SE
BELLEVUE, WA 98008



Loan Number: ████0710     Property Address: 1003 159TH PL SE
                                              BELLEVUE, WA 98008

Dear Customer:

I have been making repeated attempts to contact you by phone, but I haven't been able to reach you through the home and/or business number(s) listed in our files. Your loan is currently delinquent, and I would like to see if there is a way I can help you. If you are not able to pay the amount due at this time, it is important that you contact me immediately at my direct toll free number listed at the bottom of this letter to discuss possible alternatives.

Your property is a valuable investment, and I encourage you to contact me to find out about available programs we have to help you.

Bayview Loan Servicing, LLC is a debt collector. This letter is an attempt to collect a debt and any information obtained will be used for that purpose. To the extent that your obligation has been discharged or is subject to an automatic stay of bankruptcy this notice is for compliance and informational purposes only and does not constitute a demand for payment or any attempt to collect such obligation.

Sincerely, 

*John Orsulo*

John Orsulo, Asset Manager
Bayview Loan Servicing, L.L.C.
Phone Number:  (877) 603-3281 Monday - Friday 8:30 a.m. - 9:00 p.m., Eastern
Fax Number:    (305) 260-1423

AM017 V 1.1 Loan No. ████710





Vicente Omar Barraza, Attorney at Law
John Larls, Attorney at Law, Of Counsel

1818 Westlake Ave. N., Suite 308
Seattle, WA 98109
206.933.7861 Fax 206.933.7863

February 13, 2013

Bayview Loan Servicing, LLC
4425 Ponce de Leon Blvd 5th Floor
Coral Gables, FL 33146

Re:  Leticia Lucero
     Property Address: 1003 159th PL SE, Bellevue, WA 98008
     Loan No ▊▊▊▊▊▊9710

By Fax to 305-260-1423

Attention Bayview:

I represent Leticia Lucero.

**Please cease and desist from contacting my client.**

Please direct all written and oral communications to me from the date of this letter forward.

Thank you in advance for your cooperation and assistance.

Respectfully yours,

Vicente Omar Barraza
Attorney at Law, WSBA # 43589

cc:  Client

EXHIBIT 24