THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| LETICIA LUCERO,<br><br>                                   Plaintiff,<br>v.<br><br>CENLAR F.S.B., et al.,<br><br>                                  Defendants. | No.: 2:13-cv-00602<br><br>MOTION FOR SUMMARY JUDGMENT BY DEFENDANT BAYVIEW LOAN SERVICING, LLC<br><br>**NOTE ON CALENDAR: 12/12/2014** |

COMES NOW defendant Bayview Loan Servicing, LLC ("Bayview") and moves for summary judgment of dismissal of all claims. For the reasons set forth below, dismissal is appropriate of both the second amended complaint [Dkt 60] and the proposed third amended complaint [Dkt 134-1].

## I.    FACTS

1.     <u>Background</u>.

Plaintiff defaulted on her mortgage loan by reason of nonpayment. Plaintiff's intention was to keep her home through a loan modification[1]. The servicer of the loan, Cenlar, FSB ("Cenlar"), engaged Bayview to review Plaintiff for a loan modification[2]. That was the extent of Bayview's role with respect to the loan[3]. Bayview was not a debt collector with respect to the

---

[1] Decl of McIntosh Exhibit A page 247, lines 2-5
[2] Decl of Irurzun ¶ 3; Dkt 141 page 3 lines 12-13
[3] Id.

Motion
Page -1-
MH #WA13-7452

McCarthy & Holthus LLP
1108 1st Ave S, Ste 300
Seattle, WA 98104
PH: (206) 319-9100
FAX: (206) 780-6862

loan, Bayview never collected or processed payments from Plaintiff, nor did Bayview do any credit reporting on the loan[4].

Plaintiff's testimony is that she initiated contact with Bayview in November of 2011, and they had frequent and direct communication concerning a loan modification through early 2013:

```
Q. And, at some point, it's your testimony that Cenlar
   referred you to Bayview to process the loan
   modification?
A. That is correct.  They told me not to communicate with
   them, but to communicate with Bayview.
Q. Do you recall whether you first contacted Bayview or
   they contacted you?
A. I contacted Bayview.  They gave me their phone number.
Q. And do you recall when that was, roughly?
A. In November.  Around the time I knew I was going to
   start -- going to be unable to pay the full mortgage on
   my own.
```

Decl of McIntosh Exhibit A page 247 lines 13-24

```
Q. From your first contact with Bayview till 2013, early
   2013, did you have regular contact with them?  And when
   I say regular, let's just say monthly.
A. Oh, yeah.  Oh, yes.  Absolutely.
Q. How many times a month?
A. Oh, my gosh.  I was trying to push the paper along, so
   it depends.  I mean, sometimes it would be every week
   or twice a week or I let it lapse a week because the
   underwriters were doing their thing.
Q. And was it your testimony that you contacted Bayview
   and they also would contact you?
A. That is correct.  I had direct communication with them
   and they knew how to contact me.
```

Decl of McIntosh Exhibit A page 248 lines 8-20

---

[4] Id.

Motion
Page -2 -
MH #WA13-7452

McCarthy & Holthus LLP
1108 1st Ave S, Ste 300
Seattle, WA 98104
PH: (206) 319-9100
FAX: (206) 780-6862

In mid-2012, while she was working on a loan modification with Bayview, Plaintiff elected foreclosure mediation with Cenlar[5]. Plaintiff hired attorney Omar Barazza to represent her at foreclosure mediation[6]. It is Plaintiff's position in this lawsuit that Bayview was made aware of her representation in late 2012. In support of this proposition, Plaintiff refers to two letters from Mr. Barazza. The first letter, dated September 1, 2012, is addressed to NWTS, Bavyiew, and Cenlar, and authorizes those parties to release information to Mr. Barazza[7]. The September 1, 2012 letter does not include a mailing address or any other contact information for Bavyiew. Furthermore, the September 1, 2012 was introduced into the record without any testimony as to when it was submitted to Bayview, and how.

