1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| LETICIA LUCERO, | NO. 2:13-cv-00602 |
| Plaintiff, | |
| vs. | THIRD AMENDED COMPLAINT |
| CENLAR FSB and BAYVIEW LOAN SERVICING, LLC, et al., | |
| Defendants. | |

COMES NOW, Plaintiff, by and through her undersigned attorneys, and amends her

Complaint ("TAC") pursuant to the Court's Order of November 24, 2014.  The Marked Up version

of the TAC attached to this Pleading contains deletions (strike through texts) and additions

(underlined texts) to comply with the Court's directives on the dismissal of certain causes of action

and amendments of other causes of action. The exhibits have been re-organized, re-numbered and

referenced by foot notes and are attached to this Pleading. As grounds for support, Plaintiff alleges

as follows:

THIRD AMENDED COMPLAINT [MARKED UP
VERSION] - 1

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

1
2
3
4

## I.    INTRODUCTION

1.      This TAC is filed and these proceedings are instituted under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et. seq.*, ("FDCPA"); the Real Estate Settlement Procedure Act ("RESPA"); the Truth in Lending Act ("TILA"), the Washington Deed of Trust Act ("DTA"); and the Washington Consumer Protection Act, Chapter RCW 19.86, *et. seq.*, ("CPA") to recover actual and statutory damages, reasonable attorney's fees and costs of suit due to Defendants' violations, all of which occurred within one year from the filing date of this Complaint.

## II.    JURISDICTION

2.      Jurisdiction of this Court arises under *15 U.S.C. § 1692k (d)* and *28 U.S.C. § 1337*. Supplemental jurisdiction exists for the state law claims, which arise from a common nucleus of operative facts, pursuant to *28 U.S.C. § 1367*. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202. Venue is properly in the Western District of Washington because the dispute arises over real property located in this district.

## III.    PARTIES, RELATIONSHIPS &  LIABILITIES

3.      Plaintiff Leticia Lucero is an unmarried woman and a resident of King County, Washington. She owns the property known as 1003 159th Pl SE, Bellevue, Washington 98008, solely, after her ex-husband quit-claimed his interest pursuant to their divorce decree; this property has been Plaintiff's homestead.

4.      Plaintiff Lucero purchased the property around August 18, 2006 with her ex-husband and borrowed money to do so from Taylor Bean & Whitaker, a company based out of Florida. At its peak, Taylor Bean & Whitaker was one of the nation's top 10 wholesale mortgage

THIRD AMENDED COMPLAINT [MARKED UP VERSION] - 2

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

lending companies. In 2009, however, law enforcement and banking regulators shut down Taylor Bean & Whitaker; its majority owner was ultimately convicted of bank fraud, securities fraud, wire fraud and conspiracy to commit fraud.

5.      In 2010, Plaintiff lost her job and went through a divorce. Her husband quit-claimed his share of the property to Plaintiff.  Hardship set in and Plaintiff fell behind with the payments on her home. Plaintiff remained steadfast in her desire to cure the default. She timely and relentlessly sought a loan modification from the defendants, who held themselves out as having the authority to modify or adjust the terms of the loan that Plaintiff obtained from the defunct Taylor Bean & Whittaker.  Through this odyssey, Plaintiff was made aware of the defendants' relationships and conduct which adversely affected the quality of title of her homestead and her financial standing.

6.      Defendant Mortgage Electronic Registration Systems, Inc., or "MERS" is a foreign corporation based out of Reston, Virginia. MERS is not licensed to do business in the State of Washington but has been named as "beneficiary" in a majority of deeds of trust in the State. MERS has been held by Washington courts to be a  "consortium of mortgage investment companies" that "altered this state's traditional three-party structure of a deed of trust." *Bain v. Metropolitan Mortg. Grp., Inc.*, 175 Wn.2d 83, 96, 285 P.3d 34 (2012); *Bavand v. OneWest Bank, FSB*, 2013 Wash.App. LEXIS 2114 (2013), Washington Court of Appeals, Division I, No. 68217-2-I at page 9. MERS identifies itself as "the beneficiary under this Security Instrument" (the Deed of Trust) that Plaintiff signed at closing encumbering her homestead in favor of the original lender, Taylor Bean & Whitaker. [1]

---

[1] **Exhibit D**, Deed of Trust

THIRD AMENDED COMPLAINT [MARKED UP VERSION] - 3

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

7.      Defendant, Bayview Loan Servicing, LLC is a Florida limited liability corporation engaged in the business of collecting debts on behalf of another entity. Bayview's primary business is servicing mortgage loans that are in default status. In this case, <u>Bayview was involved in Plaintiff's loan specifically to process her application for loan modification assistance;</u> Bayview therefore meets the definition of a debt collector. Bayview uses the mails, telephone and other means to collect mortgage debts for other financial institutions nationwide; its debt collection activities reach into Washington and directly affect Plaintiff as well as other Washingtonians.

8.      Defendant Cenlar, FSB, is a New Jersey corporation. Cenlar works as a loan servicer for many different entities nationwide. Cenlar provides loan servicing on loans that are current and in default.  In this case, Cenlar has admitted that Freddie Mac is the owner of Plaintiff's loan and Cenlar serviced the loan after it went into default status originally, rendering Cenlar a debt collector. Cenlar uses the mails, telephone and other means to collect mortgage debts nationwide; its activities reach into Washington and directly affect Plaintiff as well as other Washingtonians.

9.      Defendant Jennifer Dobron is believed to be a corporate officer or an employee of defendant Cenlar. Within the scope of her employment with Cenlar, Dobron signed, or allowed others to sign her name, on several documents which she knew or should have known, would be used by Cenlar and others to foreclose upon Plaintiff's homestead. Although Dobron might have been acting within the scope of her employment with one of the corporate defendants, Dobron knew or should have known that the documents signed with her name would be recorded in the public records of King County, Washington, and be relied upon by

THIRD AMENDED COMPLAINT [MARKED UP
VERSION] - 4

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

the public in search of chain of title information. Dobron therefore is liable to the Plaintiff individually and under the doctrine of *respondeat superior*. Dobron's act of signing, or allowing others to sign, her name on foreclosure documents under penalty of perjury, while lacking personal knowledge or possessing actual knowledge that the matters declared therein are untrue, affected the chain of title upon Plaintiff's property as well as the public who relies upon the same information to research title of real property in Washington.

10. Defendant Nancy K. Morris is believed to be an employee of Defendant Cenlar and a notary public of the State of New Jersey. Acting within the scope of her employment with defendant Cenlar, Morris has notarized and affixed her seal or has allowed others to sign, notarize and affix her seal in numerous documents which she knew or should have known would be used by Cenlar and others to foreclose upon Plaintiff's homestead. Morris knew or should have known that the documents with her name and notary seal would be recorded in the public records of Washington, and be relied upon by the public in search of chain of title information. Although defendant Morris might have been acting within the scope of her employment with one of the corporate defendants, Morris knew or should have known that the documents notarized under her seal and bearing her signatures would be recorded in the public records of, Washington, and be relied upon by the public in search of chain of title information. Morris therefore is liable to the Plaintiff individually and under the doctrine of *respondeat superior*. Morris' act of notarizing documents and attesting to her duties as notary public while lacking personal knowledge or while possessing actual knowledge that the matters declared by her are untrue has affected the chain of title upon Plaintiff's property. Morris' act of notarizing

THIRD AMENDED COMPLAINT [MARKED UP VERSION] - 5

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

1   and providing the notarial oath upon documents that are inaccurate or incomplete is injurious

2   to the public who must rely on these documents for chain of title records.

3

4   11.     Defendant Northwest Trustee Services Inc., ("NWTS") is a Washington

5   corporation whose chief business is to foreclose upon real properties located in the State of

6   Washington as well as other states. NWTS purported to act as successor trustee and initiated

7   nonjudicial foreclosure upon Plaintiff's homestead. The owner of NWTS also owns the

8   defendant law firm Routh Crabtree Olsen PS, a/k/a RCO Legal. P.S. ("RCO"), as well as a

9   number of inter-related companies which participate in virtually all other aspects of nonjudicial

10  foreclosure, including legal publication, foreclosure advertising, listing and tracking of

11  foreclosure sales, and escrowing and closing on real estate transactions. NWTS and its law

12  firm, defendant RCO, are housed in the same building located in Bellevue, King County,

13  Washington. The referrals for foreclosure that come from loan servicers are made to the

14  defendant RCO but the foreclosure work is actually being done by the defendant NWTS. In

15  addition to sharing the physical business location, the defendants also comingle their resources.

16  Employees of NWTS and RCO consult and work in conjunction with one another. NWTS

17  employees have testified under oath that they consult with RCO as their counsel in matters

18  involving their conduct of foreclosure. Charles Katz, Esq., who was an attorney employee by

19  RCO and whose name appears as counsel of record for NWTS and loan servicers on numerous

20  foreclosure litigation cases, recently became general counsel for NWTS.

