UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LETICIA LUCERO,

                Plaintiff,

      v.

CENLAR FSB, *et al.*,

                Defendants.

No. C13-0602RSL

ORDER GRANTING NWTS AND RCO LEGAL'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on "Defendants Northwest Trustee Services, Inc. and RCO Legal, P.S.'s Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56" (Dkt. # 110) and "Defendant Northwest Trust Services, Inc.'s Motion to Strike Portions of Plaintiff's Third Amended Complaint" (Dkt. # 187). Plaintiff filed a Third Amended Complaint after the issues were fully briefed: the Court has therefore considered defendants' arguments in the context of the most recent allegations and claims.[1]

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion"

---

[1] Plaintiff abandoned her claim under the Deed of Trust Act and, despite the arguments raised in her opposition memorandum, chose not to assert a claim for negligent misrepresentation.

(Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." Krechman v. County of Riverside, 723 F.3d 1104, 1109 (9th Cir. 2013). Although the Court must reserve for the jury genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. S. Cal. Darts Ass'n v. Zaffina, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor. FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties, the Court finds as follows:

**(1) Fair Debt Collection Practices Act ("FDCPA")**

Plaintiff's FDCPA claim against Northwest Trustee Services ("NWTS") was first asserted on October 30, 2013, more than a year after the offending debt collection activities occurred. The claim is therefore time-barred unless it satisfies the relation-back test. Pursuant to Fed. R. Civ. P. 15(c)(1), an amendment to a pleading relates back to the original document when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or

(C) the amendment changes the party . . . against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

    (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

    (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Plaintiff has not asserted or shown that a mistake concerning NWTS' identity had been made, nor has she attempted to explain why this defendant was not notified of the claim in the time provided by statute. The FDCPA claim against NWTS is therefore barred by the applicable statute of limitations.[2]

**(2) Washington Consumer Protection Act ("CPA")**

The Third Amended Complaint added new allegations in support of her CPA claim against NWTS and RCO Legal. Plaintiff now asserts that defendants violated the CPA by preparing, causing to be prepared, and/or recording materially false and unnecessary documents while the foreclosure was on hold for the sole purpose of increasing profits to themselves. TAC at ¶¶ 67-68 and 76.[3] Plaintiff continues to assert that it was also "unfair or

---

[2] Plaintiff has not substantiated her vague assertion of waiver where NWTS specifically pled the statute of limitations as a defense to the FDCPA claim. See Dkt. # 51 at 12.

[3] Plaintiff further alleges that the recording of unnecessary documents caused her harm because the costs associated with preparing and recording the documents were charged to plaintiff.

deceptive" for (a) NWTS to misdate recorded documents to give the false impression that Cenlar had actual possession of the promissory note and that NWTS therefore had the authority to conduct a non-judicial foreclosure (TAC at ¶¶ 72-73 and 75), (b) RCO Legal to produce two different Beneficiary Declarations (TAC at ¶ 77), (c) NWTS to identify Cenlar as the "creditor to whom the debt is owed" when Freddie Mac was the owner of the promissory note (TAC at ¶ 78), and (d) NWTS to charge plaintiff fees for services provided to Cenlar in its role as Cenlar's agent, rather than as the duly appointed successor trustee (TAC at ¶ 79-80). Not surprisingly, NWTS and RCO Legal address only the arguments raised in the Second Amended Complaint in their motion for summary judgment. Those arguments are considered below.

**(a) Misdating Recorded Documents to Give the False Impression that Cenlar was the "Holder" and NWTS had Authority to Conduct a Non-Judicial Foreclosure**

Plaintiff offers no evidence in support of its underlying assertion that Cenlar was not the holder of the promissory note at the time the Notice of Default was issued. She asserts, with no citation to evidence or case law, that "NWTS knew or should have known, by virtue of its reliance on the Deed of Trust, and the Note for its business as trustee, that Cenlar cannot be the Note Holder as that term is defined in the loan documents." Dkt. # 127 at 17. Under the Deed of Trust Act, the holder is the entity that has actual possession of the promissory note, either directly or through an agent. There is no reason why the loan servicer cannot also be the holder for purposes of the DTA. With regards to the definition of "Note Holder" in the Deed of Trust itself, Cenlar was the entity that was entitled to receive payments under the note. Plaintiff makes no attempt to show that referring to Cenlar as the holder was unfair or deceptive. Plaintiff's wholly conclusory arguments do not raise a genuine issue of material fact.

