IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LETICIA LUCERO,<br><br>Plaintiff,<br><br>v.<br><br>BAYVIEW LOAN SERVICING, et al.,<br><br>Defendants | No. 2:13-CV-00602-RSL<br><br>DECLARATION OF<br>BERNARD JAY PATTERSON<br>IN SUPPORT OF PLAINTIFF'S<br>OPPOSITION TO SUMMARY<br>JUDGMENT |

### DECLARATION OF B. JAY PATTERSON, CFE

1. I, the undersigned, declare under penalty of perjury under the laws of Washington that the following statements are based on my personal knowledge and belief and that they are true and correct. My name is Bernard Jay Patterson, CFE, I am over the age of 18, and I am not a party of the above-style case.

2. I am the owner of Full Disclosure, LLC.

3. My business address is 646 Quapaw Ave., Hot Springs, Arkansas, 71901 and telephone number is 501-276-1108.

4. I have personal knowledge of the matters set forth in this Affidavit , and I am prepared to testify under oath about the matter set forth herein.

5. I am a Certified Fraud Examiner ("CFE") and forensic accountant. My Curriculum Vitae is attached as **Exhibit 1.**

6. I have specialized knowledge and experience in the forensic investigation, examination, and analysis of mortgage loans with special focus on loan servicing practices, accounting, securitization and document examination. I have practiced as a forensic accountant since 2007 and as a Certified Fraud Examiner since November 2009. I have testified and/or been admitted as an expert witness in a variety of jurisdictions, including state courts, federal courts (including the Eleventh Circuit), and legislative bodies around the country. I have developed

methodologies to be used in the examination of mortgage loan servicing transactions, securitization, loan delivery processes and procedures and document forensics.  I am nationally recognized in these areas and regularly teach attorneys, state attorneys general, county recorders, judges, and bankruptcy trustees concerning these subjects throughout the country.   My primary job function is to evaluate assertions made by others based on the evidence presented and discovered.  Thereafter, I report and testify as to my analyses and findings.  These investigations, examinations, and analyses include mortgage loan servicer accounting at the loan level and investor level, processes and procedures regarding the sale, transfer and conveyance of mortgage loan documents in the securitization process as well as the mortgage loan process in its entirety.

7.      A forensic accountant and auditor such as myself, must possess certain characteristics, including objectivity, independence, and uphold ethical standards.  More specifically, a forensic accountant and auditor must have adequate training and proficiency gained through formal education, continuing education and experience as well as staying current with the latest accounting, auditing, and industry pronouncements and developments.  My qualifications substantially meet and exceed these standards especially since my practice is limited to one particular industry segment.

8.      I am billing Ha Thu Dao, Esquire at my usual and customary rate of $200.00 per hour plus costs incurred.

9.   I have been hired by Ha Thu Dao, Esq. in connection with the above styled case. Specifically, I was hired by counsel to review documents, accounting records, computer   records   and pleadings in the case at hand.  Furthermore, I was hired by counsel to provide a       forensic accounting investigation, examination, and analysis of the mortgage loan    transactions     during the life of the subject loan and report my findings and conclusions.  **Specifically, at this time, counsel has requested I provide the court with my findings regarding any additional amounts charged to Plaintiff Leticia Lucero's mortgage loan account before and after she signed the loan modification in January 2013 that contains a specific "New Principal Balance**."

10.     I have reviewed various documents including the Home Affordable Modification Agreement or HAMP Agreement (**Exhibit 2**); Cenlar FSB's payment history provided by same as WFZ000063-WFZ000217 (**Exhibit 3);** Cenlar's Response to Notice of Error signed by Robert McNamara (**Exhibit 4**), and Cenlar's Response to Request for Information signed by Robert McNamara, without attachment (**Exhibit 5**) both dated October 22, 2014.

11.     Cenlar mortgage loan history shows, despite receipt of monthly payments in the amount of $1523.87 (plus late fees when applicable) in January, February, March of 2013, the Principal Balance remained unchanged at $365,806.13.

12.     Cenlar Mortgage Loan History shows **in March of 2013, the Principal Balance was increased to $406,380.50.**  The difference of $40,574.37 are attributed to $16,174.37 designed by Cenlar as "Adjustment-Principal/MOD" and $24,400.00 as "Adjustment-Principal/MOD." Although there is no breakdown provided by Cenlar within the Loan Modification Agreement, the Agreement does advise that "The modified principal balance of my Note will include all amounts and arrearages that will be pat due as of the Modification Effective Date (Including

unpaid and deferred interest, fees, escrow advances and other costs but excluding unpaid late fees, collectively, 'Unpaid Amounts') less any amounts paid to the Lender but not previously credited to my Loan." The Agreement also specifies that the contractual due date of the Loan was changed or reset from August 1, 2011 to March 1, 2013.

