Hon. Robert S. Lasnik

Noting Date: July 10, 2015

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| LETICIA LUCERO,<br><br>               Plaintiff,<br><br>vs.<br><br>CENLAR FSB and BAYVIEW LOAN SERVICING, LLC,<br><br>     Defendants. | No. 2:13-cv-00602-RSL<br><br>PLAINTIFF'S OPPOSITION TO CENLAR'S MOTION FOR SUMMARY JUDGMENT AGAINST CENLAR FSB<br>Noting Date: July 10, 2015 |

## LIABILITY IS ADMITTED AND SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF PLAINTIFF

By way of background, the Court has earlier dismissed Plaintiff's claims for damages under the Deed of Trust Act was dismissed earlier pursuant to *Lyons v. U.S. Bank*, 181 Wn.2d 775, 336 P.3d 1142 (2014).[1] Therefore, Cenlar's substantial discussion on the issues of who had authority to foreclosure, who owns the Loan and who held the Note at which time, is irrelevant as these questions have been rendered moot by the Court's prior disposition.  What remain are motion and cross-motion for summary judgment by Defendant Cenlar and Plaintiff. Subject of the motions is Cenlar's liability under Breach of Contract, Breach of Good Faith and Fair Dealing, Violations of RESPA, TILA, FDCPA, Violation of WACPA and the tort of outrage. The evidence before the Court are sufficient to warrant summary judgment in favor of the

---

[1] Dkt.#118.

PLAINTIFF'S OPPOSITION TO CENLAR'S
MOTION FOR SUMMARY JUDGMENT
No. 2:13-cv-00602-RSL

BARRAZA LAW, PLLC
14245-F Ambaum Blvd SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 1 -

Plaintiff because Cenlar has, by its own evidence, conceded liability under these specific causes of action.

Plaintiff relies for support of her Opposition, all Declarations, Exhibits to Declarations, and Exhibits attached hereto, as well as all materials she previously submitted in support of her cross-motion for Partial Summary Judgment filed on June 10, 2015, under Dkt.# 227, 228, 229.

## FACTS

### Plaintiff sued Cenlar for inaccurate credit reporting

In the early part of 2013, Plaintiff was unable to obtain a car loan because her credit showed that "foreclosure proceeding started $51,993 past due as of February 2013."[2] During this time, Plaintiff had been making payments under a permanent HAMP Modification to defendant Cenlar for several months. As a result, Plaintiff filed the instant lawsuit in order to set straight the status of her mortgage Loan.[3] Cenlar has admitted that the Loan is a Freddie Mac Loan. It concedes the reporting of the Loan as under foreclosure but explained that it did so because foreclosure was initiated. A system note provided by the foreclosing agent, NWTS, shows that the foreclosure was placed on hold, or suspended, as early as October of 2012.[4]  Cenlar has admitted to reporting the Loan at a time Plaintiff was making modified payments but justified its action on the ground that Plaintiff was not current on her "regular payments."[5] What Cenlar referred to as "regular payments" must have been payments under the original loan for which Plaintiff could not pay and for which Plaintiff sought modification.

---

2 **Exhibit 1,** Experian Report, Page 3 of 18.
3 Plaintiff Decl.
4 **Exhibit 2,** System Note Written by Andrew Connor.
5 Francine Bryant Decl., Dkt.# 217, ¶34

PLAINTIFF'S OPPOSITION TO CENLAR'S                    BARRAZA LAW, PLLC
MOTION FOR SUMMARY JUDGMENT                    14245-F Ambaum Blvd SW
No. 2:13-cv-00602-RSL                                   Burien, WA 98166
                                           206-933-7861 Fax 206-933-7863

Shortly after the lawsuit was filed, around November of 2013, Cenlar began to assess a huge amount of "attorney fees" against the Loan. Cenlar advised Plaintiff in three separate letters dated December 4, 2013, April 1, 2014, and May 1, 2014, that the attorney fees were assessed "In keeping with Washington Law." Cenlar also sent Plaintiff Delinquent Notices threatening negative reporting to credit bureaus. Despite its declaration that Washington Law was the source of the authority for assessing attorney fees, Cenlar never provided Plaintiff with any citation of Washington law within the same correspondence.[6]

Having serious concerns over the enormous amounts of attorney fees being assessed each month, Plaintiff issued a QWR dated December 29, 2013, and a Request for Information ("RFI") and Notice of Error ("NOE") both dated March 25, 2014, asking specifically for the legal authority supporting Cenlar's assessment of attorney fees to her account as well as itemization for the fees incurred.[7] Through its counsel, Cenlar responded to these RESPA requests in a letter dated June 18, 2014. This formal response authored by Renee Parker, Esq., also failed to provide citation to any Washington Law being that relied upon by Cenlar.[8] Rather, counsel advised that Plaintiff's DOT and Note allow Cenlar to charge the attorney fees it has incurred in the instant litigation.[9] Consistent with Cenlar's assertion, before the Court for consideration is the Declaration by Cenlar's Second Vice President, Francine Bryant, where she

---

6 **Exhibit 3**, Letters "In keeping with Washington Law" and Delinquent Notices; Plaintiff Decl.
7 Plaintiff Decl.
8 **Exhibit 4**, June 18, 2014 Response by Renee Parker dated June 18, 2014.
9 Id.

PLAINTIFF'S OPPOSITION TO CENLAR'S                    BARRAZA LAW, PLLC
MOTION FOR SUMMARY JUDGMENT                    14245-F Ambaum Blvd SW
No. 2:13-cv-00602-RSL                                          Burien, WA 98166
                                                          206-933-7861 Fax 206-933-7863

declared under penalty of perjury that Cenlar derived its authority to charge attorney fees from paragraph 9 of the Deed of Trust ("DOT") that Plaintiff signed at closing.[10]

Cenlar has admitted that as servicer of the Loan, its authority is limited to the "collecting payments from borrowers, communicating with borrowers, assisting distressed borrowers with foreclosure alternatives such as workout agreements, modifications, etc. and foreclosing on delinquent non-performing loans." [11] Foreclosure proceeding upon Plaintiff's home was suspended or put on hold as of October 2013.[12] Even though there was no foreclosure, Cenlar began to assess attorney fees in November of 2013. Giving the suspension of foreclosure in November of 2012 and the closing of foreclosure file in February of 2013, the fees assessed could not have been in relation to the enforcement of the DOT.

