UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LETICIA LUCERO,<br><br>      Plaintiff,<br><br>  v.<br><br>CENLAR FSB, *et al.*,<br><br>      Defendants. | No. C13-0602RSL<br><br>ORDER GRANTING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT |

  This matter comes before the Court on the "Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment of Defendant Cenlar FSB" (Dkt. # 215) and "Plaintiff's Motion for Partial Summary Judgment Against Cenlar FSB" (Dkt. # 227). Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 846 (9th Cir. 2012). The moving party "bears the initial responsibility of informing the district court of the basis for its motion." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It need not "produce evidence showing the absence of a genuine issue of material fact" but instead may discharge its burden under Rule 56 by "pointing out ... that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-

ORDER GRANTING IN PART CROSS-
MOTION FOR SUMMARY JUDGMENT

moving party fails to designate "specific facts showing that there is a genuine issue for trial." Id. at 324. "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient:" the opposing party must present probative evidence in support of its claim or defense. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party." In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (internal citations omitted). Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] and taking the evidence in the light most favorable to the non-moving party, the Court finds as follows:

Plaintiff has asserted a number of causes of action against Cenlar, most of which are based on Cenlar's efforts to charge the attorney's fees it has incurred in this litigation to plaintiff's mortgage account.[2] Each cause of action is considered below.

---

[1] The Court has not considered the Declaration of Bernard Jay Patterson or Exhibit 1 thereto. Mr. Patterson was not timely disclosed as an expert. The Court has, however, considered the other documents attached to Mr. Patterson's declaration.
   The Court finds no disqualifying inconsistency between plaintiff's declaration and her deposition testimony regarding emotional distress, as discussed more fully in the context of the RESPA claim. Cenlar's other evidentiary objections were not properly raised and have not been considered. LCR 7(g) (requests to strike material presented by the opposing party must be included in the responsive brief, if there is one).
   Cenlar's request for judicial notice (Dkt. # 220) is GRANTED.

[2] Cenlar began charging attorney's fees to plaintiff's account in November 2013 and continued to do so at least through October 2014. The October 2014 statement included only the principal ($539.70), interest ($617.09), and escrow amounts ($396.24) in the "Current Payment Due," and no amounts were identified as overdue. Nevertheless, the statement indicates that the "Total Amount Due" was $3,246.63, more than double plaintiff's normal mortgage payment. Attorney's fees totaling $8,745.34 were levied against the account in the preceding month. It is not clear what portion of them, if any, is reflected in the "Total Amount Due." Dkt. # 150-3 at 2. When the servicing of plaintiff's loan was transferred to Nationstar Mortgage LLC in March 2015, the loan history included $26,763 in "Previous Servicer Advance" and $26,724 in "Corporate Advance Legal Fee." Dkt. # 237 at 31.

ORDER GRANTING IN PART CROSS-
MOTION FOR SUMMARY JUDGMENT            -2-

**A. Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.***

Plaintiff alleges that Cenlar violated § 2605(e)(2) of RESPA when it failed to timely and fully respond to three written requests for information regarding the nature and justification for the "fees" that were appearing on her monthly statements. RESPA is a consumer protection statute enacted to regulate real estate settlement processes. It requires mortgage loan servicers to respond to a qualified written request ("QWR") for information within specified time frames. 12 U.S.C. § 2605(e)(1)(A) (five business days to acknowledge receipt of the QWR); 12 U.S.C. § 2605(e)(2) (thirty business days to investigate and provide a substantive response). A failure to adequately respond may subject the servicer to liability for actual and/or statutory damages. 12 U.S.C. § 2605(f)(1). Cenlar seeks summary judgment on plaintiff's RESPA claim on the grounds that (1) the December 29, 2013, request was sent to the wrong address, (2) Cenlar adequately responded to the requests for information, (3) plaintiff should be limited to the discovery procedures set forth in the Federal Rules of Civil Procedure and should not be permitted to utilize the RESPA process, and (4) plaintiff cannot show actual damages and is not entitled to statutory damages.

**(1) Incorrect Address for December 29, 2013, Request**

Pursuant to RESPA's implementing regulations, "a servicer may establish a separate and exclusive office and address for the receipt and handling of qualified written requests." 24 C.F.R. § 3500.21(e)(1).[3] Cenlar opted to establish such an address and gave plaintiff notice when it first took over the servicing of plaintiff's loan (Dkt. # 217-7 at 2) and in the loan statements preceding the December 29, 2013, request (Dkt. # 217-8 at 3). Plaintiff does not

---

[3] The authority to interpret and implement RESPA was transferred from the Department of Housing & Urban Development to the Consumer Financial Protection Bureau as part of Dodd-Frank. Section § 3500.21(e)(1) was deleted and a similar, but differently-worded provision was codified at 12 C.F.R. §§ 1024.35(c) and 1024.36(b). At the time plaintiff sent the December 29, 2013, request for information, the new regulations had not yet taken effect.