The second letter from Mr. Barazza is dated September 22, 2012[8]. The letter indicates Plaintiff is accepting a trial payment plan, but is also proceeding with the foreclosure mediation. The letter is addressed to Bayview, but the mailing address – 425 Phillips Blvd. Ewing NJ – is Cenlar's. Like the first letter, the September 22, 2012 letter is introduced into the record without any testimony as to when it was submitted to Bayview, and how.

2.   February 7, 2013 Letter from Bayview.

In early 2013, Plaintiff's loan was in the process of completing modification. By mistake, Bayview issued a letter to Plaintiff dated February 7, 2013 regarding a new modification review (mistake because the loan was already in modification review)[9]. The substance of the letter is as follows:

//

//

//

---

[5] Dkt 141 page 4 lines 4-5
[6] Id
[7] Dkt 141-2 Exhibit M
[8] Dkt 141-2 Exhibit N
[9] Dkt 141-2 Exhibit O

Motion
Page -3 -
MH #WA13-7452

McCarthy & Holthus LLP
1108 1st Ave S, Ste 300
Seattle, WA 98104
PH: (206) 319-9100
FAX: (206) 780-6862

> Dear Customer:
>
> I have been making repeated attempts to contact you by phone, but I haven't been able to reach you through the home and/or business number(s) listed in our files. Your loan is currently delinquent, and I would like to see if there is a way I can help you. If you are not able to pay the amount due at this time, it is important that you contact me immediately at my direct toll free number listed at the bottom of this letter to discuss possible alternatives.
>
> Your property is a valuable investment, and I encourage you to contact me to find out about available programs we have to help you.

It is undisputed that Plaintiff and Bayview subsequently exchanged phone calls regarding the letter. Bayview's business records indicate that Plaintiff called Bayview on February 11, 2013 concerning the letter and status of her modification, and it was explained that the letter was an error, and her modification was being processed. Bayview's business records include the following comment entries from February 11, 2013:

| 02/11/2013 | MSP Comment | CONTACT MADE WITH CUSTOMER CONTACT MADE WITH CUSTOMER OUTBOUND CALL:206▮▮▮▮, SPOKE WITH SHE READ MIRANDA. APPOLOGIZED RECEIVING LETTER IN ERROR. AGREED HER FILE IS IN THE PROCESS OF CONVERTING AND SHOULD HAVE NOT BE ASSIGN BACK TO ASSET MANAGEMENT. SHE ACCEPTED OUR APPOLIGY AND I ADVISE WOULD ALSO FOLLOW UP WITH NICOLE TOMORROW TO MAKE SURE THAT IS THE CASE. | JOHNORSUTO |
|---|---|---|---|
| 02/11/2013 | MSP Comment | CONTACT MADE WITH CUSTOMER CONTACT MADE WITH CUSTOMER LETICIA CALLED IN, WANTE DTO KNOW WHEN SIGNED COPY OF NOTE WOULD BE SENT BACK, GAVE HER CENLAR'S NUMBER AND TOLD HER TO ASK THEM, ASKED WHY CREDIT IS BEING REPORTED AS REPO/FORECLOSURE. TOLD HER SHE'D HAVE TO TALK TO CENLAR, ASK WHY SHE GOT LETTER FROM NEW AM INTRODUCING HIMSELF AS HER NEW AM AND TOLD HER IT WAS A SYSTEM ISSUE THAT CENLAR'S COMPUTER SENT BACK THE COMPLETED DOCS AND IT WAS REASSIGNED | RYANFINNIGAN |

Plaintiff's deposition testimony confirms that after receiving the letter, she had a phone call with John Orsuto from Bayview[10]. Plaintiff testified that it was only after the phone call with Mr. Orsuto that she decided to have future correspondences sent to her attorney:

//

//

//

---

[10] Decl of McIntosh Exhibit A page 263-66

Motion
Page -4-
MH #WA13-7452

McCarthy & Holthus LLP
1108 1st Ave S, Ste 300
Seattle, WA 98104
PH: (206) 319-9100
FAX: (206) 780-6862

```
Q. Did they send you any written correspondences after
   this phone call?
A. No. In fact, I asked them to send me a correspondence
   to correct this letter so that we would be in an
   understanding that it was a mistake; that this letter
   shouldn't have been issued; that I had been working
   with you guys and Cenlar; and I had been making my
   payments. And he couldn't do that. And so that's when
   we issued a stop and decease.
        MS. DAO: Cease and desist letter.
A. My attorney issued a letter that all correspondence
   from that point on should be directed to him and
   counsel.
```

Decl of McIntosh Exhibit A page 266, lines 3-15.

On February 13, 2013, Mr. Barazza issued a cease and desist letter to Bayview asking that all future correspondences go to him[11]. Plaintiff testified that the cease and desist letter was the first time she or her attorneys asked Bayview to stop contacting her directly:

```
Q. Did you personally ever tell Bayview not to contact
   you?
A. No. I never told them not to contact me. I did not
   tell them. I had my attorney do a letter saying that
   they needed to talk to them directly.
```

Decl of McIntosh Exhibit A page 270 lines 13-17

```
Q. The question is: Are you aware, other than Exhibit 24,
   of any communications from your attorneys to Bayview
   telling Bayview not to contact you?
A. This is the only communication I know that my attorneys
   had with Bayview directly telling them not to
   communicate with me, but to communicate with them.
```

Decl of McIntosh Exhibit A page 272 lines 15-20

---

[11] Dkt 134-6 Exhibit EE

Motion
Page -5-
MH #WA13-7452

McCarthy & Holthus LLP
1108 1st Ave S, Ste 300
Seattle, WA 98104
PH: (206) 319-9100
FAX: (206) 780-6862

Plaintiff testified that she did not receive any more direct communications from Bayview after the cease and desist letter[12].

3. Lawsuit and Partial Dismissal of Claims.

The initial claims against Bayview in this lawsuit were for violations of the FDCPA, RESPA, and Washington's Consumer Protection Act ("CPA"). On October 3, 2014, an order was entered dismissing the RESPA and CPA claims against Bayview without leave to amend[13]. The FDCPA claim was partially dismissed, with leave to amend.

## II. ISSUES PRESENTED

1. Whether there is no genuine issue of material fact and dismissal of Bayview is appropriate as a matter of law.

## III. EVIDENCE RELIED UPON

1. Plaintiffs' 2nd and 3rd amended complaints and the undisputed facts of which the court may take judicial notice of;
2. Plaintiff's motion for partial summary judgment against Bayview [Dkt 141];
3. Declaration of Ernesto Irurzun [Dkt 164];
4. Declaration of Joseph Ward McIntosh [Dkt 165];
5. This motion and memorandum of law.

## IV. LEGAL AUTHORITY

**A. Standard Under FRCP 56.**

Summary judgment under FRCP 56 is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

For reasons set forth below, the record demonstrates no genuine issue of material fact, and that Bayview should be dismissed as a matter of law.

---

[12] Decl of McIntosh, Exhibit A page 266
[13] Dkt 119

Motion
Page -6-
MH #WA13-7452

McCarthy & Holthus LLP
1108 1st Ave S, Ste 300
Seattle, WA 98104
PH: (206) 319-9100
FAX: (206) 780-6862

B. **No Violation of RESPA.**

Plaintiff's claim under RESPA has already been dismissed without leave to amend. She cannot revive it through an amended complaint.

In any event, the reasons for the original RESPA dismissal still apply. RESPA requires "servicers" of a loan to respond to a qualified written request from the borrower. 12 USC 2605(e)(1). A "servicer" means the person responsible for "servicing" of a loan. 12 USC 2605(i)(2). The term "servicing" means receiving any scheduled period payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts…and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan. 12 USC 2605(i)(3).