21

22  12.     Defendant Routh Crabtree Olsen PS, a/k/a RCO Legal P.S., ("RCO"), is a law

23  firm licensed to do business in Washington; its lawyers are members of the Washington Bar

24  Association.  The defendant law firm owns, operates or has a substantial interest in the

25

26

27

28

29

30

31

32  THIRD AMENDED COMPLAINT [MARKED UP
    VERSION] - 6

    BARRAZA LAW, PLLC
    14249-F Ambaum Blvd. SW
    Burien, WA 98166
    206-933-7861 Fax 206-933-7863

operations and workings of NWTS. RCO provides legal services to loan servicer clients of NWTS that under contract or ongoing agreement to conduct nonjudicial foreclosures, while concurrently provides advisory and litigation services for NWTS relating to foreclosures that NWTS conducts as trustee.

a.   <strong><u>Facts concerning NWTS' commencement of nonjudicial foreclosure of Plaintiff's homestead</u></strong>

13.     In August of 2012, defendant NWTS mailed and caused the Notice of Default to be posted on Plaintiff's homestead announcing the initiation of nonjudicial foreclosure. It has been a common practice of NWTS to declare, in its notices of default sent to borrowers in the State of Washington, that the owner of the mortgage loan is a different entity than the "creditor to whom the debt is owed," which is not factually or legally true.  Additionally, it has been a common practice of NWTS to declare in its foreclosure notices to borrower in the State of Washington that the loan servicer is the "creditor to whom the debt is owed," which is also not factually or legally true. [2]

14.     In this case, the Notice of Default NWTS transmitted to Plaintiff indicates that Federal Home Loan Mortgage Corporation, or Freddie Mac, is the owner of Plaintiff's promissory note, but that Cenlar is the "creditor to whom the debt is owed".[3] By stating that Freddie Mac is the owner, NWTS is presumed to have actual notice or information supporting this assertion. Yet, if Freddie Mac is the owner of the promissory note, then Freddie Mac must be the creditor to whom Plaintiff owes the debt. By stating that Cenlar is the creditor to whom the debt is owed in the same Notice of Default, NWTS has knowingly

---

[1] **Exhibit A**, Notice of Default.
[3] Id.

THIRD AMENDED COMPLAINT [MARKED UP VERSION] - 7

misrepresented to the Plaintiff the entity with whom she could communicate with in order to resolve the issues of her mortgage loan.

15.    It has also been a common practice of NWTS to declare itself as the "duly authorized agent" of the loan servicer, and that the loan servicer is the "Client" of NWTS. These declarations appear in thousands of notices of default being mailed to borrowers around the State of Washington. In this case, NWTS' Notice of Default contains the designation "Cenlar, FSB, By Northwest Trustee Services, Inc., its duly authorized agent," as well as "Client: Cenlar FSB." Yet, after transmitting these notices of default in its capacity as the duly authorized agent of the servicer, NWTS turns around and issues notices of trustee's sale in which it informs the borrowers that NWTS is acting as the "trustee." NWTS' mixing of its role as a duly authorized agent of the servicer, *i.e.,* a debt collector on behalf of the servicer, and its role as the purported trustee upon whom the borrower counts to be impartial and acting in good faith, is unfair and/or deceptive conduct.

16.    The Notice of Default transmitted by NWTS as the duly authorized agent of Cenlar demands Plaintiff to pay the total sum of $42,787.91 to reinstate the deed of trust before the recording of the notice of sale. The total sum required to reinstate included Trustee's fees in the amount of $542.50 and other costs, including title report, recording, certified mail, posting and sale costs. Defendant NWTS' practice of demanding fees and costs for its services as the duly authorized agent of the loan servicer is a practice of a debt collector and not of an impartial trustee; NWTS' practice of preparing the notices of default representing itself as duly authorized agent of the loan servicer and taxing trustee's fees against the amount owed and to be cured by the borrower before being appointed trustee violates the duty of good faith under

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

the DTA; the practice is unfair and/or deceptive. Under oath, NWTS' corporate representative

Jeff Stenman, testified that the Defendant issued between 8,000 and 10,000 of these notices of

default to borrowers in the State of Washington in the same year that it transmitted the subject

Notice of Default to Plaintiff in 2012. [4]

## b. Facts relating to Foreclosure Fairness Act Mediation and HAMP Loan Modification

17.     As a result of NWTS' initiation of nonjudicial foreclosure, Plaintiff retained the

undersigned counsel, Barraza Law, PLLC, to assist her in preparing for and attending

mediation under the Washington Foreclosure Fairness Act *("FFA")*. In the course of the

mediation process, defendant RCO became involved and informed Plaintiff and her counsel

that it represented the interest of defendant Cenlar as the "beneficiary" under the DTA.

18.     Pursuant to the FFA, on October 12, 2012, defendant RCO provided the

mediator and plaintiff's counsel with documents required under the FFA. The cover letter

accompanying this Mediation package was on RCO's letterhead and written by Dotty Mitchell,

Mediation Paralegal, who stated, "This law firm represents Cenlar FSB, the beneficiary or its

servicer of the deed of trust secured by the above-described property."

19.     In the mediation package, Defendant RCO provided a document entitled

"Beneficiary Declaration (Note Holder)".[5]  **This Beneficiary Declaration is dated October 5,**

**2012, and signed by Defendant Jennifer Dobron, as Assistant Secretary of defendant**

**Cenla**r, who declared under penalty of perjury that "Cenlar FSB is the holder of the

---

[4] Jeff Steman Deposition taken June 6, 2014

[5] **Exhibit K**, October 5, 2012 Beneficiary Declaration.

THIRD AMENDED COMPLAINT [MARKED UP
VERSION] - 9

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

promissory note or other obligations evidencing the above-referenced loan." Above Jennifer

Dobron's signature appears the designation, "Cenlar FSB, beneficiary." [6]

20.     Defendant RCO, having appeared as counsel for defendant Cenlar and Bayview,

via Charles Katz, Esq., moved for dismissal of Plaintiff's original Complaint. Mr. Katz

represented to this Court that "On October 16, 2012, Cenlar FSB, executed a Beneficiary

Declaration required under RCW 61.24.030(7)(a)." Mr. Katz attached to his motion as Exhibit

4 "a true and correct copy of the Beneficiary Declaration." (Doc. 9, pp. 3-4 of 18).  The

Beneficiary Declaration that Mr. Katz submitted and represented to the court as a true and

correct copy is markedly different from the Beneficiary Declaration that his law firm, RCO,

produced earlier as part of mediation under the Foreclosure Fairness Act. [7]

21.     In addition to the different dates of execution, when placed side by side, the

Beneficiary Declarations produced by Defendant RCO at the mediation and by Mr. Katz in

defendants' motion to dismiss are two different documents. Although they were both

presumably signed by the same Defendant Jennifer Dobron, the signatures vary so drastically

as to call into doubt whether they were in fact signed by the same individual identified as

Jennifer Dobron.[8]

22.     Upon information and belief, defendant Jennifer Dobron knew and participated

actively or acquiesced to the fact that her name and her signature appear on numerous

---

[6] Id.
[7] **Exhibit L,** October 16, 2012 Beneficiary Declaration.
[8] Comparison of **Exhibit K** and **Exhibit L.**

THIRD AMENDED COMPLAINT [MARKED UP
VERSION] - 10

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

foreclosure documents recorded in the public records throughout the State of Washington.[9]

When compared with the signatures purportedly made by Dobron on the Beneficiary

Declarations, the signatures on these recorded documents look markedly different from one

another even though they were supposedly signed by the same Jennifer Dobron. The

Composite also illustrates how Jennifer Dobron signed in different corporate capacities for

different corporate entities during the same time frame.

23.     While Plaintiff was in active mediation with Cenlar and its counsel, RCO,

defendant NWTS caused to be recorded an "Appointment of Successor Trustee" in King

County public records. The Appointment was recorded on December 6, 2012, during which

time Plaintiff was making the HAMP trial payments and awaiting the permanent loan

modification. The Appointment refers to Mortgage Electronic Registration Systems or

"MERS" as nominee for the original but now-defunct lender Taylor Bean & Whitaker, its

successors and assigns. The Appointment refers to MERS as "The present beneficiary under

said deed of trust appoints Northwest Trustee Services, Inc., … as successor trustee under the

deed of trust with all powers of the original trustee."[10]  NWTS recorded the Assignment and

Appointment as a provisional measure in the event that Plaintiff's mediation fails to enable her

to retain her home.

24.     The signatory of the Appointment of Successor Trustee is Michael Blair, Vice

President for defendant Cenlar. The notary public, defendant Nancy K. Morris, in this instance,

---

9 **Exhibit G**, Composite of Dobron's documents found in WA public records, **Exhibit H** Composite of
Assignments of Mortgage signed/notarized by Jennifer Dobron, Michael Blair and Nancy K. Morris
found in public records of various counties in Florida.
10 **Exhibit I,** Lucero Appointment of Successor Trustee.

THIRD AMENDED COMPLAINT [MARKED UP
VERSION] - 11

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

affixed her seal without identifying who it was that signed the instrument under oath.

Defendant Morris affixed her seal without filling out the blanks to complete her oath of having

actual knowledge or satisfactory evidence that the signatory is Michael Blair, or that Michael

Blair had acknowledged that he was in fact the vice president of Cenlar and that he was signing

the Appointment in such corporate capacity. The Appointment of Successor Trustee was

signed and notarized on October 3, 2012 and was recorded in the public record of King

County, Washington.