### (b) Production of Two Beneficiary Declarations

Plaintiff alleges that RCO Legal's production of multiple Beneficiary Declarations is an "unfair and deceptive" act. TAC at ¶ 77. The Court has already held that "[t]here is nothing magical or unique about the declaration: the beneficiary may declare that it is the beneficiary as many times as it wants, as long as it retains possession of the original note." Dkt. # 81 at 6. The fact that Cenlar repeatedly declared that it is the beneficiary for purposes of the DTA is not a misrepresentation or otherwise unfair.

In her opposition to the motion for summary judgment, plaintiff argues that NWTS engaged in an unfair or deceptive act when it prepared a form beneficiary declaration for Cenlar to sign without first assuring itself that Cenlar had possession of the promissory note. The Court previously noted that "given the manner in which the Beneficiary Declarations were generated, plaintiff may also be able to show that NWTS was not entitled to rely on the declarations for purposes of RCW 61.24.030(7)." Dkt. # 81 at 10. Plaintiff has abandoned her DTA claim, however, and in order to stave off summary judgment on her CPA claim, she must come forward with evidence from which a reasonable jury could conclude that NWTS committed an unfair or deceptive act which affected the public interest and caused injury. Defendants have shown that NWTS has a number of forms that it provides to its clients for use in non-judicial foreclosures in the State of Washington. One of these forms was the Beneficiary Declaration: NWTS provided a completed declaration for Cenlar's review on September 26, 2012. Cenlar did not make any changes or request revisions. For reasons unknown to NWTS, Cenlar executed the form document twice, once on October 5, 2012, and once on October 16, 2012. Plaintiff offers no evidence that would contradict NWTS' version of events or provide any law that would make NWTS "directly liable for the falsities represented within the Beneficiary Declarations" in these circumstances. Dkt. # 127 at 18. This portion of her CPA claim fails as a matter of law.

### (c) Identifying Cenlar as the "Creditor to Whom Debt is Owed"

In the Third Amended Complaint, plaintiff alleges that NWTS "misrepresented to the Plaintiff the entity with whom she should communicate . . . in order to resolve the issues of her mortgage loan." TAC at ¶ 78. Plaintiff was apparently deceived or confused because NWTS stated "that Cenlar was the creditor to whom the debt was owed" when it knew that Freddie Mac owned the promissory note. Id. Plaintiff makes no attempt to explain what was confusing or deceptive about the language used in the Notice of Default, however. Although the phrase "creditor to whom the debt was owed" is undefined, the document clearly identified Cenlar as the loan servicer (*i.e.*, the entity charged with collecting payments on the debt) and Freddie Mac as the owner of the loan. Dkt. # 127-2 at 4. Plaintiff apparently understood that Cenlar was the entity with whom she should communicate to resolve the default: she did so through the process provided by state law. Plaintiff has failed to show either an unfair or deceptive act or injury to business or property related to the representation that Cenlar was the "creditor to whom the debt was owed."

In response to the motion for summary judgment, plaintiff additionally asserts that it was unfair or deceptive of NWTS "to identify Freddie Mac as the owner of her Note without verifying the accuracy of such information." Dkt. # 127 at 16. Plaintiff does not, however, allege that Freddie Mac was not the owner of the note or provide any evidence from which one could draw such a conclusion. Plaintiff may not add a new claim in a memorandum, especially when she has already taken the opportunity to amend the complaint three times and has affirmatively pled "that Freddie Mac owned the note." TAC at ¶ 78. Finally, plaintiff has not shown that NWTS had an independent duty to investigate or confirm the information provided by its principal before issuing the Notice of Default. If NWTS were on notice that the information were faulty, there might be some obligation to inquire or refrain from affirmatively stating false information. As it is, however, there was no reason to suspect that anyone other

than Freddie Mac owned the beneficial interest in the note, and plaintiff has admitted as much.