13.     The HAMP Agreement specifies that approximate $24,400.00 of this New Principal Balance will be interest-deferred and that **the "Interest Bearing Principal Balance" became $381,980.50.** In other words, the Plaintiff will be paying interests based on $381,980.50, effective March 1, 2013.

14.     Cenlar sent the Plaintiff two (2) letters both dated October 22, 2014. Letter #1 was a response to Plaintiff's Request for Information dated September 30, 2014 (**Exhibit 4**). Letter #2 was a response to Plaintiff's Notice of Error dated September 30, 2014 (**Exhibit 5**). Both of these letters were signed on the same date by Robert McNamara Service Excellent Administrator.

The unpaid principal balance shown in both letters is as follows:

Letter #1     $370,217.11
Letter #2     $395,155.92

These two amounts are not equal and contradict each other despite being verified and signed by the same person on the same day.

15.     Additionally, Cenlar's Payment History shows the following charges, which, in my experience, are those relating to nonjudicial foreclosure activities including title check or Trustee Sale Guarantee, Trustee's Fee, Recording Fees, Posting, Mailing, Publication Fees. These fees were charged to the loan account before the effective date of the modification, which was March 1, 2013. Since there was no breakdown of amounts capitalized in the Modification Agreement, I cannot determine if any of these amounts were included in the Modification or were charged as additional items of the loan account outside of the Modification.

| Date | Description | Amount |
|---|---|---:|
| 01/10/2013 | Property Preservation | 13.00 |
| 01/29/2013 | Property Preservation | 13.00 |
| 02/15/2013 | Attorney Advances | 437.50 |
| 02/15/2013 | Statutory Expenses | 1,008.00 |
| 02/28/2013 | Property Preservation | 13.00 |
|  | **TOTALS** | **$1,484.50** |

16.     Despite the terms of the HAMP Agreement that the New Principal Balance was inclusive of all arrearages, fees and costs, the following charges were added to the mortgage loan account:

| Date | Description | Amount |
|---|---|---:|
| 03/26/2013 | Unknown-Corporate Advance Disbursement | 5.00 |
| 05/17/2013 | Corporate Advance Disbursement | 477.75 |
| 06/28/2013 | Corporate Advance Disbursement | 400.00 |
| 11/25/2013 | Attorney Advances | 1,251.00 |
| 11/25/2013 | Statutory Expenses | 10.42 |
| 02/10/2014 | Attorney Advances | 5,877.00 |
| 02/10/2014 | Statutory Expenses | $8.21 |
| 03/25/2014 | Attorney Advances | 360.00 |
| 04/01/2014 | Attorney Advances | 8,652.50 |
| 04/11/2014 | Unknown-Corporate Advance Disbursement | 3.50 |
| 04/29/2014 | Attorney Advances | 306.00 |
| 07/01/2014 | Attorney Advances | 184.50 |
| 10/03/2014 | Attorney Advances | 8,687.50 |
| 10/024/2014 | Attorney Advances | 15,588.50 |
| 10/24/2014 | Statutory Expenses | 1,231.24 |
|  | **TOTALS** | **$43,043.12** |

17.     Lastly, since the Loan Modification was booked into Cenlar's system and the loan was current, the following funds paid by the Plaintiff were used to pay toward fees and costs advanced by Cenlar:

| Date | Description | Amount |
|---|---|---:|
| 02/25/2014 | Suspense transfer to Corporate Advance | 1.79 |
| 04/22/2014 | Suspense transfer to Corporate Advance | 58.63 |

18.     Based on my investigation, examination and analysis of the Cenlar's accounting transactions relating to the Plaintiff's mortgage loan, attorney fees and costs of over $43,000.00 were charged to the loan account after the Modification was in effect. Additionally, $1484.50 in property inspections and foreclosure fees and costs were charged to the loan before the Modification. Also, $60.42 in funds paid by the Plaintiff were used to pay for these expenses.

Signed and dated this 18th day of May, 2015.

/s/ Bernard Jay Patterson

_____
Bernard Jay Patterson, CFE

Declarant