According to Ms. Bryant, on one hand, Cenlar thought or believed that it was entitled to assess the fees it have incurred in defending against Plaintiff's lawsuit pursuant to paragraph ¶9 of the DOT. [13] On the other hand, Cenlar thought that the fees assessment was appropriate because "the investor was entitled as a matter of law."[14] Regardless of these (conflicting beliefs), Cenlar has admitted that it finally "stopped including them fees under 'Amount Due' column [of the Periodic Statement]."[15] Despite Cenlar's feigned confusion about whether the attorney fees could be construed as relating to foreclosure, the evidence before the Court is undisputed which is the fees assessed are the fees Cenlar has incurred in defending against

---

10 Dkt. #217, ¶40.
11 Id. at ¶13.
12 **Exhibit 2**, System Note by Andrew Connor placing foreclosure on hold.
13 Dkt. #217, ¶41.
14 Id.
15 Id.

PLAINTIFF'S OPPOSITION TO CENLAR'S
MOTION FOR SUMMARY JUDGMENT
No. 2:13-cv-00602-RSL

BARRAZA LAW, PLLC
14245-F Ambaum Blvd SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 4 -

Plaintiff's lawsuit and not to advance or promote the interest of Freddie Mac as the owner-investor of Plaintiff's Loan.

Cenlar has admitted receipt of Plaintiff's December 29, 2013 QWR. Cenlar has similarly admitted receiving Plaintiff's RFI and NOE dated March 25, 2014. Cenlar contended that Cenlar responded to all of these requests by way of a final written correspondence issued by its counsel, dated June 18, 2014, which is well past the time allowed for by the Statute.[16]

Cenlar has admitted to sending Plaintiff a number of Periodic Statements within which the rising assessed fees appeared under "Amount Due." Cenlar has also attached these Periodic Statements to Ms. Bryant's Declaration in support of its Motion for Summary Judgment. [17] Ms. Bryant swore under penalty of perjury that "As a result of the Modification, the Loan was successfully modified on March 1, 2013, and Plaintiff's account was brought current." Ms. Bryant further swore that "Plaintiff made her modified payments to Cenlar and that her account was current, with her next payment due on April 1, 2015."[18] Plaintiff has in her possession additional Periodic Statements and noted that later on, in October and November of 2014, Cenlar no longer added the attorney fees to the Amount Due, but continued to include them within the Periodic Statement.[19] The total assessed attorney fees as contained within Cenlar's Periodic Statements is approximately $20,000.00.

The servicing of Plaintiff's Loan had been recently transferred again to Nationstar. When Plaintiff obtained her Loan History from Nationstar, the Loan History continues to show an

---

16 Dkt. #217, ¶¶45-47; **Exhibit 4,** Renee Parker Response of June 18, 2014.
17 Id. at ¶41, Dkt.# 218 or Exhibit Q to Bryant's Decl..
18 Id. at 32.
19 Plaintiff Decl., ¶¶10-13.

PLAINTIFF'S OPPOSITION TO CENLAR'S
MOTION FOR SUMMARY JUDGMENT
No. 2:13-cv-00602-RSL

BARRAZA LAW, PLLC
14245-F Ambaum Blvd SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 5 -

amount of $26,763.00 under the category or label of "Previous Servicer Advance." The Loan

History also shows an amount of $26,724.00 designated as "ZZLGA-CORPORATE

ADVANCE LEGAL FEE."[20] This amount is currently unresolved.

Cenlar produced in discovery the Freddie Mac Guideline that is applicable to its servicing

of Plaintiff's Loan on behalf of Freddie Mac.[21] This Guideline contains a schedule of fees that

the GSE would reimburse its servicers for mediation, foreclosure and bankruptcy. In

Washington, the approved trustee fee/attorney fee for nonjudicial foreclosure in the applicable

year of 2012-2013 was $1000.00. Under the category of Non-reimbursable Expenses, Freddie

Mac specifies that it would not reimburse "**Fees or service charges billed by a law firm**, or

any entities the firm relies upon to provide third-party support functions **performed on the**

**Servicer's behalf that are in excess of or in addition to permissible amounts**." Under

"Exception(s)" for this category, Freddie Mac specified "None-the cost for any services in

connection with a foreclosure or other legal actions is included in the reimbursable attorney

fees listed in Guide Exhibit 57A, *Approved Attorney Fees and Title Expenses.*" [22]

## LEGAL ANALYSIS

Plaintiff's causes of action are factually and logically related: where Cenlar did not have

any authority to assess its defense costs to Plaintiff's mortgage loan account, Cenlar's act of

doing so, breached the HAMP Modification Agreement to which Cenlar signed as a party on

behalf of Freddie Mac, the duty of good faith and fair dealing associated with the same

---

20 Plaintiff Decl., ¶15.
21 Dao Decl., **Exhibit 5**, Excerpts of Freddie Mac's 1-4 Unit Property Approved Expense Amounts produced by Cenlar.
22 Id., **Exhibit 5**, Excerpts relating to Non-Reimbursable Expenses.

PLAINTIFF'S OPPOSITION TO CENLAR'S          BARRAZA LAW, PLLC
MOTION FOR SUMMARY JUDGMENT              14245-F Ambaum Blvd SW
No. 2:13-cv-00602-RSL                         Burien, WA 98166
                                    206-933-7861 Fax 206-933-7863

contract. Cenlar's act of transmitting communications demanding payments of these fees from Plaintiff as if they were owed under the Loan is both unfair and deceptive, and violated WACPA as well as RESPA, TILA, and FDCPA. Thus, where Cenlar acknowledges that its authority to assess attorney fees was doubtful but went ahead and terrorized Plaintiff for an entire year with the unlawful fees, such conduct is sufficiently outrageous to go before the jury. Summary judgment on the issue of liability should be granted by the Court in favor of the Plaintiff.