ORDER GRANTING IN PART CROSS-
MOTION FOR SUMMARY JUDGMENT            -3-

dispute that she failed to send the December 29, 2013, request to the specified address, nor does she challenge the validity of the implementing regulation or the adequacy of Cenlar's notice. Instead, she argues that Cenlar waived any objection when it responded to the letter. She provides no authority for her waiver argument, however.

The Court adopts the analysis set forth in Berneike v. Citi Mortgage, Inc., 708 F.3d 1141 (10th Cir. 2013). A servicer is required to respond and investigate under RESPA only upon receipt of a QWR. If a communication does not satisfy all of the requirements of a QWR, including receipt at the designated address, it "amounts to nothing more than general correspondence between a borrower and servicer" and does not trigger potential liability under the statute. Id. at 1148-49. See also Jestes v. Saxon Mortg. Servs., Inc., 2014 WL 1847806, at *6 (M.D. Tenn. May 8, 2014); Roth v. CitiMortg., Inc., 2013 WL 5205775, at *4 (E.D.N.Y. Sept. 11, 2013). Plaintiff's December 29, 2013, letter was not, therefore, a QWR, and plaintiff's RESPA claim fails as to that communication.

**(2) Adequacy of Response to March 25, 2014, Requests**

On March 25, 2014, plaintiff sent a Notice of Error and a Request for Information to Cenlar regarding the continuing charges for attorney's fees.[4] As Cenlar recognizes, under 12 C.F.R. §§ 1024.35 and 1024.36 it had five business days from the date of receipt to acknowledge these communications and thirty business days in which to substantively respond. Cenlar admits that it received the inquiries on April 17, 2014, but did not respond until May 1, 2014, ten business days after receipt. Dkt. # 21 at 9. While some basic account information was

---

[4] Counsel, as plaintiff's representative, sent the QWRs directly to Cenlar. Cenlar argues that counsel breached his ethical obligations to refrain from contacting a represented party and asks the Court to dismiss the RESPA claim as a sanction. Dkt. # 240 at 9. In this context, however, had the letters been sent to defense counsel or, in fact, to any address other than the one designated by Cenlar in the monthly statements, Cenlar would have argued that they were not QWRs and did not trigger the acknowledgment, investigation, and response requirements of RESPA. The Court will not punish a litigant for making the choice compelled by the statute.

ORDER GRANTING IN PART CROSS-
MOTION FOR SUMMARY JUDGMENT                -4-

provided, the "response to [plaintiff's] request for a detailed explanation of the attorney fees" was described as "forthcoming." Dkt. # 69-1 at 15. To the extent a subsequent letter dated June 18, 2014, was a response to the March 25, 2014, inquiries, it was provided more than sixty business days after receipt. Dkt. # 217-23 at 6-7. The undisputed evidence shows that Cenlar did not adequately respond to the March 25, 2014, requests for information.

**(3) Discovery as Sole Remedy**

Cenlar argues that the March 25, 2014, letters were improper because once suit was filed, plaintiff "is limited to discovery procedures provided for in Federal Rules" and the QWR procedure can no longer be used. Dkt. # 215 at 9. No statutory provision or case law is cited in support of this novel contention. Instead, Cenlar points to interpretive guidance offered by the Consumer Financial Protection Bureau related to overbroad notices of error (those that are "in the form of a judicial action complaint, subpoena, or discovery request that purports to require servicers to respond to each numbered paragraph") and the need to protect privileged information. The commentary in no way precludes borrowers from utilizing the QWR process simply because litigation has been joined, and the Court sees no reason to impose such a bar.

**(4) Lack of Compensable Damages**

Failure to comply with the requirements of RESPA exposes a servicer to an award of "actual damages" resulting from the failure and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. § 2605(f)(1). Cenlar apparently concedes that "actual damages" recoverable under RESPA are not limited to pecuniary or economic losses but rather include damages for emotional distress. Houston v. U.S. Bank Home Mortg. Wis. Servicing, 505 Fed. App'x. 543, 548 n.6 (6th Cir. 2012) ("We find nothing in the text of § 2605(f), or in RESPA more broadly, to preclude 'actual damages' from including emotional damages, provided they are adequately proven.). See also Catalan v. GMAC Mortg.