Bayview in this case is not the loan "servicer" as that term is defined under RESPA. It was not receiving or applying any payments on the loan. Thus, Bayview was not obligated to respond to a qualified written request from Plaintiff, and cannot be held liable under RESPA.

C. **FDCPA Violation.**

Plaintiff alleges that Bayview's letter dated February 7, 2013 violated 15 USC 1692c(a). That section provides, in relevant part:

(a) Communication with the consumer generally

Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—

(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer; or

The term "communication" means the conveying of information regarding a debt directly or indirectly to any person through any medium. 15 USC 1692a(2).

Motion
Page -7-
MH #WA13-7452

McCarthy & Holthus LLP
1108 1st Ave S, Ste 300
Seattle, WA 98104
PH: (206) 319-9100
FAX: (206) 780-6862

Plaintiff's 1692c(a) claim fails. The record does not demonstrate that Bayview (1) made communications with Plaintiff in connection with "collection" of a debt, or (2) communicated with Plaintiff knowing she was represented by counsel, and without her permission. Furthermore, Bayview can demonstrate a bona fide error defense to the alleged violation.

1. Bayview Not "Collecting" a Debt

To sustain a claim under 1692c(a), Plaintiff must establish both that Bavyiew is a "debt collector" and that the offending communication was made in connection with "collection" of the debt. Bayview's role in assisting Plaintiff with a loan modification is not "collection" of the debt. For example, the Ninth Circuit in *Santoro v. CTC Foreclosure Service Corporation*, 12 Fed.Appx. 476 (9th Circuit, 2001) found that a letter suggesting loan workout options is not "collection" of a debt:

> Pursuant to the statute, only communications "in connection with the collection of any debt" fall under the ambit of the Act. The violations complained of by the Santoros involved a few occasions in which the defendants contacted the Santoros directly after being notified that they were represented by counsel. The first contact was a letter from Countrywide offering a loan workout. A letter suggesting loan workout options is not seeking to collect the debt. *Bailey v. Security National Servicing Corp.*, 154 F.3d 384, 389 (7th Cir. 1998)

*Santoro*, at 480.

Other courts interpreting the FDCPA have made similar distinctions.

> The Court finds that the letters sent to the Plaintiffs were in the nature of providing information as opposed to being in the nature of a debt collection demand. The letters advised the mortgagors that their delinquent debts had been turned over to the Defendant's Homeowner's Assistance Department, and stated that options may be available to the mortgagors to resolve their delinquencies and save their homes from foreclosure. Although ensuring payment of the debts cannot be denied as the Defendant's ultimate goal, the letters themselves did not provide terms of payment or deadlines, threaten further collection proceedings, or demand payment in any form. Accordingly, they are not the types of communications that § 1692c proscribes.

*Gillespie v. Chase Home Fin.*, LLC, 2009 U.S. Dist. LEXIS 108837 (N.D. Ind. Nov. 20, 2009).

> Further, courts have routinely held that communications that are merely informational and do not demand payment cannot be considered communications "in connection with the collection of any debt" under the FDCPA. (citations omitted). Hunt Leibert's "Reply

Motion
Page -8-
MH #WA13-7452

McCarthy & Holthus LLP
1108 1st Ave S, Ste 300
Seattle, WA 98104
PH: (206) 319-9100
FAX: (206) 780-6862

Letter" similarly did not provide terms of payment or deadlines, threaten further collection proceedings, or demand payment in any form and therefore a reasonable jury would not conclude that the "Reply Letter" was a communication in connection with the collection of any debt. Accordingly, even if Section 1692e was applicable to Hunt Leibert, there would be no violation.

*Derisme v. Hunt Leibert Jacobson P.C.*, 880 F.Supp. 2d 339, 372 (D.Conn, 2012).