25.     On the same day that NWTS caused the Appointment of Successor Trustee to be

recorded in the public records of King County, Washington, December 6, 2012, it also caused

for a document entitled "Assignment of Deed of Trust" to be recorded.[11] **The Assignment was

purportedly signed by defendant Jennifer Dobron, who previously signed the Beneficiary

Declarations. This time, Jennifer Dobron signed as Assistant Secretary of Mortgage

Electronic Registration Systems Inc., or MERS**, on November 21, 2012, transferring "all

beneficial interests" from MERS as nominee of the defunct lender, Taylor Bean & Whitaker, to

Cenlar. In comparing the Assignment of Deed of Trust to the Beneficiary Declarations also

signed by Jennifer Dobron as assistant vice president for Cenlar, it can be inferred that

defendant Dobron worked for Cenlar and signed a multitude of foreclosure documents on

behalf of Cenlar as well as other corporate entities, including MERS.  Defendant Dobron's acts

of signing and attesting to matters being asserted in these numerous foreclosure documents are

done in reckless disregard for the truth and the resulting damages to Plaintiff and others who

are similarly situated.

---

11 **Exhibit F**, MERS Assignment of Deed of Trust

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

26.     It is a fact that the defendants regularly engage in the particular practice of recording the appointments of successor trustee and assignments of deed of trust simultaneously despite their execution dates in order to create the appearance that these events, the assignment and the appointment, occurred in the correct time sequence. In addition to the simultaneous recording of the assignment and appointment in this case, an example of this practice is found in at least one other nonjudicial foreclosure in Washington.[12]

27.     A comparison between the Appointment of Successor Trustee and the Assignment of Deed of Trust as recorded by NWTS reveals several relevant facts: 1) even though the documents were executed by different people, in different corporate capacities, for different financial entities, on different days, they were both signed and notarized in Mercer County, New Jersey where Cenlar is headquartered; 2) both documents were notarized by the same notary public, defendant Nancy K. Morris; and 3) when both documents are placed side by side, it does not require a trained eye to see that defendant Morris's signatures on both documents do not resemble each other in any way.[13]

28.     The Appointment of Successor Trustee and Assignment of Deed of Trust remain on the public records of King County, Washington and constitute a permanent part of the chain of title of Plaintiff's homestead. The defendant NWTS' act of causing for these documents to be executed and recorded in the above-described manner is carried out in large volumes, it increases the fees and costs associated with nonjudicial foreclosure to be borne by the

---

12 **Exhibit J,** Assignment and Appointment in the matter concerning Donald F. Cook, Jr. and Heather C. Cook recorded in the reverse order of their execution dates.
13 **Exhibit OO,** Composite of documents purported signed and notarized by Morris appearing in public record of Washington. All signatures are to be compared against **Exhibit F**, MERS Assignment of Deed of Trust and **Exhibit I,** Lucero Appointment of Successor Trustee.

THIRD AMENDED COMPLAINT [MARKED UP
VERSION] - 13

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

borrowers, including Plaintiff, when the document as recorded serves no utility. The document, once recorded, gives impression that a transfer had occurred between MERS as the assignor and the loan servicer as assignee when in actuality, no such transfer has ever taken place in any of these nonjudicial foreclosures conducted by NWTS.

29.     The Appointment of Successor Trustee and Assignment of Deed of Trust remain on the public records of King County, Washington and constitute a permanent part of the chain of title of Plaintiff's homestead. The defendant NWTS' act of causing for these documents to be executed and recorded in the above-described manner is an unfair and/or deceptive conduct.

**b.   Conduct of Bayview and Cenlar as loan servicers and debt collectors**

**Conduct of Bayview**

30.     Due to NWTS' conflicting disclosures within the Notice of Default, Plaintiff submitted a Qualified Written Request on August 27, 2012 to Bayview as provided for under RESPA. [14] Bayview did not acknowledge or respond Plaintiff's QWR whatsoever.

31.     After working with Bayview for some extended period of time without being able to obtain a reasonable loan modification, Plaintiff retained counsel, V. Omar Barraza to enter FFA Mediation. On September 1, 2012, plaintiff counsel notified Bayview in writing that he represents Plaintiff's interest in the loan modification and mediation. [15] Thereafter, Plaintiff and Mr. Barraza also contacted Bayview both via telephone and in writing to inform Bayview that Plaintiff would accept the Loan Modification being offered by Bayview. [16]

32.     Despite these actual notices of counsel's representation, Bayview continued to contact Plaintiff directly by mail and telephone. Bayview's contact continued well into 2013,

---

14 **Exhibit E**, Qualified Written Request issued to Bayview on August 27, 2012.
15 **Exhibit M**, Notice of Representation and Authorization to Release Information.
16 **Exhibit N**, Letter written by Plaintiff counsel to Bayview dated September 22, 2012

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

after Plaintiff had completed her trial period and commenced payments on the permanent loan modification agreement. It is inexplicable that Bayview did not cease contact with Plaintiff after Bayview offered Plaintiff the Loan Modification, knowing that Plaintiff accepted said offer both verbally and in writing, and being informed that Plaintiff was, at all times, represented by counsel. Bayview's correspondence unequivocally informed Plaintiff that it was seeking to collect on the defaulted mortgage debt, despite the fact that the loan had been modified, and Plaintiff was no longer in default.[17]

**d. Cenlar's Assessment of Attorney Fee to Plaintiff's Loan Account**

33.     After entering into FFA mediation with the defendants, Plaintiff finally received the HAMP Modification Agreement to sign. Plaintiff understood from the terms of the Agreement drafted by Cenlar, purportedly on behalf of Freddie Mac, that all amounts due and owing prior to her signing the agreement were reset or otherwise incorporated into the New Principal Amount.[18] Plaintiff understood further that these amounts were being amortized over the life of her loan; Plaintiff has been making her monthly payments beginning in January of 2013, without fail.

34.     After completing the Trial Payments and resolving the default, to her dismay, Plaintiff discovered that she could not get a car loan because Cenlar did not cease reporting to the credit bureaus that she was under default and foreclosure.[19] Worse, after filing this lawsuit, Cenlar began to impose substantial amounts of attorney fees and costs onto Plaintiff's mortgage account; Cenlar sent Plaintiff a letter dated December 4, 2013, in which it informed Plaintiff that it has charged Attorney Fees and Costs to her mortgage loan account "[I]n

---

17 **Exhibit O,** February 7, 2013 letter from Bayview evidencing its attempts to contact Plaintiff directly
18 **Exhibit P**, HAMP Loan Modification  Agreement
19 **Exhibit LL**, Denial of Credit Letter dated 1/8/2013

THIRD AMENDED COMPLAINT [MARKED UP
VERSION] - 15

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

keeping with Washington Law." [20]  Plaintiff is unaware of any provision of the Revised

Washington Code that authorizes Cenlar as the loan servicer to impose Attorney's Fees and

Costs for its defense against a lawsuit brought by a borrower for misconduct as loan servicer.

35.     As a result of Cenlar's imposition of Attorney Fees and its reference to

Washington Law authorizing for Attorney Fees to be imposed, Plaintiff sent Cenlar a Qualified

Written Request dated December 29, 2013, in which she disputed that she owed any attorney

fees to Cenlar and requested explanations.[21] This is the second QWR that Plaintiff had sent

Cenlar. This time, Plaintiff specifically challenged the attorney's fees imposed upon her

account.  Plaintiff then received a letter from Cenlar dated January 7, 2014, promising that

Cenlar "will review your inquiry and respond when our research has been completed." [22]

36.     Despite Plaintiff's timely mortgage payments, Cenlar continues to send Plaintiff

Periodic Statements containing huge amounts of unexplained Attorney Fees which make up the

"Overdue Payment" every month. [23] Simultaneous with these Periodic Payments, Cenlar has

also been sending Delinquent Notices to Plaintiff threatening to report her account status as

delinquent to the credit bureaus [24]  In particular, Cenlar sent Plaintiff a letter dated March 6,

2014, containing the following[25]:

---

[20] **Exhibit Q**. Cenlar Letter of 12/4/2013: "In keeping with Washington Law, please be advised that we have charged your loan account for the fee described, on the date and in the amount indicated on the below list." On this date, Cenlar charged Plaintiff $1251 as "Attorney Fees" and $10.42 as "Attorney Cost."
[21] **Exhibit R**, Plaintiff's QWR to Cenlar 12/29/2013.
[22] **Exhibit S**, Acknowledgement of QWR 01/07/2014.
[23] **Exhibit T**, Cenlar Periodic Statement dated 1/16/2014, and **Exhibit U,** Cenlar Periodic Statement dated 1/21/2014
[24] **Exhibit V**, Delinquent Notice
[25] **Exhibit W,** Cenlar Letter 03/06/2014

THIRD AMENDED COMPLAINT [MARKED UP
VERSION] - 16

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

Dear Mortgagor(s):

In keeping with Washington Law, please be advised that we have charged your loan
account for the fee described, on the date and in the amount indicated on the below
list.

Please do not hesitate to contact us if you need additional information or clarification.