**(d) Charging Plaintiff for Services Performed as Cenlar's Agent**

Plaintiff argues that it was unfair for NWTS to charge plaintiff a "Trustee Fee" when it had not yet been appointed as trustee. Dkt. # 127 at 15. The imposition of a reasonable fee for the preparation of the Notice of Default is permissible under both the Deed of Trust Act and the Deed of Trust plaintiff signed at closing. Plaintiff is not, therefore, challenging the imposition of a fee in the abstract or the reasonableness of the fee amount. It appears that this part of her CPA claim is based solely on the way the fee was characterized in the Notice of Default. Plaintiff alleges that, at the time the Notice of Default issued, NWTS was acting as Cenlar's agent, not as the Trustee, and that it was therefore deceptive to call it a "Trustee Fee" when it was really a fee charged by Cenlar (or its agent) under the Deed of Trust. See Dkt. # 9-2 at 14 (Section 22 of the Deed of Trust). Even if the label applied to the fee were inaccurate, plaintiff has not identified any material fact about which she was – or a substantial portion of the consuming public would be – deceived.[4] There is no ambiguity regarding the amount of the fee or the nature of the services rendered to earn that fee. Whether those services were performed in the role of Cenlar's agent or as the duly appointed successor trustee is immaterial.[5]

Even if the Court assumes that the label was in some way unfair or deceptive, plaintiff has not identified any injury to her business or property arising therefrom. The fee itself was appropriately levied and plaintiff has not challenged the amount. Plaintiff has not

---

[4] Despite arguing that "the question of what impact the NOD should have on Plaintiff as the recipient is one only Plaintiff can testify to" (Dkt. # 127 at 15), plaintiff does not cite to any deposition testimony or provide a declaration that creates a genuine issue of fact that would preclude summary judgment.

[5] To the extent plaintiff is arguing that the label "Trustee Fee" misled her into believing that NWTS had the authority to initiate a non-judicial foreclosure under the DTA, that argument has already been considered in Section 2(a).

alleged or shown that the mislabeling caused any additional injury. She was obligated to pay the reasonable expenses the servicer incurred in pursing the remedies set forth in the Deed of Trust: no additional costs or expenses were imposed based on the characterization of the fee.[6] This aspect of plaintiff's CPA claim therefore fails as a matter of law.

**(3) Motion to Strike**

Plaintiff's new CPA claim regarding the imposition of charges for the premature preparation and filing of unnecessary documents as a means of generating fees for defendants was not timely asserted. In October 2014, a year and a half after this action was filed, plaintiff moved for leave to amend her complaint for a third time. Dkt. # 134. The Court specifically authorized amendments to the RESPA and TILA claims against Cenlar and the FDCPA claim against Bayview, but rejected the other proposed amendments because plaintiff did not show that she was diligent in raising the new facts or pursuing the new causes of action in a timely manner. Dkt. # 169. Plaintiff has been aware of the relevant facts regarding the preparation, filing, and imposition of charges related to the Appointment of Successor Trustee and the Assignment of the Deed of Trust since she filed this action. The claim could have and should have been asserted earlier.

**(4) Liability of RCO Legal**

Because plaintiff has failed to raise a genuine issue of material fact regarding NWTS' conduct, plaintiff's attempt to hold RCO Legal liable as a conspirator or abetter fails. Plaintiff also argues that RCO Legal independently violated the CPA by developing a business model that processes "as many foreclosures as quickly and cheaply as possible." Dkt. # 126 at 14. One of the reasons the DTA was enacted was to provide an efficient and inexpensive

---

[6] Contrary to defendants' argument, there is evidence in the record that fees charged by NWTS were included in the reinstatement amount presented to plaintiff. Stenman Dep. Tr. (Dkt. # 126-4) at 54. Absent some indication that defendants thereafter waived the fee when negotiating a modification of the loan, a reasonable factfinder could conclude that the amount was added to the balance of plaintiff's loan.

-8-

method of foreclosure following default. <u>Plein v. Lackey</u>, 149 Wn.2d 214, 228 (2003). There is nothing inherently unfair about efficiency or cost effectiveness. Absent some indication that RCO Legal acted unfairly or deceptively in its own right, plaintiff's CPA claim fails.

For all of the foregoing reasons, defendants' motion for summary judgment (Dkt. # 110) and NWTS' motion to strike portions of the Third Amended Complaint (Dkt. # 187) are GRANTED. All claims against NWTS and RCO Legal are hereby DISMISSED.

Dated this 9th day of February, 2015.

*[signature]*
Robert S. Lasnik
United States District Judge