**Breach of Contract and the Duty of Good Faith and Fair Dealing**

It is undisputed that Cenlar, as the signatory of the HAMP Modification, has breached the same by assessing additional attorney fees and costs to Plaintiff's Loan as if the Loan was in default when it was in fact current at all times. If there was no default then there was no need to enforce the DOT and Cenlar's claim that the fees were incurred based on the need to interpret the terms of the Deed of Trust is just not genuine.

This Court's earlier ruling that the fees have been incurred by Cenlar in its own defense against misconduct alleged by the Plaintiff, rather than relating to the enforcement of the security interest, continues to be binding for purposes of the pending motions for summary judgment:

> Cenlar is apparently billing plaintiff for the attorney's fees it is incurring while litigating this case. Cenlar argues that the original Deed of Trust authorizes the charges: paragraph 26 of the document allows the Lender to recover reasonable attorney's fees in any action in which the deed is construed or enforced. Dkt. # 32-1 at 136. The charges and the justification therefore are dubious. **Even if the Court were to assume that Cenlar is the "Lender" for purposes of fee provision, fee recovery is authorized only "in" an action or proceeding, not at the unrestrained whim of the servicer and without any check on the reasonableness of the fees charged.**

PLAINTIFF'S OPPOSITION TO CENLAR'S
MOTION FOR SUMMARY JUDGMENT
No. 2:13-cv-00602-RSL

BARRAZA LAW, PLLC
14245-F Ambaum Blvd SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 7 -

(Dkt. #118, p. 12).

The Court's ruling is binding upon Cenlar because Cenlar has conceded that the fees were incurred in its defense against Plaintiff's lawsuit and not to enforce the security instrument.[23] Given the fact that the HAMP Modification reset Plaintiff's Principal Balance there was no longer any need to interpret the DOT or to enforce the Security Instrument, Cenlar's claim that the fees assessment was made for the benefit or protection of Freddie Mac as the Lender-Investor is not credible; liability for breach of contract is established.

Cenlar also breached the implied duty of good faith and fair dealing by sabotaging Plaintiff's success in repaying the Loan under the modified terms. It is undisputed that the terms of the HAMP modification was based on Cenlar's consideration of Plaintiff's financial and personal information using a specific formula. Since the Modification was made to allow Plaintiff to make affordable monthly payments toward her mortgage loan, Cenlar's unilateral imposition of enormous amounts of attorney fees, declaration of the Loan as delinquent without a legal basis, and failure to explain to Plaintiff how to cure the purported delinquency, violated the duty of good faith and fair dealing. *Rekhter v. Dept. of Soc. & Health Servs*., 180 Wn.2d 102, 323 P.3d 1036 (2014) (The duty arises when one party has discretion to select the formula or method being used to derive at a particular in the contract)*; see also, Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356 (1991); *Aventa Learning, Inc. v. K12, Inc.,* 830 F. Supp. 2d 1083 (W.D. Wash. 2011). "There is no one-size-fits-all definition of good faith and fair dealing. Rather, the duty varies somewhat with the context in which it arises. One may

---

23 **Exhibit 4,** Renee Parker Response of June 18, 2014, Dkt. #217, ¶40.

violate the duty of good faith and fair dealing by, for example, (1) evading the spirit of a

bargain; (2) willfully rendering imperfect performance; (3) interfering with or failing to

cooperate in the other party's performance; (4) abusing discretion granted under the contract; or

(5) performing the contract without diligence." *Microsoft Corp. v. Motorola, Inc.,* 963

F.Supp.2d 1176 (W.D.Wash. 2013). Cenlar's conduct toward Plaintiff meets all of these

factors. The power disparity did not this Court's attention when it held:

> Given that the loan modification agreement was intended to restructure the
> debt so that plaintiff could continue to make the payments and retain her
> home, the unpredictable and significant levies Cenlar has unilaterally imposed
> on her account clearly thwart the benefits plaintiff hoped to receive from the
> agreement."

(Dkt. #118).

In addition to the breach of contract, the enumerated statutory violations by Cenlar can

constitute the breach of the duty of good faith. While a breach of a duty imposed by statute

does not create an action on a contract, the duty of good faith is violated when the breach is

also a statutory violation because holding otherwise "would neither protect the reasonable

expectations of contracting parties nor encourage parties to obey the law." *Rekhter at* 116.

**Cenlar violated RESPA by failing to respond to QWR, RFI and NOE timely and fully**

Under RESPA, Cenlar was required to acknowledge receipt of a QWR within twenty

days and to respond within sixty days. §2605(e). *Marais v. Chase Home Fin., LLC*, 24

F.Supp.3d 712 (2014); *Vega v. First Fed. Sav. & Loan Ass'n of Detroit,* 622 F.2d 918, 923 (6th

Cir. 1980). It is undisputed that Plaintiff issued a QWR dated December 29, 2013, to Cenlar

whereupon she specified: "I am in receipt of your correspondence dated December 4, 2013,

PLAINTIFF'S OPPOSITION TO CENLAR'S
MOTION FOR SUMMARY JUDGMENT
No. 2:13-cv-00602-RSL

BARRAZA LAW, PLLC
14245-F Ambaum Blvd SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 9 -

wherein you bill me for attorney fees paid November 25, 2013. I do not owe you attorney fees." Plaintiff requested "an itemization" of nine (9) separate categories including "A detailed accounting of the account(s) associated with the above referenced loan including all funds paid and disbursed from said account(s)" as well as an "accounting of any late fees charged, inspection fees, Administrative Fees/Costs." *One hundred and seventy one days* after Plaintiff issued the QWR, Renee Parker, Esq., Cenlar's counsel of record in the instant litigation, wrote on June 18, 2014, and responded only to those attorney fees incurred on November 25, 2013 as having been "incurred in litigation."[24]This Response was inadequate and violated RESPA.