ORDER GRANTING IN PART CROSS-
MOTION FOR SUMMARY JUDGMENT           -5-

Corp., 629 F.3d 676, 696 (7th Cir. 2011) (servicer conceded that emotional distress damages are available under RESPA); McLean v. GMAC Mortg. Corp., 398 Fed. App'x 467, 471 (11th Cir. 2010) ("Construing the term 'actual damages' broadly, and based on the interpretations of 'actual damages' in other consumer-protection statutes that are remedial in nature, plaintiffs arguably may recover for non-pecuniary damages, such as emotional distress and pain and suffering, under RESPA."); In re Residential Capital, LLC, 513 B.R. 446, 466 (S.D.N.Y. 2014) ("[T]he consumer's interests at stake in RESPA warrant a consumer-oriented interpretation of 'actual damages' to allow for emotional distress damages in appropriate cases."). Cenlar argues, however, that plaintiff has failed to provide evidence of emotional distress arising from its failure to adequately respond to the March 25, 2014, inquiries or of a pattern/practice of noncompliance.

    RESPA requires servicers to investigate and provide substantive responses to borrowers who believe their account is in error. Plaintiff's regular monthly payment is $1,525.37, and yet between November 2013 through at least October 2014, she was billed thousands more than that for charges described only as "FEE - ATTORNEY FEES." Despite making her regular monthly payments, by March 2014 her loan statements showed amounts owing in the tens of thousands of dollars, with significant amounts listed as "overdue." She began asking about these charges almost immediately and sent her Notice of Error and Request for Information on March 25, 2014. It was not until June 18, 2014, however, that Cenlar disclosed that it was charging plaintiff the attorney's fees and costs it incurred in this litigation and the purported justification for those charges. Armed with that information, plaintiff responded to pending dispositive motions, obtained a favorable ruling from the Court, and amended her complaint to address the newly-disclosed reality she was facing. Cenlar apparently stopped charging its attorney's fees to plaintiff's account shortly after the Court indicated that its then-justification for the charges was dubious and that plaintiff had stated a viable claim for outrage. Dkt. # 118.

ORDER GRANTING IN PART CROSS-
MOTION FOR SUMMARY JUDGMENT            -6-

At deposition, plaintiff readily acknowledged that there were a number of things that had not gone well for her between 2011 and 2013 – she and her husband had separated, she lost her job, and she was attempting to negotiate a mortgage modification while starting her own business. But she stated that those events were not the major source of her emotional distress.

> And yes, those are concerns, but I know that I was able to work through that. But it was not knowing how much I owed every month or working with a very – Cenlar, who wasn't working with me, I was working through Bayview, and then being drug around through an odyssey of unknowns, and then trying to figure out how to close the gap to make sure that I had a mortgage I could pay. I mean, that is stressful, it is an unknown.

Dkt. # 216-1 at 39. In keeping with that narrative, plaintiff started seeing a counselor to deal with the stress in May 2014, more than a year after she had modified her loan, and she attributes her high stress levels to Cenlar's actions. Dkt. # 216-1 at 38. Plaintiff has, therefore, raised a genuine issue of fact regarding both actual damages and causation.

Plaintiff has not, however, shown that Cenlar has a pattern or practice of noncompliance that would justify an award of statutory damages. The December 29, 2013, inquiry was sent to the wrong address and therefore did not trigger the servicer's obligation to respond. With regards to the March 25, 2014, letters, there is every indication that they were not handled in a standard or routine way given their nexus with this litigation and counsel's involvement. The missed deadlines and inadequate responses, while lamentable, cannot be reasonably described as part of a pattern or practice for purposes of § 2605(f)(1)(B).

**B. Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.**

Although Cenlar was willing to concede that it was a "debt collector" for purposes of its motion to dismiss, it has now shown that, as a factual matter, it took over the servicing of plaintiff's mortgage years before the debt was in default. Thus, under 15 U.S.C. § 1692a(6)(F), Cenlar is not a debt collector and is not subject to the requirements of the FDCPA.