> However, the complaint fails to plead that Defendant was attempting to collect a debt within the meaning of the FDCPA. Contact by a lender or loan servicer for the purpose of restructuring payments on a debt is not "collection of a debt" for the purposes of the FDCPA when the lender or servicer does not demand payment for past amounts owed.

*Kennedy v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 111013 (C.D. Cal. Sept. 28, 2011).

The only FDCPA case cited by Plaintiff in her motion for summary judgment is *Maxwell v. Fairbanks Capital Corp.* (In re Maxwell), 281 B.R. 101 (Bankr. D. Mass. 2002). In *Maxwell*, the loan servicer demanded payments from the borrower that were not owed. There is nothing similar about the facts in *Maxwell* and the present case. It is undisputed that Bayview's sole role was to assist Plaintiff in obtaining a loan modification. And the February 7, 2013 letter from Bayview (the alleged offending communication) is consistent with that role – Bayview is offering loan modification assistance *if* the loan delinquency could not be paid. Nothing in the letter mentions anything more about the loan, what is due, to whom payments are owed, where they should be paid, deadlines for payment, consequences for non-payment, etc.

Furthermore, being reviewed for a loan modification is what Plaintiff requested following her default, and the reason for Bayview's involvement. This is not a situation where Bayview is acting, without solicitation, as a third party debt collector, and not the type of conduct that the FDCPA is intended to curb. It is acknowledged the February 7, 2013 letter was sent in error as the loan was already in the modification process, however, this error alone is not legally actionable under the FDCPA, and the mistake was immediately addressed and corrected.

Finally, that fact that Bayview identified itself as a "debt collector" attempting to "collect" a debt in the February 7, 2013 letter does not establish that fact. *Gillespie v. Chase*

Motion
Page -9 -
MH #WA13-7452

McCarthy & Holthus LLP
1108 1st Ave S, Ste 300
Seattle, WA 98104
PH: (206) 319-9100
FAX: (206) 780-6862

*Home Fin., LLC*, 2009 U.S. Dist. LEXIS 108837 (N.D. Ind. Nov. 20, 2009) citing *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 399 (6th Cir. Ohio 1998) ("We note that the mere fact that the letter states at the bottom that it 'is an attempt to collect a debt' does not transform the letter into an unlawful demand for payment."). The FDCPA mini-miranda language that one is a "debt collector" and is "collecting" a debt is often included in Bayview correspondences as a safe harbor[14]. It was not Bayview's position that it was attempting to "collect" a debt from Plaintiff.[15] Bayview's role with respect to Plaintiff's loan was limited to the loan modification review. This is confirmed by the record before the court, and the case law cited above.

    2.    <u>Knowledge of Representation.</u>

Plaintiff must additionally prove Bayview had actual knowledge that Plaintiff was represented by an attorney to sustain a claim under 15 USC 1692c(a)(2). *Burger v Risk Mgmt. Alternatives, Inc.* (2000, ND NY) 94 F Supp 2d 291. The evidence submitted in support of her motion for summary judgment does not create a prima facie case of the "actual knowledge" element. There is no testimony that Mr. Barazza's letters dated September 1 and 22, 2013, were actually submitted to Bayview.

Furthermore, Bayview's system did not indicate Plaintiff was represented when the February 7, 2013 letter was issued[16]. Bayview maintains a software system for managing loans, with a built-in procedure in place to ensure that letters to represented parties are directed to counsel[17]. When Bayview becomes aware that a borrower is represented by counsel, they place the attorney's address in the mailing address space in the system so that notices are mailed to the attorney, and not the borrower[18]. Bayview also codes the account to indicate the borrower is

---

[14] Decl of Irurzun ¶ 4
[15] Id.
[16] Decl of Irurzun ¶ 5
[17] Id.
[18] Id.