Sincerely,

Central Loan Administration & Reporting

| LOAN NUMBER | FEE CD | FEE TYPE | FEE AMOUNT | FEE DATE |
|---|---|---|---|---|
| 0029259710 | ATTC | Attorney Cost | 8.21 | 02/10/2014 |
| 0029259710 | ATTO | Attorney Fees | 400.50 | 02/10/2014 |
| 0029259710 | ATTO | Attorney Fees | 630.00 | 02/10/2014 |
| 0029259710 | ATTO | Attorney Fees | 180.00 | 02/10/2014 |
| 0029259710 | ATTO | Attorney Fees | 315.00 | 02/10/2014 |
| 0029259710 | ATTO | Attorney Fees | 1327.50 | 02/10/2014 |
| 0029259710 | ATTO | Attorney Fees | 756.00 | 02/10/2014 |
| 0029259710 | ATTO | Attorney Fees | 1732.50 | 02/10/2014 |
| 0029259710 | ATTO | Attorney Fees | 535.50 | 02/10/2014 |

37.     Unable to compel Cenlar to respond to her December 29, 2013 QWR as to the

Attorney's Fee issue, and being extremely concerned over the ever-increasing past due and

amounts due, on March 25, 2014, pursuant to Regulation X of the Mortgage Servicing Act

under RESPA, which went into effect January 10, 2014, Plaintiff requested for her counsel to

prepare and send Cenlar a Notice of Error, again asserting errors in the imposition of Attorney

Fees.[26] On the same day, Plaintiff counsel also sent a Request for Information, asking Cenlar to

provide an explanation as to "the purpose of the attorney fees and the parties who received

such fees" as well as an explanation of "Cenlar's authority to impose such fees."[27]

38.     Despite Cenlar's actual knowledge that Plaintiff is, at all times, represented by

counsel, Cenlar communicated directly with Plaintiff by sending numerous letters to Plaintiff

including a letter dated April 1, 2014, where it imposed $360.00 in Attorney Fees, and stated

the "Fee Date" as March 25, 2014.· In another letter dated May 1, 2014, Cenlar charged

---

[26] **Exhibit Y,** Notice of Error dated 03/25/2014

[27] **Exhibit X,** Request for Information dated 03/25/2014

THIRD AMENDED COMPLAINT [MARKED UP
VERSION] - 17

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

Plaintiff's account the total of $8958.50 in Attorney Fees "in keeping with Washington Law."[28] Cenlar sent Plaintiff another Delinquent Notice dated May 16, 2014, cautioning that the payment demanded "does not include other fees and costs that might be due" and threatening that if payment is not received by the end of the current month, Cenlar "may report" the account information to the credit bureaus.[29]

39.     Present counsel for Cenlar, Renee M. Parker, issued a series of letters to plaintiff counsel in which she declared that she needed additional time to *investigate* the Attorney Fees issue. In her letter dated June 18, 2014, six months after receipt of Plaintiff's QWR, Ms. Parker referred the letter to as the "final correspondence" to Plaintiff's "recent QWR," Ms. Parker expressed that the Attorney Fees charged against Plaintiff's account on or about November 25, 2013 "have been incurred in litigation and are authorized by the Deed of Trust" and paragraph 6(e) of the Note.[30]  However, Ms. Parker's production accompanying her "final correspondence" of June 18, 2014, continued to fail to include the itemization requested by Plaintiff's QWR sent in December of 2013, and *Plaintiff's subsequent* Notice of Error and Request for Information sent in March of 2014.

40.     Since January of 2014, Cenlar has been mailing Periodic Statements to Plaintiff, as frequently as twice a month. The most recent Periodic Statement, dated September 16, 2014,[31] shows an *Overdue* amount of $18,196.22, and a *Total Amount Due* of $19,809.03, even though Plaintiff has been making her mortgage payment every month without fail. Until this day, Cenlar has yet to provide Plaintiff with the specific itemization of Attorney Fees as requested by Plaintiff in her QWR, Notice of Error and Request for Information *in the manner prescribed by law*.  Overall, Cenlar has never explained to Plaintiff the source of authority

---

[28] **Exhibit KK**, Cenlar Delinquent Letters dated 4/1/2014 and 5/1/2014
[29] **Exhibit Z,** Cenlar Delinquent Letter dated 5/16/2014
[30] **Exhibit AA**, Parker Letters including Letter dated 6/18/ 2014
[31] **Exhibit BB**, Periodic Statement dated 9/16/2014

THIRD AMENDED COMPLAINT [MARKED UP VERSION] - 18

allowing Cenlar *as the loan servicer*, rather than the owner *or lender* of the mortgage loan, to impose Attorney Fees based on litigation commenced by Plaintiff as the borrower. Where neither the original Lender nor Freddie Mac has been named in the lawsuit, and where there is no default, Cenlar has no standing to rely upon the provisions of the Note and Deed of Trust to charge Plaintiff Attorney Fees. [32]

**e. Concurrent or dual representation where RCO is counsel for NWTS and loan servicers**

41.     In this case, while NWTS took steps to initiate the nonjudicial foreclosure against Plaintiff's homestead, defendant RCO actively represented Cenlar, NWTS's client and loan servicer, in mediation with Plaintiff under the Foreclosure Fairness Act. After the mediation and the filing of this lawsuit, RCO became counsel of record for defendant Cenlar and defendant Bayview. RCO's concurrent representation of NWTS as the purported trustee and NWTS' clients, the loan servicers on the opposing side of Plaintiff in this case, and borrowers in other foreclosure cases renders it impossible for NWTS to act as an impartial judicial officer in nonjudicial foreclosures conducted by NWTS. RCO's concurrent representation of parties constitutes unfair and/or deceptive conduct under Washington laws.

42.     It has been a common pattern for defendant RCO to concurrently represent the interests of NWTS as trustee and the interests of NWTS' loan servicer clients in nonjudicial foreclosure cases and FFA mediation on the opposite side of the borrowers.  This business arrangement creates an actual or apparent conflict of interest for RCO as a lawyer; it results in injury to the individual borrowers as NWTS becomes an adversary rather than the impartial trustee. This business arrangement negatively impacts the public because it corrodes the

---

[32] http://www.freddiemac.com/learn/pdfs/service/104sf_desk_reference.pdf

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

public's confidence in the legal system in or outside of the framework of the Deed of Trust

Act. *Klem v. Wash. Mut. Bank* 176 Wn.2d 771, 784,  295 P.3d 1179 (2013) ("As we have said,

without an independent trustee, the nonjudicial foreclosure process is subject to challenges

based upon constitutional and equitable grounds.");  *Schroeder v. Excelsior Management Grp.,*

*LLC,*  297 P. 3d 677, 686 (2013) ("We note the act specifically states that the trustee 'shall

have no fiduciary duty or fiduciary obligation to the grantor or other persons having an interest

in the property subject to the deed of trust.' RCW 61.24.010(3)." ) ; *Barrus v. Recontrust Co.,*

*N.A.,* No. C11-618-RSM, No. 11-17075 1053 WL 2360206, *3 (W.D.Wash. June 9, 2011)

(Professor David Boener's Opinion: "It is my professional opinion that no reasonable

Washington lawyer could believe that they could effectively represent both the trustee and the

beneficiary.  In my opinion, the representation of both clients would be adversely affected.

Thus, under *RPC 1.7(b)(1)* the simultaneous representation of the trustee and the beneficiary is

prohibited even if both clients were to consent to the conflicted representation); John

Campbell, *Can We Trust Trustees?Proposal for Reducing Wrongful Foreclosure,* (" In any

given transaction, it is not uncommon for the trustee to serve as a debt collector, the attorney

for the bank,  the party with the power to appoint a successor trustee, the successor trustee, an

agent for MERS who assigns mortgage documents during the foreclosure, the attorney who

opposes the homeowner if he or she seeks to stop the foreclosure, the coordinator and direct or

indirect provider of title services, the attorney who represents the new buyer after foreclosure

in the lawsuit to remove the homeowner, and the coordinator of "default services – the  process

of removing the homeowner from the home, cleaning up the home, and preparing it for sale.

This is a staggering number of hats to wear, and one can probably already sense that the inherit

THIRD AMENDED COMPLAINT [MARKED UP
VERSION] - 20

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

conflicts are legion." (http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2191738, visited October 19, 2013).

43.     NWTS and RCO meet the definition of "debt collectors," as defined by FDCPA § 803, codified at *15 U.S.C. § 1692a(6).*

44.     Defendant Cenlar and defendant Bayview meet the definition of "debt collectors," as defined by FDCPA § 803, codified at *15 U.S.C. § 1692a(6).*

45.     The debt that Defendants claim Plaintiff owes qualifies as a debt, as defined by FDCPA § 803, codified at 15 U.S.C. *§ 1692a(5).*

## VII.    CAUSES OF ACTION

## COUNT ONE: VIOLATIONS OF RESPA

46.     Plaintiff incorporates herein by reference as though fully set forth at length each and every preceding allegation and statement contained herein, inclusive, of the Factual Allegations.

**Bayview violated RESPA for failing to acknowledge or respond to Plaintiff's QWR**

47.     RESPA was enacted, in part, to ensure "that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a). It provides that borrowers may inquire about federally related mortgages by making a "qualified written request." 12 U.S.C. § 2605(e)(1)(A). The term "qualified written request" is defined in 12 U.S.C. § 2605(e)(1)(B): it is a request that, inter alia, (a) describes why a borrower believes her "account is in error," or (b) "provides sufficient detail to the servicer regarding other information sought by the borrower."

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

48.     There is no dispute that Plaintiff issued Bayview a QWR dated August 27, 2013, which sufficiently identified Plaintiff's account and included a statement of the reasons for the belief of the Plaintiff, to the extent applicable, that the account is in error or provides sufficient detail to Bayview regarding the information sought by the Plaintiff as required under 12 *U.S.C.S. § 2605(e)(1)(B)(ii)*. It is further undisputed that Bayview did receive the QWR, but never acknowledged or responded. Bayview's failure to acknowledge and respond to Plaintiff's QWR violated RESPA entitling Plaintiff to recover actual damages, plus costs and attorney's fees.