There is no question that Cenlar is subject to RESPA as an entity that offers services on "federally related mortgage loans." See 12 U.S.C.§ 2605. Of significance to the instant matter, the Act requires the servicer of a federally regulated mortgage loan to provide borrowers with a timely written response to a QWR. 12 U.S.C. §2605. If the servicer fails to adequately respond to a QWR, RESPA entitles the borrower to recover actual damages. In this case, it is clear that there was a substantial delay in Cenlar's response to Plaintiff's QWR. Given the fact that Ms. Parker knew, or should have known all along that the Fees were relating to Cenlar's defense against the Plaintiff's lawsuit, and not to the enforcement of the Note, Deed of Trust, or Loan Modification, the delay was unjustified. Moreover, Cenlar's belated defense that the QWR was sent to the wrong address is of no consequence because Cenlar did in fact respond to the December QWR and failed to raise any objection.

---

24 **Exhibit 4.** Renee Parker Response of June 18, 2014.

PLAINTIFF'S OPPOSITION TO CENLAR'S
MOTION FOR SUMMARY JUDGMENT
No. 2:13-cv-00602-RSL

BARRAZA LAW, PLLC
14245-F Ambaum Blvd SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 10 -

Between November 25, 2013 and June 18, 2014, when Ms. Parker provided the Final Response to Plaintiff's QWR, Plaintiff had incurred approximately $18,000.00 in Attorney's Fees; the incurred attorney fees constitute her actual damages.[25] In *Marais, supra*., the court held that damages had resulted from the deficient respond to QWR by Chase Bank because:

> "If the principal goes up, the proportion of interest in each payment goes up (though the total payment amount remains the same). If that goes down, the reverse is true. If Chase had responded to the QWR by correcting Marais' account (still assuming that it needed correction), the payments Marais made prior to ceasing performance in 2010 would have been corrected, allocated to their rightful place, and thus would have remained payments. However, because Chase did not correct Marais' account and this lawsuit had to be filed, those misapportioned payments, in this hypothetical, are no longer payments — they are, to the extent they were misapportioned, damages."

*Marais, supra.*

Plaintiff has requested the assistance of Bernard Jay Patterson to determine how her ongoing mortgage payments have influenced the Loan balance. Mr. Patterson's Declaration, which was submitted in support of Plaintiff's cross-motion for summary judgment, has proven that despite the provision of the HAMP Modification resetting Plaintiff's Loan to a New Principal Balance, there were substantial charges, including attorney's fees and costs added to the Loan post modification.[26]

Cenlar's argument despite the assessment and demand made, Plaintiff has yet to pay the Fees and thus there are no resulting damages. However, courts around the nation have slowly come to recognize that actual damages, including emotion distress, can result from abusive

---

25 Between Plaintiff's QWR in December of 2013 and Ms. Parker's Final Response in June of 2014, the Periodic Statement dated June 16, 2014 shows a "Total Amount Due" of $19,544.10 from which nearly $18,000.00 is "Overdue" based on the Fees Cenlar has charged the Loan.
26 Bernard Jay Patterson Decl., Dkt. #229.

PLAINTIFF'S OPPOSITION TO CENLAR'S                    BARRAZA LAW, PLLC
MOTION FOR SUMMARY JUDGMENT                       14245-F Ambaum Blvd SW
No. 2:13-cv-00602-RSL                                      Burien, WA 98166
                                                   206-933-7861 Fax 206-933-7863

servicing practices. *Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419, 424-25 (6th Cir. 2013) (holding that a plaintiff who alleged amorphous "damages in an amount not yet ascertained, to be proven at trial" could satisfy the actual damages element); *Houston v. U.S. Bank Home Mortg. Wis. Servicing*, 505 F. App'x 543, 548 n.6 (6th Cir. 2013) (holding that even emotional damages could constitute "actual damages" for purposes of § 2605(f)(1)(A)). If Cenlar did not have the intention to collect the fees from Plaintiff, Cenlar had never made that intention known. Therefore, it is cruel for Cenlar to assert that it sent Plaintiff communication and Periodic Statements for a whole year declaring her owing tens of thousands and threatening to report the delinquency to the credit bureaus as a practical joke.

Cenlar's belated defense that Plaintiff's RESPA's requests were impermissible because they were made during active litigation is nonsensical. First, there is no litigation exemption under the Regulations. Second, the requests were properly addressed to Cenlar's counsel and were not directed to Cenlar as a represented party so there is no violation of the rule concerning service on a represented party. Third, had counsel preferred to produce the information within the context of formal discovery, they should have voiced their objection and demanded that Plaintiff do so. Since these competent lawyers did not raise any objection, but went ahead to respond to Plaintiff's inquiries, they have waived any objection. The issue is now moot, and there is no resulting prejudice from Plaintiff's issuance of the RESPA requests.

Concerning Plaintiff's claim that Cenlar failed to respond to her RFI and NOE issued in March of 2014, earlier in this litigation, in consideration of Cenlar's motion to dismiss, this Court rejected Cenlar's defense that no response was necessary because the requested

PLAINTIFF'S OPPOSITION TO CENLAR'S
MOTION FOR SUMMARY JUDGMENT
No. 2:13-cv-00602-RSL

BARRAZA LAW, PLLC
14245-F Ambaum Blvd SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 12 -

information was duplicative of information plaintiff requested in December 2013. The Court's

holding is binding upon Cenlar for purposes of the impending motions:

> Cenlar's obligations under Regulation X cannot be so lightly cast aside. A
> notice of error or request for information would be considered duplicative
> only if Cenlar had previously complied with the disclosure and response
> requirements of 12 C.F.R. § 1024.35(d) and (e) and 12 C.F.R. § 1024.36(c)
> and (d). The Court assumes, for purposes of this motion, that responding to an
> earlier qualified written request could satisfy the "previously complied"
> requirements. **Nevertheless, the requests were not duplicative and there
> was no previous compliance. The time periods involved in the two
> inquiries were distinct, and Cenlar did not substantively respond to the
> attorney fee issue when it was raised in December 29, 2013**. The last
> communication from Cenlar simply requested another extension of time in
> which to investigate the attorney's fees and costs levied in November 2013.
> No further response is in evidence. The March 2014 inquiries involved
> subsequent charges levied and payments made. **Even if there had been a
> temporal overlap, Cenlar's failure to respond to the first request for
> information cannot justify a refusal to respond to the second request on
> the grounds that it was "duplicative."**

(Dkt. # 118, pp. 9-10).