ORDER GRANTING IN PART CROSS-
MOTION FOR SUMMARY JUDGMENT         -7-

**C. Washington Consumer Protection Act ("CPA"), RCW 19.86 *et seq.***

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. A private cause of action exists under the CPA if (1) the conduct is unfair or deceptive, (2) occurs in trade or commerce, (3) affects the public interest, and (4) causes injury (5) to plaintiff's business or property. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780 (1986). Plaintiff alleges that Cenlar engaged in unfair and deceptive practices to the extent it created documents and made representations that gave the false impression that Cenlar was the holder of the promissory note and was therefore authorized to initiate a nonjudicial foreclosure.[5] Cenlar argues that plaintiff is equitably estopped from challenging its claim to be the holder of the note and that she is unable to satisfy most of the elements of a CPA claim.

Cenlar's equitable estoppel argument fails. The Notice of Default plaintiff received in 2012 identified Cenlar as the servicer of her mortgage loan. Not surprisingly, plaintiff negotiated a modification of the loan and subsequently made payments to Cenlar in that role. There is no indication that plaintiff conceded that Cenlar was the holder of her original promissory note at any point in this process, that her conduct was inconsistent with her current claim, or that plaintiff otherwise waived objections to the nonjudicial foreclosure process by entering into a loan modification agreement.

Nevertheless, there is no genuine issue of material fact regarding Cenlar's holder status and therefore no unfair or deceptive conduct that could be the basis of a CPA claim. Plaintiff has shown (through defendant's admissions) that Cenlar did not have actual physical possession of the promissory note at all relevant times. Cenlar, however, has come forward with evidence

---

[5] Plaintiff cannot raise an entirely new basis for her CPA claim in response to a motion for summary judgment. Her argument that Cenlar engaged in unfair and deceptive conduct when it claimed that it was charging attorney's fees in accordance with Washington law (Dkt. # 235 at 17-20) was not pled in the Third Amended Complaint and has not been considered.

ORDER GRANTING IN PART CROSS-
MOTION FOR SUMMARY JUDGMENT          -8-

showing that its agent had actual physical possession. When Cenlar took over the servicing of plaintiff's loan, it was subject to the terms of an Interim Servicing Master Agreement with the owner of the loan, Freddie Mac. Dkt. # 217 at ¶ 10. One of the Agreement's provisions imposed upon Cenlar the obligation to make any and all loan documents - including the original promissory note - available to Freddie Mac for inspection upon 48-hours notice. Dkt. # 217-3 at ¶ 1.3. Cenlar argues that, under the Agreement, it could either have the loan documents transferred to its own offices from the bailee/document custodian that held the documents at the time or leave the documents with the bailee/custodian. If it chose the latter option, as it did in this case, Cenlar relies on a limited power of attorney from Freddie Mac to argue that it stepped into Freddie Mac's shoes as the principal for purposes of exercising dominion and authority over the bailee/custodian. Dkt. # 217 at ¶ 16; Dkt. # 217-4 at 2-3. Thus, the argument goes, the bailee/custodian was Cenlar's agent for purposes of holding the note. Plaintiff offers no argument or evidence in response. Because actual physical possession of the original note, either directly or through an agent, conveys holder status under Washington law (Bain v. Metropolitan Mortg. Group, Inc., 175 Wn.2d 83, 104, 106 (2012); RCW 62A.3-201, cmt. 1), plaintiff has not raised a genuine issue of fact regarding Cenlar's status as the holder. Cenlar is therefore entitled to summary judgment on plaintiff's CPA claim. See Ortega v. Nw. Trustee Servs., Inc., 179 Wn. App. 1033, at * 7 (Feb. 18, 2014) (finding that Wells Fargo was entitled to summary judgment because it demonstrated that its agent held the original promissory note).

**D. Truth in Lending Act ("TILA), Regulation Z**

TILA and its implementing regulations apply to plaintiff's mortgage loan. The implementing regulations establish the timing, form, content, and layout of the periodic statements that are sent to the borrower. 12 C.F.R. § 1026.41. Subsection (d)(4) requires that the period statement include:

> Transaction activity. A list of all the transaction activity that occurred since the last statement. For purposes of this paragraph (d)(4), transaction activity means any

ORDER GRANTING IN PART CROSS-
MOTION FOR SUMMARY JUDGMENT        -9-

> activity that causes a credit or debit to the amount currently due. This list must include the date of the transaction, a brief description of the transaction, and the amount of the transaction for each activity on the list.