Motion
Page -10 -
MH #WA13-7452

McCarthy & Holthus LLP
1108 1st Ave S, Ste 300
Seattle, WA 98104
PH: (206) 319-9100
FAX: (206) 780-6862

represented[19]. In this case, when the offending communication was sent, Bayview's system did not show that Plaintiff was represented[20].

### 3. Consent to Direct Contact.

Direct communications with a represented consumer are not unlawful under 1692c(a) if they are done with consent. The record demonstrates that Bayview had consent to communicate with Plaintiff directly up until the cease and desist letter was issued on February 13, 2013.

Plaintiff's testimony is that she was in frequent and direct communication with Bayview through early 2013, despite being represented by Mr. Barazza in the foreclosure mediation. After receiving the February 7, 2013 letter, she called Bayview about the letter and status of her loan modification. It was only after this conversation that she decided to have future correspondences sent to her attorney, Mr. Barazza, and that was the communicated to Bayview.

The offending communication that is subject of this lawsuit – the February 7, 2013 letter -- occurred prior to the cease and desist letter. The record demonstrates that no further communications were made after the cease and desist letter.

### 4. Liability.

15 USC 1692k(a)(1) provides for recovery of "actual damages" suffered by plaintiff as a result of an FDCPA violation. 15 USC 1692k(a)(2) gives the court discretion to award statutory damages up to $1,000.00.

Plaintiff claims, without any evidence, that Bayview's February 7, 2013 letter caused her (1) damages due to emotional distress, (2) diminution of her credit and valuation her home[21]. Plaintiff has not sustained her burden of presenting evidence that she has suffered legally recoverable damages, and they were a proximate result of an FDCPA violation by Bayview. The

---

[19] Id.
[20] Id.
[21] Dkt 141 page 9

Motion
Page -11-
MH #WA13-7452

McCarthy & Holthus LLP
1108 1st Ave S, Ste 300
Seattle, WA 98104
PH: (206) 319-9100
FAX: (206) 780-6862

record on this motion is simply devoid of evidence that would allow the court to make such an award.

Furthermore, the statute does not mandate a statutory award for every violation as Plaintiff seems to suggest in her briefing. An award of damages under 1692k(a)(2) is in the discretion of the court. The statute list factors to consider in making an award, such as the frequency and persistence of noncompliance. 15 USC 1692k(b). The offending communication in this case was one letter to Plaintiff following a long period of direct communications between the parties in the pursuit of a loan modification. And direct communications immediately ceased after Plaintiff's attorney requested that future correspondences be directed to him.

5. <u>Bona Fide Defense Error</u>.

Under 15 USC 1692k(c), there exists an affirmative defense for violations that were not intentional and resulted from a bona fide error. Bayview has procedures in place for identifying represent parties, and directing communications to counsel[22]. When the February 7, 2013 letter was issued, Bayview's system did not indicate that Plaintiff was represented by counsel[23].

To the extent Bayview should have known Plaintiff was represented by counsel, and did not have permission to communicate directly with Plaintiff, but did anyway with the February 7, 2013 letter, the bona fide defense error is applicable.

## V. CONCLUSION

There is no genuine issue of material fact, and Bayview should be dismissed as a matter of law.

//

//

//

---

[22] Decl of Irurzun ¶ 5
[23] Id.

Motion
Page -12 -
MH #WA13-7452

McCarthy & Holthus LLP
1108 1st Ave S, Ste 300
Seattle, WA 98104
PH: (206) 319-9100
FAX: (206) 780-6862

1  Dated: November 17, 2014

2  MCCARTHY & HOLTHUS, LLP

3  /s/ Joseph Ward McIntosh
   Joseph Ward McIntosh, WSBA #39470
4  Attorney for Bayview Loan Servicing

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Motion
Page -13 -
MH #WA13-7452

McCarthy & Holthus LLP
1108 1st Ave S, Ste 300
Seattle, WA 98104
PH: (206) 319-9100
FAX: (206) 780-6862