49.     To the extent that Bayview's involvement in Plaintiff's loan is to determine eligibility of HAMP modification or other programs, Bayview was servicing Plaintiff's loan for the duration it took Bayview to do so. To the extent that Bayview is deemed not to be the current loan servicer, as defined under RESPA, Bayview was admittedly acting as an agent of Cenlar and liability flows from this principal-agent relationship.

**Cenlar violated RESPA for failure to respond to Plaintiff's QWR timely causing damages**

49.     Concerning the QWR[33] Plaintiff issued to Cenlar on December 29, 2013, the claimed error was the attorney's fees and costs charged against Plaintiff's mortgage account by Cenlar as the loan servicer. Even though Cenlar acknowledged receipt in a letter dated January 7, 2014,[34] the answer did not come for yet another six months. Counsel for Cenlar, Renee M. Parker, issued a series of letters to Plaintiff's counsel in which she declared that she needed additional time to investigate the Attorney Fees issue. Finally, in her letter dated June 18, 2014, which Ms. Parker referred to as the "final correspondence" to Plaintiff's "recent QWR," Ms. Parker expressed that the Attorney Fees charged against Plaintiff's account on or about November 25, 2013 "have been incurred in litigation and are authorized by the Deed of Trust"

---

33 **Exhibit R**, Plaintiff's QWR to Cenlar 12/29/2013.
34 **Exhibit AA**, Parker's Series of Letters including Letter dated 6/18/ 2014

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

and "paragraph 6(e) of the Note." By the June 18, 2014 Letter, Cenlar, via Ms. Parker, has failed to comply with the laws.

50.     Cenlar continued to fail to explain to Plaintiff how Cenlar as the loan servicer could impose Attorney Fees incurred by Cenlar in defense of a lawsuit brought by the Plaintiff against Cenlar and not the original Lender or Freddie Mac as the current owner of Plaintiff's loan. Ms. Parker has likewise failed to explain how Cenlar could have standing to rely upon the provisions of the Note and Deed of Trust to charge Plaintiff Attorney Fees when it has no rights under the Note and no beneficial interest under the Deed of Trust.  Above all, the response by Ms. Parker rendered six months after receipt of the QWR was certainly not timely.

51.     Until this day, Cenlar has yet to provide Plaintiff with the specific itemization of Attorney Fees requested by Plaintiff in her QWR identifying the type of services rendered for each line item charged on a specific day as required under RESPA. Cenlar's delay in responding to Plaintiff QWR resulted Cenlar's  continuing assessment of Attorney's Fees and Costs to Plaintiff's mortgage account for the months of December of 2013, January, February, March, April, May, and June of 2014. Cenlar's delay in responding to Plaintiff's QWR interfered with Plaintiff's ability to obtain factual information used to challenge Cenlar's action or mitigate the resulting damages including potential re-default and foreclosure.

52.     On January 10, 2014, a new regulatory scheme went into effect through the Dodd-Frank Wall Street Reform and Consumer Act of 2010; born were the "Mortgage Servicing Rules under the Real Estate Settlement Procedures Act" or Regulation X, codified at *12 C.F.R. §1024*.

53.     Concerning Plaintiff's Request for Information (RFI) and Notice of Error (NOE) sent to Cenlar in March of 2014, these Request and Notice triggered Regulation X,  *12 C.F.R. §1024.35(d)*, requiring Cenlar to acknowledge receipt in writing within five days. Thereafter,

THIRD AMENDED COMPLAINT [MARKED UP VERSION] - 23

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

the regulations require Cenlar to investigate, if necessary, and respond within thirty days. [35] The Regulation altered the servicer's obligations by requiring the servicer to conduct a "reasonable investigation" rather than simply provide a written statement of reasons. *§1024.35*. Moreover, Plaintiff's NOE and RFI were directed at the lack of an itemization or accounting of Attorney's Fees and Costs which were charged by Cenlar in large amounts on an ongoing basis.

54.     Cenlar has provided no acknowledgement and no substantive response to Plaintiff's RFI and NOE sent in March of 2014 within the time set forth in the Regulation. Renee Parker's Letter of June 18, 2014, calling it the "final response" to Plaintiff's QWR,  only addressed the issue of Attorney Fees being assessed on one particular date, November 25, 2013, and not the numerous entries appearing on Periodic Statements and Letters of Delinquency transmitted by Cenlar to Plaintiff for the past year.  Above all, Cenlar failed to satisfy the requirement of the Regulation which is, the servicer must now provide the borrower "with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance." *12 C.F.R. § 1024.35(e)(1)(i)(A).*

55.     Cenlar's failure to sufficiently respond to Plaintiff's inquiries under Regulation X has prejudiced Plaintiff's ability to obtain factual information used to correct the errors

---

[35] *12 C.F.R. §§1024.35(e), 1026.36(d).* "For asserted errors governed by the time limit . . . of this section, a servicer may extend the time period for responding by an additional [fifteen] days . . . if, before the end of the [30] day period, the servicer notifies the borrower of the extension and the reasons for the extension in writing." 12 C.F.R. *§1024.35(e)(3)(i)(C)(ii); see also 12 C.F.R. §1024.36(d)(2)(i)(B)(ii).*  Defendant Cenlar has taken no action even after the expiration of the 15-day extension it requested from Plaintiff.

THIRD AMENDED COMPLAINT [MARKED UP
VERSION] - 24

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

within the accounting of Plaintiff's loan by Cenlar as servicer in a timely manner. Said failure also has prejudiced Plaintiff's ability to correct the errors and prevent re-default and foreclosure, which have been made inevitable by Cenlar's action of imposing ongoing and ever increasing Attorney's Fees and Costs.

## COUNT TWO: DEFENDANTS VIOLATED FEDERAL DEBT COLLECTION PRACTICES ACT ("FDCPA")

56.     Plaintiff incorporates herein by reference as though fully set forth at length each and every preceding allegation and statement contained herein, inclusive, of the Factual Allegations.

**Liability of Cenlar, Dobron and NWTS**

57.     The FDCPA, *§1692f,* prohibits a debt collector from "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if – (A) there is no present right to possession of property claimed as collateral through an enforceable security interest . . . ." *§1692f.*  In this District, it has been determined that Defendant NWTS' act of issuing and transmitting the Notice of Default to Plaintiff when it did not have the proper statutory authority of a successor trustee violates FDCPA. *McDonald v. OneWest, supra* (Where NWTS had not been appointed successor trustee and was not acting on behalf of the entity that had actual physical possession of the note, it lacked the right to issue a notice of default and violated *§1692f(a)(A)).* In asserting that it was the holder of Plaintiff's promissory Note while having actual knowledge that some other entity was in actual possession of

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

Plaintiff's Note, and commanding NWTS to initiate foreclosure against Plaintiff's home when Cenlar was not the note holder at the time, Cenlar violated §1692f(6).

58.     Defendant Jennifer Dobron, acting within the scope of her employment with Cenlar, violated *§1692(6)* by executing the two Beneficiary Declarations, representing the falsity that Cenlar was in actual possession of the Note, when Cenlar was not, violated *§1692f(6).*

59.     Cenlar's various correspondence to Plaintiff, after her loan had been permanently modified, advising that it has charged her mortgage account Attorney's Fees and Costs either pursuant to Washington laws, or pursuant to the provisions of the Note and Deed of Trust, violated *§1692e and §1692f. 1692e.*  Section *1692f(1)* prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt," including "[t]he collection of any amount (including any interest, fee, charge, or expense . . .) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Section *1692e(2) (B)* prohibits the use of unfair or unconscionable means to collect "any . . . compensation which may be lawfully received by any debt collector for the collection of a debt." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939 (9th Cir.2011); *see also Clark v. Capital Credit & Collection Servs*. 460 F.3d 1162, 1174-77 (9th Cir.2006) (possible violation of § 1692e(2) arising from misstatement of an account balance).

60.     Further, Cenlar's communication to the credit bureaus that the loan status was anything other than current, after the permanent HAMP modification was entered into in January of 2013, violated *§1692e(8),* prohibiting the communication or threat to communicate of Plaintiff's credit information to a third-party, including a credit reporting agency, which is

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

known or which should be known to Cenlar to be false.  To the extent Cenlar failed to communicate to the credit bureaus that Plaintiff had disputed or challenged Cenlar's authority to impose ongoing Attorney's Fees and Costs, Cenlar violated *1692e(8)*.

61.     Defendant NWTS, as result of Cenlar and Dobron's act of falsifying Beneficiary Declarations, had no present right to possession of Plaintiff's homestead via nonjudicial foreclosure commencing in August of 2012. By its acts of transmitting and receiving the MERS Assignment and Appointment of Successor Trustee via the mail and other electronic means, and by recording of the same documents into the public records, where there was a clear lack of authority to do so, NWTS violated *§1692f(6)*.

**<u>Bayview's liability</u>**

62.     The Fair Debt Collection Practices Act further prohibits a "debt collector" from communicating with a consumer in connection with the collection of any debt if the debt collector knows the consumer is represented by an attorney and from taking actions to harass, oppress, or abuse any person in connection with the collection of a debt, §§ 1692c(a)(2), 1692d. Bayview is a debt collector as defined by §1692a(F)((iii) because it serviced Plaintiff's loan specifically in connection with the loan modification.