In addition to Cenlar's failure to respond to Plaintiff's QWR in a timely and complete

manner, Cenlar subsequently disregarded Plaintiff's RFI and NOE. Neither Ms. Bryant nor Ms.

Parker explained why the Final Response of June 18, 2014 only addressed a handful of fees

assessed in November of 2013 and not the rest of the fees, which were ongoing.  Cenlar's

collective failure to comply with statutory mandate of RESPA proves a pattern or practice of

willful noncompliance with the requirements of RESPA. As such, Plaintiff is entitled to

statutory damages in an amount to be determined at trial. *McLean v. GMAC Mortg. Corp.*, 585

F. Supp. 2d 1360, 1365 (S.D. Fla. 2009) (finding "pattern or practice" in § 2605(f) means "a

standard or routine way of operating"). *Eveillard v. Nationstar* 2015 U.S. Dist. LEXIS 31877

(and, if there is a "pattern or practice of noncompliance," statutory damages of up to $2,000. 12

PLAINTIFF'S OPPOSITION TO CENLAR'S
MOTION FOR SUMMARY JUDGMENT
No. 2:13-cv-00602-RSL

BARRAZA LAW, PLLC
14245-F Ambaum Blvd SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 13 -

U.S.C. § 2605(f)). Because RESPA is a remedial statute, this Court should construe it broadly to effectuate its purposes. *Carter v. Welles-Bowen Realty, Inc.*, 553 F.3d 979, 985-86, n.5 (6th Cir. 2009); *see also Medrano*, 704 F.3d at 665-66 (citations omitted) (internal quotation marks omitted).

## Violation of TILA

The Truth in Lending Act (TILA) was enacted with the broad purpose of promoting the "informed use of credit" by assuring "meaningful disclosure of credit terms to consumers." 15 U.S.C.S. § 1601. Given expansive authority by Congress, the Federal Reserve Board has promulgated a series of regulations known as "Regulation Z" which set forth most of TILA's specific requirements. Under Regulation Z, a mortgage lender is required to provide to the consumer a statement for each billing cycle setting forth the amount due, the payment due date, the amount of any late fees, and various other requirements. 12 C.F.R. § 1026.41(a)(2). The purpose of TILA is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, **and to protect the consumer against inaccurate and unfair credit billing and credit card practices**." 15 U.S.C. § 1601, *emphasis added*.

"TILA creates a private cause of action for actual and statutory damages for certain disclosure violations, 15 U.S.C. § 1640(a)." *Khan v. Bank of N.Y. Mellon,* 849 F. Supp. 2d 1377, 1378 (S.D. Fla. 2012); *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 707 (11th Cir. 1998) ("TILA is a consumer protection statute, and as such must be construed liberally in order to best serve Congress' intent."). Cenlar's conduct is governed by TILA pursuant to 15 U.S.C. §§1640(a), 1641(a).

PLAINTIFF'S OPPOSITION TO CENLAR'S
MOTION FOR SUMMARY JUDGMENT
No. 2:13-cv-00602-RSL

BARRAZA LAW, PLLC
14245-F Ambaum Blvd SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 14 -

Cenlar has admitted to mailing, and Plaintiff is in receipt of, a number of Periodic Statements on the Loan ("PS"), which is a closed-end consumer credit transaction. These PS are dated January 16, 2014, January 21, 2014, February 18, 2014, February 24, 2014,March 17, 2014, March 24, 2014, April 16, 2014, April 21, 2014, May 16, 2014,  May 21, 2014, June 16, 2014, June 23, 2014, July 16, 2014, July 23, 2014, August 18, 2014, August 20, 2014, September 16, 2014, October 16, 2014 and November 4, 2014,  respectively.[27] In the interest of brevity, Plaintiff refers the Court to her cross-motion for summary judgment in which she has listed and addressed the deficiencies represented by the PS she received from Cenlar in greater details.

The PS sent by Cenlar on Plaintiff's account where the Amount Due/Overdue varied so widely and where the assessed fees had risen to over $19,000.00, did not provide Plaintiff with accurate information about her loan whatsoever as they could not be deciphered under basic mathematics and standard accounting. These statements were unfair because they have caused Plaintiff uncertainties, confusion, and anguish. The objectives of the Regulation, which is to provide Plaintiff with accurate and fair credit information were not met by these statements. Therefore, Cenlar's PS violated the enumerated sections of the Regulation including §1026.41 et.seq.

15 U.S.C.S. § 1641(a) creates a private right of action for "any violation" of its provisions, which includes violation of Regulation Z, promulgated pursuant to 15 U.S.C.S. § 1639(l)(2)(A). The right to a private cause of action entitles the borrower to recover actual

---

27 Plaintiff Decl., Attachment B.

damages as well as statutory damages of no less than $400 and no more than $4000. *Id.* It is

undisputed that Cenlar signed the Modification as a Lender in March of 2013 and Cenlar

issued the PS as well as Delinquent Notices and Letters in its own name. Additionally, Cenlar

became assignee by virtue of the MERS Assignment appearing in the public records under

Recording No. 20121206002349. Cenlar therefore is liable to Plaintiff for post-assignment

violations of TILA described herein as a creditor or assignee of the Loan pursuant to §1641.

*Lucien v. Fannie Mae*, 21 F.Supp.3d  1379 (S.D.Fla. 2014); *Hamilton v. Fed. Home Loan*

*Mortg. Corp.,* 2014 U.S.Dist. LEXIS 128441 (D.Me.2014).   The statutory recovery of $400-

$4000 is presumed to apply to each occurrence or violation. Where Cenlar has issued

numerous PS and Delinquent Notices and Letters between February and November of 2013,

each issuance is a separate violation; the total amount of statutory damages is to be determined

by the jury at trial.