Plaintiff argues that Cenlar's periodic statements do not satisfy these requirements because (1) the date on which fees were listed in the transaction summary did not match the date on which the attorney actually performed the work and (2) the catch-all description "FEE-ATTORNEY FEES" did not specifically identify the services the attorney provided. These arguments are unavailing. The type of "transaction activity" that must be reported is, by definition, an event that causes the amount due on the account to increase or decrease. The date on which Cenlar's counsel performed services is irrelevant. Rather, it is the date on which those services were charged to plaintiff's account that an impact on the amount due occurred. Nor is there any requirement that the servicer provide a detailed description of the nature of or justification for the services rendered: identifying a charge as "Attorney's Fees" satisfies the requirement of "a brief description of the transaction." The facts do not support plaintiff's § 1026.42(d)(4) claim.

Subsection (d)(8) of 12 C.F.R. § 1026.41 specifies information which must be provided to the borrower "[i]f the consumer is more than 45 days delinquent . . . ." Plaintiff has submitted a number of "Delinquent Notice" letters she received from Cenlar that do not provide some of the information required under § 1026.41(d)(8), in particular an account history showing all the fees that were appearing in her periodic statements. Dkt. # 227-4 at 2, 3, 6-8. The notices, however, were sent out as soon as a payment was missed: none of the notices involves a delinquency of 45 days or more. Plaintiff has not shown that subsection (d)(8) applies to the late payment notices she received.

ORDER GRANTING IN PART CROSS-
MOTION FOR SUMMARY JUDGMENT         -10-

### E. Breach of Implied Duty of Good Faith and Fair Dealing[6]

Plaintiff alleges that Cenlar breached the implied duty of good faith and fair dealing when it charged its attorney's fees in this litigation to her mortgage account. "Under Washington law, there is in every contract an implied duty of good faith and fair dealing that obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." Rekhter v. Dep't of Social and Health Servs., 180 Wn.2d 102, 112-13 (2014) (internal quotation marks and citations omitted). The duty of good faith arises in the performance of specific contractual obligations. Johnson v. Yousoofian, 84 Wn. App. 755, 762 (1996). It is not a free-floating obligation to be nice to each other, but rather a check on whatever discretionary authority is granted to the parties under the contract. Scribner v. Worldcom, Inc., 249 F.3d 902, 910 (9th Cir. 2001); Rekhter, 180 Wn.2d at 113.[7]

In this case, the Deed of Trust gave the lender (and, presumably, Cenlar acting as the lender's attorney in fact) discretion in evaluating and responding to threats to the lender's interest in the property. Dkt. # 217-2 at ¶ 9. At the time plaintiff took out her mortgage loan, she had only a vague idea of the sort of "legal proceedings" the lender might consider a threat to which it had to respond: the examples in the contract were "a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over

---

[6] In her motion for summary judgment, plaintiff argues that she is entitled to judgment as a matter of law on her contract claim. Dkt. # 227 at 7. The Third Amended Complaint does not contain a breach of contract claim, however, asserting only a breach of the duty of good faith and fair dealing. Dkt. # 172 at ¶¶ 97-99.

[7] To clarify, abuse of discretion granted under the contract is simply one type of conduct that violates the duty of good faith and fair dealing. "[T]he duty varies somewhat with the context in which it arises. See Restatement (Second) of Contracts § 205, cmt. d. It may violate the duty of good faith and fair dealing to, for example, (1) evade the spirit of a bargain; (2) willfully render imperfect performance; (3) interfere with or fail to cooperate in the other party's performance; (4) abuse discretion granted under the contract; or (5) perform the contract without diligence. Id." Microsoft Corp. v. Motorola, Inc., 963 F. Supp.2d 1176, 1184 (W.D. Wash. 2013) (internal footnote omitted).

ORDER GRANTING IN PART CROSS-
MOTION FOR SUMMARY JUDGMENT           -11-

this Security Instrument or to enforce laws or regulations." Id. The determination that plaintiff's lawsuit regarding the manner in which the servicer initiated non-judicial foreclosure proceedings and negotiated her loan modification was "a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Interest" was in no way compelled by the contract. Because Cenlar had the discretionary authority to interpret and apply the contract provision, it was bound to do so in good faith.

Cenlar argues that charging its attorney's fees to plaintiff's mortgage account did not deprive her of the benefit of the loan agreement because (1) the imposition of fees or charges is a standard part of loan servicing and cannot, in and of itself, be construed as prohibited interference and (2) it did not actually attempt to collect those fees, instead applying plaintiff's payments to the outstanding interest and principal as agreed in the loan documents. No one is arguing that the assessment of late fees or other permissible charges deprives a borrower of the benefit of the bargain: the bargain, in fact, generally provides for such assessments. Plaintiff's point is that, knowing exactly what her financial situation was and how much she could afford to pay each month, Cenlar's discretionary decision to impose unpredictable and enormous fees (in one month, the fees charged were almost six times the regular mortgage payment) effectively made the negotiated terms of the loan irrelevant. Dkt. # 237 at 16. Cenlar's interpretation of ¶ 9 of the Deed of Trust erased at least one of the primary benefits plaintiff hoped to obtain out of the modification agreement, namely a manageable and regular monthly payment amount.