63.     Defendants Bayview violated 15 U.S.C. § 1692c (a) by attempting and continuing to attempt contact with Plaintiff with full knowledge that Plaintiff was represented by the undersigned counsel. Bayview's February 7, 2013 Letter clearly admits that collection contacts were made to Plaintiff at home and place of employment in the prior weeks or months without success. There cannot be any excuse on the part of Bayview that it was not aware of

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

legal representation by the Barraza law firm based on several correspondence and telephone contact between such law firm, its client and Bayview

64.     As a result of the foregoing violations of the FDCPA, defendants are liable to Plaintiff  for resulting statutory damages, actual damages, and costs and attorney fees as provided for by *15 U.S.C. §1692k(a)(3),* where the amount of said damages will be proven at trial.

## COUNT THREE: DEFENDANTS VIOLATED WASHINGTON CONSUMER PROTECTION ACT, RCW 19.86 ET. SEQ.

65.     Plaintiff incorporates herein by reference as though fully set forth at length each and every preceding allegation and statement contained herein, inclusive, of the Factual Allegations.

66.     Defendants individually and collectively violated the Washington Consumer Protection Act ("CPA"). The Act prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *RCW 19.86.020.* A private cause of action exists under the CPA if (1) the conduct is unfair or deceptive, (2) occurs in trade or commerce, (3) affects the public interest, and (4) causes injury (5) to plaintiff's business or property. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co*., 105 Wn.2d 778, 780, 719 P.2d 531 (1986). Plaintiff alleges that the defendants' conduct actually or potentially impacts the general public and not just a private wrong. *Lightfoot v. Macdonald,* 86 Wn.2d 331, 333, 544 P.2d 88 (1976).

67.     Upon information and belief, all of the defendants knew or should have known that MERS had no real interest in the Plaintiff's loan and MERS never held the promissory

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

note signed by Plaintiff at closing. Therefore, the defendants' act of preparing, causing to be recorded, and using the Assignment of Deed of Trust, naming MERS as the beneficiary and assigning interests purportedly held by MERS, when said Assignment was neither necessary nor material to initiate nonjudicial foreclosure against Plaintiff's homestead,[36] but preparing and recording the same anyway, causing Plaintiff to incur fees and costs, including costs for the services of, and the recording fee of said Assignment, where these fees and costs were added on to the Modified or New Principal Balance that Plaintiff has to pay over a 40 (forty) years period. Thus, the defendants' act, collectively in causing the MERS Assignment to be recorded in the public record of King County is both unfair and deceptive.

68. Where the defendants knew or should have known that the MERS Assignment was not necessary or material to initiate nonjudicial foreclosure against Plaintiff's homestead, but preparing and recording the same anyway to make it look like the Appointment of Successor Trustee is actually predicated upon the MERS Assignment in the public record, their action is both unfair and deceptive. The deception is obvious and the unfairness comes from Plaintiff's incurring the fees and costs specifically related to the preparation, transmission and recordation of the MERS Assignment, and having these fees and costs added on to the Modified or New Principal Balance that Plaintiff has to pay over a 40 (forty) years period.

---

[36] Where the Defendants have consistently denied in court that the MERS Assignment is necessary for them to conduct nonjudicial foreclosure, and where this Court has held as a matter of law that the Assignment is not dispositive on the issue of the requisite authority to foreclose, the inevitable conclusion to be drawn from tens of thousands of MERS assignments appearing in the public records of Washington is Defendants' practice concerning the preparation and recording of these assignments serve no purpose other than to allow the defendants to increase, or to "churn" their fees and costs. Where the borrowers and the public ultimately pay for the increased fees and costs, the commercial practice of preparing and recording MERS assignment is per se harmful based on their frivolity.

THIRD AMENDED COMPLAINT [MARKED UP VERSION] - 29

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

69.     Plaintiff alleges that Cenlar was not the holder of the original promissory note signed by Plaintiff at the time Cenlar signed the first Beneficiary Declaration via Jennifer Dobron on October 5, 2012, as that term is defined by the Uniform Commercial Code, *Title 62A RCW*. Proof supporting Plaintiff's allegation is found in Freddie Mac's Document Custody Procedures Handbook, which explains that a third party Document Custodian physically possesses original promissory notes on Freddie Mac's loans and not the loan servicers themselves.(http://www.freddiemac.com/cim/pdf/chapter_1.pdf, visited October 19, 2013).

70.     Plaintiff further alleges that Cenlar was not the holder of the original promissory note on October 16, 2012, as that term is defined by the Uniform Commercial Code, *Title 62A RCW,* when Cenlar again signed another Beneficiary Declaration, via Jennifer Dobron.

71.     Plaintiff alleges that Cenlar was not the holder of the original promissory note on October 3, 2012, as that term is defined by the Uniform Commercial Code, *Title 62A RCW,* when Cenlar appointed NWTS to be successor trustee for purpose of foreclosing on Plaintiff's homestead nonjudicially.

72.     Plaintiff alleges that Cenlar was not the holder of the original promissory note on November 21, 2012, as that term is defined by the Uniform Commercial Code, *Title 62A RCW,* when MERS assigned the Deed of Trust via Jennifer Dobron to Cenlar. Therefore, Plaintiff alleges that all of the documents utilized in the nonjudicial foreclosure are "made up," and "robo-signed" to enable defendants to adversely affect the quality of Plaintiff's title in violation of the Deeds of Trust Act 78. TADefendant NWTS' practice of simultaneously recording appointments of successor trustee and assignments of deed of trust, notwithstanding their actual execution dates, to create the misimpression that the documents confer the statutory

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

authority for it to conduct non-judicial foreclosures, meets the definition of unfair or deceptive conduct. *Klem v. Washington Mutual Bank*, 2013 Wash. LEXIS 151 (Feb. 2013) (Trustee's practice of having its notary employees predate notarizations was an unfair or deceptive act under the CPA).

73.     Recently, in *Bain v. Metropolitan Mortg. Group, Inc.,* 175 Wn.2d 83, 117, 285 P.3d 34 (2012), the Washington State Supreme Court declared that characterizing a non-holder (in that case, MERS) as the beneficiary in the deed of trust, when it knew or should have known that it must have actual possession of the note to be the beneficiary under Washington law, has the capacity to deceive for purposes of establishing a CPA claim. If merely characterizing MERS as beneficiary of the deed of trust has the capacity to deceived, in this case, where the Defendants collectively and affirmatively, via the preparation and recording of MERS Assignment, created the false impression that a transfer had actually occurred between MERS and Cenlar, when none took place, the Defendants had *actually* deceived the Plaintiff as well as the public. Additionally, the Defendants collectively and affirmatively presented the falsity that in on or before August 27, 2012, when Cenlar directed NWTS to initiate nonjudicial foreclosure against Plaintiff, Cenlar had actual possession of her original Note at the time Cenlar initiated nonjudicial foreclosure against Plaintiff when another entity, and not Cenlar, had possession of Plaintiff's Note.

74.     Under *Bain,* the third element, public interest, was presumptively met because of the volume of mortgages in the country and in Washington State in which MERS is involved. *Bain*, 175 Wn.2d at 118. Here, defendants Cenlar, NWTS, and RCO are huge companies whose businesses involve default services including nonjudicial foreclosure in this

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

state. Thus, the defendants' commercial practice of producing and recording large volumes of

documents which give the false impression that the loan servicer in nearly all cases has actual

possession of the original note when the loan servicer does not, compromises the integrity of

the real property recording system, undermines public confidence, and satisfies the third

element of the *Hangman* public interest test. *McDonald v. OneWest, supra.*; *Bavand v.*

*OneWest, supra.*

75.    Defendant NWTS' practice of simultaneously recording appointments of

successor trustee and assignments of deed of trust, notwithstanding their actual execution

dates, to create the false impression that the documents confer the statutory authority for it to

conduct non-judicial foreclosures, meets the definition of unfair or deceptive conduct. *Klem*

*v. Washington Mutual Bank*, 2013 Wash. LEXIS 151 (Feb. 2013) (Trustee's practice of

having its notary employees predate notarizations was an unfair or deceptive act under the

CPA).

76.    Plaintiff alleges that it was improper for defendant NWTS to record the

Appointment of Successor Trustee and Assignment of Deed of Trust against the Plaintiff's

chain of title as a provisional measure and not based on actual default or the need to foreclose.

NWTS' act of preparing and recording these documents was done for no purposes other than to

increase its profits in disregards for the requirements of the DTA.

77.    In this case, defendant RCO, through its employee, Dotty Mitchell, and Charles

Katz, Esq., produced two different Beneficiary Declarations; one to the Plaintiff and her

counsel and one submitted to the Court in the motion to dismiss Plaintiff's Complaint. It is a

statutory prerequisite that "the trustee shall have proof that the beneficiary is the owner of any

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

promissory note or other obligation secured by the deed of trust." *RCW 61.24.030(7)(a).*

Defendant RCO's practice of producing more than one version of an original document

purporting to satisfy a statutory prerequisite can no longer be deemed inadvertent or incidental

but an intentional practice designed to confuse the borrower and obscure the real identity of the

party who has a direct stake in the mortgage loan as well as to gain an unfair advantage in

litigation. *McDonald v. OneWest*, *supra.* (RCO produced one version of the "true and correct

copy" of the original note in a motion for relief from stay in the bankruptcy court, and another

copy in the district court case); *Bavand v. OneWest Bank FSB*, case C12-0254JLR, United

States District Court, Western District of Washington (RCO represents NWTS with two

varying promissory notes both represented to be true and correct copies of the original). RCO's

practice of producing different versions of the beneficiary declarations at different times for

different purposes is deceptive. *Klem v. Wamu.*, *supra*.