   The central dispute of this litigation is Cenlar's imposition of rising amount of Attorney

Fees and recurring announcement of delinquent status without readily and candidly disclosing

to Plaintiff either source authority or the treatment of such Fees.  This Court has aptly observed

that such act is arbitrary, vindictive and impermissible under law:

> Plaintiff's allegations plausibly establish that what started out as a fairly
> standard mortgage case has morphed into a vendetta in which the mortgage
> servicing company, piqued that the borrower had the temerity to sue
> defendants and challenge the way they do business, has latched onto a strained
> and dubious interpretation of the deed of trust in order to punish her. **Plaintiff,**
> **having just gone through the mortgage modification process, is in no**
> **position to deal with monthly payments that bounce all over the place,**
> **sometimes tripling her regular mortgage payment. Cenlar is intimately**
> **familiar with plaintiff's finances and is undoubtedly aware that such**
> **charges are beyond her ability to pay. With no ability to control the**
> **charges and, until now, no explanation for why it was happening, plaintiff**

PLAINTIFF'S OPPOSITION TO CENLAR'S     BARRAZA LAW, PLLC
MOTION FOR SUMMARY JUDGMENT      14245-F Ambaum Blvd SW
No. 2:13-cv-00602-RSL         Burien, WA 98166
               206-933-7861 Fax 206-933-7863

**fell delinquent within a matter of months, raising the specter of another foreclosure and, not surprisingly, causing severe emotional distress.** Cenlar's message is crystal clear: continue with this litigation and risk losing your home.

(Dkt. #118), *emphasis added*.

Cenlar's act of imposing fees on Plaintiff violates the Regulation on its face as well as the underlying principles of the Regulation:

> The Bureau believes that servicers should not impose fees on borrowers that are not bona fide – that is, fees that a servicer does not have a reasonable basis to impose upon a borrower. Examples of non-bona fide charges include such common sense errors as late fees for payments that were not late, default property management fees for borrowers that are not in a delinquency status that would justify the charge, charges from service providers for services that were not actually rendered with respect to a borrower's mortgage loan account, and charges for forceplaced insurance in circumstances not permitted by final rule § 1024.37. **Improper fees harm both mortgage loan borrowers and the investors that are mortgage servicers' principals. Improper and uncorrected fees harm borrowers by taking funds that may otherwise be used to keep a mortgage loan current. Further, improper fees reduce recovery** values available to investors from foreclosures or loss mitigation activities. Servicers that operate in good faith in the normal course of business refrain from imposing charges on borrowers that the servicer does not have a reasonable basis to impose and correct errors relating to those fees when they arise.

(BUREAU OF CONSUMER FINANCIAL PROTECTION 12 CFR Part 1024 [Docket No. CFPB-2012-0034] RIN 3170-AA14 Mortgage Servicing Rules under the Real Estate Settlement Procedures Act (Regulation X), page 164-66), *emphasis added*.

## Violation of the WACPA

Under the CPA, Plaintiff must prove each of the following five elements: (1) an unfair or deceptive act or practice; (2) in trade or commerce; (3) an impact on the public interest; (4) an injury to each plaintiff in his or her business or property; and (5) causation. *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780, 719 P.2d 531 (1986).

PLAINTIFF'S OPPOSITION TO CENLAR'S
MOTION FOR SUMMARY JUDGMENT
No. 2:13-cv-00602-RSL

BARRAZA LAW, PLLC
14245-F Ambaum Blvd SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 17 -

Under the first, second and third element, Plaintiff alleges that Cenlar's reference, in the letters of December 4, 2013, March 6, April 1, and May 1 of 2014, of "In keeping with Washington Law," as authority for the fees and costs charged to Plaintiff's mortgage loan account is misleading and deceptive because there was no such law and because Cenlar did not cite to one or more provisions of the Revised Code of Washington upon which Plaintiff or her counsel could research. Furthermore, nothing in the Note, the Deed of Trust, or the Modification provides for Cenlar to charge Plaintiff with the costs of its defense against Plaintiff's lawsuit for its own misconduct and not the enforcement of any provision within these loan documents. Thus, where there is no contractual or statutory authority for Cenlar to impose attorney's fees and costs, its representation that "Washington Law" authorizes the action is deceptive because it is just untrue and unfair. *Stephens v. Omni Ins. Co.*, 138 Wn.App. 151, 159 P.3d 10 (2007); *Panag v. Farmers Ins. Co. of WA*, 166 Wn.2d 27, 204 P.3d 885 (2009) (Collection agency's notices on behalf of insurers which created the impression that the stated amounts due were for debts owed and sent to collection even though all the insurers had were tort claims were unfair and deceptive); *Keyes v. Bollinger,* 31 Wn.App. 286, 640 P.2d 1077 (1982) (A contractor engages in an "unfair or deceptive" act by "estimating" or representing probable completion or repair dates to purchasers, with which "estimates" he is unable to substantially comply due to reasons which should be reasonably foreseeable in light of the contractor's knowledge and experience).

Plaintiff does not need to prove either intent to deceive or actual deception on the part of Cenlar. *Testo v. Russ Dunmire Oldsmobile*, 16 Wn.App. 39, 50-51, 554 P.2d 349 (1976). Rather, the question is whether Cenlar's conduct has the capacity to deceive a substantial

PLAINTIFF'S OPPOSITION TO CENLAR'S
MOTION FOR SUMMARY JUDGMENT
No. 2:13-cv-00602-RSL

BARRAZA LAW, PLLC
14245-F Ambaum Blvd SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 18 -