The argument that plaintiff has not been deprived of the benefit of the bargain because Cenlar "did not attempt to collect its fees" is factually and legally unsupported. Cenlar did attempt to collect its fees: it charged fees to plaintiff's mortgage account and demanded payment therefore, including the fees in the "Overdue Amount," "Total Amount Due," and "Amount Due" categories. The fact that plaintiff withstood these demands does not mean that Cenlar did not attempt to collect the fees, nor does it mean that plaintiff is undamaged. Cenlar's

alleged breach of the implied duty of good faith and fair dealing denied plaintiff the benefit of the bargain, *i.e.*, the negotiated regular monthly payment. To the extent her loan history and account balances continue to reflect the outsized debt Cenlar foisted upon her, she may be able to show that she has been damaged and is entitled to relief in this litigation.

**F. Outrage**

The elements of the tort of outrage are ("1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional distress on the part of plaintiff." Rice v. Janovich, 109 Wn.2d 48, 61 (1987). Without acknowledging the Court's prior order, Cenlar again argues that its conduct was neither extreme nor outrageous. The Court disagrees. The evidence in the record supports the reasonable inference that:

> what started out as a fairly standard mortgage case has morphed into a vendetta in which the mortgage servicing company, piqued that the borrower had the temerity to sue defendants and challenge the way they do business, has latched onto a strained and dubious interpretation of the deed of trust in order to punish her. Plaintiff, having just gone through the mortgage modification process, is in no position to deal with monthly payments that bounce all over the place, sometimes tripling her regular mortgage payment. Cenlar is intimately familiar with plaintiff's finances and is undoubtedly aware that such charges are beyond her ability to pay. With no ability to control the charges and, until now, no explanation for why it was happening, plaintiff fell delinquent within a matter of months, raising the specter of another foreclosure and, not surprisingly, causing severe emotional distress. Cenlar's message is crystal clear: continue with this litigation and risk losing your home. A jury would be entirely justified in believing that such conduct, if proven, is beyond all bounds of decency and utterly intolerable in our community.

Dkt. # 118 at 13.

As Cenlar points out, however, not all extreme and outrageous conduct will give rise to liability: some conduct is privileged despite being extreme and outrageous. "The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." Restatement (Second) of Torts § 46, cmt. g. The problem for Cenlar is that it arguably

ORDER GRANTING IN PART CROSS-
MOTION FOR SUMMARY JUDGMENT                -13-

lacks the legal authority to charge its attorney's fees to plaintiff's loan account. Section 9 of the Deed of Trust provides examples of the types of "legal proceeding[s] that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument," and they all involve third party claims and proceedings which threaten the priority of the lender's secured interest. As a matter of contract interpretation, it is arguable that this consumer-driven litigation complaining of statutory violations and seeking damages does not fall within the purview of Section 9 at all. Even if it does, the discretionary decision to charge fees incurred in this litigation may have breached the covenant of good faith and fair dealing. In either case, Cenlar was not insisting upon its legal rights in a permissible way and its conduct would not be privileged.

Finally, Cenlar argues that plaintiff cannot prove that it acted with intent to cause emotional distress or reckless disregard of the likelihood that distress would occur. The factfinder could easily find for plaintiff based on the evidence submitted by the parties.

For all of the foregoing reasons, Cenlar's motion for summary judgment (Dkt. # 215) and plaintiff's motion for summary judgment (Dkt. # 227) are GRANTED in part and DENIED in part. Plaintiff's RESPA claim regarding the December 29, 2013, inquiry, and her FDCPA, CPA, and TILA claims are hereby DISMISSED. Plaintiff has, however, established that Cenlar is liable for failing to adequately respond to the March 25, 2014, Notice of Error and Request for Information. Plaintiff's breach of the duty of good faith and fair dealing and outrage claims are reserved for trial, as is the determination of damages arising from Cenlar's RESPA violation.

Dated this 25th day of August, 2015.

*Robert S. Lasnik* (signature)

Robert S. Lasnik
United States District Judge