78.    In this case, the Notice of Default NWTS transmitted to Plaintiff indicates that

Federal Home Loan Mortgage Corporation, or Freddie Mac, is the owner of Plaintiff's

promissory note, while stating that Cenlar is the "creditor to whom the debt is owed." NWTS

knowingly misrepresented to the Plaintiff the entity with whom she should communicate with

in order to resolve the issues of her mortgage loan because it represented that Cenlar was the

creditor to whom the debt was owed but actually knew that Freddie Mac owned the note she

signed at closing.

79.    It has also been a common practice of NWTS to declare itself as the "duly

authorized agent" of the loan servicer, and that the loan servicer is the "Client" of NWTS in

notices of default including the Notice of Default used in this case where NWTS declared that

"Cenlar, FSB, By Northwest Trustee Services, Inc., its duly authorized agent" as well as "Client: Cenlar FSB" while charging Plaintiff as the borrower "trustee's fees." NWTS' act of charging fees for trustee's services while performing work as an agent or a debt collector on behalf of the servicer is both unfair and deceptive.

80.     It is a common practice for NWTS to include trustee's fees in notices of defaults which were sent out before NWTS was properly appointed trustee, including the Notice of Default transmitted by NWTS in this case where NWTS demanded Plaintiff to pay the total sum of $42,787.91 to reinstate the deed of trust before the recording of the notice of sale. Defendant NWTS' practice of demanding fees and costs for services rendered by NWTS and related companies while acting as the duly authorized agent of the loan servicer is a practice of a debt collector and not of an impartial trustee; NWTS' practice of preparing the notices of default representing itself as duly authorized agent of the loan servicer and taxing trustee's fees before being appointed violates the duty of good faith under the DTA.

81.     Due to the defendants' collective acts, Plaintiff has suffered actual damages including damages to her credit, loss of opportunities, emotional upheavals, ongoing and prolonged fear of losing her home. Plaintiff is entitled to recover for these damages under the Washington Consumer Protection Act, including treble damages, exemplary damages and attorney's fees and costs. *RCW 19.86.090*. The full amounts of Plaintiff's damages will be proven at trial.

## COUNT FOUR: NOTARY PUBLIC NANCY K. MORRIS COMMITTED FRAUD

82.     Plaintiff incorporates herein by reference as though fully set forth at length each

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

and every preceding allegation and statement contained herein, inclusive, of the Factual

Allegations.

83.     The nine elements necessary to establish fraud -- all of which must be shown by

clear, cogent, and convincing evidence -- are a representation  of an existing fact; its

materiality; its falsity; the speaker's knowledge of its falsity; her intent that it shall be acted

upon by the person to whom it is made; ignorance of its falsity on the part of the person to

whom it is addressed; the latter's reliance on the truth of the representation; her right to rely

upon it; and her consequent damage. *Williams v. Joslin,* 65 Wn.2d 696, 399 P.2d 308 (1965);

*Michielli v. United States Mortgage Co.,* 58 Wn.2d 221, 361 P.2d 758 (1961); *Chiles v. Kail,*

34 Wn.2d 600, 208 P.2d 1198 (1949).

84.     Defendant Nancy K. Morris committed fraud in her act of placing her notary seal

upon the Appointment of Successor Trustee without confirming the identity of the signer and

his capacity to sign as declared. Morris' knew that by signing and placing her notary seal upon

the Appointment, she would cause others to rely on the representations contained therein as

true and reliable as recorded in the public records.

85.     Defendant Nancy K. Morris committed fraud in her act of notarizing the

Assignment of Deed of Trust and attesting that defendant Jennifer Dobron executed the

document in her capacity as assistant vice president of MERS on the stated date, time and place

because Morris knew or should have known that defendant Dobron was not a corporate officer

of MERS but an employee of Cenlar whose job involves executing a high volume of

documents to satisfy statutory prerequisites to conduct non-judicial residential foreclosures.

86.     Defendant Morris committed fraud in allowing for her signatures and notary seal

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

to be affixed on recorded documents to be utilized in the nonjudicial foreclosure of Plaintiff's homestead because she knew or should have known that the use of her notary seal legitimized these documents by giving them the appearance of reliability and trustworthiness. *Klem v. Wamu, supra.* ("A signed notary's acknowledgement is the ultimate assurance upon which the whole world is entitled to rely that the proper person signed a document on the stated day and place. Local, interstate and international transactions involving individuals, banks, and corporations proceed smoothly because all may rely upon the sanctity of the notary's seal.")

87.    Defendant Morris' acts made it possible for inaccurate or fraudulent documents to be recorded in the chain of title of Plaintiff's property. Defendant Morris' acts started the chain of events that led to the initiation of foreclosure against Plaintiff's homestead by an entity other than the owner of her mortgage loan and the promissory note she signed at closing. Plaintiff is entitled to consequential damages as a result of defendant Morris' intentional tort including anguish, emotional distress, and humiliation relating to her fear of losing her house and the risk of losing it to nonjudicial foreclosure.

## COUNT FIVE: FRAUD BY DEFENDANT JENNIFER DOBRON

88.    Plaintiff incorporates herein by reference as though fully set forth at length each and every preceding allegation and statement contained herein, inclusive, of the Factual Allegations.

89.    Defendant Jennifer Dobron committed common law fraud by signing the Assignment of Deed of Trust as assistant secretary of MERS. Dobron knew that even though she did not work for MERS, is not a real corporate officer of MERS, and did not have any personal knowledge of the matters she swore to in the Assignment, her signing of the

THIRD AMENDED COMPLAINT [MARKED UP
VERSION] - 36

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

document would enable defendant NWTS to conduct a nonjudicial foreclosure of Plaintiff's homestead. It was Dobron's intent, in signing the Assignment, that others would rely on her representations as truth and the intended effect would be reached.

90.     Defendant Dobron's acts made it possible for inaccurate or fraudulent documents to be recorded in the chain of title of Plaintiff's property. Defendant Dobron's acts started the chain of events that led to the initiation of foreclosure against Plaintiff's homestead by an entity other than the owner and holder of her mortgage loan and the promissory note she signed at closing. Plaintiff is entitled to consequential damages as a result of defendant Dobron's intentional tort including anguish, emotional distress, and humiliation relating to her fear of losing her house and the risk of losing it to nonjudicial foreclosure.

## COUNT SIX, VIOLATION OF TILA

91.     Plaintiff incorporates herein by reference as though fully set forth at length each and every preceding allegation and statement contained herein, inclusive, of the Factual Allegations.

92.     The Plaintiff's loan is a "federally related mortgage loan" as said term is defined by *12 C.F.R. § 1024.2(b)*. Cenlar does not qualify for the exception for "small servicers" as defined in *12 C.F.R. § 1026.41(e)(4)* or the exemption for a "qualified lender" as defined in *12 C.F.R. § 617.700*. Cenlar is subject to Truth in Lending, Regulation Z, as amended by the Consumer Financial Protection Bureau in 2013 with effective date of January 10, 2014.

93.     Cenlar sends out Periodic Statements for residential mortgages; these Periodic Statements are governed by *12 C.F.R. §1026.41*. Under the Regulation, the Periodic Statement must include, inter alia, amount due; explanation of amount due, and transaction activity.

THIRD AMENDED COMPLAINT [MARKED UP VERSION] - 37

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

*§1026.41(a)(1)* and *(2)*. In particular, subsection (d)(4) of the Regulation requires "A list of all the transaction activity that occurred since the last statement" and defines further "transaction activity means any activity that causes a credit or debit to the amount currently due. This list must include the date of the transaction, a brief description of the transaction, and the amount of the transaction for each activity on the list."

94.     Cenlar has mailed Plaintiff Period Statements dated January 16, 2014, January 21, 2014, February 24, 2014, March 17, 2014, March 24, 2014, April 21, 2014, May 21, 2014, June 16, 2014, June 23, 2014, July 23, 2014, August 18, 2014, August 20, 2014, and September 16, 2014, where the Overdue Amount has risen to $18,198.22[37], without complying with the specific enumerated sections of the Regulation.

95.     The Regulation further requires Cenlar to provide Plaintiff with a Delinquency Notice, once her loan is 45 days past due, that warns her of the date of delinquency, the risks associated with delinquency including foreclosure-the loss of her home and the total amount she needs to bring current her loan; the subject Periodic Statements sent by Cenlar do not provide Plaintiff with these specific warnings. Although Cenlar has sent Plaintiff separate Delinquency Notices, these Notices do not state, explain, or otherwise inform Plaintiff with how to resolve the rising Overdue Amount as required by the Regulation.

96.     Cenlar's failure to comply with the enumerated sections of Regulation Z give rises to liability for which Plaintiff can recover, in addition to actual damages, under *15 U.S.C. §1640 (a)(1), (2)(iv)* statutory damages in an amount no less than $400.00 and no more than $4,000.00, as well as attorney's fees and costs.

---

37 **Exhibit II**, Composite of Periodic Statements Cenlar sent to Plaintiff

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

## COUNT SEVEN, BREACH OF GOOD FAITH AND FAIR DEALING IMPLIED IN THE LOAN MODIFICATION AGREEMENT

97.     Plaintiff incorporates herein by reference as though fully set forth at length each and every preceding allegation and statement contained herein, inclusive, of the Factual Allegations.