portion of the public. *Hangman Ridge,* 105 Wn.2d at 785-86. Here, the Court must reach but one conclusion and that is Cenlar's act of sending a letter informing Plaintiff that she was being charged Attorney Fees pursuant to Washington Law, when in fact there was no law providing for such action, has the capacity to deceive a substantial portion of the public based on Cenlar's business as creditor/loan servicer, the volume of Cenlar's business, and the susceptibility of the recipients, including the Plaintiff, who are presumed to be the least sophisticated reader. *Panag, supra.* (for purposes of a citizen suit under the CPA, in evaluating the tendency of language to deceive, a court should consider the language as an unsophisticated reader would read it). *Peterson v. Kitsap Cmty. Fed. Credit Union,* 171 Wn.App. 404, 287 P.3d 27 (2012) (same). As to the fourth and fifth elements of the *Hangman* test, to establish injury and causation in a CPA claim, Plaintiff is not required to prove that she was actually deceived. It is sufficient to establish the deceptive act or practice proximately caused injury to Plaintiff's "business or property." If the deceptive act actually induces a person to remand payment that is not owed, that will, of course, constitute injury. See *Reiter v. Sonotone Corp.*, 442 U.S. 330, 340, 99 S. Ct. 2326, 60 L. Ed. 2d 931 (1979) ("'A person whose property is diminished by a payment of money wrongfully induced is injured in his property.'" (quoting *Chattanooga Foundry & Pipe Works v. City of Atlanta*, 203 U.S. 390, 396, 27 S. Ct. 65, 51 L. Ed. 241 (1906)). Here, it is rather plain and straight forward that Plaintiff's Loan has been hugely inflated by the Attorney Fees Assessment and what is actually owed causing the Current Interest Bearing Principal Balance to be inaccurate. Plaintiff's Loan was transferred to Nationstar, but continues to bear certain sums designated "Previous Servicer Advance." An amount of $26,724.00 continued to be designated as "ZZLGA-CORPORATE ADVANCE LEGAL FEE" in Nationstar's servicing

PLAINTIFF'S OPPOSITION TO CENLAR'S
MOTION FOR SUMMARY JUDGMENT
No. 2:13-cv-00602-RSL

BARRAZA LAW, PLLC
14245-F Ambaum Blvd SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 19 -

record. Thus, but for Cenlar's action, Plaintiff would not have to pay the Fees/Inflation over the term of the Modification, or forty years. Even if Plaintiff does not have to pay the inflation at once, she is paying for it all within the Loan during the amortization period. Any equity she could realize will be reduced by the amortized payments made, or inflation of the amount needed to pay off the Loan in the event of a sale or refinancing.

**Cenlar violated FDCPA**

This Court took note of the fact that Cenlar conceded debt collector status as defined by 15 U.S.C.§1692a(6). The Court also rejected Cenlar's argument that it only needed to comply with §1692f(6) and not the rest of the statute.[28] On the undisputed facts, the Court must grant summary judgment in favor of the Plaintiff on her first two claims concerning credit reporting and communication provisions of the FDCPA. *Id*. at 8-9. First, Cenlar violated 15 U.S.C. § 1692f, f(1) prohibiting a debt collector from using use unfair or unconscionable means to collect or attempt to collect any debt, including but not limited to, the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) *unless* such amount is expressly authorized by the agreement creating the debt or is permitted by law. As discussed, there was no legal authority, express or implied, for Cenlar to collect the Attorney Fees relating to ongoing litigation. Second, Cenlar violated §1692d by engaging in sending a series of Periodic Statements, Delinquent Notices and Letters which are conflicting, inaccurate and deceptive and which naturally resulted in Plaintiff's feeling harassed, oppressed or abused.[29] Next, where Cenlar sent a multitude of communication which are confusing and

---

28 Dkt. #118, pp. 6-7
29 Plaintiff Decl., ¶¶21-24.

PLAINTIFF'S OPPOSITION TO CENLAR'S
MOTION FOR SUMMARY JUDGMENT
No. 2:13-cv-00602-RSL

BARRAZA LAW, PLLC
14245-F Ambaum Blvd SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

contradictory, all intended to extract payments from Plaintiff for a debt that is not owed, Cenlar violated §§1692d, 1692e and /or 1692f. The determination of whether the communication are confusing or contradictory is a question of law. *See, e.g., Terran v. Kaplan*, 109 F.3d 1428, 1432-33 (9th Cir. 1997) (determination of whether language in collection letter overshadowed or contradicted validation notice, like interpretation of language in contracts or similar written documents, does not turn on the credibility of extrinsic evidence and, therefore, presents a question of law to be reviewed de novo); *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225-26 (9th Cir. 1988); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33, 35 (2d Cir. 1996). Additionally, the guiding principle in the court's evaluation of claims under these provisions of the Act is set forth in *Swanson, supra.,* which is, "If the least sophisticated debtor would 'likely be misled' by a communication from a debt collector, the debt collector has violated the Act."

Cenlar affirmed what it reported to the credit bureaus as accurate when it fact it was not. [30] 15 U.S.C.S. § 1692e(2)(A) states that a debt collector may not falsely represent the character, amount, or legal status of any debt. A debt collector's reporting of a consumer's debt to a credit reporting agency would be covered by the Fair Debt Collection Practices Act, 15 U.S.C.S. § 1692e, if a communication is false, deceptive, or misleading. Moreover, the language of the statute does not require a plaintiff to establish that a defendant acted with intent to represent falsely or with knowledge of the falsehood. 15 U.S.C.S. § 1692e(2)(A). Therefore, as of February 2013, after Plaintiff had accepted the HAMP

---

30 Exhibit 1, Experian Credit Report, page 3.

PLAINTIFF'S OPPOSITION TO CENLAR'S
MOTION FOR SUMMARY JUDGMENT
No. 2:13-cv-00602-RSL

BARRAZA LAW, PLLC
14245-F Ambaum Blvd SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 21 -

Modification, completed the trial payments and was well into regular payments, and after

Cenlar had suspended foreclosure in October of 2012, Cenlar violated the FDCPA by

reporting Plaintiff's account as "$51,993 past due as of Feb 2013," and "foreclosure

proceedings started" when neither one of these representations were true.

**Cenlar's admission and facts presented by Plaintiff passed the threshold required under the Tort of Outrage and the claim should be reserved for the jury**

The elements of the tort of outrage or intentional infliction of emotional distress are

generally factual questions for the jury. Where a trial court is faced with a summary judgment

motion, it must "make an initial determination as to whether the conduct may reasonably be

regarded as so 'extreme and outrageous' as to warrant a factual determination by the jury."

*Doe v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints,* 141 Wn.

App. 407, 429, 167 P.3d 1193 (2007) (*quoting Jackson v. Peoples Fed. Credit Union*, 25 Wn.