98.     Plaintiff alleges that Cenlar's reference of "In keeping with Washington Law," as authority for the fees and costs charged to Plaintiff's mortgage loan account is misleading and deceptive because Cenlar does not cite to one or more provisions of the Revised Code of Washington in the letters it sent to Plaintiff. Furthermore, nothing in the loan documents or the Loan Modification Agreement provide for attorney's fees "in keeping with Washington Law" as claimed by Cenlar. Thus, there is no contractual or authority for Cenlar to impose attorney's fees and costs on a monthly basis thereby causing Plaintiff to be of delinquent status.

99.     Plaintiff alleges that Cenlar has violated the implied duty of good faith and fair dealing. The breach of the implied duty of good faith and fair dealing can occur even if all of the terms of the written contract have been fulfilled. *Metavante Corp. v. Emigrant Sav. Bank,* 619 F.3d 748, 766 (7th Cir. 2010), *cert. denied,* 131 S. Ct. 1784 (2011). Similarly, the California Supreme Court observed that the "breach of a specific provision of the contract is not a necessary prerequisite [to a breach of good faith and fair dealing claim]. Were it otherwise, the covenant would have no practical meaning, for any breach thereof would necessarily involve breach of some other term of the contract." *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.,* 2 Cal. 4th 342, 373, 826 P.2d 710, 6 Cal.Rptr.2d 467 (1992) (citation omitted).  Under Washington law, "[t]here is in every contract an implied duty of

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

good faith and fair dealing" that "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Badgett v. Sec. State Bank,* 116 Wn.2d 563, 569, 807 P.2d 356 (1991). In particular, the duty of good faith and fair dealing arises "when the contract gives one party discretionary authority to determine a contract term." *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.,* 86 Wn. App. 732, 738, 935 P.2d 628 (1997); *see Amoco Oil Co. v. Ervin,* 908 P.2d 493, 498 (Colo. 1995) ("The duty of good faith and fair dealing applies when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time."). When asked to apply Washington law in this area, the Ninth Circuit concluded that " [g]ood faith limits the authority of a party retaining discretion to interpret contract terms; it does not provide a blank check for that party to define terms however it chooses." *Scribner v. Worldcom, Inc.*, 249 F.3d 902, 910 (9th Cir. 2001). Accordingly, Cenlar breached the implied duty of good faith and fair dealing by unilaterally imposing attorney's fees and costs without any basis thereby causing the risk of breach/default by the Plaintiff.

## **COUNT EIGHT, TORT OF OUTRAGE**

100.    Plaintiff incorporates herein by reference as though fully set forth at length each and every preceding allegation and statement contained herein, inclusive, of the Factual Allegations.

101.    Plaintiff alleges that Cenlar's conduct in imposing attorney's fees and costs while this litigation is pending thereby causing her mortgage loan to be in delinquent or default status is deliberate and retaliatory, hence, it also constitutes the tort of outrage. The claim has three elements: (1) extreme and outrageous conduct; (2) intentional or reckless infliction of

THIRD AMENDED COMPLAINT [MARKED UP
VERSION] - 40

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

emotional distress; and (3) the plaintiff's severe emotional distress. *Robel v. Roundup Corp.,* 148 Wash.2nd 35, 51, 59 P.3d 611 (2002); *see also Dicomes v. State*, 113 Wash. 2d 612, 630, 782 P.2d 1002 (1989). This first element goes to the jury only if the court determines that reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability. Id.;  *Kloepfel v. Bokor*, 149 Wn.2d 192, 66 P.3d 630, 632 (2003). For behavior to meet the first prong it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and [] be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* Behavior consisting of "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" does not rise to the requisite level of offending behavior. *Id.*

102.    Here, Cenlar knew or should have known, through the history of this case that Plaintiff had expended tremendous time and money to obtain the loan modification. Additionally, Cenlar knew or should have known that Plaintiff was riding an emotional roller coaster as she did not know whether she could obtain said loan modification. Once Cenlar signed off on the loan modification, Plaintiff reasonably expected a financial fresh start. Cenlar's act of taking away the security recently gained by Plaintiff has affected her life in a real way substantially and not a trivial act. For a borrower who has suffered hardship and who had undergone the difficult process to cure her default and get a loan modification, the new agreement is her lifeline; Plaintiff is doing everything she can in her power to keep her mortgage payments current. Therefore, Cenlar's acts; imposing excessive "attorney fees and costs," sending monthly statements with large amounts being "due," and sending letters of delinquency, which are clearly designed to cause Plaintiff to be in default, to breach the loan

modification, and to potentially loose her home again, are beyond all possible bounds of decency. *Restatement (Second) of Torts* § 46, cmt. d, at 73;  *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753 (1970) (conduct was outrageous when a creditor engaged in a continuous campaign of harassment by calling its debtor several times, sending her numerous letters demanding payment of her debt, and informing her employer of the debt by asking how many garnishments the employer would allow from the debtor's salary); *Enriquez v. Countrywide Home Loans, FSB*, 814 F. Supp. 2d 1042, 1070 (D. Haw. 2011) (dismissing emotional distress claim arising from denied request to modify an allegedly predatory original loan, but dismissing with leave to amend, because it "would arguably be possible" to add facts to state such a claim); *Becker v. Wells Fargo Bank, NA, Inc.*, 2012 U.S. Dist. LEXIS 170729 (E.D. Cal. 2012) (even when court has doubt about the viability of plaintiff's intentional infliction of emotional distress claim, dismissal was inappropriate)

103.    Unlike the situation that Plaintiff was in before the loan modification was approved, Plaintiff's loan was restored to current status and she has been making her payments regularly. There is no delinquency other than the delinquency created or induced by Cenlar. Cenlar's relentless communications to Plaintiff about the rising attorney's fees and costs and the resulting delinquency status of her loan has caused Plaintiff anxiety, fear and distress over being in default of her loan; anger over her inquiries to Cenlar concerning the nature of the attorney's fees and costs have fallen on deaf ears, and helplessness as she feels that nothing, including the present lawsuit, would impress upon Cenlar's to do the "right thing."

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff prays for relief against Defendants as follows:

THIRD AMENDED COMPLAINT [MARKED UP VERSION] - 42

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- Jury trial;

- Declaratory judgment that Defendants' conduct violated FDCPA, RESPA, TILA, Washington Deeds of Trust Act, and the Washington Consumer Protection Act, CPA;

- Actual damages;

- Statutory damages pursuant to *15 U.S.C. § 1692k* and *§ 1681n-o*;

- Costs and reasonable attorney fees pursuant to 15 U.S.C. *§§ 1692k, § 1681n-o*, and the Washington Consumer Protection Act (*RCW 19.86*);

- Treble damages, plus attorney fees and costs, awardable under Washington Consumer Protection Act, RCW 19.86.090;

- Compensatory damages, including emotional distress, by the conduct of the Defendants in an amount to be fully proved at the time of trial;

- Exemplary damages under the Washington Consumer Protection Act;

- Considering how Plaintiff's damages are attributable to the different named defendants, and how the totality of Plaintiff's damages has yet to be ascertained due to the ongoing nature of the litigation, the individual and total amounts will be determined at trial;

- For such other and further relief as the Court may deem just and proper.

Dated this 8th day of December, 2014.


_____/s/ *Vicente Omar Barraza*_____
Vicente Omar Barraza, WSBA # 43589
Attorney for Plaintiff Leticia Lucero
BARRAZA LAW, PLLC


_____/s/ *John R. Laris*_____

THIRD AMENDED COMPLAINT [MARKED UP
VERSION] - 43

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

1
2
3
4

John R. Laris, WSBA # 44406
Attorney for Plaintiff Leticia Lucero
BARRAZA LAW, PLLC

5
6
7
8
9
10
11
12
13
14
15
16

_____ /s/ *Ha Thu Dao* _____
Ha Thu Dao, WSBA # 21793
Attorney for Plaintiff Leticia Lucero
GRAND CENTRAL LAW, PLLC
787 Maynard Ave S, Seattle WA 98104
727-269-9334/Fax 727-264-2447
youremylawyer@gmail.com

17

**DEMAND FOR JURY TRIAL**

18

Please take notice that Plaintiff Leticia Lucero demands trial by jury in this action.

19
20

Dated this 8th day of December, 2014

21
22
23

_____ /s/ *Vicente Omar Barraza* _____
Vicente Omar Barraza, WSBA # 43589
Attorney for Plaintiff Leticia Lucero
BARRAZA LAW, PLLC

24
25
26
27

_____ /s/ *John R. Laris* _____
John R. Laris, WSBA # 44406
Attorney for Plaintiff Leticia Lucero
BARRAZA LAW, PLLC

28
29
30
31

_____ /s/ *Ha Thu Dao* _____
Ha Thu Dao, WSBA # 21793
Attorney for Plaintiff Leticia Lucero
GRAND CENTRAL LAW, PLLC
787 Maynard Ave S, Seattle WA 98104

32

THIRD AMENDED COMPLAINT [MARKED UP
VERSION] - 44

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

727-269-9334/Fax 727-264-2447

youremylawyer@gmail.com

## DECLARATION

Leticia Lucero declares as follows:

I am the plaintiff in this matter.  I have reviewed this Third Amended Complaint and believe it true and accurate to the best of my knowledge.

**I declare under penalty of perjury of the laws of the State of Washington the foregoing is true and correct.**

DATED this 8th day of December, 2014, at Seattle, Washington.

_____

Leticia Lucero

THIRD AMENDED COMPLAINT [MARKED UP VERSION] - 45

BARRAZA LAW, PLLC
14249-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863