App. 81, 84, 604 P.2d 1025 (1979)). Courts may consider a number of factors in analyzing

whether conduct is sufficient to support an outrage claim, including (1) the position the

defendant occupied; (2) whether the plaintiff was particularly susceptible to emotional distress

and the defendant was aware of the susceptibility; (3) whether the defendant's conduct was

privileged; (4) whether the degree of emotional distress was severe as opposed to merely

annoying, inconvenient or embarrassing; and (5) whether the defendant was aware of a high

probability that his or her conduct would cause severe emotional distress and consciously

disregarded that probability. *Doe*, 141 Wn. App. at 429-30. This Court has answered this

threshold question in the affirmative in its previous order where it finds Cenlar's conduct to be

vindictive and retaliatory. The Court noted that (1) Cenlar was intimately familiar with

PLAINTIFF'S OPPOSITION TO CENLAR'S
MOTION FOR SUMMARY JUDGMENT
No. 2:13-cv-00602-RSL

BARRAZA LAW, PLLC
14245-F Ambaum Blvd SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 22 -

Plaintiff's finances and knew without a doubt that Plaintiff would not be able to pay the attorney fees as assessed; (2) Cenlar's assessment of attorney fees against the Loan was oppressive because Plaintiff has no ability to understand, challenge, or control the amount being charged; (3) Cenlar had the plenary power to declare the Loan in default and foreclose upon Plaintiff's home, and (4) these facts could have caused severe emotional distress in Plaintiff as the borrower.[31]

The Supreme Court has held that in an outrage claim "the relationship between the parties is a significant factor in determining whether liability should be imposed." *Robel v. Roundup Corp.*, 148 Wn.2d 35, 59 P.3d 611 (2002). In the employment context, the high court has emphasize that "added impetus" is given to an outrage claim "when one in a position of authority, actual or apparent, over another has allegedly made racial slurs and jokes and comments." *Id., citing Contreras v. Crown Zellerbach Corp.*, 88 Wn.2d 735, 741, 565 P.2d 1173 (1977). In other words, the power differential or power dynamic between the parties makes up the context in which the outrageousness of the conduct is judged by the Court as a matter of law. Here, it is undisputed that Cenlar had all the power and Plaintiff has none. Plaintiff just signed a HAMP Modification that obligated her to make payments for the next forty years. The arrearages of her account were added on to the modified balance causing the property to be worth much less than what is owed and Plaintiff would not be able to sell or refinance for many years to come. Cenlar acts as the only point of contact where all things concerning Plaintiff's Loan begins and ends. Cenlar's conduct is particularly reprehensible in

---

31 Dkt. #118, p.13.

PLAINTIFF'S OPPOSITION TO CENLAR'S
MOTION FOR SUMMARY JUDGMENT
No. 2:13-cv-00602-RSL

BARRAZA LAW, PLLC
14245-F Ambaum Blvd SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 23 -

that the bank has admitted that (1) it has no legal basis to assess attorney fees because Plaintiff has always been current on her Loan Modification; yet (2) Cenlar "elected" to pass its attorney fees to Plaintiff anyway; (3) by issuing communications and official statements to Plaintiff for more than a year upon which (4) Cenlar threatened delinquency reporting and other consequences, but (5) providing no information on how the fees were incurred and how Plaintiff could solve the problem.

The Court has no reasons to doubt, and Cenlar has no way to refute Plaintiff's testimony that Cenlar's conduct rendered her completely helpless and feeling like she has no control over her ability to provide and protect her children. Plaintiff described the effect as one of "financial terrorism," which is consistent with how she has struggled to rein in the mortgage loan but continues to live in fear of losing her home. Plaintiff testified she has been assisted by a counselor to cope with the ongoing crisis. Under these facts, the Court must find Cenlar's conduct sufficiently outrageous and it is appropriate for the jury to determine the remaining elements of whether Cenlar intentionally or recklessly inflicted such emotion distress upon Plaintiff and whether severe emotional distress has occurred as a result of Cenlar's conduct. *Rice v. Janovich*, 109 Wn.2d 48, 61 (1987).

## IV. CONCLUSION

Summary judgment is appropriate because the evidence does not present a sufficient disagreement to require submission to a jury; the evidence is so one-sided that Plaintiff must prevail as a matter of law on the issue of Cenlar's liability under the Modification Contract, Duty of Good Faith and Fair Dealing, RESPA, TILA, FDCPA, WACPA and the tort of Outrage. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d

PLAINTIFF'S OPPOSITION TO CENLAR'S
MOTION FOR SUMMARY JUDGMENT
No. 2:13-cv-00602-RSL

BARRAZA LAW, PLLC
14245-F Ambaum Blvd SW
Burien, WA 98166
206-933-7861 Fax 206-933-7863

- 24 -

202 (1986). Therefore, based on the foregoing citations of facts, legal authorities and well-grounded arguments, Plaintiff respectfully requests the Court to grant summary judgment in her favor and reserve the issue of damages for jury trial.

DATED: July 6th, 2015.

BARRAZA LAW, PLLC

_____*/s/ Vicente Omar Barraza*_____
Vicente Omar Barraza, WSBA # 43589
John Larris,WSBA #44406
Attorneys for Plaintiff Leticia Lucero
14245-F Ambaum Blvd SW, Burien, WA 98166
206-933-7861 Fax 206-933-7863

GRAND CENTRAL LAW, PLLC

_____/s/ *Ha Thu Dao*_____
Ha Thu Dao, WSBA # 21793
Attorney for Plaintiff Leticia Lucero
787 Maynard Ave S, Seattle WA 98104
727-269-9334/Fax 727-264-2447
youremylawyer@gmail.com
hadaojd@gmail.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the below date I caused to be filed with the court and served upon the following parties, via ECF, a copy of the foregoing document to:

Defendant MERS, Cenlar, Jennifer Dobron, Nancy K. Morris, and their attorneys, Wright, Finlay & Zak, LLP., 4665 MacArthur Court, Ste 200, Newport Beach, CA 92660, at rmparker@wrightlegal.net, lwozniak@wrightlegal.net;fredburnside@dwt.com.

DATED July 6, 2015.

*/s/ Ha Thu Dao*
_____
Ha Thu Dao